**THE WESTON FIRM**
GREGORY S. WESTON (239944)
*greg@westonfirm.com*
DAVID ELLIOT (270381)
*david@westonfirm.com*
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone:   (619) 798-2006
Facsimile:    (313) 293-7071

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| SHAVONDA HAWKINS, on behalf of herself and all others similarly situated,<br><br>         Plaintiff,<br><br>     v.<br><br>THE KROGER COMPANY,<br><br>         Defendant. | Case No: ___'15CV2320 JM   BLM___<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF:**<br><br>**CAL. BUS. & PROF. CODE §§17200 *et seq.*;**<br>**CAL. BUS. & PROF. CODE §§17500 *et seq.*;**<br>**CAL. CIV. CODE §§ 1750 *et seq.*;**<br>**BREACH OF EXPRESS WARRANTIES; AND**<br>**BREACH OF IMPLIED WARRANTIES.**<br><br>**DEMAND FOR JURY TRIAL** |

# TABLE OF CONTENTS

I.      JURISDICTION AND VENUE ...............................................................................1

II.     NATURE OF THE ACTION ..................................................................................1

III.    PARTIES ...................................................................................................................3

IV.     NATURE OF TRANS FAT....................................................................................3

    A.  There is a Well-Established Scientific Consensus That Trans Fat is Extremely Harmful..........4

    B.  The Artificial Trans Fat in the Kroger Bread Crumbs Causes Cardiovascular Disease ............6

    C.  The Artificial Trans Fat in the Kroger Bread Crumbs Causes Type-2 Diabetes ......................9

    D.  The Artificial Trans Fat in the Kroger Bread Crumbs Causes Breast, Prostate, and Colorectal Cancer..........................................................................................10

    E.  The Artificial Trans Fat in the Kroger Bread Crumbs Causes Alzheimer's Disease and Cognitive Decline...................................................................................12

    F.  The Artificial Trans Fat in the Kroger Bread Crumbs Causes Organ Damage........................13

V.      PLAINTIFF'S PURCHASES OF THE KROGER BREAD CRUMBS .......................................15

VI.     KROGER FALSELY AND DECEPTIVELY CLAIMED THE KROGER BREAD CRUMBS CONTAINED "0G" OF TRANS FAT .......................17

VII.    THE KROGER BREAD CRUMBS UNNECESSARILY CONTAIN PHO AND ARTIFICIAL TRANS FAT.....................................................................17

VIII.   DEFENDANT'S PRACTICES ARE "UNFAIR" WITHIN THE MEANING OF THE CALIFORNIA UNFAIR COMPETITION LAW .......................18

IX.     DEFENDANT'S PRACTICES ARE "UNLAWFUL" WITHIN THE MEANING OF THE CALIFORNIA UNFAIR COMPETITION LAW .......................19

X.      RELIANCE AND INJURY ....................................................................................20

XI.     DELAYED DISCOVERY ......................................................................................21

XII.    CLASS ACTION ALLEGATIONS .......................................................................22

XIII.   CAUSES OF ACTION ON BEHALF OF THE PHO CLASS .........................................25

XIV.    PRAYER FOR RELIEF .........................................................................................35

XV.     JURY DEMAND .....................................................................................................36

i

Plaintiff Shavonda Hawkins, on behalf of herself, all others similarly situated, and the general public, by and through her undersigned counsel, hereby sues The Kroger Company ("Kroger" or "Defendant"), and upon information and belief and investigation of counsel, alleges as follows:

## I.  JURISDICTION AND VENUE

1.     This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d)(2) (the Class Action Fairness Act) because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs and because more than two-thirds of the members of the class defined herein reside in states other than the states of which Defendant is a resident.

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Plaintiff resides in this District and suffered injuries as a result of Defendant's acts in this District; many of the acts and transactions giving rise to this action occurred in this District; and Defendant (1) is authorized to conduct business in this District and has intentionally availed itself of the laws and markets of this District through the distribution and sale of its products in this District, and (2) is subject to personal jurisdiction in this District.

## II.  NATURE OF THE ACTION

3.     Kroger manufactures, markets, and sells a line of bread crumb products (collectively the "Kroger Bread Crumbs" or "Products") that contain partially hydrogenated oil ("PHO").

4.     PHO is a food additive banned in many parts of the world due to its artificial trans fat content.

5.     Artificial trans fat is a toxin and carcinogen for which there are many safe and commercially viable substitutes.

6.     On June 17, 2015, the FDA determined that PHO is unsafe for use in food.[1] Yet Kroger continues to incorporate this illegal, dangerous additive into its breadcrumbs, even after the FDA tentatively and then finally declared it unsafe for use in food, rendering products made with PHO unlawful and adulterated.

7.     Kroger has made no effort to recall or destroy stocks of the Kroger Bread Crumbs containing PHO, even though selling and manufacturing them is both a civil and criminal violation of the Food, Drug & Cosmetic Act, its amendments implementing regulations, as well as California law.

8.     Although safe, low-cost, and commercially acceptable alternatives to PHO exist, including those used in competing brands, Kroger unfairly elects *not* to use these safe alternatives in the Kroger Bread Crumbs, in order to increase its profits at the expense of the health of its customers.

9.     For years, Kroger also falsely marketed and falsely represented that Kroger Bread Crumbs were free of trans fat; however all of the Kroger Bread Crumbs contain dangerous levels of trans fat Kroger's "0g Trans Fat" claim is an unauthorized nutrient content claim, rendering the product misbranded.

10.    Plaintiff repeatedly purchased and consumed the Kroger Bread Crumbs during the Class Period defined herein.

11.    This action is brought to remedy Defendant's unlawful conduct.

12.    On behalf of the class as defined herein, Plaintiff seeks an order compelling Defendant to, *inter alia*: (1) cease using PHO in the Products and recall from stores any unexpired Kroger Bread Crumbs; (2) conduct a corrective advertising campaign; (3) destroy all misleading and deceptive materials and unsafe Products; (4) award Plaintiff and other Class members restitution, actual damages, and punitive damages; and (5) pay costs, expenses, and attorney fees.

---

[1] 80 Fed. Reg. 34650 (June 17, 201) (hereinafter "FDA Final Determination")

CLASS ACTION COMPLAINT

### III.   PARTIES

13.   Defendant Kroger is a Delaware corporation with its principal place of business in California.

14.   Kroger owns, manufactures, and sells the Kroger Bread Crumbs.

15.   Defendant manufactures, produces, and/or distributes the Kroger Bread Crumbs in California.

16.   Plaintiff Shavonda Hawkins is a resident of San Diego County, California who repeatedly purchased the Kroger Bread Crumbs for personal and household consumption.

### IV.   NATURE OF TRANS FAT

17.   Artificial trans fat is manufactured via an industrial process called partial hydrogenation, in which hydrogen atoms are added to normal vegetable oil by heating the oil to temperatures above 400°F in the presence of ion donor catalyst metals such as rhodium, ruthenium, and nickel.[2] The resulting product is known as partially hydrogenated oil, or PHO.

18.   PHO was invented in 1901 and patented in 1902 by German chemist Wilhelm Normann. Artificial trans fat molecules chemically differ from the natural fat molecules in other food products.[3]

19.   Natural fat, except the trace amounts of natural trans fat from ruminant animal sources like beef, milk, and mutton, comes in two varieties: (1) fats that lack carbon double bonds ("saturated fat") and (2) fats that have carbon double bonds. Trans

---

[2] *See* Alice H. Lichtenstein, *Trans Fatty Acids, Plasma Lipid Levels, and Risk of Developing Cardiovascular Disease*, 95 CIRCULATION 2588, 2588-90 (1997).

