# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| SHAVONDA HAWKINS, | CASE NO. 15cv2320 JM(BLM) |
|---|---|
| Plaintiff, | ORDER GRANTING MOTION TO DISMISS |
| v. | |
| THE KROGER COMPANY, | |
| Defendant. | |

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant The Kroger Company ("Kroger") moves to dismiss Plaintiff Shavonda Hawkins's ("Plaintiff") complaint for failure to state a claim. Plaintiff opposes the motion. The court finds the matters presented appropriate for resolution without oral argument pursuant to L.R. 7.1(d)(1). For the reasons set forth below, the court grants the motion to dismiss and instructs the Clerk of Court to close the file.

## BACKGROUND

On October 15, 2015, Plaintiff commenced this diversity action alleging nine state law claims for (1) violation of California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§17200 et seq., unfair prong; (2) violation of UCL, unlawful prong; (3) breach of implied warranty of merchantability; (4) violation of UCL, unlawful prong; (5) violation of UCL, fraudulent prong; (6) violation of UCL, unfair prong; (7) violation of California False Advertising Law ("FAL"), Cal. Bus. & Prof.

§§17500 et seq.; (8) violation of California Consumer Legal Remedies Act ("CLRA"), Cal. Civil Code §§1750 et seq.; and (9) breach of express warranty. Plaintiff seeks to represent a class of similarly situated individuals defined as:

> All persons who purchased in the United States, on or after January 1, 2008, Kroger bread crumb products containing partially hydrogenated oil.

All of Plaintiff's claims relate to Kroger's sale of Kroger Bread Crumbs ("KBCs") that allegedly contain partially hydrogenated oil ("PHO"). In broad brush, Plaintiff alleges a mislabeling claim and an injury claim. Plaintiff generally alleges that Kroger misleadingly and unlawfully advertises KBCs as containing "0g Trans Fat" on the front of the product label when, in fact, the product contains more that 0g but less than 0.5g Trans Fat. Under the second theory, Plaintiff alleges that there is no safe level of PHO. Plaintiff alleges that the consumption of PHOs causes adverse effects to the cardiovascular system, is linked to multiple forms of cancer, causes Type-2 diabetes, contributes to mental decline, and death.

Plaintiff alleges that she purchased KBCs substantially based upon the deceptive labeling of 0gTrans Fat. (Compl. ¶76). She has purchased KBCs for about 15 years. However, it was not until August 2015 when she first discovered that KBCs contain PHOs. In purchasing KBCs, Plaintiff allegedly did not receive the sought after benefits from the product.

In broad brush, Plaintiff concludes that including an additive containing PHOs to KBCs violates state consumer practices and constitutes an unfair business practice. Plaintiff also alleges that there are adequate and reasonable alternatives to using products containing PHOs.

## DISCUSSION

**Legal Standards**

Federal Rule of Civil Procedure 12(b)(6) dismissal is proper only in "extraordinary" cases. United States v. Redwood City, 640 F.2d 963, 966 (9th Cir. 1981). Courts should grant 12(b)(6) relief only where a plaintiff's complaint lacks a "cognizable legal theory" or sufficient facts to support a cognizable legal theory.

Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990). Courts should dismiss a complaint for failure to state a claim when the factual allegations are insufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (the complaint's allegations must "plausibly suggest[]" that the pleader is entitled to relief); Ashcroft v. Iqbal, 556 U.S. 662 (2009) (under Rule 8(a), well-pleaded facts must do more than permit the court to infer the mere possibility of misconduct). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 678. Thus, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The defect must appear on the face of the complaint itself. Thus, courts may not consider extraneous material in testing its legal adequacy. Levine v. Diamanthuset, Inc., 950 F.2d 1478, 1482 (9th Cir. 1991). The courts may, however, consider material properly submitted as part of the complaint. Hal Roach Studios, Inc. v. Richard Feiner and Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989).

Finally, courts must construe the complaint in the light most favorable to the plaintiff. Concha v. London, 62 F.3d 1493, 1500 (9th Cir. 1995), cert. dismissed, 116 S. Ct. 1710 (1996). Accordingly, courts must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them. Holden v. Hagopian, 978 F.2d 1115, 1118 (9th Cir. 1992). However, conclusory allegations of law and unwarranted inferences are insufficient to defeat a Rule 12(b)(6) motion. In Re Syntex Corp. Sec. Litig., 95 F.3d 922, 926 (9th Cir. 1996).

**The Motion**

Kroger raises several arguments in support of its motion to dismiss. Kroger argues that Plaintiff lacks statutory standing under California law, the mislabeling claims are preempted by federal law, the primary jurisdiction doctrine applies under the circumstances of this case, and the allegations to support Plaintiff's claims are insufficient. Each argument is discussed in turn.

