

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

OCT 26 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

SHAVONDA HAWKINS, on behalf of herself and all others similarly situated,

    Plaintiff - Appellant,

v.

THE KROGER COMPANY,

    Defendant - Appellee.

No. 16-55532

D.C. No. 3:15-cv-02320-JM-BLM
U.S. District Court for Southern California, San Diego

**MANDATE**

The judgment of this Court, entered October 04, 2018, takes effect this date.

This constitutes the formal mandate of this Court issued pursuant to Rule 41(a) of the Federal Rules of Appellate Procedure.

FOR THE COURT:

MOLLY C. DWYER
CLERK OF COURT

By: Rebecca Lopez
Deputy Clerk
Ninth Circuit Rule 27-7

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| SHAVONDA HAWKINS, on behalf of herself and all others similarly situated, *Plaintiff-Appellant*, <br><br> v. <br><br> THE KROGER COMPANY, *Defendant-Appellee.* | No. 16-55532 <br><br> D.C. No. 3:15-cv-02320-JM-BLM <br><br> OPINION |

Appeal from the United States District Court
for the Southern District of California
Jeffrey T. Miller, Senior District Judge, Presiding

Argued and Submitted December 7, 2017
Pasadena, California

Filed October 4, 2018

Before: Marsha S. Berzon and Jacqueline H. Nguyen,
Circuit Judges, and Frederic Block,[*] District Judge.

Opinion by Judge Block

---

[*] The Honorable Frederic Block, United States Senior District Judge for the Eastern District of New York, sitting by designation.

## SUMMARY[**]

### Preemption / Standing / Product Labels

The panel reversed the district court's Fed. R. Civ. P. 12(b)(6) dismissal of plaintiff's putative consumer class action alleging that The Kroger Company sold Kroger Bread Crumbs that included misleading labels in violation of California law.

Plaintiff alleged that she purchased the bread crumbs by relying on information contained on the face of the label that the product contained "0g Trans Fat per serving." Plaintiff further alleged that contrary to the claim on the label, the bread crumbs "contained artificial trans fats, and caused heart disease, diabetes, cancer, and death."

Concerning plaintiff's claim under California law of reliance on misleading labels, the panel held that plaintiff had standing because she adequately alleged that she relied on the label's misrepresentations and would not have purchased the product without those misrepresentations. The panel also held that the label statement "0g Trans Fat per serving" was not preempted by federal regulations. Specifically, the panel noted that the federal Food and Drug Administration ("FDA") regulations at issue involved two categories: rules contained in 21 C.F.R. § 101.9 governing what must be stated within the Nutrition Facts Panel; and rules governing "nutrient content claims." The panel applied the holding in *Reid v. Johnson & Johnson*, 780 F.3d 952, 960 (9th Cir. 2015)

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

(holding that the statement "No Trans Fat" was not allowed outside the Nutrition Facts Panel since the product did contain trans fat, notwithstanding that the Panel reported it contained 0g trans fat), and held that a consumer reading the label in this case could be misled, similarly, into believing that the product was free of trans fat. The panel further held that the federal regulations also bolstered their conclusion in this case. The panel concluded that because the FDA regulations did not authorize the contested statement, plaintiff's labeling claims were not preempted.

Concerning plaintiff's "use claims" under California law – that it was illegal to include trans fat in products since it was not for human consumption and an unlawful food additive – the panel held that plaintiff had statutory standing for the same reason she had statutory standing to bring her labeling claims. The panel further held that the issue of whether the claim was federally preempted by a Food and Drug Administration 2015 Final Determination on the subject was not addressed by the district court and not fully briefed on appeal. The panel declined to exercise its discretion to consider the issue, and remanded to the district court to decide in the first instance to what extent, if at all, the state law use claims were federally preempted.

**COUNSEL**

Gregory S. Weston (argued) and David Elliot, The Weston Firm, San Diego, California, for Plaintiff-Appellant.

Jacob M. Harper (argued) and Nicole S. Phillis, Davis Wright Tremaine LLP, Los Angeles, California, for Defendant-Appellee.

