DAVIS WRIGHT TREMAINE LLP
  Jacob M. Harper (SBN 259463)
  *jharper@dwt.com*
  Nicole S. Phillis (SBN 291266)
  *nicolephillis@dwt.com*
865 South Figueroa Street, Suite 2400
Los Angeles, California 90017-2566
Telephone:  (213) 633-6800
Facsimile:  (213) 633-6899

*Attorneys for Defendant*
*The Kroger Company*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAVONDA HAWKINS, on behalf of herself and all others similarly situated,<br><br>               Plaintiff,<br><br>  vs.<br><br>THE KROGER COMPANY,<br><br>             Defendant. | No. 3:15-cv-2320-JM-BLM<br>Assigned to the Hon. Jeffrey T. Miller<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S SUPPLEMENTAL MOTION TO DISMISS**<br><br>[***Notice of Supplemental Motion to Dismiss, Request for Judicial Notice, and Proposed Order Filed Concurrently***]<br><br>Date:      March 18, 2019<br>Time:      10:00 AM<br>Court:     5D<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Action Filed:  Oct. 15, 2015 |

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................. 1

II.   FACTUAL BACKGROUND ................................................ 4

    A.    Kroger Sells Bread Crumb Products ................................ 4

    B.    Plaintiff Regularly Purchases Kroger's Product ................ 5

    C.    The FDA Expressly Permits the Use of Trans Fat in Foods ................ 5

    D.    The Court Grants Kroger's Motion to Dismiss ................ 6

    E.    Congress Affirms the FDA's Final Determination ............ 6

    F.    The Ninth Circuit Reverses and Remands ........................ 7

III.  ARGUMENT ..................................................................... 7

    A.    Hawkins' Use Claims Are Preempted (COA1—COA3) ..................... 7

        1.    The FDA Exercised its Exclusive Authority to Permit the Use of PHO During the Interim Period. ................ 8

            a.    The FDA's Final Determination Deems the Use of PHO Lawful ................ 9

            b.    Congress Affirms the Safe Harbor for the Use of Trans Fat. ................ 10

        2.    Based on the FDA's Determination, Hawkins' Use Claims Should Be Dismissed for Numerous Reasons. ................ 10

            a.    Hawkins' Use Claims Are Barred by the Doctrine of Conflict Preemption. ................ 11

            b.    The *Cel-Tech* Safe Harbor Bars Hawkins' Use Claims. ................ 14

            c.    FDA's Primary Jurisdiction Bars the Use Claims .......... 15

    B.    Hawkins' Labeling Claims Fail Because She Cannot Satisfy the Reasonable Consumer Test (COA4—COA9). ................ 16

C.    Hawkins' Causes of Action Fail for Other Claim-Specific
      Reasons..............................................................................................18

      1.    The Use Claims Under the UCL "Unlawful" Prong Fail
            (COA2). ..................................................................................18

            a.    Trans Fats Do Not Violate the FDCA. ...........................18

            b.    Without a FDCA Violation, There Is No Sherman
                  Law Violation. ..............................................................19

      2.    The Use Claims under the UCL "Unfair" Prong Fail
            (COA1). ..................................................................................20

      3.    Both Claims Under the Warranty Laws Fail (COA3 &
            COA9)......................................................................................21

      4.    The Labeling Claim Under the CLRA Is Defective
            (COA8). ..................................................................................23

D.    Hawkins Lacks Standing for Injunctive Relief....................................23

IV.    CONCLUSION ............................................................................................24

MEMORANDUM IN SUPPORT OF SUPPLEMENTAL MOTION TO DISMISS

## TABLE OF AUTHORITIES

**Pages**

**Cases**

*Alvarez v. Chevron Corp.*,
  656 F.3d 925 (9th Cir. 2011) ..........................................................................14, 22

*Aron v. U-Haul Co. of Cal.*,
  143 Cal. App. 4th 796 (2006) ...............................................................................14

*Azoulai v. BMW of N. Am. LLC*,
  No. 16-589, 2017 WL 1354781 (N.D. Cal. Apr. 13, 2017) ...................................16

*Backus v. Biscomerica Corp.*,
  No. 16-03916, 2017 WL 1133406 (N.D. Cal. Mar. 27, 2017)...................... *passim*

*Backus v. ConAgra Foods, Inc.*,
  No. 16-454, 2016 WL 3844331 (N.D. Cal. July 15, 2016)................. 8, 11, 13, 18

*Backus v. Gen. Mills*,
  No. 15-1964, 2018 WL 6460441 (N.D. Cal. Dec. 10, 2018) .............. 7, 11, 14, 19

*Backus v. Nestlé USA, Inc.*,
  167 F. Supp. 3d 1068 (N.D. Cal. 2016).................................... 2, 7, 12, 13

*Backus v. Nestlé USA, Inc.*,
  167 F. Supp. 3d at 1071–74 .................................................................................11

*Birdsong v. Apple, Inc.*,
  590 F.3d 955 (9th Cir. 2009) ................................................................................22

*Buckman Co. v Plaintiff's Legal Comm'n*,
  531 U.S. 341 (2001) .............................................................................................15

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999)........................................................... 6, 11, 14, 20

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) ...............................................................................................23

*Cordes v. Boulder Brands USA Inc.*,
  No. 18-6534, 2018 WL 6714323 (C.D. Cal. Oct. 17, 2018)................................24

## TABLE OF AUTHORITIES (CONT'D)

**Pages**

*Cox v. Gruma Corp.*,
No. 12-6502, 2013 WL 3828800 (N.D. Cal. July 11, 2013).................................16

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018) ........................................................................4, 7, 24

*Donohue v. Apple, Inc.*,
871 F. Supp. 2d 913 (N.D. Cal. 2012)....................................................................23

*Drum v. San Fernando Valley Bar Ass'n*,
182 Cal. App. 4th 247 (2010)................................................................................20

*Ebner v. Fresh, Inc.*,
838 F.3d 958 (9th Cir. 2016) ....................................................................3, 16, 17

*Freeman v. Time, Inc.*,
68 F.3d 285 (9th Cir. 1995) ............................................................................16, 17

*Geier v. Am. Honda Motor Co.*,
529 U.S. 861 (2000) ...............................................................................................13

*Haggag v. Welch Foods, Inc.*,
No. 13-341, 2014 WL 1246299 (C.D. Cal. Mar. 24, 2014) ..................................16

*Hawkins v. AdvancePierre Foods, Inc.*,
733 F. App'x 906 (9th Cir. 2018)................................................................. *passim*

*Hawkins v. AdvancePierre Foods, Inc.*,
No. 15-2309, 2016 WL 6611099 (S.D. Cal. Nov. 8, 2016) ............................13, 14

*Hawkins v. Kroger Co.*,
906 F.3d 763 (9th Cir. 2018) ......................................................................1, 2, 11

*Hawkins v. Kroger Co.*,
906 F.3d at 768–73 ..................................................................................................7

*Heckler v. Chaney*,
470 U.S. 821 (1985) ...............................................................................................15

*Hood v. Wholesoy & Co.*,
No. 12-5550, 2013 WL 3553979 (N.D. Cal. July 12, 2013)..................................15

MEMORANDUM IN SUPPORT OF SUPPLEMENTAL MOTION TO DISMISS

## TABLE OF AUTHORITIES (CONT'D)

**Pages**

*In re Nexus 6P Prods. Liab. Litig.*,
   293 F. Supp. 3d 888 (N.D. Cal. 2018)...................................................23

*In re Sony Grand Wega Litig.*,
   758 F. Supp. 2d 1077 (S.D. Cal. 2010) ..................................................23

*Insolia v. Philip Morris Inc.*,
   128 F. Supp. 2d 1220 (W.D. Wis. 2000)................................................13

