# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAVONDA HAWKINS,<br><br>　　　　　　　　Plaintiff,<br>v.<br><br>THE KROGER COMPANY,<br><br>　　　　　　　　Defendant. | CASE NO. 15cv2320 JM(BLM)<br><br>ORDER DENYING MOTION TO DISMISS |

Following remand from the Ninth Circuit, Defendant The Kroger Company ("Kroger") moves to dismiss Plaintiff Shavonda Hawkins' ("Plaintiff") complaint for failure to state a claim. Plaintiff opposes the motion. Having carefully considered the parties' arguments, appropriate legal authorities, and, for the reasons set forth below, the court denies the motion to dismiss.

## BACKGROUND

**The Complaint**

On October 15, 2015, Plaintiff commenced this diversity action alleging nine state law claims for (1) violation of California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§17200 et seq., unfair prong; (2) violation of UCL, unlawful prong; (3) breach of implied warranty of merchantability; (4) violation of UCL, unlawful prong; (5) violation of UCL, fraudulent prong; (6) violation of UCL, unfair prong; (7) violation of California False Advertising Law ("FAL"), Cal. Bus. & Prof.

§§17500 et seq.; (8) violation of California Consumer Legal Remedies Act ("CLRA"), Cal. Civil Code §§1750 et seq.; and (9) breach of express warranty. Plaintiff seeks to represent a class of similarly situated individuals defined as:

> All persons who purchased in the United States, on or after January 1, 2008, Kroger bread crumb products containing partially hydrogenated oil.

All of Plaintiff's claims relate to Kroger's sale of Kroger Bread Crumbs ("KBCs") that allegedly contain partially hydrogenated oil ("PHO"). Plaintiff alleges that the KBCs contain dangerous levels of trans fat and that there is no safe level of artificial trans fat. (Compl. ¶¶9, 22). The nutrition label contains the statement "0g Trans Fat." (Compl. ¶9). On the front of the packaging, the statement "0g Trans Fat" is prominently repeated. (Compl. ¶79). In broad brush, Plaintiff alleges a mislabeling claim and an injury or use claim. Plaintiff generally alleges that Kroger misleadingly and unlawfully advertises KBCs as containing "0g Trans Fat" on the front of the package when, in fact, the product contains more that 0g but less than 0.5g Trans Fat. Under the second theory, Plaintiff alleges that there is no safe level of PHO. Plaintiff alleges that the consumption of PHOs causes adverse effects to the cardiovascular system, is linked to multiple forms of cancer, causes Type-2 diabetes, contributes to mental decline, and death.

Plaintiff alleges that she purchased KBCs substantially based upon the deceptive labeling of "0gTrans Fat." (Compl. ¶76). She has purchased KBCs for about 15 years. However, it was not until August 2015 when she first discovered that KBCs contain PHOs. In purchasing KBCs, Plaintiff allegedly did not receive the sought after benefits from the product.

As discussed at the time of oral argument, there is substantial overlap between some of Plaintiff's claims, particularly the second and fourth causes of action for violation of the UCL, unlawful prong. To provide context, the court briefly reviews the allegations supporting the claims. The second claim alleges that Kroger's representations on the packaging violates both the Federal Food, Drug and Cosmetics

Act (FDCA"), 21 U.S.C. §§348, 342 and The California Sherman Food, Drug, and Cosmetic Law ("Sherman Law"), Health & Safety Code §1103. Specifically, Plaintiff alleges that the representation violates the FDCA because the food additive PHO is unsafe and fails to satisfy either of two exceptions which would permit such representations on the packaging. Defendants also allegedly violated the Sherman Law by selling KBCs that are misbranded and adultered with PHO. (Compl. ¶¶131-333).

The fourth claim alleges that Kroger's representations on the packaging violates the FDCA and the Sherman Law. Kroger allegedly violated the illegal prong of the UCL by violating 21 U.S.C. §343(a) (food is misbranded when the label contains false and misleading statements) and numerous provisions of the Sherman law related to misbranded food products. (Compl. ¶152).

**The Prior Order**

On March 17, 2016, the court granted Kroger's Fed.R.Ci.P. 12(b)(6) motion, finding that both the use and labeling claims failed for lack of standing and that the labeling claim was preempted. The Ninth Circuit reversed in Hawkins v. Kroger Co., 906 F.3d 763, 768-72 (9th Cir. 2018), and remanded for further consideration of Plaintiff's use and labeling claims.

