**THE WESTON FIRM**
GREGORY S. WESTON (239944)
*greg@westonfirm.com*
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone: (619) 798-2006
Facsimile: (619) 343-2789

**Counsel for Plaintiff**

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAVONDA HAWKINS, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE KROGER COMPANY,<br><br>Defendant. | Case No: 3:15-cv-02320-JM-BLM<br><br>**REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL RESPONSES TO DISCOVERY REQUESTS**<br><br>Judge: The Honorable Barbara L. Major<br><br>No hearing per Dkt. 63 |

**TABLE OF CONTENTS**

I.   Introduction ........................................................................................................ 1

II.  Kroger's "Class Period" Objections Fail. ........................................................... 3

III. Kroger's 17-page Production After this Motion Was Filed Is Admittedly Incomplete. ......................................................................................................... 4

IV.  Particular Issues. ................................................................................................ 4

1

*Hawkins v. The Kroger Company,* Case No. 3:15-02320-JM-BLM
REPLY IN SUPPORT OF MOTION TO COMPEL RESPONSES TO DISCOVERY REQUESTS

## I.     Introduction

Kroger's Opposition ignores the majority of our arguments, and instead starts by taking potshots at Plaintiff and her counsel, arguing against class certification, and claiming the motion should be denied for lack of meeting and conferring. The reality: our meet and confer efforts consisted of two conference calls between counsel, a third with the Court's clerk, a formal 5-page letter, a large number of e-mails, and multiple offers of compromise. All this resulted in a total of zero substantive interrogatory responses and a total of 17 pages produced in partial response to one RFP. Weston Reply Decl. ¶¶ 3-22.

Kroger argues all the requests are "overbroad and unduly burdensome" but still has not provided any "detail regarding the time, money and procedures required to produce the requested documents." *Shaw v. Experian Info. Sols., Inc.,* 306 F.R.D. 293, 301 (S.D. Cal. 2015). *See also Thomas v. Cate*, 715 F. Supp. 2d 1012, 1032 (E.D. Cal. 2010) (an objecting party must specifically establish the nature of any alleged burden, usually by affidavit.). *See also* Mot. at 5; Weston Decl. Ex. 5 at 2.

Kroger argues Plaintiff has "failed to meet her burden of showing the requested discovery is relevant and proportional under Rule 26(b)(1)." Opp. at 5. However,

> There is no requirement that the information sought directly relate to a particular issue in the case. Rather, relevance encompasses any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be [presented] in the case.

*Shaw*, 306 F.R.D. at 296 (quotation omitted). Moreover, "'boilerplate relevancy objections, without setting forth any explanation or argument why the requested documents are not relevant, are improper.'" *Advanced Visual Image Design, LLC v. Exist, Inc.*, 2015 U.S. Dist. LEXIS 102798, at *6 (C.D. Cal. 2015) (citation omitted).

Kroger argues "Hawkins responds to all of Kroger's 'vague and ambiguous' objections by summarily stating that 'th[e] terms are not vague as used in their context.'" Opp. at 9 n. 7. Yet Kroger fails to address Plaintiff's argument (Mot at 8) that it "is not ground for objection that the request is 'ambiguous' unless so ambiguous that the responding party cannot, in good faith, frame an intelligent reply.'" *Eclipse Grp. LLP v.*

1

*Hawkins v. The Kroger Company,* Case No. 3:15-02320-JM-BLM
REPLY IN SUPPORT OF MOTION TO COMPEL RESPONSES TO DISCOVERY REQUESTS

1 *Target Corp.*, 2017 U.S. Dist. LEXIS 77574, at *24 (S.D. Cal. May 19, 2017).

2     Kroger makes no attempt to rebut the motion's showing its "confidentiality" objections are improper because to "the extent the requested documents contain confidential information the protective order issued in this case will adequately protect the information." *Vibal v. Geico Cas. Co.*, 2018 U.S. Dist. LEXIS 13238, at *12 (S.D. Cal. Jan. 26, 2018). *See* Mot. at 9. Likewise it claims its "privilege" and "work product" objections are valid because it "will provide a privilege log." Opp. at 8 n.5. Yet no log has ever been provided, even though the "party asserting the attorney-client privilege bears the burden to establish that the privilege applies [and] fails to meet its burden if it uses boilerplate language." *Certain Interested Underwriters v. Bear LLC*, 2016 U.S. Dist. LEXIS 72797, at *9 (S.D. Cal. June 2, 2016) (citation omitted).

