**THE WESTON FIRM**
GREGORY S. WESTON (239944)
*greg@westonfirm.com*
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone: (619) 798-2006
Facsimile: (619) 343-2789

<u>**Counsel for Plaintiff**</u>

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAVONDA HAWKINS, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE KROGER COMPANY,<br><br>Defendant. | Case No: 3:15-cv-02320-JM-BLM<br><br>**REPLY DECLARATION OF GREGORY S. WESTON**<br><br>Judge: The Honorable Barbara L. Major |

Pursuant to 28 U.S.C. § 1746, I hereby declare and state as follows:

1. I am a member in good standing of the California Bar and of this Court. I make this Declaration in support of Plaintiff's Motion to Compel Responses to Discovery Requests. I could testify to the matters contained herein if called upon to do so.

2. Attached hereto as **Exhibit A** is a true and correct copy of the first two pages and relevant portion of the California Department of Public Health, Food and Drug Branch's guidance document "Close Up on Food Labels."

3. As Kroger's major argument is we did not confer on these requests sufficiently, what follows is a more detailed version of my prior declaration's recounting of our efforts.

4. Though we served an e-mail courtesy copy of our discovery requests on the day they were mailed, Kroger sent its responses only by mail. In my experience, this is a bad sign and suggests obstructive games-playing will follow.

5. On June 19, 2019, the very day Kroger's mail-only objections arrived, I reviewed them, and then sent an e-mail to opposing counsel stating:

> I have reviewed Kroger's complete lack of responses to even one of our requests for production and interrogatories, and request we confer by telephone.

6. Kroger stated it would be a full week before they could fit me into their schedule for a call, despite me indicating that I was available for a call at many different times prior.

7. While waiting the seven days Kroger demanded before even agreeing to talk to me on the phone, I wrote a formal and detailed letter to opposing counsel regarding Kroger's lack of responses to all of our requests. *See* Dkt. 69-2, Ex. 5. Kroger never responded to this letter in any way, or send any other kind of detailed response to any of my efforts to confer.

8. On June 26 and 27, I conducted a telephonic meet and confer with Heather Canner, counsel for Kroger. Over 90 minutes, I provided Plaintiff's position on each of Kroger's invalid objections and described the relevance of the requests, but was unable to

1

*Hawkins v. The Kroger Company,* Case No. 3:15-02320-JM-BLM
REPLY DECLARATION OF GREGORY S. WESTON

convince Kroger to withdraw them. I also proposed several compromises on the second call.

9. Specifically, during the second call, I agreed to narrow the following Request for Production to seek only Kroger Bread Crumbs labels in use between 2008 and 2017:

> Request No. 5: "Exemplars of all LABELS, packaging, package inserts, and brochures RELATING TO the PRODUCT."

I further agreed to narrow the following Requests for Production to seek only feedback or responses that concern trans fat or partially hydrogenated oil:

> Request No. 11: "All DOCUMENTS referencing or reflecting any call center feedback for the PRODUCT."

> Request No. 20: "Any COMMUNICATION between YOU and any customer in response to any complaint about the ingredients in the PRODUCT."

Finally, I agreed to withdraw Plaintiff's Request for Production No. 12 if Kroger agreed to provide a substantive response to Interrogatory No. 3.

10. On June 27, I sent an e-mail to opposing counsel stating:

> Our call today lasted about 90 minutes and we discussed each RFP and interrogatory. I was unable to convince Kroger to withdraw any objection to any of our discovery requests.

> I was also unable to convince Kroger to agree to provide documents to any request for production or to provide actual answers to any interrogatory.

> During our discussion, I offered to narrow the RFP for labels to those used between 2008 and 2017.

> I also agreed to narrow the two RFPs relating to call center feedback and Kroger's responses to only the feedback or responses that concern trans fat or partially hydrogenated oil.

> I offered to withdraw RFP No 12 in return for a full substantive response to interrogatory 3 that would include full product names.

> During the call, I asked how many documents Kroger was withholding on grounds of privilege or work product. I did not fully understand your response, so I would like to ask this question again.

