UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAVONDA HAWKINS on behalf of herself and all others similarly situated,<br><br>                                    Plaintiff,<br><br>v.<br><br>THE KROGER COMPANY,<br><br>                                    Defendant. | Case No.:  15cv2320-JM(BLM)<br><br>**ORDER GRANTING IN PART PLAINTIFF'S MOTION TO COMPEL DISCOVERY**<br><br>**[ECF NO. 69]** |

Currently before the Court is Plaintiff's July 25, 2019 motion to compel discovery [ECF No. 69-1 ("MTC")], Defendant's August 2, 2019 opposition to the motion [ECF No. 70 ("Oppo.")], and Plaintiff's August 9, 2019 Reply [ECF No. 71 ("Reply")].  For the reasons set forth below, Plaintiff's motion is **GRANTED IN PART**.

## BACKGROUND

The instant class action was initiated on October 15, 2015 alleging state law claims for (1) violations of California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§17200 et. seq., unfair prong and unlawful prong; (2) breach of implied warranty of merchantability; (3) violations of UCL, unlawful prong, fraudulent prong, and unfair prong; (4) violation of California False Advertising Law ("FAL"), Cal. Bus. & Prof. §§17500 et seq.; (5) violation of California Consumer Legal Remedies Act ("CLRA"), Cal. Civil Code §§1750 et seq.; and (6) breach of express warranty.   ECF No. 1 ("Compl.").  Plaintiff seeks to represent a class of similarly situated

individuals defined as:

> All persons who purchased in the United States, on or after January 1, 2008, Kroger bread crumb products containing partially hydrogenated oil.

Id. at 24 at ¶ 114.  Plaintiff alleges that the line of bread crumb products that Defendant  sells contain partially hydrogenated oil ("PHO") which is a food additive banned in many countries because of its artificial trans fat content.  Id. at 4 at ¶ 6.  Plaintiff seeks an order

> Compelling Defendant to, inter alia: (1) cease using PHO in the Products and recall from stores any unexpired Kroger Bread Crumbs; (2) conduct a corrective advertising campaign; (3) destroy all misleading and deceptive materials and unsafe Products; (4) award Plaintiff and other Class members restitution, actual damages, and punitive damages; and (5) pay costs, expenses, and attorney fees.

Id. at ¶ 12.

On March 17, 2016, the Court found that Plaintiff's use and labeling claims failed for lack of standing and that the labeling claim was preempted, and therefore, granted Defendant's motion to dismiss the case.  ECF No. 19.  Plaintiff appealed [see ECF No. 21] and the Ninth Circuit reversed.  ECF No. 27.  Defendant filed another motion to dismiss that was denied on April 4, 2019.  ECF No. 40.  Defendant answered the complaint on April 26, 2019 and the Court held an Early Neutral Evaluation and Case Management Conference on June 5, 2019.  ECF Nos. 44, 57.  Discovery opened on June 6, 2019 and fact and expert Discovery close on February 14, 2020 and May 1, 2020 respectively.  ECF No. 58.

On May 15, 2019, Plaintiff served her First Set of Interrogatories and Requests for Production.  MTC at 6; see also ECF No. 69-2, Declaration of Gregory S. Weston in Support of Plaintiff's Motion to Compel Responses to Discovery Requests ("Weston Decl.") at ¶¶ 2-3, Exhs. 1-2.  Defendant served its responses on June 17, 2019.  Weston Decl. at ¶ 4-5, Exh. 3-4.  On June 19, 2019, Plaintiff's counsel, Mr. Weston, requested a meet and confer with defense counsel and on June 24, 2019, Mr. Weston sent defense counsel a letter describing the perceived deficiencies in Defendant's discovery responses.  Id. at ¶¶ 6-7, Exh. 5.  Counsel for the parties participated in two telephonic meet and confers, but were unable to come to an agreement.  Id. at ¶ 8.

On July 8, 2019, Weston, and counsel for Defendant, Ms. Heather F. Canner, jointly contacted the Court regarding Defendant's responses to Plaintiff's First Set of Requests for Production of Documents and Interrogatories. ECF No. 63. In regard to the dispute, the Court set a briefing schedule. Id. The parties timely filed their pleadings. See MTC, Oppo., and Reply.

On July 11, 2019, Defendant served its supplemental responses. Id. at ¶ 14, Exhs. 7-8. On July 26, 2019, Defendant produced seventeen documents. See ECF No. 70-1, Declaration of Heather F. Canner In Support of Opposition to Plaintiff's Motion to Compel ("Canner Decl.") at ¶ 7.

## LEGAL STANDARD.

The scope of discovery under the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") is defined as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

District courts have broad discretion to determine relevancy for discovery purposes. See Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002). District courts also have broad discretion to limit discovery to prevent its abuse. See Fed. R. Civ. P. 26(b)(2) (instructing that courts must limit discovery where the party seeking the discovery "has had ample opportunity to obtain the information by discovery in the action" or where the proposed discovery is "unreasonably cumulative or duplicative," "obtain[able] from some other source that is more convenient, less burdensome, or less expensive," or where it "is outside the scope permitted by Rule 26(b)(1)").

A party may request the production of any document within the scope of Rule 26(b). Fed. R. Civ. P. 34(a). "For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for

objecting to the request, including the reasons." <u>Id.</u> at 34(b)(2)(B). The responding party is responsible for all items in "the responding party's possession, custody, or control." <u>Id.</u> at 34(a)(1). Actual possession, custody or control is not required. Rather, "[a] party may be ordered to produce a document in the possession of a non-party entity if that party has a legal right to obtain the document or has control over the entity who is in possession of the document." <u>Soto v. City of Concord</u>, 162 F.R.D. 603, 619 (N.D. Cal. 1995).

An interrogatory may relate to any matter that may be inquired under Rule 26(b). Fed. R. Civ. P. 33(a)(2). "The grounds for objecting to an interrogatory must be stated with specificity, [and] [a]ny ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Fed. R. Civ. P. 33(b)(4). Any interrogatory not objected to must be answered fully in writing under oath. Fed. R. Civ. P. 33(b)(3). In answering interrogatories propounded to a corporation, partnership, association or governmental agency, the officer or agent responding on its behalf "must furnish the information available to the party." Fed. R. Civ. P. 33(b)(1)(B).

## **DISCUSSION**

Plaintiff seeks to compel responses to her First Set of Interrogatories ("Rogs") and First Set of Requests for Production ("RFPs"). The discovery requests consist of eight Rogs and twenty-five RFPs. Weston Decl. at Exhs. 1-2. Defendant asserted lengthy objections to each request, did not provide a substantive response to any of the interrogatories or RFPs, and did not produce any responsive documents or indicate a willingness to produce any documents. <u>Id.</u> at Exhs. 3-4. This is unacceptable and not in compliance with the spirit or requirements of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 1 ("These rules govern the procedure in all civil actions and proceedings in the United States district courts, except as stated in Rule 81. They should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."). To make matters worse, Defendant supplemented its responses on July 11, 2019 but the supplemental responses provided minimal substance and Defendant did not produce any documents. <u>Id.</u> at Exh. 7-8. On July 26, 2019, Defendant produced a total of seventeen documents which consisted solely

of product labels for 2011-2015.  Canner Decl. at ¶ 7.  Because Defendant has not made a reasonable effort to satisfy its discovery obligations and is relying on its objections to avoid providing substantive discovery, the Court will first address Defendant's objections and arguments.

  A. <u>Failure to Meet and Confer</u>

  Defendant contends that Plaintiff's motion should be denied due to Plaintiff's counsel's failure to meet and confer regarding Defendant's supplemental responses prior to filing the motion.  Oppo. at 9-10.  Defendant recognizes that the parties met and conferred regarding Defendant's initial responses, but complains that Plaintiff's "counsel never attempted to meet and confer after Kroger substantially supplemented its responses on July 11."  <u>Id.</u> at 10; <u>see also</u> Canner Decl. at ¶ ¶ 7-9.  Instead, Plaintiff's counsel merely sought confirmation as to Defendant's position about three narrowed document requests Plaintiff offered prior to the supplemental production.  <u>Id.</u>; <u>see also</u> Canner Decl. at ¶ 8.  Defendant contends this violates Fed. R. Civ. P. 37(a)(1), CivLR 26.1, and Judge Major's Chambers Rules.  <u>Id.</u> at 9.

  Plaintiff replies "[t]he reality: our meet and confer efforts consisted of two conference calls between counsel, a third with the Court's clerk, a formal 5-page letter, a large number of e-mails, and multiple offers of compromise. All this resulted in a total of zero substantive interrogatory responses and a total of 17 pages produced in partial response to one RFP."  Reply at 3; <u>see also</u> ECF No. 71-1, Reply Declaration of Gregory S. Weston, ("Weston Reply Decl.") at ¶ ¶ 3-22.

  The Court requires and encourages parties to meet and confer prior to filing any discovery motions.  <u>See</u> Judge Major's Chambers Rules § VA; <u>see</u> <u>also</u> CivLR 26.1.  Here, the parties met and conferred telephonically on June 26 and 27, 2019.  Weston Decl. at ¶ 8.  On July 8, 2019, the parties participated in a call with the Court's clerk and afterwards, Judge Major issued an Order Setting Briefing Schedule that preserved Plaintiff's right to file a motion to compel, but left time for Defendant to supplements its responses and possibly obviate the need to file a motion at all.  ECF No. 63.  While the Court expected the parties to engage in further meet and confer efforts, Defendant's decision to provide little, if any, substance in its supplemental

5

responses undermined the purpose of additional meet and confer efforts. The Court **DENIES** Defendant's request to deny Plaintiff's motion on this basis.

B. Discovery is Premature

Defendant argues that many of Plaintiff's requests are premature because a class has not yet been certified. Oppo. The Court did not bifurcate discovery [see ECF No. 58] so the parties are permitted to conduct discovery relevant to both class certification and the merits of the case.

Defendant also argues that discovery is premature because Plaintiff has not made the requisite showing to justify pre-certification discovery. Oppo. at 10-12. Initially, the court notes that the case law cited by Defendant does not prohibit the Court from allowing pre-certification discovery without a specific showing; it merely holds that a court's decision not to allow discovery was not an abuse of discretion. Id.; see also Mantolete v. Bolger, 767 F.2d 1416, 1424 (9th Cir.1985), Salgado v. O'Lakes, 2014 WL 7272784, at *7 (E.D. Cal. Dec. 18, 2014) (emphasizing "that it is not obligated to require a plaintiff to satisfy the *Mantolete* burden or delve into a merits review. Courts may require such a showing prior to allowing precertification discovery, at their discretion") (citing Kaminske v. JP Morgan Chase Bank N.A., 2010 WL 5782995 (C. D. Cal. May 21, 2010) (Mantolete and Doninger v. Pacific Northwest Bell, Inc., 564 F.2d 1304, 1313 (9th Cir. 1977) do not "suggest[ ] that a prima facie showing is mandatory in all cases, and it very well may be the case that courts routinely do not require such a showing. However, it is clear that a court has discretion to decide whether to require the prima facie showing ... before allowing discovery."). Here, based upon the complaint and the relevant pleadings and orders, including the Ninth Circuit's decision, the Court finds that pre-certification discovery is both appropriate and required. Second, as set forth below, the Court finds Plaintiff has made the requisite showing.

Whether to allow pre class certification discovery lies within the sound discretion of the trial court. Coleman v. Jenny Craig, Inc., 2013 WL 2896884, at *4 (S.D. Cal. June 12, 2013) (citing Kamm v. Cal. City Dev. Co., 509 F.2d 205 (9th Cir.1975)). In seeking discovery before class certification, plaintiffs bear the burden of making a prima facie showing that the Fed. R. Civ. P. 23 requirements are satisfied or that discovery is likely to substantiate the class

allegations (<u>Mantolete</u> Burden). <u>Salgado</u>, 2014 WL 7272784, at *4; <u>see</u> <u>also</u> <u>Coleman</u>, 2013 WL 2896884, at *4 (citing <u>Mantolete</u>, 767 F.2d at 1424 ("Although in some cases a district court should allow discovery to aid the determination of whether a class action is maintainable, the plaintiff bears the burden of advancing a prima facie showing that the class action requirements of Fed. R. Civ. P. 23 are satisfied or that discovery is likely to produce substantiation of the class allegations. Absent such a showing, a trial court's refusal to allow class discovery is not an abuse of discretion.")). Fed. R. Civ. P 23(a) permits a class actions to proceed where

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class

Additionally, a class action only will be certified if

> (1) there is a risk of substantial prejudice from separate actions; or (2) declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) "the questions of law and fact common to class members predominate over any questions affecting only individual members and ... a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

<u>Coleman</u>, 2013 WL 2896884, at *4. "In determining whether to grant discovery the court must consider its need, the time required, and the probability of discovery resolving any factual issue necessary for the determination" of whether a class action is maintainable. <u>Id.</u> (citing <u>Kamm</u>, 509 F.2d at 210) (stating that "[t]he propriety of a class action cannot be determined in some cases without discovery, as, for example, where discovery is necessary to determine the existence of a class or set of subclasses. To deny discovery in a case of that nature would be an abuse of discretion. Where the necessary factual issues may be resolved without discovery, it is not required.").

Here, the Court finds that Plaintiff has satisfied her burden and made a prima facie showing under Fed. R. Civ. P. 23. Regarding numerosity, Plaintiff seeks to certify a PHO Class of "[a]ll persons who purchased in the United States, on or after January 1, 2008, Kroger bread crumb products containing partially hydrogenated oil" and a 0g Trans Fact Claim Subclass of

7

"[a]ll persons who purchased in the United States, on or after January 1, 2008, Kroger bread crumb products containing the front labeling claim '0g Trans Fat' and containing partially hydrogenated oil."  Compl. at 24-25 at ¶ 114.  Plaintiff alleges that "[t]he Class is sufficiently numerous, as it includes thousands of individuals who purchased the Kroger Bread Crumbs throughout the United States during the Class Period."  Id. at 26 at ¶ 117.

As far as commonality, Plaintiff alleges questions of law and fact common to Plaintiff and the class include:

> a. Whether Defendant's conduct constitutes a violation of the unfair prong of California's Unfair Competition Law; b. Whether Defendant's conduct constitutes a violation of the unlawful prong of California's Unfair Competition Law; c. Whether Defendant's conduct constitutes a violation of the fraudulent prong of California's Unfair Competition Law; d. Whether Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers; e. Whether the slight utility Defendant realizes as a result of its conduct outweighs the gravity of the harm the conduct causes to its victims; f. Whether Defendant's conduct violates public policy as declared by specific constitutional, statutory, or regulatory provisions; g. Whether the injury to consumers from Defendant's practices is substantial; h. Whether the injury to consumers from Defendant's practices is one consumers themselves could reasonably have avoided; i. Whether Defendant communicated a misleading health and wellness message through its "0g Trans Fat" front label claim; j. Whether that message was material to a reasonable consumer; k. Whether the Class is entitled to actual damages, restitution, rescission, punitive damages, attorney fees and costs, and an injunction; l. Whether the statute of limitations should be tolled on behalf of the Class; m. Whether Defendant's conduct constitutes violations of California's False Advertising Law; n. Whether Defendant's conduct constitutes a violation of the California CLRA; o. Whether members of the Class are entitled to restitution and, if so, the correct measure of restitution; p. Whether members of the Class are entitled to an injunction and, if so, its terms; and q. Whether members of the Class are entitled to any further relief.

Compl. at 25-26 at ¶ 115.  These allegations satisfy the prima facie requirement of commonality. See Coleman, 2013 WL 2896884 at *5 (citing Washington, 271 F.R.D. at 636 ("Plaintiff's claims, as pled, share a common question of law—whether any of the practices [defendant] is alleged to have engaged in constitute violations of California law—and at least some of the facts to be

analyzed with respect to this question are the same."). With respect to typicality, Plaintiff "asserts injuries similar to class members, and the evidence suggests other class members have been similarly injured." Soto v. Castlerock Farming & Transport, Inc., 282 F.R.D. 492, 502 (E.D. Cal. 2012). Finally, with respect to adequacy, the Court believes that a sufficient showing has been made. Accordingly, the Court finds that discovery also is appropriate based on Plaintiff's prima facie showing of Rule 23(a)'s prerequisites. Id. at n.6 (citing Soto, 282 F.R.D. at 500 n. 6 ("The Court is not making findings related to class certification, but evaluates the certification factors at this time only for a determination of whether prima facie evidence has been shown."). Defendant's objection that the requested discovery is premature is **OVERRULED**.

C.   Relevancy & Proportionality

As part of its argument that Plaintiff has not made the requisite showing to conduct discovery, Defendant argues that Plaintiff also has not made the "heightened showing" that each request seeks relevant information and is proportional to the needs of the case. Oppo. at 10-11. Plaintiff replies that:

> [t]here is no requirement that the information sought directly relate to a particular issue in the case. Rather, relevance encompasses any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be [presented] in the case.

Reply at 3 (quoting Shaw v. Experian Info. Sols., Inc., 306 F.R.D. 293, 301 (S.D. Cal. Mar. 18, 2015). Plaintiff further replies that Defendant's boilerplate relevancy objections are improper. Id.

As an initial matter, the Court notes that Plaintiff's definition of relevancy comes from a case that was decided before Fed. R. Civ. 26 was amended in December 2015 to limit discoverable information to that which is relevant to any party's claim or defense and is proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Second, as discussed above, and contrary to Defendant's argument, Plaintiff is not required to prove the relevancy and proportionality of every discovery request before Defendant provides a substantive response and Plaintiff is not subject to a "heightened showing" merely because a class has not yet been

9

certified.  Accordingly, Defendant's general objections regarding relevancy and proportionality are **OVERRULED**.[1]

    D.    Time Period for Discovery Requests

    In her First Set of Interrogatories and Requests For Production of Documents, Plaintiff defines the CLASS PERIOD as January 1, 2010 to May 31, 2018.  Weston Decl. at Exh. 1.  For RFPs that do not reference the Class Period, Plaintiff explains that "[u]nless otherwise indicated, each matter or [RFP] listed below shall cover the period from January 1, 2006 to the present."  Id. at Exh. 2.  The statute of limitations for Plaintiff's claims are three and four years.  Oppo. at 13; see also MTC at 16.

    Plaintiff argues that Defendant's objections to the time period of discovery for Rogs 1, 3-4 and 6 and RFPs 2-3, 7, 9-10, 14-15, 19, and 21-24 "rest[] on the false assumption that Plaintiff can seek to certify a class with claims accruing after the date of the Complaint."  MTC at 16.  Plaintiff also argues that the statute of limitations does not prevent discovery from outside of the statute of limitations and notes that Defendant fails to provide any authority for its position that a class period cannot extend beyond the time when a complaint is filed.  Id.

    Defendant contends that Plaintiff's discovery time periods are not proportional to the needs of the case.  Oppo. at 12.  Defendant notes that Plaintiff fails to link these time periods to class certification or the relevant issues.  Id. at 13.  Defendant also contends that being required to obtain information from a decade or longer ago "is objectively unduly burdensome and disproportionate to the minimal benefit, if any, from production."  Id.  Defendant recognizes the four years prior to the complaint as the relevant time period because the statute of limitations for Plaintiff's claims are three to four years.  Id.

    Plaintiff replies that Defendant has not provided any authority for the position that "it has no obligation to produce documents from after the complaint's 2015 filing date."  Reply at 5.  Plaintiff notes that nothing in the complaint indicates that Defendant's activity ceased prior to

---

[1] The Court still will consider any relevancy or proportionality arguments asserted as to an individual discovery requests.

the filing of the complaint and that the statute of limitations is not a barrier to discoverable information.  Id. Plaintiff does not specifically address the rationale for her proposed discovery start dates but does state that she "alleged tolling and delayed discovery." Id.

The parties dispute whether discovery should extend beyond the period of the statute of limitations, specifically, whether Defendant must provide responsive discovery from before 2011 and from after the date the complaint was filed (October 15, 2015).   As stated above, Plaintiff seeks to certify a PHO Class of "[a]ll persons who purchased in the United States, on or after January 1, 2008, Kroger bread crumb products containing partially hydrogenated oil" and a 0g Trans Fact Claim Subclass of "[a]ll persons who purchased in the United States, on or after January 1, 2008, Kroger bread crumb products containing the front labeling claim '0g Trans Fat' and containing partially hydrogenated oil." Compl. at 24-25 at ¶ 114.  No end date is identified for the class.  Id.

In Allen v. Similasan Corp., the parties disputed "whether the end date for responsive discovery should be set according to the length of the class period pled in the Third Amended Complaint."  2014 WL 1672594, at *1 (S.D. Cal., April 28, 2014).  The class alleged in the complaint spanned June 4, 2010 to the present.  Id.  Plaintiffs argued that the end date for responsive discovery should be the present day while defendant argued that the end date should be governed by the statute of limitations applicable to the named plaintiff's claims.  Id.  The court found that the discovery necessary to prove plaintiffs' allegation that "Defendant is still labeling the products with the false and deceptive, and unlawful, unfair and fraudulent advertise[ments]" included discovery after the statute of limitations and up to the present day. Id. at *2.  In doing so, the court reasoned that discovery for the entire putative class period was relevant to the District Court's ultimate decision regarding the appropriate class definition if a class was certified and to plaintiffs' claims for injunctive relief.  Id.  The court further found that defendant's position was more appropriately addressed at class certification.  Id.  The court noted that the statutes of limitations "may be relevant to assess the timeliness of a lawsuit, but do not necessarily determine the relevant time period for discovery, especially where the Court has not yet ruled on class certification." Id.  Defendant objected to the court's finding and the

District Judge overruled the objections finding that statutes of limitations do not generally affect discovery and that even though the "prospective class in question may or may not remain open, [] Defendant may not decide it as a basis to deny discovery." Allen v. Similasan Corp., 2014 WL 2212120, at *2 (S.D. Cal., May 27, 2014).

The Court finds that Allen's reasoning is applicable to the instant case because Plaintiff's complaint alleges that Defendant's misconduct is ongoing and Plaintiff seeks injunctive relief. Compl. at 27 at ¶ 127; see also Reply at 5. Defendant's opposition on this issue is limited to its incorrect assertion that Plaintiff's complaint does not include these allegations. Oppo. at 12-13, n.4. Interestingly, Defendant does not assert, or provide supporting evidence for an assertion, that Defendant has stopped selling the relevant products. Id. In its supplemental response to Rog No. 7, Defendant states that "Defendant sold containers of Kroger Bread Crumbs between 2011-2015." Weston Decl. at Exh. 7. It is unclear from this response whether Defendant stopped selling all relevant products in 2015 or whether Defendant is merely admitting that it sold the bread crumbs during a time period that included 2011-2015. Because Plaintiff has alleged a class that continues to the present and has requested injunctive relief, and because Defendant has not provided any evidence establishing that it has stopped selling the relevant products, the Court finds that the discovery end date is the present.[2] If Defendant provides a declaration from a knowledgeable employee that Defendant stopped selling all relevant products, then the discovery end date will be the date the sales ended.[3]

With regard to the start date for discovery, Plaintiff seeks discovery from either January 1, 2010 – May 31, 2018 or from January 1, 2006 – present. Weston Decl. at Exhs. 1-2. Plaintiff does not specifically address the basis for its discovery start dates. MTC at 15-16; see also Reply at 5. Plaintiff acknowledges that the claims are subject to a four year statute of limitations

---

[2] This end date does not apply to requests that currently seek discovery for the CLASS PERIOD defined as January 1, 2010 – May 31, 2018. For those requests, the end date does not extend to the present and remains May 31, 2018.

[3] That end date would apply to all of Plaintiff's requests.

15cv2320-JM(BLM)

[see MTC at 16] which would indicate a class period beginning in 2011.  Plaintiff appears to be relying on allegations of tolling and delayed discovery to support her alleged class period of January 1, 2008 to the present.  Reply at 5; see also Compl. at 23 at ¶ ¶ 111-112.  Plaintiff does not provide any facts to support her tolling or delayed discovery arguments or to support her request for discovery commencing on January 1, 2006.  Reply at 5.  Plaintiff does not target or limit her requests for early discovery to requests seeking information relevant to her tolling and delayed discovery claims but instead broadly applies the early start date to discovery on a wide range of issues without explanation.  Weston Decl. at Exhs. 2 and 3; see also MTC; Reply.  Given the lack of evidence and argument on this issue, coupled with Plaintiff's desire to impose the early start date on many of its requests, the Court finds that Plaintiff has not established the early discovery start date is proportional to the needs of the case.  Accordingly, the Court finds that the appropriate start date for discovery is **January 1, 2010**.

     E.    Privilege

      Throughout its responses Defendant objects on the basis of privilege.  From the pleadings before the Court, it does not appear that Defendant has provided Plaintiff with a privilege log.  Accordingly, Defendant's privilege objections are **OVERRULED**.  Defendant must search for and produce responsive documents in accordance with this order.  If, as Defendant contends, there are responsive documents that are privileged, Defendant must comply with Fed. R. Civ. P. 26 which requires parties that seek to withhold documents due to privilege to "expressly make the claim" and "describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  Fed. R. Civ. P. 26(b)(5).  Fed. R. Civ. P. 26 does not discharge a party from its obligation to search for responsive documents simply because the documents might be privileged.

     F.    Confidential Information, Proprietary Information, and/or Trade Secrets

      Defendant objects and apparently refuses to produce responsive discovery on the ground that requests regarding (1) products that it considered to be the primary competitor to its bread crumbs, (2) customer feedback, (3) quarterly units of sales, (4) total revenue, (5) product

13

pricing, (6) the manufacturer of the product, (7) the amount of PHO in the product, (8) the composition, source, and vendors of the PHO used in the product, and (9) formulation changes to the product, seek confidential information, proprietary information, and/or trade secrets.[4] Oppo. at 14-20. Defendant does not provide any specific information in support of its position that the requested information is proprietary or confidential. Oppo. Defendant cites DIRECTV, Inc. v. Trone, 209 F.R.D. 455, 459-460 (C.D. Cal. 2002) in support of its position that Plaintiff has not shown that she is entitled to proprietary information. Oppo. at 15. However, as DirectTV stated, "[t]here is no absolute privilege for trade secrets and similar confidential information." Id. at 459. Rather, "the party opposing discovery must show that the information is a 'trade secret or other confidential research, development, or commercial information' under Rule 26(c)(7) and that its disclosure would be harmful to the party's interest in the property." Id. (quoting In re Remington Arms Company, Inc., 952 F.2d 1029, 1032 (8th Cir. 1991)). The Court finds that Defendant has not satisfied this burden. Defendant merely states in its opposition, without a supporting declaration and actual facts, that certain discovery requests seek proprietary information. Oppo. at 14-15. In DIRECTV, the plaintiff submitted a declaration from the Senior Director of Technology that established that the information Defendant sought was confidential and constituted trade secrets and that plaintiff would be harmed by the disclosure of the information. 209 F.R.D. at 459. Here, Defendant provided no such declaration or confirmation of its contentions regarding proprietary information.[5] Oppo. In addition, there

---

[4] Defendant uses this same objection in response to other discovery requests, but the ones listed above are the ones discussed in more detail in the opposition.

[5] Defendant also cites to Yan Mei Zheng-Lawson v. Toyota Motor Corporation, 2019 WL 3413253, at *2 (N.D. Cal., July 29, 2019). Oppo. at 14. In Yan Mei Zheng-Lawson, the court sealed information regarding Defendants' proprietary marketing strategies, training materials, and competitor analyses and "information derived from exclusive customer in-home interviews and confidential surveys." Id. at *2. That type of information is distinguishable from simply identifying competitor products as requested in Rog No. 3 or customer feedback and complaints as requested in RFPs 11 and 20. See Weston Decl. at Exhs. 7 and 8. Defendant does not allege that the information being sought is the subject of "exclusive customer in-home interviews" or "confidential surveys" that have been kept confidential or would cause substantial harm to Defendant or submitted a declaration to that effect. Yan Mei Zheng-Lawson, 2019 WL 3413253,

14

is a protective order in this case intended to protect the handling of confidential information. ECF Nos. 61-62. Defendant argues that the protective order is not sufficient [see Oppo. at 14] but Defendant has not established that the information Plaintiff seeks is proprietary nor why the protective order is insufficient to protect the information if it is proprietary.

The Court notes that despite its numerous objections, Defendant has not filed a motion for a protective order under Fed. R. Civ. P. 26(c)(1)(G) to prevent disclosure of its "trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 26(c)(1)(G). Because Defendant has not satisfied its burden of demonstrating that any of the information being sought constitutes confidential information, proprietary information, and/or trade secrets and has not established why the existing protective order is insufficient nor sought constitutional protection, Defendant objections are **OVERRULED**.

### G. Possession, Custody, or Control

Defendant responds to several of Plaintiff's requests, including requests seeking information about the manufacturer, by stating that there are no responsive documents in its possession, custody or control. Weston Decl. at Exhs. 3-4, and 7-8. Plaintiff argues that Defendant's response is insufficient because Defendant is required to produce documents that it has a legal right to obtain. MTC. at 17. Plaintiff asserts that Defendant has failed to comply with this requirement and has failed to provide information regarding "what documents are supposedly already in Plaintiff's control, or what 'third parties' have control of the documents." Id. Defendant does not specifically address this argument and does not provide any information regarding what efforts it made to obtain responsive information. See Oppo.

When responding to a request for production of documents, a party is required to produce all relevant documents in its "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). Actual possession, custody or control is not required. Rather, "[a] party may be ordered to produce a document in the possession of a non-party entity if that party has a legal right to obtain the

---

at *2; see also Oppo. at 14-15.

document or has control over the entity who is in possession of the document." <u>Soto v. City of Concord</u>, 162 F.R.D. 603, 619 (N.D. Cal. 1995). "Accordingly, a party has an obligation to conduct a reasonable inquiry into the factual basis of his responses to discovery. Based on that inquiry, a party responding to a request for production 'is under an affirmative duty to seek that information reasonably available" to it and make an appropriate production of responsive documents.'" <u>Hartline v. Nat'l Univ.</u>, 2018 WL 1014611, at *3 (E.D. Cal. Feb. 22, 2018) (citing <u>National Ass'n of Radiation Survivors v. Turnage</u>, 115 F.R.D. 543, 554– 56 (N.D. Cal. 1987) and quoting <u>Gray v. Faulkner</u>, 148 F.R.D. 220, 223 (N.D. Ind. 1992)). Defendant must "conduct a diligent search and reasonable inquiry in effort to obtain responsive documents." <u>See</u> <u>Kaur v. Alameida</u>, 2007 WL 1449723, *2 (E.D. Cal. May 15, 2007) (ordering defendants to conduct additional research for responsive documents and reminding defendants and counsel "of their duty under Rule 34 to conduct a diligent search and reasonable inquiry in effort to obtain responsive documents"); <u>see also</u> <u>Lopez v. Florez</u>, 2013 WL 1151948, * 2 (E.D. Cal. March 19, 2013) ("[a] responding party has an affirmative duty to reasonably seek information requested under Rule 34(a) from its agents or others under its control") (citing <u>Hill v. Eddie Bauer</u>, 242 F.R.D. 556, 560 (C.D. Cal. 2007)). This obligation extends to interrogatory response as well. <u>See</u> <u>Kaur</u>, 2007 WL 1449723 at *2 ("Defendants are further reminded that the party answering interrogatories must furnish such information as is available to the party. This may include information known to persons in the party's employ or over whom they have control. This may also include information known to the responding party's lawyer, agents or employees.") (internal quotations omitted); <u>see also</u> <u>McClure v. Chen</u>, 2019 WL 1243714, *3 (E.D. Cal., Mar. 18, 2019) ("A party answering interrogatories cannot limit his answers to matters within his own knowledge and ignore information immediately available to him or under his control.") (citing <u>Essex Builders Group, Inc. v. Amerisure Insurance Co.</u>, 230 F.R.D. 682, 685 (M.D. Fla. 2005)). A responding party does not have to conduct extensive research to answer an interrogatory, but a reasonable effort to respond must be made. <u>Id.</u> (citing <u>Gorrell v. Sneath</u>, 292 F.R.D. 629, 629 (E. D. Cal. Apr. 5, 2013) and <u>L.H. v. Schwarzenegger</u>, 2007 WL 2781132, *2 (E.D. Cal. Sep. 21, 2007)). "If a party cannot furnish details, he should say so

15cv2320-JM(BLM)

under oath, and say why and set forth the efforts used to obtain the information and cannot plead ignorance to information that is from sources within his control." Id. (citing Milner v. National School of Health Technology, 73 F.R.D. 628, 632 (E.D. Pa. 1977).

Here, Defendant has not established that it has complied with its obligations. For example, Defendant does not identify the non-party entity who manufactured the products or the third party supplier who contracted with the entity who manufactured the products. Defendant does not address why it does not have the ability or legal right to request documents or information related to the manufacture of a product it purchased and sold from its third party supplier. Defendant also does not describe what efforts it made to obtain the information. Similarly, Defendant states that it does not have any documents in its possession, custody or control relating to the contracting of marketing, advertising, distribution, or sale services but does not provide any explanation for this lack of basic documents. The deficiency of Defendant's search and inquiry efforts is highlighted by Plaintiff's allegation that some of the information Defendant contends is not in its possession, custody, or control is information Defendant is required to have under state and federal law since Defendant is listed on the product labels as the "responsible party." Reply at 11.

Accordingly, the Court **OVERRULES** Defendant's general objections regarding a lack of possession, custody, or control. Defendant is reminded of its discovery obligations and is ordered to conduct a diligent search and make reasonable inquiries, including of its agents and other entities over whom it has legal control, to obtain responsive documents and information. If after reaching out to its third party supplier and other appropriate entities, Defendant is unable to identify the manufacturer of the bread crumbs and respond to Plaintiff's discovery requests, Defendant must explain to Plaintiff the efforts that were made and why they were unsuccessful.

H.    Specific Requests

Plaintiff seeks an order compelling substantive responses to the eight interrogatories she propounded as well as numerous RFPs.

1.    Interrogatory No. 1 and Requests for Production Nos. 18 and 24

Interrogatory No. 1 asks:

17

IDENTIFY, for California, for each quarter of the CLASS PERIOD, your unit sales of each of the KROGER BREAD CRUMBS SKUs and the total revenue YOU derived the sale of the PRODUCT.

Weston Decl. at Exh. 7. After asserting numerous objections, Defendant stated in its supplemental response,

Defendant responds that after conducting a reasonable search, Defendant lacks information within its possession, custody, or control to show the unique number of buyers of all bread Crumbs in California, and is not able to provide a verified response to that effect.

RFP Nos. 18 and 24 seek:

REQUEST FOR PRODUCTION NO. 18: All DOCUMENTS which reflect, summarize, analyze, or discuss the pricing of the PRODUCT, including wholesale or retail prices.

REQUEST FOR PRODUCTION NO. 24: DOCUMENTS sufficient to show or calculate YOUR total revenue from the sale of the PRODUCT in California for each year in the CLASS PERIOD.

Weston Decl. at Exh. 8. Defendant objected to these RFPs and did not produce or agree to produce any responsive documents. Id.

Defendant contends that Rog No. 1 is not proportional to the burden of producing the information which is proprietary. Oppo. at 19-20. In addition, Defendant contends that the Rog does not identify the number of putative class members and is unlikely to substantiate any other class allegation. Id. at 19. Defendant notes that it responded in the supplemental response by stating that it that it does not have the information necessary to respond to the portion of the Rog inquiring about the unique number of buyers. Id. For the reasons set forth above, Defendant's general arguments and objections are overruled. The Court also agrees with Plaintiff's argument that Defendant's response that it lacks the information necessary to identify the "unique number of buyers" is nonsensical as ROG No. 1 seeks the quarterly unit of sales, not the number of unique buyers, and RFPs 18 and 24 seek pricing and revenue information, not unique buyers. Reply at 7.

18

Plaintiff's motion to compel responses to Interrogatory No. 1 and RFP Nos. 18 and 24 is **GRANTED**. The requests seek relevant information and are proportional to the needs of the case as the requests are limited to products at issue in this case [see Weston Decl. at Exhs. 7 and 8] and are limited in time [see supra at D.]. Defendant also must comply with its obligations regarding "possession, custody, and control." See supra at G.

2. Interrogatory No. 2.

**INTERROGATORY NO. 2**: IDENTIFY all PERSONS (a) who participated in answering these Interrogatories and supplied information, or in any way assisted with the preparation of YOUR responses to these discovery requests; and (b) who participated in in the search for, collection and review of, and production of DOCUMENTS in response to any sets of Requests for the Production of Documents served on YOU in this lawsuit, and describe in detail the nature of their involvement.

Weston Decl. at Exh. 7. After asserting numerous objections, Defendant did not provide a supplemental response. Weston Decl.at Exhs. 3 and 7. Defendant's primary objection is that this request is overbroad because it encompasses attorney work product and irrelevant individuals such as IT personnel and document vendors. Oppo. at 20. Additionally, Defendant notes that it has already identified individuals with personal knowledge in their initial disclosures. Id. Plaintiff replies that disclosing the names of individuals who helped prepare responses does not require the disclosure of attorney work product but does not address the over breadth argument. Reply at 12. Because the request is overbroad and not proportional to the needs of the case, Plaintiff's motion to compel a response to Interrogatory No. 2 is **DENIED**.

3. Interrogatories 3 and 6

**INTERROGATORY NO. 3**: IDENTIFY products that YOU consider, or have considered at different times during the CLASS PERIOD, to be the primary competitors to the PRODUCT.

**INTERROGATORY NO. 6**: Aside from KROGER BREAD CRUMBS, IDENTIFY every individual Kroger Bread product and SKU that YOU sold that contained partially hydrogenated oil(s) ("PHO") during the CLASS PERIOD.

Weston Decl. at Exh. 7. Defendant asserted numerous objections but did not provide a

19

substantive response to either interrogatory.  Weston Decl.at Exhs. 3 and 7.

Defendant contends that Rogs 3 and 6 are irrelevant and overbroad as they seek information about products that are not at issue in the instant matter.  Oppo. at 13-14. Defendant notes that producing information about irrelevant products spanning an eight and a half year time frame is not proportional to the needs of this case.  Id. at 14.  Defendant further contends that the Rogs are impermissibly vague and seek proprietary information where the need for that information does not outweigh the risk of substantial harm by disclosing it.  Id. Plaintiff replies that the information it sought in Rog No. 3 is directly relevant to her UCL claims as she alleges that Defendant chooses to not use safe alternative products to increase profits and that competing bread crumbs are free of PHO.  Reply at 11.  The Court finds that Rog No 3 seeks relevant information and, therefore, **GRANTS** Plaintiff's motion to compel response to Rog No 3.  Plaintiff does not address the relevance of Rog No. 6.  Id.  Accordingly, the Court **DENIES** Plaintiff's motion to compel response to Rog No. 6.

4. <u>Interrogatories 4, 5, 7, and 8 and Requests for Production 14 and 15</u>

**INTERROGATORY NO. 4**: IDENTIFY the manufacturer of and amount of PHO per 100g used in the PRODUCT, e.g., "Cargill Olympic S-100 Partially Hydrogenated Soybean Oil 16gper 100g of Kroger Bread Crumbs."

**INTERROGATORY NO. 5**: IDENTIFY the period of time during which YOU manufactured, distributed, or sold the PRODUCT, and if YOU contracted with outside companies to manufacture the PRODUCT, IDENTIFY them and the time period YOU contracted with them.

**INTERROGATORY NO. 7**: IDENTIFY the locations, including the full address and your internal name for the facility, where the PRODUCT was manufactured.

**INTERROGATORY NO. 8**: For each KROGER BREAD CRUMBS SKU, state the date that YOU stopped using PHO in its manufacture and separately when you stopped selling it.

Weston Decl. at Exh. 7.  After asserting numerous objections, Defendant provided supplemental responses as follows:

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4**: Subject to and without waiving the foregoing objections, Defendant responds that Kroger Bread

Crumbs during the 2011 through 2015 timeframe contained less than 0.5 grams of trans fat per serving, as stated on the label. Defendant further responds that Defendant sold containers of Kroger Bread Crumbs between 2011 and 2015 but did not manufacture them. Defendant is not aware of the precise individual or company that "manufactured" them and is not able to provide a verified response to that effect.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5**: Subject to and without waiving the foregoing objections, Defendant responds that Defendant sold containers of Kroger Bread Crumbs between 2011 and 2015 but did not manufacture them. Defendant further responds that it purchased the Kroger Bread Crumbs through a third party but is not aware of the precise individual or company that "manufactured" them and is not able to provide a verified response to that effect.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 7**: Subject to and without waiving the foregoing objections, Defendant responds that Defendant sold containers of Kroger Bread Crumbs between 2011 and 2015 but did not manufacture them. Defendant further responds that it purchased the Kroger Bread Crumbs through a third party but is not aware of the precise individual or company that "manufactured" them and is not able to provide a verified response to that effect.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 8**: Subject to and without waiving the foregoing objections, Defendant responds that Defendant sold containers of Kroger Bread Crumbs between 2011 and 2015 but did not manufacture them. Defendant therefore lacks information regarding the date specific ingredients were added to or removed from products and is not able to provide a verified response to that effect.

Id.

REQUEST FOR PRODUCTION NO. 14: DOCUMENTS sufficient to show the amount of PHO and trans fat used in the PRODUCT during the CLASS PERIOD, including any changes thereto, and the composition, source, and vendors for the partially hydrogenated oil used in the manufacture of the PRODUCT.

REQUEST FOR PRODUCTION NO. 15: ALL DOCUMENTS RELATING TO the cost of any actual, potential, or proposed formulation changes to the PRODUCT during the CLASS PERIOD.

Weston Decl. at Exh. 8.  After asserting numerous objections, Defendant provided the same supplemental responses to RFPs 14 and 15.

> Subject to and without waiving the foregoing objections, Defendant refers Plaintiff to its supplemental responses to Interrogatories No. 5 and 8.

Weston Decl. at Exh. 8

Defendant asserts the general objections addressed above and also contends that since it purchased the bread crumbs through a third party supplier, it is not aware of the manufacturer of the breadcrumbs and cannot respond to the Rogs and RFPs.  Oppo. at 18.  Although Plaintiff does not address the sufficiency of Defendant's supplemental responses [see Reply], the Court **GRANTS** Plaintiff's motion to compel further response to these requests.  Defendant must provide supplemental responses using the correct time frame and complying with its obligations regarding documents within its possession, custody, or control.  See supra at D and G.

> 5. Request for Production No. 1

REQUEST FOR PRODUCTION NO. 1: Your written document retention policies and procedures.

Weston Decl. at Exh. 8.  After asserting numerous objections, Defendant provided the following supplemental responses

> SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 1: Subject to and without waiving the foregoing objections, Defendant responds that in lieu of producing such policies and procedures, Defendant confirms that it is preserving records relevant to this lawsuit consistent with its legal obligations. Further, to the extent Defendant agrees to produce documents in response to any request, it will inform plaintiff if, after conducting a reasonable search, it does not locate responsive documents within its possession, custody, or control.

Id.  Defendant contends that its objections are valid and that its promise to inform Plaintiff if there are no documents found after a reasonable search is "more than sufficient."  Oppo. at 17.  Defendant notes that retention policies are not relevant to the claims or class certification and that the burden of producing fourteen years' worth of policies is not proportional.  Id.  Plaintiff replies that Defendant's promise is insufficient and that the request is relevant to Plaintiff's

assessment of Defendant's overall document production especially given that Defendant has responded that it cannot provide responses to some of Plaintiff's most basic requests.  Reply at 8.  Plaintiff replies that Defendant's "document retention policies will allow Plaintiff[] to assess the company's document production, determine whether any relevant documents are lacking, and evaluate whether additional discovery is necessary in this case."  <u>Id.</u> (quoting <u>Sharma v. BMW of N. Am. LLC</u>, 2016 WL 1019668, at *4 (N.D. Cal. Mar. 15, 2016)).  Plaintiff notes that this "becomes especially important given Kroger's implausible claim it cannot provide Plaintiff with basic information like its revenue from the sale of KBC, the time periods during which "0g trans fat" label claim was used, or the date Kroger stopped selling KBC with added trans fat."  <u>Id.</u>

The Court finds that Plaintiff's request is relevant in accordance with Fed. R. Civ. P. 26.  While there are no allegations of spoliation or responsive documents destroyed in accordance with a document retention policy, Defendant has produced few responsive documents and indicated that it does not have certain types of documents.  <u>See</u> <u>Patrick McMorrow, et al., v. Mondelez International, Inc.</u>, 2019 WL 3852498, at *3 (S.D. Cal., Apr. 19, 2019) (not requiring a showing of spoliation or discovery misconduct prior to requiring a party to produce document retention policies and instead finding that the "moving party need only demonstrate that production of the non-moving party's document retention policies would enable it to determine the universe of responsive documents, evaluate the completeness of the existing document production, identify any gaps in document production, and craft targeted discovery requests to efficiently obtain any missing records") (citing <u>Sharma</u>, 2016 WL 1019668, at *4 and <u>In re Takata Airbag Prod. Liab. Litig.</u>, 2017 WL 8812734, *6 (S.D. Fla. July 5, 2017).[6]  In light of the above,

---

[6] The Court in <u>McMorrow</u>, et al. also noted that "[c]ourts in this Circuit have similarly found that document retention policies may be relevant under Rule 26.  <u>See</u>, <u>e.g.</u>, <u>Sharma</u>, 2016 WL 1019668, at *4 (finding the information relevant as the "document retention policies may help Plaintiffs determine the universe of responsive documents and evaluate any gaps in document production"); <u>Montgomery v. Wal-Mart Stores, Inc.</u>, No. 12cv3057-JLS (DHB), 2015 WL 11233390, at *3 (S.D. Cal. Sept. 4, 2015) (finding the defendant's document retention policies relevant in light of the defendant's claim "that it cannot locate certain documents because they do not exist"); <u>Cholakyan v. Mercedes-Benz USA, LLC</u>, No. CV 10-5944 MMM (JC), 2011 WL

Plaintiff's motion to compel response to RFP No. 1 is **GRANTED**.

      6.    Requests for Production Nos. 11 and 20

    REQUEST FOR PRODUCTION NO. 11: All DOCUMENTS referencing or reflecting any call center feedback for the PRODUCT.

    REQUEST FOR PRODUCTION NO. 20: Any COMMUNICATION between YOU and any customer in response to any complaint about the ingredients in the PRODUCT.

Weston Decl. at Exh. 8. Defendant objected to both RFPs and did not provide any responsive documents. Id. Defendant asserted the general objections addressed above and further arguments that the requests are overbroad. Plaintiff offered to restrict RFPs 11 and 20 "to seek only feedback or responses that concerns trans fat or partially hydrogenated oil." MTC at 9; see also Oppo. at 15. Defendant rejected Plaintiff's proposal, asserting that Plaintiff's purported narrowing of these requests for does not make them any more relevant or proportional. Id. Plaintiff replies that Defendant fails to provide any details as to the burden it faces in responding to the discovery. Reply at 9-10.

      The Court finds that the requests as narrowed by Plaintiff are relevant to Plaintiff's claims and to the potential common experience of Defendant's customers and proportional to the needs of the case. The Court rejects Defendant's burden argument because Defendant does not provide any facts to support its claim that it would be overly burdensome to respond to the requests.[7] Oppo. Accordingly, Plaintiff's motion to compel response to RFP Nos. 11 and 20 as

---

7575379, at *15 (C.D. Cal. Dec. 20, 2011) (ordering production of the defendant's document retention policy during the class period)."

[7] Generalized objections that a discovery request is burdensome without specific reasons does not justify a failure to respond to the request. In re Citimortgage, Inc., Home Affordable Modification Program ("HAMP") Litigation, 2012 WL 10450139, at *4 (C.D. Cal., June 7, 2012). "[T]he party opposing discovery must allege (1) specific facts, which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence, or (2) sufficient detail regarding the time, money and procedures required to comply with the purportedly improper request." Daisy Trust v. JP Morgan Chase Bank., N.A., 2017 WL 3037427, at *2 (D. Nev., July 18, 2017). "The mere fact that responding to a discovery request will require the objecting

narrowed by Plaintiff is **GRANTED**. Defendant must produce the described documents and communications if they concern trans fat or PHO.

### 7. Requests for Production Nos. 2, 3, and 4

REQUEST FOR PRODUCTION NO. 2: All organization charts showing employees who, during the CLASS PERIOD, were involved in research, MARKETING, ADVERTISEMENT, manufacturing, or development of the PRODUCT.

REQUEST FOR PRODUCTION NO. 3: DOCUMENTS sufficient to show the IDENTITY of any PERSONS who, during the CLASS PERIOD, performed MARKETING, manufacturing, research, or development services RELATING TO any of the PRODUCTS.

REQUEST FOR PRODUCTION NO. 4: To the extent not produced in response to Request No. 3, DOCUMENTS sufficient to show all third parties with whom YOU contracted for services RELATING TO the MARKETING, ADVERTISEMENT, manufacture, development, distribution, or sale of the PRODUCT.

Weston Decl. at Exh. 8. After numerous objections, Defendant supplemented its response to RFPs 2 and 4 as follows:

SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 2: Subject to and without waiving the foregoing objections, Defendant responds that, after conducting a reasonable search, it has not located any non-privileged, responsive documents from 2011 through 2015 within its possession, custody, or control.

SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 4: Subject to and without waiving the foregoing, Defendant refers Plaintiff to its supplemental responses to Interrogatories No. 5 and 7.

Id. Defendant did not supplement its response to RFP No. 3. Id.

Defendant contends that there is nothing to compel for RFP No. 2 because it has no

---

party to expend considerable time, effort and expense consulting, reviewing and analyzing huge volumes of documents and information is an insufficient basis to object to a relevant discovery request." In re Citimortgage, Inc., 2012 WL 10450139, at *4 (quoting Cappetta v. GC Services Ltd. Partnership, 2008 WL 5377934, at *3 (E.D. Va. Dec. 24, 2008)).

15cv2320-JM(BLM)

organizational charts in its possession, custody, or control from 2011 through 2015.  Oppo. at 16.  Additionally, Defendant contends that the requests are irrelevant at this stage and vague.  Id.  Plaintiff replies that Defendant's failure to even identify who the third party manufacturer is insufficient.   Reply at 10-11.  Plaintiff argues that Defendant must produce documents if it has the legal right to retain them and that Defendant did not make such an effort.  Id. at 11.  Plaintiff also argues that Defendant is the entity required by the FDA to keep records related to the product and should have the requested information.  Id.  Plaintiff cites to 21 C.F. R. § 101.5 in support of her argument.[8]  Reply at 11.

Plaintiff's motion to compel response to RFP No. 2 is **GRANTED**.  Defendant  must supplement its response to comply with the Court's rulings in sections B-G.

Plaintiff's motion to compel response to RFP No. 3 is **GRANTED IN PART**.  Defendant must produce responsive documents regarding marketing and manufacturing.  As stated above [see supra at G.], Defendant must make an effort to identify the manufacturers of the products if that information is within its control (for example, by contacting its third party supplier).   If unsuccessful, Defendant must explain to Plaintiff the efforts that were made and why they were

_____

[8] 21 C.F. R. § 101.5 reads in relevant part as follows:

> (a) The label of a food in packaged form shall specify conspicuously the name and place of business of the manufacturer, packer, or distributor. (b) The requirement for declaration of the name of the manufacturer, packer, or distributor shall be deemed to be satisfied, in the case of a corporation, only by the actual corporate name, which may be preceded or followed by the name of the particular division of the corporation. In the case of an individual, partnership, or association, the name under which the business is conducted shall be used. (c) Where the food is not manufactured by the person whose name appears on the label, the name shall be qualified by a phrase that reveals the connection such person has with such food; such as "Manufactured for _____", "Distributed by _____", or any other wording that expresses the facts.

21 C.F.R. § 101.5

unsuccessful.  This is especially critical here given the requirements of 21 C.F. R. § 101.5 and the inherent relationship between a manufacturer, distributor, and retailer.  However, the Court agrees with Defendant that the request for information about research or development services in this context is vague and overbroad.  Accordingly, Plaintiff's motion to compel response to RFP No. 3 as to research and development is **DENIED**.

Plaintiff's motion to compel response to RFP No. 4 is **GRANTED**.  The terms are neither vague nor overbroad in this context.  Defendant referred Plaintiff to its responses to Rogs 5 and 7.  In those responses, Defendant stated that it did not contract with a manufacturer but did not identify the third party with whom it contracted to obtain the products from the manufacturer.  This RFP seeks that information.  Accordingly, Defendant must provide a supplemental response addressing all of the identified categories and complying with the Court's rulings in sections B-G and the Court's order with respect to Rogs 5 and 7.

8.    Requests for Production Nos. 5, 6, 7, 8 and 10

REQUEST FOR PRODUCTION NO. 5: Exemplars of all LABELS, packaging, package inserts, and brochures RELATING TO the PRODUCT.

REQUEST FOR PRODUCTION NO. 6: All DOCUMENTS showing the period of time during which each PRODUCT LABEL was introduced, used, and discontinued.

REQUEST FOR PRODUCTION NO. 7: All DOCUMENTS CONCERNING any contemplated, potential, or actual changes, revisions, or modifications to the PRODUCTS' LABELS during the CLASS PERIOD, including drafts of such DOCUMENTS.

REQUEST FOR PRODUCTION NO. 8: DOCUMENTS CONCERNING the reasons for, plans, proposals, and motivations for any change to the LABEL of any PRODUCT.

REQUEST FOR PRODUCTION NO. 10: All DOCUMENTS CONCERNING YOUR strategy for MARKETING, ADVERTISING, or selling the PRODUCTS in the United States during the CLASS PERIOD.

Weston Decl. at Exh. 8.  After numerous objections, Defendant supplemented its response to RFPs 5 and 7 as follows:

SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 5: Subject to and without waiving the foregoing objections, Defendant will conduct a reasonable

27

search for and produce a copy of each of the packaging labels used for Kroger Bread Crumbs during 2011 through 2015, to the extent within its possession, custody, or control.

SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 6: Subject to and without waiving the foregoing objections, Defendant will conduct a reasonable search for and produce non-privileged documents sufficient to identify the periods during which the packaging labels produced in response to Request for Production No. 5 were used, to the extent such documents are within Defendant's possession, custody, or control.

SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 7: Subject to and without waiving the foregoing objections, Defendant will conduct a reasonable search for and produce a copy of each of the packaging labels used for Kroger Bread Crumbs during 2011 through 2015, to the extent within its possession, custody, or control.

Id. Defendant did not supplement its responses to RFP Nos. 8 and 10. Id.

Defendant contends that it produced labels from 2011 through 2015 and "agreed to produce documents sufficient to identify the periods during which they were used, to the extent within its possession, custody, or control." Oppo. at 16. Defendant notes that it did produce Kroger Bread Crumb labels from 2011 through 2015 on July 26, 2019. Id.; see also Canner Decl. at ¶ 7. Defendant further contends that Plaintiff does not explain why its responses are insufficient and does not satisfy the Mantolete test for class discovery. Oppo. at 16. Plaintiff replies by noting that Defendant "produced no documents in response to RFPs 7, 8, 9, or 10." Reply at 6.

Plaintiff's motion to compel further response to RFPs 5-7 is **GRANTED**. As discussed previously, the supplemental response must cover the time period described by the Court [see supra at D.], Defendant also must provide all of the documents described in RFP Nos. 5-7, not just the product labels.

Plaintiff's motion to compel response to RFP Nos. 8 and 10 is **GRANTED**. Apart from its general objections which the Court has addressed, Defendant fails to provide any substantive response in support of its position that it should not have to respond to the requests.

9.    Requests for Production Nos. 13, 17, and 25

28

REQUEST FOR PRODUCTION NO. 13: All DOCUMENTS that discuss partially hydrogenated oil or trans fat.

REQUEST FOR PRODUCTION NO. 17: All DOCUMENTS in YOUR POSSESSION RELATING TO the effects of artificial trans fat on human or animal health.

REQUEST FOR PRODUCTION NO. 25: All DOCUMENTS and COMMUNICATIONS RELATING TO YOUR December 4, 2006 press release titled "Kroger Using Trans Fat Free Oil to Prepare Fried Chicken."

Weston Decl. at Exh. 8. Defendant stood by its numerous objections to the requests and did not provide supplemental responses or documents. Id.

Defendant contends that RFP No. 13 is overbroad in that it seeks all documents relating to PHO or trans fat for over fourteen years. Oppo. at 17. Defendant contends that RFP Nos. 17 and 25 are also overbroad because they seek over a decade's worth of information on products and issues that have nothing to do with the instant matter. Id. Defendant notes that the information does not speak to class certification and that their knowledge of the effects of trans fat is irrelevant. Id. at 17-18. Plaintiff replies that (1) RFP No. 25 is narrow and that a complete response would only likely include five or six documents, (2) she does not have to wait for class certification to conduct discovery, and (3) Defendant's knowledge of trans fat and its safety is relevant to punitive damages under the CLRA and central to Plaintiff's trans fat use claim and whether Defendant performed a "GRAS self-determination" as required under federal law. Reply at 8-9.

Plaintiff's motion to compel response to RFP Nos. 13 and 17 is **DENIED**. Plaintiff's requests are overbroad as they are not limited to the products at issue or to the context of this case. Plaintiff's motion to compel response to RFP No. 25 is **GRANTED**. The request is narrowly tailored and seeks documents and communications related to one specific document.

10. Request for Production No. 16

REQUEST FOR PRODUCTION NO. 16:

All DOCUMENTS which YOU contend support or substantiate the following statement used on PRODUCTS: "0g Trans Fat per serving."

Weston Decl. at Exhs. 4, 8. After numerous objections, Defendant did not supplement its response or produce any documents. Id. Defendant contends that in addition to failing to state the documents it seeks with reasonable particularity and being overbroad and unduly burdensome due to its fourteen year span and request for all documents, this "is an improper and premature contention request bearing on a disputed issue central to this action." Oppo. at 18. Defendant cites to an Eastern District of Louisiana case and an Eastern District of Michigan case in support of its position. Id. at 19. Plaintiff replies that in Schneider v. Chipotle Mexican Grill, Inc., 2017 WL 1101799, *5 (N.D. Cal. Mar. 24, 2017), Judge Westmore rejected the same arguments Kroger makes. Reply at 10.

In Schneider, defendant objected to plaintiff's request for "[a]ll Documents supporting Your statement that Your Food Products are made with "only non-GMO ingredients" including, but not limited to, testing, reports, recipes, and academic or scientific studies." 2017 WL 1101799 at *5. Defendant argued that the request was vague and ambiguous because it failed to properly describe the documents being sought, overbroad, irrelevant, and seeking information that only prosecuting authorities could demand under California law, not private plaintiffs. Id. The court found that the information was relevant because it went "directly to Defendant's knowledge about whether its Non-GMO advertising would be misleading, as Plaintiff alleges" and could possibly go toward plaintiff's damages argument since damages could be trebled with proof of scienter. Id. The court further found that plaintiff was permitted to seek documents substantiating an entity's advertising claims. Id. Finally, the court noted that "[t]he test for reasonable particularity is whether the request places a party upon reasonable notice of what is called for and what is not" and found that the request was reasonably related to a specified subject and ordered defendant to respond to the request. Id. at 6.

Plaintiff's motion to compel response to RFP 16 is **GRANTED**. The Court agrees with the reasoning in Schneider and finds that RFP No. 16 describes the requested documents with particularity and is not overbroad. The Court further finds that Defendant has not provided any evidence to support its claim that the request is unduly burdensome.

///

15cv2320-JM(BLM)

**<u>SANCTIONS</u>**

Fed. R. Civ. P. 37(a)(5)(C) provides that "[i]f the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion."  An award of reasonable expenses should not be imposed if the moving party failed to attempt in good faith to resolve the dispute without court action, the opposing party's response was substantially justified, or other circumstances exist that make an award of expenses unjust.  Fed. R. Civ. P. 37(a)(5)(A).

Defendant contends that plaintiff is not entitled to fees for the costs of bringing this motion as Plaintiff's requests were overbroad, vague, irrelevant, and not proportional at this stage and because Defendant's objections to the requested discovery were warranted and Plaintiff brought the motion without properly meeting and conferring.  Oppo. at 20.  Plaintiff did not address the issue in her reply.  Reply.

Defendant does not contest Plaintiff's counsels' billing rates or the rates of the paralegals used in this matter.  Oppo. at 20.  Defendant also does not contest the time Plaintiff's counsel declares was spent preparing the instant motion.  <u>Id.</u>

The Court rejects Defendant's argument and finds that Plaintiff is entitled to reasonable expenses for the cost of bringing the motion to compel.  For the reasons set forth in this order, including Defendant's failure to provide substantive responses to almost all of Plaintiff's discovery arguments, the Court finds that Defendant's arguments were not substantially justified.  The Court also finds that Plaintiff made a good faith effort to resolve the dispute without Court action and Defendant has not identified any other circumstances that would make an award of expenses unjust.

The Ninth Circuit utilizes the "lodestar" method for assessing reasonable attorney's fees.  <u>Gonzalez v. City of Maywood</u>, 729 F.3d 1196, 1202 (9th Cir. 2013).  Under the "lodestar" method, the number of hours reasonably expended is multiplied by a reasonable hourly rate.  <u>Id.</u>  The fee applicant bears the initial burden of substantiating the number of hours worked and the rate claimed.  <u>Id.</u> at 1206; <u>Dang v. Cross</u>, 422 F.3d 800, 814 (9th Cir. 2005).  To meet the

15cv2320-JM(BLM)

burden, the fee applicant must produce evidence that the requested rates are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation" and services by paralegals "based on the prevailing market rate in the relevant community." See Gonzalez, 729 F.3d at 1206–07; Sorenson v. Mink, 239 F.3d 1140, 1145 (9th Cir. 2001) (reasonable hourly rates are determined by the "prevailing market rates in the relevant community."). When determining a reasonable hourly rate, "the relevant community is the forum in which the district court sits." Gonzalez, 729 F.3d at 1205 (quoting Prison Legal News v. Schwarzenegger, 608 F.3d 446, 454 (9th Cir. 2010)). A court may rely on rates outside the local forum only where "local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case." Deocampo v. Potts, 2014 WL 788429, at *8 (E.D. Cal. Feb. 25, 2014) (quoting Barjon v. Dalton, 132 F.3d 496, 500 (9th Cir. 1997)).

Plaintiff argues that she incurred $19,673.00 in fees in preparing the instant motion. MTC at 20. However, in light of the fact that the $19,673 "may include some duplication or more-than-reasonable time spent for some tasks[,]" Plaintiff seeks a fee award of half that amount, $9,837. Id. In support, Plaintiff's counsel Mr. Weston declares that he is a 2004 graduate of Harvard Law School and that before founding his own firm in 2008, he was an associate at the law firm currently known as Robbins, Geller, Rudman & Dowd. Weston Decl. at ¶ 17. Mr. Weston further declares that his associate, Mr. Andrew C. Hamilton is a 2014 graduate of the University of San Diego Law School who previously worked at the law firm of Gordon Rees. Id. at ¶ 18. Mr. Weston declares that the rates billed by the attorneys and paralegal, Mr. Newberry have been found to be "reasonable for attorneys of reasonably comparable skill, experience, and reputation" in at least two previous cases. Id. at ¶ ¶ 19-20. Specifically, Plaintiff asserts that she incurred the following fees in connection with her motion to compel:

| Name/Position | Hours | Hourly rate | Total fees |
|---|---|---|---|
| Gregory S. Weston (16th year attorney) | 14.3 | $605 | $8,652 |
| Andrew C. Hamilton (5th year attorney) | 12.3 | $305 | $3,752 |

| David Newberry (8th year paralegal) | 32.6 | $215 | $7,009 |
| Sonia Chammas (2nd year paralegal) | 2 | $130 | $260 |
| **TOTAL** | **$19,673** | | |

Id. at ¶ 22.

The Court finds that the requested fees, billing rates, and time spent preparing the motion are reasonable, especially since Plaintiff voluntarily reduced her fee request by 50%, and the Court **GRANTS** Plaintiffs' motion for monetary sanctions. Defendant is ordered to pay Plaintiff the amount of **$9,837** on or before **October 4, 2019**. Defense counsel is ordered to file a declaration verifying said payment no later **October 11, 2019**. Failure to comply with this order may result in the imposition of additional sanctions.

## CONCLUSION

Plaintiff's motion to compel response to Interrogatory No. 1 and RFP Nos. 18 and 24 is **GRANTED**.

Plaintiff's motion to compel response to Interrogatory No. 2 is **DENIED**.

Plaintiff's motion to compel response to Interrogatory No. 3 is **GRANTED**.

Plaintiff's motion to compel response to Rog No. 6 is **DENIED**.

Plaintiff's motion to compel further response to Interrogatories 4, 5, 7 and 8 and RFPs 14 and 15 is **GRANTED**.

Plaintiff's motion to compel response to RFP No. 1 is **GRANTED**.

Plaintiff's motion to compel response to RFP Nos. 11 and 20 is **GRANTED**.

Plaintiff's motion to compel response to RFP No. 2 is **GRANTED**.

Plaintiff's motion to compel response to RFP No. 3 is **GRANTED IN PART**.

Plaintiff's motion to compel response to RFP No. 3 as to research and development is **DENIED**.

Plaintiff's motion to compel response to RFP No. 4 is **GRANTED**.

Plaintiff's motion to compel further response to RFP Nos. 5-7 is **GRANTED**.

Plaintiff's motion to compel response to RFP Nos. 8 and 10 is **GRANTED**.

Plaintiff's motion to compel response to RFP Nos. 13 and 17 is **DENIED**.

15cv2320-JM(BLM)

Plaintiff's motion to compel response to RFP No. 25 is **GRANTED**.

Plaintiff's motion to compel response to RFP 16 is **GRANTED**.

The time period for Defendant's responses is January 1, 2010 through present day for all requests except those seeking responses from the CLASS PERIOD which is defined by Plaintiff as January 1, 2010 – May 31, 2018.  If Defendant provides a declaration from a knowledgeable employee that Defendant stopped selling all relevant products, then the discovery end date for all discovery requests will be the date Defendant stopped selling the product.  Defendant must serve its responses on or before **October 7, 2019**.

When producing its supplemental responses, Defendant must comply with the Court's rulings on its general objections and arguments.  See supra at B. – G.  The Court has found Plaintiff's requests to be relevant, proportional, and not premature.  Defendant must produce responses for the time periods described above and must conduct a diligent search and make reasonable inquiry to produce all responsive documents in its possession, custody, or control. Defendant may not refuse to produce documents on the basis of privilege without providing Plaintiff with a privilege log that complies with Fed. R. Civ. P. 26.   If Defendant continues to object to certain requests as seeking confidential information, proprietary information, or trade secrets, Defendant must support those objections with evidence establishing that the information actually is confidential or proprietary, explain why the Protective Order is insufficient to protect the information, and/or file a motion for a protective order to protect the disclosure of the allegedly confidential information.  Defendant may not simply object to the requests again and refuse to respond further.

Plaintiffs' motion for monetary sanctions is **GRANTED**.  Defendant is ordered to pay Plaintiff the amount of **$9,837** on or before **October 4, 2019**.  Defense counsel is ordered to file a declaration verifying said payment no later **October 11, 2019**.

**IT IS SO ORDERED**.

Dated:  9/16/2019

Hon. Barbara L. Major
United States Magistrate Judge

15cv2320-JM(BLM)