1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**THE WESTON FIRM**
GREGORY S. WESTON (239944)
*greg@westonfirm.com*
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone:     (619) 798-2006
Facsimile:      (619) 343-2789

**Counsel for Plaintiff**

### UNITED STATES DISTRICT COURT

### SOUTHERN DISTRICT OF CALIFORNIA

SHAVONDA HAWKINS, on behalf of herself and all others similarly situated,

             Plaintiff,

     v.

THE KROGER COMPANY,

             Defendant.

Case No: 3:15-cv-02320-JM-AHG

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL FURTHER RESPONSES TO DISCOVERY REQUESTS AND FOR AN ORDER OF SANCTIONS AND CONTEMPT**

Magistrate Judge: The Honorable Allison H. Goddard

No hearing unless ordered by the Court

1

## **TABLE OF CONTENTS**

I.   INTRODUCTION AND PROCEDURAL HISTORY ................................................1

II.   KROGER VIOLATED THE COURT'S ORDER BY NOT PRODUCING
CUSTOMER COMPLAINTS ON OR BEFORE OCTOBER 7. .................................4

III.   KROGER VIOLATED THE COURT'S ORDER BY NOT PRODUCING
DOCUMENTS RELATING TO LABELS AND PRICING ON OR BEFORE
OCTOBER 7. ......................................................................................................4

IV.   KROGER VIOLATED THE COURT'S ORDER BY NOT PRODUCING
DOCUMENTS RELATING TO REVENUE DERIVED FROM THE SALE OF
KROGER BREAD CRUMBS ON OR BEFORE OCTOBER 7. ............................5

V.   KROGER VIOLATED THE COURT'S ORDER BY NOT PRODUCING
ORGANIZATION CHARTS ON OR BEFORE OCTOBER 7. ...............................8

VI.   KROGER IS IN CONTINUING CONTEMPT OF THE COURT'S ORDER BY
FAILING TO ANSWER INTERROGATORY NO. 5....................................................8

VII.   KROGER INEXPLICABLY REDACTED DOCUMENTS. ................................ 10

VIII.   KROGER'S CONTENTION THAT IT CANNOT ASSERT CONTROL OVER
THIRD-PARTY VENDORS IS BELIED BY ITS VENDOR AGREEMENTS...... 10

IX.   KROGER HAS WAIVED PRIVILEGE BY (1) FAILING TO PRODUCE ANY
PRIVILEGE LOG FOR MORE THAN THREE MONTHS AFTER ONE WAS
DUE, (2) FAILING TO PRODUCE ANY LOG WHEN ORDERED BY THE
COURT, AND (3) PRODUCING ONE THAT IS FACIALLY INCOMPLETE. ... 12

X.   THE COURT SHOULD AWARD FEES ................................................... 14

XI.   THE COURT SHOULD IMPOSE PER DIEM SANCTIONS ON KROGER FOR
ITS FAILURE TO COMPLY WITH THE COURT'S SEPTEMBER 16 ORDER
GRANTING MOTION TO COMPEL. ...............................................................15

XII.   A COERCIVE SANCTION OF $200 PER DIEM PAYABLE TO THE COURT IS
APPROPRIATE............................................................................................ 16

XIII.   THE COURT SHOULD CONSIDER PROHIBITING KROGER FROM
INTRODUCING INTO EVIDENCE ANY DOCUMENT SUBJECT TO THE
MOTION TO COMPEL ORDER NOT PRODUCED BY 12/31/19. ..................... 17

1

## <u>TABLE OF AUTHORITIES</u>

2

3  **CASES**

4

5  *Aecom Energy & Constr., Inc. v. Ripley*,
     2018 U.S. Dist. LEXIS 220793 (C.D. Cal. Sep. 7, 2018) ................................ 15, 16

6

7  *Arabian Gas & Oil De. Co. v. Wisdom Marine Lines, S.A.*,
     2017 U.S. Dist. LEXIS 164123 (N.D. Cal. Oct. 3, 2017) ...................................... 16

8

9  *China Cent. Tv v. Create New Tech. (HK) Ltd.*,
     2015 U.S. Dist. LEXIS 152218 (C.D. Cal. Nov. 4, 2015) ............................. 16, 17

10

11  *FTC v. Affordable Media, LLC*,
     179 F.3d 1228 (9th Cir. 1999) ............................................................................. 15

12

13  *GE v. Liang*,
     2014 U.S. Dist. LEXIS 200868 (C.D. Cal. Nov. 10, 2014) .................................. 16

14

15  *G-K Props. v. Redevelopment Agency of San Jose*,
     577 F.2d 645 (9th Cir. 1978) ......................................................................... 19, 20

16

17  *Hawkins v. Kroger Co.*,
     2019 U.S. Dist. LEXIS 161210 (S.D. Cal. Sep. 16, 2019) .............................. passim

18

19  *Hous. Rights Ctr. v. Sterling*,
     2004 U.S. Dist. LEXIS 28879 (C.D. Cal. Dec. 28, 2004)..................................... 16

20

21  *Karimi v. Golden Gate Sch. of Law*,
     361 F. Supp. 3d 956 (N.D. Cal. 2019)................................................................. 20

22

23  *Karnoski v. Trump*,
     328 F. Supp. 3d 1156 (W.D. Wash 2018) ........................................................... 12

24

25  *Rawcar Grp., LLC v. Grace Med., Inc.*,
     2013 U.S. Dist. LEXIS 201729 (S.D. Cal. Dec. 16, 2013) ................................... 13

26

27  *Reachlocal, Inc. v. PPC Claim, Ltd.*,
     2018 U.S. Dist. LEXIS 228104 (C.D. Cal. May 29, 2018)................................... 16

28

*Sali v. Corona Reg'l Med. Ctr.*,
    884 F.3d 1218 (9th Cir. 2018) ...................................................................... 15

*Sarytchev v. Korolev*,
    2013 U.S. Dist. LEXIS 165906 (N.D. Cal. Nov. 21, 2013) .................................. 18

*Shillitani v. United States*,
    384 U.S. 364 (1966) ..................................................................................... 15

*UA Corp. v. United Artist Studios LLC*,
    2019 U.S. Dist. LEXIS 167110 (C.D. Cal. Aug. 28, 2019) ................................. 14

*United States ex rel. Poehling v. Unitedhealth Grp., Inc.*,
    2018 U.S. Dist. LEXIS 226072 (C.D. Cal. Dec. 14, 2018) .................................. 12

*United States v. Gillies*,
    2013 U.S. Dist. LEXIS 34318 (N.D. Cal. Feb. 22, 2013) .................................... 17

*United States v. Wen-Bing Soong*,
    2015 U.S. Dist. LEXIS 118585 (N.D. Cal. Sept. 3, 2015) ................................... 17

## I.   Introduction and Procedural History

On May 15, 2019, Plaintiff served her first set of Interrogatories and Requests for Production on Defendant. Kroger served complete *non-responses* and cut-and-paste objections to these requests on June 17, 2019. On June 19, Plaintiff requested the parties confer. On June 24, Plaintiff sent a 5-page letter describing the deficiencies of Kroger's objections. The parties conducted a 90-minute meet and confer call pursuant to Local Rule 26.1 on June 27, and a shorter call the prior day, but were unable to reach a resolution. On July 8, the parties held a teleconference before Judge Major's clerk, which did not resolve their dispute. On the call, however, Kroger asked that a motion to compel be put on hold because it was planning on serving "supplements" to its initial responses.

On July 11, Kroger served its "supplemental" responses, which were once again completely devoid of any substance, continued to stand on cut-and-paste objections, included not a single document, nor a single substantive response to any interrogatory.

On July 25, Plaintiff filed a Motion to Compel. Dkt. 69. Only on July 26 did Kroger first produce any documents, a total of 17 pages. *These 17 pages remained the entirety of Kroger's production until November 8, 2019.*

On September 16, 2019, the Court granted nearly the entire motion to compel, directing Defendant to "conduct a diligent search and make reasonable inquiry to produce all responsive documents in its possession, custody, or control" and "serve its responses by October 7, 2019." *Hawkins v. Kroger Co.*, 2019 U.S. Dist. LEXIS 161210, at * 58 (S.D. Cal. Sep. 16, 2019).

On October 7, Kroger served unverified "second sets of supplemental responses" to Plaintiff's First Sets of Interrogatories and Requests for Production.

The "supplemental responses" did not fulfill Kroger's discovery obligations, and Kroger did not "produce responsive documents in its possession, custody, or control" as ordered by the Court. *Hawkins*, 2019 U.S. Dist. LEXIS 161210, at *58. On October 9, 2019, the Court held a telephonic status conference. Dkt. 76. It was only during this

conference that counsel for Plaintiff learned Kroger had decided to produce zero documents by the compliance date in the Court's Order—we had assumed the lack of documents on October 9 was because they had been mailed and not arrived yet. Both at that time and now, Kroger has always kept us in the dark about its decisions not to produce documents, even while repeatedly implying a production would be imminent.

Kroger's counsel blamed its suppliers for the delay. They assured the Court they were in the process of reviewing documents, and that a production would occur soon. When pressed by the Court for a specific timeframe, Kroger's counsel implied it would start in a matter of days and be complete by the end of the October at latest. The Court instructed that any relevant documents in Kroger's possession be produced "immediately" and set an additional telephonic status conference on October 30, 2019. Dkt. 80.

Once again, in further violation of the Motion to Compel Order, and the order during the prior conference that production commence immediately, Kroger produced nothing and further did nothing to inform Plaintiff that no documents would be produced.

In a subsequent order, the Court held:

> Defendant has still failed to produce any documents beyond the seventeen documents it had produced at the time Judge Major issued the Sanctions Order on September 16, 2019. As discussed during the conference, the Court understands to an extent why Defendant needs more information from third-party suppliers before it can comply fully with the Sanctions Order. Nonetheless Defendant's representation that it is making a good-faith effort to comply is starkly at odds with its failure to produce a single additional document in the 45 days since the Sanctions Order issued. [ . . . ] To continue to monitor Defendant's progress in making the compelled productions, the Court sets another Telephonic Discovery Status Conference for November 13, 2019 at 1 PM. . . .  In preparation for the conference, by November 12, 2019 at 1 PM, Defendant must lodge a Discovery Status Report with the Court by email . . . .The Report must provide the status of Defendant's compliance with each discovery item compelled, in whole or in part, by the Sanctions Order.

Additionally, Defendant must ensure it verifies any currently unverified discovery responses or supplemental responses it has provided to Plaintiff. Dkt. 81.

On November 8, Kroger served a privilege log and produced 358 pages of documents. Contrary to Kroger's claims for the reasons it failed to comply with the Court's orders, (1) nearly all of the documents appear to be internal to Kroger, not from suppliers and (2) there does not appear to be any effort to remove irrelevant documents. On the latter point, for example, some documents concern Panko Bread Crumbs. As best we can tell, this product never had trans fat and never had a false (or even true) "0g Trans Fat" nutrient content claim. It is never mentioned in the complaint or in discovery requests.

On December 20, 2019, Kroger produced an additional 5,223 pages. This production, however, was again essentially all irrelevant, and is almost entirely the same few printed-out spreadsheets. Hundreds of those pages are just print-outs of completely empty spreadsheet cells. *See, e.g.*, Weston Decl. Ex. 9.

Kroger's document production fails to fulfill its discovery obligations and the motion to compel order. First, despite repeated representations to Plaintiff's counsel and the Court that Kroger was conducting a diligent search of documents in its possession, custody, or control, and that Kroger's failure to timely comply with the Court's order granting motion to compel was the result of its inability to obtain documents from third-party vendors, it appears that more than 95% of the documents produced were created by Kroger. These documents were in Kroger's possession at the time the Court issued its order compelling production and should have been timely produced. Further, only after the first motion to compel, order to compel, and multiple status conferences and meet and confer attempts did Kroger produce any emails, on December 20, 2019.

In our effort to confer with Kroger, we requested that it tell us the names and titles of its custodians it searched, what specifically was searched, and when. We noted that

Judge Alsup, for example, requires this information be provided promptly in the initial response to every RFP. Here, we only asked for this information after a production was ordered by the Court and for the limited number of RFPs in dispute, and after the production inexplicably did not contain any e-mails or other communications.

Kroger has refused to provide a response absent a formal discovery request. Given the initial long delay in producing documents, such information would have facilitated meeting and conferring, but was never provided.

## II.   Kroger Violated the Court's Order by Not Producing Customer Complaints on or Before October 7.

The Court's September 16, 2019 order directed Kroger to produce "documents and communications" relating to "any call center feedback" or "communication between you and any customer in response to any complaint about" ingredients in the Kroger Bread Crumbs "if they concern trans fat or PHO." *Hawkins*, 2019 U.S. Dist. LEXIS 161210 at *41-42. Documents bearing Bates numbers TKC195-96 are records of customer complaints regarding trans fat in Kroger Bread Crumbs. They were not produced until November 8, 2019.

## III.   Kroger Violated the Court's Order by Not Producing Documents Relating to Labels and Pricing on or Before October 7.

Similarly, the Court's September 16 Order directed Kroger to produce "documents concerning the reasons for, plans, proposals, and motivations for any change to the label of" Kroger Bread Crumbs. *Hawkins*, 2019 U.S. Dist. LEXIS at *46-49. Documents produced by Kroger bearing Bates numbers TKC82-129 relate to modifications to the label of Kroger Bread Crumbs during 2015. They were not produced until November 8, 2019. The specific documents show a small aspect of the planning process during 2015 to remove the 0g Trans Fat and PHO from Kroger Bread Crumbs, which appears to have actually happened in 2016.

No documents, however, have ever been produced about the decision to add trans fat to KBC and the decision to add the false "0g trans fat" nutrient content claim.

Further, the Court's September 16 Order directed Kroger to produce documents which "reflect, summarize, analyze, or discuss the pricing of the product, including wholesale or retail prices." *Hawkins*, 2019 U.S. Dist. LEXIS at *31. Documents produced by Kroger bearing Bates numbers TKC260-276 show suggested retail prices for Kroger Bread Crumbs. They were not produced until November 8, 2019. Though the document relates to 2015 pricing, and says "last updated 10/16/15," the bottom of it says "Printed 11/7/2019." TKC260. This reveals just how much contempt Kroger has shown the Court's motion to compel order. It also shows than rather than producing the actual documents with metadata, Kroger printed the spreadsheet and then scanned it, removing all text and number coding from the spreadsheet, making it less legible, and removing all metadata.

**IV. Kroger Violated the Court's Order by Not Producing Documents Relating to Revenue Derived from the Sale of Kroger Bread Crumbs on or Before October 7.**

The Court's motion to compel order required Kroger to provide responses to Plaintiff's requests by October 7, 2019. *Hawkins*, 2019 U.S. Dist. LEXIS 161210, at *58. The Court set the "time period for Defendant's responses [as] January 1, 2010 through present day for all requests except those seeking responses from the CLASS PERIOD which is defined by Plaintiff as January 1, 2010 - May 31, 2018." *Id.*

"If Defendant provides a declaration from a knowledgeable employee that Defendant stopped selling all relevant products, then the discovery end date for all discovery requests will be the date Defendant stopped selling the product. Defendant must serve its responses on or before October 7, 2019." *Hawkins*, 2019 U.S. Dist. LEXIS 161210, at *58.

In a December 18, 2019 letter to Plaintiff's counsel, counsel for Defendant stated, "Kroger expects to have the declaration before the holidays, but given scheduling issues,

Kroger may be unable to provide until immediately after the first of the year." Weston Decl. Ex. 8. Kroger did not provide the declaration until January 8, 2020, 94 days after ordered the date ordered by the Court. Weston Decl. ¶ 21. This declaration, aside from being late, uses extremely equivocal language, and also contradicted by actual photographs we took. Specifically, it does not actually say when Kroger stopped selling KBC with trans fat, but that Mr. Evans "understand[s] that the supplier, Quality Bakery Products, has informed Kroger that it ceased using PHO in the bread crumbs sold to Kroger by the end of the first quarter of 2015" and "it is likely that Kroger ceased selling bread crumbs containing PHO before mid-2015, though I cannot pinpoint a precise date." No documents, which seem to be in Kroger's possession based on this declaration, have ever been produced relating to this claim. All we have is hearsay from a Kroger employee based on an unnamed documents or individuals at another company.

Further, this equivocal and hearsay-based statement does not reflect actual evidence: Counsel for Plaintiff personally saw and took photographs of Kroger Bread Crumbs with PHO listed in its ingredients in the Kroger-owned Food4Less in San Diego, in October 2015. Weston Decl. ¶ 24-25.

In summary, (1) Kroger's declaration is 94 days late; (2) is not from a "*knowledgeable* employee" (3) is expressly based on hearsay (4) is on a topic Kroger has produced zero documents despite being ordered to do so (5) is contradicted by Mr. Weston's sworn statement which is not based on hearsay, but his actual memory and photographs he personally took. *See* Weston Decl. ¶¶ 24-25.

Moreover, even if all the problems with the declaration didn't exist, Kroger's Third Supplemental Response to Interrogatory No. 1 provides California sales data for only 2013, 2014, and the first quarter of 2015, and nothing for 2010-2012.

Yet in its Second Supplemental Response to Interrogatory No. 5, Kroger claims it "sold containers of Kroger Bread Crumbs between 2010 and 2016." Even if this were

1   sufficient to qualify as a "declaration from a knowledgeable employee," the interrogatory

2   response only covers 2¼ years, not the required 2010 to 2016 period.

3         Kroger's Second Supplemental Response to Interrogatory No. 8 similarly states

4   "Kroger's best estimate of the date on which it stopped selling Kroger Bread Crumbs with

5   PHO is 2016." No documents informing this different estimate have ever been produced.

6         Thus, Kroger violated the Court's order by not providing *any sales information*

7   *whatsoever* by the date the Court ordered. It is further in continuing contempt of the

8   Court's order because its belated interrogatory disclosure only covers 2¼ years, not the

9   entire class period.

10        These 2¼ years are supposedly supplemented by a heavily and inexplicably

11  redacted printout of a spreadsheet Kroger produced on November 8. However, the Order

12  required sales to be fully disclosed in an interrogatory. The spreadsheet contains no

13  information on who created it, when it was created, or what was redacted and why.

14        One of Kroger's continuous pretexts for not answering the interrogatory, even after

15  the motion to compel order, is its self-serving and self-imposed "obligation" to first

16  determine if Kroger Bread Crumbs that list PHO as an ingredient actually had PHO in

17  them. Since Kroger supposedly could only verify it used PHO in KBC during this 2¼ year

18  period, despite the fact it was listed as an ingredient for a much longer time, the case must

19  essentially sit in abeyance while Kroger spends months awaiting responses from its

20  supposedly uncooperative suppliers (who, as described elsewhere, are contractually

21  obligated to cooperate with Kroger, and were obligated to seek Kroger's approval for

22  ingredient changes, and do continuous and substantial business with Kroger).

23        In summary, the sales of Kroger Bread Crumbs during the class period was

24  requested in both a request for production and interrogatory on May 15, 2019. Now, in

25  January 2020, and even after an unequivocal order to provide this information, it still

26  hasn't been disclosed. This is, respectfully, a strong case for a finding of civil contempt

27  and per diem sanction.

28

**V.    Kroger Violated the Court's Order by Not Producing Organization Charts on or Before October 7.**

The Court's September 16 Order compelled Kroger to produce "all organization charts showing employees who, during the class period, were involved in research, marketing, advertisement, manufacturing, or development of the product." *Hawkins*, 2019 U.S. Dist. LEXIS at *42-44. Documents produced by Kroger bearing Bates numbers TKC21-53 are organization charts responsive to RFP No. 2. They were not produced until November 8, 2019. Once again, Kroger's complaints about its suppliers' non-cooperation could not excuse or explain this.

**VI.    Kroger Is In Continuing Contempt of the Court's Order By Failing to Answer Interrogatory No. 5**

Interrogatory No. 5 reads

IDENTIFY the period of time during which YOU manufactured, distributed, or sold the PRODUCT, and if YOU contracted with outside companies to manufacture the PRODUCT, IDENTIFY them and the time period YOU contracted with them.

Initially, as with every single Interrogatory, Kroger refused to answer this obviously relevant request. Kroger delayed the filing of the motion to compel by telling Plaintiff and the Court it would "supplement" its non-response to Interrogatory 5 (and all others), but this supplement likewise failed to answer the interrogatory at all.

Kroger was then compelled to answer this Interrogatory by the Court. *Hawkins*, 2019 U.S. Dist. LEXIS 161210, at *38. Given its statement that it did not manufacture KBC, only the second part is relevant, asking "if YOU contracted with outside companies to manufacture the PRODUCT, IDENTIFY them and the time period YOU contracted with them."

Kroger's "third supplemental" answer, while finally identifying the companies, simply ignores the "time period YOU contracted with them." Defendant's Status Report

Ex. C at 15 (emailed to the Court by Heather Canner on November 19, 2019). Rather, it is mostly a cut-and-paste repetition of the same narrative of its "dozens" of supposed requests to get "information regarding the breadcrumbs sourced from Nonni's" and the like. But that wasn't the question here. Kroger confirms it purchased the KBC from several companies named, but provides no information about "the time period YOU contracted with them" other than to say one of them supplied Kroger with KBC from 2013-15. Even then, it doesn't say if this is the complete time period, nor does it provide *any* dates about when it contracted to purchase KBC from Nonni's.

Moreover, Kroger states it "two of its four suppliers of breadcrumbs—Adams Spice and Extract and Icco Cheese Company—did not contain PHO during the relevant time period, to the best of their knowledge." Status Report Ex. C at 15. On this basis, a self-serving statement qualified as "to the best of their knowledge," Kroger has decided that it need not take any further effort to examine even its own files to provide dates when it contracted with these four companies. Further, Plaintiff never asked Kroger to independently verify with old suppliers that a product whose label says it contains PHO really does. *The 2010 and 2013 labels produced by Kroger show KBC had PHO on its ingredient list for the varieties pictured in the complaint.* Yet because Kroger supposedly has not yet been able to verify the product labeled as containing PHO has PHO, it believes it is not obligated to provide this information, the same pretext it uses to refuse to provide sales information.

As the Court stated at the discovery status conference, it is "Kroger's problem" if it believes that it sold, in violation of state and federal law, a product with a false ingredient list. It has produced no *actual evidence* anything like this occurred—just repeated representations of counsel and hearsay that this is supposedly what suppliers are telling it.

In other words, Kroger's story of suppliers using or not using PHO willy-nilly for years in KBC is never actually attested to by anyone with actual knowledge this happened. If there is any actual evidence of this *illegal* practice of having false ingredient lists, it

1  should have been produced a long time ago, but nothing of the sort has ever been
2  produced. It is also implausible because, as the complaint details, PHO is cheaper than
3  alternative edible oils and further acts as a preservative. *See* Compl. ¶ 20.

4  **VII.   Kroger Inexplicably Redacted Documents.**

5      Some of Kroger's documents are heavily and inexplicably redacted. For example,
6  TKC54-63 appear to provide sales information. More than 50% of the document is
7  redacted. Moreover, the spreadsheets do not contain column headers which would provide
8  clarity as to the information contained in them, just "705" and "704". Kroger stated that its
9  privilege log clarified its redactions, however, this is simply not true. There is nothing, for
10  example, in the log about TKC54-63, 82-129, and 172-179, which we specifically raised.

11  **VIII.  Kroger's Contention that it Cannot Assert Control Over Third-Party Vendors**
12          **is Belied by its Vendor Agreements.**

13      Kroger repeatedly asserts its inability to timely produce documents resulted from
14  Nonni's and B&G Foods' failure to "cooperate[] in providing any further information."
15  Status Report at 10. However, Kroger's publicly available vendor agreements belie this
16  contention. For example, a document titled "Kroger 'Our Brands' Vendor Certification
17  Policy, contains the following provisions:[1]

18  •   "Vendors are subject to review and approval by Kroger. Vendor will provide to
19      Kroger any financial reports and information requested and must notify Kroger in
20      the case of a change of control in ownership. Vendor may not assign or otherwise
21      transfer any of its rights or delegate any of its obligations."

22  •   "Vendors must . . . Respond promptly with an appropriate explanation to
23      information requests or questions by Kroger."

24  Weston Decl. ¶ 23, Ex. 10. *See also* TKC172-79; TKC197-211.

25

26

---

27  [1] A nearly identical document was produced by Kroger bearing Bates numbers TKC206-
28  208.

1    Pursuant to the terms of these agreements, Kroger's vendors are required to

2    promptly respond to Kroger's requests for documents and information or face financial

3    penalties. On November 21, 2019, counsel for Plaintiff visited www.ralphs.com. Weston

4    Decl. ¶ 17. Ralphs is a Kroger branded store. Plaintiff's counsel used the "stores" link to

5    select the Ralph's located at 101 G St., San Diego, CA 92101. Weston Decl. ¶ 17. Counsel

6    then searched "Ortega" in the search bar. Weston Decl. ¶ 17. The results from this search,

7    which are attached to the Weston Declaration as Exhibit 4, show that products such as

8    Ortega Green Chiles, Ortega Taco Seasoning Mix, and Ortega Yellow Corn Taco Shells

9    are currently available at the downtown Ralphs. Each of these products is manufactured

10   by B&G Foods, Inc. Weston Decl. ¶ 17. Counsel's staff also observed Nonni's products

11   offered for sale at the same downtown Ralph's. Weston Decl. Ex. 5. In other words, the

12   supposedly uncooperative suppliers have contracts with Kroger to promptly respond to its

13   information requests, and further are likely quite reliant on Kroger, which is by far the

14   largest grocery store chain in the United States.

15      Moreover, many of Plaintiff's requests for production which pertain to documents

16   in Kroger's possession, custody, or control remain unfulfilled. For example, *Kroger has*

17   *not produced a single invoice* relating to Kroger Bread Crumbs, though such documents

18   should be within the Court's order. *See Hawkins*, 2019 U.S. Dist. LEXIS 161210, at *30-

19   32.

20      Requests for Production Nos. 5-8 sought exemplars of all KBC labels, documents

21   relating to changes to the label, and documents "showing the period of time during which

22   each PRODUCT LABEL was introduced, used, and discontinued." *Hawkins*, 2019 U.S.

23   Dist. LEXIS 161210, at *46-47. While Kroger produced exemplars of labels and some

24   documents relating to label alterations, it has entirely failed to produce documents

25   sufficient to show the time period during which each label variation was used. This issue

26   is central to the litigation, as it will define the temporal scope of the class.

27

28

**IX.    Kroger Has Waived Privilege by (1) Failing to Produce Any Privilege Log for More than Three Months After One Was Due, (2) Failing to Produce Any Log When Ordered by the Court, and (3) Belatedly Producing One That Is Facially Incomplete.**

The privilege log produced by Kroger on November 8, 2019 is deficient for a number of reasons. Specifically, the privilege log was not produced until November 8, 2019, though Plaintiff's requests were served on May 15, 2019. Further, pursuant to Fed. R. Civ. P 26,

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
>
> (i) expressly make the claim; and
>
> (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

However, 20 of the 22 communications listed in the privilege log do not include recipients. The two that do include recipients both say they were sent to "All Kroger Employees." If this is actually accurate, this would mean a supposedly privileged communication was sent to tens of thousands of people. Weston Decl. Ex. 6.

"Privilege logs must . . . identify individual authors and recipients." *United States ex rel. Poehling v. Unitedhealth Grp., Inc.*, 2018 U.S. Dist. LEXIS 226072, at *58 (C.D. Cal. Dec. 14, 2018) (citing *Karnoski v. Trump*, 328 F. Supp. 3d 1156, 1164 (W.D. Wash 2018)). Because Kroger has failed to identify individual authors and recipients, Plaintiff's counsel cannot assess the claim of privilege, rendering the privilege log deficient. Further, it seems highly implausible that multiple Kroger employees would co-author documents identified as "correspondence" that had no recipients. Weston Decl. Ex. 6.

1   Moreover, to the extent the privilege log does provide the names of authors, they
2   are not full names, and it does not provide the authors' titles or information sufficient to
3   determine that they are attorneys. Privilege logs are deficient where they "do not state the
4   position or job title of each person." *Rawcar Grp., LLC v. Grace Med., Inc.*, 2013 U.S.
5   Dist. LEXIS 201729, at *19-20 (S.D. Cal. Dec. 16, 2013). "These failures prevent
6   Plaintiff and the Court from evaluating the applicability of the claimed privilege." *Id.* The
7   one name we could decipher as an author of a supposedly privileged document is not that
8   of an attorney, but of a "packaging manager." Weston Decl. Ex. 6.

9   With regard to the one employee Plaintiff's counsel could identify from the
10   privilege log, the "S. Klei" appears to be Shannon Klei. Ms. Klei is listed as the **sole**
11   **author** of four different documents withheld as "attorney work product" but is not an
12   attorney. Weston Decl. Ex. 6.

13   Plaintiff's counsel also finds it suspect and implausible that most of the documents
14   are listed as having multiple authors. Weston Decl. Ex. 6. A single document appearing in
15   Kroger's privilege log dated 4/15/15 has five different authors. Weston Decl. Ex. 6. Far
16   more likely, to the extent the document really has five authors, a draft was e-mailed back
17   and forth over a period of weeks or months.

18   Further, Kroger has waived privilege for each of these documents. None of these
19   documents reference any "suppliers," meaning they were in Kroger's possession at the
20   time the Court issued its September 16 Order and were due on October 7 pursuant to the
21   Court's order. *See Hawkins*, 2019 U.S. Dist. LEXIS 161210, at *58 ("Defendant must
22   serve its responses on or before October 7, 2019."). Kroger's inexplicable decision to
23   withhold documents authored by Kroger's employee "brand managers" and in some cases
24   sent to every one of its thousands of employees as privileged without producing any
25   privilege log, despite the Court's order to do so, waived that privilege.

26   The Court has already warned Kroger on this issue. The Motion to Compel Order
27   states:

28

### E. Privilege

Throughout its responses Defendant objects on the basis of privilege. From the pleadings before the Court, it does not appear that Defendant has provided Plaintiff with a privilege log. Accordingly, Defendant's privilege objections are OVERRULED. Defendant must search for and produce responsive documents in accordance with this order. If, as Defendant contends, there are responsive documents that are privileged, Defendant must comply with Fed. R. Civ. P. 26 which requires parties that seek to withhold documents due to privilege to "expressly make the claim" and "describe the nature of the documents, communications, or tangible things not produced or disclosed — and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5). Fed. R. Civ. P. 26 does not discharge a party from its obligation to search for responsive documents simply because the documents might be privileged.

*Hawkins*, 2019 U.S. Dist. LEXIS 161210, at *23-24.

Given the months of non-compliance, and that this is the second motion filed on this issue, an order compelling production of these documents is justified. In the alternative, Plaintiff respectfully requests that Kroger provide these documents to the Court for *in camera* review.

### X.    The Court Should Award Fees

Where a party "fail[s] to comply with [a] Discovery Order without substantial justification," Fed. R. Civ. P. 37(b)(2)(C)

requires a district court, instead of or in addition to nonmonetary sanctions allowed in Rule 37(b)(2)(A), to "order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the [discovery] failure."

*UA Corp. v. United Artist Studios LLC*, 2019 U.S. Dist. LEXIS 167110, at *24 (C.D. Cal. Aug. 28, 2019) (quoting Fed. R. Civ. P. 37(b)(2)(C)).

As noted in the Court's November 1, 2019 order, "Defendant's representation that it [was] making a good-faith effort to comply is starkly at odds with its failure to produce a

single additional document in the 45 days since the Sanctions Order issued." Dkt. 81 at 2. Further, Kroger *still* has not fully complied with the Court's September 16 Order Granting Plaintiff's Motion to Compel.  For the reasons described here, Plaintiff respectfully requests that the Court grant her leave to file an application for fees if this motion is granted in substantial part.

## XI.   The Court Should Impose Per Diem Sanctions on Kroger for Its Failure to Comply with the Court's September 16 Order Granting Motion to Compel.

"As the Ninth Circuit has recently explained, '[t]he discovery process in theory should be cooperative and largely unsupervised by the district court. But when . . . cooperation breaks down, Federal Rule of Civil Procedure 37 allows a party to move for an order compelling disclosures  or discovery.'" *Aecom Energy & Constr., Inc. v. Ripley*, 2018 U.S. Dist. LEXIS 220793, at *6 (C.D. Cal. Sep. 7, 2018) (quoting *Sali v. Corona Reg'l Med. Ctr.*, 884 F.3d 1218, 1219-20 (9th Cir. 2018)). "If the order is disobeyed, the court can impose contempt and other sanctions." *Aecom Energy & Constr., Inc.*, 2018 U.S. Dist. LEXIS 220793, at *6 (quoting *Sali*, 884 F.3d at 1219-20).

"'[C]ourts have inherent power to enforce compliance with their lawful orders through civil contempt.'" *Aecom Energy & Constr., Inc.*, 2018 U.S. Dist. LEXIS 220793, at *6 (quoting *Shillitani v. United States*, 384 U.S. 364, 370 (1966)). "Civil contempt consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *Aecom Energy & Constr., Inc.*, 2018 U.S. Dist. LEXIS 220793, at *6.

"'The standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the [non-moving party] violated a specific and definite order of the court.'" *Id.* at *7 (quoting *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1239 (9th Cir. 1999)).

Here, Plaintiff has "show[n] by clear and convincing evidence that" Kroger has violated the Court's September 16 Order in numerous ways. Plaintiff now seeks sanctions

1  which are "intended to coerce [Kroger] to comply with the court's orders in the future."

2  *Aecom Energy & Constr., Inc.*, 2018 U.S. Dist. LEXIS 220793, at *7.

3  **XII.   A Coercive Sanction of $200 Per Diem Payable to the Court Is Appropriate.**

4       Plaintiff's counsel has reviewed opinions imposing per diem sanctions for

5  violations of Court orders in this Circuit and believes a $200 per diem sanction is

6  appropriate here. "'A court, in determining the size and duration of a coercive fine, must

7  consider the character and magnitude of the harm threatened by continued contumacy, and

8  the probable effectiveness of any suggested sanction in bringing about the result desired.'"

9  *Reachlocal, Inc. v. PPC Claim, Ltd.*, 2018 U.S. Dist. LEXIS 228104, at *2 (C.D. Cal.

10  May 29, 2018) (quoting *China Cent. Tv v. Create New Tech. (HK) Ltd.*, 2015 U.S. Dist.

11  LEXIS 152218, at *15 (C.D. Cal. Nov. 4, 2015)).

12       In *Hous. Rights Ctr. v. Sterling*, Judge Fischer imposed coercive sanctions of "$500

13  per day," but noted that the sanctions were "quite moderate and less than the Court would

14  otherwise have considered appropriate in these circumstances." 2004 U.S. Dist. LEXIS

15  28879, at *11-12 (C.D. Cal. Dec. 28, 2004). In *GE v. Liang*, Judge Woehrle recommended

16  "that Liang be held in civil contempt and be required to pay a fine of $500 per diem . . .

17  unless and until he complies with the Court's Orders." 2014 U.S. Dist. LEXIS 200868, at

18  *5 (C.D. Cal. Nov. 10, 2014). In *A&F Bahamas, LLC v. World Venture Grp.*, Judge Segal

19  imposed sanctions  of "$100 per day" on an individual for "for each day that [a] fine

20  remained unpaid from the date that the District Judge f[ound] Brunton in contempt." 2019

21  U.S. Dist. LEXIS 128859, at *14 (C.D. Cal. June 7, 2019).

22       In *Arabian Gas & Oil De. Co. v. Wisdom Marine Lines, S.A.*, Judge Ryu imposed a

23  "a daily fine of $500" for failure to comply with court orders and noted that it was "well

24  within the range of coercive per diem fines issued by courts in this district for civil

25  contempt." 2017 U.S. Dist. LEXIS 164123, at *20 (N.D. Cal. Oct. 3, 2017) (citing *United

26  States v. Wen-Bing Soong*, 2015 U.S. Dist. LEXIS 118585, at *142 (N.D. Cal. Sept. 3,

27  2015) (imposing a coercive daily fine of $500.00 per spouse, or $1,000 a day collectively

28

as a couple, was appropriate because the couple appeared to have significant financial resources). *See also China Cent. Tv v. Create New Tech. (HK), Ltd.*, 2015 U.S. Dist. LEXIS 152218, at *16 (C.D. Cal. Nov. 4, 2015) ("A $5,000 per day fine is consistent with the coercive sanctions imposed by other courts in this Circuit."); *United States v. Gillies*, 2013 U.S. Dist. LEXIS 34318, at *5 (N.D. Cal. Feb. 22, 2013) (imposing "$250 per day fine" against an individual).

Here, the Court has already warned Kroger at status conference calls about its non-compliance, and as described above, Plaintiff's request for an order imposing per diem sanctions of $200 is on the low side given the long period of non-compliance and Kroger's extensive resources.

## XIII.   The Court Should Consider Prohibiting Kroger From Introducing Into Evidence Any Document Subject to the Motion to Compel Order Not Produced by 12/31/19.

Rule 37(b)(2)(A) provides a list of sanctions available when a previous discovery order is disobeyed:

(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

1   Here, Hawkins requests the least drastic of these many enumerated sanctions,

2   namely the prohibition of Kroger using as evidence in this case any documents that should

3   have been produced following the motion to compel order.

4   Other district courts in California have applied such sanction when there is a failure

5   to produce specific documents after a court order compelling production. For example, in

6   *Sarytchev v. Korolev*, the Honorable Nandor J. Vadas held:

> Since the beginning of this action, Defendants have represented that they had a license and/or express permission to use Plaintiff's copyrighted work. Despite being ordered to do so by this court, however, they have failed to produce any legally cognizable evidence of any license or permission by Plaintiff to use the song and have failed to offer any facts to support this defense. Setting aside the fact that the purported licenses Defendants produced well after their deadline for doing so are translated, uncertified copies, unaccompanied by originals, and unauthenticated by anyone with personal knowledge of the documents, they do not, on their face, give them that permission. Under these circumstances, the court will impose evidence preclusion sanctions against Defendants. Defendants shall be precluded from arguing or relying on any evidence tending to support their argument, that they had a license or other permission to use Plaintiff's work. *See* Fed. R. Civ. P. 37(b)(2)(A)(ii)

*Sarytchev v. Korolev*, 2013 U.S. Dist. LEXIS 165906, at *16-17 (N.D. Cal. Nov. 21, 2013).

While a similar situation, the remedy sought by Hawkins here is less drastic. In *Sarytchev* the party was prohibited from "or relying on any evidence tending to support their argument, that they had a license or other permission to use Plaintiff's work," *id.* at *17. Here the order sought does not cover "any evidence," but instead is limited to the evidence that should have been produced following the motion to compel, but was not.

Another case with a similar circumstance but a more drastic sanction was *G-K Props. v. Redevelopment Agency of San Jose*, 577 F.2d 645 (9th Cir. 1978). In that case, like this one, there was a failure, even after a court order, to produce financial records central to the claims.

18

1    Specifically, despite the initial discovery order,

2    no reports of the financial condition of Kress on an annual or monthly basis
3    after 1969 were forthcoming. After continuing the trial date because of delays
4    in complying with discovery orders, the court directed appellants at least twice
5    to produce the documents included in the October 28 order or to file an affidavit
6    of a responsible officer stating that such documents did not exist and advising
7    appellees what, if any, documents did contain the financial information they
8    sought. The opinion of the court below also indicates that this directive was
9    repeated at conferences held in chambers and that it was clearly explained that
     the discovery order was intended to comprise records showing profit and loss
10   for the Kress division. Appellants neither supplied the documents nor filed
     affidavits concerning them.

11   *G-K Props*, 577 F.2d at 647.

12   The same situation exists here. Plaintiff still does not have complete sales
13   information. Kroger's interrogatory response, which was compelled by the Court, covers
14   only 2 years and one quarter of the class period that is more than twice as long. In *G-K*
15   *Props*, the documents were finally tendered when the other party moved for dismissal as a
16   terminating sanction,

17   however, the court rejected appellants' tender of those documents. The court
18   found that an additional continuance of the trial date would not be an effective
19   sanction, and that to impose a fine would merely "introduce into litigation a
20   sporting chance theory encouraging parties to withhold vital information from
     the other side with the hope that the withholding may not be discovered and, if
21   so, that it would only result in a fine." Accordingly, the court dismissed the case
22   to protect the integrity of its orders.

23   *G-K Props*, 577 F.2d at 647. The Ninth Circuit affirmed the terminating sanction. *Id.* at
24   649. *See also Karimi v. Golden Gate Sch. of Law*, 361 F. Supp. 3d 956, 971 (N.D. Cal.
25   2019) (prohibiting plaintiff who failed to appear at a deposition, under Rule
26   37(b)(2)(A)(ii), from offering declarations or testimony).

27

28

1  DATED: January 10, 2020                  Respectfully Submitted,

2

3                                     /s/ Gregory Weston

4                                    **THE WESTON FIRM**

5                                    GREGORY S. WESTON
                                    1405 Morena Blvd., Suite 201

6                                    San Diego, CA 92110
                                    Telephone:  (619) 798-2006

7                                    Facsimile:   (619) 343-2789

8                                    **Counsel for Plaintiff**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28