1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**THE WESTON FIRM**
GREGORY S. WESTON (239944)
*greg@westonfirm.com*
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone:   (619) 798-2006
Facsimile:    (619) 343-2789

**Counsel for Plaintiff**

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

SHAVONDA HAWKINS, on behalf of herself and all others similarly situated,

            Plaintiff,

    v.

THE KROGER COMPANY,

            Defendant.

Case No: 3:15-cv-02320-JM-AHG

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

Judge:        The Honorable Jeffrey T. Miller
Date:         February 24, 2020
Time:         10:00 a.m.
Location:     Courtroom 5D

# TABLE OF CONTENTS

I.     Introduction .................................................................................................. 1

II.    Statement of Relevant Facts ....................................................................... 1

  A.   Kroger Unlawfully and Unfairly Used PHO in Kroger Bread Crumbs ................... 1

  B.   Kroger Hid Its Use of Trans Fats With the False, Deceptive, and Unlawful Nutrient Content Claim "0g Trans Fat" ................................................................... 4

III.   Plaintiff Has Article III Standing ............................................................... 5

IV.    Standard for Class Certification ................................................................. 6

V.     The Four Rule 23(a) Prerequisites Are Satisfied ...................................... 7

  A.   Numerosity Is Satisfied Because Defendant Sold Hundreds of Thousands of Units in California. ........................................................................................... 7

  B.   The Truthfulness and Legality of the "0g Trans Fat" Claim, and the Legality of Using PHO, Are Predominating Common Issues. .......................................... 8

  C.   Typicality Is Satisfied Because Plaintiff Suffered the Same Injury as Other Putative Class Members. .................................................................................. 10

  D.   Adequacy of Representation Is Satisfied Because Hawkins Has No Conflicts and Class Counsel Is Experienced and Capable. .............................................. 11

VI.    The Class Satisfies Rule 23(b)(3). ........................................................... 12

  A.   Common Issues Predominate. ......................................................................... 12

  B.   Plaintiff Will Show Kroger's Liability by Common Evidence. ....................... 14

  C.   No Individualized Proof of Reliance, Deception, or Injury Is Needed to Establish Liability. ........................................................................................... 15

  D.   Plaintiff Will Calculate Restitution Using Common Evidence ...................... 17

  E.   Any Individual Issues of Damages Do Not Predominate. .............................. 17

  F.   The Prerequisite of Superiority is Satisfied. .................................................. 18

VII.   The Class Is Ascetainable and Manageable. ........................................... 19

VIII.  Kroger Should Be Required to Pay the Costs of Class Notice. ............... 19

IX.    Conclusion ................................................................................................ 20

i

# TABLE OF AUTHORITIES

**CASES**

*Alfred v. Peppridge Farm, Inc.*,
　　322 F.R.D. 519 (C.D. Cal. 2017)................................................................19

*Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Group LP*,
　　247 F.R.D. 156 (C.D. Cal. 2007)................................................................13

*Amchem Prods., Inc. v. Windsor*,
　　521 U.S. 591 (1997)................................................................................13

*Amgen v. Conn. Ret. Plans & Tr. Funds*,
　　568 U.S. 455 (2013)..................................................................................7

*Astiana v. Kashi Co.*,
　　291 F.R.D. 493 (S.D. Cal. 2013) ...........................................6, 9, 11, 19

*Avilez v. Pinkerton Gov't Servs.*,
　　286 F.R.D. 450 (C.D. Cal. 2012)................................................................7

*Baghdasarian v. Amazon.com, Inc.*,
　　258 F.R.D. 383 (C.D. Cal. 2009)..............................................................16

*Beck-Ellman v. Kaz USA, Inc.*,
　　283 F.R.D. 558 (S.D. Cal. 2012) .............................................................10

*Behfarin v. Pruco Life Ins. Co.*,
　　2019 U.S. Dist. LEXIS 223361 (C.D. Cal. Nov. 26, 2019) ....................18

*Benedecit v. Hewlett-Packard Co.*,
　　314 F.R.D. 457 (N.D. Cal. 2016) .............................................................11

*Blackie v. Barrack*,
　　524 F.2d 891 (9th Cir. 1975) .........................................................11, 18

*Brinker Rest. Corp. v. Super. Ct.*,
　　53 Cal. 4th 1004 (2012)............................................................................18

ii

*Briseno v. ConAgra Foods, Inc.*,
   844 F.3d 1121 (9th Cir. 2017) ................................................................. 13

*Brockey v. Moore*,
   107 Cal. App. 4th 86 (2003) ................................................................. 14

*Bruno v. Quten Research Inst., LLC*,
   280 F.R.D. 524 (C.D. Cal. 2011) ............................................................. 7

*Californians for Disability Rights, Inc. v. Cal. DOT*,
   249 F.R.D. 334 (N.D. Cal. 2008) ........................................................... 11

*Cartwright v. Viking Indus.*,
   2009 U.S. Dist. LEXIS 83286 (E.D. Cal. Sept. 11, 2009) ................................ 10, 15

*Chacanaca v. Quaker Oats Co.*,
   2011 U.S. Dist. LEXIS 65023 (N.D. Cal. June 14, 2011) ................................. 12

*Chavez v. Blue Sky Natural Bev. Co.*,
   268 F.R.D. 365 (N.D. Cal. 2010) ............................................................. 9

*Chen v. All State Ins. Co.*,
   819 F.3d 1136 (9th Cir. 2016) ............................................................... 19

*Chester v. TJX Cos.*,
   2017 U.S. Dist. LEXIS 201121 (C.D. Cal;. Dec. 5, 2017) ................................ 11

*Civ. Serv. Emps. Ins. Co. v. Super. Ct.*,
   22 Cal. 3d 362 (1978) ....................................................................... 20

*Colgan v. Leatherman Tool Group, Inc.*,
   135 Cal. App. 4th 663 (2006) ............................................................... 17

*Cortez v. Purolator Air Filtration Prods. Co.*,
   23 Cal. 4th 163 (2000) ..................................................................... 17

*Cummings v. Connell*,
   316 F.3d 886 (9th Cir. 2003) ............................................................... 12

*Davis v. HSBC Bank*,
   691 F.3d 1152 (9th Cir. 2012) .............................................................. 14

iii

*Deposit Guar. Nat'l Bank v. Roper*,
    445 U.S. 326 (1980)...................................................................................19

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)......................................................................................7

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) .......................................................................7

*Franchise Tax Bd. Ltd. Liab. Corp. Tax Refund* Cases,
    25 Cal. App. 5th 369 (2018) .........................................................................6

*Gallucci v. Boiron, Inc.*,
    2012 U.S. Dist. LEXIS 157039 (S.D. Cal. Oct. 31, 2012).......................12

*Gonzales v. Simplexgrinnell LP*,
    289 F.R.D. 463 (N.D. Cal. 2013) .................................................................7

*GreenCycle Paint, Inc. v. PaintCare, Inc.*,
    250 F. Supp. 3d 438 (N.D. Cal. 2017).......................................................16

*Guido v. L'Oreal, USA, Inc.*,
    284 F.R.D. 468 (C.D. Cal. 2012)...................................................5, 15, 16

*Hadley v. Kellogg Sales Co.*,
    324 F. Supp. 3d 1084 (N.D. Cal. 2018)..................................................7, 14

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ...............................................................10, 13

*Hawkins v. Kroger Co.*,
    906 F.3d 763 (9th Cir. 2018) .............................................................passim

*Hinojos v. Kohl's Corp.*,
    718 F.3d 1098 (9th Cir. 2013) ......................................................................6

*Hohenberg v. Ferrero*,
    2011 U.S. Dist. LEXIS 38471 (S.D. Cal. March 22, 2011) ....................12

*Hunt v. Check Recovery Sys.*,
    2007 U.S. Dist. LEXIS 58800 (N.D. Cal. July 25, 2007) ........................20

iv

*Hunt v. Imperial Merch. Servs., Inc.*,
    560 F.3d 1137 (9th Cir. 2009) ........................................................................ 19, 20

*In re Ferrero Litig.*,
    278 F.R.D. 552 (S.D. Cal. 2011) ................................................................... 11, 14

*In re First Am. Home Buyers Prot. Corp. Class Action Litig.*,
    313 F.R.D 578 (S.D. Cal. 2016) ............................................................................ 16

*In re High-Tech Employee Antitrust Litig.*,
    985 F. Supp. 2d 1167 (N.D. Cal. 2013) ............................................................... 13

*In re Nat'l W. Life Ins. Deferred Annuities Litig.*,
    268 F.R.D. 652 (S.D. Cal. 2010) ......................................................................... 15

*In re TFT-LCD Antitrust Litig.*,
    267 F.R.D. 291 (N.D. Cal. 2010) ......................................................................... 19

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2011) ................................................................................. 6, 9, 15

*Johns v. Bayer Corp.*,
    280 F.R.D. 551 (S.D. Cal. 2010) ....................................................... 11, 13, 14, 16

*Johnson v. General Mills*,
    275 F.R.D. 282 (C.D. Cal. 2011) ......................................................................... 15

*Juarez v. Jani-King of Cal., Inc.*,
    273 F.R.D. 571 (N.D. Cal. 2011) ........................................................................... 9

*Just Film, Inc. v. Buono*,
    847 F.3d 1108 (9th Cir. 2017) ......................................................................... 6, 10

*Kamakahi v. Am. Soc't for Reprod. Med.*,
    305 F.R.D. 164 (N.D. Cal. 2015) ......................................................................... 12

*Keegan v. Am. Honda Motor Co.*,
    284 F.R.D. 504 (C.D. Cal. 2012) ................................................................... 10, 14

*Keilholtz v. Lennox Hearth Prods.*,
    268 F.R.D. 330 (N.D. Cal. 2010) ........................................................................... 8

v

*Kwikset Corp. v. Super. Ct.*,
   51 Cal. 4th 310 (2011) ................................................................................4, 9, 16

*Lambert v. Nutraceutical Corp.*,
   870 F.3d 1170 (9th Cir. 2017) ...............................................................................17

*Leyva v. Medline Indus.*,
   716 F.3d 510 (9th Cir. 2013) .................................................................................18

*Lilly v. Jamba Juice Co.*,
   308 F.R.D. 231 (N.D. Cal. 2014) ...........................................................................19

*Lozano v. AT&T Wireless Servs.*,
   504 F.3d 718 (9th Cir. 2007) .................................................................................15

*Lyon v. U.S. Immigration & Customs Enf't*,
   300 F.R.D. 628 (N.D. Cal. 2014) ...........................................................................11

*Mass. Mut. Life Ins. Co. v. Super. Ct.*,
   97 Cal. App. 4th 1282 (2002) ..........................................................................15, 16

*McAdams v. Monier, Inc.*,
   182 Cal. App. 4th 174 (2010) ................................................................................15

*Michael v. Honest Co.*,
   2016 U.S. Dist. LEXIS 189116 (C.D. Cal. Dec. 6, 2016)....................................4, 19

*Morgan v. United States Soccer Fed'n*,
   2019 U.S. Dist. LEXIS 221602 (C.D. Cal. Nov. 8, 2019) .....................................11

*Nelson v. Pearson Ford Co.*,
   186 Cal. App. 4th 983 (2010) ................................................................................17

*Nevarez v. Forty Niners Football Co., LLC*,
   326 F.R.D. 562 (N.D. Cal. 2018) ...........................................................................10

*Nutraceutical Corp. v. Lambert*,
   139 S. Ct. 710 (2019)..............................................................................................17

*O'Donovan v. Cashcall, Inc.*,
   278 F.R.D. 479 (N.D. Cal. 2011) ...........................................................................10

vi

*Ogden v. Bumble Bee Foods, LLC*,
    2014 U.S. Dist. LEXIS 565 (N.D. Cal. Jan. 2, 2014)..............................................17

*Ortega v. Natural Balance, Inc.*,
    300 F.R.D. 422 (C.D. Cal. 2014)......................................................................4, 13

*Parkinson v. Hyundai Motor Am.*,
    258 F.R.D. 580 (C.D. Cal. 2008)..............................................................................13

*Patel v. Trans Union, LLC*,
    308 F.R.D. 292 (N.D. Cal. 2015) ...............................................................................7

*People v. Overstock.com, Inc.*,
    12 Cal. App. 5th 1064 (2017) ....................................................................................16

*Petersen v. Costco Wholesale Co.*,
    312 F.R.D. 565 (C.D. Cal. 2016)...............................................................................18

*Reid v. Johnson & Johnson*,
    780 F.3d 952 (9th Cir. 2015) .......................................................................................4

*Richmond v. Dart Indus., Inc.*,
    29 Cal. 3d 462 (1981) ..................................................................................................6

*Ries v. Ariz. Bevs. U.S. LLC*,
    287 F.R.D. 523 (N.D. Cal. 2012) ..........................................................................5, 9

*Rubio v. Capital One Bank*,
    613 F.3d 1195 (9th Cir. 2010) .....................................................................................8

*Sali v. Corona Med. Ctr.*,
    889 F.3d 623 (9th Cir. 2018) .....................................................................................18

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010).....................................................................................................7

*Shane v. Fla. Bottling, Inc.*,
    2017 U.S. Dist. LEXIS 141069 (C.D. Cal. Aug. 9, 2017) ........................................4

*Shersher v. Superior Court*,
    154 Cal. App. 4th 1491 (2007)..................................................................................17

vii

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ................................................................11

*Stearns v. Ticketmaster Corp.*,
  655 F.3d 1013 (9th Cir. 2011) ........................................................passim

*Steroid Hormone Prod. Cases*,
  181 Cal. App. 4th 145 (2010) ...............................................................16

*Stockwell v. City & County of San Francisco*,
  749 F.3d 1109 (9th Cir. 2014) ................................................................8

*Tait v. BSH Home Appliances Corp.*,
  289 F.R.D. 466 (C.D. Cal. 2012) ...........................................................18

*Townsend v. Monster Bev. Corp.*,
  303 F. Supp. 3d 1010 (C.D. Cal. 2018) .................................................16

*United Steel Workers v. ConocoPhillips Co.*,
  593 F.3d 802 (9th Cir. 2010) ..................................................................7

*Valle v. Glob. Exch. Vacation Club*,
  320 F.R.D. 50 (C.D. Cal. 2017) ..........................................................7, 8

*Victorino v. FCA US Ltd. Liab Co.*,
  326 F.R.D. 282 (S.D. Cal. 2018) .............................................................7

*Wal-Mart Stores Inc. v. Dukes*,
  564 U.S. 338 (2011) ...............................................................................8

*Wiener v. Dannon Co.*,
  255 F.R.D. 658 (C.D. Cal. 2009) ..........................................................17

*Williams v. Superior Court*,
  221 Cal. App. 4th 1353 (2013) ....................................................9, 13, 16

*Wolin v. Jaguar Land Rover North Am., LLC*,
  617 F.3d 1168 (9th Cir. 2010) ..............................................................18

*Wolph v. Acer Am. Corp.*,
  272 F.R.D. 477 (N.D. Cal. 2011) ..........................................................16

viii

*Wortman v. Air New Zealand*,
    326 F.R.D. 549 (N.D. Cal. 2018) ...........................................................................8

*Yokoyama v. Midland Nat'l Life Ins. Co.*,
    594 F.3d 1087 (9th Cir. 2010) ................................................................... 13, 17

**STATUTES**

Cal. Bus. & Prof. Code § 17204 ................................................................................5

Cal. Civ. Code § 1781(d) ........................................................................................ 19

**OTHER AUTHORITIES**

Chajès, *Association between Serum Trans-Monounsaturated Fatty Acids and
    Breast Cancer Risk in the E3N-EPIC Study*, 167 AM. J. OF EPID. 1312
    (2008) ....................................................................................................................2

Chavarro, *A Prospective Study of Trans-Fatty Acid Levels in Blood and Risk of
    Prostate Cancer*, 47 PROC. AM. ASSOC. OF CANCER RESEARCH 95 (2008) .............2

Chavarro, *Dietary fatty acid intakes and the risk of ovulatory infertility*, 85 AM.
    J. CLIN. NUTR. 231 (2007) ....................................................................................2

Devore, *Dietary Fat Intake and Cognitive Decline in Women with Type 2
    Diabetes*, 32 DIABETES CARE 635 (2009)................................................................2

Final Determination Regarding Partially Hydrogenated Oils, 80 Fed. Reg.
    34650 (June 15, 2015) ...........................................................................................2

Lopez-Garcia, *Consumption of Trans Fatty Acids Is Related to Plasma
    Biomarkers of Inflammation and Endothelial Dysfunction*, 135 J. NUTR.
    562 (2005)..............................................................................................................3

Mozaffarian, *Trans Fatty Acids & Coronary Heart Disease*, 354 NEW ENG. J.
    MED. 1601 (2006)..................................................................................................2

NEWBERG ON CLASS ACTIONS §18.14 (4th ed. 2002) ....................................................11

Tentative Determination Regarding Partially Hydrogenated Oils, 78 Fed. Reg.
    67169 (Nov. 8, 2013)............................................................................................2

ix

Vinikoor, *Consumption of Trans-Fatty Acid and Its Association with Colorectal Adenomas*, 168 Am. J. Epid. 289 (2008) ...................................................................2

x

Plaintiff Shavonda Hawkins respectfully moves to the Court certify the claims in her Complaint for class treatment, appoint her as Class Representative, and appoint the Weston Firm Class Counsel.

## I.    INTRODUCTION

During the Class Period, Kroger promoted Kroger Bread Crumbs ("KBC")  with the nutrient content claim "0g Trans Fat." This claim was always false because during this time, KBC contained a substantial amount of artificial trans fat. Further, the very use of partially hydrogenated oil, the source of trans fat in KBC, violated California and federal food safety laws.

Kroger's liability to the class will be shown by common evidence. Kroger has long had knowledge that trans fat is dangerous. This information was widely known, and indeed people's desire to avoid trans fat is why Kroger placed the "0g Trans Fat" nutrient content claim on KBC in big lettering on the top-front of the KBC label.

This motion shows that Plaintiff can present her case for Kroger's liability on a class-wide basis. California uses a single, *objective* test for fraud liability: whether a claim could deceive a reasonable person. The individual states of mind of class members is not relevant to the objective test. Whether Kroger's "0g Trans Fat" claim is misleading and unlawful predominates over any possible individual question.

Plaintiff seeks certification of her claims on behalf of the following Class:

All citizens of California who purchased, between January 1, 2010 and December 31, 2015, Kroger Bread Crumb containing partially hydrogenated oil and the front label claim "0g Trans Fat."

## II.    STATEMENT OF RELEVANT FACTS

### A.    Kroger Unlawfully and Unfairly Used PHO in Kroger Bread Crumbs

During the entire class period, KBC was made with partially hydrogenated oil ("PHO"). *See* Weston Public Declaration, Ex. F; Weston Sealed Decl., Ex. 2.

PHO was the only significant source of artificial trans fat in the American diet during the class period. Golomb Expert Report at 4-5 (Golomb Report attached as Exhibit G to Weston Public Declaration). In 2013 and 2015 declaratory orders, the FDA

1

determined PHO is not safe for any use in food. *See* Tentative Determination Regarding Partially Hydrogenated Oils, 78 Fed. Reg. 67169 (Nov. 8, 2013); Final Determination Regarding Partially Hydrogenated Oils, 80 Fed. Reg. 34650 (June 15, 2015).

PHO damages the heart in several distinct ways. First, it causes cholesterol dysregulation, specifically by raising "bad" LDL cholesterol levels and lowering "good" HDL cholesterol levels in the blood. *See* Mozaffarrian, *Trans Fatty Acids & Coronary Heart Disease*, 354 NEW ENG. J. MED. 1601, 1602 (2006), Wong Report, Ex. F (Wong Report attached as Exhibit 3 to Sealed Weston Declaration). This, in turn, causes the formation of atherosclerotic lesions on the inside of the coronary arteries. *Id.* at 1602-03. By themselves, these lesions harm the body by restricting blood flow to the heart.

When the atherosclerotic lesions caused by trans fat rupture and break loose, they can completely block an artery, resulting in a heart attack. *Id.* at 1605-06. Artificial trans fat *also* causes these ruptures, meaning that it both contributes to the underlying cause of heart disease *and* is an immediate trigger of heart attacks. *Id.* at 1605-06.

Trans fat also causes multiple forms of cancer, for example, increasing the risk of colorectal neoplasia in high-consumption groups by 86% and increasing the risk of one type of prostate tumors in men by 121%.[1] In younger women trans fat causes infertility, in middle-aged women trans fat causes breast cancer, and in older women trans fat accelerates memory loss and age-related memory loss.[2]

---

[1] Vinikoor, *Consumption of Trans-Fatty Acid and Its Association with Colorectal Adenomas*, 168 AM. J. EPID. 289 (2008); Chavarro, *A Prospective Study of Trans-Fatty Acid Levels in Blood and Risk of Prostate Cancer*, 47 PROC. AM. ASSOC. OF CANCER RESEARCH 95, 99 (2008) (Wong Report, Exs. J-K); Compl. ¶¶ 49-51.

[2] Chavarro, *Dietary fatty acid intakes and the risk of ovulatory infertility*, 85 AM. J. CLIN. NUTR. 231-37 (2007) (Weston Decl., Ex. C); Chajès, *Association between Serum Trans-Monounsaturated Fatty Acids and Breast Cancer Risk in the E3N-EPIC Study*, 167 AM. J. OF EPID. 1312 (2008) (Wong Report, Ex. I); Devore, *Dietary Fat Intake and Cognitive Decline in Women with Type 2 Diabetes*, 32 DIABETES CARE 635-640 (2009) (Weston Decl., Ex. D); Compl. ¶¶ 53-59.

2

*Hawkins v. The Kroger Company,* Case No. 3:15-02320-JM-AHG
PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Trans fat also deforms the endothelial cells that line blood vessels and major organ systems, leading to brain dysfunction, diabetes, systemic inflammation, and autoimmune disorders.[3]

Dr. Beatrice Golomb is Professor of Medicine at UCSD. In addition to teaching our future doctors, she serves as the primary care doctor to a panel of military veterans and heads a research laboratory. Her published research examined the effect of trans fat consumption on the brain. Her conclusion: trans fat promotes both memory loss and behavioral changes. *See generally* Golomb Expert Report. She has agreed to serve as an expert witness, and will describe her research. She affirms that there was a strong consensus that PHO was not safe to use in food during the class period. This is a key factual issue: in order to legally use trans fat, it needed to be "Generally Recognized as Safe." Her testimony will be common evidence that goes directly to this issue.

UC Irvine Professor Nathan Wong will also testify for Plaintiff. He has published more than 250 scholarly medical journal articles, with a focus on heart disease prevention and epidemiology. He is superbly qualified to testify on the exact questions at issue here: he served as president of the American Society for Preventative Cardiology, as a long-term member of the American Heart Association's Statistics Committee, and is the Director of the UCI Heart Disease Prevention Program. *See* Wong Report at 2.

Kroger was aware of the harm using trans fat caused, well before 2010, when the class period begins. Kroger acknowledged the dangers of trans fat in 2006, stating "[r]ecent studies, including those by the Harvard School of Public Health, have found that diets high in trans fats can lead to increased risk of heart disease and other health issues." Weston Public Decl., Ex. B (Press Release: "Kroger Using Trans Fat Free for Fried Chicken"). Kroger even conceded that its "customers are interested in healthier

---

[3] Lopez-Garcia, *Consumption of Trans Fatty Acids Is Related to Plasma Biomarkers of Inflammation and Endothelial Dysfunction*, 135 J. NUTR. 562-66 (2005) (Weston Decl., Ex. E); Compl. ¶ 60.

1  options for their family meals." *Id.*

2       **B.**   **Kroger Hid Its Use of Trans Fats With the False, Deceptive, and**

3             **Unlawful Nutrient Content Claim "0g Trans Fat"**

4       Here, the only logical reason for Kroger put the "0g Trans Fat" nutrient content

5  claim on KBC's front label is it knows consumers are seeking products that do not

6  contain trans fat. "It strains credulity to think that a merchant would select exclusively

7  immaterial statements to print on its product's packaging." *Ortega v. Natural Balance,*

8  *Inc.*, 300 F.R.D. 422, 429 (C.D. Cal. 2014). In *Ortega*, like this case, the plaintiffs

9  brought claims under the UCL and CLRA challenging a product label as both deceptive

10  and separately as violating specific FDA regulations and therefore unlawful. Judge

11  Collins certified the class. *Id.* at 431.

12       As the California Supreme Court has noted, "[t]he marketing industry is based

13       on the premise that labels matter, that consumers will choose one product over
another similar product based on its label." *Kwikset Corp. v. Super. Ct.*, 51

14       Cal.4th 310, 328, 120 Cal. Rptr. 3d 741, 246 P.3d 877 (2011). Later in the same
opinion, the California Supreme Court recognized that . . . "materiality is

15       generally a question of fact[."] *Id.* at 333[.]

16  *Shane v. Fla. Bottling, Inc.*, 2017 U.S. Dist. LEXIS 141069, at *25 (C.D. Cal. Aug. 9,

17  2017). *See also Michael v. Honest Co.*, 2016 U.S. Dist. LEXIS 189116, at *49 (C.D.

18  Cal. Dec. 6, 2016) ("Simply stated: labels matter.") (following *Kwikset*).

19       In an even more similar case, *Reid v. Johnson & Johnson*, 780 F.3d 952, 963 (9th

20  Cir. 2015), the Ninth Circuit found the "No Trans Fat" claim on a product with trans fat

21  was deceptive. In the appeal in this case, the Ninth Circuit held:

22       We held that "No Trans Fat" was misleading because a reasonable consumer

23       might infer that the product did not contain trans fat. [...] *Reid* squarely controls
here. [...] Just as in *Reid*, a consumer reading the label could be misled into

24       believing that the product was free of trans fat. [...] In this case, as we have
explained, the "rounding rules" applicable to the Nutrition Facts Panel do not

25       apply to the nutrient content claim on the face of the label. And unlike other
products, where the distinction may not be inimical to the public health, falsely

26       advertising that a food product does not contain trans fat is a health hazard.

27

28  *Hawkins v. Kroger Co.*, 906 F.3d 763, 771-72 (9th Cir. 2018).

4

*Hawkins v. The Kroger Company,* Case No. 3:15-02320-JM-AHG
PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

## III.   PLAINTIFF HAS ARTICLE III STANDING.

"Not all plaintiffs and class members must demonstrate standing: 'In a class action, standing is satisfied if at least one named plaintiff meets the requirements.'" *Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468, 475 (C.D. Cal. 2012) (quoting *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1021 (9th Cir. 2011)).

The UCL, FAL, and CLRA all "apply the same standard" to determine whether a named plaintiff has standing to assert a claim—plaintiff must have suffered an injury in fact and lost money or property as a result of the unfair competition. *Ries v. Ariz. Bevs. U.S. LLC*, 287 F.R.D. 523, 529 (N.D. Cal. 2012) (citing Cal. Bus. & Prof. Code § 17204).

Here, Plaintiff read and relied on the "0g Trans Fat" claim, which was a substantial factor in her purchases. Compl. ¶¶ 74-77, 100-103, 107-10, 135-36, 157-58. Specifically, she purchased KBC in substantial part because she was "seeking products of particular qualities, including products that did not negatively affect blood cholesterol levels or the health of her cardiovascular system, and products made with safe ingredients." Compl. ¶ 100. "Plaintiff . . . would not have purchased the Kroger Bread Crumbs absent Defendant's misrepresentation." Compl. ¶ 107.

Plaintiff also suffered an economic loss "in an amount equal to the amount she paid for the Kroger Bread Crumbs." Compl. ¶ 110. She "repeatedly purchased and consumed the Kroger Breads Crumbs during the Class Period." Compl. ¶ 10. The Ninth Circuit held that because "Hawkins adequately alleged that she relied on the label's misrepresentations and would not have purchased the product without those misrepresentations, she has adequately alleged standing for her labeling claim." *Hawkins*, 906 F.3d at 769. It further held "Hawkins has statutory standing" for her "use claims" "for the same reason she has statutory standing to bring her labeling claims—it is sufficient for a consumer to allege that she bought a product she would not have otherwise if she had known the product was harmful." *Hawkins*, 906 F.3d at 772.

The "focus" of the UCL is "on the Defendant's conduct, rather than the plaintiff's

5

damages, in service of the larger purpose of protecting the general public against unscrupulous business practices." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011) (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2011)). By definition, all Class members purchased the product bearing the alleged misrepresentations. Such "a showing of concrete injury under the UCL and FAL is sufficient to establish Article III standing." *Ries v. Ariz. Bevs. U.S. LLC*, 287 F.R.D. 523, 536 (N.D. Cal. 2012) (citation omitted); *Guido v. L'Oreal USA, Inc.*, 284 F.R.D. 468, 475 (C.D. Cal. 2012) (plaintiffs had standing where they testified that had they known the truth, they would not have purchased the product); *Astiana v. Kashi Co.*, 291 F.R.D. 493, 500-01 (S.D. Cal. 2013) (plaintiff has standing where, absent the alleged misrepresentations, he "would have paid less or purchased other products"); *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013) (finding standing where misrepresentations induced the plaintiff "to buy products he would not otherwise have purchased").

## IV.    STANDARDS FOR CLASS CERTIFICATION

California "has a public policy which encourages the use of the class action device." *Franchise Tax Bd. Ltd. Liab. Corp. Tax Refund* Cases, 25 Cal. App. 5th 369, 387 (2018) (quoting *Richmond v. Dart Indus., Inc.*, 29 Cal. 3d 462, 473 (1981)).

> A plaintiff must first show that the class meets the following four requirements of Rule 23(a): (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

*Just Film, Inc. v. Buono*, 847 F.3d 1108, 1115 (9th Cir. 2017).

> Next, the plaintiff must establish "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

*Just Film*, 847 F.3d at 1115.

Upon such showing, "a plaintiff whose suit meets the specified criteria" is

6

"entitl[ed]" to an order of certification, as the "discretion suggested by Rule 23's 'may' is discretion residing in the plaintiff." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398-400 (2010).

"Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1093 (N.D. Cal. 2018) (quoting *Amgen v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013)) (following *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974)). In deciding a certification motion, "an ultimate adjudication on the merits of plaintiff['s] claims is inappropriate, and any inquiry into the merits must be strictly limited to evaluating plaintiff['s] allegations to determine whether they satisfy Rule 23." *Gonzales v. Simplexgrinnell LP*, 289 F.R.D. 463, 465 (N.D. Cal. 2013) (following *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 n.8 (9th Cir. 2011)). "Neither the possibility that a plaintiff will be unable to prove his allegations, nor the possibility that the later course of the suit might unforeseeably prove the original decision to certify the class wrong, is a basis for declining to certify a class." *Victorino v. FCA US Ltd. Liab Co.*, 326 F.R.D. 282, 298 (S.D. Cal. 2018); *Avilez v. Pinkerton Gov't Servs.*, 286 F.R.D. 450, 455 (C.D. Cal. 2012) (same) (quoting *United Steel Workers v. ConocoPhillips Co.*, 593 F.3d 802, 808-09 (9th Cir. 2010)).

## V.   THE FOUR RULE 23(a) PREREQUISITES ARE SATISFIED

### A.   <u>Numerosity Is Satisfied Because Defendant Sold Hundreds of Thousands of Units in California.</u>

Rule 23(a)(1) requires a class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Where the exact size of the proposed class is unknown, but general knowledge and common sense indicate it is large, the numerosity requirement is satisfied." *Valle v. Glob. Exch. Vacation Club*, 320 F.R.D. 50, 55-56 (C.D. Cal. 2017) (quoting *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 533 (C.D. Cal. 2011)). "[C]ourts have held that classes as small as 40 satisfy the numerosity demand." *Patel v. Trans Union, LLC*, 308 F.R.D. 292, 304 (N.D. Cal. 2015). Here,

7

*Hawkins v. The Kroger Company,* Case No. 3:15-02320-JM-AHG
PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

hundreds of thousands of containers of KBC were sold in California during the class period. *See* Sealed Weston Decl. Exs. 1-2 (sales data).

**B.** **The Truthfulness and Legality of the "0g Trans Fat" Claim, and the Legality of Using PHO, Are Predominating Common Issues.**

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality requires Plaintiff to show her claims "depend upon a common contention . . . capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wortman v. Air New Zealand*, 326 F.R.D. 549, 556 (N.D. Cal. 2018); *Stockwell v. City & County of San Francisco*, 749 F.3d 1109, 1112 (9th Cir. 2014) (same) (quoting *Wal-Mart Stores Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

Commonality is "construed permissively," and "all questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Valle v. Glob. Exch. Vacation Club*, 320 F.R.D. 50, 59-60 (C.D. Cal. 2017); *see also Keilholtz v. Lennox Hearth Prods.*, 268 F.R.D. 330, 337 (N.D. Cal. 2010) (same). "[E]ven a single [common] question will do." *Stockwell*, 749 F.3d at 1111 (quoting *Wal-Mart Stores,* 564 U.S. at 359).

Here, there are three major common questions. First, was the "0g Trans Fat" nutrient content claim deceptive in violation of California consumer fraud law? Second, was the claim an unlawful and unauthorized nutrient content claim in violation of 21 C.F.R. § 101.62 and therefore the UCL as well? Third, was PHO a lawful food additive during the class period?

The answer to any and all of these questions will resolve "in one stroke" an issue that is "central to the validity of each class member's claims." *Wortman v. Air New Zealand*, 326 F.R.D. 549, 556 (N.D. Cal. 2018). *See also Rubio v. Capital One Bank*, 613 F.3d 1195, 1204 (9th Cir. 2010) ("By properly alleging a TILA violation, Rubio has

8

also alleged a UCL violation under the prong of the UCL that prohibits 'unlawful' business acts or practices."); *Astiana*, 291 F.R.D. at 501 (certifying class because there was "a common core of salient facts" as to "whether the use of the term 'Nothing Artificial' to advertise food products that contain the allegedly synthetic ingredients violates the UCL, FAL, CLRA, or Defendant's own warranties").

As for the first question, if Plaintiff establishes that Kroger's labels are likely to deceive, a finding of injury necessarily follows: "California has created what amounts to a conclusive presumption that when a defendant puts out tainted bait and a person sees it and bites, the defendant has caused an injury." *Stearns*, 655 F.3d at 1021 n.13.

Moreover, the "substantive right extended to the public by the UCL is the right to protection from fraud, deceit and unlawful conduct." *Ries*, 287 F.R.D. at 537 (citing *In re Tobacco II Cases*, 46 Cal. 4th 298, 324 (2009)). Any class member who purchased KBC with false or unlawful labeling was denied this right and injured. *See Ries*, 287 F.R.D. at 538 ("Plaintiffs meet the *Dukes* [commonality] standard because the entire proposed class has suffered the same injuries flowing from the alleged misrepresentations."); *accord Kwikset Corp.*, 51 Cal. 4th at 329. "Courts routinely find commonality in false advertising cases that are materially indistinguishable from the matter at bar." *Ries*, 287 F.R.D. at 537 (citing *Chavez v. Blue Sky Natural Bev. Co.*, 268 F.R.D. 365, 377 (N.D. Cal. 2010)). *Chavez*, like this case, involved a single allegedly deceptive and unlawful claim on a single food product, and was certified for the same reasons that apply here. *Chavez*, 268 F.R.D. at 380.

Similarly, Plaintiff's claims under the UCL's "unlawful prong" are amenable to class treatment. "Class treatment does not require that all class members members have been equally affected by the challenged practices—it suffices that the issue of whether or not the practice itself was unlawful is common to all." *Williams v. Superior Court*, 221 Cal. App. 4th 1353, 1370 (2013). *See also Juarez v. Jani-King of Cal., Inc.*, 273 F.R.D. 571, 578 (N.D. Cal. 2011) (commonality requirement met where "classifying the franchisees as independent contractors rather than employees serve[d] as a predicate

9

*Hawkins v. The Kroger Company,* Case No. 3:15-02320-JM-AHG
PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

unlawful act, and that the non-compete provision in the franchise agreements and the allegedly excessive franchise fees also serve[d] as predicate unfair acts").

Whether Kroger created and breached an express warranty is also a "question[] of law and fact, common to all prospective class members." *Cartwright v. Viking Indus.*, 2009 U.S. Dist. LEXIS 83286, at *15-16 (E.D. Cal. Sept. 11, 2009); *Keegan v. Am. Honda Motor Co*., 284 F.R.D. 504, 523 (C.D. Cal. 2012). Likewise, the issues of whether Kroger's "0g Trans Fat" claim violates 21 C.F.R. § 101.62 is a common question whose answer will be common to every class member. *See O'Donovan v. Cashcall, Inc*., 278 F.R.D. 479, 449 (N.D. Cal. 2011) (finding when "UCL claim under the unlawful prong [ ] premised on the same underlying violations, it is also appropriate for class treatment").

## C. Typicality Is Satisfied Because Plaintiff Suffered the Same Injury as Other Putative Class Members.

"The typicality requirement is 'permissive and requires only that the representative's claims are reasonably co-extensive with those of the absent class members; they need not be substantially identical.'" *Nevarez v. Forty Niners Football Co*., *LLC*, 326 F.R.D. 562, 578 (N.D. Cal. 2018) (quoting *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1029 (9th Cir. 1998)). "Measures of typicality include whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Just Film, Inc. v. Buono,* 847 F.3d 1108, 1116 (9th Cir. 2017).

Plaintiff satisfies the typicality standard because her claims are not just "reasonably coextensive," but completely identical to the claims of class members: they all purchased KBC with the same labeling. Both Hawkins and "other class members have been injured by the same course of conduct." *Just Film*, 847 F.3d at 1116. *See also Beck-Ellman v. Kaz USA, Inc.*, 283 F.R.D. 558, 565 (S.D. Cal. 2012) (typicality requirement satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendants'

10

*Hawkins v. The Kroger Company,* Case No. 3:15-02320-JM-AHG
PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

liability"); *Johns v. Bayer Corp.*, 280 F.R.D. 551, 557 (S.D. Cal. 2010) ("typicality is met because [plaintiffs] and the proposed class assert exactly the same claim, arising from the same course of conduct—[Defendant]'s marketing campaign."); *Chester v. TJX Cos.*, 2017 U.S. Dist. LEXIS 201121, at *14 (C.D. Cal. Dec. 5, 2017) (typicality satisfied where plaintiffs' "claims are based on the same facts and same legal and remedial theories as the claims of the rest of the Class"); *Astiana v. Kashi Co.*, 291 F.R.D. 493, 501 (S.D. Cal. 2013) ("Typicality is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendants' liability.").

**D.     Adequacy of Representation Is Satisfied Because Hawkins Has No Conflicts and Class Counsel Is Experienced and Capable.**

"Adequate representation is usually presumed in the absence of contrary evidence." *Benedecit v. Hewlett-Packard Co.*, 314 F.R.D. 457, 471 (N.D. Cal. 2016); *Morgan v. United States Soccer Fed'n*, 2019 U.S. Dist. LEXIS 221602, at *20-21 (C.D. Cal. Nov. 8, 2019) (same) (quoting *Californians for Disability Rights, Inc. v. Cal. DOT*, 249 F.R.D. 334, 349 (N.D. Cal. 2008)).

"The Ninth Circuit set a two-prong test for this requirement: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Astiana v. Kashi Co.*, 291 F.R.D. 493, 503 (S.D. Cal. 2013); *In re Ferrero Litig.*, 278 F.R.D. 552, 559 (S.D. Cal. 2011) (same) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). To defeat adequacy, any supposed conflict of interest "must go to the heart of the litigation, relating to the subject matter of the suit." NEWBERG ON CLASS ACTIONS §18.14 at 40-41 (4th ed. 2002). The supposed conflict must be must be "apparent, imminent, and on an issue at the very heart of the suit" to preclude certification. *Lyon v. U.S. Immigration & Customs Enf't*, 300 F.R.D. 628, 640 (N.D. Cal. 2014) (quoting *Blackie v. Barrack*, 524 F.2d 891, 909 (9th Cir. 1975)). "Mere speculation as to conflicts . . . is insufficient to support denial of initial class

11

*Hawkins v. The Kroger Company,* Case No. 3:15-02320-JM-AHG
PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

certification." *Kamakahi v. Am. Soc't for Reprod. Med.*, 305 F.R.D. 164, 185 (N.D. Cal. 2015) (quoting *Cummings v. Connell*, 316 F.3d 886, 896 (9th Cir. 2003)).

Here, there is no conflict between Hawkins, her counsel, and the Class, who all share the same interest: establishing Kroger's liability. Plaintiff and her counsel have actively shown their commitment to this case. Hawkins regularly speaks with her counsel, searched for and produced documents in response to Kroger's written discovery, and sat for a lengthy deposition that included probing personal questions about her health, job, family, and finances.

Moreover,

> [t]here is no question here that . . . the Weston [Firm has] ample experience handling class actions and complex litigation. It is also clear that [they] have particular familiarity with suits involving issues of mislabeling in the food industry [and] developed a niche expertise in litigation centered on trans fat.

*Chacanaca v. Quaker Oats Co.*, 2011 U.S. Dist. LEXIS 65023, at *8-9 (N.D. Cal. June 14, 2011) (appointing Plaintiff's counsel interim class counsel over competing firms). *See also Hohenberg v. Ferrero*, 2011 U.S. Dist. LEXIS 38471, at *6 (S.D. Cal. March 22, 2011) (The Weston Firm "appears to be well qualified to represent the interest of the purported class and to manage this litigation."); *Gallucci v. Boiron, Inc.*, 2012 U.S. Dist. LEXIS 157039, at *9 (S.D. Cal. Oct. 31, 2012) (finding the Weston Firm "fully and competently prosecuted all causes of action, claims, theories of liability, and remedies reasonably available to the Class Members"). The qualifications of counsel are further documented in their firm resume. *See* Weston Public Decl., Ex. A.

## VI.   THE CLASS SATISFIES RULE 23(b)(3).

Fed. R. Civ. P. 23(b)(3) requires the Court to find that common questions of law or fact predominate over any questions affecting only individual members, and that a class action is superior to other available methods to adjudicate the controversy.

### A.   <u>Common Issues Predominate.</u>

While Rule 23(a) requires only the existence of common questions among members of the proposed class, Rule 23(b)(3) requires a finding that those common

12

questions predominate over individual ones. "The predominance inquiry hinges on the cohesiveness of the class—whether common legal and factual questions appear more significant than individual legal and factual questions." *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 588-89 (C.D. Cal. 2008) (citing *Hanlon*, 150 F.3d at 1022). "Predominance is a test readily met in certain cases alleging consumer" fraud. *In re High-Tech Employee Antitrust Litig.*, 985 F. Supp. 2d 1167, 1185 (N.D. Cal. 2013) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)). *See also Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) (affirming UCL/CLRA class certification in a case, like this, involving a single allegedly deceptive and unlawful claim on a food label).

"The predominance element requires only that questions common to the class predominate over those affecting individual members; it does not require that all questions be identical." *Ortega v. Natural Balance, Inc.*, 300 F.R.D. 422, 428 (C.D. Cal. 2014) (quotation omitted); *Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Group LP*, 247 F.R.D. 156, 176 n.28 (C.D. Cal. 2007).

As described above, the three central questions are (1) whether Kroger's "0g Trans Fat Per Serving" claim is unlawful, (2) whether the claim is misleading, and (3) whether Kroger's mere use of PHO was unlawful, regardless of its labeling.

"Importantly, California consumer protection laws take an objective approach of the reasonable consumer, not the particular consumer." *Johns v. Bayer Corp.*, 280 F.R.D. 551, 557 (S.D. Cal. 2012) (citing *Williams*, 552 F.3d at 938). Here, "there is no reason to look at the circumstances of each individual purchase in this case, because [under the objective standard,] the fact-finder need only determine whether those brochures were capable of misleading a reasonable consumer." *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1089, 1094 (9th Cir. 2010); *see also Johns*, 280 F.R.D. at 560 (certifying UCL, FAL, and CLRA class involving misrepresentations in advertising).

Further, common issues predominate Plaintiff's breach of express warranty claim.

13

1  Where, as here, the same express warranty was made to all class members and the

2  plaintiff alleges the warranty was breached in the same manner, predominance is

3  satisfied. *See*, *e.g.*, *Keegan*, 284 F.R.D. at 535 (predominance satisfied where "plaintiffs

4  allege[d] that all class vehicles ha[d] the same defect.").

5  ### B.   Plaintiff Will Show Kroger's Liability by Common Evidence.

6  "[T]he primary evidence in a false advertising case is the advertising itself."

7  *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1115 (N.D. Cal. 2018); *Williams v.

8  Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (same) (quoting *Brockey v.

9  Moore*, 107 Cal. App. 4th 86, 100 (2003)). When "plaintiffs are exposed to a common

10  advertising campaign, common issues predominate." *Johns v. Bayer Corp.,* 280 F.R.D.

11  551, 558 (S.D. Cal. 2012); *accord In re Ferrero Litig.*, 278 F.R.D. 552, 560 (S.D. Cal.

12  2011) (predominance satisfied and class certified where the defendant "made a material

13  misrepresentation regarding the nutritious benefits of Nutella® that violated the UCL,

14  FAL and the CLRA").

15  Here, every member of the proposed class was exposed to the challenged labels.

16  Whether the labels are deceptive does not depend on each class member's subjective

17  interpretation, but on a single, objective determination of whether a reasonable person

18  could be deceived. *See Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1115 (N.D.

19  Cal. 2018) (certifying food label class); *Davis v. HSBC Bank*, 691 F.3d 1152, 1161-62

20  (9th Cir. 2012). To show the labels are false, Plaintiff will also offer expert testimony, as

21  described *supra*. Further, the Ninth Circuit has already determined that "a consumer

22  reading the label could be misled into believing that the product was free of trans fat."

23  *Hawkins*, 906 F.3d at 771. And false statements about trans fat are also material under

24  the objective reasonable consumer standard, because "falsely advertising that a food

25  product does not contain trans fat is a health hazard." *Hawkins*, 906 F.3d at 772.

26  Plaintiff will offer additional evidence that consuming trans fat is extremely

27  harmful and that consumers seek to avoid such harmful products. *See generally* Expert

28  Report of Dr. Nathan Wong (Weston Sealed Decl., Ex. 3) and Expert Report of Dr.

14

Beatrice Golomb (Weston Public Decl., Ex. G). The jury may then determine whether a reasonable person would find Kroger's "0g Trans Fat" claim is misleading. *See In re Nat'l W. Life Ins. Deferred Annuities Litig.*, 268 F.R.D. 652, 668-69 (S.D. Cal. 2010) (certifying class under UCL unfair prong since "evidence . . . shows class-wide practices by Defendant" which "indicates that this determination is entirely dependent on common proof"); *Lozano v. AT&T Wireless Servs.*, 504 F.3d 718, 737 (9th Cir. 2007) (affirming certification of UCL class because the claims are "based on uniform disclosures made by AWS to all its consumers").

Similarly, Plaintiff will offer common evidence to show Kroger's use of PHO in KBC and "0g Trans Fat" claim on the label of KBC violated 21 C.F.R. §§ 1.21, 101.13(i), and 101.62, 21 U.S.C. § 343(a), and numerous parallel provisions of California's Health and Safety Code.

**C.** **No Individualized Proof of Reliance, Deception, or Injury Is Needed to Establish Liability.**

If Kroger's "0g Trans Fat" claim is "likely to deceive," Kroger is liable under the UCL without individualized proof of reliance, deception, or injury. *In re Tobacco II Cases*, 46 Cal. 4th 298, 327 (2009); *see also Stearns*, 655 F. 3d at 1020-22 (following *Tobacco II* and reversing order denying class certification that held individualized proof of reliance and causation is required for UCL claims); *Guido*, 284 F.R.D. at 482 ("Importantly, relief under any of the UCL's three prongs is available 'without individualized proof of deception, reliance and injury.'") (quoting *Mass. Mut. Life Ins. Co. v. Super. Ct.*, 97 Cal. App. 4th 1282, 1289 (2002) and *Tobacco II*, 46 Cal. 4th at 326-27); *McAdams v. Monier, Inc.*, 182 Cal. App. 4th 174, 189 (2010) (same); *Johnson v. General Mills*, 275 F.R.D. 282, 289 (C.D. Cal. 2011) (same); *Cartwright*, 2009 U.S. Dist. LEXIS 83286, at *37 n.11 ("To state a claim under [the UCL], plaintiffs must demonstrate that members of the public are likely to be deceived. The standard is that of a "reasonable consumer," and proof of actual deception or confusion caused by misleading statements is not required. Therefore, this claim[] is subject to common proof

15

1  by the class." (citations omitted)); *Baghdasarian v. Amazon.com, Inc.*, 258 F.R.D. 383,

2  387 (C.D. Cal. 2009) ("Plaintiff does not need to show affirmative proof that each

3  individual class member relied on Defendant's deceptive conduct.").

4      Similarly, the standard for stating a claim under the FAL is only a showing that

5  "members of the public are likely to be deceived." *Williams v. Gerber Prods. Co.*, 523

6  F.3d 934, 938 (9th Cir. 2008). The standard is that of a "reasonable consumer."

7  *GreenCycle Paint, Inc. v. PaintCare, Inc.*, 250 F. Supp. 3d 438, 452 (N.D. Cal. 2017).

8  "Actual deception or confusion caused by misleading statements is not required." *People*

9  *v. Overstock.com, Inc.*, 12 Cal. App. 5th 1064, 1078-79 (2017). For Plaintiff's CLRA

10  claims, if Kroger made material misrepresentations to the class members, "an inference

11  of reliance arises as to the entire class." *In re First Am. Home Buyers Prot. Corp. Class*

12  *Action Litig.*, 313 F.R.D 578, 605 (S.D. Cal. 2016); *Mass. Mutual Life Ins. Co.*, 97 Cal.

13  App. 4th at 1292-93 (same); *Johns*, 280 F.R.D. at 557-58.

14      "A misrepresentation is judged to be 'material' if 'a reasonable man would attach

15  importance to its existence or nonexistence in determining his choice of action in the

16  transaction in question.'" *Townsend v. Monster Bev. Corp.*, 303 F. Supp. 3d 1010, 1029

17  (C.D. Cal. 2018) (quoting *Kwikset Corp.*, 51 Cal. 4th at 332-33); *Steroid Hormone Prod.*

18  *Cases*, 181 Cal. App. 4th 145, 157 (2010) ("Materiality of the alleged misrepresentation

19  generally is judged by a 'reasonable man' standard."); *Johns*, 280 F.R.D. at 558

20  ("California's consumer protection laws evaluate materiality under a reasonable person

21  standard, not on an individualized basis."); *Guido*, 284 F.R.D. at 475 (class certification

22  granted because plaintiff can prove a "UCL claim on behalf of a class without

23  individualized proof of reliance").

24      Thus, "statements made on the packaging and labels present common proof on the

25  issues of materiality and falsity." *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 488 (N.D.

26  Cal. 2011) (citation omitted). Moreover, the Ninth Circuit has already concluded that

27  "consumer reading [the KBC] label could be misled into believing that the product was

28  free of trans fat." *Hawkins*, 906 F.3d at 771.

16

#### D.     Plaintiff Will Calculate Restitution Using Common Evidence

California's "UCL, CLRA, and false advertising law all provide for restitution." *Shersher v. Superior Court*, 154 Cal. App. 4th 1491, 1495 n.4 (2007). The "standards for awarding restitution are the same in UCL, FAL, and CLRA actions." *Ogden v. Bumble Bee Foods, LLC*, 2014 U.S. Dist. LEXIS 565, at *48 (N.D. Cal. Jan. 2, 2014) (citing *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 694 & n.22 (2006)). "Under the UCL, a trial court has broad equitable power to award restitution." *Nelson v. Pearson Ford Co.*, 186 Cal. App. 4th 983, 1015 (2010) (following *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 180 (2000)). This broad power has the "purpose of restoring to the plaintiff the amount that the defendant wrongfully acquired." *Wiener v. Dannon Co.*, 255 F.R.D. 658, 670-71 (C.D. Cal. 2009) (quoting *Colgan*, 135 Cal. App. 4th at 695)).

As described above, Plaintiff will prove Kroger's liability to the class using common evidence. The restitution award will be calculated using Kroger's own sales data, which Kroger has provided, albeit in a partially incomplete form that is the subject of a pending mention to compel further responses. Weston Sealed Decl., Exs. 1-2 (sales data) and 4 (Bowen Report).

Plaintiff's third expert, Robert Bowen, is Distinguished Professor of Accounting at the University of San Diego, and has taught accounting to business students since 1976. He holds a Ph.D. in Accounting from Stanford University and is widely published on accounting topics. He has agreed to review the financial information Kroger provides to calculate restitution and prejudgment interest, and indeed has already done so using the partial information Kroger has produced. Weston Sealed Decl., Ex. 4 (Bowen Report).

#### E.     Any Individual Issues of Damages Do Not Predominate

The Ninth Circuit has "repeatedly emphasized that uncertain damages calculations should not defeat certification." *Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1182 (9th Cir. 2017), *rev'd in part on other grounds*, 139 S. Ct. 710 (2019). *See also Yokoyama*, 594 F.3d at 1094 ("damages calculations alone cannot defeat certification.").

17

The "amount of damages is invariably an individual question and does not defeat class action treatment." *Sali v. Corona Med. Ctr.*, 889 F.3d 623, 639 (9th Cir. 2018) (quoting *Blackie*, 524 F.2d at 905). The "mere fact that there might be differences in damage calculations is not sufficient to defeat class certification." *Stearns*, 655 F.3d at 1026. The California Supreme Court holds:

> In almost every class action, factual determinations of damages to individual class members must be made. Still we know of no case where this has prevented a court from aiding the class to obtain its just restitution. Indeed, to decertify a class on the issue of damages or restitution may well be effectively to sound the death-knell of the class action device.

*Brinker Rest. Corp. v. Super. Ct.*, 53 Cal. 4th 1004, 1054 (2012) (internal quotation and alterations omitted).

### F.  **The Prerequisite of Superiority is Satisfied.**

Rule 23(b)(3) also requires a finding that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). This superiority requirement is met "'[w]here recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis.'" *Behfarin v. Pruco Life Ins. Co.*, 2019 U.S. Dist. LEXIS 223361, at *29-30 (C.D. Cal. Nov. 26, 2019) (quoting *Wolin v. Jaguar Land Rover North Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010)). "Given the small size of each class member's claim at issue here, class treatment is not merely the superior, but the only manner in which to ensure fair and efficient adjudication of the present action." *Petersen v. Costco Wholesale Co.*, 312 F.R.D. 565, 583 (C.D. Cal. 2016) (quoting *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 486 (C.D. Cal. 2012)); *see also Leyva v. Medline Indus.*, 716 F.3d 510, 515 (9th Cir. 2013) (the district court erred in concluding that class certification was not the superior method of adjudication where it "did not suggest any other means for putative class members to adjudicate their claims" and finding that "none exist[ed] . . . [i]n light of the small size of the putative class members' potential individual monetary recovery").

Where it is not economically feasible to obtain relief within the traditional

18

> framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class action device.

*Chen v. All State Ins. Co.*, 819 F.3d 1136, 1147 (9th Cir. 2016) (quoting *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980)). In summary, the complexity of the issues, the need for expert testimony, and the vigorous defense Kroger has marshalled all show these claims could not possibly be prosecuted by individual consumers.

## VII.  THE CLASS IS ASCERTAINABLE AND MANAGEABLE.

"Although there is no explicit requirement concerning the class definition in [Fed. R. Civ. P.] 23, courts have held that the class must be adequately defined and clearly ascertainable before a class action may proceed." *Alfred v. Pepbridge Farm, Inc.*, 322 F.R.D. 519, 551 (C.D. Cal. 2017). "An identifiable class exists if its members can be ascertained by reference to objective criteria." *In re TFT-LCD Antitrust Litig.*, 267 F.R.D. 291, 299 (N.D. Cal. 2010); *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 237 (N.D. Cal. 2014) (same). Thus, a class is ascertainable where, as here,

> the proposed class definition simply identifies purchasers of Defendant's products that included the allegedly material misrepresentations. Because the alleged misrepresentations appeared on the actual packages of the product[] purchased, there is no concern that the class includes individuals who were not exposed to the misrepresentation.

*Astiana*, 291 F.R.D. at 500; *see also Michael v. Honest Co.*, 2016 U.S. Dist. LEXIS 189116, at *52 (C.D. Cal. Dec. 6, 2016) (same).

## VIII.  KROGER SHOULD BE REQUIRED TO PAY THE COSTS OF CLASS NOTICE.

A district court has discretion to place part or all of the cost and responsibility for class notice on the defendant. *Hunt v. Imperial Merch. Servs., Inc.*, 560 F.3d 1137, 1144 (9th Cir. 2009) (affirming order assigning cost of class notice to the defendant). The CLRA provides a specific statutory authorization for doing so. *See* Cal. Civ. Code § 1781(d) ("If the action is permitted as a class action, the court may direct either party to notify each member of the class of the action."); *see also Civ. Serv. Emps. Ins. Co. v.*

19

*Super. Ct.*, 22 Cal. 3d 362, 365-66 (1978) (allocating class notice costs to the defendant conforms to both substantive and procedural due process).

Here, allocating the cost of class notice to Kroger is appropriate because Hawkins has "a small absolute stake in the class action, and [her] claims are miniscule compared with the cumulative claims of the class, [and] ordering [her] to pay the cost of notice . . . would impose a burden out of proportion to [her] personal stakes in the lawsuit." *Hunt v. Check Recovery Sys.*, 2007 U.S. Dist. LEXIS 58800, at *19 (N.D. Cal. July 25, 2007), *aff'd*, *Hunt v. Imperial Merch. Servs., Inc.*, 560 F.3d 1137 (9th Cir. 2009).

Moreover, in deciding the issue of preemption, the Ninth Circuit, and this Court on remand, have effectively found merit in the claims here. Specifically, the Ninth Circuit found "just as the regulations do not authorize a 'no trans fat' claim, they also do not authorize a 'zero trans fat' claim." *Hawkins*, 906 F.3d at 771. It further found "the FDA regulations do not authorize the contested statement." *Id.* at 772.

## IX.    CONCLUSION

For the foregoing reasons, this motion should, respectfully, be granted.

DATED: January 21, 2020                Respectfully Submitted,

                                       /s/ Gregory S. Weston

                                       **THE WESTON FIRM**
                                       GREGORY S. WESTON
                                       1405 Morena Blvd., Suite 201
                                       San Diego, CA 92110
                                       Telephone:  (619) 798-2006
                                       Facsimile:   (619) 343-2789

                                       **Counsel for Plaintiff**

20

*Hawkins v. The Kroger Company,* Case No. 3:15-02320-JM-AHG
PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION