DAVIS WRIGHT TREMAINE LLP
Jacob M. Harper (SBN 259463)
  *jharper@dwt.com*
Nicole S. Phillis (SBN 291266)
  *nicolephillis@dwt.com*
Heather F. Canner (SBN 292837)
  *heathercanner@dwt.com*
865 South Figueroa Street, Suite 2400
Los Angeles, California 90017-2566
Telephone:  (213) 633-6800
Facsimile:  (213) 633-6899

Attorneys for Defendant
THE KROGER COMPANY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAVONDA HAWKINS, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>THE KROGER COMPANY,<br><br>Defendant. | Case No. 15CV2320 JM AHG<br>Assigned to the Hon. Jeffrey T. Miller<br><br>**OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>**PUBLIC REDACTED VERSION**<br><br>Date:        March 2, 2020<br>Time:        10:00 a.m.<br>Courtroom:  5D<br><br>***[Declarations in support and Exhibits filed concurrently]***<br><br>Action Filed:  October 15, 2015 |

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT. .............................. 1

II.   RELEVANT FACTUAL BACKGROUND .................................... 4

    A.   Ms. Hawkins Uses Kroger Breadcrumbs From 2000 to 2015. .............. 4

    B.   Ms. Hawkins's Purchase and Use Never Deviated. .............................. 5

        1.   Ms. Hawkins's Doctor Provides "Red Flags" in 2005. .............. 5

        2.   "0g Trans Fat" First Appears in 2008. ........................... 7

        3.   Ms. Hawkins Gets Warnings From Counsel 2011–2013. .......... 8

        4.   Ms. Hawkins Sues in Other Mislabeling Actions. ...................... 8

        5.   Ms. Hawkins Stops Using Kroger Breadcrumbs in 2015. ............. 8

    C.   Ms. Hawkins Files This Action in 2015. .................................... 9

        1.   The Parties Take Extensive Class and Merits Discovery. .......... 9

        2.   Ms. Hawkins Sits for Deposition and Admissions. ................... 9

    D.   Ms. Hawkins Files a Motion for Class Certification. ........................... 10

III.  THE COURT LACKS JURISDICTION TO CERTIFY A CLASS. ............. 10

    A.   The Court Must Review Jurisdiction. .................................... 10

    B.   This CAFA Case Requires a $5 Million Minimum. ......................... 11

    C.   Ms. Hawkins Now Claims a Case Value of ███████ ..................... 11

IV.   CLASS CERTIFICATION MUST BE DENIED UNDER RULE 23 ........... 11

    A.   Ms. Hawkins's Motion Cannot Support "Rigorous Analysis." ........... 11

    B.   Ms. Hawkins Fails to Satisfy Rule 23(a) Typicality. .......................... 13

        1.   She Is Uniquely Susceptible to Causation Defenses. ................. 13

        2.   She Is Uniquely Susceptible to Limitations Defenses. .............. 16

    C.   Ms. Hawkins Fails to Meet Rule 23(a) Adequacy. ........................... 17

        1.   Numerous Unique Defenses Precludes Adequacy. ................. 18

        2.   She Lacks Alleged Injuries of Other Class Members. ............... 18

        3.   She Abdicated Supervision Over the Case. ............................. 19

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

D.   Ms. Hawkins Fails Rule 23(b)(3) Predominance & Superiority..........19

1.   Individual Restitution Values Preclude Predominance. ............19

2.   Individual Limitations Issues Preclude Predominance.............22

3.   Individual Materiality Issues Preclude Predominance.............23

E.   The Class Is Not Ascertainable and Thus Unmanageable. .................24

F.   Notice Issues Preclude Certification. ....................................................24

V.   THE COURT SHOULD STRIKE MS. HAWKINS'S "EXPERTS." ...........24

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 5-Hour Energy Mktg. & Sales Practices Litig.*,
  2017 WL 2559615 (C.D. Cal. June 7, 2017) ........................................... 19, 20, 21

*In re Actimmune Mktg. Litig.*,
  2010 WL 3463491 (N.D. Cal. Sept. 1, 2010) ..................................................... 23

*Alaska v. Suburban Propane Gas Corp.*,
  123 F.3d 1317 (9th Cir. 1997) ........................................................................... 13

*Algarin v. Maybelline, LLC*,
  300 F.R.D. 444 (S.D. Cal. 2014) ....................................................................... 21

*Am. Ex. Co. v. Italian Colors Rest.*,
  133 S. Ct. 2304 (2013) ....................................................................................... 12

*Benedict v. Hewlett-Packard Co.*,
  314 F.R.D. 457 (N.D. Cal. 2016) ....................................................................... 13

*Blackwell v. SkyWest, Inc.*,
  245 F.R.D. 453 (S.D. Cal. 2007) ....................................................................... 17

*Block v. Major League Baseball*,
  65 Cal.App.4th 538 (1998) ................................................................................. 23

*Caldera v. J.M. Smucker Co.*,
  2014 WL 1477400 (C.D. Cal. Apr. 15, 2014) ............................................... 20, 21

*Chong v. STL Int'l, Inc.*,
  2016 WL 4253959 (D. Or. Aug. 10, 2016) ......................................................... 25

*Chow v. Neutrogena Corp.*,
  2013 WL 5629777 (C.D. Cal. Jan. 22, 2013) ..................................................... 14

*Clark v. Hershey Co.*,
  2019 WL 6050763 (N.D. Cal. Nov. 15, 2019) ............................................... 14, 15

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013) ....................................................................................*passim*

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993) ................................................................................ 25

*Dickerson v. NWAN Inc.*,
   2018 WL 1621252 (D. Ariz. Apr. 4, 2018) ............................................ 11

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ................................................................................ 24

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ....................................................... 2, 13, 25

*In re Facebook, Inc.*,
   282 F.R.D. 446 (N.D. Cal. 2012), *aff'd* 588 F. App'x 733 (9th Cir.
   2014) ....................................................................................................... 17

*Fox v. Ethicon Endo-Surgery, Inc.*,
   35 Cal. 4th 797 (2005) ........................................................................... 17

*Gen. Elec. Co. v. Joiner*,
   522 U.S. 136 (1997) ................................................................................ 25

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982) ................................................................................ 13

*Gonzalez v. P&G Co.*,
   247 F.R.D. 616 (S.D. Cal. 2007) ........................................................... 13

*Harshbarger v. Philip Morris, Inc.*,
   2003 WL 23342396 (N. D. Cal. Apr. 1, 2003) ...................................... 16

*Hawkins v. The Kroger Co.*,
   906 F.3d 763 (9th Cir. 2018) ................................................................... 9

*Hilsley v. Ocean Spray Cranberries, Inc.*,
   2019 WL 718807 (S.D. Cal. Feb. 5, 2019) ........................................... 24

*Jolly v. Eli Lilly & Co.*,
   44 Cal.3d 1103 (1988) ........................................................................... 16

*Jones v. ConAgra Foods, Inc.*,
   2014 WL 2702726 (N.D. Cal. June 13, 2014) ........................... 12, 20, 23

*Kachi v. Natrol, Inc.*,
   2014 WL 2925057 (S.D. Cal. June 19, 2014) .................................. 2, 10

iv

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Khasin v. Hershey Co.*,
   2014 WL 1779805 (N.D. Cal. May 5, 2014)......................................................14

*King v. California*,
   784 F.2d 910 (9th Cir.1986) ............................................................................22

*Konik v. Time Warner Cable*,
   2010 WL 8471923 (C.D. Cal. Nov. 24, 2010)...................................................13

*Kwikset Corp. v. Super. Ct.*,
   51 Cal. 4th 310 (2011) ....................................................................................14

*Lambert v. Neutraceutical Corp.*,
   870 F.3d 1170 (9th Cir. 2017), *rev'd*, 139 S. Ct. 710 (2019) .......................21, 22

*Lejbman v. Transnat'l Foods, Inc.*,
   2018 WL 2215420 (S.D. Cal. May 15, 2018)....................................................11

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*,
   429 U.S. 274 (1977)........................................................................................10

*NBCUniversal Media, LLC v. Super. Court*,
   225 Cal. App. 4th 1222 (2014) ........................................................................16

*Petkevicius v. NBTY, Inc.*,
   2017 WL 1113295 (S.D. Cal. Mar. 24, 2017) ...............................................10, 11

*Pierce-Nunes v. Toshiba Am. Info. Sys.*,
   2016 WL 5920345 (C.D. Cal. June 23, 2016) ...................................................14

*In re POM Wonderful LLC*,
   2014 WL 1225184 (C.D. Cal. Mar. 25, 2014).................................................20, 21

*Quezada v. Loan Ctr. Of Cal., Inc.*,
   2009 WL 5113506 (E.D. Cal. Dec. 18, 2009) ............................................14, 22, 23

*Regions Bank of La. v. Rivet*,
   224 F.3d 483 (5th Cir. 2000) ...........................................................................21

*Ries v. Arizona Beverages USA LLC*,
   287 F.R.D. 523 (N.D. Cal. 2012)......................................................................16

*Robinson v. OnStar, LLC*,
   2020 WL 364221 (S.D. Cal. Jan. 22, 2020)...................................................21, 22

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Rolex Empl's Ret. Trust v. Mentor Graphics Corp.*,
   136 F.R.D. 658 (D. Or. 1991) ............................................................. 19

*Sali v. Corona Reg. Med. Ctr.*,
   90 F.3d 996 (9th Cir. 2018) ............................................................... 22

*Sanchez v. Wal Mart Stores, Inc.*,
   2009 WL 1514435 (E.D. Cal. May 28, 2009) .................................... 18

*Sateriale v. R.J. Reynolds Tobacco Co.*,
   697 F.3d 777 (9th Cir. 2012) ....................................................... 14, 16

*Silber v. Mabon*,
   18 F.3d 1449 (9th Cir. 1994) ............................................................. 24

*Soliman v. Philip Morris, Inc.*,
   311 F.3d 966 (9th Cir. 2002) ............................................................. 16

*Sosna v. Iowa*,
   419 U.S. 393 (1978) ........................................................................... 13

*Stearns v. Ticketmaster Corp.*,
   655 F.3d 1013 (9th Cir. 2011) ........................................................... 22

*Townsend v. Monster Bev. Corp.*,
   303 F.Supp.3d 1010 (C.D. Cal. 2018) ................................................ 23

*Turcios v. Carma Labs., Inc.*,
   296 F.R.D. 638 (C.D. Cal. 2014) ....................................................... 18

*In re Vioxx Class Cases*,
   180 Cal. App. 4th 116 (2010) ............................................................ 23

*Vizzi v. Mitsubishi*,
   2010 WL 11515266 (C.D. Cal. Feb. 22, 2010) .................................. 17

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ....................................................................... 1, 12

*Weisberg v. Takeda Pharm. U.S.A., Inc.*,
   2018 WL 4043171 (C.D. Cal. Aug. 21, 2018) ........................ 13, 14, 18

*Willing v. Alexy*,
   155 F.R.D. 654 (N.D. Cal. 1994) ....................................................... 19

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Wilson v. Frito-Lay N. Am., Inc.*,
    260 F. Supp. 3d 1202 (N.D. Cal. 2017) ................................................................ 14

*Yokoyama v. Midland Nat'l Life Ins.*,
    594 F.3d 1087 (9th Cir. 2010) ............................................................................. 22

*Zakaria v. Gerber Prods. Co.*,
    755 F. App'x 623 (9th Cir. 2018) ....................................................................... 22

**Statutes**

28 U.S.C. § 1332(d)(2) (2020) .................................................................... 1, 9, 10, 11

California Civil Code § 1783 ..............................................................................*passim*

California Code of Civil Procedure § 338(a) .....................................................*passim*

California Commercial Code § 2725 ....................................................................... 16

California Professions & Business Code § 17208 ...............................................*passim*

**Rules**

Federal Rule of Evidence 702 .................................................................................. 25

Federal Rules of Civil Procedure
    12(h)(3) ............................................................................................................ 10
    23 ...............................................................................................................*passim*

**Other Authorities**

Moore's Fed. Prac. § 23.25[2][c][ii] ........................................................................ 19

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT.

Plaintiff Shavonda Hawkins contends she and a putative class of plaintiffs were induced by defendant The Kroger Company into purchasing two varieties of Kroger private-label breadcrumbs, by a label that stated "0g trans fat" on the front panel, despite the nutrition fact disclosure listing Partially Hydrogenated Oil as an ingredient (and, therefore, containing trace amounts of trans fat).  Although her claims have morphed and narrowed throughout the litigation, Ms. Hawkins now seeks certification of a class of all individuals in California who purchased Kroger breadcrumb products with Partially Hydrogenated Oil from 2010 through 2015.

 "Certification is proper only if the trial court is satisfied, after a rigorous analysis," that the prerequisites of Rule 23(a) and 23(b) have been satisfied.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011).  Such a "rigorous analysis" of Ms. Hawkins's claims, based on her own testimony and "expert" evidence, will demonstrate Ms. Hawkins cannot certify the class she proposes.  Not only is she not an appropriate class representative (and this lawsuit not a valid class action), but this action is not even fit for a federal class action in the first place.

***No Jurisdiction to Certify Class***.  First, through her newly filed Motion and "expert" reports, she confirmed the Court cannot certify a federal class because it no longer has jurisdiction over this claim[1].  Ms. Hawkins's case derives from purely California claims among minimally diverse parties; thus, federal jurisdiction relies entirely on the Class Action Fairness Act (CAFA, 28 U.S.C. § 1332(d)(2) (2020)) and its $5 million jurisdictional minimum.  Although Ms. Hawkins originally pleaded this action as a nationwide class for an injunction and more than $5 million (Compl. ¶ 1), the scope has substantially narrowed:  She has since abandoned her claims for injunctive relief, and her expert now makes a "soaking wet" estimate of

---

[1] If the Court does not dismiss for lack of jurisdiction, upon the close of discovery, Kroger will move for summary judgment.

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

no more than ██████ (Weston Decl. Ex. 4, Bowen Decl. ¶¶ 6–7).  Because her certification evidence shows she cannot meet the jurisdictional minimum, this case becomes one of several this Court has dismissed at the class certification stage. *E.g.*, *Kachi v. Natrol, Inc.*, 2014 WL 2925057, at *6 (S.D. Cal. June 19, 2014).

**<u>Failure to Meet Rule 23</u>.**  She also fails to meet her burdens under Rule 23.

**A. Lack of Typicality**.  Ms. Hawkins is not even a member of her own class, nor are her claims or defenses typical of the class.  She is uniquely susceptible to numerous defenses that dominate this litigation, any one of which destroys typicality.  *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (no certification if named plaintiff susceptible to unique defenses).  For example:

*1. Unique Reliance/Causation Issues.*  Lack of reliance and causation is a defense to each of Ms. Hawkins's causes of action under UCL, FAL, CLRA, or warranty law.  To establish standing, Ms. Hawkins contends she purchased Kroger breadcrumbs six times per year from 2000 through 2015, while alleging Kroger induced her to make at least some of those purchases.  But in deposition, Ms. Hawkins demonstrated in detail and unequivocally that she made those purchases religiously and repeatedly *regardless* of any knowledge or action that would have establish Kroger caused her purchases.  ***She never deviated from her six-per-year purchase habits during this entire 15-year period despite***:

- (1) admitting she received annual "red flag" warnings from her physician—beginning in 2005—to review product labels and watch for "partially hydrogenated oil" and trans fats;

- (2) the front label claim "0g Trans Fat" did not appear until 2008, yet her buying habits remained exactly the same after the label appeared as before (the "0g Trans Fat" label did not actually matter);

- (3) between 2011 and 2013, she was receiving additional warnings from her counsel to review ingredient declarations for "partially hydrogenated oil," yet continued her six-per-year purchases uninterrupted (further showing the ingredients and label did not matter);

- (4) as early as 2012, Ms. Hawkins was serving as a professional plaintiff

OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

for her current counsel, The Weston Firm, in other food mislabeling matters, demonstrating special knowledge of the need to review product labels (yet, she continued purchasing Kroger breadcrumbs clearly labeled as containing "partially hydrogenated oil").

### 2. Unique Limitations, Laches, and Other Waiting Defenses.

All Ms. Hawkins's claims have, at most, a four-year limitations period. Given her admissions that she received "red flag" warnings from her regular physician in 2005 about the alleged dangers of partially hydrogenated oils, she was on notice no later than at that point regarding her claims. The claims having accrued in 2005, Ms. Hawkins should have brought these claims no later than *2009*—certainly a unique problem for Ms. Hawkins that excludes her from the class.

### B. Lack of Adequacy.

Ms. Hawkins also suffers from a singular lack of adequacy to serve as a class representative. While the class purportedly suffers from various ailments such as heart problems, dementia, cancer— ███████ ████████████████████. While the class also allegedly finds no redeeming value to the breadcrumbs real economic injury, Ms. Hawkins repeatedly praised her need for Kroger breadcrumbs because of the taste in her family-favorite meatloaf—a fact that also dooms her warranty-specific claims. Most problematic, she admits she abdicated responsibility to her counsel having failed to meet with counsel no more than "two or three times" in five years, knowing of just two filings (despite more than 80 having been filed), and admitting she lets counsel make key decisions for her and the class, including at settlements, 180 days out of the year. Ms. Hawkins won't even appear for court-ordered settlement conferences, instead deferring to counsel (Dkt. 50; Harper Decl. ¶ 8); how can she represent the class?

### C. Lack of Predominance/Superiority.

Ms. Hawkins also fails to meet her burden to demonstrate a predominance of common, rather than individual, issues. *First*, because she cannot escape causation, limitations, and injury issues, she could not possibly show that a class suffers these on a class-wide basis. *Second*, she also cannot demonstrate class-wide restitutionary damages: her entire damages

3

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

model rests on each class member seeking and obtaining 100% restitution supposedly based on 100% dissatisfaction with Kroger breadcrumbs, but even Ms. Hawkins herself testified that the breadcrumbs held substantial value from its taste, convenience, and price.  For these and other reasons, the Motion should be denied.

## II.    RELEVANT FACTUAL BACKGROUND

Despite bearing the evidentiary burden, Ms. Hawkins fails even to include her own declaration to satisfy Rule 23, instead relying on declarations of her counsel and "experts."  Kroger deposed Ms. Hawkins on January 3, 2020, and supplements the motion's evidentiary gaps with relevant portions of that testimony.

### A.    Ms. Hawkins Uses Kroger Breadcrumbs From 2000 to 2015.

Ms. Hawkins bought Kroger breadcrumbs consistently 6 times per year every year between 2000 and 2015.  Compl. ¶¶ 71, 72; Harper Decl., **Ex. 1**[2] (Hawkins Depo.) at 73:5–18, 74:3–5.  Ms. Hawkins described Kroger breadcrumbs as "a regular staple on my grocery list" during this entire period—a crucial ingredient for meatloaf, a family favorite that she made "at least once a week."  Ex. 1 at 101:4-6; *id.* at 75:10–21 ("Q: do you have any specific recollection about why you remember purchasing them 15 years ago?  A: [] I had several children to feed, and meatloaf was one of the things that I prepared because it feeds a lot of people . . . and I needed bread crumbs. So it was a regular staple on my grocery list.").

Ms. Hawkins specifically preferred Kroger breadcrumbs because her family preferred the unique way they worked into her meatloaf recipe (Ex. 1 at 101:16-23 ["I like the seasoning.  I like the way that they, you know, work in the meatloaf that I was making" and "I don't want anybody, like, 'Oh, this tastes different'"]); they were convenient (*id.* at 75:10-76:4 ["I lived near a Ralphs grocery store, which was then walking distance. And so it was very easily accessible"]); and competitively priced (*id.* at 77:10–78:3 ["the Kroger brand is cheaper than, like, the Progresso

---

[2] "Ex. 1" refers to the deposition transcript of Ms. Hawkins.

OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

brand. And so that's how that came about"]).  During that entire period, she never returned a single carton of Kroger breadcrumbs for a refund (*id.* at 101:6–6) and confirmed she "was satisfied with the bread crumbs" (*id.* at 101:14).

### B. Ms. Hawkins's Purchase and Use Never Deviated.

Ms. Hawkins confirmed that she purchased Kroger breadcrumbs out of habit, not because of labeling, advertising, or ingredient changes.  Indeed, for the entire 15-year period, Ms. Hawkins testified repeatedly that she made no change in her purchasing habits, including when asked point-blank:  "Q: ***For both the Italian bread crumbs and the Traditional Bread Crumbs, your buying habits stayed the same, 2000 all the way up to 2015, correct***?  A: ***Pretty much, yes***.  Q: [*Y*]*ou didn't buy more one year or less one year?*  A:  ***No.***"  Ex. 1 at 99:19-100:2 (emphasis added); *accord id.* 77:7-9 ("Q: Did you ever buy more or less during that 15-year period or was it about the same every time? A: It was about the same."); *see also id.* at 76:17-21 (confirming Ms. Hawkins "purchased the bread crumbs about six times annually" from 2000 through 2015; Compl. ¶¶ 71-72.

### 1. Ms. Hawkins's Doctor Provides "Red Flags" in 2005.

Throughout her deposition, Ms. Hawkins then repeatedly confirmed her buying habits did not change despite information about partially hydrogenated oils, labeling changes, and even admonishments from her lawyers.  Ms. Hawkins thus revealed numerous examples demonstrating she did not read or rely on Kroger's labels or actions in purchasing and using Kroger breadcrumbs.

First, she ignored advice to review product labels.  Ms. Hawkins was first made aware of possible issues regarding partially hydrogenated oils starting in 2005, when Ms. Hawkins noted "***red flag***[*s*]" about partially hydrogenated oils and trans fat from television commercials and information warning about overuse of trans fats. Ex. 1 at 45:2–51:3, 93:6–94:24.  As Ms. Hawkins acknowledges, she was specifically informed about the importance of reading ingredient labels by her physician, whom she was required to visit annually, starting in ***2005***:

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

[Counsel]:  Were the TV commercials the first warning or the first information you saw regarding the dangers of trans fat?

[Ms. Hawkins]:  Well, *I would say the first red flag was  probably my own doctor just talking about it, like—as far as, like, dieting and stuff like that, "Stay away from this" and stuff like that.*  But then more and more the commercials started to come on and were basically scaring everybody.  [. . .]

[Question]:  So just to be clear, it would have *been prior to 2013* that your doctor told you about the dangers of trans fat and the types of packaged foods to avoid, correct?

[Ms. Hawkins]:  *Yes*.

[Counsel]:  *Do you recall approximately how far prior to 2013 that would have been?*

[Ms. Hawkins]:  I'd say maybe *2005*, '6, '7, '8, '9.

Ex. 1 at 45:23–46:7, 49:21–50:3 (emphasis added). [3]  She explained, moreover, that her doctor did not advise simply of "trans fat" in general, but "*partially hydrogenated oil*" in particular was an ingredient her physician advised her to search for on product labels:

[Counsel]:  And partially hydrogenated oil is – that's the ingredient that your doctor told you contained trans fat?

[Ms. Hawkins]: That trans fat can come from—come from that, yes. *So there is no way possible that—if  it contains the PHO, there is no way possible that, if it contains that, that it will have 0 trans  fat*.

Ex. 1 at 94:7–14 (emphasis added); *id.* at 94:15-24 (confirming the information about watching labels for partially hydrogenated oil was from "different conversations over the years" beginning in 2005).

During these visits from 2005 on, she was advised "*to look at the nutritional-fact labeling and ingredients*" for partially hydrogenated oil.  Ex. 1 at 50:23–51:3 ("Yeah, to [] try to pay attention as much as I could.").  Despite these

---

[3] As a union bus driver, Ms. Hawkins was required to pay particular attention to her physician's warnings and is required to have annual physician reviews, including throughout the 2000 through 2015 time period. Ex. 1 at 19:2–6, 23:11–18.

OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

warnings, she admitted she ***did not look at the ingredients***, including the "partially hydrogenated oil" of which her physician and television commercials made her specifically aware. *See, e.g.*, *id.* at 97:19-21 ["Q: You mentioned earlier that you didn't always read the ingredients; is that right? A: Yes."]; *id.* at 97:24–98:1 ["I may not have had time to sit and read every single label"]; *id.* at 98:7–8 ["I didn't always have time to fully read the ingredient list."].

### 2.    "0g Trans Fat" First Appears in 2008.

Second, Ms. Hawkins's timeline of purchases makes clear she did not actually rely on the "0g Trans Fat" statement on the product front—because she did not change her buying habits when that label first appeared in 2008.

Although Ms. Hawkins makes conclusory claims that the front label statement "0g Trans Fat" induced her to purchase breadcrumbs (*e.g.*, Compl. ¶ 76; Mot. at 5; *see also* Ex. 1 at 72:23–73:7), ***the undisputed evidence shows, the statement "0g Trans Fat" did not appear on the front label until 2008, as the concurrently filed declaration of Kroger's Package Design Team Manager, Kim Bowers, demonstrates***.  Ms. Bowers authenticates and describes the first time Traditional/Plain and Italian/Seasoned Kroger breadcrumbs labels contained the front label statement "0g Trans Fat":  November 2008—some eight years after Ms. Hawkins began purchasing them regularly.  Bowers Decl. ¶ 8 ["the statement '0g Trans Fat' did not appear on the front of the label for Kroger Plain Bread Crumbs in store shelves until November 2008"] & Ex. A [Plain/Traditional Bread Crumbs label, dated 2005, showing no "0g Trans Fat" claim on front][4]; *id.* ¶ 10 ["the statement '0g Trans Fat' did not appear on the front of the label for Kroger Seasoned Bread Crumbs on store shelves until November 2008"] & Ex. B [Seasoned/Italian Bread Crumbs label, dated 2005, showing no "0g Trans Fat" claim on front].  This is fatal to reliance claims for the following reasons:

---

[4] "At some point after 2010, Kroger Plain Bread Crumbs were renamed Kroger Traditional Bread Crumbs."  Bowers Decl. ¶ 8.

OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

- For the period before 2008, Ms. Hawkins could not have relied on the statement "0 Trans Fat" on the front label because *it simply did not exist*.

- For the period after 2008, Ms. Hawkins demonstrably *did not rely* on the label because her buying habits admittedly remained precisely the same as before 2008.  Ex. 1 at 77:7-9, 99:19-100:2.

### 3.      Ms. Hawkins Gets Warnings From Counsel 2011–2013.

Even without the label change, Ms. Hawkins's continued habits demonstrate the labels and use of partially hydrogenated oil simply did not matter to her.

Despite the warnings from her physician, the ads on television, and the thousands of pages of articles regarding partially hydrogenated oil she produced, Ms. Hawkins admits she did not bother to "look at the ingredient list" until sometime after "I had spoke [*sic*] to Mr. Weston," meaning around 2011 or 2012—at least six years after her doctor first issued "red flags" in 2005.  Ex. 1 at 93:10-94:3; *see also id.* at 40:16-22 [noting Ms. Hawkins first met counsel "in 2011 or '12, somewhere in there"].  Yet, even after her *counsel's* warnings, she continued purchasing the products with the exact same six-time-per-year frequency as she had done for a decade before.  *Id.* at 77:7-9, 99:19-100:2.

### 4.      Ms. Hawkins Sues in Other Mislabeling Actions.

During this period, Ms. Hawkins also revealed she was a plaintiff in at least three other mislabeling lawsuits, each times also represented by The Weston Firm.[5] First filed in 2012, these cases concerned ingredient- and labeling-related claims similar to those here.  *See* Harper Decl., Exs. 3–5 (complaints).  They demonstrated a particular and specialized concern for product ingredients, but Ms. Hawkins continued to purchase the Kroger breadcrumbs without regard to the ingredients

### 5.      Ms. Hawkins Stops Using Kroger Breadcrumbs in 2015.

Three months before filing this lawsuit, Ms. Hawkins abruptly stops

---

[5] *See Hawkins v. Gerber Prods Co.*, Case No. 12-cv-465-MMA (filed Feb. 23, 2012); *Hawkins v. AdvancePierre Foods, Inc.*, Case No. Case No. 15-cv-2309-JAH (filed Oct. 14, 2015); and *Hawkins v. Kellogg Co.*, Case No. 16-cv-0147-JAH.  *See* Ex. 1 at 10:22-11:14 [discussing *Gerber* case]; *id.* at 123:3–124:18.

OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

purchasing Kroger breadcrumbs in 2015.  Compl. ¶¶ 71, 74; Ex. 1 at 100:3–12.

### C. Ms. Hawkins Files This Action in 2015.

#### 1. The Parties Take Extensive Class and Merits Discovery.

Ms. Hawkins filed this lawsuit on October 15, 2015, invoking federal jurisdiction under CAFA and seeking nationwide class relief.  Compl. ¶¶ 1, 114. In November 2015, Kroger moved to dismiss, citing a host of defects in Ms. Hawkins's complaint warranting dismissal, including that her pleadings demonstrated an apparent lack of reliance.  Ms. Hawkins appealed the Court's order dismissing the action, and on October 4, 2018, the Ninth Circuit reversed and remanded.  906 F.3d 763 (9th Cir. 2018).  The Court applied new Ninth Circuit authority regarding pleading standards to find Ms. Hawkins's reliance allegations satisfied pleading standards; however, the court repeatedly noted reliance was a fact question subject to discovery.  *Id.* at 768–69, 772.  On remand, this Court issued an order declining to dismiss on the pleadings, noting that whether the fact that partially hydrogenated oil listed in the ingredient list undermines Ms. Hawkins's claims was a "close call" and thus "defer[red] ruling on [them] until the presentation of an evidentiary motion."  Dkt. 40 at 10.

#### 2. Ms. Hawkins Sits for Deposition and Admissions.

Following remand, the parties engage in discovery and Ms. Hawkins sits for deposition on January 3, 2020, testifying as described.  Harper Decl. ¶ 2, Ex. 1.

In addition to the above, she reveals that, in the over four years of litigation, she had met with counsel "maybe two, three times" (Ex. 1 at 65:6-12), and has not communicated with counsel in "any other way" (*id.* at 65:6-20).  She has reviewed court filings "like, two or three times," despite more than 15 filings as of the date of deposition.  *Id.* at 70:2-8. Ms. Hawkins also testified she does not understand her fiduciary duties to other class members (*id.* at 57:1–25), but has nonetheless "invested in [counsel] full authority to negotiate and settle the action on her behalf" (*id.* at 66:25-67:7 & Dkt. 50 (ex parte application)) and continues to "retain[] full

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

authority" to represent her and the class (Ex. 1 at 67:8-23).  In particular, ***Ms. Hawkins confirmed that her counsel, Mr. Weston, has unobstructed authority to act on behalf of herself and the class any work day***.  *Id.* at 68:10–69:19.  As her work day tracks the Chula Vista School District calendar, she has delegated authority to Mr. Weston 180 of 365 days of the year.  Harper Decl., Ex. 6 (Chula Vista School Calendar).  She failed to appear for one court-ordered class settlement conference (Dkt. 50) and indicates she will be absent again (Harper Decl. ¶ 8).

### D.  Ms. Hawkins Files a Motion for Class Certification.

Ms. Hawkins filed her Motion for Class Certification on January 21, 2020.  Dkt. 89.  Ms. Hawkins substantially narrowed the scope of relief sought, cutting the proposed class to California-only, and submitting an expert report stating that her maximum value of the claim stood at no more than ███████.  Dkt. 94, Ex. 4.

## III.   THE COURT LACKS JURISDICTION TO CERTIFY A CLASS.

At the threshold, the Motion demonstrates claimed damages are nowhere near CAFA's $5,000,000 threshold, eliminating jurisdiction.  28 U.S.C. § 1332(d)(2).

### A.   The Court Must Review Jurisdiction.

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).  Indeed, "federal courts are under a continuing duty to confirm their jurisdictional power and are 'obligated to inquire *sua sponte* whenever a doubt arises as to its existence[.]"  *Kachi v. Natrol, Inc.*, 2014 WL 2925057, at *6 (S.D. Cal. June 19, 2014) (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 278 (1977)).  Courts therefore routinely dismiss putative class actions when it becomes evident the case will not meet the CAFA amount-in-controversy requirement.  *E.g.*, *Kachi,* 2014 WL 2925057, at *6–7 (dismissing case *sua sponte* in ruling on motion to certify class where CAFA minimum damages not met); *Petkevicius v. NBTY, Inc.*, 2017 WL 1113295, at *3-12 (S.D. Cal. Mar. 24, 2017) (dismissing case after motion to certify revealed damages did not exceed $5 million).  That is the case here.

OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**B.      This CAFA Case Requires a $5 Million Minimum.**

Under CAFA, the aggregate amount in controversy must exceed $5,000,000, not including costs and attorneys' fees.  28 U.S.C. § 1332(d)(2).[6]  As the proponent of jurisdiction, Ms. Hawkins "must establish CAFA's requirements by a preponderance of the evidence."  *Dickerson v. NWAN Inc.*, 2018 WL 1621252, at *2 (D. Ariz. Apr. 4, 2018) (allegations alone insufficient).  She cannot.

**C.      Ms. Hawkins Now Claims a Case Value of ████████.**

With her motion, Ms. Hawkins submitted a purported expert declaration calculating her alleged class-wide restitutionary damages at a mere ████████, itself an inflated number.[7]  Mot. at 17; Dkt. 94, Ex. 4 (Bowen Decl.).  Although the calculation is improper here, as discussed *infra*, even if it were correct, she is far from meeting the $5,000,000 minimum.  Her calculated interest is not included for CAFA (but even if it were, she *still* falls short).  *See* 28 U.S.C. § 1332(d)(2) (excluding interest).  When evaluating CLRA claims under CAFA, courts have used a theoretical 25% attorneys' fee.  *E.g.*, *Petkevicius*, 2017 WL 1113295, at *11 (explaining CAFA calculation includes only statutory or contractual attorneys' fees, and using 25% for purposes of evaluating CAFA jurisdiction).  Even assuming a putative class could obtain such a fee here (it could not), the total award would be ████████████████—barely half the jurisdictional minimum.  Hawkins cannot satisfy this jurisdictional requirement.

**IV.      CLASS CERTIFICATION MUST BE DENIED UNDER RULE 23**

**A.      Ms. Hawkins's Motion Cannot Support "Rigorous Analysis."**

---

[6] This amount does not include punitive damage, which are merely alleged in complaint.  *Lejbman v. Transnat'l Foods, Inc.*, 2018 WL 2215420, at *2 (S.D. Cal. May 15, 2018) (conclusory allegations of punitive damages do not reach minimum).

[7] The report improperly inflates damages.  Kroger disclosed revenue for 2010 through 2016 in document TKC54 (Dkt. 94, Ex. 1), which Mr. Bowen relies on for the 2010-2012 retail figures.  Dkt. 94, Ex. 4 ¶¶ 6-7.  He inexplicably decides, however, to "estimate" 2015 numbers based on the first quarter of 2015 (the highest quarter by far) and ignore the actual 2015 figures in TKC54, which are much lower.  *Id.* ¶ 7 n.1.  Had Mr. Bowen used the actual numbers for 2015, his total would have been ████████ (████████ less).  *See* Dkt, 94, Ex. 1.

OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Even if the Court retains jurisdiction, certification must be denied because Ms. Hawkins fails to meet her burdens under Rule 23.  "[C]ertification is proper only if the trial court is satisfied, after a rigorous analysis," that the prerequisites of Rule 23(a) and 23(b) have been satisfied.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011).  "The class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action."  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (rejecting court's refusal to inquire into merits of claims on motion for class certification).

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  *Id.* at 34.  To come within the exception, Plaintiff "bears the burden of demonstrating by a preponderance of the evidence that all four requirements of Rule 23(a) [and 23(b)(3)] are met."  *Jones v. ConAgra Foods, Inc.*, 2014 WL 2702726, at *3 (N.D. Cal. June 13, 2014); *accord Comcast*, 569 U.S. at 33 (plaintiff "must affirmatively demonstrate his compliance with Rule 23").[8]  The Rule does not "establish an entitlement to class proceedings for the vindication of statutory rights" but "imposes stringent requirements for certification that excludes most claims."  *Am. Ex. Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2307 (2013).

"The Rule does not set forth a mere pleading standard."  *Comcast*, 569 U.S. at 33.  "Rather, a party must [] be prepared to ***prove*** [as required by Rule 23(a)] that there are *in fact* sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a)."  *Id.* (original and added emphasis).  "The party must also satisfy ***through evidentiary proof*** . . . Rule 23(b)(3), which requires a court to find that the questions of law or fact common to class members predominate over any questions affecting only individual members."  *Id.* (emphasis added).  In other words, "[t]he

---

[8] Ms. Hawkins forfeited her claim for injunctive relief.  Dkt. 36 at 25.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

moving party must provide **sufficient evidence**, not just 'some evidence.' that the requirements are satisfied." *Konik v. Time Warner Cable*, 2010 WL 8471923, at *3 (C.D. Cal. Nov. 24, 2010) (emphasis added).

### B.   Ms. Hawkins Fails to Satisfy Rule 23(a) Typicality.

A putative class plaintiff must be a member of the class which he or she seeks to represent at the time the class action is certified by the district court.   *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982); *Sosna v. Iowa,* 419 U.S. 393, 402-03, (1978).  "A named plaintiff's motion for certification should not be granted if there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Alaska v. Suburban Propane Gas Corp.*, 123 F.3d 1317, 1321 (9th Cir. 1997) (typicality defeated because prior litigation experience of named plaintiff subjected him to unique defenses regarding reliance); *see Ellis*, 657 F.3d at 984 (reversible error to not consider unique defenses); *Gonzalez v. P&G Co.*, 247 F.R.D. 616, 622 (S.D. Cal. 2007) (lack of typicality "alone requires the Court to deny the Motion for Class Certification.").

*This **"inquiry does not demand proof that a defense will ultimately defeat the class representative's claims," but "asks only whether plaintiff is likely to be preoccupied with litigating the defense to the detriment of the class as a whole."*** *Benedict v. Hewlett-Packard Co.*, 314 F.R.D. 457, 471 (N.D. Cal. 2016); *Weisberg v. Takeda Pharm. U.S.A., Inc.*, 2018 WL 4043171, at *7 n.4 (C.D. Cal. Aug. 21, 2018) (noting court need not "rul[e] upon whether [defendants] defenses will ultimately be successful," only whether plaintiff has demonstrated "his claims are typical").  Because of her idiosyncratic purchase history—which dates back an uninterrupted 15 years between 2000 and 2015—she is uniquely vulnerable to reliance, causation, and limitations issues that doom her claims.

### 1.   She Is Uniquely Susceptible to Causation Defenses.

Kroger has asserted numerous affirmative defenses uniquely aimed at Ms. Hawkins's gross vulnerabilities relating to her demonstrated lack of reliance and

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

causation, both required for her UCL, FAL, CLRA, and warranty claims.  FAA at 30–39.  These unique defenses, which are targeted solely at Ms. Hawkins because of her unique testimony and allegations, preclude typicality.

"To prevail on their causes of action under UCL, FAL, and the CLRA, Plaintiffs must demonstrate that they actually relied on the challenged misrepresentations and suffered economic injury as a result of that reliance." *Wilson v. Frito-Lay N. Am., Inc.*, 260 F. Supp. 3d 1202, 1208 (N.D. Cal. 2017); *Khasin v. Hershey Co.*, 2014 WL 1779805, at *4 (N.D. Cal. May 5, 2014) ("actual reliance requirement applies to [] claims under all prongs of the UCL"). Stated otherwise, Ms. Hawkins is "required to prove actual reliance on the allegedly deceptive or misleading statements . . . and that the misrepresentation was an immediate cause of their injury-producing conduct." *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 793 (9th Cir. 2012) (no reliance where plaintiff did not purchase any additional products *after* the alleged misrepresentation was made); *Clark v. Hershey Co.*, 2019 WL 6050763, at *2 (N.D. Cal. Nov. 15, 2019) ("[c]ausation is . . . a necessary element under California law"; "plaintiff must demonstrate that he or she would not have bought the product but for the misrepresentation"; citing *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 330 (2011)).

Doubts about the named plaintiff's reliance and causation will defeat typicality.  *See, e.g.*, *Weisberg*, 2018 WL 4043171, at *7 ("idiosyncrasies [regarding reliance, causation, and injury] pervade Plaintiff's claims and allow for unique defenses"); *Pierce-Nunes v. Toshiba Am. Info. Sys.*, 2016 WL 5920345, at *5–6 (C.D. Cal. June 23, 2016) (plaintiff's UCL, CLRA, and FAL claims subject to unique defense and thus atypical where deposition "testimony makes clear that he did not rely on Defendants' product packaging prior to purchasing the product").[9]

---

[9] *See also Chow v. Neutrogena Corp.*, 2013 WL 5629777, at *2 (C.D. Cal. Jan. 22, 2013) (denying certification because mislabeling claims "suffer from the [] individualized issue of demonstrating reliance"); *Quezada v. Loan Ctr. Of Cal.*,

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Here, Ms. Hawkins's deposition testimony confirms she is uniquely susceptible to Kroger's defenses pertaining to her lack of reliance and causation. To review, Ms. Hawkins testified she purchased Kroger breadcrumbs uninterrupted six times per week from 2000 through 2015, because she needed the breadcrumbs for meatloaf.  *Supra* at 4–5; Ex. 1 at 75:10–21, 76:17-21.  While she claims she was misled into purchasing breadcrumbs because of the appearance of "0g Trans Fat" statement on the front panel, her testimony repeatedly repudiates this claim:  Her "buying habits stayed the same, 2000 all the way up to 2015" despite:

- Learning from her annual doctor visits, starting 2005, about "red flags" such as the presence of partially hydrogenated oils in packaged foods, which was listed on Kroger breadcrumbs at least as early as 2005 (*supra* at 5–7; Ex. 1 at 45:2–51:3, 93:6–94:24; Bower Decl. ¶¶ 8, 10);

- Failing to read ingredient statements despite physician warnings to review for partially hydrogenated oils (*supra* at 6–8; Ex. 1 at 45:23–46:7, 49:21–51:3, 94:7–24, 97:19–98:8);

- Acknowledging her purchases remained unchanged after 2008, when the "0g Trans Fat" statement first appeared on the front label (*supra* at 5–7; Ex. 1 at 77:7–9, 99:19–100:2; Bower Decl. ¶¶ 8, 10 & Exs. A, B);

- Ignoring television commercials and her own lawyers' advice to review ingredient statements (*supra* at 5–8; Ex. 1 at 45:2–51:3, 93:6–94:24);

- Continuing to ignore ingredient labels even after beginning to serve as a professional plaintiff in at least three mislabeling lawsuits beginning in 2012 (*supra* at 4–5, 8; Ex. 1. at 10:22–11:14; *id.* at 123:3–124:18).

In light of the details of her 15-year purchase and use history, it is clear Kroger's labeling and use of partially hydrogenated oil ***simply did not matter*** to Ms. Hawkins—and therefore her claimed injuries are not "a result of" Kroger's conduct.. The *only* reason she purchased these products is that she wanted them, and her after-the-fact thoughts on why she may not have wanted them now do not establish reliance or causation.  *See Clark v. Hershey*, 2019 WL 6050763, at *3

---

*Inc.*, 2009 WL 5113506, at *7 (E.D. Cal. Dec. 18, 2009) ("[P]laintiff's unique susceptibility to a challenge based on her standing to pursue a UCL claim is fatal.").

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

1  (N.D. Cal. Nov. 15, 2019) (granting summary judgment and denying class

2  certification as to UCL, CLRA, FAL, and express warranty claims, where plaintiff

3  purchased the subject product before it contained the alleged mislabel, and did not

4  increase purchases or otherwise change behavior based on label); *see also Sateriale,*

5  697 F.3d at 793 (no reliance where plaintiff did not purchase any additional

6  products after the alleged misrepresentation was made).

### 2.      She Is Uniquely Susceptible to Limitations Defenses.

8       Likewise, Ms. Hawkins is also uniquely susceptible to the three- and four-

9  year statute of limitations defenses not common to other class members.  FAA at

10  35; Dkt. 86 at 5; Cal. Civ. Code § 1783 (CLRA); Cal. Prof. & Bus. Code § 17208

11  (UCL); Cal. Comm. Code § 2725 (warranty); Cal. Civ. Pc. Code § 338(a) (FAL).

12       The applicable statutes of limitations begins from the moment the plaintiff is

13  aware of or should be aware of her purported injury.  *Jolly v. Eli Lilly & Co.,* 44

14  Cal.3d 1103, 1109 (1988) (the statute of limitations begins to run "when the

15  plaintiff suspects or should suspect that her injury was caused by wrongdoing…").

16  Thus, if a plaintiff knows at the moment of purchase that her product contains an

17  ingredient that is the subject of her lawsuit, then she knows of her "injury" and the

18  statute of limitations begins to run at the time of purchase.  *See Ries v. Arizona*

19  *Beverages USA LLC*, 287 F.R.D. 523, 534 (N.D. Cal. 2012) ("she learned of her

20  injury at that time, and the statute of limitations began to run").

21       Under California's "single injury" rule, once the cause of action first accrues

22  for a purchaser, the limitations clock begins to run for all purchases made by

23  him/her.  *See Harshbarger v. Philip Morris, Inc.*, 2003 WL 23342396, at *6–7 (N.

24  D. Cal. Apr. 1, 2003).  If a plaintiff is aware of a harm but continues purchases,

25  those repeated purchases do not restart the applicable limitation period; rather, a

26  plaintiff's injury from ongoing use of a product "would constitute not a new breach,

27  but rather additional harm."  *NBCUniversal Media, LLC v. Super. Court*, 225 Cal.

28  App. 4th 1222, 1237 (2014); *Soliman v. Philip Morris, Inc.*, 311 F.3d 966 (9th Cir.

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

2002) (claim accrued at time of plaintiff's initial notification of injury, not with subsequent purchases).  Thus, the claim "accrues" at the earliest point at which the plaintiff experiences harm.

Here, Ms. Hawkins's claims accrued no later than in **2005**, when she was actively purchasing and consuming the product, and then instructed by her doctor to avoid trans fat.  The product's label included PHO as an ingredient (Bowers Decl. Exs. A, B) and she admits knowing at that time that PHO is a form of trans fat. *Supra* at 5–7.  Ms. Hawkins's later purchases and consumption of the product after 2005, and any continued harms, are merely a continuation of her earlier claim.

And while her complaint makes two conclusory allegations of "delayed discovery" (Compl ¶¶ 111–12), her testimony regarding the "red flags" about partially hydrogenated oils fatally undermine this attempt to move out accrual.  *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005) ("A plaintiff has reason to discover a cause of action when he or she has reason at least to suspect a factual basis for its elements.").  Doctor's warnings, television commercials, medical reviews—Ms. Hawkins had all she needed to suspect a factual basis for claiming partially hydrogenated oil was wrongfully labeled or included in 2005.  These unique limitations problems preclude typicality, as many cases hold.[10]

### C.    Ms. Hawkins Fails to Meet Rule 23(a) Adequacy.

Ms. Hawkins also fails to meet Rule 23(a)'s adequacy requirement.  "To satisfy constitutional due process concerns, unnamed class members must be afforded adequate representation before entry of a judgment which binds them."  *In re Facebook, Inc.*, 282 F.R.D. 446, 454 (N.D. Cal. 2012), *aff'd* 588 F. App'x 733 (9th Cir. 2014) (class rep inadequate because, among other things, he "indicated he would defer to counsel in prosecuting this action"); *see also* Fed. R. Civ. P. 23(g)(1)

---

[10] *See, e.g.*, *Vizzi v. Mitsubishi*, 2010 WL 11515266, at *4–5 (C.D. Cal. Feb. 22, 2010) (unique SOL defenses defeated certification; listing cases); *Blackwell v. SkyWest, Inc.*, 245 F.R.D. 453, 462–63 (S.D. Cal. 2007) (same).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

(class counsel must "fairly and adequately represent the interests of the class."). She fails to adequately represent the class for several reasons.

### 1.  Numerous Unique Defenses Precludes Adequacy.

***First***, for the reasons above, Ms. Hawkins cannot serve as an adequate class representative because of the multiple unique defenses she faces.  *Weisberg*, 2018 WL 4043171, at *7 (plaintiff not adequate representative where his "unique defenses may require him to devote more of this litigation to the defense of his personal claims, potentially to the detriment of the proposed class members"); *Turcios v. Carma Labs., Inc.*, 296 F.R.D. 638, 648 (C.D. Cal. 2014) ("Proposed class representatives have a conflict of interest with the absent putative class members if they do not have standing to . . . assert certain claims that may be available and advantageous to the absent putative class members.").

### 2.  She Lacks Alleged Injuries of Other Class Members.

***Second***, Ms. Hawkins does not share the same claimed injury as the putative class members, and therefore cannot adequately represent them.  In the Complaint, she alleges the use of partially hydrogenated oils causes putative class members a panoply of physical ailments, including cancer, cardiovascular disease, diabetes, cognitive diseases, and organ damage, Compl. ¶¶ 29, 42, 47, 53, 60; in deposition, ████████████████████████████████████████████. Ex. 1 at 30:8–31:8.  Likewise, the Complaint alleges class members find no value whatsoever in Kroger breadcrumbs because they contain trans fat, *id.* ¶ 106; but Ms. Hawkins explained the high value she placed on Kroger breadcrumbs for their unique flavor, convenience, taste, and necessity in her family meatloaf.  In both cases, her claims diverge from those of the stated putative class, thereby precluding her from representing them adequately.  *Sanchez v. Wal Mart Stores, Inc.*, 2009 WL 1514435, at *3 (E.D. Cal. May 28, 2009) (adequacy not met because plaintiff's claims were limited to economic injury, despite claims that product poses physical harm to class members; "[t]his strategic claim-splitting decision creates a conflict

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

between Plaintiff's interests and those of the putative class").

### 3. She Abdicated Supervision Over the Case.

*Third*, Ms. Hawkins has abdicated supervision over the case. "The class representative may not simply abdicate conduct of the case to counsel, but must supervise class counsel, at least minimally." Moore's Fed. Prac. § 23.25[2][c][ii] (citing, *e.g.*, *Willing v. Alexy*, 155 F.R.D. 654, 659 (N.D. Cal. 1994)) (named plaintiff inadequate because lack of interest in supervising attorneys); *Rolex Empl's Ret. Trust v. Mentor Graphics Corp.*, 136 F.R.D. 658, 663 (D. Or. 1991) (same). Here, however, Ms. Hawkins testified, among other things:

- On the over four years of litigation, Ms. Hawkins had met with counsel "maybe two, three times" (Ex. 1 at 65:6-12), and has not communicated with counsel in "any other way" (*id.* at 65:6-20).

- Ms. Hawkins has reviewed court filings "like, two or three times," despite more than 15 filings as of the date of deposition. Ex. 1 at 70:2-8.

- Ms. Hawkins testified she does not understand her fiduciary duties to other class members (*id.* at 57:1–25), but has nonetheless "invested in [counsel] full authority to negotiate and settle the action on her behalf" (Hawkins Depo. at 66:25-67:7 & Dkt. 50) and continues to "retain[] full authority" to represent her and the class (Ex. 1 at 67:8-23).

Worse, she won't even show up for court-ordered settlement conferences, instead abdicating responsibility to her lawyer. Dkt. 50; Harper Decl. ¶ 8.

### D. Ms. Hawkins Fails Rule 23(b)(3) Predominance & Superiority.

#### 1. Individual Restitution Values Preclude Predominance.

Ms. Hawkins also does not and cannot satisfy predominance and superiority.

First, Ms. Hawkins "cannot show Rule 23(b)(3) predominance" unless she "establish[es] that damages are capable of measurement on a classwide basis." *Comcast*, 569 U.S. at 34; *In re 5-Hour Energy Mktg. & Sales Practices Litig.*, 2017 WL 2559615, at *9 (C.D. Cal. June 7, 2017) ("To satisfy Rule 23(b)(2), plaintiffs must show that damages are capable of measurement on a classwide basis"). This requires she "present a model that (1) identifies damages that stem from the

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

defendant's alleged wrongdoing and (2) is 'susceptible of measurement across the entire class.'" *Jones*, 2014 WL 2702726, at *19 (citing *Comcast*, 569 U.S. at 34). She fails to meet this indispensable requirement.

Here, Ms. Hawkins seeks restitutionary damages.  Mot. at 17.  For her CLRA, UCL, FAL, and warranty claims, "[t]he proper measure of restitution is the difference between what the plaintiff paid and the value of what the plaintiff received."  *Caldera v. J.M. Smucker Co.*, 2014 WL 1477400, at *4 & n.2 (C.D. Cal. Apr. 15, 2014).  Thus, at class certification, "[r]estitutive recovery requires evidence of the ***actual value*** of what the plaintiff received."  *In re POM Wonderful LLC*, 2014 WL 1225184, at *2–3 (C.D. Cal. Mar. 25, 2014); *In re 5-Hour*, 2017 WL 2559615, at *11 (plaintiffs "must be able to account for consumer preferences and the relative value that consumers ascribe to different aspects of the product").

Ms. Hawkins's proposed method of calculating damages gets only halfway. She apparently contends that every single class member is entitled to a ***full refund*** of the retail price.  Dkt. 94, Ex. 4 (Bowen Report) ¶ 5.  But "[r]estitution based on a full refund would only be appropriate *if **not a single class member received **<u>any</u> benefit from the product**[].*"  *Caldera*, 2014 WL 1477400, at *4 (emphasis added); *see Jones*, 2014 WL 2702726, at *19 ("Return of the full retail or wholesale price[] is not a proper measure of restitution, ***as it fails to take into account the value class members received by purchasing the products***."); *POM*, 2014 WL 1225184, at *2–3 ("A party seeking restitution must generally return any benefit that it has received.").  Ms. Hawkins offers no such evidence that consumers received no value from KBC; to the contrary, she testified to the great value she obtained from using KBC in her weekly meatloaf—so much so that she purchased the product six times a year for 15 years.  Ex. 1 at 74:15–78:14, 101:16–102:22.

As Ms. Hawkins's damages model fails to account for the product's full value, she cannot demonstrate damages are capable of classwide proof, and her motion must be denied—particularly given she testified about the breadcrumbs'

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

value to her.  *Caldera*, 2014 WL 1477400, at \*3–4 (plaintiff testified as to product's value, so "classwide damages cannot accurately be measured based on Defendant's sales data alone," and denying Rule 23(b)(3) certification solely on that basis); *POM*, 2014 WL 1225184, at \*2–3 (where plaintiffs cannot "plausibly contend that they did not receive any value at all from Defendant's products," full restitution model insufficient to certify class with UCL, CLRA, FAL claims); *Robinson v. OnStar, LLC*, 2020 WL 364221, at \*22–24 (S.D. Cal. Jan. 22, 2020) (same); *see Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 460–61 (S.D. Cal. 2014) ("inadequacies [in plaintiffs' damages model] are readily apparent as [it] does not even attempt to isolate the amount attributed solely to the alleged misrepresentation").  Nor does she offer evidence that, without the "0g Trans Fat" statement, she would not have bought the product.  *Supra* at 13–16.

Ms. Hawkins's claim that "uncertain damages calculations" cannot preclude certification (Mot. at 17:24–25:11), does not, as she suggests, change this requirement.  As an initial matter, Hawkins relies on *Lambert*, which the Supreme Court reversed—in full—because the underlying petition was untimely.  *Lambert v. Neutraceutical Corp.*, 870 F.3d 1170 (9th Cir. 2017), *rev'd*, 139 S. Ct. 710 (2019).  The decision therefore lacks binding force.  *Regions Bank of La. v. Rivet*, 224 F.3d 483, 489 (5th Cir. 2000); *see Robinson*, 2020 WL 364221, at \*23 (rejecting *Lambert* on this basis).  But in any case, *Lambert* does not eliminate the steadfast requirement that Ms. Hawkins demonstrate a sufficient method of measuring classwide damages, as affirmed by the Supreme *Court* in *Comcast*:

> [R]espondents' model falls short of establishing that damages are capable of measurement on a classwide basis.  Without presenting another methodology, respondents cannot show Rule 23(b)(3) predominance.

*Comcast*, 569 U.S. at 34; *see In re 5-Hour*, 2017 WL 2559615, at \*9 ("The Ninth Circuit rule that damage calculations do not defeat certification does not relieve Plaintiffs of the requirement of putting forth a damages model that ties to the theory

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

of liability to damages").[11]   Under the binding authority of *Comcast*, courts regularly require this showing under Rule 23(b)(3), including for UCL, CLRA, FAL, and warranty claims.  *Supra* at 14–16 (citing cases); *Zakaria v. Gerber Prods. Co.*, 755 F. App'x 623, 624-25 (9th Cir. 2018) (affirming denial of class certification for UCL, CLRA, FAL claims based on plaintiff's failure to show valid method for damages).  Failure to do so is reversible error.  *Comcast*, 569 U.S. at 34 (reversing; the Ninth Circuit's "refus[al] to entertain arguments against respondents' damages model . . . ran afoul of our precedents requiring precisely that inquiry").  Ms. Hawkins cites no examples to the contrary, including *Lambert*.[12]

## 2.   Individual Limitations Issues Preclude Predominance.

Second, even if the statute of limitations and reliance issues do not defeat typicality, they will defeat certification:  "If plaintiff's statute of limitations issues and demand for equitable tolling are in fact typical of other class members, then an individualized inquiry of when each class member became aware of the [] violations that are the subject of this UCL claim would be necessary."  *Quezada*, 2009 WL 5113506, at *9 (applying *King v. California,* 784 F.2d 910 (9th Cir.1986)).  "While individualized inquiries do not foreclose the possibility of predominance, whether the statute of limitations may be equitably tolled for each class member will be a

---

[11] Ms. Hawkins's reliance on *Sali, Stearns*, and *Yokoyama* is also misplaced.  Mot. at 17:28-18:5 (citing *Sali v. Corona Reg. Med. Ctr.*, 90 F.3d 996, 1011 (9th Cir. 2018); *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013 (9th Cir. 2011); *Yokoyama v. Midland Nat'l Life Ins.*, 594 F.3d 1087 (9th Cir. 2010)).  Both *Yokoyama* and *Stearns* also predate *Comcast*—a distinction *Lambert* acknowledged.  *Lambert*, 870 F.3d at 1182 (noting need to "reconcile[]" *Comcast* and *Yokoyama*, and still requiring method of classwide damages).  *Sali* involved a per se statutory injury with set damages, and thus involved no individualized questions.  *Sali v. Corona Reg. Med. Ctr.*, 90 F.3d 996, 1011 (9th Cir. 2018).  Nor can Plaintiff's cited state court case eliminate this federal procedural requirement.  Mot. at 18:4-11.

[12] Even *Lambert* required plaintiff to identify a "valid method . . . for calculating [] damages," that "matche[s] his theory of liability" and is "supportable on evidence that could be introduced at trial."  870 F.3d at 1182-84.  *Lambert* deemed plaintiff's "full refund" model sufficient because he "presented evidence that the product at issue was valueless."  870 F.3d at 1182-83; *see Robinson*, 2020 WL 364221, at *23 (distinguishing *Lambert* on this basis).  Here, Ms. Hawkins's testimony shows the breadcrumbs hold value for which damages must account.  *Supra* at 4.

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

highly individualized inquiry that will be necessary before the court may even reach the merits of each plaintiff's claim." *Quezada*, 2009 WL 5113506, at \*9 (applying *Block v. Major League Baseball*, 65 Cal.App.4th 538 (1998)). The class period here extends beyond the three and four-year limitations periods; thus, the same individual issues that undermine typicality will also dog each class member.

### 3. Individual Materiality Issues Preclude Predominance.

Third, Ms. Hawkins cannot establish the labeling statements at issue are material across the class, thereby further precluding certification. To meet her burden, Ms. Hawkins was required to present "'common evidence as to what consumers perceived or what they would find material.'" *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 133 (2010) (quoting trial court and affirming denial of certification in the absence of such evidence). In addition, even if Ms. Hawkins can establish a violation of law, she would still be required to prove that class members were injured "as a result of" defendants' law-violating conduct. "In the context of the instant case, the 'as a result of' language places the burden on [the plaintiff] to establish that they actually relied upon the [challenged] representations." *In re Actimmune Mktg. Litig.*, 2010 WL 3463491, at \*7 (N.D. Cal. Sept. 1, 2010).

Here, Ms. Hawkins's claims suffer three major defects: (1) she has no evidence whatsoever—no surveys, no testimony, nothing—to establish the statement "0g Trans Fat" is material across a class; (2) her own testimony—which shows she purchased the products regardless of the label statements—demonstrates the statement was not even material to herself; and (3) she offers nothing to establish her own injury, much less injury class-wide. Such utter lack of evidence precludes a finding of class-wide materiality, and undermines predominance. *See, e.g.*, *Townsend v. Monster Bev. Corp.*, 303 F.Supp.3d 1010, 1047 (C.D. Cal. 2018) (expert and survey evidence insufficient to show the defendants' label statement is material to most consumers' purchasing decisions); *Jones*, 2014 WL 2702726, at \*14 (denying 23(b)(3) certification where only evidence to show a reasonable

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

consumer would attach significance to a label statement was an expert declaration).

### E.   The Class Is Not Ascertainable and Thus Unmanageable.

The proposed class is neither ascertainable nor warrants certification under the manageability criterion of Rule 23 (b)(3)(D) (mandating courts to consider "the likely difficulties in managing a class action"). **First**, the parties cannot identify the relevant products for the class period. Because of Kroger's limited involvement in product formulation and manufacture, which was handled virtually exclusively by non-affiliated, third-party suppliers who delivered the products to Kroger in ready-to-sell form, Kroger lacks information sufficient to identify the relevant products during the class period. Harper Decl., Ex. 2. **Second**, Ms. Hawkins presents no records, and Kroger is aware of none, to identify who purchased these low-value products five to 10 years ago, further undercutting manageability.

### F.   Notice Issues Preclude Certification.

Ms. Hawkins's proposed class notice plan is overly burdensome, and no grounds exist to shift costs to Kroger. Her notice goes far beyond what's required, and is impermissibly excessive. Fed. R. Civ. P. 23(c)(2)(B) (requiring only "practicable" notice and "reasonable effort").; *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994). Where class members are unknown, publication notice through print and postings on a defendant's website are sufficient to satisfy Rule 23 and due process. *E.g.*, *Hilsley v. Ocean Spray Cranberries, Inc.*, 2019 WL 718807, at *3 (S.D. Cal. Feb. 5, 2019). Ms. Hawkins's plan would impose far greater burdens of notice, but she demonstrates no need or justification for doing so (nor could she). Plaintiffs "must initially bear the cost of notice to the class", and no grounds exist to shift them to Kroger. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974).[13]

### V.   THE COURT SHOULD STRIKE MS. HAWKINS'S "EXPERTS."

---

[13] Nor has this Court found "merit" in her claims by denying its motion to dismiss (Mot. at 20)—rather, the Court deferred Kroger's defenses for evidentiary motions, and Hawkins's claims are barred by several defenses. *Supra* at 9, 13-17; *Hilsley*, 2019 WL 718807, at *4 (not shifting notice costs absent "success on the merits").

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

The Court should strike the three "expert" declarations Ms. Hawkins proffers. Dkt. 89-2, Ex. G; Dkt. 94, Exs. 3, 4.  At the class certification stage, courts analyze such testimony under Fed. R. Evid. 702 and *Daubert*, requiring the "expert" be qualified, relevant and reliable.  *Ellis*, 657 F.3d at 982.  None of the declarations clears this hurdle.  **<u>First</u>**, **Dr. Robert Bowen** purports to calculate "full restitution" for the putative class, Dkt. 93, Ex. 4, but that damages model is irrelevant.  *Supra* at 19–22; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993) (Rule 702 "requires a valid scientific connection to the pertinent inquiry").  Restitution is based on the value of Kroger breadcrumbs, *supra* at 19, which Dr. Bowen neither attempts to opine on, nor is he qualified to do.  His report boils down to simple math; even that relies on inflated, unsupported assumptions. *Supra* at n.6; *Chong v. STL Int'l, Inc.*, 2016 WL 4253959, at *2 (D. Or. Aug. 10, 2016) (courts "generally" exclude expert testimony based on unsupported assumptions).  **<u>Second</u>**, **Dr. Beatrice Golomb**'s declaration simply summarizes her own studies regarding the health effects of trans fat; she does not discuss consumers' perceptions regarding trans fat or the impact of trans fat on any class members. Dkt. 89-2, Ex. G.  **<u>Third</u>**, **Dr. Nathan Wong**'s declaration purports to "estimate the harm of consuming Kroger Bread Crumbs" based on unfounded assumptions and an unexplained methodology that—on its face—appears purely speculative and untethered to any scientific, statistical, or economic methods, in addition to highly prejudicial.  Dkt. 94, Ex. 3; *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (court should exclude expert testimony "connected to existing data only by the *ipse dixit* of the expert" or where "there is simply too great an analytical gap between the data and the opinion proffered").  His offhand, conclusory statement that he personally "believe[s]" the "0g Trans Fat" label was "misleading" is irrelevant, and improper legal conclusion.

DATED: February 10, 2020

DAVIS  WRIGHT  TREMAINE  LLP

By:  /s/ *Jacob M. Harper*

Jacob M. Harper

Attorneys for THE KROGER CO.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

25

OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

# CERTIFICATE OF SERVICE

*Shavonda Hawkins v. The Kroger Company*
U.S.D.C. Southern District of California Case No. 3:15-cv-2320-JM-AHG

I the undersigned, declare:

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California.  My business address is 865 S. Figueroa Street, Suite 2400, Los Angeles, CA 90017.

On February 10, 2020, I served true copies of the following documents described as**:**

**OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

on the interested parties in this action as follows:

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the documents with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on February 10, 2020, at Los Angeles, California.

/s/ Heather F. Canner
Heather F. Canner

OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899