**THE WESTON FIRM**
GREGORY S. WESTON (239944)
*greg@westonfirm.com*
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone: (619) 798-2006
Facsimile: (619) 343-2789

**Counsel for Plaintiff**

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAVONDA HAWKINS, on behalf of herself and all others similarly situated,<br><br>  Plaintiff,<br><br>  v.<br><br>THE KROGER COMPANY,<br><br>  Defendant. | Case No: 3:15-cv-02320-JM-AHG<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>Judge: The Honorable Jeffrey T. Miller<br>Date: March 2, 2020<br>Time: 10:00 a.m.<br>Location: Courtroom 5D |

**TABLE OF CONTENTS**

I.    Introduction ........................................................................................................ 1

II.   The Court Has Diversity Jurisdiction ................................................................ 2

III.  Hawkins Satisfies Rule 23(a)'s Typicality Requirement. ................................. 5

IV.   Hawkins Satisfies Rule 23(a)'s Adequacy Requirement. ................................. 6

V.    Hawkins Satisfies Predominance and Superiority ............................................ 7

VI.   The Class Is Ascertainable and Manageable. ................................................... 9

VII.  Conclusion ....................................................................................................... 10

# TABLE OF AUTHORITIES

**CASES**

*Allen v. Hylands, Inc.*,
　　300 F.R.D. 643 (C.D. Cal. 2017)................................................................................7

*Bayol v. Zipcar, Inc.*,
　　2015 U.S. Dist. LEXIS 109027 (N.D. Cal. Aug. 18, 2015) ......................................4

*Beasley v. Lucky Stores, Inc.*,
　　2020 U.S. Dist. LEXIS 13211 (N.D. Cal. Jan. 24, 2020)..........................................5

*Beck-Ellman v. Kaz USA, Inc.*,
　　283 F.R.D. 558 (S.D. Cal. 2012) ...........................................................................5, 8

*Briseno v. ConAgra Foods, Inc.*,
　　844 F.3d 1121 (9th Cir. 2017) .................................................................................10

*Colgan v. Leatherman Tool Grp., Inc.*,
　　135 Cal. App. 4th 663 (2006) ....................................................................................9

*Farrar v. Bayer AG*,
　　2017 U.S. Dist. LEXIS 193729 (N.D. Cal. Nov. 15, 2017) ..................................7, 8

*Flores v. Gain Capital Grp*,
　　2018 U.S. Dist. LEXIS 222840 (C.D. Cal. Dec. 21, 2018).......................................6

*Fritsch v. Swift Transp. Co. of Ariz., LLC*,
　　899 F.3d 785 (9th Cir. 2018) .....................................................................................4

*FTC v. Figgie Int'l, Inc.*,
　　994 F.2d 595 (9th Cir. 1993) .....................................................................................8

*Hadley v. Kellogg Sales Co.*,
　　324 F. Supp. 3d 1084 (N.D. Cal. 2018).....................................................................9

*Hawkins v. Kroger Co.*,
　　906 F.3d 763 (9th Cir. 2018) .................................................................................2, 9

ii

*Huu Nguyen v. Nissan N. Am., Inc.*,
    932 F.3d 811 (9th Cir. 2019) ...................................................................................9

*In re Capacitors Antitrust Litig. (No. III)*,
    2018 U.S. Dist. LEXIS 195310 (N.D. Cal. Nov. 14, 2018) .....................................7

*In re Hyundai & Kia Fuel Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019) ...................................................................................1

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2011) .............................................................................................1

*Johns v. Bayer Corp.*,
    280 F.R.D 551 (S.D. Cal. 2012) ..............................................................................8

*Lambert v. Nutraceutical Corp.*,
    870 F.3d 1170 (9th Cir. 2017) .................................................................................8

*Lilly v. Jamba Juice*,
    308 F.R.D. 231 (N.D. Cal. 2014) ...........................................................................10

*Mantikas v. Kellogg Co.*,
    910 F.3d 633 (2d Cir. 2018) ....................................................................................2

*Mills v. Forestex Co.*,
    108 Cal. App. 4th 625 (2003) ..................................................................................5

*Naffe v. Frey*,
    789 F.3d 1030 (9th Cir. 2015) .................................................................................3

*Petkevicius v. NBTY, Inc.*,
    2017 U.S. Dist. LEXIS 43636 (S.D. Cal. Mar. 24, 2017) .......................................2

*Reid v. Johnson & Johnson*,
    780 F.3d 952 (9th Cir. 2015) ...................................................................................9

*Resnick v. Frank*,
    779 F.3d 934 (9th Cir. 2015) ...................................................................................6

*Sidibe v. Sutter Health*,
    2019 U.S. Dist. LEXIS 181179 (N.D. Cal. Aug. 30, 2019) ....................................6

*Silver v. Pa. Higher Educ. Assistance Agency*,
  2020 U.S. Dist. LEXIS 22857 (N.D. Cal. Feb. 7, 2020) ............................................. 6

*Sloan v. 1st Am. Auto Sales Training*,
  2017 U.S. Dist. LEXIS 58476 (C.D. Cal. Apr. 17, 2017) .......................................... 4

*St. Paul Mercury Indem. Co. v. Red Cab Co.*,
  303 U.S. 283 (1938) ................................................................................................. 3

*Stearns v. Ticketmaster Corp.*,
  655 F.3d 1013 (9th Cir. 2011) ................................................................................. 1

*Visendi v. Bank of Am. N.A.*,
  733 F.3d 863 (9th Cir. 2013) ................................................................................... 3

*Williams v. Gerber Prods. Co.*,
  552 F.3d 934 (9th Cir. 2008) ................................................................................... 2

*Williams v. Sinclair*,
  529 F.2d 1383 (9th Cir. 1975) ................................................................................. 8

*Yokoyama v. Midland Nat'l Life Ins. Co.*,
  594 F.3d 1087 (9th Cir. 2010) ................................................................................. 1

*Yumul v. Smart Balance, Inc.*,
  733 F. Supp. 2d 1134 (C.D. Cal. 2010) ................................................................... 5

**STATUTES**

28 U.S.C. § 1332(a) ........................................................................................................ 4

## I. Introduction

Kroger's opposition evades the page limit by having 40 lines of long single-spaced footnotes. Despite this excessive length, it fails to show this simple class action involving one false claim on one product should not be certified.

Kroger argues Hawkins is not part of her own class. Opp. at 2. Yet the class is those who purchased KBC from 2010-2015, when she purchased KBC many times.

Kroger argues it has "unique defenses" based on Plaintiff's recollections of her reasons for purchasing KBC over the years. Opp. at 13-17. But this is irrelevant, as California's consumer fraud laws all use a single, objective "reasonable consumer" standard, whose focus is "on the Defendant's conduct, rather than the plaintiff's damages, in service of the larger purpose of protecting the general public against unscrupulous business practices." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011) (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2011)). Indeed, "there is no reason to look at the circumstances of each individual purchase in this case, because [] the fact-finder need only determine whether those [representations] were capable of misleading a reasonable consumer." *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1089, 1094 (9th Cir. 2010).

Similarly, Kroger argues Hawkins had reasons beside its false and illegal "0g Trans Fat" claim to buy KBC. Opp. at 18. This too misstates the applicable California-law standard. "It . . . is not necessary that . . . the fraudulent misrepresentation be the sole or even the predominant or decisive factor influencing" a consumer's decision to purchase the falsely-labeled product. *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 561 (9th Cir. 2019) (en banc) (affirming class certification) (quoting *Tobacco II Cases*, 46 Cal. 4th at 326). "Moreover, a presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material." *Tobacco II*, 46 Cal. 4th at 327. Here, the fact that "0g Trans Fat" is material is shown by Plaintiff's testimony that it was one of the reasons she purchased KBC, expert testimony, and the Ninth Circuit, which stated "falsely advertising that a food product does not contain trans

fat *is a health hazard*." *Hawkins v. Kroger Co.*, 906 F.3d 763, 772 (9th Cir. 2018) (emphasis added).

Kroger next argues that Hawkins was unreasonable for trusting its "0g trans fat" because she supposedly should have checked the ingredient list to see if it contained PHO and therefore trans fat. Opp. at 5-8. This identical argument, once again, has been flatly rejected by binding authority Kroger fails to cite:

> We disagree [] that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box. [] We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception.

*Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939-40 (9th Cir. 2008). *Accord*, *Mantikas v. Kellogg Co.,* 910 F.3d 633, 637 (2d Cir. 2018) (A "reasonable consumer should not be expected to consult the Nutrition Facts panel on the side of the box to correct misleading information set forth in large bold type on the front of the box.") (following *Williams*).

Kroger next argues that the case Hawkins filed in 2012 gave her warning about PHO and trans fat. Opp. at 8. But that case dealt with false "probiotic" claims on Gerber Graduates toddler food and had nothing to do with trans fat. Kroger next argues Hawkins doesn't have heart disease and other class members do. Opp. at 18. Hawkins's claim, however, is an economic injury resulting from a fraudulently labeled product, not personal injury.

## II.   The Court Has Diversity Jurisdiction

Kroger's assertion that the Court lacks jurisdiction to certify a class under CAFA, Opp. at 10-11, fails. Kroger argues CAFA jurisdiction comes and goes, waxes and wanes during the pendency of the case, and here it went away when plaintiff decided to move for a California-only class rather than a national class, and estimated the restitution to be about $2 million for the Class. Kroger is wrong. The "only question here is whether the amount in controversy exceeded $5,000,000 **when the lawsuit was filed**." *Petkevicius v. NBTY, Inc.*, 2017 U.S. Dist. LEXIS 43636, *9 (S.D. Cal. Mar. 24, 2017) (emphasis

2

added). "[P]ost-filing developments do not defeat jurisdiction if jurisdiction was properly invoked as of the time of filing." *Visendi v. Bank of Am. N.A.*, 733 F.3d 863, 868 (9th Cir. 2013). Here, the complaint defined the class as "All persons who purchased in the United States, on or after January 1, 2008, Kroger bread crumb products containing partially hydrogenated oil." Compl. ¶ 114. Kroger's calculations improperly fail to include sales of KBC in 49 states, which would bring the amount in controversy to more than $5 million given that California alone has sales of $2 million.

Even if the Court took Kroger's invitation, contrary to binding authority, to consider the post-filing development that Plaintiff decided to narrow her class to California only, the argument still fails. "When a plaintiff files suit in federal court, we use the 'legal certainty' test to determine whether the complaint meets § 1332(a)'s amount in controversy requirement." *Naffe v. Frey*, 789 F.3d 1030, 1039 (9th Cir. 2015). "Under this test, 'the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *Id.* at 1040 (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 288-89 (1938)). The Ninth Circuit has recognized that

> the legal certainty test makes it very difficult to secure a dismissal of a case on the ground that it does not appear to satisfy the jurisdictional amount requirement. Only three situations clearly meet the legal certainty standard: 1) when the terms of a contract limit the plaintiff's possible recovery; 2) when a specific rule of law or measure of damages limits the amount of damages recoverable; and 3) when independent facts show that the amount of damages was claimed merely to obtain federal court jurisdiction.

*Naffe*, 789 F.3d at 1040. While "some cases warrant a more thorough inquiry into the facts underpinning jurisdiction than the legal certainty test permits," such an

> inquiry is inapplicable where, as here, the plaintiff files suit originally in federal court, the case raises traditional state tort claims, and the complaint affirmatively alleges that the amount in controversy exceeds the jurisdictional threshold. In such a case, the legal certainty test applies, and the district court must accept the amount in controversy claimed by the plaintiff unless it can declare to a legal certainty that the case is worth less.

*Naffe*, 789 F.3d at 1040 (citing *St. Paul.,* 303 U.S. at 288-89).

3

*Hawkins v. The Kroger Company,* Case No. 3:15-02320-JM-AHG
REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Here, it cannot be determined with "legal certainty" that the amount in controversy does not satisfy CAFA's $5 million threshold. As Kroger acknowledges, our expert calculates actual damages to be $2,011,712. Opp. at 11. Kroger further acknowledges that attorney fees are included in an "amount in controversy" calculation. Opp. at 11. Kroger contends the Court should use a "theoretical 25% attorney fee." Opp. at 11. Yet the Ninth Circuit explicitly rejected the "argument that we should hold that, as a matter of law, the amount of attorneys' fees in controversy in class actions is 25 percent of all other alleged recovery." *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 796 (9th Cir. 2018). The Court "may not relieve the defendant of its evidentiary burden by adopting a per se rule for one element of the amount at stake in the underlying litigation." *Id.* Kroger thus once again ignores a binding case that is fully on-point.

Yet another reason Kroger fails the legal certainty test is that it "does not include punitive damages." Opp. at 11 n.6. In *Sloan v. 1st Am. Auto Sales Training*, Judge Wright used a "'conservative' 1:1 ratio in calculating punitive damages for the CAFA amount in controversy." 2017 U.S. Dist. LEXIS 58476, *8 (C.D. Cal. Apr. 17, 2017) (citing *Bayol v. Zipcar, Inc.*, 2015 U.S. Dist. LEXIS 109027, *17 (N.D. Cal. Aug. 18, 2015) ("even the most conservative estimate of compensatory damages, a 1:1 ratio of punitive damages, . . . Bayol will have easily surpassed CAFA's $5 million threshold"). Here, a 1:1 ratio would put the amount in controversy at $4,024,424 *exclusive of attorney fees*. Even using Kroger's explicitly rejected "25% rule," the amount in controversy would satisfy CAFA's $5 million requirement ($4,024,424 + $1,005,856 = $5,030,280). Thus, Kroger has failed to show with "*legal certainty* that Plaintiff cannot meet the amount in controversy requirement." *Sloan*, 2017 U.S. Dist. LEXIS 58476, *5.

Finally, even if the Court adopted Kroger's incorrect view that jurisdiction changes when a plaintiff decides to narrow her class, this still does not help Kroger, because the Court then has jurisdiction under 28 U.S.C. § 1332(a), as "the matter in controversy exceeds the sum or value of $75,000" and the action involves "citizens of different states." (Hawkins is a California citizen and Kroger is an Ohio and Delaware citizen.)

4

### III. Hawkins Satisfies Rule 23(a)'s Typicality Requirement.

Kroger asserts that "Hawkins's deposition testimony confirms she is uniquely susceptible to Kroger's defenses pertaining to her lack of reliance and causation." Opp. at 15. To the contrary, Plaintiff's deposition and declaration confirm she relied on Kroger's deceptive and unlawful "0g Trans Fat" nutrient content claim. Hawkins Decl. ¶ 4 and Dep. Tr. at 73:4-7 ("I had been purchasing it for a very long time under the assumption that it had zero trans fat because I just looked at the front label."). Moreover, our motion cited controlling authorities that these are objective questions. Mot. at 13-14.

Kroger further argues that Hawkins is uniquely subject to a statute of limitations defense. But the "statute of limitations is a merits determination often not suitable for resolution at the class certification stage." *Beck-Ellman v. Kaz USA, Inc.*, 283 F.R.D. 558, 566 (S.D. Cal. 2012). Further, contrary to Kroger's assertion, the statute of limitations did not <u>begin</u> to run on Plaintiffs' claims until she reasonably discovered the deceptive and unlawful conduct. Here, "Plaintiff did not discover that Defendant's labeling of the Products was false, deceptive, or misleading until August 2015." Compl. ¶ 111. In *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1134, 1142-43 (C.D. Cal. 2010), also a case involving false trans fat claims, Judge Morrow found delayed discovery satisfied because the plaintiff was

> a layperson who is not familiar with the literature regarding the hazards of trans fat and that her lack of inquiry was reasonable because the product label indicated that the margarine was healthy and cholesterol free and did not mention trans fat. . . . suffices to allege inability to have discovered the facts earlier despite reasonable diligence.

*See also Beasley v. Lucky Stores, Inc.*, 2020 U.S. Dist. LEXIS 13211, *16 (N.D. Cal. Jan. 24, 2020) (finding the plaintiff had "adequately pleaded delayed discovery" in a case also involving false "0g trans fat" claim). Further, "the discovery rule uses an objective test that looks not to what the particular plaintiff actually knew but to what a reasonable inquiry would have revealed." *Mills v. Forestex Co.*, 108 Cal. App. 4th 625, 648 (2003). *Accord*, *Flores v. Gain Capital Grp*, 2018 U.S. Dist. LEXIS 222840, *6 (C.D. Cal. Dec.

5

21, 2018) (California's "delayed discovery rule employs an objective reasonable person standard.")

### IV. Hawkins Satisfies Rule 23(a)'s Adequacy Requirement.

Kroger's contention that Hawkins fails to satisfy Rule 23's adequacy requirement, Opp. at 19, is unavailing. "'Only conflicts that are fundamental to the suit and that go to the heart of the litigation prevent a plaintiff from meeting the Rule 23(a)(4) adequacy requirement.'" *Sidibe v. Sutter Health*, 2019 U.S. Dist. LEXIS 181179, *44 (N.D. Cal. Aug. 30, 2019) (quoting *Resnick v. Frank*, 779 F.3d 934, 942 (9th Cir. 2015)).

Kroger's attempt to paint Plaintiff as an uninvolved party who has ceded control of the litigation to counsel fails. Hawkins testified that as a class representative, she "represent[s] anyone who has also experienced the same thing as myself and bought the Kroger bread crumbs under the impression that it had zero trans fat in them." Harper Decl. Ex. 1 at 57. She further demonstrated a basic understanding of the case, testifying "The complaint is about Kroger labeling the packaging right in the front saying zero trans fat and it was false . . . it's in regards to it actually having trans fat in it, but based on the labeling, it says that it doesn't." Harper Decl. Ex. 1 at 72-73.

Kroger further argues that Plaintiff "won't even show up for court-ordered settlement conferences, instead abdicating responsibility to her lawyer." Opp. at 19. But Ms. Hawkins **did attend** the Settlement Conference in this action, and merely asked to leave a bit early so she can drive her schoolbus's afternoon shift (because the high rate of other drivers being ill this winter made taking the day off difficult.) Hawkins Decl. ¶ 5-6, Dkts. 105, 105-1, and 106. Ms. Hawkins has already sat for a lengthy deposition and timely responded to discovery requests. Plaintiff has not "abdicated supervision over the case" as Kroger suggests, Opp. at 19, but has, at all times "demonstrated a continued commitment to litigate this action (which is now over [four] years pending) as lead plaintiff." *Silver v. Pa. Higher Educ. Assistance Agency*, 2020 U.S. Dist. LEXIS 22857, *20 (N.D. Cal. Feb. 7, 2020) (finding class representative adequate where lead plaintiff's "commitment" to the action was "shown by his willingness to participate in discovery

6

[and] depositions"). Finally, when Hawkins said during her deposition that she trusted her lawyer and deferred to his experienced judgment, this shows good sense. *See In re Capacitors Antitrust Litig. (No. III)*, 2018 U.S. Dist. LEXIS 195310, *68 (N.D. Cal. Nov. 14, 2018) ("[O]bjections to adequacy based on a named representative's alleged ignorance are disfavored,' and '[e]ven if the named plaintiffs have relied heavily on the advice of attorneys and others, it is hardly a badge of inadequacy to seek help from those with relevant expertise, particularly in a complex case like this one.").

## V. Hawkins Satisfies Predominance and Superiority

Kroger claims the Class's full restitution damages model fails because Hawkins "offers no . . . evidence that consumers received no value from KBC," Opp. at 20. First, this is a merits argument that is a common to the class. Second, the argument is simply wrong as a matter of fact. There is ample evidence that KBC is so dangerous that it has no value. KBC contained PHO during the entire class period, and PHO is banned in the United States and many other nations because it kills people. And Kroger says there is no evidence the value of KBC is $0! Knowing that KBC has banned and dangerous trans fat added to it, would you would eat it, even if it were free? The expert reports of Drs. Nathan Wong and Beatrice Golomb also show that a reasonable jury could find the unlawful *and* unlawfully labeled KBC had no value.

Under California law, a fraud action can recover the full product price "when plaintiffs prove the product had no value to them." *Farrar v. Bayer AG*, 2017 U.S. Dist. LEXIS 193729, *27 (N.D. Cal. Nov. 15, 2017). In *Allen v. Hylands, Inc.*, 300 F.R.D. 643, 671 (C.D. Cal. 2017), the defendants similarly argued that the "damages model fails to account for the benefit that consumers do obtain from the products." The court found the defendant's argument "demonstrates a fundamental misunderstanding of Plaintiffs' liability theory." *Id.* In fact, "the notion that class members are entitled to full restitution for products with no value—is consistent with Plaintiffs' liability theory." *Id.* Accordingly, the plaintiffs "met the predominance requirement with respect to their theory that the products are worthless." *Id.*

7

Similarly, in *Farar v. Bayer AG*, the plaintiffs presented a "damages model based on their theory that" the fraudulent product had "no value at all, to the majority of Americans." 2017 U.S. Dist. LEXIS 193729, *27 (N.D. Cal. Nov. 15, 2017). The defendants argued that "even if their products do not fulfill the touted health benefits, they are not 'worthless' because they provide essential vitamins and nutrients." *Id.* at *31. The court held it would not resolve the value of the product on a certification motion, but that "Plaintiffs may proceed on their full restitution theory of damages." *Id* at *34.

Here, because Plaintiff's damages model matches her theory of liability, certification is appropriate. *See Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1184 (9th Cir. 2017), *rev'd in part on other grounds*, 139 S. Ct. 710 (2019). "Whether [Plaintiff] could prove damages to a reasonable certainty on the basis of h[er] full refund model is a question of fact that should be decided at trial." *Id.* Further, the idea the Court should deny certification because someone out there *might* have valued KBC slightly despite its false labeling and unlawful use of trans fat was also rejected by the Ninth Circuit: "Customers who purchased rhinestones sold as diamonds should have the opportunity to get all of their money back." *Id.* at 1183 (quoting *FTC v. Figgie Int'l, Inc.*, 994 F.2d 595, 606 (9th Cir. 1993)). It doesn't matter that the rhinestones have some value.

Kroger further argues certification is inappropriate because "whether the statute of limitations may be equitably tolled for each class member will be a highly individualized inquiry." Opp. at 22-23. Judge Huff has rejected the same argument:

> Defendants further argue that Plaintiff Beck-Ellman's claim is atypical because her claims are subject to unique defenses. Namely, Defendants argue that her CLRA, unjust enrichment, and implied warranty claims are time-barred. (Defs.' Opp. at 22.) However, "[g]iven a sufficient nucleus of common questions, the presence of the individual issue of compliance with the statute of limitations" need not bar class certification. *Williams v. Sinclair*, 529 F.2d 1383, 1388 (9th Cir. 1975). **The statute of limitations is a merits determination often not suitable for resolution at the class certification stage**. [citations] The Court therefore concludes that Plaintiff Beck-Ellman's claims satisfy the typicality requirement.

*Beck-Ellman v. Kaz USA, Inc.*, 283 F.R.D. 558, 566 (S.D. Cal. 2012) (emphasis added). *See also Johns v. Bayer Corp.*, 280 F.R.D 551, 560 (S.D. Cal. 2012) ("Under the UCL and

CLRA, whether the class properly includes consumers who purchased before the applicable statutes of limitation is a merits-based, classwide issue.") Thus, Kroger's contention that "individualized issues" relating to statute of limitations arguments preclude certification, fails. Kroger also argues that "materiality issues preclude predominance" because Plaintiff has not produced "surveys" establishing that "the '0g Trans Fat' statement is material across a class." Opp. at 23. However,

> California courts have have explicitly rejected the view that a plaintiff must produce extrinsic evidence such as expert testimony or consumer surveys in order to prevail on a claim that the public is likely to be misled by a representation under the FAL, CLRA, or UCL. With regard to the showing of deception, the primary evidence in a false advertising case is the advertising itself.

*Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1115 (N.D. Cal. 2018) (quoting *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 681-82 (2006) (internal alterations omitted). Further, Kroger's argument "about consumers hav[ing] a variety of reasons for purchasing" KBC is a "merits dispute as to materiality, and is therefore a dispute that can be resolved classwide . . . because materiality is a 'common question' for purposes of Rule 23(b)(3)." *Hadley*, 324 F. Supp. 3d at 1117 (citation omitted). Finally, Kroger's contention that the "0g Trans Fat" statement is not material to consumers is belied by the Ninth Circuit's finding that a "consumer reading the label could be misled into believing that the product was free of trans fat." *Hawkins v. Kroger*, 906 F.3d 763, 771 (9th Cir. 2018). *See also Reid v. Johnson & Johnson*, 780 F.3d 952, 963 (9th Cir. 2015) (finding "No Trans Fat" claim misleading). Finally, Kroger wrongly claims the Ninth Circuit's decision in *Yokohama* is not good law after *Comcast*, and also claims *Lambert* was "reversed in full." In fact, "***Yokoyama* remains the law of this court, even after *Comcast***" and *Lambert* was not reversed in full but "**rev'd on other grounds**." *Huu Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811, 817 (9th Cir. 2019) (emphasis added).

## VI.     <u>The Class Is Ascertainable and Manageable.</u>

Kroger contends the class is not ascertainable because "parties cannot identify the relevant products for the class period." Opp. at 24. This self-serving argument is

9

unavailing. Firstly, there is no dispute as to the "relevant products for the class period." Plaintiff's Complaint unambiguously relates to "Kroger Bread Crumbs" "that contain partially hydrogenated oil." Compl. ¶ 3. Further, the Complaint includes pictures of the products at issue. Compl. ¶ 79. Kroger's contention that it "lacks information sufficient to identify the relevant products during the class period," Opp. at 24, is belied by the product packaging, which listed PHO as an ingredient throughout the class period. To the extent Kroger contends it placed an inaccurate ingredient list on KBC, this would violate FDA regulations.

Likwise Kroger's contention that the class is not ascertainable and manageable because "Hawkins presents no records, and Kroger is aware of none, to identify who purchased these low-value products," Opp. at 24, has been repeatedly rejected. Indeed, the Ninth Circuit expressly rejected the "notion that an inability to identify all class members precludes class certification." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1129 (9th Cir. 2017). Even before this controlling decision, district courts had repeatedly rejected this argument. *See, e.g.*, *Lilly v. Jamba Juice*, 308 F.R.D. 231, 237 (N.D. Cal. 2014) (rejecting argument certification required "records demonstrating which specific individuals" purchased the challenged the challenged product "from the retail outlets").

## VII. <u>Conclusion</u>

This is a straightforward case involving one product, with one false claim, and one illegal ingredient. In large bold letters on the front of every tin of Kroger Bread Crumbs was the phrase "0g Trans Fat." Whether this was untrue is the central question that predominates over the rest. For these reasons, and those in Plaintiff's opening memorandum, the Court should, respectfully, permit this case to proceed as a class action.

DATED: February 24, 2020                Respectfully Submitted,

/s/ Gregory S. Weston
GREGORY S. WESTON

**<u>Counsel for Plaintiff</u>**

10