[3] *See* Alberto Ascherio et al., *Trans Fatty Acids & Coronary Heart Disease*, 340 NEW ENG. J. MED. 94, 94-98 (1999). *See also* Walter Willett, *The Scientific Case for Banning Trans Fats*, Scientific American, *available at* www.scientificamerican.com/article/the-scientific-case-for-banning-trans-fats/ (last visited June 24, 2015).

CLASS ACTION COMPLAINT

fat, in contrast to cis fat, has carbon double bonds with hydrogen atoms on opposite sides of the carbon chain.



20.    PHO was initially thought to be a "wonder product" attractive to the processed food industry because it combines the low cost of unsaturated cis fat with the flexibility and long shelf life of saturated fat. Like processed cis fat, PHO is manufactured from low-cost legumes,[4] while saturated fat is derived from relatively expensive animal and tropical plant sources.[5] Given its versatility, ten years ago PHO was used in 40% of processed packaged foods.[6] Now, given its toxic properties, few food companies continue to use PHO. Kroger, however, has decided not to follow its more responsible peers and continues to add trans fat to its Kroger Bread Crumbs.

21.    As detailed herein, PHO causes cardiovascular heart disease, diabetes, cancer, Alzheimer's disease, and accelerates memory damage and cognitive decline.

**A.    There is a Well-Established Scientific Consensus That Trans Fat is Extremely Harmful**

22.    There is "no safe level" of PHO or artificial trans fat intake.[7]

23.    According to the established consensus of scientists, consumers should keep

---

[4] For example, corn oil, cottonseed oil, soybean oil, peanut oil

[5] For example, butter, cream, tallow, palm oil, coconut oil

[6] Mary Carmichael, *The Skinny on Bad Fat*, Newsweek, Dec. 1, 2003, at 66. *See also* Kim Severson, *Hidden Killer. It's Trans Fat. It's Dangerous. And It's In Food You Eat Every Day*, S.F. CHRON., Jan. 30, 2002.

[7] Food & Nutrition Bd., Inst. of Med., *Dietary Reference Intakes For Energy, Carbohydrate, Fiber, Fat, Fatty Acids, Cholesterol, Protein, and Amino Acids* (2005).

their consumption of trans fat "as low as possible."[8]

24.     In addition, "trans fatty acids are not essential and provide no known benefit to human health."[9] Thus, while "the [Institute of Medicine] sets tolerable upper intake levels (UL) for the highest level of daily nutrient intake that is likely to pose no risk of adverse health effects to almost all individuals in the general population[,] . . . the IOM does **not** set a UL for trans fatty acid because **any** incremental increase in trans fatty acid intake increases the risk of CHD."[10] (emphasis added).

25.     Dariush Mozaffarian of Harvard Medical School writes in the New England Journal of Medicine, "the consumption of trans fatty acids results in considerable potential harm but no apparent benefit."[11]

26.     Today there is no question about the scientific consensus on trans fat. Dr. Julie Louise Gerberding, who served for both of President Bush's two terms as head of the United States Centers for Disease Control and Prevention, writes:

> The scientific rationale for eliminating exposure to artificial trans fatty acids in foods is rock solid. There is no evidence that they provide any health benefit, and they are certainly harmful. These compounds adversely affect both low- and high-density lipoprotein cholesterol levels and increase the risk for coronary heart disease, even at relatively low levels of dietary intake. Gram for gram, trans fats are far more potent than saturated fats in increasing the risk for heart disease, perhaps because they also have pro-inflammatory properties and other adverse

---

[8] *Id.*

[9] Food Labeling; Health Claim; Phytosterols and Risk of Coronary Heart Disease; Proposed Rule, 75 Fed. Reg. 76526, 76542 (Dec. 8, 2010)

[10] *Id.*

[11] Dariush Mozaffarian et al., *Trans Fatty Acids and Cardiovascular Disease*, 354 N. ENGL. J. MED. 1601, 1608-1609 (2006).

CLASS ACTION COMPLAINT

effects on vascular endothelium. [ . . . ] Eliminating exposure to these dangerous fats could have a powerful population impact—potentially protecting 30,000 to 100,000 Americans from death related to heart disease each year.[12]

27.    Dr. Mozaffarian further writes:

Given the adverse effects of trans fatty acids on serum lipid levels, systemic inflammation, and possibly other risk factors for cardiovascular disease and the positive associations with the risk of CHD, sudden death from cardiac causes, and possibly diabetes, the potential for harm is clear. The evidence and the magnitude of adverse health effects of trans fatty acids are in fact far stronger on average than those of food contaminants or pesticide residues, which have in some cases received considerable attention.[13]

28.    Given its nature as an artificial chemical not naturally found in any food and the considerable harm that it causes to human health, Dr. Walter Willet, also at Harvard Medical School, finds the most direct analogue of trans fat to be not any natural fat but contaminants such as pesticides. He states that the addition of artificial trans fat to food by companies like Kroger "is a food safety issue . . . this is actually contamination."[14]

**B.    The Artificial Trans Fat in the Kroger Bread Crumbs Causes Cardiovascular Disease**

29.    Trans fat raises the risk of CHD more than any other known ingested

---

[12] Julie Louise Gerberding, *Safer Fats for Healthier Hearts: The Case for Eliminating Dietary Artificial Trans Fat Intake*, 151 ANN. INTERN. MED. 137-138 (2009)

[13] Dariush Mozaffarian et al., *Trans Fatty Acids and Cardiovascular Disease*, 354 N. ENGL. J. MED. 1601 (2006).

[14] Rebecca Coombes, *Trans fats: chasing a global ban*, 343 BRITISH MED. J. (2011).

6

substance.[15]

30.   Removing trans fat equivalent to 2% of total calories from the American diet "would prevent approximately 30,000 premature coronary deaths per year, and epidemiologic evidence suggests this number is closer to 100,000 premature deaths annually."[16]

31.   "10 to 19 percent of CHD events in the United States could be averted by reducing the intake of trans fat."[17]

32.   By raising LDL levels and lowering HDL levels, trans fat causes a wide variety of dangerous heart conditions, including low flow-mediated vasodilation, coronary artery disease, and primary cardiac arrest.

33.   In a joint Dietary Guidelines Advisory Committee Report, the Department of Health and Human Services and the U.S. Department of Agriculture recognized "[t]he relationship between trans fatty acid intake and LDL cholesterol is direct and progressive, increasing the risk of cardiovascular disease."[18]

34.   The American Heart Association warns, "trans fats raise your bad (LDL) cholesterol levels and lower your good (HDL) cholesterol levels. Eating trans fats increases your risk of developing heart disease."[19]

35.   After a review of literature on the connection between the consumption of artificial trans fat and coronary heart disease, the FDA concluded:

---

[15] Mozaffarian, 354 NEW ENG. J. MED. at 1603.

[16] Alberto Ascherio et al., *Trans Fatty Acids & Coronary Heart Disease*, 340 NEW ENG. J. MED. 94, 94-8 (1999).

[17] Mozaffarian, 354 NEW ENG. J. MED. at 1611.

[18] Dep't of Health & Human Serv. & U.S. Dep't of Agric., 2005 Dietary Guidelines Advisory Committee Report, Section 10 (2005).

[19] Am. Heart Ass'n., *Trans Fat Overview*, *available at* www.heart.org/HEARTORG/GettingHealthy/FatsAndOils/Fats101/Trans-Fats_UCM_301120_Article.jsp (last visited June 24, 2015)

CLASS ACTION COMPLAINT

1
2
3
4
5
6

> [B]ased on the consistent results across a number of the most persuasive types of study designs (i.e., intervention trials and prospective cohort studies) that were conducted using a range of test conditions and across different geographical regions and populations . . . the available evidence for an adverse relationship between trans fat intake and CHD risk is strong.[20]

7   36.   The FDA further found "[t]o date, there have been no reports issued by
8   authoritative sources that provide a level of trans fat in the diet . . . below which there is
9   no risk of CHD [Coronary Heart Disease]."[21] Rather, there "is a positive linear trend
10  between trans fatty acid intake and LDL cholesterol concentration, and therefore there is
11  a positive relationship between trans fatty acid intake and the risk of CHD."[22]

12  37.   This evidence of trans fat's gruesome impact on the health of Americans is
13  more than 20 years old. Dr. Walter Willet of Harvard Medical School found in 1994

14
15
16
17
18

> [E]ven the lower estimates from the effects [of PHO] on blood lipids would suggest that more than 30,000 deaths per year may be due to the consumption of partially hydrogenated vegetable fat. Furthermore, the number of attributable cases of nonfatal coronary heart disease will be even larger.[23]

19  38.   By taking blood samples from 179 survivors of cardiac arrest and 285
20  randomly-selected control patients and comparing the top fifth with the bottom fifth of
21  participants by trans fat intake, another study published in the American Heart

22
23  [20] Ctr. for Food Safety & Applied Nutrition, U.S. Food & Drug Admin., Questions &
24  Answers About *Trans* Fat Nutrition Labeling.

25  [21] 75 Fed. Reg. 76526, 76542 (Dec. 8, 2010).

26  [22] *Id.*

27  [23] W.C. Willett et al., *Trans Fatty Acids: Are the Effects only Marginal?* 84 AM. J. PUB.
28  HEALTH 722, 723 (1994).

CLASS ACTION COMPLAINT

Association's *Circulation* found that the largest consumers of trans fat have three times the risk of suffering primary cardiac arrest, even after controlling for a variety of medical and lifestyle risk factors.[24]

39.     Australian researchers observed that heart attack patients possess elevated amounts of trans fat in their adipose tissue compared to controls, strongly linking heart disease with long-term consumption of trans fat.[25]

40.     While cholesterol dysregulation and pro-inflammatory effects are the best-documented pathways through which trans fat causes heart disease and death, another study isolated an additional method by which trans fat causes atherosclerosis, namely by degrading the function of TGF-β, a protein responsible for preventing the development of atherosclerotic lesions.[26]

41.     TGF-β also functions to suppress cancerous tumors. The same scientists suggest that the degradation of TGF-β may be the reason that trans fat consumption is strongly linked to multiple forms of cancer.[27]

**C.     The Artificial Trans Fat in the Kroger Bread Crumbs Causes Type-2 Diabetes**

42.     Artificial trans fat causes type-2 diabetes.[28]

43.     In particular, trans fat disrupts the body's glucose and insulin regulation system by incorporating itself into cell membranes, causing the insulin receptors on cell

[24] Rozenn N. Lemaitre et al., *Cell Membrane Trans-Fatty Acids and the Risk of Primary Cardiac Arrest*, 105 CIRCULATION 697, 697-701 (2002).

[25] Peter M. Clifton et al., *Trans Fatty Acids In Adipose Tissue And The Food Supply Are Associated With Myocardial Infarction*. 134 J. NUTR. 874, 874-79 (2004).

[26] Chen, C.L. et al., *A mechanism by which dietary trans fats cause atherosclerosis*, J. of Nut. Biochemistry 22(7) 649-655 (2011).

[27] *Id*.

[28] Am. Heart Ass'n., *Trans Fat Overview*.

9

walls to malfunction, and in turn elevating blood glucose levels and stimulating further release of insulin.

44.    Researchers at Northwestern University's medical school found mice show multiple markers of type-2 diabetes after eating a high-trans-fat diet for only four weeks.[29]

45.    By the eighth week of the study, mice fed the diet high in trans fat showed a 500% increase compared to the control group in hepatic interleukin-1β gene expression, one such marker of diabetes, indicating the extreme stress even short-term exposure to artificial trans fat places on the body.[30]

46.    A 14-year study of 84,204 women found that for every 2 percent increase in energy intake from artificial trans fat, the relative risk of type-2 diabetes was increased by 39 percent.[31]

**D.    The Artificial Trans Fat in the Kroger Bread Crumbs Causes Breast, Prostate, and Colorectal Cancer**

47.    Trans fat is a carcinogen which causes breast, prostate, and colorectal cancer.

48.    A 13-year study of 19,934 French women showed 75 percent more women contracted breast cancer in the highest quintile of trans fat consumption than did those in

---

[29]    Sean W. P. Koppe et al., *Trans fat feeding results in higher serum alanine aminotransferase and increased insulin resistance compared with a standard murine high-fat diet*, 297 AM. J. PHYSIOL. GASTROINTEST LIVER PHYSIOL. 378 (2009).

[30]    *Id.*

[31]    Jorge Salmeron et al., *Dietary Fat Intake and Risk of Type 2 Diabetes in Women*, 73 AM. J. CLINICAL NUTRITION 1019, 1023 (2001).

CLASS ACTION COMPLAINT

the lowest.[32]

49.   In a 25-year study of 14,916 American physicians, those in the highest quintile of trans fat consumption had more than double the risk of developing prostate cancer than the doctors in the lowest quintile.[33]

50.   A study of 1,012 American males observing trans fat intake and the risk of prostate cancer found "[c]ompared with the lowest quartile of total trans-fatty acid consumption, the higher quartiles gave odds ratios (ORs) equal to 1.58," meaning those in the highest quartile are 58% more likely to contract prostate cancer than those in the lowest.[34]

51.   A 600-person study found an 86 percent greater risk of colorectal cancer in the highest trans fat consumption quartile.[35]

52.   A 2,910-person study found "trans-monounsaturated fatty acids . . . were dose-dependently associated with colorectal cancer risk," which showed "the importance of type of fat in the etiology and prevention of colorectal cancer."[36]

---

[32] Véronique Chajès et al., *Association between Serum Trans-Monounsaturated Fatty Acids and Breast Cancer Risk in the E3N-EPIC Study.* 167 Am. J. Epidemiology 1312, 1316 (2008).

[33] Jorge Chavarro et al., *A Prospective Study of Blood Trans Fatty Acid Levels and Risk of Prostate Cancer.*, 47 Proc. Am. Assoc. Cancer Research 95, 99 (2006).

[34] Xin Liu et al., *Trans-Fatty Acid Intake and Increased Risk of Advanced Prostate Cancer: Modification by RNASEL R462Q Variant*, 28 Carcinogenesis 1232, 1232 (2007).

[35] L.C. Vinikoor et al., *Consumption of Trans-Fatty Acid and its Association with Colorectal Adenomas*, 168 Am. J. of Epidemiology 289, 294 (2008).

[36] Evropi Theodoratou et al., *Dietary Fatty Acids and Colorectal Cancer: A Case-Control Study*, 166 Am. J. Epidemiology 181 (2007).

**E.    The Artificial Trans Fat in the Kroger Bread Crumbs Causes Alzheimer's Disease and Cognitive Decline**

53.    Trans fat causes Alzheimer's Disease and cognitive decline.

54.    In a study examining 815 Chicago area seniors, researchers found "increased risk of incident Alzheimer disease among persons with high intakes of . . . trans-unsaturated fats."[37]

55.    The study "observed a strong increased risk of Alzheimer disease with consumption of trans-unsaturated fat."[38]

56.    In a study of 1,486 women with type-2 diabetes, researchers found "[h]igher intakes of . . . trans fat since midlife . . . were [] highly associated with worse cognitive decline . . . ."[39]

57.    The study cautioned "[d]ietary fat intake can alter glucose and lipid metabolism and is related to cardiovascular disease risk in individuals with type-2 diabetes. Because insulin, cholesterol, and vascular disease all appear to play important roles in brain aging and cognitive impairments, dietary fat modification may be a particularly effective strategy for preventing cognitive decline, especially in individuals with diabetes."[40] (citations omitted).

58.    Artificial trans fat also damages the brains of men who consume it. A study conducted by UCSD School of Medicine of 1,018 men, mostly younger men, found trans fat consumption to be strongly correlated to impaired memory.[41] The authors of the

---

[37] Martha Clare Morris et al., *Dietary Fats and the Risk of Incident Alzheimer Disease*, 60 ARCH. NEUROL. 194, 198-199 (2003).

[38] *Id.*

[39] Elizabeth E. Devore et al., *Dietary Fat Intake and Cognitive Decline in Women with Type 2 Diabetes*, 32 DIABETES CARE 635 (2009).

[40] *Id.*

[41] Golomb, B. et al., *Trans Fat Consumption is Adversely Linked to Memory in Working-Age Adults*, J. of Am. Heart Assoc. 130:A15572 (2014).

study, appearing last year in *Circulation*, the American Heart Association's peer-reviewed journal, conclude that "Greater dTFA [dietary trans fatty acid] was significantly associated with worse word memory in adults aged 20-45 years, often critical years for career building."

59.     Performing a word memory test, each additional gram per day of trans fat consumed was associated with 0.76 fewer words correctly recalled. The authors suggest trans fat's well-established pro-oxidant effect and its damage to cell energy processes is the pathway by which trans fat consumption damages memory ability. The young men with the highest trans fat consumption scored 12 fewer recalled words on the 104-word test.[42]

**F.     The Artificial Trans Fat in the Kroger Bread Crumbs Causes Organ Damage**

60.     Artificial trans fat damages the body's organs, including the heart, by causing chronic systemic inflammation wherein the immune system becomes persistently overactive, damaging the body's own organs and cells, and causing organ dysfunction.[43]

---

[42] *Id.*

[43] *See* Lopez-Garcia *et al.*, *Consumption of Trans Fat is Related to Plasma Markers of Inflammation and Endothelial Dysfunction,* 135 J. NUTR. 562  (2005);

Baer *et al.*, *Dietary fatty acids affect plasma markers of inflammation in healthy men fed controlled diets; a randomized crossover study,* 79 AM. J. CLIN. NUTR. 969 (2004);

Mozaffarian & Clarke, *Quantitative effects on cardiovascular risk factors and coronary heart disease risk of replacing partially hydrogenated vegetable oils with other fats and oils,* 63 Euro. J. CLIN. NUTR. 22 (2009);

Mozaffarian et al., *Trans Fatty acids and systemic inflammation in heart failure* 80 AM. J. CLIN. NUTR. 1521 (2004).

CLASS ACTION COMPLAINT

## G.  Artificial Trans Fat Is So Inherently Dangerous It Has Been Banned by an Increasing Number of American and European Jurisdictions

61.    In 2008, California became the first state to ban restaurant food with artificial trans fat. Trans fats now may not be served in California's schools or restaurants in an amount greater than half a gram per serving, nor contain any ingredient with more than this amount.[44]

62.    New York City banned trans fat in restaurants in 2006. Similar laws exist in Philadelphia, Baltimore, Stamford, Connecticut, and Montgomery County, Maryland.

63.    A 2004 Danish law restricted all foods to fewer than 2 percent of calories from artificial trans fat, a threshold so low it is effectively a complete ban.

64.    After conducting a surveillance study of Denmark's 2004 trans fat ban, researchers concluded the change "did not appreciably affect the quality, cost or availability of food" and did not have "any noticeable effect for the consumers."[45]

65.    Similar bans have been introduced in Austria and Hungary. Brazil, Argentina, Chile, and South Africa have all taken steps to reduce or eliminate artificial trans fats from food.[46]

66.    In 2006, a trans fat task force co-chaired by Health Canada and the Heart and Stroke Foundation of Canada recommended capping trans fat content at 2 percent of calories for tub margarines and spreads and 5 percent for all other foods. On September 30, 2009, British Columbia became the first province to impose these rules on all

---

[44] Cal. Educ. Code § 49431.7; Cal. Health & Saf. Code § 114377.

[45] Mozaffarian, 354 New Eng. J. Med. at 1610; *see also* Stender, Steen, *High Levels of Industrially Produced Trans Fat in Popular Fast Food*, 354 NEW ENG. J. MED. 1650, 1652 (2006); Leth T. *The effect of the regulation on trans fatty acid content in Danish Food*. First Symposium on Trans Fatty Acids and Health, Rungstegaard, Denmark, September 11-13, 2005. Abstract.

[46] Coombes, *Trans fats: chasing a global ban*, 343 BRITISH MED. J. (2011).

restaurants, schools, hospitals, and special events.[47]

67.    In its European Food and Nutrition Action Plan 2015-2020, the World Health Organization identified one of its goals as "making the European Region trans fat-free."[48] The European Commission is preparing legislation to ban the use of trans fats in 28 nations in the European Union, with a legislative report on a ban that would thus cover most of Europe anticipated this month.[49]

68.    On June 17, 2015, the FDA released its Final Determination Regarding Partially Hydrogenated Oils, in which it declared "PHOs are not GRAS [Generally Recognized As Safe] for any use in human food."[50]

69.    The FDA will begin filing its own enforcement actions against companies that use PHOs in 2018.

## V.    PLAINTIFF'S PURCHASES OF THE KROGER BREAD CRUMBS

70.    Plaintiff Shavonda Hawkins repeatedly purchased the Kroger Bread Crumbs during the Class Period defined herein.

71.    Ms. Hawkins purchased the Kroger Bread Crumbs about 6 times annually, with her most recent purchase in July 2015.

72.    She has been purchasing the Kroger Bread Crumbs for at least 15 years.

---

[47] *Province Restricts Trans Fat in B.C.*, British Columbia Ministry of Healthy Living and Sport Press Release (2009), *available at* www2.news.gov.bc.ca/news_releases_2005-2009/2009HLS0013-000315.htm (last visited June 24, 2015)

[48] Regional Committee for Europe, *European Food and Nutrition Action Plan 2015-2020*, 64th session.

[49] Basu, J. *European trans fat report 'could lead to ban'*, Food Navigator.com, April 15, 2015.

[50][50] FDA Final Determination, 80 Fed. Reg. 34650, 34651 (June 17, 2015).

73.     Ms. Hawkins' most frequent purchases of the Product occurred at the now-closed Ralph's at 901 Euclid Ave., National City, CA 91950 as well as the Ralph's located at 659 E. Palomar St., Chula Vista, CA 91911.

74.     Plaintiff first discovered Defendant's unlawful acts described herein in August 2015, when she learned that  Kroger Bread Crumbs contained artificial trans fat, and caused heart disease, diabetes, cancer, and death.

75.     Plaintiff, in the exercise of reasonable diligence, could not have discovered earlier Defendant's unlawful acts described herein because the association between PHO and trans fat and the details of the dangers of artificial trans fats were known to Defendant, but not to Plaintiff, throughout the Class Period defined herein. Plaintiff is not a nutritionist, food expert, or food scientist, but rather a lay consumer who did not have the specialized knowledge that Defendant had which otherwise would have enabled her to associate PHO with artificial trans fat, and artificial trans fat with disease.

76.     Even today the nature and extensive utilization of artificial trans fats—including that they necessarily exist where partially hydrogenated oil is used an ingredient in a food product—is generally unknown to the average consumer. Moreover, Plaintiff relied on Defendant's "0g trans fat" claim as a substantial factor in her purchases during the period Kroger made this false, misleading, and illegal unauthorized nutrient content claim.

77.     Because Plaintiff expected this statement to be true and honest when it is in fact false and misleading, she did not receive the benefit of her purchases. Instead of receiving the benefit of products free of trans fat, she received products that contained trans fat.

78.     Plaintiff intends to, desires to, and will purchase the Products when she is able to do so with the assurance it will be free of PHO and not contain unauthorized nutrient content claims.

1
2

## VI.   KROGER FALSELY AND DECEPTIVELY CLAIMED THE KROGER BREAD CRUMBS CONTAINED "0g" OF TRANS FAT

3
4
5

79.   During much of the Class Period, the Kroger Bread Crumbs were made with PHO yet contained the false, unlawful, unauthorized nutrient content claim "0g Trans Fat" prominently displayed on the front of each package.

6
7
8
9
10
11
12
13
14
15
16

  

17
18
19

80.   This language was part of an intentional campaign to deceptively market the Kroger Bread Crumbs as healthful.

20
21
22
23

81.   Defendant's conduct is especially egregious because traditional bread crumbs, an ingredient in many classic American recipes, do not contain PHOs, and competing bread crumb brands are all free of PHO and do not pose the serious health consequences associated with the Kroger Bread Crumbs.

24
25

82.   Moreover, "0g Trans Fat" is an unauthorized nutrient content claim.

26
27

## VII.  THE KROGER BREAD CRUMBS UNNECESSARILY CONTAIN PHO AND ARTIFICIAL TRANS FAT

28

83.   Defendant's use of PHO in the Kroger Bread Crumbs is unnecessary. There

17

are several safe substitutes for PHO and artificial trans fat.

84.     Manufacturers of competing bread crumb products have responsibly decided to refrain from adding artificial trans fat to their products. Such brands sold in the United States include Kikkoman, Gillian's, Natural Earth Products, Shar, and Emeril's, among others.

85.     Although commercially viable alternative formulations and substitutes for PHO have long been available, Defendant elects not to use them in the Kroger Bread Crumbs in order to increase its profits.

## VIII.  DEFENDANT'S PRACTICES ARE "UNFAIR" WITHIN THE MEANING OF THE CALIFORNIA UNFAIR COMPETITION LAW

86.     Defendant's practices as described herein are "unfair" within the meaning of the California Unfair Competition Law because its conduct is immoral, unethical, unscrupulous, and substantially injurious to consumers, and the utility of the conduct to Defendant does not outweigh the gravity of the harm to Defendant's victims.

87.     Plaintiff's claims for unfair business practices are independent of her claim for false advertising. Even absent Kroger's false advertising, the sale of the Kroger Bread Crumbs violates the UCL and implied warranty of merchantability.

88.     In particular, while Defendant's use of PHO in the Kroger Bread Crumbs may have some utility to Defendant in that it allows Defendant to realize higher profit margins than if it used safe alternatives, this utility is small and far outweighed by the gravity of the serious health harm Kroger inflicts upon consumers.

89.     Defendant's conduct injures competing manufacturers of bread crumb products that do not engage in its unlawful, unfair, and immoral behavior, especially given Kroger's large market share and the limited shelf space in retailers' packaged food sections.

90.     Moreover, Defendant's practices violate public policy expressed by specific constitutional, statutory, or regulatory provisions, including the California Health and

18

Safety Code § 114377 and California Education Code § 49431.7.

91.     Kroger's actions also violate public policy by causing the United States, California, and every other state to pay—via Medicare, Medicaid, Affordable Care Act Exchange subsidies, veterans' health programs, public employee and retiree health insurance—for treatment of trans fat-related illnesses.

92.     Further, the injury to consumers from Defendant's practices is substantial, not outweighed by benefits to consumers or competition, and not one that consumers themselves could reasonably have avoided.

## IX.     DEFENDANT'S PRACTICES ARE "UNLAWFUL" WITHIN THE MEANING OF THE CALIFORNIA UNFAIR COMPETITION LAW

93.     Defendant's practices as described herein are "unlawful" within the meaning of the California Unfair Competition Law because PHO is not Generally Recognized as Safe (GRAS). Therefore, Defendant's use of PHO renders its products adulterated within the meaning of 21 U.S.C. § 342(a)(2)(C).

94.     The PHO used in the Kroger Bread Crumbs appears nowhere on the FDA's list of the hundreds of substances it considers GRAS.[51]

95.     PHO also fails to meet the fundamental requirement for GRAS status – that the substance is safe. In fact, the FDA has explicitly recognized that there is no safe level of artificial trans fat consumption.

96.     Under the Food Additives Amendment of 1958, which amended the FDCA, all food additives are unsafe unless they (1) fall within a specified exemption to the statute's definition of food additive, or (2) their use is pursuant to FDA approval. Because the PHO used in the Kroger Bread Crumbs do not meet either of these exceptions, they are, and long have been, unsafe and unlawful for use in food.

97.     Defendant's use of PHO in the Kroger Bread Crumbs thus constitutes

---

[51] *See* 21 C.F.R. §§ 181, 182, 184 and 186.

adulteration under 21 U.S.C. § 342.

98.   On November 8, 2013, the FDA made its initial determination that PHO is not GRAS.[52]

99.   On June 17, 2015, after extensive public comment, the FDA made a final determination that PHO is not GRAS.[53]

## X.   **RELIANCE AND INJURY**

100.   When purchasing the Kroger Bread Crumbs, Plaintiff was seeking products of particular qualities, including products that did not negatively affect blood cholesterol levels or the health of her cardiovascular system, and products made with safe ingredients.

101.   Plaintiff purchased the Kroger Bread Crumbs believing they had the qualities she sought based on the Products' deceptive labeling and the natural assumption that food sold in stores by large companies would not have unsafe and unlawful ingredients.

102.   Instead, they were actually unsatisfactory to her for the reasons described herein.

103.   Plaintiff lost money as a result of Defendant's conduct because she purchased products that were detrimental to her health and were unfairly offered for sale in violation of federal and California law. Had Defendant not violated the law, Plaintiff would not have been injured.

104.   Plaintiff suffered physical injury when she repeatedly consumed Defendant's Kroger Bread Crumbs, because consuming artificial trans fat in *any* quantity, including the quantity she actually consumed, inflames and damages vital organs and increases the risk of heart disease, diabetes, cancer, and death.

---

[52] 78 Fed. Reg. 67169 (November 8, 2013).

[53] 80 Fed. Reg. 34650 (June 17, 2015).

105.   During the time the Kroger Bread Crumbs contained the unlawful "0g Trans fat" claim, they cost more than similar products without the misleading labeling, and would have cost less absent Defendant's false and misleading statements. Thus, the Kroger Bread Crumbs were worth less than what Plaintiff paid for them.

106.   The Kroger Bread Crumbs are not fit for human consumption and have a value of $0.

107.   Plaintiff, on at least one occasion, would not have purchased the Kroger Bread Crumbs absent Defendant's misrepresentation.

108.   Like most consumers, Ms. Hawkins is a busy person and cannot reasonably inspect every ingredient of every food that she purchases for herself and her large family, and she was unaware that the Kroger Bread Crumbs were dangerous when she purchased them.

109.   Plaintiff is not a nutritionist, food expert, or food scientist, but rather a lay consumer who did not have the specialized knowledge of Defendant of trans fat. Even today, the details of the dangers of artificial trans fats are unknown to millions of Americans.

110.   Plaintiff lost money as a result of Defendant's unlawful behavior. Plaintiff altered her position to her detriment and suffered loss in an amount equal to the amount she paid for the Kroger Bread Crumbs.

## XI.   DELAYED DISCOVERY

111.   Plaintiff did not discover that Defendant's labeling of the Products was false, deceptive, or misleading until August 2015, when she learned the true extent of the dangers of consuming trans fat, and that Defendant was still selling the Products despite their illegality. Until this time, she lacked the knowledge regarding the facts of her claims against Defendant.

112.   Plaintiff is a reasonably diligent consumer who exercised reasonable diligence in her purchase, use, and consumption of the Kroger Bread Crumbs.

Nevertheless, she would not have been able to discover Defendant's deceptive practices and lacked the means to discover them given that, like nearly all consumers, she is not an expert on nutrition and does not typically read or have ready access to scholarly journals such as The Journal of Nutrition,[54] The European Journal of Clinical Nutrition,[55] and The New England Journal of Medicine,[56] where the scientific evidence of artificial trans fat's dangers was published. Furthermore, Defendant's labeling practices—in particular, representing for many years that the Kroger Bread Crumbs have "0g trans fat"—actively impeded Plaintiff's and Class members' abilities to discover the dangerous effects of the Products throughout the Class Period.

## XII.   CLASS ACTION ALLEGATIONS

113.   Plaintiff brings this action on behalf of herself and all others similarly situated (the "Class"), excluding Defendant's officers, directors, employees, and the Court and its staff.

114.   The Class is defined as follows:

**PHO Class (Causes of Action One to Three)**

All persons who purchased in the United States, on or after January 1, 2008, Kroger bread crumb products containing partially hydrogenated oil.

---

[54] Peter M. Clifton et al., *Trans Fatty Acids In Adipose Tissue And The Food Supply Are Associated With Myocardial Infarction*, 134 J. Nutr. 874, 874-79 (2004).

[55] A. Tavani et al., *Margarine intake and risk of nonfatal acute myocardial infarction in Italian women*, 51 Eur. J. Clin. Nutr. 30–32 (1997) (estimating a 50 percent greater risk of heart attack in women with high consumption of margarine, an association "independent of body mass index, history of hypertension and hyperlipidemia").

[56] Mozaffarian, 354 New Eng. J. Med. at 1611 ("10 to 19 percent of CHD events in the United States could be averted by reducing the intake of trans fat").

**0g Trans Fat Claim Subclass (All Causes of Action)**

All persons who purchased in the United States, on or after January 1, 2008, Kroger bread crumb products containing the front labeling claim "0g Trans Fat" and containing partially hydrogenated oil.

115.   Questions of law and fact common to Plaintiff and the Class include:

a.   Whether Defendant's conduct constitutes a violation of the unfair prong of California's Unfair Competition Law;

b.   Whether Defendant's conduct constitutes a violation of the unlawful prong of California's Unfair Competition Law;

c.   Whether Defendant's conduct constitutes a violation of the fraudulent prong of California's Unfair Competition Law;

d.   Whether Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers;

e.   Whether the slight utility Defendant realizes as a result of its conduct outweighs the gravity of the harm the conduct causes to its victims;

f.   Whether Defendant's conduct violates public policy as declared by specific constitutional, statutory, or regulatory provisions;

g.   Whether the injury to consumers from Defendant's practices is substantial;

h.   Whether the injury to consumers from Defendant's practices is one consumers themselves could reasonably have avoided;

i.   Whether Defendant communicated a misleading health and wellness message through its "0g Trans Fat" front label claim;

j.   Whether that message was material to a reasonable consumer;

k.   Whether the Class is entitled to actual damages, restitution, rescission, punitive damages, attorney fees and costs, and an injunction;

l.   Whether the statute of limitations should be tolled on behalf of the Class;

m.   Whether Defendant's conduct constitutes violations of California's False Advertising Law;

n.   Whether Defendant's conduct constitutes a violation of the California CLRA;

o.   Whether members of the Class are entitled to restitution and, if so, the correct measure of restitution;

p.   Whether members of the Class are entitled to an injunction and, if so, its terms; and

q.   Whether members of the Class are entitled to any further relief.

116.   Plaintiff will fairly and adequately protect the interests of the Class, has no interests that are incompatible with the interests of the Class, and has retained counsel competent and experienced in class litigation.

117.   The Class is sufficiently numerous, as it includes thousands of individuals who purchased the Kroger Bread Crumbs throughout the United States during the Class Period.

118.   Class representation is superior to other options for the resolution of the controversy. The relief sought for each Class member is small, as little as two dollars for some Class members. Absent the availability of class action procedures, it would be infeasible for Class members to redress the wrongs done to them.

119.   Defendant has acted on grounds applicable to the Class, thereby making final injunctive relief or declaratory relief appropriate concerning the Class as a whole.

120.   Questions of law and fact common to the Class predominate over any questions affecting only individual members.

121.   Class treatment is appropriate under Fed. R. Civ. P. 23(a) and both Fed. R. Civ. P. 23(b)(2) and 23(b)(3). Plaintiff will, if notice is required, confer with Defendant and seek to present the Court with a stipulation and proposed order on the details of a

class notice plan.

## XIII.   CAUSES OF ACTION

### First Cause of Action

### California Unfair Competition Law, Unfair Prong

### Cal. Bus. & Prof. Code §§ 17200 *et seq.*

122.   Plaintiff realleges, and incorporates by reference each and every allegation contained elsewhere in this Complaint, as if fully set forth herein.

123.   Cal. Bus. & Prof. Code § 17200 prohibits any "unlawful, unfair or fraudulent business act or practice."

124.   The business practices and omissions of Kroger as alleged herein constitute "unfair" business acts and practices in that Kroger's conduct is immoral, unethical, unscrupulous, and substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to Kroger's victims.

125.   Further, Kroger's practices are unfair because they violate public policy as declared by specific constitutional, statutory, or regulatory provisions, including those embodied in the FDCA, California Health and Safety Code, and California Education Code.

126.   Further, Kroger's practices are unfair because the injury to consumers from Kroger's practices is substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided or should be obligated to avoid.

127.   In accordance with Cal. Bus. & Prof Code § 17203, Plaintiff seeks an order enjoining Kroger from continuing to conduct business through unfair acts and practices and to commence a corrective advertising campaign.

128.   Plaintiff also seeks an order for the disgorgement and restitution of all revenue received by Kroger from the sale of the Kroger Bread Crumbs.

**Second Cause of Action**

**California Unfair Competition Law, Unlawful Prong**

**Cal. Bus. & Prof. Code §§ 17200 *et seq.***

129.   Plaintiff realleges, and incorporates by reference each and every allegation contained elsewhere in this Complaint, as if fully set forth herein.

130.   Kroger has made and distributed, in interstate commerce and in this District, products that contain unlawful food additives. The Kroger Bread Crumbs were placed into interstate commerce by Defendant and sold throughout the country and in this District.

131.   Cal. Bus. & Prof. Code § 17200 prohibits any "unlawful, unfair or fraudulent business act or practice."

132.   Kroger's conduct is "unlawful" because it violates the Federal Food, Drug, and Cosmetic Act ("FDCA"), specifically, the Food Additives Amendment of 1958, which deems a food additive unsafe unless it has met one of two exceptions, neither of which the PHO used in the Kroger Bread Crumbs has met. 21 U.S.C. §§ 348, 342.

133.   Defendant's conduct further violates The California Sherman Food, Drug, and Cosmetic Law ("Sherman Law"), Cal. Health & Safety Code § 110100, which adopts all FDA regulations as state regulations. Defendant's conduct violates at a minimum the following sections of the Sherman Law:

• § 110100 (adopting all FDA regulations as state regulations);

• § 110398 ("It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded.");

134.   The use of artificial trans fat in the Kroger Bread Crumbs thus constitutes a violation of the FDCA and the Sherman Law and, as such, violated the "unlawful prong" of the UCL.

135.   Plaintiff suffered injury in fact and lost money or property as a result of Defendant's unlawful acts: she was denied the benefit of the bargain when she decided

to purchase the Kroger Bread Crumbs over competing products that are less expensive and/or contain no artificial trans fat.

136.   Had Plaintiff been aware of Defendant's unlawful tactics, she would not have purchased the Kroger Bread Crumbs.

137.   Defendant's unlawful acts allowed it to sell more units of the Kroger Bread Crumbs than it would have otherwise, and at a higher price, and higher margin.

138.   In accordance with Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

139.   Plaintiff also seeks an order for the disgorgement and restitution of all revenue received by Kroger from the sale of the Kroger Bread Crumbs.

### Third Cause of Action

### Breach of Implied Warranty of Merchantability

140.   Plaintiff realleges, and incorporates by reference each and every allegation contained elsewhere in this Complaint, as if fully set forth herein.

141.   Defendant, through its acts and omissions set forth herein, in the sale, marketing and promotion of the Products, made representations to Plaintiff and the Class that the Kroger Bread Crumbs were safe to consume.

142.   Plaintiff and the Class bought the Products manufactured, advertised, and sold by Defendant, as described herein.

143.   Defendant is a merchant with respect to the goods of this kind which were sold to Plaintiff and the Class, and there was in the sale to Plaintiff and other members of the Class an implied warranty that those goods were merchantable.

144.   Defendant breached that implied warranty, however, in that the Products are not fit for their ordinary purpose and do not conform with the representations on their labels, as set forth in detail herein.

145.   As an actual and proximate result of Defendant's conduct, Plaintiff and the Class did not receive goods as impliedly warranted by Defendant to be merchantable in that they did not conform to the promises and affirmations made on the container or label of the goods.

146.   Plaintiff and Class have sustained damages as a proximate result of the foregoing breach of implied warranty in the amount of the Products' purchase price.

147.   The Fourth through Ninth Causes of Action that follow are brought only on behalf of the "0g Trans Fat" Claim Subclass.

## Fourth Cause of Action

### California Unfair Competition Law, Unlawful Prong

### Cal. Bus. & Prof. Code §§ 17200 *et seq.*

148.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

149.   Defendant has made and distributed, in interstate commerce and in this District, products that make false or misleading statements of fact regarding their content.

150.   Defendant's conduct is "unlawful" because it violates the Federal Food, Drug and Cosmetic Act ("FDCA"), specifically, (a) 21 U.S.C. § 343(a), which deems food misbranded when the label contains a statement that is "false or misleading in any particular," and (b) 21 C.F.R. § 101.13(i)(3), which bars nutrient content claims voluntarily placed on the front of a product label that are "false or misleading in any respect."

151.   Defendant further violates the FDCA's implementing regulation, 21 C.F.R. § 1.21, because the Kroger Bread Crumbs' packaging fails to reveal material facts, namely the dangers of PHO described in detail herein, "in light of other representations," namely the misleading "0g Trans Fat" front label claim

152.   Defendant's conduct further violates The California Sherman Food, Drug, and Cosmetic Law ("Sherman Law"), Cal. Health & Safety Code § 110660, which deems food products "misbranded" if their labeling is "false or misleading in any particular," and Health & Safety Code § 110670, which bars nutrient content claims voluntarily placed on the front of a product label that fail to comply with the federal regulation for nutrient content claims (i.e., "may not be false or misleading in any respect"). Defendant's conduct also violates the following sections of the Sherman Law:

• § 110100 (adopting all FDA food labeling regulations as state regulations);

• § 110290 ("In determining whether the labeling or advertisement of a food . . . is misleading, all representations made or suggested by statement, word, design, device, sound, or any combination of these shall be taken into account. The extent that the labeling or advertising fails to reveal facts concerning the food . . . or consequences of customary use of the food . . . shall also be considered.");

• § 110390 ("It is unlawful for any person to disseminate any false advertisement of any food . . . . An advertisement is false if it is false or misleading in any particular.");

• § 110395 ("It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food . . . that is falsely advertised.");

• § 110398 ("It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded.");

• § 110400 ("It is unlawful for any person to receive in commerce any food . . . that is falsely advertised or to deliver or proffer for delivery any such food . . . .");

• § 110670 ("Any food is misbranded if its labeling does not conform with the requirements for nutrient content or health claims as set forth in Section 403(r) (21 U.S.C. Sec. 343(r)) of the federal act and the regulations adopted pursuant thereto.");

• § 110680 ("Any food is misbranded if its labeling or packaging does not conform to the requirements of Chapter 4 (commencing with Section 110290).");

29

CLASS ACTION COMPLAINT

- § 110705 ("Any food is misbranded if any word, statement, or other information required pursuant to this part to appear on the label or labeling is not prominently placed upon the label or labeling and in terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use.");

- § 110760 ("It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded.");

- § 110765 ("It is unlawful for any person to misbrand any food."); and

- § 110770 ("It is unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for delivery any such food.").

153.   All of the challenged labeling statements made by Defendant thus constitute violations of the FDCA and the Sherman Law and, as such, violated the "unlawful" prong of the UCL.

154.   In accordance with Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendant from further illegal conduct and to commence a corrective advertising campaign. Plaintiff intends to purchase the Products in the future when Defendant ceases its unfair business practices and removes trans fat.

155.   Plaintiff also seeks an order for the restitution of all revenue received by Kroger from the sale of the Products which were acquired through acts of unlawful, unfair, or fraudulent competition.

## Fifth Cause of Action

### California Unfair Competition Law, Fraudulent Prong

### Cal. Bus. & Prof. Code §§ 17200 *et seq.*

156.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

157.   Defendant leveraged its deception to induce Plaintiff and members of the Subclass to purchase products that were of lesser value and quality than advertised.

158.   Plaintiff suffered injury in fact and lost money or property as a result of Defendant's deceptive advertising: she was denied the benefit of the bargain when she decided to purchase the Kroger Bread Crumbs over competitor products, which are less expensive or contain no artificial trans fat.

159.   The acts of Defendant as alleged herein constitute "fraudulent" business acts and practices in that Defendant's conduct has a likelihood, capacity or tendency to deceive Plaintiff, the Subclass, and the general public.

160.   In accordance with Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendant from further fraudulent acts and practices, and to commence a corrective advertising campaign.

161.   Plaintiff further seeks an order for the restitution of all revenue received by Kroger from the sale of the Kroger Bread Crumbs containing artificial trans fat and the false "0g Trans Fat" front label claim.

### Sixth Cause of Action
**California Unfair Competition Law, Unfair Prong**
**Cal. Bus. & Prof. Code §§ 17200 *et seq.***

162.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

163.   Cal. Bus. & Prof. Code § 17200 prohibits any "unlawful, unfair or fraudulent business act or practice."

164.   Defendant leveraged its deception to induce Plaintiff and members of the Subclass to purchase products that were of lesser value and quality than advertised.

165.   Plaintiff suffered injury in fact and lost money or property as a result of Defendant's deceptive advertising: she was denied the benefit of the bargain when she decided to purchase the Kroger Bread Crumbs over competitor products, which are less expensive and/or contain no artificial trans fat.

166.   Had Plaintiff been aware of Defendant's false and misleading advertising tactics, she would not have purchased the Kroger Bread Crumbs.

167.   The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant as alleged herein constitute "unfair" business acts and practices because Defendant's conduct is:

    a.    immoral, unethical, unscrupulous, and offends public policy;

    b.    the gravity of Defendant's conduct outweighs any conceivable benefit of such conduct; and

    c.    the injury to consumers caused by Defendant's conduct is substantial, not outweighed by any countervailing benefits to consumers or competition, and not one that consumers themselves could reasonably have avoided.

168.   In accordance with Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and fraudulent acts and practices, and to commence a corrective advertising campaign.

169.   Plaintiff further seeks an order for the restitution of all revenue received by Kroger from the sale of the Kroger Bread Crumbs which were acquired through acts of unlawful, unfair, or fraudulent competition.

## Seventh Cause of Action

### California False Advertising Law,

### Cal. Bus. & Prof. Code §§ 17500 *et seq*.

170.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

171.   In violation of Cal. Bus. & Prof. Code §§ 17500 *et seq*., the advertisements, labeling, policies, acts, and practices described herein were designed to, and did, result in the purchase and use of the Kroger Bread Crumbs without the knowledge that they contained harmful amounts of toxic artificial trans fat.

172.   Defendant knew and reasonably should have known that the labels on the Kroger Bread Crumbs were untrue and misleading.

173.   As a result, Plaintiff, the Subclass, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

### Eighth Cause of Action

**California Consumer Legal Remedies Act,**

**Cal. Civ. Code §§ 1750** *et seq.*

174.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

175.   The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

176.   Defendant's policies, acts and practices were designed to, and did, result in the purchase and use of the Products primarily for personal, family, or household purposes, and violated and continue to violate the following sections of the CLRA:

    a.   § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

    b.   § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

    c.   § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

    d.   § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

177.   As a result, Plaintiff and the Subclass have suffered irreparable harm and are entitled to damages, punitive damages, and injunctive relief.

178.   In compliance with Civ. Code § 1782, Plaintiff sent Defendant written notice of her claims on September 4, 2015.

179.   Pursuant to Section 1782 *et seq.* of the CLRA, Plaintiff notified Defendant in writing by certified mail of the particular violations of § 1770 of the Act as to the Products and demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of its intent to so act. Defendant's wrongful business practices regarding the Kroger Bread Crumbs constituted, and constitute, a continuing course of conduct in violation of the CLRA since Defendant is still representing that the Kroger Bread Crumbs have characteristics, uses, benefits, and abilities which are false and misleading, and have injured Plaintiff and the Class.

180.   Defendant received written notice on September 10, 2015.

## Ninth Cause of Action

### Breach of Express Warranty

181.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

182.   Defendant made written representations to the public, including Plaintiff, with its front label "0g Trans Fat" claim.

183.   These promises and related promises printed on the label became part of the basis of the bargain between the parties and thus constituted an express warranty.

184.   Thereon, Defendant sold the goods to Plaintiff and other consumers who bought the goods from Defendant.

185.   However, Defendant breached this express warranty in that the Kroger Bread Crumbs do not contain "0g Trans Fat" because they contain partially hydrogenated oil, which necessarily contains artificial trans fat.

186.   As a result of this breach, Plaintiff and other consumers in fact did not receive goods as warranted by Defendant.

187. As a proximate result of this breach of warranty by Defendant, Plaintiff and other consumers have been damaged in an amount to be determined at trial.

## XIV.   **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself, all others similarly situated, and the general public, prays for judgment against Defendant as follows:

A.   An order confirming that this class action is properly maintainable as a nationwide class action as defined above, appointing Plaintiff and her undersigned counsel to represent the Class, and requiring Defendant to bear the cost of class notice;

B.   An order requiring Defendant to pay restitution to Plaintiff and class members so that they may be restored the money which Kroger acquired by means of any unfair, deceptive, unconscionable, fraudulent, and negligent acts;

C.   An order requiring Defendant to disgorge any benefits received from Plaintiff and unjust enrichment realized as a result of its improper and misleading advertising and marketing of the Kroger Bread Crumbs;

D.   An order declaring the conduct complained of herein violates the Unfair Competition Law;

E.   An order requiring Defendant to pay restitution and damages to Plaintiff and the 0g Trans Fat Claim Subclass members so that they may be restored any money which was acquired by means of any unfair, deceptive, unconscionable, fraudulent, or negligent acts;

F.   An award of punitive damages in an amount to be proven at trial;

G.   An order enjoining Kroger's deceptive, unconscionable, fraudulent and unfair practices;

H.   An order requiring Kroger to engage in a corrective advertising campaign;

I.   An award of pre-judgment and post-judgment interest;

J.   An award of attorney fees and costs; and

K.      Such other and further relief as this Court may deem just, equitable, or proper.

## XV.   <u>JURY DEMAND</u>

Plaintiff demands a trial by jury on her claims for damages. She does not seek a jury trial for her claims in equity.


DATED: October 15, 2015                    Respectfully Submitted,

                                           /s/ Gregory S. Weston

                                           **THE WESTON FIRM**
                                           GREGORY S. WESTON
                                           DAVID ELLIOT
                                           1405 Morena Blvd., Suite 201
                                           San Diego, CA 92110
                                           Telephone:   (619) 798-2006
                                           Facsimile:   (313) 293-7071

                                           ***Counsel for Plaintiff***