<u>Standing</u>

Kroger argues that Plaintiff lacks standing under California's unfair competition laws to bring any of Plaintiff's claims. The California Legislature framed the "UCL's substantive provision in 'broad, sweeping language,' [] and provided 'courts with broad equitable powers to remedy violations.'" Kwikset Corp. v. Superior Court, 51 Cal.4th 310, 320 (2011) (citations omitted). In explaining the impact of Proposition 64 on the scope of those individuals with standing to assert a UCL claim, the California Supreme Court stated:

> In 2004, the electorate substantially revised the UCL's standing requirement; where once private suits could be brought by 'any person acting for the interests of itself, its members or the general public' (former § 17204, as amended by Stats.1993, ch. 926, § 2, p. 5198), now private standing is limited to any 'person who has suffered injury in fact and has lost money or property' as a result of unfair competition (§ 17204, as amended by Prop. 64, as approved by voters, Gen. Elec. (Nov. 2, 2004) § 3; (citations omitted). The intent of this change was to confine standing to those actually injured by a defendant's business practices and to curtail the prior practice of filing suits on behalf of ' "clients who have not used the defendant's product or service, viewed the defendant's advertising, or had any other business dealing with the defendant...." ' ( Californians for Disability Rights, at p. 228 [46 Cal.Rptr.3d 57, 138 P.3d 207], quoting Prop. 64, § 1, subd. (b)(3).) While the voters clearly intended to restrict UCL standing, they just as plainly preserved standing for those who had had business dealings with a defendant and had lost money or property as a result of the defendant's unfair business practices. (Prop.64, § 1, subds. (b), (d); see § 17204.)

<u>Id.</u> at 320-21 (quoting <u>Clayworth v. Pfizer, Inc.</u> 49 Cal.4th 758, 788 (2010)). The Supreme Court noted that standing under the UCL is narrower than standing under Article III, Section 2 of the United States Constitution, "which may be predicated on a broader range of injuries." <u>Id.</u> at 324. UCL specifically requires the "injury in fact" to involve "lost money or property." <u>Id.</u> "[T]he quantum of lost money or property necessary to show standing is only so much as would suffice to establish injury in fact under the federal inquiry." <u>Id.</u> Moreover, Proposition 64 requires that the economic injury "come 'as a result of' the unfair competition." <u>Id.</u> at 326.

Plaintiff, relying exclusively on Article III standing cases, does not directly address statutory standing under California law. In order to prevail on any of her

claims (UCL, FAL, CLRA, and warranty claims), Plaintiff must establish a pecuniary injury, reliance, and "immediate" causation. TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 825 n.1 (9th Cir. 2011). To determine statutory standing, the court turns to the merits of Plaintiff's claims.

The mislabeling claim fails for two different reasons. First, the Ninth Circuit has held that claims regarding the statement "0g Trans Fat" are expressly preempted.

> [Plaintiff's] claims regarding the "0g Trans Fat" statement, located on the front of [Defendant's] packaging, are expressly preempted by the Federal Food, Drug and Cosmetic Act ("FDCA"), as amended by the Nutrition Labeling and Education Act ("NLEA"). 21 U.S.C. § 343–1(a)(5). The statement is an express nutrient content claim that the Federal Food and Drug Administration ("FDA") not only permits, 21 C.F.R. § 101.13(i)(3), but further instructs should mirror the Nutrition Facts panel, see 58 Fed.Reg. 44020, 44024–25 (Aug. 18, 1993) (stating that any discrepancy between a nutrient content claim and the Nutrition Facts panel would be "confusing to consumers, and this consequence is unintended"). Here, because [the product] contains less than 0.5 grams of trans fat per serving, the Nutrition Facts panel must express this amount as zero. 21 C.F.R. § 101.9(c)(2)(ii). Accordingly, the same rule applies to the statement on the front of [the product's] packaging. In essence, Plaintiff seeks to enjoin and declare unlawful the very statement that federal law permits and defines. Such relief would impose a burden through state law that is not identical to the requirements under section 343. These claims are therefore expressly preempted. See Degelmann v. Advanced Med. Optics, Inc., 659 F.3d 835, 840–42 (9th Cir.2011).

Carrea v. Dreyer's Grand Ice Cream, Inc., 475 Fed.Appx. 475 (9th Cir. 2012).

Here, Plaintiff does not dispute that the label of KBCs (identifying "0g Trans Fat") complies with federal law mandating that "[i]f the serving contains less than 0.5 grams, the content, when declared, shall be expressed as zero." 21 C.F.R. §101.9(c)(2)(ii). As Plaintiff does not dispute that KBC contain less than 0.5 g of trans fat, the mislabeling claims are expressly preempted by federal law.[1]

Second, to establish a claim under any of Plaintiff's causes of action, she must demonstrate the statutory standing requirements of causation, reliance, and injury. Because the UCL claim sounds in fraud, plaintiff is required to prove "actual reliance on the allegedly deceptive or misleading statements," Kwikset, 51 Cal.4th 310 (quoting

---

[1] The court rejects Plaintiff's argument that the court should follow Reid v. Johnson & Johnson, 780 F.3d 952 (9th Cir. 2015), and not Carrea. Reid involved the statement "no trans fat," and not a specially defined regulatory term like in Carrea.

In re Tobacco II Cases, 46 Cal.4th 298 (2009)) (internal quotation marks omitted), and that "the misrepresentation was an immediate cause of [the] injury-producing conduct." In re Tobacco II Cases, 46 Cal. 4th 298. The complaint does not satisfy these requirements.

Plaintiff does not adequately allege that she relied on the "0g Trans Fat" label in purchasing KBC and that the representation was an immediate cause of Plaintiff's injuries. Plaintiff alleges that she purchased KBCs for 15 years, about six times a year, before commencing this action. (Compl. ¶¶71-72). In August 2015, Plaintiff allegedly learned for the first time that KBCs contain trans fat. (Compl. ¶74). While the Complaint does not identify when, if ever, Plaintiff first read the label, the Complaint alleges that the statement "0g Trans Fat" was "a substantial factor in her purchases" and, in any event, she should be excused from the actual reliance requirement because, "[l]ike most consumers, Ms. Hawkins is a busy person and cannot reasonably inspect every ingredient of every food that she purchases." (Compl. ¶108).

These allegations fall short of establishing reliance. In Cullen v. Netflix, 2013 W.L. 140103 (N.D. Cal. Jan. 10, 2013), the district court dismissed the CLRA, FAL, and UCL claims with prejudice because the timing of plaintiff's allegations, like here, showed that reliance was not possible. There the hearing impaired plaintiff commenced a Netflix subscription in 2009. In 2011, plaintiff read a Netflix blog indicating that "there are more than 3,500 TV episodes and movies with subtitles in Netflix's streaming library." Shortly thereafter plaintiff discovered that there were fewer subtitles than represented and commenced the consumer fraud action. The district court reasoned that plaintiff lacked statutory standing and could not have relied on the 2011 statements because his Netflix subscription commenced in 2009. Therefore, plaintiff purchased the subscription for some other reason and could not have relied on the allegedly false statement.

Here, there are fewer allegations supporting the reliance requirement than in Netflix. Plaintiff used KBCs for 15 years, six times a year, and did not discover the

"0g Trans Fat" statement until August 2015. There are no allegations concerning the manner or circumstances in which Plaintiff learned of the challenged statement. To explain the lack of reliance allegations, Plaintiff alleges that she is a busy person who cannot reasonably be expected to read the label and she is a lay person without specialized knowledge about trans fat. (Compl. ¶¶105-110). In essence, Plaintiff alleges that she used KBCs (i.e. generic bread crumbs) over 90 times since 2000. Plaintiff simply cannot establish that she relied upon the unread statements in 2000 to support the August 2015 purchase and/or discovery of the statement ("0g Trans Fat"), or that the statement caused her any injury. The allegations not only fail to satisfy Rule 8(a), but the applicable particularity standards set forth in Rule 9(b) as well. See Sateriale v. R. J. Reynolds Tobacco Co., 697 F.3d 777, 793, 794 (9th Cir. 2012) (UCL and CLRA claims sound in fraud and must comply with Rule 9(b)). Furthermore, Plaintiff fails to cite any authorities excusing her failure to establish reliance because she was too busy to read the label over a 15 year period of time. Finally, Plaintiff cannot possibly have relied on the allegedly false statement because she purchased KBCs for 15 years before learning of the statement.

Similarly, Plaintiff fails to allege a cognizable injury sufficient to comply with California's statutory standing requirements. While the Complaint and briefing contain numerous references to articles concerning the negative effects of trans fat, the Complaint alleges she was harmed because consuming trans fat in any quantity "inflames and damages vital organs and increases the risk of heart disease, diabetes, cancer, and death." (Compl. ¶¶104). She also alleges that she lost monies because "similar products without the misleading labeling [] would have cost less." (Compl. ¶105). Such generalized and hypothetical risks of harm are insufficient to establish a cognizable injury sufficient to satisfy the statutory standing requirements. Simpson v. Cal Pizza Kitchen, Inc., 989 F.Supp. 2d 1015 (S.D. Cal. 2013) (dismissing case where plaintiff alleged generalized harm arising from the ingestion of trans fat). Plaintiff's speculative allegations fail to establish an economic injury based upon an economic

1 loss due to the statement "0g Trans Fat."[2]

2 In sum, because Plaintiff has failed to sufficiently establish California's statutory standing requirements, the court dismisses the complaint. As there are no circumstances under which Plaintiff can establish statutory standing, the complaint is dismissed with prejudice. The Clerk of Court is instructed to close the file.

**IT IS SO ORDERED.**

DATED: March 17, 2016

Hon. Jeffrey T. Miller
United States District Judge

cc:   All parties

---

[2] As the court concludes that Plaintiff fails to establish statutory standing, the court does not reach the other arguments raised by Kroger.