## OPINION

BLOCK, District Judge:

Trans fat has become increasingly recognized as a dangerous substance and a leading cause of numerous serious ailments, including heart disease and diabetes. Food and Drug Administration ("FDA") regulations govern the information reported within a food product's Nutrition Facts Panel on the product's label.[1] As for trans fat, FDA regulations provided, at all relevant times, that if the product contained "less than 0.5 gram" trans fat, as it did in this case, it was required to tell the consumer on the Nutrition Facts Panel that it contained 0 grams trans fat, even though it contained this dangerous food additive.

We are asked to determine, *inter alia*, whether these FDA trans fat regulations governing the contents of the Nutrition Facts Panel preempt California's unfair competition laws proscribing false or misleading advertising elsewhere on a food product's label. We hold that they do not; accordingly, the plaintiff can challenge the legitimacy of defendant's product advertising on the face of the label that it contains "0g Trans Fat per serving." In doing so, we take the occasion to reinforce and apply our holding in *Reid v. Johnson & Johnson* that "a requirement to state certain facts in the

---

[1] Somewhat confusingly, the FDA regulations refer to the ubiquitous box that contains nutritional facts as "nutrition labeling," 21 C.F.R. § 101.9, while also referring to the rest of the product's exterior as labeling. For clarity, and consistent with other decisions of this Court, this decision uses "Nutrition Facts Panel" to refer to the "nutrition labeling," *see, e.g.*, *Lilly v. ConAgra Foods, Inc.*, 743 F.3d 662, 664 (9th Cir. 2014), and all other references to labels to refer to information outside the Nutrition Facts Panel.

HAWKINS V. THE KROGER COMPANY 5

nutrition label is *not a license to make that statement elsewhere* on the product." 780 F.3d 952, 960 (9th Cir. 2015) (emphasis added).

**I**

Hawkins' complaint alleges the following:[2] The Kroger Company ("Kroger") sells Kroger Bread Crumbs ("KBCs") in stores in California, including the supermarket chain Ralph's. Hawkins regularly purchased KBCs at several Ralph's locations between 2000 and 2015. In making the purchases, she relied on the information contained on the face of the label that the product contained "0g Trans Fat per serving." In August 2015, she discovered that, contrary to the claim on the label, KBCs "contained artificial trans fat, and caused heart disease, diabetes, cancer, and death."[3]

---

[2] We must "accept the complaint's well-pleaded factual allegations as true, and construe all inferences in the plaintiff's favor for the purposes of evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 864 (9th Cir. 2016).

[3] On June 17, 2015, the FDA had released a Final Determination Regarding PHOs ("2015 Final Determination"), in which it declared: "[T]here is no longer a consensus among qualified experts that partially hydrogenated oils (PHOs), which are the primary dietary source of industrially-produced trans fatty acids (IP-TFA) are generally recognized as safe (GRAS) for any use in human food. " 2015 Final Determination, 80 Fed. Reg. 34650, 34650 (June 17, 2015). However, the 2015 Final Determination did not prohibit use of PHOs in food until June 18, 2018, to allow small businesses time to adjust, minimize market disruptions, and allow growth, harvest, and processing of new crops. *Id.* at 34668–69. On May 21, 2018, the FDA extended this compliance date, providing a range of new compliance dates depending on whether the manufacturer petitioned for a new date and the date on which the food was manufactured. Final Determination Regarding Partially Hydrogenated

In October 2015, Hawkins brought a putative class action against Kroger seeking to represent a class of consumers who were misled by the label ("the labeling claims") and had used the dangerous product ("the use claims"). The complaint alleged violations of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*, Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*, and common law claims for breach of implied warranty of merchantability and breach of express warranty. It sought damages, pre-judgment and post-judgment interest, injunctive[4] and declaratory relief, attorneys' fees, and costs.

The district court granted Kroger's Rule 12(b)(6) motion to dismiss, with prejudice, holding that Hawkins lacked standing to bring these claims, and, alternatively, that the labeling claims were preempted by federal law.

The district court reasoned that plaintiff lacked standing to bring her labeling claims because it believed that she did not allege that she read the "0g Trans Fat per serving" label on the face of the label and therefore could not establish reliance or injury. It alternatively held that the labeling claims

---

Oils, 83 Fed. Reg. 23358, 23359 (May 21, 2018) ("2018 Final Determination").

[4] Hawkins has since stated that "[b]ecause Kroger no longer engages in the conduct described in the complaint, [she] almost certainly would not pursue such relief on remand." Hawkins's Suppl. Br. at 3.

HAWKINS V. THE KROGER COMPANY 7

were preempted.[5] The district court dismissed Hawkins's use claims for lack of standing because her alleged injuries were too speculative. The district court did not address whether the use claims would be preempted.

Because we disagree with all of the district court's holdings, we reverse and remand for further proceedings.

## II

"We review de novo a district court's order granting a motion to dismiss on preemption grounds, for lack of standing, or for failure to state a claim upon which relief can be granted." *Reid*, 780 F.3d at 958.

### A. Labeling Claims

### 1. Standing

We turn first to Hawkins's statutory standing to bring her labeling claims. California law requires plaintiffs alleging UCL and FAL claims to show that they "ha[ve] suffered injury in fact and ha[ve] lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code §§ 17204 (UCL); *see id.* § 17535 (FAL); *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1103 (9th Cir. 2013) (UCL and FAL standing requirement are identical) (citing *Kwikset Corp. v. Sup. Ct.*,

---

[5] The district court commingled the questions of statutory standing and preemption, but these are two distinct legal issues and will be addressed separately. We note also that "a dismissal for lack of statutory standing is properly viewed as a dismissal for failure to state a claim rather than a dismissal for lack of subject matter jurisdiction." *Vaughn v. Bay Envtl. Mgmt., Inc.*, 567 F.3d 1021, 1024 (9th Cir. 2009).

8     HAWKINS V. THE KROGER COMPANY

246 P.3d 877, 884 (Cal. 2011)). A plaintiff is required to show "'some form of economic injury' as a result of his transactions with the defendant." *Hinojos*, 718 F.3d at 1104 (quoting *Kwikset*, 246 P.3d at 885). However, "the quantum of lost money or property necessary to show standing is only so much as would suffice to establish injury in fact." *Kwikset*, 246 P.3d at 886.

California law also requires causation—namely, that the plaintiff relied on the misrepresentation on the label. "A consumer who relies on a product label and challenges a misrepresentation contained therein can satisfy the standing requirement of section 17204 by alleging . . . that he or she would not have bought the product but for the misrepresentation." *Id.* at 890. "That assertion is sufficient to allege causation [and it] is also sufficient to allege economic injury." *Id.*; *see also Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 965 (9th Cir. 2018).

Hawkins alleges that she relied upon the label and would not have bought the product without the misrepresentation. For example, paragraph 76 of the complaint states: "Plaintiff relied on Defendant's '0g trans fat' claim as a substantial factor in her purchases"; paragraph 101 states: "Plaintiff purchased the Kroger Bread Crumbs believing they had the qualities she sought based on the Products' deceptive labeling"; and paragraph 107 states: "Plaintiff, on at least one occasion, would not have purchased the Kroger Bread Crumbs absent Defendant's misrepresentation."

In holding that Hawkins did not plead reliance, the district court misread Hawkins's complaint. It interpreted the complaint as alleging that she did not read the "0g Trans Fat per serving" product label until August 2015, fifteen years

after she began purchasing the product. However, the paragraph cited by the district court to support its conclusion reads, "Plaintiff first discovered Defendant's *unlawful acts* described herein in August 2015, when *she learned that Kroger Bread Crumbs contained artificial trans fat . . . .*" Compl. ¶ 74 (emphases added). This paragraph does not allege that she first read the label in August 2015; it alleges she first discovered the label was misleading on that date. The district court did not address the three paragraphs where Hawkins concretely alleged that she relied on the label.

Because Hawkins adequately alleged that she relied on the label's misrepresentations and would not have purchased the product without those misrepresentations, she has adequately alleged standing for her labeling claim.

**2. Preemption**

We next turn to whether Hawkins's state law mislabeling claim challenging the statement "0g Trans Fat per serving" is preempted by federal regulations.

**a. Preemption Generally**

Preemption is guided by two principles: first, "the purpose of Congress is the ultimate touchstone in every pre-emption case," and second, "[i]n all pre-emption cases, and particularly in those in which Congress has 'legislated . . . in a field which the States have traditionally occupied,' . . . we 'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (alterations in

original) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)).

**b. The NLEA**

"The Nutritional Labeling and Education Act ('NLEA') amended the Food, Drug, and Cosmetic Act ('FDCA') to 'establish[] uniform food labeling requirements, including the familiar and ubiquitous Nutrition Facts Panel found on most food packages.'" *Reid*, 780 F.3d 959 (alterations in original) (quoting *Lilly*, 743 F.3d at 664). "The 'NLEA also provides that no state may "directly or indirectly establish any requirement for the labeling of food that is not identical" to the federal requirements.'" *Id.* (quoting *Lilly*, 743 F.3d at 664–65); *see also* 21 U.S.C. § 343-1(a)(5).

"The phrase 'not identical to' means 'that the State requirement directly or indirectly imposes obligations or contains provisions concerning the composition or labeling of food that are not imposed by or contained in the applicable federal regulation or differ from those specifically imposed by or contained in the applicable federal regulation.'" *Reid*, 780 F.3d at 959 (quoting, with alterations, *Lilly*, 743 F.3d at 665); *see also* 21 C.F.R. § 100.1(c)(4). However, the NLEA "does not preempt any state law unless the law is 'expressly preempted.'" *Id.* (quoting *Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 337–38 (3d Cir. 2009)); nor does it "preempt state law-based causes of action that are identical to the federal labeling requirements," *id.* (citing *POM Wonderful LLC v. Coca-Cola Co.*, 134 S. Ct. 2228, 2238 (2014)).

Therefore, if FDA regulations expressly permit the claim "0g Trans Fat per serving" on the face of a product's

packaging, any state law claim to the contrary would be preempted.

### c. The Nutrition Facts Panel and Nutrient Content Claims

The FDA regulations at issue here can broadly be separated into two categories. First, there are rules, contained in 21 C.F.R. § 101.9, governing what must be stated within the Nutrition Facts Panel, including the amount of various nutrients, such as fat, saturated fat, trans fat, sodium, and carbohydrates. Second, there are rules governing "nutrient content claims" made elsewhere on the product. These are claims that "expressly or implicitly characterize[] the level of a nutrient," 21 C.F.R. § 101.13(b); they are further subdivided between general and specific rules, 21 C.F.R. §§ 101.13 (general rules), 101.62 (specific rules regarding fat).

Critically, the rules that govern claims made within the Nutrition Facts Panel and the rules that govern nutrition content claims elsewhere on the label are different: "Information that is required or permitted by § 101.9 . . . and that appears as part of the nutrition label, is not a nutrient content claim . . . . If such information is declared elsewhere on the label . . . it is a nutrient content claim and is subject to the requirements for [such] claims." 21 C.F.R. § 101.13(c).

Without § 101.13(c), this would be a simple case. At the time Hawkins made the purchases, the relevant regulation provided that within the Nutrition Facts Panel, "[i]f the serving contains less than 0.5 gram, the content shall be expressed as zero." 21 C.F.R. § 101.9(c)(2)(ii) (2015). Therefore, the claim "0g Trans Fat per serving" was not only permitted within the panel, but mandated. However, since,

12        HAWKINS V. THE KROGER COMPANY

under § 101.13(c), a statement as to the amount of a nutrient mandated inside the Nutrition Facts Panel is not necessarily permitted by the FDCA elsewhere on the packaging, further analysis is required to determine if the FDCA allows the same "0g Trans Fat per serving" claim elsewhere on the label. The district court erred by not performing this analysis.

### d. *Reid v. Johnson & Johnson*

In *Reid*, we determined that the statement "No Trans Fat" was not allowed outside of the Nutrition Facts Panel since the product did contain trans fat, notwithstanding that the Nutrition Facts Panel reported that it contained 0g trans fat. 780 F.3d at 963. As we wrote:

> Though the nutritional label clearly contains information about nutrient content, the claims made in it are not considered "nutrient content claims" for the purposes of FDA regulations. *See* 21 C.F.R. § 101.13(c). While a required statement inside a nutrition label escapes regulations reserved for nutrient content claims, the identical statement outside of the nutrition label is still considered a nutrient content claim and is therefore subject to section 101.13.

*Id.* at 960.

"No Trans Fat" was an "expressed" nutrient content claim because it was "[a] direct statement about the level . . . of [trans fat] in the food." *Id.* at 962 (alterations in original) (quoting § 101.13(b)(1)). Therefore, under the regulations, it could only be made if it did "not in any way implicitly

HAWKINS V. THE KROGER COMPANY 13

characterize the level of the nutrient in the food and [was] not false or misleading in any respect." 21 C.F.R. § 101.13(i)(3). We held that "No Trans Fat" was misleading because a reasonable consumer might infer that the product did not contain trans fat. *Reid*, 780 F.3d at 962–63.

We "bolster[ed]" this conclusion in *Reid* by noting that under §§ 101.62(b)–(c) "the FDA has expressly allowed 'No Fat' and 'No Saturated Fat' nutrient content claims for products that contain less than 0.5 grams of fat or saturated fat per serving. By contrast, the FDA explicitly decided *not* to authorize a 'No Trans Fat' nutrient content claim in light of a lack of scientific information." *Id.* at 962 (citing *Food Labeling: Trans Fatty Acids in Nutrition Labeling, Nutrient Content Claims and Health Claims*, 68 Fed. Reg. 41434, 41464–65 (July 11, 2003)). Thus, the only interpretation which gave full meaning to each word of the regulations was that the claim "No Trans Fat" was not authorized. Therefore, we rejected the defendant's argument that, because it was required to state the product had "0 grams trans fat per serving" within the Nutrition Facts Panel, it should be allowed to make an equivalent claim elsewhere on the label. *Reid*, 780 F.3d at 963.

e. The Present Case

*Reid* squarely controls here. As in *Reid*, we have an expressed nutrient content claim that the product does not contain trans fat. Also as in *Reid*, the manufacturer was required to state that the product had "0g trans fat per serving" within the Nutrition Facts Panel. And, just as in *Reid*, because of § 101.13(c), this requirement did not give the manufacturer license to make the same claim elsewhere on the product, and the rest of the product labeling was

14         HAWKINS V. THE KROGER COMPANY

subject to the rules governing nutrition content claims, including that the claim not be "false or misleading in any way." 21 C.F.R. § 101.13(i)(3).

It makes no difference that here the label outside the Nutrition Fact Panel stated that the product had "0g Trans Fat," whereas in *Reid* it was "No Trans Fat." Just as in *Reid*, a consumer reading the label could be misled into believing that the product was free of trans fat.

Moreover, like in *Reid*, the regulations also bolster our conclusion in this case. In addition to authorizing "no fat" and "no saturated fat" claims, §§ 101.62(b)–(c) also authorize "zero fat" and "zero saturated fat" claims. But just as the regulations do not authorize a "no *trans* fat" claim, they also do not authorize a "zero *trans* fat" claim. And we see no rational difference between "zero" and "0." Spelling out the number does not change its meaning.[6] To hold otherwise would create an illogical rule where the claim "zero trans fat" is misleading but "0 trans fat" is not.[7]

We are not the first to note that the FDA's food regulations promulgated under the NLEA are "inconsistent and incomprehensive": "A regulatory scheme intended to

---

[6] We note the FDA regulations themselves treat "zero" and "0" as equivalent; the rounding rule at issue here instructs to round down to "zero" within the Nutrition Facts Panel. *See* 21 C.F.R. § 101.9(c)(2)(ii) (2015).

[7] The district court relied on *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 475 F. App'x 113 (9th Cir. 2012), an unpublished memorandum disposition that predates *Reid*. We are not bound by *Carrea*, *see* 9th Cir. R. 36-3(a), and, for the reasons stated in the text, we do not find its reasoning persuasive.

;

HAWKINS V. THE KROGER COMPANY            15

convey accurate and clear information to consumers is instead mind-bogglingly complex and confusing." Diana R.H. Winters, *The Magical Thinking of Food Labeling: The NLEA As A Failed Statute*, 89 Tul. L. Rev. 815, 842 (2015). In particular, "the difficult and complex interaction between the preemption requirements" and "the level of specificity at which preemption must be determined" have caused "a large amount of judicial resources [to be] expended in the determination of these preliminary issues." *Id.* at 850.[8]

In this case, as we have explained, the "rounding rules" applicable to the Nutrition Facts Panel do not apply to the nutrient content claim on the face of the label. And unlike other products, where the distinction may not be inimical to the public health, falsely advertising that a food product does not contain trans fat is a health hazard.[9]

---

[8] The present case is a perfect example of the degree of difficulty in sorting out and tracking down the applicable regulations. Even the current status of the trans fat rounding rules is unclear. On May 27, 2016, the FDA issued a final rule called "Food Labeling: Revision of the Nutrition and Supplemental Facts Labels," in which it purported to reaffirm the rule that a product containing less than 0.5 grams of trans fat must list the amount as zero grams. 81 Fed. Reg. 33742, 33787–88 (May 27, 2016). However, the actual amendments to the regulation removed subsection 21 C.F.R. § 101.9(c)(2)(ii) entirely. *See* 81 Fed. Reg. at 33979. The revised version mandates the declaration of "total fat" with similar rounding rules but makes no mention of trans fat.

[9] No challenge was mounted in this case under the Administrative Procedure Act as to whether the trans fat rounding regulation was "arbitrary or capricious." *See* 5 U.S.C. § 706(2)(A); *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984). That issue is, therefore, not before us.

16 HAWKINS V. THE KROGER COMPANY

Because the FDA regulations do not authorize the contested statement, Hawkins's labeling claims are not preempted.

**B. Use Claims**

Hawkins also brought a set of claims under the theory that, under California law, it is illegal to include trans fat in products since it is not fit for human consumption and is an unlawful food additive. As noted, these claims were dismissed for lack of standing because the district court viewed the injuries as too speculative. Unlike the labeling claims, the court did not address whether the use claims were preempted.

**1. Standing**

Hawkins has statutory standing for the same reason she has statutory standing to bring her labeling claims—it is sufficient for a consumer to allege that she bought a product she would not have otherwise bought if she had known the product was harmful. *Davidson*, 889 F.3d at 965–66.

**2. Preemption**

Kroger argues, as an alternative ground for dismissal of the use claims, that they are preempted by the FDA's 2015 Final Determination that PHOs are no longer GRAS because the FDA gave food companies the three-year window before it would begin enforcement of the new determination.[10] 2015

---

[10] We note that in another recent case brought by Hawkins challenging the use of PHOs in food, a panel of this court "assume[d] without deciding that Hawkins's claims are not preempted by federal

Final Determination, 80 Fed. Reg. at 34651. This three-year window was statutorily embraced in 2016 when, as part of the Consolidated Appropriations Act of 2016, Pub. L. No. 114-113, 129 Stat. 2242 ("2016 CAA"), Congress enacted language stating no PHOs "shall be deemed unsafe . . . and no food . . . shall be deemed adulterated . . . by virtue of bearing or containing a [PHO] until" the three-year window expired. 2016 CAA § 754.

"Generally, we do not 'consider an issue not passed upon below.'" *Foti v. City of Menlo Park*, 146 F.3d 629, 638 (9th Cir. 1998) (quoting *Golden Gate Hotel Ass'n v. City & Cty. of San Francisco*, 18 F.3d 1482, 1487 (9th Cir. 1994)). "This general rule has exceptions, but invocation of those exceptions is discretionary." *Id.*

We decline to exercise our discretion here. The preemption issue was not fully briefed on appeal by either party. For example, the analysis may be different as to purchases prior to the 2015 Final Determination, between the 2015 Final Determination and the passage of the 2016 CAA, and after the passage of the 2016 CAA. These distinctions were not addressed.

---

law." *Hawkins v. AdvancePierre Foods, Inc.*, 733 F. App'x. 906, 906 (Aug. 10, 2018). The panel affirmed the lower court's dismissal of the case on the merits. *Id.* at 906–07. We leave it to the district court on remand to assess that non-precedential decision's persuasive value and relevance to this case.

Thus, we leave it to the district court on remand to decide in the first instance to what extent, if at all, the state law use claims are federally preempted.[11]

### III

Hawkins has established standing for her label and use claims. Her label claims are not preempted. On remand, the district court shall consider whether the use claims are preempted.

**REVERSED AND REMANDED**.

---

[11] Kroger brings a plethora of other alternative grounds to affirm that were not addressed by the district court. These arguments, many involving factual allegations, are best presented to the district court in the first instance on remand. *See Winter v. United States*, 244 F.3d 1088, 1092 (9th Cir. 2001) (declining to reach issue "not addressed by the district court" which "involves the resolution of disputed factual issues").