*Int'l Paper Co. v. Ouellette*,
   479 U.S. 481 (1987) ...............................................................................12

*Johnson v. Mars, Inc.*,
   No. 08-351, 2008 WL 2777063 (W.D. Wis. July 14, 2008) ..................17

*Lavie v. Procter & Gamble Co.*,
   105 Cal. App. 4th 496 (2003)................................................................17

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ...............................................................................23

*Macaspac v. Henkel Corp.*,
   No. 17-1755, 2018 WL 2539595 (S.D. Cal. June 4, 2018)....................17

*McVicar v. Goodman Glob., Inc.*,
   1 F. Supp. 3d 1044 (C.D. Cal. 2014)......................................................23

*Parent v. MillerCoors LLC*,
   No. 15-1204, 2015 WL 6455752 (S.D. Cal. Oct. 26, 2015) ..................14

*Rahman v. Mott's LLP*,
   No. 13-3482, 2018 WL 4585024 (N.D. Cal. Sept. 25, 2018) ................24

*Reid v. Johnson & Johnson*,
   780 F.3d 952 (9th Cir. 2015) ...................................................................7

*Simpson v. The Kroger Corp.*,
   219 Cal. App. 4th 1352 (2013)................................................... 17, 21, 22

*Sprietsma v. Mercury Marine*,
   537 U.S. 51 (2002) .................................................................................12

## TABLE OF AUTHORITIES (CONT'D)

**Pages**

*Syntek Semiconductor Co. v. Microchip Tech. Inc.*,
   307 F.3d 775 (9th Cir. 2002) ...................................................................15

*United States v. W. Pac. R.R. Co.*,
   352 U.S. 59 (1956) ...................................................................................15

*Walker v. Conagra Foods, Inc.*,
   No. 15-02424, 2017 U.S. Dist. LEXIS 222321 (N.D. Cal. Mar. 31,
   2017) ...................................................................................................2, 8, 11

*Werbel ex rel. v. Pepsico, Inc.*, No. 09-4456, 2010 WL 2673860 (N.D.
   Cal. July 2, 2010).....................................................................................17

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) ...................................................................17

*Workman v. Plum*,
   141 F. Supp. 3d 1032 (N.D. Cal. 2015)....................................................17

**Statutes**

21 U.S.C.
   § 301 *et seq.* ..............................................................................................8
   § 321(s) .......................................................................................................8
   § 337(a)................................................................................................15, 16
   § 342 .........................................................................................................10
   § 348 ......................................................................................................8, 10
   § 371 ...........................................................................................................8
   § 393(b)(2)(A) ............................................................................................8

Cal. Civ. Code § 1780(d)...............................................................................23

Cal. Comm. Code
   § 2316(3)(b) ..............................................................................................22
   § 2607(3)(A) ..............................................................................................22

Cal. Educ. Code § 49431.7(b) .......................................................................19

## TABLE OF AUTHORITIES (CONT'D)

**Pages**

Cal. Health & Safety Code
    § 110100 ........................................................................................................19
    § 114377(c) ....................................................................................................19

**Rules**

Fed. R. Civ. P.
    12(b)(1) .........................................................................................................23
    12(b)(6) ...........................................................................................................1

**Regulations**

21 C.F.R.
    § 10.30 ...........................................................................................................16
    § 101 *et seq.* ...................................................................................................8
    § 101.9 .............................................................................................................5
    § 170.38 .....................................................................................................9, 14

**Constitutional Provisions**

U.S. Const., Article VI, cl. 2...............................................................................12

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This lawsuit, filed over three years ago, is one in a series of putative class actions brought by counsel for Plaintiff Shavonda Hawkins in an effort to impose, through litigation, broad restrictions on the labeling and use of "trans fat" in foods. Hawkins premises her claims on allegations that The Kroger Company's ("Kroger") "Bread Crumbs" product, which contains trace amounts of trans fat, is unlawful under a "use" theory[1] or a "labeling" theory.[2]  Under her "use" theory, Hawkins claims that the mere existence of trans fat "in any amount" is unlawful and causes injury.  Under her "labeling" theory, Hawkins claims that the statement that the product contains "0g trans fat" is misleading, even though this is the exact phrase that is federally *mandated* in the Nutrition Panel for products containing less than .5 grams trans fat.  There is *no* allegation in the Complaint that Kroger's product contains trans fats in excess of that allowable amount.

Kroger originally filed a motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on November 30, 2015.  On March 17, 2016, this Court granted the motion, ruling that both the use and labeling claims failed for lack of statutory standing and that the labeling claim was preempted, without addressing the other grounds raised in the motion.  (*See* ECF No. 19.)

While the Ninth Circuit reversed that ruling—on the narrow grounds that it did not agree that Hawkins lacked standing or that the labeling claim was preempted, *Hawkins v. Kroger Co.*, 906 F.3d 763, 768–72 (9th Cir. 2018)—the court did not

---

[1] The "use" theory is composed of alleged violations of the UCL's "unfair" prong (COA1) and "unlawful" prong (COA2); and breach of the implied warranty of merchantability (COA3).

[2] The "mislabeling" theory is composed of alleged violations of the UCL's "unlawful" prong (COA4), "fraudulent" prong (COA5), and "unfair" prong (COA6); False Advertising Law ("FAL") (COA7); Consumers Legal Remedies Act ("CLRA") (COA8); and express warranty (COA9).

address any of the other grounds raised in the initial motion.  Instead, the Ninth Circuit ordered this Court on remand to consider the panoply of additional bases for dismissal that remained unaddressed in the original order granting Kroger's motion.

A panoply of reasons for dismissal remain, even without the two issues the Ninth Circuit rendered inapplicable.  Indeed, while this case was on appeal, the parallel cases filed by Plaintiff and her counsel were largely dismissed by courts.  Plaintiff's allegations here follow the same formula as in those actions, and should be dismissed for many of the same reasons.  In particular, Kroger is entitled to dismissal with prejudice on the following unaddressed grounds:  (1) the use claims are preempted entirely; (2) the labeling claims fail entirely because the allegations do not satisfy the reasonable consumer test; (3) the "unlawful" UCL claims under the use theory lack a predicate legal violation; (4) the "unfair" UCL claims fail because Hawkins has not alleged "unfair" conduct; (5) Hawkins waived her warranty claims and, in any event, failed to allege sufficient facts; (6) the CLRA claim is defective; and (7) Hawkins lacks standing to assert injunctive relief.

*First*, Hawkins' use claims—for which Hawkins claims that the mere existence of trans fat "in any amount" is unlawful and causes injury—are preempted.  The Ninth Circuit did not address Kroger's preemption argument for the use claims and explicitly directed the Court to do so on remand.  *See Hawkins v. Kroger*, 906 F.3d at 773.  The Court should dismiss Hawkins' use theory for the same reason that numerous courts have dismissed indistinguishable claims:  ***There is an unambiguous federal intent to prohibit lawsuits challenging the use of trans fat.***  *See, e.g.*, *Backus v. Nestlé USA, Inc.*, 167 F. Supp. 3d 1068, 1071–74 (N.D. Cal. 2016) (dismissing trans fat use claims as preempted); *Backus v. Biscomerica Corp.*, No. 16-03916, 2017 WL 1133406, at *2–4 (N.D. Cal. Mar. 27, 2017) (same); *Walker v. Conagra Foods, Inc.*, No. 15-02424, 2017 U.S. Dist. LEXIS 222321, at *5–8 (N.D. Cal. Mar. 31, 2017) (same).  This conclusion is inescapable given that in June 2015 the FDA announced it would permit the use of trans fat for a three-year

period to prevent market disruption while it considered more appropriate regulations for its future use.  (*See* Req. for Judicial Not. ("RJN"), Ex. B (80 Fed. Reg. 34650, 34650, 34654 (June 17, 2015) (FDA Final Determination)).)  Indeed, in 2018, Congress affirmed the FDA's order, adopting legislation that "[n]o partially hydrogenated oils," *i.e.,* trans fat, "shall be deemed unsafe" until the end of the FDA's three-year transition period.  (RJN, Ex. C (Consolidated Appropriations Act of 2016, Pub. L. No. 114-113, § 754, 129 Stat. 2242, 2284 (2015)).)  Hawkins' use claims therefore fail as a matter of law.

*Second*, Hawkins' labeling claims under the UCL, CLRA, FAL, and warranty law fail because Hawkins cannot satisfy the reasonable consumer test, *i.e.*, demonstrate that a "significant portion" of consumers would be misled by the "0g Trans Fat" label on the front of the carton.  Any reasonable consumer concerned about nutrient information would, at a minimum, read the ingredients, which disclose that the product included trans fat.  *See Ebner v. Fresh, Inc.*, 838 F.3d 958, 965–66 (9th Cir. 2016).

*Third*, all of Hawkins' claims fail for additional claim-specific reasons.

(a)    ***UCL Unlawful Claim (COA 2)***:  Hawkins' use theory claims under the "unlawful" prong of the Unfair Competition Law ("UCL") fail for similar preemption reasons.  Hawkins' claims are predicated on violations of the Food, Drug, and Cosmetic Act ("FDCA") and the Sherman Act, which incorporates FDA requirements.  Courts addressing this issue, including the Ninth Circuit, have uniformly dismissed UCL claims predicated on such violations given that the FDA and Congress have already proclaimed that the use of trans fat does not violate federal law during the grace period.

(b)    ***UCL Unfairness Claim (COA 1)***:  Hawkins' use theory claim under the "unfair" prong of the UCL likewise fails.  California courts use one of two tests to identify unfairness—neither of which are met.  The first

requires some violation or threatened violation of law, which, as stated above, does not exist.  The second requires Hawkins to demonstrate a substantial injury whose harm outweighs the utility of the conduct, and there was no reasonable way to avoid the injury.  Hawkins does not make this showing.

(c)  ***Warranty Claims (COA 3 & 9)***:  Hawkins' warranty claims as to both theories fail.  As to both theories, Hawkins waived her warranty claim by failing to inspect the product label, which disclosed that the bread crumbs contain partially hydrogenated oil, *i.e.*, trans fat (RJN, Ex. A); instead, she claims she was too "busy" to "inspect every ingredient."  In addition, she fails to allege facts (nor could she) that the product "lacks even the most basic degree of fitness for ordinary use."

(d)  ***CLRA Claim (COA 8)***:  Hawkins' labeling claim under the CLRA is defective because Hawkins failed to file the requisite affidavit regarding venue.

*Last*, as confirmed by new Ninth Circuit authority published last year, Hawkins lacks standing for injunctive relief under either theory, as she has not alleged a threat of continuing or impending injury.  *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 970 (9th Cir. 2018).

The Court should thus (again) dismiss Hawkins' Complaint with prejudice.

## II.   FACTUAL BACKGROUND

### A.   Kroger Sells Bread Crumb Products

Defendant The Kroger Company sells Kroger "Bread Crumbs" in Kroger-affiliated grocery stores throughout California.  The Bread Crumbs contain trace levels—*i.e.*, less than 0.5 grams—of a trans fat ingredient called partially hydrogenated oil ("PHO"), a substitute for saturated fats.  (RJN, Ex. G at 1–2 (cited in Compl. ¶ 26); *see also* Compl. ¶ 3.)  Like other ingredients, federal law closely regulates the labeling and use of trans fats, including PHO, in these products.  In

1   response to those laws, Kroger discloses the contents of its Bread Crumbs in its
2   ingredient declaration, which lists "partially hydrogenated oil" in its ingredient list.
3   (RJN, Ex. A (Label) at 3.)  The FDA also requires that if a product contains less than
4   0.5 grams of trans fat per serving, Kroger include in the Nutritional Facts box the term
5   "0g Trans Fat."  21 C.F.R. § 101.9; RJN, Ex. A (Label) at 3; Compl. ¶ 79.

6       **B.    Plaintiff Regularly Purchases Kroger's Product**

7       Plaintiff Shavonda Hawkins was a loyal consumer of Kroger's Bread Crumbs,
8   purchasing the product six times per year for "at least 15 years" (some 96 total
9   purchases), until her final purchase in June 2015.  (Compl. ¶¶ 71–72.)  Sometime
10  around August 2015, Hawkins apparently began reading articles about possible
11  health dangers from over-consumption of certain amounts of trans fat ingredients.
12  (*See id.* ¶¶ 17–60, 75, 111.)  Hawkins' reading of these reports allegedly led her to
13  conclude that the Bread Crumbs were harmful "in any quantity."  (*Id.* ¶ 104.)

14      **C.    The FDA Expressly Permits the Use of Trans Fat in Foods**

15      In June 2015, a few months before Hawkins purportedly learned of the possible
16  health impacts of trans fat, the FDA issued a Final Determination order (the "Final
17  Determination" or "FDA's order") regarding PHO used in food.  (*See* Compl. ¶ 68.)
18  In its order, the FDA proclaimed that it would be removing PHO from its list of self-
19  regulated foods—meaning that food manufacturers and distributors would need to
20  obtain premarket approval from the FDA before using PHO.  (RJN, Ex. B (80 Fed.
21  Reg. 34650, 34650, 34654 (June 17, 2015)); *see* Compl. ¶¶ 68, 99.)

22      Nevertheless, the FDA proclaimed that trans fat may be used in any food
23  product for at least the next three years, until June 18, 2018.  (*Id.*; *see* Compl. ¶¶ 68–
24  69, 99.)  The FDA imposed this safe harbor to "minimiz[e] market disruptions" while
25  it continued to evaluate proposals regarding the use of trans fat.  (RJN, Ex. B (80
26  Fed. Reg. 34650, 34669).)

27

28

**D.     The Court Grants Kroger's Motion to Dismiss**

Despite the FDA's order, on October 15, 2015, Hawkins filed this putative class action (among others), bringing several California state law claims premised on Kroger's use of trans fat in its Bread Crumbs.  Kroger moved to dismiss on November 30, 2015, and the Court granted the motion on March 17, 2016.  (ECF No. 19.)  The Court ruled that both the "use" and "labeling" claims failed for lack of statutory standing, and that the "labeling" claim failed for the additional reason that it was preempted.  (*Id.*)  Because those issues disposed of all causes of action, the Court did not address the remaining issues raised by Kroger.  (*Id.*)[3]

**E.     Congress Affirms the FDA's Final Determination**

After the Motion to Dismiss was filed, but before the Court issued its dismissal order, Congress passed the Consolidated Appropriations Act of 2016.  There, Congress found that "[n]o partially hydrogenated oils" as defined in the FDA's Final Determination "shall be deemed unsafe" until the end of the three-year transition period provided for (June 18, 2018).  (RJN, Ex. C (Pub. L. No. 114-113, § 754, 129 Stat. 2242, 2284 (2015)).)  On May 21, 2018, the FDA promulgated a new order extending the compliance date for foods containing PTO to January 1, 2020, explaining that the extension was necessary, among other reasons, to allow products manufactured before May 21, 2018 "to work their way through distribution."  (RJN, Ex. D (83 Fed. Reg. 23358, 23359 (May 21, 2018)).)

---

[3] Those remaining issues included that (i) the labeling claims failed on both preemption and standing grounds; (ii) the use claims were preempted on multiple grounds, including conflict preemption, *Cel-Tech* safe harbor, and primary jurisdiction; (iii) the "unlawful" UCL claims and CLRA claims fail because there is no violation of federal law, as the FDCA permits Kroger's use of trans fat; (iv) the "unfair" UCL claims fail because Hawkins did not and cannot meet either of the two tests used to demonstrate conduct is "unfair"; (v) the warranty claims fail based on waiver and the product's fitness for ordinary use; and (vi) the CLRA claim must be dismissed because Hawkins did not file the requisite affidavit.  (*See* ECF No. 11.)

**F.    The Ninth Circuit Reverses and Remands**

On October 4, 2018, the Ninth Circuit issued its decision reversing the Court's order on the grounds that the Ninth Circuit did not agree (1) Hawkins lacked statutory standing, based in part on the recent decision *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 965 (9th Cir. 2018) (issued after the dismissal order); and (2) that the labeling claim was not preempted, based in part on *Reid v. Johnson & Johnson*, 780 F.3d 952, 960 (9th Cir. 2015).  *See Hawkins v. Kroger Co.*, 906 F.3d at 768–73.  The Ninth Circuit did not, however, address the remaining issues for dismissal and instructed this Court to consider those issues on remand.  *See id.* at 773 ("Generally, we do not 'consider an issue not passed upon below.'").

The Court thus ordered as follows.  *First*, as to the "use" claims, "[o]n remand, the district court shall consider whether the use claims are preempted."  *Id.* at 773.  *Second*, the Ninth Circuit noted: "Kroger brings a plethora of other alternative grounds to affirm that were not addressed by the district court.  These arguments, many involving factual allegations, are best presented to the district court in the first instance on remand."  *Id.* at 773 n.11.  These outstanding issues are now ripe for determination by this Court and require dismissal of Hawkins' action yet again with prejudice.

**III.   ARGUMENT**

**A.    Hawkins' Use Claims Are Preempted (COA1—COA3).**

The FDA has already affirmatively ordered it permissible to use trans fat until June 2020 at the earliest.  Hawkins' theory that Kroger bread crumbs improperly "use" trans fat asks the Court to second-guess federal content regulations and to issue a ruling that would directly conflict with FDA and congressional authority. ***These "use" claims are preempted, as discussed below, as every case considering the issue has ruled.***  *See Backus v. Nestlé USA, Inc.*, 167 F. Supp. 3d 1068, 1071–74 (N.D. Cal. 2016) (dismissing unlawful and unfair UCL claims as preempted); *Backus v. Gen. Mills, Inc.*, No. 15-1964, 2018 WL 6460441, at *3–6 (N.D. Cal. Dec.

10, 2018) (same); *Backus v. ConAgra Foods, Inc.*, No. 16-454, 2016 WL 3844331, at *3–4 (N.D. Cal. July 15, 2016) (same); *Backus v. Biscomerica Corp.*, No. 16-03916, 2017 WL 1133406, at *2–4 (N.D. Cal. Mar. 27, 2017) (same); *Walker v. Conagra Foods, Inc.*, No. 15-02424, 2017 U.S. Dist. LEXIS 222321, at *5–8 (N.D. Cal. Mar. 31, 2017) (N.D. Cal. Mar. 31, 2017) (same); *see also Hawkins v. AdvancePierre Foods, Inc.*, 733 F. App'x 906, 906 (9th Cir. 2018) ("[Under the FDA order and Consolidated Appropriations Act], federal law did not prohibit PHOs prior to June 18, 2018.").

### 1.   The FDA Exercised its Exclusive Authority to Permit the Use of PHO During the Interim Period.

Under the Food, Drug, and Cosmetic Act (FDCA, 21 U.S.C. § 301 *et seq.*), the FDA is required to (i) ensure that foods are safe, wholesome, sanitary, and properly labeled, (ii) promulgate regulations to enforce the provisions of the FDCA, and (iii) enforce its regulations through administrative proceedings. *See* 21 U.S.C. §§ 371, 393(b)(2)(A).  The FDA is vested with exclusive authority to regulate the use of trans fats, and Hawkins' use claims come within the FDA's comprehensive food regulatory system, some of which is described below (21 C.F.R. § 101 *et seq.*).

The FDA regulates "food additives,"[4] which must receive FDA premarket approval before use in food.  21 U.S.C. § 348.  Substances that the FDA designates "Generally Recognized as Safe," or "GRAS," are exempt from the food additives definition.  *Id.*[5]  If the FDA determines a food additive is no longer GRAS, it may issue regulations to phase out the food additive in a manner that minimizes market

---

[4] "Food additives" are broadly defined to include any substance that can "be expected to result, directly or indirectly, in its becoming a component or otherwise affecting the characteristics of any food[.]"  21 U.S.C. § 321(s).

[5] For non-GRAS substances, FDA has a petition process through which it considers whether the food additive is safe for a particular purpose.  21 U.S.C. § 348(b).

MEMORANDUM IN SUPPORT OF SUPPLEMENTAL MOTION TO DISMISS

disruption, including by promulgating "interim regulation governing use of the additive" (21 C.F.R. § 170.38(c)(1) & (2)), or it may "require discontinuation" of it.

### a.   The FDA's Final Determination Deems the Use of PHO Lawful.

With respect to PHO, the FDA chose to implement interim regulations to monitor its use rather than implement a ban.  In particular, on June 17, 2015, the FDA issued its Final Determination that although PHO is no longer GRAS, it may be used in any food product for at least the next three years, until June 18, 2018. (RJN, Ex. B (80 Fed. Reg. 34650, 34650, 34654 (June 17, 2015)) (applying authority under 21 C.F.R. § 170.38(b)(1) to determine whether use of ingredients such as trans fat is permissible).)  The FDA Final Determination was the result careful deliberations during which the FDA evaluated scientific information and solicited and reviewed comments from the public.  (*See* RJN, Ex. B (80 Fed. Reg. 34650, 34650–51).)  Although some comments requested that FDA immediately ban PHO, the FDA rejected this approach and determined that (a) a grace period was necessary, and (b) an absolute ban may not prove necessary. *See id.* at 34668–69.

In the Final Determination, the FDA cited myriad reasons for this three-year grace period, including "minimizing market disruptions by providing industry sufficient time to identify suitable replacement ingredients for PHOs, to exhaust existing product inventories, and to reformulate and modify labeling of affected products." *Id.*  The FDA noted it would use the grace period to consider proposals from the public, industry, and scientific community to assess the various questions raised by the issue of trans fat "use." *Id.*  The FDA thus reserved for itself the precise question raised by Hawkins' "use" theory here: whether trace amounts of trans fat are unlawful.

On May 21, 2018, the FDA promulgated a new order providing extended compliance dates from 2019 to 2021, explaining that the extension was necessary,

*inter alia*, to allow products manufactured before May 21, 2018 "to work their way through distribution." (RJN, Ex. D (83 Fed. Reg. 23358, 23359 (May 21, 2018)).)

### b. Congress Affirms the Safe Harbor for the Use of Trans Fat.

On December 18, 2015, the President signed into law the Consolidated Appropriations Act of 2016, Pub. L. No. 114-113, § 754, 129 Stat. 2242, 2284 (2015). (*See* RJN, Ex. C.) Section 754 states:

> No partially hydrogenated oils as defined in the [Final Determination] shall be deemed unsafe within the meaning of [21 U.S.C. 348(a)] and no food that is introduced or delivered for introduction into interstate commerce that bears or contains a partially hydrogenated oil shall be deemed adulterated under [21 U.S.C. 342(a)(1) or (a)(2)(C)(i)] by virtue of bearing or containing a partially hydrogenated oil until the compliance date as specified in such order (June 18, 2018).

*Id.* Notably, these are the very statutes upon which Hawkins relies to support her use claims. (*E.g.*, Compl. ¶ 132 ("Kroger's conduct is 'unlawful' because it violates the [FDCA]," citing 21 U.S.C. §§ 348, 342).)[6]

In enacting this provision, Congress expressly reaffirmed the FDA's Final Determination. Indeed, the legislative history echoes the concerns expressed by the FDA in electing not to ban PHO, including the prevention of "economic disruption in the marketplace and . . . unnecessary litigation" surrounding the use of PHO in food in light of the Final Determination. H.R. Rep. No. 114-205, at 71 (2015).

### 2. Based on the FDA's Determination, Hawkins' Use Claims Should Be Dismissed for Numerous Reasons.

Together, the FDA's Final Determination and the Consolidated Appropriations Act exhibit a clear and unified federal intent to permit food

---

[6] The statute was enacted on December 18, 2015, after the original motion to dismiss was filed. (*See* ECF No. 11.) Kroger submitted a Notice of Supplemental Authority attaching the Consolidated Appropriations Act on January 15, 2016. (*See* ECF No. 17.) The Court did not reach this issue in its prior order since it dismissed all of Plaintiffs' claims on other grounds. (*See* ECF No. 19.)

distributors to continue using trans fat until at least 2019, and render that conduct lawful until that time.[7]  A Ninth Circuit panel likewise deemed such conduct lawful when it dismissed Hawkins' UCL and breach of warranty claims in a nearly identical suit.  *See Hawkins v. AdvancePierre*, 733 F. App'x at 906 ("[Under the FDA order and Consolidated Appropriations Act], federal law did not prohibit PHOs prior to June 18, 2018.").  Nonetheless, Hawkins plows ahead, attempting to use California law to ban *all* use of trans fat, including Kroger's inclusion of trace amount of PHO. This is improper on three independent preemption grounds: (a) conflict preemption, (b) the *Cel-Tech* safe harbor, and (c) primary jurisdiction.[8]

**a.  Hawkins' Use Claims Are Barred by the Doctrine of Conflict Preemption.**

Hawkins' use claims are barred by conflict preemption.  ***Multiple courts have held that use claims indistinguishable from Hawkins' were preempted by the Final Determination and Consolidated Appropriations Act.***  *See Backus v. Nestlé USA, Inc.*, 167 F. Supp. 3d at 1071–74 (dismissing unlawful and unfair UCL claims as preempted); *Backus v. Gen. Mills, Inc.*, 2018 WL 6460441, at *3–6 (same); *Backus v. ConAgra Foods, Inc.*, 2016 WL 3844331, at *3–4 (same); *Backus v. Biscomerica Corp.*, 2017 WL 1133406, at *2–4 (same); *Walker v. Conagra Foods, Inc.*, 2017

---

[7] The Ninth Circuit in its order raised the question of whether the preemption analysis is "different as to purchases prior to the 2015 Final Determination" or after. 906 F.3d at 773.  There is no distinction.  The relevant compliance date for the product at issue is, at the earliest, January 1, 2020, and all of Hawkins' claims are therefore governed by the 2015 Final Determination and Consolidated Appropriations Act.  *See Backus v. Gen. Mills*, 2018 WL 6460441, at *6 (holding that under the Consolidated Appropriations Act, all conduct prior to the compliance date—like here, going back to January 1, 2008—"is not unlawful").

[8] Hawkins appears to contend that the FDA's decision to delist trans fat as "GRAS" constitutes conclusive evidence that trans fats are prohibited.  (Compl. ¶ 99.)  That is incorrect, *supra* § III.A.1, and contrary to the plain language of the order.

1  U.S. Dist. LEXIS 222321, at *5–8 (N.D. Cal. Mar. 31, 2017) (same).  This Court
2  should follow suit, for the reasons below.

3       Under the Supremacy Clause, conflicts between state and federal law must be
4  resolved in favor of federal law.  *See* U.S. Const., art VI, cl. 2 ("the Laws of the
5  United States . . . shall be the supreme Law of the Land").  To evaluate conflict
6  preemption, courts look to Congress's purposes and the policies and goals of the
7  federal law.  *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 494–96 (1987).  Preemption
8  exists "where state law stands as an obstacle to the accomplishment and execution of
9  the full purposes and objectives of Congress."  *Sprietsma v. Mercury Marine*, 537
10  U.S. 51, 64 (2002); *see also Oullette*, 479 U.S. at 494 ("state law [] is pre-empted if
11  it interferes with the methods by which [a] federal statute was designed to reach [a
12  federal regulatory] goal.").  "Where, as here, both the FDA and Congress have
13  spoken, the case for conflict preemption takes on added strength."  *Backus v. Nestlé*
14  *USA*, 167 F. Supp. 3d at 1072.

15       Through this lawsuit, Hawkins seeks to make it immediately unlawful to
16  market, sell, or use in any way any food product that contains any trans fat
17  ingredient in California (Compl. ¶¶ 127, 138), despite the FDA's determination—
18  affirmed by Congress—that food distributors and manufacturers are entitled to
19  continue lawfully using these ingredients during this interim period.  This use of
20  state law is a patent obstacle to the accomplishment and execution of the FDA and
21  Congress's goals in providing a grace period during which food distributors,
22  including Kroger, may continue using trans fat ingredients.  *Backus v. Nestlé USA*,
23  167 F. Supp. 3d at 1072 ("Backus's use claims, which challenge . . . Nestlé's past
24  and current inclusion of PHOs in Coffee-mate, would effectively negate the FDA's
25  order setting a compliance date in 2018 and 'stand[ ] as an obstacle to the
26  accomplishment and execution of the full purposes and objectives' of the FDA in
27  adopting that order.").

28

Indeed, as the Supreme Court has acknowledged, where, as here, an expert federal regulatory agency has specifically approved the use of the product for a particular period or has chosen to regulate rather than prohibit its use, the threat of civil liability would undermine the comprehensive federal regulatory program. *See, e.g.*, *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 881–82 (2000) (finding preemption because a federal law required fewer than all new cars to employ passive-restraint systems, which conflicted with state tort claims that would have required manufacturers to install air bags in all new cars); *Insolia v. Philip Morris Inc.*, 128 F. Supp. 2d 1220, 1223–24 (W.D. Wis. 2000) (finding preemption because allowing tort suits that might have effect of ending sale of cigarettes "would run afoul of the congressional policy that the sale of cigarettes is legal").

Likewise, the FDA exercised its power to permit an "interim" three-year period to accomplish federal objectives, including "minimizing market disruptions," providing time to address FDA petitions regarding continued trans fat uses. In both cases, "a rule of state tort law imposing [] a duty" that the agency has declined to adopt—*i.e.*, the outright immediate ban of partially hydrogenated oils—"would have stood as an obstacle to the gradual . . . phase-in that the federal regulation deliberately imposed." *See Geier*, 528 U.S. at 881 (quotations omitted).

The courts overseeing Hawkins' and her counsel's parallel cases have reached the same conclusion. *See Backus v. Nestlé USA*, 167 F. Supp. 3d at 1073; *Hawkins v. AdvancePierre Foods, Inc.*, No. 15-2309, 2016 WL 6611099, at *7 (S.D. Cal. Nov. 8, 2016) (dismissing all state law claims premised on the use of trans fat as preempted, noting "Plaintiff's current action is one of the frivolous suits that Congress meant to preclude until 2018")[9]; *Backus v. ConAgra Foods*, 2016 WL

_____

[9] *Hawkins v. AdvancePierre*, which is one of Hawkins' parallel cases, was affirmed by the Ninth Circuit on other grounds while "assum[ing] . . . without deciding" whether the claims were preempted. 733 F. App'x at 906. The Ninth Circuit panel, however, had no reason to decide the preemption issue, as it affirmed dismissal of

3844331, at *4  (finding state law claims premised on use of trans fat preempted, as they "would stand as an obstacle" to the FDA's and Congress's objectives); *Backus v. Biscomerica Corp.*, 2017 WL 1133406, at *2–4 (same); *Backus v. Gen. Mills, Inc.*, 2018 WL 6460441, at *3–6 (same).  The Court should do the same here.

**b.     The *Cel-Tech* Safe Harbor Bars Hawkins' Use Claims.**

Hawkins' "use" claims must be dismissed because a claim for relief is not authorized where, as here, specific legislation provides a "safe harbor" for the conduct at issue.  *See Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180, 182 (1999) ("When specific legislation provides a 'safe harbor,' plaintiffs may not use the general unfair competition law to assault that harbor."); *Aron v. U-Haul Co. of Cal.*, 143 Cal. App. 4th 796, 803 (2006) (same).

Under the safe harbor, if laws or regulations have "permitted certain conduct," or the legislature or government agency "considered a situation and concluded no action should lie, courts may not override that determination."  *See Cel-Tech*, 20 Cal. 4th at 182–83; *Alvarez v. Chevron Corp.*, 656 F.3d 925, 931 (9th Cir. 2011) (affirming dismissal of UCL and CLRA claims because California law "clearly permitted" conduct); *Parent v. MillerCoors LLC*, No. 15-1204, 2015 WL 6455752, at *4–7 (S.D. Cal. Oct. 26, 2015) (dismissing food claims because FDA regulations provided safe harbor; noting "[r]egulations, as well as statutes, can create safe harbors").

Here, the "safe harbor doctrine" applies with full force.  The FDA's Final Determination, made pursuant to its regulatory authority under 21 C.F.R. § 170.38(b)(1), expressly permits the continued use of trans fats as alleged in the complaint while the FDA investigates further safety and health issues.  Hawkins' claims are thus barred.

_____

Hawkins' state claims on other grounds—that under the FDA's Final Determination order, inclusion of trans fats is not illegal. *Id.* ("federal law did not prohibit PHOs prior to June 18, 2018").  Kroger moves for dismissal on this ground as well.

### c.   FDA's Primary Jurisdiction Bars the Use Claims.

Hawkins' claims are barred by the primary jurisdiction doctrine, which applies where a plaintiff's claims implicate a federal agency's expertise regarding a regulated product. *See United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 63–64 (1956) (primary jurisdiction applies "whenever enforcement of [a] claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body"). The doctrine is based on the need for agency expertise and a uniform interpretation of federal law. *See Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 780–81 (9th Cir. 2002).

Dismissal is appropriate where, as here, the plaintiff's claim "would inevitably require the [c]ourt to interpret and apply federal [ ] standards, potentially create a conflict with those standards, and would intrude upon and undermine [federal] authority." *Hood v. Wholesoy & Co.*, No. 12-5550, 2013 WL 3553979, at *5 (N.D. Cal. July 12, 2013) (citation omitted) (dismissing UCL, FAL, and CLRA food mislabeling claims under primary jurisdiction doctrine to preserve FDA authority to regulate food); *see Syntek*, 307 F.3d at 780–81 (noting that "[n]ormally, . . . the case should be dismissed with prejudice so that the parties may pursue their administrative remedies").

Here, dismissal in deference to the FDA is appropriate. The FDCA's "enforcement provisions [ ] commit complete discretion to the [FDA] to decide how and when they should be exercised." *Heckler v. Chaney*, 470 U.S. 821, 835 (1985). As the FDA has made clear and Congress has affirmed, it is currently evaluating the safety of trans fat use and has affirmatively ordered that its use is legal in the interim. (*See supra* § III.A.1.) Consistent with FDA's exclusive authority to oversee food safety without disruption, Congress specified that "all [] proceedings for the enforcement, or to restrain violations" of the FDCA or its regulations "shall be by and in the name of the United States." 21 U.S.C. § 337(a); *see Buckman Co. v*

1  *Plaintiff's Legal Comm'n*, 531 U.S. 341, 349 n.4 (2001) (holding § 337(a) bars suits

2  by private litigants for "noncompliance with" federal law); *see also* Compl. ¶ 69.

3      If Hawkins has issues involving trans fat, she must pursue the appropriate

4  administrative remedies through the FDA, not the Court.  Hawkins may participate,

5  but only by objecting to FDA regulations via a Citizen Petition to the FDA pursuant

6  to 21 C.F.R. § 10.30.  She may not attempt to circumvent this process via lawsuit.

7  *See, e.g.*, *Haggag v. Welch Foods, Inc.*, No. 13-341, 2014 WL 1246299, at *7–8

8  (C.D. Cal. Mar. 24, 2014) (dismissing UCL, FAL, and CLRA mislabeling claims

9  regarding term "healthy"; noting that, "[p]ursuant to 21 C.F.R. § 10.30," a citizen

10  may petition FDA, not file lawsuit); *see also Cox v. Gruma Corp.*, No. 12-6502,

11  2013 WL 3828800, at *1–2 (N.D. Cal. July 11, 2013) (same).  Because Hawkins has

12  not complied with mandatory administrative procedures, and the FDA has primary

13  jurisdiction over claims involving use of trans fat, dismissal is appropriate.

14      **B.    Hawkins' Labeling Claims Fail Because She Cannot Satisfy the**

15  **Reasonable Consumer Test (COA4—COA9).**

16      Each of Hawkins' labeling claims fails because she has not alleged the

17  requisite misleading statement.  Hawkins' theory—that the term "0g trans fat" is

18  misleading—does not satisfy the reasonable consumer test, which must be plead to

19  overcome a motion to dismiss a false advertising claim under the UCL, FAL, CLRA,

20  and claims for breach of warranty.  *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965–66 (9th

21  Cir. 2016) (affirming grant of motion to dismiss UCL and CLRA claims; holding

22  standard not met where average "rational consumer" in marketplace would not be

23  misled given normal experience with product); *Freeman v. Time, Inc.*, 68 F.3d 285,

24  289 (9th Cir. 1995) (same; statements promising sweepstakes payout in exchange for

25  purchasing magazine subscription are unlikely to deceive a "person of ordinary

26  intelligence"); *Azoulai v. BMW of N. Am. LLC*, No. 16-589, 2017 WL 1354781, at

27  *7 (N.D. Cal. Apr. 13, 2017) ("Misrepresentation claims under the UCL and the

28  CLRA, as well as claims for breach of an express warranty, require a showing that

alleged statements or omissions are 'likely to deceive' reasonable consumers.");
*Macaspac v. Henkel Corp.*, No. 17-1755, 2018 WL 2539595, at *3 (S.D. Cal. June
4, 2018) (dismissing claims with prejudice because "no reasonable consumer could
be deceived" based on labeling ).  Courts routinely grant a motion to dismiss where,
as here, a plaintiff fails to establish consumers are "likely to be deceived."  *Ebner*,
838 F.3d at 965–66; *Freeman*, 68 F.3d at 289.

The phrase "'[l]ikely to deceive' implies more than a mere possibility that the
advertisement might conceivably be misunderstood by some few consumers viewing
it in an unreasonable manner.  Rather, the phrase indicates that the ad is such that it
is probable that a significant portion of the general consuming public or of targeted
consumers, acting reasonably in the circumstances, could be misled."  *Lavie v.
Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003).  "[W]here a court can
conclude as a matter of law that members of the public are not likely to be deceived
by the product packaging, dismissal is appropriate."  *Werbel ex rel. v. Pepsico, Inc.*,
No. 09-4456, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010) (granting motion to
dismiss UCL, CLRA, and FAL claims).

Hawkins does not satisfy the reasonable consumer standard.  Any reasonable
consumer concerned about nutrient information would, at a minimum, read the
ingredients and label, which (i) discloses that the ingredients included PHO, *i.e.*,
trans fat; and (ii) makes the same statement, mandated by the FDA: "Trans Fat 0g."
*See Workman v. Plum*, 141 F. Supp. 3d 1032, 1035–36 (N.D. Cal. 2015)
("[R]easonable consumers expect that the ingredient list contains more detailed
information about the product that confirms other representations on the
packaging.") (citing *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir.
2008)); *Simpson v. The Kroger Corp.*, 219 Cal. App. 4th 1352, 1371 (2013)
(affirming dismissal of mislabeling claim where labels on the products "clearly
informed any reasonable consumer" about product's contents); *Johnson v. Mars,
Inc.*, No. 08-351, 2008 WL 2777063, at *2 (W.D. Wis. July 14, 2008) (reasonable

consumer would expect Snickers to contain peanuts, which were listed as an ingredient on the label).  Further, Hawkins cannot plausibly allege that a "significant portion" of consumers would understand the "0g Trans Fat" statement on the front of the packaging to mean anything other than what the "Trans Fat 0g" statement in the nutrition panel (which the FDA requires appear on the container) discloses.  Under these circumstances, the reasonable consumer standard cannot be met as a matter of law, and these claims therefore fail.

### C.    Hawkins' Causes of Action Fail for Other Claim-Specific Reasons.

#### 1.    The Use Claims Under the UCL "Unlawful" Prong Fail (COA2).

For her use theory, Hawkins cites the FDCA and California's Sherman Law as the underlying statutory basis for her "unlawful" UCL claims.  (*See* Compl. ¶¶ 7, 132–33.)  These claims fail.

#### a.    Trans Fats Do Not Violate the FDCA.

Hawkins apparently contends that Kroger's Bread Crumbs violate federal law because the FDA's June 2015 Final Determination declared trans fats are no longer "generally recognized as safe," or GRAS.  (Compl. ¶¶ 6, 68.)  To the contrary, as the Ninth Circuit has recognized in a parallel suit brought by Hawkins, the FDA's Final Determination and Congress's Consolidated Appropriations Act established unequivocally that trans fats are not unlawful through the end of 2020.  (*See* RJN, Ex. C (129 Stat. 2242, 2284 (2015)) ("No partially hydrogenated oils as defined in the [Final Determination] shall be deemed unsafe . . . [or] adulterated . . . until the compliance date as specified in such order (June 18, 2018).")); RJN, Ex. D (83 Fed. Reg. 23358, 23359 (May 21, 2018)) (FDA extending the compliance date for foods containing PTO to January 1, 2020)); *Hawkins v. AdvancePierre Foods*, 733 F. App'x at 906–07 (dismissing unlawful UCL claim because "federal law did not prohibit PHOs prior to June 18, 2018"); *Backus v. ConAgra Foods*, 2016 WL 3844331, at *3 (dismissing unlawful UCL claims because "the FDA's final decision

not to prohibit the sale of products containing partially-hydrogenated oils until 2018 indicates that it was not and is not unlawful under federal law to sell them before the compliance date"); *Backus v. Gen. Mills, Inc.*, No. 15-01964, 2018 WL 6460441, at *6 ("Section 754 [of the Consolidated Appropriations Act] is clear and the use of PHOs in food before June 2018, the entirety of the time period covered by the complaint [going back to 2008], is not unlawful.").)  The complained of conduct plainly does not violate the FDCA.

### b.    Without a FDCA Violation, There Is No Sherman Law Violation.

Nor can Hawkins allege a violation of the Sherman Law.  Hawkins acknowledges that California's Sherman Law simply "adopt[s] all FDA regulations as state regulations."  (Compl. ¶ 133 (citing Cal. Health & Safety Code § 110100).)  As a Ninth Circuit panel already held in another case filed by Hawkins, because the FDCA does not bar trans fat (*supra* § III.A.1), Hawkins has not and cannot demonstrate that the product violated the Sherman Act.  *Hawkins v. AdvancePierre*, 733 F. App'x at 906–07 ("Hawkins's complaint also cited a provision of California's Sherman Act that adopted federal law . . . but AdvancePierre's use of PHOs did not violate this provision because it did not violate federal law.").

Further, other provisions that Hawkins cites expressly exempt goods "sold or served in the manufacturer's original, sealed package," which applies here. *See* Cal. Health & Safety Code § 114377(c).  Other provisions she cites expressly permit trace levels of trans fat up to .5 grams per serving, consistent with federal law—including use by or sale to school children in public schools.  *See* Cal. Educ. Code § 49431.7(b) ("a food contains artificial trans fat . . . , unless the manufacturer's documentation or the label required on the food, pursuant to applicable federal and state law, lists the trans fat content as less than 0.5 grams of

trans fat per serving"). Hawkins does not allege Kroger products exceed this
amount. Thus, Hawkins' unlawful UCL claim necessarily fails.

### 2. The Use Claims under the UCL "Unfair" Prong Fail (COA1).

Hawkins' claims under the "unfair" prong fare no better. While the UCL
prohibits "unfair" conduct, "[i]n consumer cases, the Supreme Court has not
established a definitive test to determine whether business practice is unfair."
*Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 256 (2010). As
the Ninth Circuit recognized in Hawkins' parallel action, courts generally apply
one of two tests; Hawkins' claims fail both. *See Hawkins v. AdvancePierre*, 733
F. App'x at 906–07 (where Hawkins brought similar unfair UCL claim based on
use of trans fat, she "cannot satisfy the 'unfair' prong of the UCL under either of
the two tests used by California courts").

One test requires the conduct to be "tethered to specific constitutional,
statutory, or regulatory provisions." *Drum*, 182 Cal. App. 4th at 256. Where there
is no violation or incipient violation, however, the test is not met. *See id.* As there
is no violation or threatened violation here, "similar to the *Cel-Tech* test" (*id.*),
Hawkins cannot satisfy this test. *See supra* § III.A; *Hawkins v. AdvancePierre*, 733
F. App'x at 906–07 (holding Hawkins failed this test in a similar action).

The second test requires the Court to balance the alleged harm against the
utility of the conduct. *Drum*, 182 Cal. App. 4th at 257. In its most specific form, the
test provides a practice is unfair if (1) the consumer injury is substantial, (2) the injury
is not outweighed by any countervailing benefits to consumers or competition, and
(3) the injury is one that consumers themselves could not reasonably have avoided.
*Id.* Hawkins has not alleged any facts demonstrating that her alleged injury is
"substantial," nor has she demonstrated that her alleged injury is not outweighed by
the many countervailing benefits of trans fat. Rather, Hawkins *acknowledges* the
utility of trans fat in her Complaint through the various sources she incorporates by
reference, including that trans fat imparts "flavor, stability, and low cost"—

considerations that a consumer of 15 years undoubtedly found beneficial.  (RJN, Ex. G at 1–2.)  Hawkins' own sources acknowledge, among other things, that trans fats (1) have "many desirable properties," "including flavor, stability, and low cost," and replacing them "will not be easy," *id.* (cited by Compl. ¶ 26); and (2) "are attractive because of their long shelf life, their stability during deep-frying, and their semisolidity, which can be customized to enhance the palatability of baked goods and sweets," (RJN, Ex. F (cited by Compl. ¶¶ 25, 27, 29, 31)).

Moreover, turning to the third factor, the injury here is one that Hawkins easily could have avoided by purchasing one of the multiple competing bread crumb products on the market that does not include trans fats in their products. *See* Compl. ¶ 84 (acknowledging competing brands, including "Kikkoman, Gillian's, Natural Earth Products, Shar, and Emeril's, among others"); *see Simpson*, 989 F.Supp.2d at 1025 (rejecting UCL claim under the unfair prong; plaintiff "could have avoided her injury by purchasing one of these TFA [trans fatty acid]-free products instead"); *see also Hawkins v. AdvancePierre*, 733 F. App'x at 906–07 (holding Hawkins failed this test in a similar action).  Claims under the "unfair" prong therefore fail.

### 3. Both Claims Under the Warranty Laws Fail (COA3 & COA9).

Hawkins' breach of warranty claims premised on both use and labeling fail.

*First*, Hawkins waived her warranty claims.  She does not dispute that all ingredients were fully disclosed on the package (*see* RJN, Ex. A)—only that she was too "busy" to have time to "inspect every ingredient."  (Compl. ¶ 108.)  Busy or not, Hawkins had ample opportunity—*fifteen years*—to check the Nutrition Facts box and discover the product contained ingredients with trans fat.  As the Ninth Circuit panel concluded in her parallel case, by not checking, Ms. Hawkins waived her claims.  *See Hawkins v. AdvancePierre*, 733 F. App'x at 907 (dismissing trans fat warranty claims, noting "[Hawkins'] allegation that she 'is a busy person and

cannot reasonably inspect' ingredients in the food she purchases does not excuse her failure to examine the labels on [the food] she purchased.") (citing Cal. Comm. Code § 2316(3)(b) (if buyer "refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him")); *see also Simpson*, 989 F. Supp. 2d at 1026–27 (finding waiver; food was "clearly labeled as including [trans fat] per FDA labeling requirements," and plaintiff "had a sufficient opportunity to examine [the pizzas] prior to purchase"); *Backus v. Biscomerica Corp.*, 2017 WL 1133406, at *4–5 ("Plaintiff does not suggest that the products did not disclose the presence of PHO on their labels or that Defendant otherwise hid their presence.  Plaintiff simply alleges that he 'is a busy person and cannot reasonably inspect every ingredient[.]'").

        *Second*, warranty claims survive only where a product lacks "even the most basic degree of fitness for ordinary use."  *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 (9th Cir. 2009).  Hawkins has failed to allege that the breadcrumbs fell below that low threshold; nor could she.  *See Backus v. Biscomerica Corp.*, 2017 WL 1133406, at *4–5 (dismissing warranty claims because "the FDA did not determine that products that contain PHO are unfit for human consumption. . . . The FDA recognized that people would continue to consume products containing PHO up until the compliance date[.]").  Indeed, her allegations undermine her position: Hawkins purchased the product six times a year over the course of fifteen years (about *ninety* times) without incident.  (Compl. ¶¶ 71–72.)  If the product lacked the basic degree of fitness for ordinary use, surely she would not have purchase and used it nearly 100 times in a decade and a half.  (*Id.*)

        *Third*, Hawkins failed to allege that she provided Kroger with the requisite notice of breach.  *See* Cal. Comm. Code § 2607(3)(A); *Alvarez*, 656 F.3d at 932 ("To avoid dismissal of a breach of contract or breach of warranty claim in California, '[a] buyer must plead that notice of the alleged breach was provided to

1 the seller within a reasonable time after discovery of the breach.'") (citation

2 omitted); *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 929–30 (N.D. Cal. 2012)

3 (dismissing warranty claims with prejudice where plaintiff failed to allege that it

4 provided notice of breach before filing the complaint).  Given the absence of such

5 allegations, her claims should be dismissed.

6      **4.**     **The Labeling Claim Under the CLRA Is Defective (COA8).**

7      Hawkins' CLRA claim fails for the additional reason that she failed to file an

8 affidavit "stating facts showing that the action has been commenced in a county

9 described in this section as a proper place for the trial of the action."  Cal. Civ. Code

10 § 1780(d) (requiring "dismiss[al] of the action" for failure to comply with affidavit

11 requirement) (emphasis added).  As this Court and numerous other Courts have

12 ruled, the failure to comply with Section 1780(d) requires dismissal of Hawkins'

13 claims.  *See In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 929 (N.D. Cal.

14 2018) ("this Court and multiple other California district courts have required

15 submission of the CLRA affidavit") (collecting cases); *McVicar v. Goodman Glob.,*

16 *Inc.*, 1 F. Supp. 3d 1044, 1055 (C.D. Cal. 2014) ("the majority of federal courts that

17 have considered this requirement have applied it" under the *Erie* analysis); *In re*

18 *Sony Grand Wega Litig.*, 758 F. Supp. 2d 1077, 1094 (S.D. Cal. 2010) (dismissing

19 CLRA claim).  Hawkins therefore cannot seek damages under the CLRA.

20      **D.**     **Hawkins Lacks Standing for Injunctive Relief.**

21      Hawkins lacks standing to seek injunctive relief under both theories because

22 she has no threat of future injury to remedy.  A plaintiff lacks standing to seek

23 injunctive relief under Federal Rule of Civil Procedure 12(b)(1) if he or she has not

24 alleged "a real or immediate threat" of being wronged again.  *City of Los Angeles v.*

25 *Lyons*, 461 U.S. 95, 111 (1983).  "Past exposure to illegal conduct does not in itself

26 show a present case or controversy regarding injunctive relief if unaccompanied by

27 any continuing, present adverse effects."  *Lujan v. Defenders of Wildlife*, 504 U.S.

28 555, 564 (1992).

Hawkins all but concedes that there is no threat of future harm under either her use or labeling theory. As she stated in her supplemental appellate brief, "[b]ecause Kroger no longer engages in the conduct described in the complaint, Hawkins almost certainly would not pursue [injunctive] relief on remand[.]" (RJN, Ex. E at 3.)

Moreover, Hawkins makes no allegation that she will suffer continuing harm through an inability to rely on the "0g Trans Fat" statement on the label in the future, or that she will purchase again while incorrectly relying on the label (which would be implausible in any event, since PHO is a disclosed ingredient). *See Davidson*, 889 F.3d at 970 (holding that plaintiff seeking injunctive relief based on false advertising claim may have standing if they have alleged an injury from their inability to rely on the statement or risk that they incorrectly rely on the statement); *Cordes v. Boulder Brands USA Inc.*, No. 18-6534, 2018 WL 6714323, at *4 (C.D. Cal. Oct. 17, 2018) (finding no standing for injunctive relief under *Davidson* where plaintiff could easily discover whether misrepresentation had been cured by reviewing the packaging); *Rahman v. Mott's LLP*, No. 13-3482, 2018 WL 4585024, at *3 (N.D. Cal. Sept. 25, 2018) (finding no standing under *Davidson* even though plaintiff intended to purchase again, because he would now understand the meaning of the representation and had no risk of being misled).

She therefore lacks standing to pursue prospective injunctive relief.

## IV.   CONCLUSION

For these reasons, the Court should again dismiss each of Hawkins' claims with prejudice.

DATED: February 8, 2019          DAVIS WRIGHT TREMAINE LLP

By:   s/ Jacob M. Harper
          Jacob M. Harper

*Attorneys for Defendant*
*The Kroger Company*

PROOF OF SERVICE

*Shavonda Hawkins v. The Kroger Company*
U.S.D.C. Southern District of California Case No. 3:15-cv-2320-JM-BLM

I the undersigned, declare:

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California.  My business address is 865 S. Figueroa Street, Suite 2400, Los Angeles, CA 90017.

On February 8, 2019, I served true copies of the following documents described as**:**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S SUPPLEMENTAL MOTION TO DISMISS**

on the interested parties in this action as follows:

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the documents with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on February 8, 2019, at Los Angeles, California.

/s/ Lina Pearmain

Lina Pearmain