**DISCUSSION**

**Legal Standards**

Federal Rule of Civil Procedure 12(b)(6) dismissal is proper only in "extraordinary" cases. United States v. Redwood City, 640 F.2d 963, 966 (9th Cir. 1981). Courts should grant 12(b)(6) relief only where a plaintiff's complaint lacks a "cognizable legal theory" or sufficient facts to support a cognizable legal theory. Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990). Courts should dismiss a complaint for failure to state a claim when the factual allegations are insufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (the complaint's allegations must "plausibly suggest[]" that the pleader is entitled to relief); Ashcroft v. Iqbal, 556 U.S. 662 (2009)

(under Rule 8(a), well-pleaded facts must do more than permit the court to infer the mere possibility of misconduct). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 678. Thus, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The defect must appear on the face of the complaint itself. Thus, courts may not consider extraneous material in testing its legal adequacy. Levine v. Diamanthuset, Inc., 950 F.2d 1478, 1482 (9th Cir. 1991). The courts may, however, consider material properly submitted as part of the complaint. Hal Roach Studios, Inc. v. Richard Feiner and Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989).

Finally, courts must construe the complaint in the light most favorable to the plaintiff. Concha v. London, 62 F.3d 1493, 1500 (9th Cir. 1995), cert. dismissed, 116 S. Ct. 1710 (1996). Accordingly, courts must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them. Holden v. Hagopian, 978 F.2d 1115, 1118 (9th Cir. 1992). However, conclusory allegations of law and unwarranted inferences are insufficient to defeat a Rule 12(b)(6) motion. In Re Syntex Corp. Sec. Litig., 95 F.3d 922, 926 (9th Cir. 1996).

**The Motion**

Kroger raises several arguments in support of its motion to dismiss. Kroger argues that (1) the use claims are preempted; (2) the labeling claims fail to satisfy the reasonable consumer test; (3) the "unlawful" UCL claims lack a predicate legal violation; (4) the "unfair" UCL claims are not supported by "unfair" conduct' (5) the warranty claims are waived; (6) the CLRA claim is defective; and (7) Plaintiff lacks standing to bring a claim for injunctive relief.[1]

---

[1] Plaintiff represents that she is no longer seeking injunctive relief.

The First Three Causes of Action[2]

Kroger argues, among other things, that the FDA permits the use of PHOs until 2020, and the use claims are preempted by the Consolidated Appropriations Act for 2016 ("CAA"), Pub.L. No. 114-113, §754, 129 Stat 2242 (2015). The following section pertains to PHOs:

> SEC. 754: No partially hydrogenated oils as defined in the order published by the Food and Drug Administration in the Federal Register on June 17, 2015 (80 Fed. Reg. 34650 et seq. [Final Determination]) shall be deemed unsafe within the meaning of section 409(a) [21 U.S.C. § 348(a)] and no food that is introduced or delivered for introduction into interstate commerce that bears or contains a partially hydrogenated oil shall be deemed adulterated under sections 402(a)(1) [21 U.S.C. § 342(a)(1)] or 402(a)(2)(C)(i) [21 U.S.C. § 342(a)(2)(C)(i)] by virtue of bearing or containing a partially hydrogenated oil until the compliance date as specified in such order (June 18, 2018).

CAA. On May 21, 2018, the FDA extended the compliance date for foods containing PHO to June 18, 2020. (83 Fed. Reg. 23358, 23359 (May 21, 2018).

On June 17, 2015, the Food and Drug Administration ("FDA") published a final determination, finding "there is no longer a consensus among qualified experts" that PHOs "are generally recognized as safe (GRAS) for any use in human food," see Final Determination Regarding Partially Hydrogenated Oils, 80 Fed. Reg. 34650-01, 34650 (June 17, 2015), and, as a result, "are food additives subject to section 409" of the FDCA (21 U.S.C. § 348). Id. Pursuant to that order, the FDA "require[d] discontinuation of the use of these additives," id. at 34656, "encourage[d] submission of scientific evidence as part of food additive petitions under section 409" for "one or more specific uses of PHOs," id. at 35653, and set a "compliance date" of June 18, 2018 [3], "to allow time for such petitions and their review." The FDA identified that the three year compliance period would allow time for small businesses to adapt to the elimination of PHOs in their products, minimize market disruption, and allow time for

---

[2] The first three causes of action are for (1) Violation of the UCL, unfair prong; (2) violation of UCL, unlawful prong; and (3) breach of implied warranty of merchantability.

[3] The FDA has extend the compliance period by two years, until 2020.

the growing, harvesting, and processing of new varieties of edible oilseeds.

With this brief background, at issue are two different representations on the packaging: the statement of "0g Trans Fat" on the "Nutrition Facts" box, or nutrition label, and the statement of "0g Trans Fat" located on the front of the package. First, as noted in Reid v. Johnson & Johnson, 780 F.3d 952 (9th Cir. 2015), the statement of "0g Trans Fat" listed on the nutrition label is a mandated disclosure when the product contains less than 0.5 grams of Trans Fat. 21 CFR §101.9(c)(2)(ii). While the nutrition label contains mandated disclosures, the claims are not considered "nutrient content claims" for purposes of FDA regulations. Kroger, 906 F.3d at 770-71; Reid, 780 F.3d at 960; 21 CFR §101.13(c). The regulations also provide that statements made in the nutrition label may be repeated outside the nutrition label in the case of claims such as "fat free," "no fat," "zero fat," or "negligible source of fat" on labels where the food contain less than 0.5 grams of fat, 21 CFR §101.62(b). "There is a parallel regulation permitting similar claims about saturated fat, [], but not about trans fat." Reid at 960. As highlighted by the Ninth Circuit:

> While a required statement inside a nutrition label escapes regulations reserved for nutrient content claims, the identical statement outside of the nutrition label is still considered a nutrient content claim and is therefore subject to section 101.13. As a result, a requirement to state certain facts in the nutrition label is not a license to make that statement elsewhere on the product.

Id.; Kroger, 906 F.3d at 770.

Here, the court concludes that the "0g Trans Fat" statement contained in the nutrition label is preempted because a state law claim premised on the nutrition label representation would make it impossible to comply with federal law which mandates that a content of less that 0.5 g Trans Fat must be disclosed as 0g. Conflict preemption applies where "compliance with both federal and state regulations is a physical impossibility" or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." See Ting v. AT & T, 319 F.3d 1126, 1136 (9th Cir.2003) (internal quotations and citations omitted); see also

Geier v. American Honda Motor Co., Inc., 529 U.S. 861, 873–75 (2000). Following Reid and Kroger, however, the court concludes that the statement "0g Trans Fat," made outside the nutrition label, is not preempted because it does not impermissibly conflict with federal law.

In large part, Kroger contends that the implementation of interim regulations permitting the use of PHO through June 18, 2020 "deems the use of PHO lawful." (Motion at p.9:3-16). This argument is not persuasive. There is no indication in the budget rider bill §754 that Congress intended to preempt Plaintiff's labeling claims. Moreover, permitting the use of PHO in products until 2020 is separate and distinct from the alleged packaging misrepresentation of "0g Trans Fat." Kroger primarily relies upon several district court cases for the proposition that the **"'use' claims are preempted [] as every case considering the issue has ruled**." (Motion at p.7:25-26 (emphasis in the original)). For example, in Backus v. Nestle USA, Inc., 167 F.Supp.3d 1068 (N.D. Cal. 2016), the plaintiff sought **"to make it immediately unlawful to market or sell"** any food product in California containing PHO. Id. at 1072 (emphasis in the original). The Nestle packaging at issue contained the statement "0g Trans Fat," but allegedly contained some PHO. As the FDA had allowed food producers to use PHO through June 18, 2018 (now extended to 2020), the court found that Plaintiff's use claims, seeking to immediately declare the use of PHO in food products unlawful - - an allegation not made in this case - - were preempted and stood as an obstacle "to the fulfillment of the FDA's objectives." Id. at 1074. Accordingly, this line of authority addresses a different issue than that before the court.

Kroger also argues that the FDA's permission to continue to manufacture products with PHO somehow provides a "safe harbor" under Cel-Tech Commc'ns, Inc. v. L. A. Cellular Tel. Co., 20 Cal.4th 163, 180, 182 (1999) ("When specific legislation provides a 'safe harbor,' plaintiffs may not use the general unfair competition law to assault that harbor."). Under the regulations, Kroger is free to continue to add PHO to its products until June 18, 2020. What Kroger cannot do, outside the nutrition label,

is to represent that the product contains "0g Trans Fat" when the product is alleged to contain PHO.

Kroger also contends that Plaintiff's claims are barred by the primary jurisdiction doctrine. Primary jurisdiction "applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views." <u>United States v. W. Pac. R.R. Co.</u>, 352 U.S. 59, 64 (1956) (citation omitted). Kroger contends that the sale of PHO is lawful until June 18, 2020, and that if Plaintiff "has issues involving trans fat, she must pursue the appropriate administrative remedy." (p.16:3-4). Kroger's argument simply fails to articulate how the FDA's expertise is, or would be, required to assess Plaintiff's claims.

In sum, the court denies the motion to dismiss causes of action four through nine, and highlights that a reasonable jury might conclude that the statement "0g Trans Fat" constitutes a misleading advertisement and unfair business practice.

<u>The Reasonable Consumer Test Applied to the Fourth Through Ninth Causes of Action</u>

Kroger seeks dismissal of the labeling claims on the ground that the term "0g Trans Fat"is not misleading under the reasonable consumer test. "[T]he false or misleading advertising and unfair business practices claim must be evaluated from the vantage of a reasonable consumer." <u>Freeman v. Time, Inc.</u>, 68 F.3d 285, 2889 (9th Cir, 1995). While Plaintiff's allegations are more than sufficient to buttress her claim that she was deceived, under the reasonable consumer standard, plaintiff must "show that 'members of the public are likely to be deceived.'" <u>Id.</u> at 289 (quoting <u>Bank of West v. Superior Court</u>, 2 Cal.4th 1254, 1267 (1992)). On the present Rule 12(b)(6) motion, the court concludes that a reasonable consumer could likely be deceived by the statement "0g Trans Fat" on the packaging. This statement may be construed to

misleadingly convey to a reasonable consumer that the product does not contain PHO when, as alleged, the product contains the ingredient. The fact that the nutrition label and nutrient information disclose the PHO ingredient at the mandated level, a reasonable consumer need not scrutinize the label when the packaging prominently displays on the front of the package in red letters "0g Trans Fat." See <u>Williams v. Gerber Products Co.</u>, 552 F.3d 934, 938-40 (9th Cir, 2008).

Further, Plaintiff adequately alleges that the "0g Trans Fat" representation on the packaging violates the FDCA, 21 U.S.C. §§348, 342 and the Sherman Law, Health & Safety Code §1103. Specifically, Plaintiff alleges that the representation violates the FDCA because the food additive PHO is unsafe and fails to satisfy either of two exceptions which would permit such representations. Defendants also allegedly violated the Sherman Law by selling KBCs that are misbranded and adultered with PHO. Such conduct allegedly violates the illegal prong of UCL.

In sum, the court denies the motion to dismiss causes of action four through nine.

<u>The Use Claims Under the UCL Unfair Prong, First Cause of Action</u>

Kroger contends that the use claims under the unfair prong of the UCL fail to establish that the business practice of representing on the package "0g Trans Fat," while actually containing PHO, is unfair. The "issue of whether a practice is deceptive or unfair is generally a question for the trier of fact." <u>Puentes v. Wells Fargo Home Mort.</u>, 160 Cal.App. 4th 638, 645 n.5 (2008). The court concludes that Kroger's argument is not appropriately resolved on a motion to dismiss.

A business practice is unfair if it is substantially injurious to consumers and the harm to consumers outweighs the utility to the defendant. <u>Rubio v. Capital One Bank</u>, 613 F.3d 1195, 1205 (9th Cir, 2010). Here, the Complaint adequately alleges that the consumption of PHO is harmful to consumers at any level and provides little utility to Kroger. Nothing more is required to state a claim under the UCL unfair prong.

In sum, the court denies the motion to dismiss the claim arising under the UCL unfair prong.

<u>The Warranty Claims, Third and Ninth Causes of Action</u>

Kroger contends, among other things, that the both the implied and express breach of warranty claims fail because (1) all ingredients were disclosed, (2) warranty claims survive only where the product lacks "even the most basic degree of fitness for ordinary use, and (3) Plaintiff failed to provide the requisite notice of the warranty breach.

Although a close call, the court denies the motion to dismiss these claims and defers ruling on these claims until the presentation of an evidentiary motion.

<u>The Claim for Injunctive Relief</u>

Kroger moves to dismiss the claim for injunctive relief. This motion is moot as Plaintiff represents that she is not pursuing a claim for injunctive relief.

In sum, the court denies the motion to dismiss.

**IT IS SO ORDERED.**

DATED: April 4, 2019

Hon. Jeffrey T. Miller
United States District Judge

cc: All parties