    Kroger also completely fails to address Plaintiff's argument that its objection to all eight interrogatories and all 25 RFPs as "premature, as the Court has not yet decided whether to certify a class," is "an end-run around the June 6, 2019 Scheduling Order Regulating Discovery and Other Pre-trial Proceedings, wherein this Court declined to bifurcate discovery and required that 'All fact discovery shall be completed by all parties on or before February 14, 2020.' Dkt. 58 at 2." Mot. at 10; Weston Decl. Ex. 5 at 3.

    Kroger entirely ignores Plaintiff's contention that

> "The responding party is responsible for all items in 'the responding party's possession, custody, or control.' Actual possession, custody or control is not required. Rather, '[a] party may be ordered to produce a document in the possession of a non-party entity if that party has a legal right to obtain the document or has control over the entity who is in possession of the document.'"

*Nutrition Distrib'n LLC v. PEP Research, LLC*, 2018 U.S. Dist. LEXIS 134720, at *20 (S.D. Cal. Aug. 9, 2018); Mot. at 12. "If Kroger has a legal right to obtain documents, the Court should order their production." Mot. at 12.

    In short, Kroger "has not identified which responsive materials are being withheld on the basis of its objections and has not described the responsive materials that it will produce" and further failed to produce "the non-objectionable responsive documents in

the required time frame." *Kimble v. Specialized Loan Servicing, LLC*, 2018 U.S. Dist. LEXIS 59231, at *14 (S.D. Cal. Apr. 6, 2018).

## II. Kroger's "Class Period" Objections Fail.

Kroger contends it is only obligated to provide discovery responses for "the four years preceding the complaint, because the statutes of limitations for Ms. Hawkins's claims are three and four years." Opp. at 8. It makes an incomprehensible argument, supported by zero cases, that it has no obligation to produce documents from after the complaint's 2015 filing date.[1] Combining these two objections, for the single RFP where Kroger produced documents, it expressly limits its production to 2011 to 2015.

Kroger's assertion that our claims somehow end on the complaint's filing date is belied by the Complaint's class period, and that the complaint used the present tense, for example "Kroger manufactures, markets, and sells a line of bread crumb products […] that contain partially hydrogenated oil." Compl. ¶ 3. Nothing in the Complaint suggests Kroger ceased its illegal activity prior to the filing of the Complaint. *See also* Compl. ¶ 127 (request to enjoin Kroger from "continuing to conduct business" unfair and deceptive practices). Kroger also does nothing to rebut our motion's showing that "statute of limitations is not a rigid barrier separating discoverable information from information outside the scope of discovery." *Gottesman v. Santana*, 2017 U.S. Dist. LEXIS 196260, at *16 (S.D. Cal. Nov. 29, 2017). *See* Mot. at 11. Likewise, "[t]he prospective class in question may or may not remain open, but Defendant may not decide it as a basis to deny discovery." *Allen v. Similasan Corp.*, 2014 U.S. Dist. LEXIS 72765, at *4-5 (S.D. Cal. May 27, 2014). Finally, we alleged tolling and delayed discovery. Compl. ¶¶ 111-12.

---

[1] Courts routinely certify classes that extend beyond the date the complaint was filed. *See Moorer v. Stemgenex Med. Grp., Inc.*, 2019 U.S. Dist. LEXIS 106328, at *27-28 (S.D. Cal. June 24, 2019); *Romero v. Securus Techs.*, 2018 U.S. Dist. LEXIS 198922, at *51-52 (S.D. Cal. Nov. 21, 2018); *Allen v. Similasan Corp.*, 306 F.R.D. 635, 651 (S.D. Cal. 2015); *Holt v. Noble House Hotels & Resort, Ltd.*, 2018 U.S. Dist. LEXIS 177940, at *32-33 (S.D. Cal. Oct. 16, 2018). *See* additional examples in Mot. at 11.

3

*Hawkins v. The Kroger Company,* Case No. 3:15-02320-JM-BLM
REPLY IN SUPPORT OF MOTION TO COMPEL RESPONSES TO DISCOVERY REQUESTS

### III. Kroger's 17-page Production After this Motion Was Filed Is Admittedly Incomplete.

Kroger contends it satisfied its discovery obligation with respect to RFPs Nos 5-8 and 10 by producing "copies of KBC labels from 2011 through 2015, and agree[ing] to produce documents sufficient to identify the periods during which they were used, to the extent within its possession, custody, or control." Opp. at 11. Kroger produced a total of 17 pages, ostensibly the labels which were in use from 2011-2015. However, as Kroger concedes in its Opposition, it has not produced "documents sufficient to identify the periods during which they were used." Opp. at 11.

Moreover, Kroger produced no documents in response to RFPs 7, 8, 9, or 10, which seek documents related to "changes, revisions, or modifications" to the label and "the reasons for, plans, proposals, and motivations for any change. Weston Decl. Ex. 2 at 8-9.

The "primary evidence in a false advertising case is the advertising itself." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (quotations omitted). Further, the relevant time periods each KBC label was in use is essential to define the temporal scope of Plaintiff's class. "The shape and form of a class action evolves only through the process of discovery." *Panacci v. A1 Solar Power, Inc.*, 2015 U.S. Dist. LEXIS 77294, at *28 (N.D. Cal. June 15, 2015). *See also Calleros v. Rural Metro of San Diego, Inc.*, 2017 U.S. Dist. LEXIS 212756, at *12 and *15 (S.D. Cal. Dec. 28, 2017) (discovery permissible when requests are "relevant and likely to establish class allegations").

Kroger's refusal to adhere to its discovery obligations hinders Plaintiff's ability to comply with the Court's Scheduling Order, which requires Plaintiff to file her motion for class certification by December 6, 2019. Dkt. 58. *See* Weston Reply Decl. ¶ 23. As of now, Kroger steadfastly refuses to state exactly when it sold KBC containing trans fat, nor when the KBC containing trans fat bore the unlawful and deceptive "0g trans fat" claim, nor how much money it made selling KBC.

### IV. Particular Issues.

**Pricing, Sales, and Revenue Data.** Kroger contends it fulfilled its discovery

4

1 obligations with respect to RFPs 18 and 24 and ROG 1 by stating it "lacks information . . . to show the unique number of buyers of all bread crumbs in California."." Opp. at 14. ROG 1, however, does not ask anything about "unique buyers," but *revenue*.

Kroger's response about "lacking information" to "show the unique number of buyers of all bread crumbs in California " is likewise completely incoherent with respect to RFP 18, which requests documents that "reflect, summarize, analyze, or discuss the pricing of the PRODUCT, including wholesale or retail prices." Weston Decl. Ex. 2 at 10. It is also a completely incoherent response to RFP No. 24 which seeks "DOCUMENTS sufficient to show or calculate YOUR total revenue from the sale of the PRODUCT in California for each year in the CLASS PERIOD." ROG 1 seeks only "unit sales" and "revenue" from KBC sales, not "unique buyers."

Further, contrary to Kroger's contention, courts routinely allow plaintiffs to seek sales revenue discovery prior to class certification. For example, in *Woodard v. Labrada*, prior to class certification, the court compelled defendant to "provide a lump sum of gross sales information for each calendar year." 2018 U.S. Dist. LEXIS 226383, at *15 (C.D. Cal. Jan. 11, 2018). Further, the court compelled production "gross profits attributable to its sales of" the product at issue because the "request is relevant to plaintiffs' punitive damages calculation, and it is not overbroad or unduly burdensome to provide such data." *Id. See also.*, *In re: Coca-Cola Prod. Mktg. & Sales Practices Litig.,* 2016 U.S. Dist. LEXIS 148534, at *28 (N.D. Cal. Oct. 26, 2016) ("sales, revenues, profits, and pricing information are relevant to class certification damages inquiry")). "Defendant's argument that the requested discovery must wait until after the class certification motion is decided, fails." *Hill v. Asset Acceptance, LLC*, 2014 U.S. Dist. LEXIS 91190, at *26 (S.D. Cal. July 3, 2014) (J. Major). And even if the Court had granted Kroger's request to bifurcate, its "sales volume in California" is relevant to the "burden of establishing numerosity." *Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 588 (C.D. Cal. 2011).

**Document Retention Policies.**    Kroger argues it can decline responding to RFP 1 by stating that "it was preserving documents per its legal obligations, and that, to the

5

1 extent it agrees to produce documents responsive to any request, it would 'inform
2 plaintiff, if after a reasonable search' it did not locate any." Opp. at 12. But in *Klopman-*
3 *Baerselman v. Air & Liquid Sys., Corp.*, defendant's "promise[] that '[it would] produce
4 the document retention policies it has been able to locate' was "insufficient." 2019 U.S.
5 Dist. LEXIS 67993, at *15 (W.D. Wash. Apr. 22, 2019).

6      Kroger further Kroger contends its "[r]etention policies are not relevant to the
7 claims or class certification." Opp. at 12. However, Kroger's "document retention policies
8 will allow Plaintiff[] to assess the company's document production, determine whether
9 any relevant documents are lacking, and evaluate whether additional discovery is
10 necessary in this case." *Sharma v. BMW of N. Am. LLC*, 2016 U.S. Dist. LEXIS 34101, at
11 *11 (N.D. Cal. Mar. 15, 2016). Similarly, in *Wetzel v. CertainTeed Corp.*, the court found
12 defendants' "document retention policies" to be "relevant . . . to the pre-certification
13 discovery process." 2018 U.S. Dist. LEXIS 67253, at *7 (W.D. Wash. Apr. 19, 2018). *See*
14 *also Montgomery v. Wal-Mart Stores, Inc.*, 2015 U.S. Dist. LEXIS 191953, at *7-8 (S.D.
15 Cal. Sep. 5, 2015) ("[D]ocument retention policies are relevant in light of [defendant]'s
16 claim that it cannot locate certain documents because they do not exist"). As we pointed
17 out in our motion, this becomes especially important given Kroger's implausible claim it
18 cannot provide Plaintiff with basic information like its revenue from the sale of KBC, the
19 time periods during which "0g trans fat" label claim was used, or the date Kroger stopped
20 selling KBC with added trans fat.

21      **PHO and Trans Fat.**   Kroger argues it should not be required to respond to RFPs
22 Nos. 13, 17, and 25 which seek documents that "discuss PHO or trans fat," or on "the
23 effects of" artificial trans fat "on human or animal health," and documents relating to a
24 single press release titled: 'Kroger Using Trans Fat Free Oil to Prepare Fried Chicken.'
25 Opp. at 12. Kroger contends the requests are overbroad, and that the requests are not
26 appropriate prior to class certification. These arguments are unavailing.

27      First, RFP 25 is narrow, a full response would be five or six documents. As stated
28 above, "the Court has not bifurcated discovery," "Defendant's argument that the requested

1  discovery must wait until after the class certification motion is decided, fails." *Hill v.*
2  *Asset Acceptance, LLC*, 2014 U.S. Dist. LEXIS 91190, at *26 (S.D. Cal. July 3, 2014).
3  These requests go to Kroger's knowledge of trans fat's safety, as well as its knowledge of
4  consumer preference for products that really are "0g trans fat." Moreover, our CLRA
5  cause of action includes punitive damages, which "are recoverable in those fraud actions
6  involving intentional, but not negligent, misrepresentations." *Delarosa v. Boiron, Inc.*, 275
7  F.R.D. 582, 592 (C.D. Cal. 2011). Kroger's knowledge of the dangers of consuming trans
8  fat thus bears on Plaintiff's claim for punitive damages. *See Orange Cty. Water Dist. V.*
9  *Unocal Corp.*, 2016 U.S. Dist. LEXIS 193938, at *55 (C.D. Cal. Nov. 3, 2016)
10 (Defendant's "knowledge in the 1980s regarding MTBE dangers […] is relevant to any
11 determination by the finder of fact of punitive damages.").

12        Kroger's knowledge of trans fat's harm is also an issue which is central to
13 Plaintiff's trans fat use claim: federal law requires, for food additives that are not
14 affirmatively determined to be GRAS by the FDA, for the food manufacturer to
15 affirmatively perform a "GRAS self-determination" as to whether there is a scientific
16 consensus that the food additive is safe under the conditions it is used. 80 Fed. Reg.
17 34650, 34653 (June 17, 2015). If Kroger performed such GRAS self-determination, the
18 documents it has relating to trans fat safety go directly to this issue. And if it actually has
19 no scientific documents relating to trans fat safety, it should be required to simply say so,
20 unequivocally and without objection.

21        **Consumer Feedback.**  Kroger contends providing "call center feedback and
22 communications with customers in response" to complaints about trans fat/PHO is too
23 burdensome, and completely refuses to respond. Opp. at 10. As with all of its burden
24 objections, in never provides any support or estimate of the burden. In *Price v. Synapse*
25 *Grp., Inc.*, the RFP was "consumer complaints, grievances, and discussions about
26 consumers' consent to" the challenged practice. 2018 U.S. Dist. LEXIS 155637, at *11
27 (S.D. Cal. Sep. 12, 2018). The defendant argued this was "overbroad, not relevant to the
28 class certification issue, and the burden of collecting and producing them outweighs any

7

relevance." *Id.* Unlike Kroger, it attested that compliance would "cost approximately $4,000." *Id.* at *12. The Court compelled production because "Plaintiffs [could] not access the information any other way, and the burden . . . does not outweigh the likely benefit." *Id.* at *13-14. The reality here is that large companies like Kroger track consumer feedback and enter summaries of consumer calls into an electronic database. A search of such database for "partially hydrogenated oil" and "trans fat" would likely be Kroger's entire burden on this request.

**"0g Trans Fat" Claim.** RFP 16 seeks all documents that "support or substantiate" the central fraud claim here, that KBC supposedly had "0g Trans Fat." In *Schneider v. Chipotle Mexican Grill, Inc.* the request was documents supporting the "statement that Your Food Products are made with 'only non-GMO ingredients.'" 2017 U.S. Dist. LEXIS 43652, at *13 (N.D. Cal. Mar. 24, 2017). Judge Westmore rejected the same arguments Kroger makes, that such a request is "vague and overbroad" or lacks "reasonable particularity" and compelled production.

**Employees and Third Parties.** RFPs 2-4 seek "organizational charts" and "documents sufficient to identify" employees and "third parties with whom YOU contracted for services" in "research, MARKETING, ADVERTISEMENT, manufacturing, or development" of KBC. Weston Decl. Ex. 2 at 8.

Kroger contends its response that "it has none from 2011 through 2015 within its possession, custody, or control" is sufficient. Opp. at 11. We pointed out in our motion, as part of Kroger's policy of being maximally obstructive, that it has never disclosed who the "third party" that manufactured KBC is, even while referring, again and again, to this mystery third party in its objections/non-responses. It might have taken our complaint in the motion as a prompt to finally disclose the third party in its post-motion document production, or perhaps its opposition. It did not. Kroger's position remains that it doesn't have to produce anything regarding KBC because it was a third party that physically manufactured them, and it also doesn't have to produce documents that show who that third party is. Further, it is not credible for Kroger to say it "purchased the KBC through a

8

third-party supplier, but is not aware of the entity that 'manufactured' KBC" and is thus "not able to provide the requested information," Opp. at 13. Kroger is required to provide the documents and information if it "has a legal right to obtain the document or has control over the entity who is in possession of the document." *Nutrition Distrib'n LLC*, 2018 U.S. Dist. LEXIS 134720, at *20. Kroger's Supplemental Responses suggest it did not undertake such an effort. Further, it is not just the product name "Kroger Bread Crumbs" which makes Kroger's claim that it has no way of disclosing who manufactured KBC incredible. Kroger lists itself on the KBC label as a "responsible party" under state and federal law for the product. *See* Weston Reply Decl, Ex. A; 21 C.F.R.§ 101.5. It is thus Kroger, not the mystery third party, that is required by the FDA to be the keeper of records relating to the product.

**Products Not at Issue.** Kroger contends it should not be required to respond to Interrogatories 3 and 6 because they "seek information about products not at issue" and are thus irrelevant. Opp. at 8-9. This argument fails.

Interrogatory 3 directs Kroger to "identify products" it considers to be "the primary competitors" to KBC. Weston Decl. Ex. 1 at 4. This information is directly relevant to Plaintiff's claims under the UCL. Plaintiff alleges that "[a]lthough safe, low-cost, and commercially acceptable alternatives to PHO exist, including those used in competing brands, Kroger unfairly elects not to use these safe alternatives in the Kroger Bread Crumbs, in order to increase its profits at the expense of the health of its customers." Compl. ¶ 8. Further, Plaintiff alleges "competing bread crumb brands are all free of PHO and do not pose serious health consequences associated with Kroger Bread Crumbs." Compl. ¶ 81. Thus, this information is relevant to Plaintiff's claim that Defendant's use of PHO constitutes an unfair business practice under the UCL.

**Preparation of Discovery Responses.** Interrogatory No. 2 directs Kroger to identify individuals who "participated in answering" Plaintiff's discovery requests. Weston Decl. Ex. 1 at 3. Kroger contends the request is "overbroad in that it encompasses attorney work product." Opp. at 15. However, the "disclosure of names" of individuals

9

*Hawkins v. The Kroger Company,* Case No. 3:15-02320-JM-BLM
REPLY IN SUPPORT OF MOTION TO COMPEL RESPONSES TO DISCOVERY REQUESTS

who assisted in preparing the responses "does not reveal any of the details of the interactions that occurred with counsel or the mental impressions, conclusions, opinions, or legal theories of counsel." *U.S. ex rel. Krahling v. Merck & Co.*, 2015 U.S. Dist. LEXIS 184322, at *3-4 n.2 (E.D. Pa. July 31, 2015).

DATED: August 9, 2019　　　　　　　　　Respectfully Submitted,

/s/ Gregory S. Weston
**THE WESTON FIRM**
GREGORY S. WESTON
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone: (619) 798-2006
Facsimile:  (619) 343-2789

**Counsel for Plaintiff**