> During the call, Kroger would not agree to produce any documents. Kroger also did not provide an answer to any of my proposed compromises, nor did it offer any compromises of its own.
>
> You stated Kroger would "supplement its responses" by July 9, 12 days from now. However, Kroger did not actually "respond" to any of our requests, but rather refused to answer any interrogatory and refused to produce any documents. You would not say if this supplement would involve actual answer to any interrogatories or production of any documents.
>
> For these reasons, we are at an impasse as to all requests except those where I offered compromises, to which I await Kroger's response.

11. The same day, Ms. Canner sent a short to my e-mail, stating she "disagree[d] with [my] characterization of the call."

12. Also on June 27, I sent an e-mail to Ms. Canner asking "Can you state what, specifically, you disagree with in my e-mail?"

13. Ms. Canner *did not respond at all* to that e-mail. This was the first of several e-mails I sent to Kroger's counsel requesting its position or asking its questions that received no response whatsoever.

14. The following day, I sent a follow-up e-mail to Ms. Canner addressing her suggestion that we stipulate to extend the time for Kroger to actually respond with a "supplement" by two weeks (by that time, more than three weeks after the initial responses):

> Heather, before we can agree, I will reiterate that we do not extend the time to raise objections, or cure prior insufficient objections.
>
> Please confirm you will be using these two weeks to: actually begin producing documents, and that this "supplement" will actually provide substantive answers to our interrogatories.
>
> Please also confirm that, concurrently with your supplement on July 11, you will be providing (1) the labels for KBC that were used between 2008-2017, the amount of trans fat in KBC during the period it claimed to be "0g trans fat," and

3

*Hawkins v. The Kroger Company,* Case No. 3:15-02320-JM-BLM
REPLY DECLARATION OF GREGORY S. WESTON

the sales data for KBC, either in the form of documents or actual answers to our interrogatories.

If that is acceptable, please send your proposed joint motion extending time.

I also want to note my concern that during the entire conferral process, I ask questions that you don't respond to, or you state vaguely that you disagree.

In your e-mail below, you stated you "disagreed" with my characterization of the call. Please state so with specificity.

Was I wrong to say "I was unable to convince Kroger to withdraw any objection to any of our discovery requests."?

If so, please state which objections Kroger withdrew on the call.

Did I describe any of the offers of compromise I extended incorrectly? If so, please tell me how.

Was I wrong to say that Kroger failed to offer any compromises? If so, what compromises did Kroger offer?

Was I wrong to say that during the call Kroger did not agree to produce a single document or provide actual answers to any interrogatory? If that was wrong, please let me know what Kroger agreed to answer/produce.

For this process to work, I need actual, specific answers to these questions.

15.     Ms. Canner responded to this e-mail on June 28, stating:

As I stated on our call, we agreed to supplement the responses and work in good faith to resolve the discovery disputes. We preserved our objections, and remain committed to responding to relevant, proportional discovery in due course.

16.     I responded on June 28. My email read as follows:

Again, you make vague statements but failed to answer any of my specific questions below, or to agree to produce any document or answer any interrogatory. Let me repeat my questions.

Indeed, this is how all of my efforts to confer with you have gone. No answers to my questions, or vague, non-committal statements.

Let me repeat the many questions you have decided not to answer:

4

*Hawkins v. The Kroger Company,* Case No. 3:15-02320-JM-BLM
REPLY DECLARATION OF GREGORY S. WESTON

Please confirm you will be using these two weeks to: actually begin producing documents, and that this "supplement" will actually provide substantive answers to our interrogatories.

Please also confirm that, concurrently with your supplement on July 11, you will be providing (1) the labels for KBC that were used between 2008-2017, the amount of trans fat in KBC during the period it claimed to be "0g trans fat," and the sales data for KBC, either in the form of documents or actual answers to our interrogatories.

If that is acceptable, please send your proposed joint motion extending time.

I also want to note my concern that during the entire conferral process, I ask questions that you don't respond to, or you state vaguely that you disagree.

In your e-mail below, you stated you "disagreed" with my characterization of the call. Please state so with specificity.

Was I wrong to say "I was unable to convince Kroger to withdraw any objection to any of our discovery requests."?

If so, please state which objections Kroger withdrew on the call.

Did I describe any of the offers of compromise I extended incorrectly? If so, please tell me how.

Was I wrong to say that Kroger failed to offer any compromises? If so, what compromises did Kroger offer?

Was I wrong to say that during the call Kroger did not agree to produce a single document or provide actual answers to any interrogatory? If that was wrong, please let me know what Kroger agreed to answer/produce.

Please let me know if there are any times coming up when you are not available for a conference call with the Court.

I am available: Monday all day after 11:30, Tuesday all day, Wednesday all day, Friday all day, the following Monday 4pm only, Tuesday all day, Wednesday all day.

17. On July 8, 2019, the parties held a teleconference before the Court's clerk, which did not resolve their dispute. During the call, Ms. Canner again stated Kroger

5

*Hawkins v. The Kroger Company,* Case No. 3:15-02320-JM-BLM
REPLY DECLARATION OF GREGORY S. WESTON

would "supplement" in two weeks without saying if this would involve any actual document production or substantive interrogatory requests.

18. On July 11, 2019, Kroger served its "supplemental" responses, which once again included not a single document, nor a single substantive response to any interrogatory.

19. On July 12, 2019, I sent an e-mail to Ms. Canner stating:

> Heather, you told me and the Court's clerk your "supplement" would include documents. Where are they? When will they be produced?
>
> You continue to make privilege objections with no privilege logs. Please provide a privilege log as our requests instructed, and as I have requested separately several times since then, or at least clarify that you are refusing to produce one so I may refrain from asking again.

20. Once again, Ms. Canner did not respond to this e-mail.

21. On July 17, 2019, I sent another e-mail to Ms. Canner stating:

> Dear Heather, I have not heard back from you on the compromises I extended 15 days ago (see e-mail below). I assumed the "supplement" you promised and which once again turned out to include 0 documents produced and 0 interrogatories with substantive answers would include you position now that you've had 15 days to consider my proposals.
>
> Should I assume Kroger's position is that they are all rejected?

22. Ms. Canner never responded to my July 17, 2019 e-mail.

23. I have litigated many cases similar to this one involving unfair use of and deceptive labeling of trans fat. This is the first case in which the Defendant has flatly refused to provide, or pretended it didn't have, all the labels used during the class period, the sales of the product, and the time periods during which the labels were used. In these similar cases, such documents were used to support the plaintiffs' motions for class certification. If requested by the Court, I could provide voluminous evidence that the exact documents Kroger refuses to produce were used to support certification motions in similar cases.

Executed on August 9, 2019 in San Diego, California.

/s/ Gregory S. Weston
Gregory S. Weston

DATED: August 9, 2019

Respectfully Submitted,

/s/ Gregory S. Weston
**THE WESTON FIRM**
GREGORY S. WESTON
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone:   (619) 798-2006
Facsimile:   (619) 343-2789

**Counsel for Plaintiff**

# EXHIBIT A

# Close up on Food Labels

Information for California Food Processors

California Department of Public Health, Food and Drug Branch — August 2013



The goal of food labeling is to provide consumers with information that is factual and relevant about the products they consume. The food label allows consumers to compare one product to another, gives instructions for safe handling and storage, lists ingredients to help consumers select foods with ingredients they want or need to avoid, and identifies the firm responsible for the product in the case of a defect with the food.

Certain label information, such as the responsible firm's name and address and ingredient declaration, is **required**. Other label information, such as health claims and nutrient content claims, are **voluntary**. These label statements are based on the following statutes:

1. Fair Packaging and Labeling Act (FPLA) of 1967,
2. Federal Food, Drug, and Cosmetic Act (FD&C)
3. Nutrition Labeling and Education Act of 1990 (NLEA),
4. Dietary Supplement Health and Education Act of 1994 (DSHEA),
5. Food Allergen Labeling and Consumer Protection Act of 2004 (FALCPA) and
6. Patient Protection and Affordable Care Act of 2010.

## Label Panels

A food package usually has at least two distinct areas: the **Principal Display Panel** or **Primary Display Panel (PDP)** and the **Information Panel (IP)**. The PDP is the part of the label consumers see first when selecting a food product. In most cases, the PDP is the front of the package that is likely to be seen during normal methods of display on store shelves. The IP is usually to the immediate right of the PDP (to the left, rear, top or bottom if there is insufficient space to the right of the PDP).

All required information on the label must be presented in a legible manner. It cannot be concealed in any manner such that it is unlikely for the consumer to read. The size of the lettering, unless stated, must be at least **1/16 inch** in height. Exceptions may be applied to small, single-serving packages as specified in 21 CFR §101.2. All required information must be in English. Accurately translated information in another language may accompany it.

Labels must be made of materials that do not contaminate the food. If there is likelihood that the paper, ink or adhesive of a label will touch the product or penetrate the packaging, these materials must be safe for food use.



**Information Panel (IP)**

**Principal Display Panel (PDP)**

> *Principal Display Panel (PDP) lists*
> - *Product Name*
> - *Net quantity of contents*
> - *"Perishable Keep Refrigerated" (if applicable)*
> - *"Made in a Home Kitchen" (if applicable)*
>
> *Information Panel (IP) lists:*
> - *Nutrition Facts*
> - *Ingredients list*
> - *Name and Address of the responsible firm*

### Food Name

All foods must be named. This name, which is often called the "**Statement of Identity,**" can be either the "common name" or a "fanciful name" of the food. If a fanciful name is used, it must be accompanied by a descriptive phrase at least ½ the type size of the product name. The name has to be truthful and must be presented in **bold type** on the PDP (21 CFR §101.3 (d)).

If it is a "flavored" product, it must state so (e.g., "cherry flavored" pie). If the flavor is not derived from a natural source, then it must indicate so (e.g., "artificial cherry flavored" pie). When appropriate, it must describe the form of the food too, such as "sliced peaches" or "whole peaches". A brand name can serve as the statement of identity if the name is commonly used and easily understood by consumers (e.g., Pepsi, Coca-Cola).

### Responsible Firm

There must be a firm (manufacturer, packer or distributor) identified on the label as a responsible party. Unless the name given is the actual manufacturer, it must be accompanied by a qualifying phrase which states the firm's relation to the product (e.g., "manufactured for" or "distributed by"). The firm's name, city, state and zip code must be declared. If the firm is not listed in the current telephone guide for that city, the street address must also be listed.

### Net Quantity

Every packaged food must declare its count, net weight (drained weight if appropriate) or volume. The net quantity refers only to the quantity of food in a package or container. It includes the weight of any liquid in which the food may be packed if the liquid is usually eaten. It does not include the weight of the container or wrappers.

It must be stated in both English (inches/pounds/fluid ounces) units and metric units (grams/liters). For example: Net Wt. 8 oz. (226 g).

### Ingredients

All packaged foods composed of <u>two or more ingredients</u> are required to include an **ingredient list**. The ingredient statement must be legible and be correctly listed in **descending order of predominance by weight.** Ingredients must be listed by their common or usual names (e.g., sugar instead of sucrose). Certain ingredients require special declaration. The sub-ingredients of a food that is an ingredient in another food may be declared following the name of the ingredient. For example: enriched flour (wheat flour, niacin, reduced iron, thiamine, mononitrate, riboflavin and folic acid).

Foods with two or more discrete components (e.g., cherry pie that has filling and pie crust) may have a separate ingredient list for each of the components, or list all of them together under one list. For foods that are sold in bulk, a list of ingredients must be stated on a sign or on the food's original container. For more information, refer to 21 CFR § 101.4.

### Product Dates / Lot Codes

Product dating is optional for most food products. There are two types of dating on food packaging: "open dating" and "lot coding".

**Open dating** is recommended for all foods that are readily perishable. It:

