UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SHAVONDA HAWKINS, on behalf of herself and all others similarly situated,

Plaintiff,

v.

THE KROGER COMPANY,

Defendant.

Case No.:  3:15-cv-02320-JM-AHG

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL AND MOTION FOR SANCTIONS**

**[ECF No. 88]**

This matter comes before the Court on Plaintiff's Motion to Compel Further Responses to Discovery Requests and for an Order of Sanctions and Contempt. ECF No. 88. The Court held a hearing on the Motion on April 8, 2020, and provided a tentative ruling. ECF No. 134. This Order follows.

For the reasons explained in more detail below, Plaintiff's Motion is **GRANTED IN PART** and **DENIED IN PART.**

## I.    BACKGROUND

The Court provided an extensive procedural history of this case in its September 16, 2019 Order Granting in Part Plaintiff's Motion to Compel Discovery (the "September 16 Order"), which is incorporated by reference herein. ECF No. 72 at 1-3. Relevant here, Plaintiff brought this class action on October 15, 2015, bringing state law

1

claims of unfair competition and false advertising pursuant to Cal. Bus. & Prof. Code §§ 17200 *et seq.*, §§ 17500 *et seq.*, and Cal. Civ. Code §§ 1750 *et seq.,* breach of implied warranty of merchantability, breach of express warranty, and violation of the California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* ECF No. 1. Although all of her claims arise under state law, Plaintiff filed the action in federal court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). *Id.* ¶ 1. In support of her claims, Plaintiff contends that Defendant The Kroger Company ("Kroger") sells bread crumb products containing partially hydrogenated oil ("PHO"), a food additive containing artificial trans fat that the FDA determined to be unsafe for use in food in June 2015. *Id.* ¶¶ 3-6. Plaintiff further alleges that Kroger falsely marketed and falsely represented for years that its bread crumb products contained "0g Trans Fat" despite the PHO content. *Id.* ¶ 9.

Plaintiff's proposed putative class is defined as "[a]ll persons who purchased in the United States, on or after January 1, 2008, Kroger bread crumb products containing partially hydrogenated oil." *Id.* ¶ 114. Plaintiff seeks both damages and injunctive relief on behalf of the class. *Id.* ¶¶ 12, 113-115. Significant here, because of the nature of Plaintiff's claims and Plaintiff's proposed class definition, Plaintiff defines "PRODUCTS" as "Kroger Bread Crumbs containing partially hydrogenated oil(s)" in both her Interrogatories and Document Requests.

Discovery in this case commenced on June 6, 2019, following the Ninth Circuit's reversal of the Court's grant of dismissal and the Court's subsequent denial of Defendant's second motion to dismiss. The discovery process has been marked by repeated disputes since the outset. As detailed in the September 16 Order, Plaintiff served her First Set of Interrogatories and Requests for Production on May 15, 2019, and Defendant served its responses on June 17, 2019. ECF No. 72 at 2. Counsel met and conferred telephonically twice and by letter once regarding Plaintiff's position that Defendant's responses were deficient, but counsel were unable to come to an agreement. Defendant served supplemental responses on July 11, 2019, and produced seventeen pages of documents on

July 26, 2019. These seventeen pages were the entirety of Kroger's document production in this case, pending since October 15, 2015, until Kroger produced additional documents following the September 16 Order.

In the September 16 Order, issued by Judge Barbara L. Major, the Court began its discussion by declaring that Defendant's "lengthy objections to each request," lack of "substantive response to any of the interrogatories or RFPs," and failure to "produce any responsive documents or indicate a willingness to produce any documents" constituted "unacceptable" behavior "not in compliance with the spirit or requirements of the Federal Rules of Civil Procedure." ECF No. 72 at 4. Accordingly, the Court concluded that Defendant "ha[d] not made a reasonable effort to satisfy its discovery obligations" and proceeded to go through each of Defendant's objections and arguments on which it relied "to avoid providing substantive discovery[.]" *Id.* at 5.

In a 34-page Order, Judge Major provided a thorough analysis of all outstanding discovery requests and (1) compelled responses or further responses to Plaintiff's Interrogatories ("ROGs") Nos. 1, 3, 4, 5, 7, and 8; (2) denied the motion to compel responses to ROGs Nos. 2 and 6; (3) compelled responses to Plaintiff's Requests for Production ("RFPs") Nos. 1, 2, 4, 5, 6, 7, 8, 10, 11, 16, 18, 20, 24, and 25, and compelled further responses to Plaintiff's RFPs Nos. 14 and 15; (4) granted in part and denied in part the motion to compel a response to Plaintiff's RFP No. 3; and (5) denied the motion to compel responses to Plaintiff's RFPs Nos. 13 and 17. *See* ECF No. 72 at 33-34.

Although the Court will not rehash the entire September 16 Order here, certain portions are especially relevant to the present disputes. First, Judge Major provided a thorough analysis to support her finding that the relevant time period governing Plaintiff's Interrogatories and Requests for Production began January 1, 2010. Judge Major further ordered that the relevant end date for discovery would be the present, except for discovery requests relating to the CLASS PERIOD, which would be limited to the time period of January 1, 2010 – May 31, 2018. ECF No. 72 at 10-13. Judge Major permitted Kroger, however, to shift the discovery end date earlier "[i]f Defendant provides a declaration from

a knowledgeable employee that Defendant stopped selling all relevant products," in which case "the discovery end date will be the date the sales ended." *Id.* at 12. *See also id.* at 34.

Second, Judge Major generally addressed Kroger's objections on the basis of privilege asserted throughout its responses. *Id.* at 13. Judge Major overruled these objections because Kroger had not provided a privilege log and ordered Kroger to "search for and produce responsive documents in accordance with this order." *Id*. If Kroger identified responsive documents that were privileged, Kroger was ordered to comply with the requirements of Rule 26 that a party objecting on the basis of privilege "expressly make the claim" and "describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." *Id.* (quoting Fed. R. Civ. P. 26(b)(5)). Judge Major reiterated that Kroger could not refuse to produce documents on the basis of privilege without providing a privilege log. *Id.* at 34.

Third, Judge Major ordered Kroger to serve supplemental responses no later than October 7, 2019, and reiterated the constraints governing the supplemental responses based on her rulings throughout the order. These constraints included the relevant time period for all of Kroger's responses, the requirement that Kroger provide a declaration from a knowledgeable employee that it stopped selling all relevant products before the end of that time period in order to shorten the discovery end date, the requirement to produce a privilege log if Kroger withheld documents on the basis of privilege, the requirement to conduct a diligent search and produce all documents in Kroger's possession custody, or control, and the requirement that Kroger support any objection that a request seeks confidential, proprietary, or trade secret information with evidence establishing that objection and an explanation why the Protective Order in place is insufficient to protect the information. *Id.* at 34.

After Judge Major issued the Court's September 16 Order, this case was transferred to the undersigned. ECF No. 73. The Court held discovery conferences in this matter on October 9, 2019, October 30, 2019, and November 13, 2019. ECF Nos. 76, 80, 82. During

the October conferences, the Court expressed in no uncertain terms that Kroger's failure to produce any additional documents by the October 7 deadline in the September 16 Order was unacceptable, a finding also memorialized in orders issued after the conferences. *See, e.g.*, ECF No. 77 at 2 (issued October 9, 2019) ("Defendant has still not produced additional documents to Plaintiff beyond the seventeen documents produced on July 26, 2019, in direct contravention of the previously assigned Magistrate Judge's Order granting Plaintiff's Motion to Compel Defendant to respond to Plaintiff's Requests for Production Nos. 1, 2, 4, 5, 6, 7, 8, 10, 11, 14, 15, 18, 20, 24, and 25 in whole and Request for Production No. 3 in part, issuing sanctions for non-compliance, and setting a deadline to serve its compelled responsive documents. Judge Major's Order clearly required responses to document requests by October 7, 2019."); ECF No. 81 at 1-2 (issued November 1, 2019) ("Defendant has still failed to produce any documents beyond the seventeen documents it had produced at the time Judge Major issued the Sanctions Order on September 16, 2019. As discussed during the conference, the Court understands to an extent why Defendant needs more information from third-party suppliers before it can comply fully with the Sanctions Order. Nonetheless, Defendant's representation that it is making a good-faith effort to comply is starkly at odds with its failure to produce a single additional document in the 45 days since the Sanctions Order issued.").

In its November 1 Order, the Court set another discovery conference for November 13, 2019, and required Kroger to: 1) lodge a confidential Discovery Status Report with the Court, providing "the status of Defendant's compliance with *each* discovery item compelled, in whole or in part, by the Sanctions Order;" and 2) verify any currently unverified discovery responses. *Id.* at 2.

The Court has constructed a timeline of Kroger's document production based on the Discovery Status Report, the entirety of Kroger's production lodged with the Court via thumb drive, and the briefing from the parties on the present motion:

(1) **October 4, 2019**: Kroger paid Plaintiff the sanctions ordered by the September 16 Order.

5

(2) **October 7, 2019:** Kroger served its compelled supplemental responses to Plaintiff's RFPs (first supplement) and Plaintiff's ROGs (second supplement) that were subject to the Order. The supplemental responses to the ROGS were not verified as required by Fed. R. Civ. P. 33(b).

(3) **October 11, 2019**: Kroger filed a declaration with the Court affirming it had paid the required sanctions to Plaintiff.

(4) **November 8, 2019:** Kroger provided verifications to its first and second supplemental responses, 359 pages of documents from both its own records and suppliers' records, and a privilege log.

(5) **November 12, 2019**: Kroger provided third supplemental responses to Plaintiff's ROGs, along with a verification of the third supplement, and lodged the Discovery Status Report with the Court.

(6) **November 13, 2019**: The Court set the initial briefing schedule for the present motion to compel further responses, setting a filing deadline of November 22, 2019, but ordering the parties to meet and confer further prior to Plaintiff filing the motion to attempt to resolve disputes if possible.

(7) **November 19** – **November 21, 2019**: The parties met and conferred by letter and email, ultimately agreeing to extend the filing deadline for the motion to compel by six weeks while counsel continued to confer.

(8) **December 2 – December 18, 2019**: Counsel continued to meet and confer by letter.

(9) **December 20, 2019**: Kroger reproduced its prior document production in a searchable format and with metadata, and also made a supplemental email production, for a total of 5,606 pages of documents produced.[1]

---

[1] In the motion to compel, Plaintiff contends Kroger produced 358 pages on November 8 and an additional 5,223 pages on December 20, for a total of 5,581 pages (or 5,598 pages including the original production of 17 documents in July 2019). ECF No. 88-1 at 7. The

(10) **January 8, 2020**: Kroger provided a declaration from employee Joe Evans stating that, based on information gathered from third-party suppliers, "it is likely that Kroger ceased selling bread crumbs containing PHO before mid-2015, though I cannot pinpoint a precise date based on the available records." Kroger relies on this declaration to withhold discovery on bread crumb products sold after the first quarter of 2015.

(11) **January 10, 2020**: Plaintiff filed the instant Motion to Compel and for Sanctions.

## II.   PARTIES' POSITIONS ON THE MOTION TO COMPEL

In the Motion to Compel and for Sanctions, Plaintiff raises disputes related to the following discovery requests, all of which the September 16 Order compelled Kroger to answer or to supplement: (1) RFP Nos. 11 and 20, related to customer complaints and call center feedback for the bread crumb products; (2) RFP No. 2, related to organization charts showing employees involved in research, marketing, advertisement, manufacturing, or development of the product; (3) RFP Nos. 5-8, seeking label exemplars, documents showing when each label was introduced, used, and discontinued, and documents concerning both contemplated and actual changes to the product labels during the class period; (4) RFP Nos. 18 and 24, related to documents concerning the pricing of the product and documents showing total revenue from the sale of the product in California for each year in the class period; (5) ROG No. 1, seeking unit sales and total revenue information for each SKU of the Kroger Bread Crumbs for each quarter of the class period; and (6) ROG No. 5, seeking the period of time during which Kroger manufactured, distributed, or sold the product, and if Kroger contracted with outside companies to manufacture the product, the identities of those companies and the time period Kroger contracted with them.

---

Court finds the difference immaterial and will assume Kroger's numbers are correct for purposes of this order.

With respect to the first two categories (RFP Nos. 2, 11, and 22), Plaintiff does not seek to compel further information or dispute that all responsive documents have been produced, but argues Kroger should be sanctioned for untimely responses, because Kroger did not produce responsive documents to the requests until November 8, 2019. ECF No. 1 at 8, 12. Plaintiff also does not contend that documents with pricing data in response to RFP No. 18 have not been produced, but argues that they were untimely produced, and further that the form of production—printed and scanned spreadsheets stripped of metadata and showing a print date of November 7, 2019, despite the documents being last updated in October 2015—demonstrates Kroger's contempt of the September 16 Order. *Id.* at 9.

As for the remainder of the discovery requests outlined above, Plaintiff avers that many documents and other discovery requests have still not been produced or fully answered despite being compelled, primarily responsive information regarding unit sales of Kroger Bread Crumbs and total revenue derived from those sales between 2010-2012 and from after the first quarter of 2015 (ROG No. 1), documents related to labels and label changes, particularly documents concerning the decision to add the "0g trans fat" statement to the labels of Kroger Bread Crumbs (RFPs Nos. 5-8), and information regarding the time period during which Kroger contracted with its third-party suppliers (ROG No. 5). *Id.* at 9-14. Plaintiff also argues that some of Kroger's documents are "heavily and inexplicably redacted[,]" without corresponding entries in the privilege log. *Id.* at 14. Finally, Plaintiff argues that Kroger's privilege log was not timely produced and remains insufficient. Plaintiff therefore contends that Kroger has waived its privilege claims and should be forced to produce the documents or unredacted versions of the documents on the log, or, alternatively, that Kroger should produce the documents on the privilege log to the Court for *in camera* review. *Id.* at 16-18.

Kroger's position on all disputed requests relies on three broad umbrella arguments, each of which applies to more than one request.

<u>Argument #1: Kroger Could Not Produce Documents Until It Confirmed Through Third Parties Which of Kroger's Products Contain PHO</u>

First, and perhaps most significantly, Kroger argues that it needed to obtain information from third-party suppliers before it could produce any documents because Plaintiff defined PRODUCT in her discovery requests as "Kroger Bread Crumbs containing partially hydrogenated oil(s)." Based on this definition, Kroger asserts that answering any of Plaintiff's requests "required identifying the products that actually contain partially hydrogenated oil." This should have been an easy inquiry, since the ingredient lists on Kroger's labels for certain bread crumbs expressly state that they contain PHO. But at this juncture, Kroger veered away from a reasonable approach and instead seized on an unreasonable interpretation of the definition of "PRODUCT" to create an opening to delay and avoid discovery altogether.

Kroger claimed that, despite its own product labels, it could not "actually determine which private label bread crumbs contained partially hydrogenated oil during what time period without cooperation from third-party suppliers, who exclusively hold that information." ECF No. 99-1 at 3. Therefore, after the September 16 Order was issued, Kroger justified its failure to produce additional information by claiming it first had to reach out to third-party suppliers from throughout the relevant discovery period to obtain confirmation that the bread crumb products they supplied did or did not in fact contain PHO. Kroger's counsel describes these efforts in a declaration attached to the opposition. ECF No. 99-1, Canner Decl. ¶¶ 9, 11, 14. However, Kroger did not receive responses to its inquiries from all of its suppliers from the relevant time period. To the extent Kroger did receive responses from suppliers that certain bread crumb products did contain PHO during the relevant time period, Kroger produced information only on those products.

Essentially, Kroger delayed discovery based on the position that it does not know what ingredients are in the products it sells to consumers, implying that its own product labels are inherently unreliable. Kroger raised this umbrella argument consistently during the Court's discovery conferences in October and November 2019 to explain why it had

made no further document production, and it also appears in Kroger's supplemental written discovery responses served after the September 16, 2019 Order. For example, in response to ROG No. 1, Kroger's Third Supplemental Response states: "For 2010, 2011, and 2012, and potentially part of 2013, Kroger is not able to determine which products contain breadcrumbs sourced from suppliers that did or did not use PHO." Kroger's Third Supp. Resp. to ROG No. 1. Additionally, Kroger asserts that "[b]ecause multiple suppliers provided breadcrumbs for the same UPC in at least one year[,]" and "[b]ecause revenue information is maintained per UPC code, without information regarding the content of its products, Kroger cannot specify the revenue of relevant products (containing PHO) during at least 2013." *Id.*

Based on this inability to rely on the ingredient listings on its own product labels, Kroger took the position that it was reasonable to assume that ***none*** of its products contained PHO unless that could be confirmed through an independent follow-up inquiry with each of its suppliers from throughout the class period. For that reason, Kroger asserts it was appropriate to withhold ***all*** documents from Plaintiff—including internally held documents—until it received this confirmation from third-party suppliers.

Argument #2: The September 16 Order Did Not Set a Deadline for Production of Documents

Second, with respect to the responses that Plaintiff asserts were untimely, Kroger offers another broad argument that the September 16 Order did not set forth a deadline for document production. Therefore, Kroger contends it only needed to produce documents within a "reasonable" amount of time. This argument is related to the first, because Kroger argues that the reasonableness of the timing of its production hinges on how much time it took to obtain PHO content information from third-party suppliers. *See* ECF No. 99 at 12 ("The Court's order did not specify a deadline for Kroger's document production. Kroger understood the order to require it to produce the documents within a reasonable time (i.e., as soon as Kroger obtained from third-party suppliers information allowing it to determine which 'products' 'contain[ed] partially hydrogenated oil'))."

<u>Argument #3: Plaintiff Failed to Adequately Meet and Confer</u>

Third, Kroger asserts that Plaintiff's motion raises numerous issues that were either already resolved through the meet-and-confer process, or are otherwise unripe because Plaintiff's counsel never raised them during meet-and-confer.

As for remedies sought, in addition to asking the Court to compel further responses to outstanding discovery requests, Plaintiff seeks sanctions for untimely production and non-compliance with the September 16 Order. Specifically, Plaintiff requests (1) leave to file a motion for fees pursuant to Fed. R. Civ. P. 37(b)(2)(C) if her motion to compel is granted in substantial part; (2) civil contempt sanctions in the form of a coercive sanction of $200 per diem payable to the Court until Kroger fully complies with all outstanding discovery requests; and (3) exclusion of any document subject to the September 16 Order that was not produced by December 31, 2019, pursuant to Fed. R. Civ. P. 37(b)(2)(A)(ii).

Kroger argues sanctions are unwarranted generally based on the arguments outlined above. With respect to contempt sanctions, Kroger asserts that even if the Court finds it was not in compliance, there was not intentional non-compliance due its good-faith reading of the September 16, 2019 Order as being silent on a production deadline. Kroger further notes that Magistrate Judges cannot directly issue contempt sanctions pursuant to 28 U.S.C. § 636(e) and must instead certify facts to the District Judge. With respect to exclusionary sanctions, Kroger also argues that Plaintiff has failed to show prejudice, a showing which Kroger contends is required to warrant sanctions under Rule 37(b)(2).

## III.   LEGAL STANDARD

The scope of permissible discovery is dictated by Rule 26 of the Federal Rules of Civil Procedure, which permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). In considering relevance and proportionality, the Court looks to "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed

discovery outweighs its likely benefit." *Id.* Evidence need not be admissible to be discoverable. *Id.*

Rules 33 and 34 of the Federal Rules of Civil Procedure govern interrogatories and requests for production. Specifically, Rule 33 provides that "[a]n interrogatory may relate to any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(2). Similarly, Rule 34 governs requests for production and allows a party to serve on any other party "a request within the scope of Rule 26(b) . . . to produce and permit the requesting party or its representative to inspect, copy, test, or sample . . . items in the responding party's possession, custody, or control[,]" including, *inter alia*, documents and electronically stored information. Fed. R. Civ. P. 34(a). "Control is defined as the legal right to obtain documents upon demand." *United States v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989) (citing *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984)). The party seeking production of the documents bears the burden of proving the opposing party has such control. *Int'l Union*, 870 F.2d at 1452. *See also Porter v. Gore*, No. 18CV1221-GPC-LL, 2020 WL 1493615, at *1 (S.D. Cal. Mar. 27, 2020) ("Actual possession, custody or control is not required. Rather, '[a] party may be ordered to produce a document in the possession of a non-party entity if that party has a legal right to obtain the document or has control over the entity who is in possession of the document.'") (quoting *Soto v. City of Concord*, 162 F.R.D. 603, 619 (N.D. Cal. 1995)).

The Rules also set forth the permissible timing, form, and scope of answers and objections to written discovery. The responding party must serve its answers and any objections to interrogatories and requests for production within 30 days after being served with the requests, unless otherwise stipulated or ordered by the court. Fed. Rs. Civ. P. 33(b)(2); 34(b)(2)(A). The grounds for an objection must be stated with specificity. Fed. Rs. Civ. P. 33(b)(4); 34(b)(2)(B). With respect to requests for production, the responding party must state whether any responsive materials are being withheld on the basis of that objection. Fed. R. Civ. P. 34(b)(2)(C). The production of responsive documents must be

completed no later than the time specified in the request "or another reasonable time specified in the response." Fed. R. Civ. P. 34(b)(2)(B). Additionally, the person who answers interrogatories must verify the responses by signing them. Fed. R. Civ. P. 33(b)(5). *See also Hash v. Cate*, No. C 08-03729 MMC DMR, 2012 WL 6043966, at *3 (N.D. Cal. Dec. 5, 2012) ("[I]nterrogatory responses . . . must contain facts, and the party responding must verify that those facts are true and correct to the best of his knowledge.").

## IV.   DISCUSSION

As outlined above, Kroger relies heavily on certain broad, umbrella arguments in responding to Plaintiff's motion. The Court will address the first two umbrella arguments before turning to the specific categories of discovery at issue in Plaintiff's motion. Since the third argument is relevant only to Kroger's purportedly untimely responses, the Court will address this point in its discussion in part IV.C regarding Kroger's failure to produce any additional documents by October 7, 2019.

### A. Kroger's Argument that it Needed to Obtain Information from Third Parties Regarding PHO Content Before Supplementation

With respect to all discovery requests, Kroger contends that it was relying on Plaintiff's definition of "PRODUCT" in her discovery requests as "Kroger Bread Crumbs containing partially hydrogenated oil(s)." *See* ECF Nos. 99 at 18 n.5; 99-1 at 2. Accordingly, Kroger argues it was not required by the September 16 Order to produce any discovery related to bread crumb products sold during the class period unless Kroger obtained definitive confirmation from its third-party suppliers that those products actually contained PHO. And, because Kroger has only been able to obtain confirmation from suppliers that its bread crumb products contained PHO between 2013 and the first quarter of 2015, it has not provided discovery regarding any bread crumb products sold during the remainder of the class period, even if Kroger sold those products with an ingredient label that expressly stated that they contain PHO. Further, Kroger argues that "Judge Major's [September 16] Order conditioned relevance of documents on whether certain products actually contained PHO." ECF No. 99 at 13.

1    Kroger's reading of the September 16 Order is inexplicable. Notably, Kroger offers
2    no citation to the order itself to support its contention that the order "conditioned relevance
3    of documents on whether certain products actually contained PHO." Contrary to this
4    argument, in the September 16 Order, Judge Major set the relevant time period for
5    discovery as January 1, 2010 – present, or January 1, 2010 - May 31, 2018, with respect to
6    requests seeking responses from the class period. More importantly, Judge Major placed
7    the burden on **_Kroger_** to establish that the relevant time period should be shorter by
8    "provid[ing] a declaration from a knowledgeable employee that Defendant stopped selling
9    all relevant products" in order to change the discovery end date to "the date the sales [of
10   relevant products] ended." ECF No. 72 at 34. In other words, Kroger bore the burden to
11   show lack of relevance of any responsive discovery within its possession, custody, or
12   control regarding bread crumbs sold within the Court-ordered relevant time period by
13   establishing the bread crumbs did not contain PHO. The only way around the Court's
14   established time period was to provide the required declaration. Kroger flagrantly reads
15   this burden out of the September 16 Order by continuing to insist that it was acceptable to
16   withhold information on any products Kroger could not affirmatively prove contained
17   PHO.

18        Additionally, even if the Court accepted Kroger's argument that it can withhold
19   information regarding bread crumb products that it is unable to affirm contain PHO, Kroger
20   fails to explain why such information is not within its possession, custody, and control. A
21   party responding to a request for production of documents must produce all relevant
22   documents in its "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). As explained
23   in the September 16 Order, Rule 34 also requires the responding party to "conduct a
24   reasonable inquiry into the factual basis of his responses to discovery. Based on that
25   inquiry, a party responding to a request for production 'is under an affirmative duty to seek
26   that information reasonably available' to it and make an appropriate production of
27   responsive documents." *Hartline v. Nat'l Univ.*, 2018 WL 1014611, at *3 (E.D. Cal. Feb.
28   22, 2018) (quoted at ECF No. 72 at 16). In other words, not only must the responding party

produce relevant documents within its possession, custody, and control, but it is also under an affirmative obligation to seek out reasonably available information to determine which documents are relevant.

Here, Kroger argues it could not obtain the necessary information from third-party suppliers because bread crumb formulas are proprietary and in the exclusive ownership of the supplier, and Kroger is generally only given information needed to design the label. However, the information "needed to design the label" includes the ingredient list. The Court's review of Kroger's production shows that Kroger's suppliers provide complete information regarding the ingredients of all of its products, including plain, garlic, and Italian-style Kroger Bread Crumbs in particular. Kroger produced numerous vendor specification forms that vendors are required to complete to provide Kroger information for its use in creating the nutrition label. The information vendors are required to provide includes a **complete ingredient list**. Plaintiff's counsel Gregory Weston represented during the hearing that Kroger's 30(b)(6) representative testified that she is unaware of any instance between 2008 and 2016 when Kroger Private Label products had inaccurate ingredient lists, and further that Kroger relies entirely on supplier information to create and/or make changes to the ingredient lists on the packaging. The Court's independent review of the 30(b)(6) deposition transcript, which was provided to the Court *in camera*, confirms that Mr. Weston's description of the testimony is accurate. Kroger offers no explanation why a vendor specification document listing PHO as an ingredient, which Kroger routinely relies on to create and/or change the nutrition labels on its own bread crumb products, is somehow insufficiently reliable to determine which products contain PHO for purposes of discovery in this litigation.

Additionally, many of the product specification forms are labeled "CONFIDENTIAL INFORMATION for Kroger internal use only!" During the hearing, counsel for Kroger Jacob Harper represented that all the specification forms are held by third-party suppliers and were obtained from them during discovery, but gave no

explanation why some of these documents are labeled as though they are internal Kroger documents.

Moreover, the Court's review of Kroger's production shows that Kroger employees involved in regulatory review of product labels routinely rely on ingredient information from vendor specifications to ensure the labels are compliant with applicable federal regulations for food labels. Kroger produced documents showing two different employees involved in "Regulatory Review Artwork" making notes on certain labels such as, "Spec states there are 1.74g fat per 100g, which is 0.52g for this serving size" to support a request that the Total Fat be changed from 0 g to 0.5 g and 1% DV, and "[I]f we make this [0g trans fat] claim, then we need to list polyunsaturated and monounsaturated fat in the Nutrition Facts." Further, although unrelated to trans fat content, one "Regulatory Review Artwork" employee noted that a proposed label disclaimer stating "See Nutrition Information for Sodium Content" was "not required since the product contains less than 480mg sodium per 50g," a reference to 21 C.F.R. § 101.13(h)(1) ("If a food . . . contains more than . . . 480 mg of sodium . . . per 50 g, . . . then that food must bear a statement disclosing that the nutrient exceeding the specified level is present in the food as follows: "See nutrition information for __ content" with the blank filled in with the identity of the nutrient exceeding the specified level").

These documents clearly reveal that Kroger employees use the information from vendor specification forms regarding the ingredients of their products to design the product labels in compliance with applicable federal regulations. As stated during the hearing, the Court cannot fathom why any additional information was required from third-party suppliers between September 2019 and the present to determine the PHO content of Kroger's breadcrumb products, when those suppliers had already provided complete ingredient lists to Kroger for all such products years ago in the vendor specification forms, and Kroger previously found those specifications sufficiently reliable to meet their food labeling obligations under federal law. Indeed, as a major food distributor, Kroger's representations to the Court that it has no information available to it about the ingredients

in the products it sells would be downright alarming if truly made in good faith. Kroger's evasiveness is akin to claiming one would have to obtain an original birth certificate before knowing one's name.

Notably, the Court already found in its September 16 Order, with respect to Defendant's failure to identify its manufacturer(s) of its bread crumb products, that "the deficiency of Defendant's search and inquiry efforts" as required under Rule 34 "is highlighted by Plaintiff's allegation that some of the information Defendant contends is not in its possession, custody, or control is information Defendant is required to have under state and federal law since Defendant is listed on the product labels as the 'responsible party.'" ECF No. 72 at 17. The same conclusion holds true here. The Food and Drug Administration ("FDA") issued a Final Determination Regarding Partially Hydrogenated Oils on June 17, 2015, requiring manufacturers to remove PHO from their products by 2018. *See* 80 Fed. Reg. 34650-01, 2015 WL 3747326 (June 17, 2015). *See also Backus v. Conagra Foods, Inc.*, No. C 16-00454 WHA, 2016 WL 3844331, at *1-*3 (N.D. Cal. July 15, 2016) (discussing the FDA determination). The Court's own review of Kroger's production shows that Kroger was aware of the FDA determination and launched an internal program in 2016 to "[r]emove PHO from all eligible items due to new government regulations." TKC 000212. It is unclear how Kroger could possibly succeed in that project unless it has a legal right to obtain information regarding which of its products contain PHO. During the hearing on the present motion, counsel for Kroger noted that this project required the assistance of third-party suppliers to determine which products contained PHO. However, to the extent this fact confirms that Kroger relies on third-party suppliers to determine the PHO content of its products, it acts as a double-edged sword for Kroger's argument here. That is, if Kroger became legally bound by the FDA determination to stop selling products containing PHO, and relied entirely on supplier information to ensure it was no longer doing so, the Court finds it incredible that Kroger would consider the ingredient information obtained from previous suppliers to be unsuitable for the ***very same purpose*** of determining the PHO content of its products to answer discovery requests here.

In sum, Kroger has not adequately explained why information regarding the ingredients in its own products is not "reasonably available" to it, and indeed the evidence before the Court shows that Kroger is responsible for knowing whether there is PHO in its products. Therefore, Plaintiff has sufficiently established that Kroger has possession, custody, or control over the information regarding which of its products contain PHO. *See Porter v. Jennings*, No. 1:10-CV-01811-AWI, 2012 WL 1434989, at *1 (E.D. Cal. Apr. 25, 2012) ("Actual possession, custody or control is not required. A party may be ordered to produce a document in the possession of a non-party entity if that party has a legal right to obtain the document or has control over the entity who is in possession of the document.") (internal quotations and citation omitted). The Court cannot countenance Kroger's refusal to produce responsive documents pertaining to **all** Kroger Bread Crumb products whose ingredient lists contained PHO during the relevant time period. *See Hartline*, 2018 WL 1014511, at *3.

More importantly, even if Kroger truly has no ability to obtain information regarding which of its products used to contain PHO between 2010 and 2012, that would not change the Court's conclusion regarding the sales and revenue data at issue in ROG No. 1. As already explained, Kroger improperly shifts the burden placed on it by the September 16 Order by insisting that it is entitled to withhold documents pertaining to breadcrumbs that it cannot affirm contained PHO, even if the labels on those breadcrumbs listed PHO as an ingredient. Kroger's position on this point is untenable. Kroger's response to ROG No. 1 encompasses sales and revenue data from 2013, 2014, and the first quarter of 2015. However, ROG No. 1 requested such data from the entire CLASS PERIOD, and the September 16 Order states clearly that the relevant time period for discovery with respect to such requests is January 1, 2010 through May 31, 2018, ***absent a declaration from a knowledgeable employee stating that Kroger stopped selling all relevant products before that end date***. ECF No. 72 at 12, 34. Yet Kroger failed to timely produce the required declaration of a knowledgeable employee establishing that no relevant products were sold outside of the 2¼-year period for which Kroger provided responsive information.

Moreover, once Kroger finally produced a declaration on January 8, 2020 (more than three months after the deadline set by the Court), the declaration failed to establish that the employee who created it, Joe Evans, was indeed knowledgeable regarding when Kroger stopped selling breadcrumbs containing PHO. Rather, the Evans Declaration states:

> [I]n 2016, in consultation with third-party suppliers[,] Kroger undertook a formal initiative to confirm that the use of partially-hydrogenated oils (PHO) in bread crumbs and other products ceased. It is my and Kroger's understanding that supplies of Kroger private label breadcrumbs no longer contained PHO after 2016. . . . I understand that during the course of this litigation, Kroger has gathered information from third parties indicating that there was only one supplier of Kroger bread crumbs during 2015 whose products contained PHO. I further understand that the supplier . . . has informed Kroger that it ceased using PHO in the bread crumbs sold to Kroger by the end of the first quarter of 2015. . . . Thus, it is likely that Kroger ceased selling bread crumbs containing PHO before mid-2015, though I cannot pinpoint a precise date based on the available records.

ECF No. 99-1 at 49-50, Evans Decl. ¶¶ 2, 3.

This declaration indicates that Mr. Evans's information is all second- or even third-hand, and no source whatsoever is identified for much of the information. Mr. Evans's equivocal "it is likely" language affirms that he lacks the necessary knowledge to establish an end date. Worse yet, the declaration is silent as to whether breadcrumbs containing PHO were sold between January 1, 2010 and the last quarter of 2012. Kroger offers no acceptable justification for failing to respond to ROG No. 1 with sales and revenue data from 2010-2012. Although Kroger's Third Supplemental Response to ROG No. 1 states, "For 2010, 2011, and 2012, and potentially part of 2013, Kroger is not able to determine which products contain breadcrumbs sourced from suppliers that did or did not use PHO[,]" Kroger has never asserted, by declaration or otherwise, that its breadcrumbs sold between 2010-2012 and potentially during 2013 did *not* contain PHO. The September 16 Order plainly required such a declaration to cut the relevant discovery period short.

Permitting Kroger to rely on this declaration to withhold sales information, while also crediting Kroger's claim that information regarding which of its products contained

PHO is not reasonably available to it, would give Kroger the benefit of its ignorance on both ends. Again, the September 16 Order is clear that Kroger's response to ROG No. 1 must include information from the entire class period, unless Kroger "provides a declaration from a knowledgeable employee that Defendant stopped selling all relevant products," in which case "the discovery end date will be the date the sales ended." ECF No. 72 at 12, 34. Kroger cannot rely on its purported inability to obtain such information to withhold discovery from 2010-2012, while simultaneously relying on the Evans Declaration as one from a "knowledgeable employee" to withhold discovery from after the first quarter of 2015.

Accordingly, with respect to *all discovery requests at issue*, Kroger is **ORDERED** to supplement its responses by reasonably construing the definition of the word PRODUCT to include Kroger Bread Crumbs listing partially hydrogenated oil(s) as an ingredient. The Court finds this construction is reasonable and appropriately reflects that the ingredient lists Kroger includes on its products are sourced from supplier information sufficiently reliable to meet Kroger's FDA obligations, and thus sufficiently reliable for Kroger to use to determine the PHO content of its products for purposes of this litigation. This construction also does not leave room for Kroger's gamesmanship of disavowing such basic knowledge as the ingredients in its own products.

Furthermore, in making these supplementations, Kroger must treat as the relevant time period January 1, 2010 through *the date that Kroger stopped selling bread crumb products listing PHO as an ingredient*. If Kroger contends that information regarding when it stopped selling bread crumb products listing PHO as an ingredient is not within its possession, custody, or control, Kroger's supplement must treat the relevant time period as either January 1, 2010 – present, or as January 1, 2010 – May 31, 2018 if the requests pertain to the class period, as originally ordered by Judge Major.

### B. Kroger's Argument that Certain Issues are Unripe or Already Resolved

Kroger asserts that many of the issues in the motion have already been resolved or were never raised in the meet-and-confer process. In particular, Kroger believes it is

improper for Plaintiff to raise: (1) Kroger's disclosures regarding California revenues, because Kroger produced a document reflecting quarterly revenue for the products between 2010 and 2016, and Plaintiff's counsel stated during the meet-and-confer process that the document was sufficient to fulfill Kroger's discovery obligations; (2) issues related to pricing data in response to RFP No. 18, and Plaintiff's related metadata argument, because Kroger already re-produced the same documents with metadata pursuant to a compromise with Plaintiff; (3) issues related to any label changes that pre-date the applicable discovery period beginning in 2010, because they are not subject to the discovery order and all relevant documents have been produced; and (4) any purported insufficiency of Kroger's privilege log, because Kroger offered to supplement the privilege log in its last meet-and-confer letter if Plaintiff's counsel specified the supplementation sought, and Plaintiff's counsel did not respond.

   i. Revenue Data

   With respect to revenue data, Kroger avers that Plaintiff's counsel stated in his December 3, 2019 meet-and-confer letter that he deemed Kroger's production of a document reflecting quarterly revenue for Kroger Bread Crumb products from 2010 through 2016 "sufficient to fulfill [Kroger's] discovery obligations with respect to Plaintiff's requests seeking revenue data." ECF No. 99 at 18 (quoting ECF No. 99-1 at 38). However, read in full, this statement comes from the portion of the letter regarding Kroger's failure to produce a declaration from a knowledgeable employee that Kroger stopped selling all relevant products on a certain date. Counsel for Plaintiff stated that, "*to the extent Kroger provides such a declaration*, Plaintiff will deem Kroger's statement that it 'has already produced revenue and sales information beyond the relevant time period . . .' sufficient to fulfill its discovery obligations with respect to Plaintiff's requests seeking revenue data." ECF No. 99-1 at 38 (emphasis added).

   Given that Plaintiff also devotes a portion of the motion to compel to her position that the declaration is untimely and insufficient, the Court finds this matter was not resolved during the meet-and-confer process. Moreover, the September 16 Order *required* Kroger

to produce such a declaration as a prerequisite for shortening the relevant discovery period for production—contrary to Kroger's position, the offer to fulfill this Court-ordered obligation by Kroger's counsel in its November 21, 2019 hardly represents a compromise. *See* ECF No. 99-11 at 22-23 ("Kroger identified in its ***verified Interrogatories*** . . . that Kroger stopped selling bread crumbs containing PHO no later than 2016, and include[d] verification by a knowledgeable employee. . . . Kroger has complied with the Order through its verified Interrogatory responses. Nevertheless, in an effort to offer compromise, on or before December 3, 2019, Kroger is open to providing a stand-alone declaration from the employee who verified the Interrogatory responses"). Therefore, the portion of the letter quoted by Kroger to show this issue was "resolved" in fact related to an active dispute regarding the missing declaration. The issue is thus not improperly raised for the reason argued.

However, a review of Kroger's production confirms that Kroger did produce documents showing quarterly revenue data from the entire relevant time period of 2010-2016, as requested by RFP No. 24 (seeking "DOCUMENTS sufficient to show or calculate YOUR total revenue from the sale of the PRODUCT in California for each year in the CLASS PERIOD."). Therefore, there is nothing to compel with respect to that document request. To the extent Plaintiff's motion seeks to compel a further response to RFP No. 24, it is **DENIED**. As for the sales and revenue information provided in response to ROG No. 1, the Court has already addressed that issue in part I.A. above.

ii. Pricing and Metadata

As for whether the pricing and metadata issues were resolved with respect to the documents responsive to RFP No. 18, the Court agrees that Plaintiff's metadata argument was resolved through the meet-and-confer process. The "print date" is not reflective of when the documents were created or edited. However, as discussed further below, the Court notes that Kroger's production of printed versions of ESI was in violation of Rule 34 generally, and Kroger's failure to produce these internal documents before November 8, 2019 is untimely and unjustified. A meet-and-confer process should not have been

necessary to obtain these documents, nor should they have been withheld for nearly six weeks after their production was compelled. As Plaintiff points out, and as Kroger does not dispute, documents showing pricing information were internal to Kroger. The Court finds sanctions are warranted for the untimely production and improper form of production. Appropriate sanctions are discussed in more detail below.

### iii. Documents Related to Labels and Label Changes

Kroger argues that Plaintiff's contention that it failed to produce all relevant documents responsive to RFPs Nos. 5-8, related to labels and label changes, is a "new issue" and that Plaintiff seeks "label changes that pre-date the applicable period of 2010." ECF No. 99 at 23. Because Judge Major ordered Kroger to respond to or supplement its responses to these requests (ECF No. 72 at 27-28), the issue is ripe with or without additional meet-and-confer discussions after the order was issued.

In the September 16 Order, Judge Major ordered Kroger to provide a further response to RFP No. 6, seeking "[a]ll DOCUMENTS showing the period of time during which each PRODUCT LABEL was introduced, used, and discontinued." ECF No. 72 at 27-28. While Kroger did produce documents showing labeling changes, including the removal of the "0g trans fat" label, Plaintiff asserts the production is insufficient because Kroger has failed to produce documents sufficient to show the time period during which each label variation was used. ECF No. 107 at 9. The Court agrees with Kroger that documents from before the relevant start date of January 1, 2010 need not be produced. *See, e.g.*, *MGA Entm't, Inc. v. Nat'l Prods.*, No. CV 10-07083-JAK-SSx, 2011 WL 4550287, at *4 (C.D. Cal. Oct. 3, 2011) ("A court cannot order a party to produce documents that do not exist. Plaintiffs' mere suspicion that additional documents exist does not justify a motion to compel.") (collecting cases). However, to the extent Kroger has the legal right to obtain any documents showing the period of time during which the labels on its Kroger Bread Crumb products were introduced, used, and discontinued between 2010 and 2016, Kroger is **ORDERED** to produce them upon supplementation, and in doing so,

Kroger must comply with the Court's ruling above regarding the reasonable construction of "PRODUCT."

### C. Requests Not Timely Answered

Plaintiff argues Kroger should be sanctioned for failing to produce any documents responsive to Plaintiff's RFPs Nos. 2, 11, and 20, related to organization charts of Kroger employees and customer complaints and call center feedback for the bread crumb products, until November 8, 2019. Kroger concedes that it produced no further documents whatsoever in response to Plaintiff's discovery requests until November 8, 2019. However, Plaintiff does not assert that any documents remain to be compelled with respect to these requests, and Kroger argues that the September 16 Order only required Kroger to make supplemental document production within a "reasonable" time.

The Court first addresses Kroger's argument that the September 16 Order was "silent" on a deadline for production. The Court finds there is no good-faith reasonable basis for such a reading of the Order. In support of its position, Kroger quotes from one sentence of the order's Conclusion section, which reads: "Defendant must produce responses for the time periods described above and must conduct a diligent search and make reasonable inquiry to produce all responsive documents in its possession, custody, or control." ECF No. 72 at 34. It is true that the deadline for production is not set forth in this particular sentence. Yet with the benefit of the preceding five sentences, a clear governing deadline is evident:

> The time period for Defendant's responses is January 1, 2010 through present day for all requests except those seeking responses from the CLASS PERIOD which is defined by Plaintiff as January 1, 2010 – May 31, 2018. If Defendant provides a declaration from a knowledgeable employee that Defendant stopped selling all relevant products, then the discovery end date for all discovery requests will be the date Defendant stopped selling the product. Defendant must serve its responses on or before **October 7, 2019**.
>
> ***When producing its supplemental responses***, Defendant must comply with the Court's rulings on its general objections and arguments. The Court has found Plaintiff's requests to be relevant, proportional, and not premature. Defendant must produce responses for the time periods described above and

24

must conduct a diligent search and make reasonable inquiry to produce all responsive documents in its possession, custody, or control. . . .

ECF No. 72 at 34 (second emphasis added). The Court went on to set forth additional requirements for the supplemental responses, including that Defendant must produce a privilege log if it withheld documents on the basis of privilege, and must support any objections to requests as seeking confidential or proprietary information with evidence and explain why the Protective Order is insufficient to protect such information. *Id.*

Thus, read in context, it is quite clear that the deadline of October 7, 2019 (set forth in bold and underlined in the original September 16 Order) was one of ***many*** mandatory requirements the Court imposed on Defendant's compelled supplemental responses. And to the extent Kroger misunderstood the Order, the Court made it clear during both October discovery conferences that the production deadline was October 7, 2019. Therefore, any argument that counsel's reading of the Order as being silent on a production deadline was in good faith or reasonable evaporated in light of the Court's direct, repeated, and on-the-record clarifications of its meaning.

Finally, even if Kroger's reading of the September 16 Order were correct, Kroger offers no reason why it could not produce the documents at issue prior to November 8, 2019, and, upon review of the documents in question, the Court finds it entirely unreasonable that Kroger failed to do so. To elucidate, the Court turns to the specific requests and responsive documents at issue.

i.   <u>Customer Complaints and Organization Charts</u>

In the September 16 Order, the Court granted Plaintiff's motion to compel responses to RFP Nos. 11 and 20 "if they concern trans fat or PHO." ECF No. 72 at 24-25. These requests read as follows:

REQUEST FOR PRODUCTION NO. 11: All DOCUMENTS referencing or reflecting any call center feedback for the PRODUCT.

REQUEST FOR PRODUCTION NO. 20: Any COMMUNICATION between YOU and any customer in response to any complaint about the ingredients in the PRODUCT.

The Court also granted Plaintiff's motion to compel response to RFP No. 2, which reads:

REQUEST FOR PRODUCTION NO. 2: All organization charts showing employees who, during the CLASS PERIOD, were involved in research, MARKETING, ADVERTISEMENT, manufacturing, or development of the PRODUCT. *Id.* at 25-26.

Kroger does not dispute that it produced zero documents responsive to these three RFPs until November 8, 2019. However, Kroger argues that Plaintiff concedes all relevant documents have now been produced, and thus there is nothing to compel. In taking such a position, Kroger has failed to act in compliance with the spirit of the Federal Rules of Civil Procedure. *See Mathias v. Jacobs*, 167 F. Supp. 2d 606, 623 (S.D.N.Y. 2001) ("The Federal Rules of Civil Procedure envision liberal pre-trial discovery. Discovery serves important purposes, such as avoiding surprise, fully disclosing the nature and scope of the controversy, narrowing, simplifying, and framing the issues involved, and enabling parties to obtain the factual information needed to prepare for trial. Rules governing discovery should be interpreted broadly to achieve those purposes.") (citation omitted); *see also Trevino v. Celanese Corp.*, 701 F.2d 397, 405 (5th Cir. 1983) ("Rule 1 of the Federal Rules of Civil Procedure directs that the rules 'shall be construed to secure the just, speedy, and inexpensive determination of every action.' 'There probably is no provision in the federal rules that is more important than this mandate. It reflects the spirit in which the rules were conceived and written, and in which they should be, and by and large have been, interpreted. The primary purpose of procedural rules is to promote the ends of justice.'") (quoting 4 C. Wright and A. Miller, Federal Practice and Procedure § 1029 (1969)).

There is no reason offered and no justification available for withholding documents showing call center feedback and communications with customers regarding complaints concerning trans fat or PHO, or employee organization charts, for a full month after the Court set its deadline for production. Counsel for Kroger acknowledges in her declaration attached to Defendant's opposition that the 359-page document production Kroger made on November 8, 2019 included "documents it identified as potentially responsive—***from***

26

***both its own records*** and suppliers'—even though it may include non-relevant bread crumb products." ECF No. 99-1 at 7 (emphasis added). Consistent with this representation, Kroger stated in its November 12 Discovery Status Report that its document production included "***internal*** labeling comments; ***internal*** correspondence between Kroger and suppliers; ***internal*** marketing and pricing strategy plans for all private label bread and flour products[]; technical specifications for bread crumbs products; revenue and sales data; ***internal*** personnel assignments; various charts, spreadsheets, and regulatory reviews; and supplier contracts." (emphasis added).

Thus, even if the Court credited Kroger's reading of the September 16 Order as being "silent" on a production deadline, and only requiring production within a "reasonable" time period, it was not reasonable to produce documents that were either internal to Kroger or readily obtainable from third parties (such as Kroger's marketing partners) more than six weeks after the September 16 Order was issued. Kroger offers no explanation why it could not reasonably have produced these documents—which have been in its possession, custody, and control since the outset of the litigation in 2015—before November 8, 2019, especially when faced with a Court order compelling production and issuing sanctions for Kroger's previous discovery misconduct. Therefore, Kroger also failed to meet its self-imposed lower standard for producing documents within a "reasonable" amount of time with respect to the compelled supplemental responses to RFPs Nos. 2, 11, and 20. Appropriate sanctions for the untimely production will be addressed below.

### ii.   Documents Related to Labels and Pricing

The Court has already discussed these issues, tied to RFP Nos. 8 and 18, in its discussion of whether the issues were ripe. However, it bears repeating that Kroger has offered no justification for failing to produce internal documents reflecting the pricing of its products or documents showing internal discussions of label changes until November 8, 2019. Producing these documents did not depend on obtaining information from third-party suppliers. Therefore, the untimely production violates the September 16

3:15-cv-02320-JM-AHG

1  Order even under Kroger's argument that the order was silent on a deadline and required

2  production only within a reasonable amount of time.

3       With respect to untimely production generally, Kroger's conduct shows a disregard

4  for the importance of working cooperatively to avoid needlessly multiplying litigation. *See,*

5  *e.g.*, *Nat'l R.R. Passenger Corp. v. Camargo Trucking*, No. 1:12-CV-0775-BAM, 2013

6  WL 2991067, at *2 (E.D. Cal. June 14, 2013) ("The Federal Rules of Civil Procedure

7  dictate that discovery should be a cooperative process and not an unreasonably burdensome

8  one."); *Schrotberger v. Grays Harbor Cty.*, No. C15-5949RBL, 2017 WL 714228, at *2

9  (W.D. Wash. Feb. 23, 2017) ("The first rule of trial work is cooperation as embodied in

10  FRCP 1. It directs that the Federal Rules of Civil Procedure 'should be construed,

11  administered, and employed by the Court and the parties to secure the just, speedy, and

12  expensive determinations of every action and proceeding.'"). *See also* 28 U.S.C. § 1927

13  (authorizing the imposition of fee-shifting sanctions against an attorney who "multiplies

14  the proceedings in any case unreasonably and vexatiously").

15      **D. Outstanding Discovery Requests**

16         i.   <u>Sales Data Related to Revenue from Bread Crumb Sales During the</u>

17              <u>Relevant Period</u>

18       In ROG No. 1, Plaintiff asks: "IDENTIFY, for California, for each quarter of the

19  CLASS PERIOD, your unit sales of each of the KROGER BREAD CRUMBS SKUs and

20  the total revenue YOU derived from the sale of the PRODUCT." The Court compelled

21  Kroger to respond to this Interrogatory in its September 16 Order, limiting the required

22  responses "to products at issue in the case" and further limiting them by the relevant time

23  period explained elsewhere in the order. *See* ECF No. 72 at 19.

24       Kroger does not deny that it only provided sales data from a 2¼ year period in

25  response to ROG No. 1, rather than from the entire class period of January 1, 2010 to

26  May 31, 2018. However, Kroger relies on the argument already rejected by the Court that,

27  due to how Plaintiff defined "PRODUCT" in her requests, Kroger was not required to

28  provide any further responsive information without obtaining additional information from

third-party suppliers to confirm the PHO content of its products. *See* ECF No. 99 at 18 n.5 (arguing that the September 16 Order did not require any more information beyond the "revenue data for the PRODUCTS identified to date, which includes three products from 2013 through Q1 of 2015"—i.e., the products that Kroger could affirmatively establish contained PHO.).

For the reasons already explained, Plaintiff's motion to compel further response to ROG No. 1 is **GRANTED**. Kroger must supplement its response in accordance with the Court's reasonable construction of "PRODUCT" set forth above.

ii.   Interrogatory No. 5 Regarding Outside Manufacturers

Plaintiff's ROG No. 5 asks: "IDENTIFY the period of time during which YOU manufactured, distributed, or sold the PRODUCT, and if YOU contracted with outside companies to manufacture the PRODUCT, IDENTIFY them and the time period YOU contracted with them."

At the time of the September 16 Order, Kroger's supplemental response was as follows:

> Subject to and without waiving the foregoing objections, Defendant responds that Defendant sold containers of Kroger Bread Crumbs between 2011 and 2015 but did not manufacture them. Defendant further responds that it purchased the Kroger Bread Crumbs through a third party but is not aware of the precise individual or company that 'manufactured' them and is not able to provide a verified response to that effect.

*See* ECF No. 72 at 21.

Plaintiff argues that Kroger has still not provided information regarding the time periods during which Kroger contracted with each supplier of the bread crumbs during the relevant time period. ECF No. 88-1 at 12-13. Kroger asserts that it did disclose the time period it contracted with "the responsive suppliers identified to date[,]" i.e., the suppliers who confirmed their bread crumb products contained PHO during the relevant time period. ECF No. 99 at 20. Additionally, when Plaintiff's counsel demanded a supplement providing the time period for manufacturers during the meet-and-confer process in December 2019, Kroger's counsel responded that Kroger "contracted only with third-party

suppliers, not manufacturers; it was those suppliers, not Kroger, that contracted with manufacturers of the Bread Crumbs. Thus, Kroger has no further responsive information. Nonetheless, Kroger went beyond its obligations to disclose the time period during which it contracted with the one relevant supplier identified to date[.]" ECF No. 99-1 at 45. Because Plaintiff's counsel never responded to this letter, Kroger argues that Plaintiff's counsel was "apparently satisfied" with the explanation and that the issue was resolved. ECF No. 99 at 20.

As an initial matter, the lack of response from Plaintiff's counsel during meet-and-confer does not render the issue resolved. The Court dismisses that contention out of hand. Turning to the September 16 Order, with respect to ROG No. 5 in particular, in addressing Kroger's assertion that "since it purchased the bread crumbs through a third party supplier, it is not aware of the manufacturer of the breadcrumbs and cannot respond to the Rogs and RFPs[,]" Judge Major ordered Kroger to "provide supplemental responses using the correct time frame and complying with its obligations regarding documents within its possession, custody, or control." ECF No. 72 at 22 (citing to the previous sections of the order defining the relevant discovery time period and explaining Defendant's obligations under the Rules to provide information within its possession, custody, or control).

After the September 16 Order was issued, Kroger supplemented its response twice more. In the second supplemental response, Kroger stated it was "making reasonable and diligent efforts to obtain manufacturing information from its third-party suppliers, . . . but has not obtained this information as of the date of these Responses. . . . In addition, each of the suppliers worked with different manufacturers at different times, so obtaining a complete response will require procuring year-by-year information from each supplier." The third supplemental response did not address the question of which companies manufactured the bread crumbs or the time period during which Kroger contracted with the third-party suppliers at all. Instead, the third supplement details counsel's efforts to determine which of its bread crumb products during the relevant time period contained PHO in order to gauge which "documents and information regarding products sourced

from these suppliers . . . come within the scope of documents and information sought in this case, which are defined as 'Kroger Bread Crumbs containing partially hydrogenated oil(s).'"

Thus, Kroger initially argued that it lacked the information necessary to answer the Interrogatory, but failed to comply with its discovery obligation to "furnish such information as is available to the party. . . includ[ing] information known to persons in the party's employ or over whom they have control" and "information known to the responding party's lawyers, agents or employees" and, if the party still cannot obtain responsive information after making a reasonable effort to respond, to "say so under oath, and say why and set forth the efforts used to obtain the information" rather than merely "plead[ing] ignorance to information that is from sources within his control." *See* ECF No. 72 at 15-17 (quoting *Kaur v. Alameida*, 2007 WL 1449723, at *2 (E.D. Cal. May 15, 2007) and *McClure v. Chen*, 2019 WL 1243714, at *3 (E.D. Cal. Mar. 18, 2019)). Now, however, Kroger has shifted to arguing that, since it does not contract directly with manufacturers and instead contracts with third-party suppliers who in turn contract with manufacturers, it has no obligation to provide further information in response to this Interrogatory at all. And when asked during the hearing whether counsel for Kroger provided a declaration to Plaintiff's counsel or otherwise explained "under oath" why the information was inaccessible, and detailing counsel's efforts to obtain the information, defense counsel responded that Plaintiff's counsel never asked for such a declaration.

Once more, the Court finds Kroger's position constitutes mere gamesmanship and does not reflect a good-faith effort to comply with Kroger's discovery obligations. "The Federal Rules are intended 'to secure the just, speedy, and inexpensive determination of every action.' Fed. R. Civ. P. 1. Parties . . . should focus on the goal of the Rules, full and efficient discovery, not evasion and word play." *Marchand v. Mercy Med. Ctr.*, 22 F.3d 933, 936 (9th Cir. 1994). *See also id.* at 936 n.3 ("The litigants should not indulge in gamesmanship with respect to the disclosure obligations.") (quoting Fed. R. Civ. P. 26, advisory committee's note to 1993 Amendment). ROG No. 5 is one of the most

straightforward and simple requests imaginable given the nature of Plaintiff's claims. Plaintiff is simply asking Kroger to provide the information it has about where the products at issue in this litigation—Kroger-branded and Kroger-distributed products—came from. Kroger cannot assert in good faith that it has no access to information regarding the source of its own products. Kroger's efforts have been focused nearly exclusively on finding ways to parse requests to justify total stonewalling, even in the face of a Court order compelling information, rather than responding to discovery in a reasonable, ethical, and professional manner.

Therefore, Kroger is **ORDERED** to conduct a reasonable inquiry to obtain all information reasonably available to it regarding when it contracted with its third-party suppliers who supplied the bread crumbs ***throughout the entire relevant time period*** beginning on January 1, 2010 and ending the date that Kroger stopped selling bread crumb products listing PHO in the ingredients, and is **ORDERED** to supplement its response to ROG No. 5 with all such available information.[2] Kroger's supplementation must also take into account the Court's reasonable construction of "PRODUCT" set forth above.

### E. Privilege Log and Unexplained Redactions

Kroger's privilege log contains 22 entries. Twenty of those entries reflect redactions of text that Kroger contends constitute protected attorney work product. Two entries reflect documents withheld in their entirety based on both a work product and an attorney-client privilege claim, both of which are described as the Corporate Record Retention Policy, distributed to all Kroger employees in 2012 and 2014, respectively. *See* ECF No. 88-2 at 27-30. Counsel for Kroger stated during the hearing that Kroger has approximately 500,000 employees.

---

[2] Plaintiff's Additional Reply indicates that Plaintiff may have already obtained this information from the 30(b)(6) deposition. ECF No. 119 at 6. If true, Kroger is excused from further supplementation if counsel for both parties file a joint declaration to this effect within 14 days of the date of this Order.

In her motion to compel, Plaintiff raises several issues with Kroger's privilege log and claims of privilege generally. Namely, Plaintiff asserts: (1) the privilege log was untimely because it was not produced until November 8, 2019; (2) the privilege log remains insufficient because the 20 entries reflecting redactions do not list recipients; (3) the privilege log remains insufficient because the entries do not indicate whether the listed authors are attorneys, and several entries show only one author whom Plaintiff has determined is not an attorney; (4) the privilege log remains insufficient because the log does not provide the full names of the authors or their titles, and thus Plaintiff is unable to assess the privilege claims; (5) Plaintiff finds it "unlikely" that most of the documents listed have multiple authors, as described; and (5) the two corporate record retention policies were distributed to all Kroger employees and thus are not privileged. *See* ECF No. 88-1 at 16-18. Plaintiff argues the Court should find waiver of the asserted privileges as a result of the untimeliness and all claimed deficiencies and compel their production, or, in the alternative, that the Court should require Kroger to produce the documents for *in camera* review. *Id.* at 18.

The Court will address each of Plaintiff's arguments in turn. However, before beginning its discussion, the Court must first address whether federal or California privilege law applies to its analysis. Kroger contends that because Plaintiff's claims are only in federal court pursuant to CAFA, California privilege law applies under Fed. R. Evid. 501. Rule 501 provides that, in a civil case, "state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." *See also Lawson v. GrubHub, Inc.*, No. 15-CV-05128-JSC, 2017 WL 1684964, at *1 (N.D. Cal. May 3, 2017) ("Plaintiff's complaint alleges Class Action Fairness Act ('CAFA') jurisdiction under 28 U.S.C. § 1332(d) and is therefore before the Court on diversity jurisdiction, so state law controls questions of privilege.") (citations omitted).

The Court agrees that state law applies, and Plaintiff's counsel conceded the same during the hearing. Therefore, the Court will apply California privilege law in assessing Plaintiff's arguments.

i.      Unexplained Redactions

First, Plaintiff contends that Kroger's document production contains "heavily and inexplicably redacted documents[,]" pointing in particular to documents bates stamped TKC 54-63, 82-129, and 172-179. ECF No. 88-1 at 14. Upon review, the Court finds the redactions in TKC 82-129 and 172-179 are included in the privilege log. *See* ECF No. 88-2 at 27-29. Specifically, the redactions on documents bates-stamped TKC 82-129 are included on the privilege log as entries 3-17 regarding "product label design correspondence." It appears Kroger redacted one line of text on each page reflecting attorney work product, according to the privilege log. With respect to documents bates-stamped TKC 172-179, these documents are listed in entry 18 of the privilege log as "Manufacturing Addendum, with notation reflecting attorney mental impressions and research." ECF No. 88-2 at 29. Again, these redactions are only of a single line of text at the bottom of each page of the Manufacturing Addendum, which Kroger contends constitute attorney work product.[3]

Turning to documents bates-stamped TKC 54-63, these are spreadsheets showing sales data. It appears Kroger redacted all data relating to products other than bread crumbs. These redactions are not reflected on the privilege log, nor do these redactions make much sense when viewed in the context of the full production given that Kroger elsewhere provided hundreds if not thousands of pages of sales data on unrelated products. Kroger argues, that it "merely redacted its confidential financial information regarding irrelevant products, which it had no obligation to produce. This does not belong on a privilege log, and there is nothing to compel." ECF No. 99 at 21.

In other words, Kroger does not claim that the redactions in TKC 54-63 were made on the basis of a claim of privilege, but rather because the redacted information is irrelevant and confidential. However, the September 16 Order explicitly forbade Kroger from

---

[3] Kroger's claims of attorney work product are addressed in more detail below.

objecting to any request for production "as seeking confidential information" without "support[ing] those objections with evidence establishing that the information is actually confidential or proprietary, explain[ing] why the Protective Order is insufficient to protect the information, and/or fil[ing] a motion for protective order to protect the disclosure of the allegedly confidential information." ECF No. 72 at 34. Kroger's redactions and argument in support of the redactions do not comply with this directive. Further, the conduct of arbitrarily redacting a handful of documents on the basis that they contain "confidential financial information regarding irrelevant products," when the majority of Kroger's production is made up of just that type of information, generally fits within a pattern and practice of obstructionist discovery conduct by Kroger. Accordingly, Kroger is **ORDERED** to review its *entire document production* and produce the unredacted versions of all redacted versions within its production that are not included on the privilege log.[4]

If Kroger continues to object to the production of any of the redacted information not listed on the privilege log on the basis that such information is confidential, proprietary, or trade secret information, Kroger must supplement its RFP responses in accordance with Fed. R. Civ. P. 34(b)(2)(C) by stating the objection and stating whether any responsive materials are being withheld on the basis of that objection. If Kroger makes any such objections in its supplemental responses, Kroger must further comply with the Court's existing directive to "support those objections with evidence establishing that the information is actually confidential or proprietary, explain why the Protective Order is insufficient to protect the information, and/or file a motion for protective order to protect the disclosure of the allegedly confidential information." ECF No. 72 at 34.

Similarly, if, during its review, Kroger finds redactions that were based on privilege but which were not included on the existing privilege log and thus wishes to withhold the

---

[4] The Court notes that there were many other redactions not listed on the privilege log besides those in documents bates-stamped TKC 54-63.

redacted information on the basis of privilege, Kroger must supplement the privilege log and its RFP responses accordingly to clearly assert the privilege. Under California law, if a party refuses to produce a document "based on a claim of privilege or a claim that the information sought is protected work product, ***the response shall provide sufficient factual information for other parties to evaluate the merits of that claim, including***, if necessary, a privilege log." Cal. Civ. Proc. Code § 2031.240(c)(1) (emphasis added). *See also Wellpoint Health Networks, Inc. v. Superior Court*, 68 Cal. Rptr. 2d 844, 857 (Cal. Ct. App. 1997) ("The information in the privilege log must be sufficiently specific to allow a determination of whether each withheld document is or is not in fact privileged."). Therefore, any privilege-based objections in the supplemental RFP responses and any privilege log supplement intended to support Kroger's continued withholding of the redacted portions of those documents must allow Plaintiff to assess the claim of privilege.

ii.   Waiver Due to Untimely Production

Second, Plaintiff argues that because Kroger's privilege log was not produced until November 8, 2019, the production was untimely, and the Court should find all claims of privilege waived as a result and compel production of all documents on the log. However, Kroger correctly responds that under California privilege law, failure to timely provide a privilege log does not constitute waiver:

> [A] responding party preserves its objections based on the attorney-client privilege and work product doctrine by serving a timely written response asserting those objections. It is irrelevant that the objections are asserted as part of a generic or boilerplate response, or that the responding party failed to serve a timely and proper privilege log. Once the objections are timely asserted, the trial court may not deem them waived based on any deficiency in the response or privilege log.

*Catalina Island Yacht Club v. Superior Court*, 242 Cal. App. 4th 1116, 1129 (Cal. Ct. App. 2015).

Here, Kroger's discovery responses asserted objections on the basis of privilege. Therefore, even if Kroger's production of the privilege log on November 8, 2019 was

untimely, Kroger has not waived any privilege with respect to the documents on the log. Plaintiff's motion to find waiver of privilege is accordingly **DENIED**.

       iii.   <u>Sufficiency of the Entries on the Privilege Log</u>

As already discussed, Kroger's privilege log includes two documents withheld in their entirety on the basis of both a claim of attorney-client privilege and a claim of attorney work product. ECF No. 88-2 at 27. The withheld documents are Kroger's Corporate Record Retention Policy from 2012 and from 2014. The authors of the 2012 version are listed as "Legal Department; M. Spohn; F. Gallenstein; R. Schreck; A. Wiesman." *Id.* at 27. The authors of the 2014 version are listed as "Legal Department; Human Resources; Collaboration Services; Corporation Information Security; R. Schreck; A. Wiesman." *Id.* The recipients of both documents are "All Kroger Employees" and the description of both documents is "Corporate Record Retention Policy, including legal advice regarding record retention." *Id.*

The remaining twenty entries reflect redactions to documents that were produced, based on a claim of work product. *Id.* at 27-30. The Court will first outline the governing California law before assessing the privilege claims and Plaintiff's arguments that the log is insufficient to support those claims.

       a.  *Privilege Log Requirements*

As already noted with respect to the unexplained redactions in the production, under California law, if a party objects to a request for production of documents and the objection "is based on a claim of privilege or a claim that the information sought is protected work product, the response shall provide sufficient factual information for other parties to evaluate the merits of that claim, including, if necessary, a privilege log." Cal. Civ. Proc. Code § 2031.240(c)(1). *See also Wellpoint*, 68 Cal. Rptr. 2d at 857 ("The information in the privilege log must be sufficiently specific to allow a determination of whether each withheld document is or is not fact privileged.").

To meet this requirement, a privilege log must "identif[y] each document for which a privilege is claimed, with its author, date of preparation, all recipients and the specific

privilege claimed." *Hernandez v. Superior Court*, 4 Cal. Rptr. 3d 883, 888 n.6 (Cal. Ct. App. 2003), *as modified* (Oct. 23, 2003). "The Court may look to the information provided in the privilege log to determine whether the party claiming the privilege has satisfied its preliminary burden of showing the essential elements of the claimed privilege are met." *Ritchie v. Sempra Energy*, No. 10CV1513-CAB(KSC), 2015 WL 12912030, at *4 (S.D. Cal. June 11, 2015) (applying California law and citing *Bank of Am., N.A. v. Superior Court*, 151 Cal. Rptr. 3d 526, 543-45 (Cal. Ct. App. 2013)).

### b. Attorney-Client Privilege

The California attorney-client privilege is codified in Cal. Evid. Code §§ 950 *et seq.* The privilege protects confidential communications between a client and an attorney. "The privilege authorizes a client to refuse to disclose, and to prevent others from disclosing, confidential communications between attorney and client." *Mitchell v. Superior Court*, 691 P.2d 642, 645 (Cal. 1984). A "confidential communication between client and lawyer" is defined in the Evidence Code as:

> . . . information transmitted between a client and his or her lawyer in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted, and includes a legal opinion formed and the advice given by the lawyer in the course of that relationship.

Cal. Evid. Code § 952.

Under California law, "[t]he party claiming the [attorney-client] privilege has the burden of establishing the preliminary facts necessary to support its exercise, i.e., a communication made in the course of an attorney-client relationship." *Costco Wholesale Corp. v. Superior Court*, 219 P.3d 736, 741 (Cal. 2009) (citations omitted). *See also* Cal. Evid. Code § 952. Once the party claiming privilege has made a *prima facie* showing that the material claimed to be privileged is a communication made in the course of an attorney-client relationship, a presumption of privilege then applies to the communication, and the

burden shifts to the party opposing the claim "to establish the communication was not confidential or that the privilege does not for other reasons apply." *Costco*, 219 P.3d at 741 (citing Cal. Evid. Code § 917(a) and *Wellpoint*, 68 Cal. Rptr. 2d at 852-53).

The Supreme Court of California has explained that, under the Evidence Code, the attorney-client privilege applies to all communications between attorney and client within the scope of the relationship. Therefore, "the privilege applies not only to communications made in anticipation of litigation, but also to legal advice when no litigation is threatened." *Roberts v. City of Palmdale*, 853 P.2d 496, 500 (Cal. 1993).

"[W]aiver of the attorney-client privilege . . . occurs when any holder of the privilege 'has disclosed a significant part of the communication or has consented to such disclosure made by anyone. . . .'" *Mitchell v. Superior Court*, 691 P.2d 642, 647 (Cal. 1984) (quoting Cal. Evid. Code § 912(a)). But a disclosure that is itself privileged does not operate as a waiver. Cal. Evid. Code § 912(c). Further, if the Court is inclined to find waiver of the privilege despite a *prima facie* showing that the privilege applies, "the trial judge must accord a full hearing, with oral argument, before ordering the revelation of client confidences to the other side and, in effect, compelling attorney testimony against a client." *Titmas v. Superior Court*, 104 Cal. Rptr. 2d 803, 805 (Cal. Ct. Appl. 2001), *as modified* (Mar. 26, 2001).

Pertinent here, "it is settled that a corporate client . . . can claim the privilege." *Costco*, 219 P.3d at 741. *See also Ins. Co. of N. Am. v. Superior Court*, 108 Cal. App. 3d 758 (Cal. Ct. App. 1980) ("A corporate client, like other artificial entities, can only receive communications from its attorney by means of human agency officers, agents, and employees of the corporation selected by the corporation's directors and officers to act on its behalf. A corporation, like a natural person, is entitled to the full benefit of the attorney-client privilege."). "The scope of the attorney-client privilege in cases of corporate clients was established by [the] Supreme Court [of California] in *D.I. Chadbourne, Inc. v. Superior Court*, [388 P.2d 700, 709-10 (Cal. 1964)]." *Triple A Mach. Shop, Inc. v. State of California*, 261 Cal. Rptr. 493, 499. (Cal. Ct. App. 1989). *D.I. Chadbourne* sets forth

eleven broad principles describing the contours of the privilege. *See* 388 P.2d at 709-10. Relying on those principles, the *Triple A* court explained, "it is clear that not all corporate employees are necessarily encompassed within the attorney-client privilege[.]" *Triple A*, 261 Cal. Rptr. at 500.

Consequently, the Court must determine whether the privilege applies in the corporate employee context by considering "the facts on a case-to-case basis." *Id.* at 501. *See also D.I. Chadbourne*, 388 P.2d at 704 ("If . . . the claimed privilege does not appear as a matter of law, but present[s] a question of fact, then the determination of the trial court may not be set aside. When the facts, or reasonable inference from the facts, shown in support of or in opposition to the claim of privilege are in conflict, the determination of whether the evidence supports one conclusion or the other is for the trial court") (citations omitted). In making its determination, the Court must focus its inquiry on the "dominant purpose of the ***relationship*** between the parties to the communication. Under that approach, when the party claiming the privilege shows the dominant purpose of the relationship between the parties to the communication was one of attorney-client, the communication is protected by the privilege." *Cal. Earthquake Auth. v. Metro. W. Sec.*, LLC, 285 F.R.D. 585, 595 (E.D. Cal. 2012) (quoting *Clark v. Superior Court*, 125 Cal. Rptr. 3d 361, 372 (Cal. Ct. App. 2011)) (emphasis in original).

When faced with a similar claim of attorney-client privilege in the corporate context, another court in this district explained: "In a corporate setting, such as the one at issue here, California courts have acknowledged that 'the attorney-client privilege may extend to communications involving middle– and lower-level employees' and that 'in order to implement the advice of lawyers, the advice must be communicated to others within the corporation.'" *Ritchie*, 2015 WL 12912030, at *11 (quoting *Zurich American Ins. Co. v. Superior Court*, 66 Cal. Rptr. 3d 833, 841 (Cal. Ct. App. 2007)).

Therefore, "the attorney-client privilege extends to lower level employees ***who reasonably need to know of a confidential communication in order to act for the***

*organization or implement legal advice, even if they had no direct contact with the attorney*." *Ritchie*, 2015 WL 12912030, at *11 (emphasis added).

Turning to the facts at hand, the Court finds that the privilege log does not permit the Court to adequately assess the claim that the 2012 and 2014 versions of the Corporate Record Retention Policy are protected by the attorney-client privilege under California law. Kroger bears the burden of establishing the preliminary facts to support the exercise of the privilege. *Costco*, 219 P.3d at 741. Under the California Evidence Code, those facts include that the documents contain:

> . . . information transmitted between a client and his or her lawyer in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interest of the client in the consultation *or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted*, and includes a legal opinion formed and the advice given by the lawyer in the course of that relationship.

Cal. Evid. Code § 952 (emphasis added). *See also Zurich*, 66 Cal. Rptr. 3d at 839 (quoting *Ins. Co. of N. Am. v. Superior Court*, 166 Cal. Rptr. 880, 885 (Cal. Ct. App. 1980)) ("California courts have held that the 'privilege extends to communications which are intended to be confidential, if they are made to attorneys, to family members, *business associates, or agents of the party or his attorneys on matters of joint concern, when disclosure of the communication is reasonably necessary to further the interest of the litigant*.'") (emphasis in original); *Ritchie*, 2015 WL 12912030, at *11 (explaining the *Zurich* holding as: "The California Court of Appeal concluded the documents were protected by the attorney-client privilege as long as the insurer could establish that the involvement of the employees was reasonably necessary to further the purpose for which counsel was consulted.").

Therefore, to meet its initial burden, Kroger must establish, through facts included in its privilege log or otherwise, that disclosure of the Corporate Record Retention Policy to all of the approximately 500,000 Kroger employees was reasonably necessary to

accomplish the purpose of the legal consultation between Kroger and its legal team and thus did not destroy the confidence of the communication. Kroger has not met that burden here. Consequently, the Court **ORDERS** Kroger to supplement the privilege log to meet its burden under California law of showing that the attorney-client privilege applies to these documents disseminated to every Kroger employee.

### c. Work Product Doctrine

The attorney work product doctrine is codified in Cal. Civ. Proc. Code § 2018.030. Subsections (a) and (b) of the statute distinguish between work product that receives absolute protection and that which receives qualified protection:

> (a) A writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories is not discoverable under any circumstances.

> (b) The work product of an attorney, other than a writing described in subdivision (a), is not discoverable unless the court determines that denial of discovery will unfairly prejudice the party seeking discovery in preparing that party's claim or defense or will result in an injustice.

Cal. Civ. Proc. Code § 2018.030.

The absolute version of the protection extends to any writing reflecting the thoughts and impressions of counsel or their legal team, even if the document also reflects non-attorney opinions or contains only the attorney's notes about a witness's statements. *See Rico v. Mitsubishi Motors Corp.*, 171 P.3d 1092, 1096-97 (Cal. 2007). Further, this type of absolutely protected work product remains "absolute" even when shared with clients. *BP Alaska Expl., Inc. v. Superior Court*, 245 Cal. Rptr. 682, 690-91 (Cal. Ct. App. 1988).

The attorney is the holder of the work product privilege. *Citizens for Ceres v. Superior Court*, 159 Cal. Rptr. 3d 789, 803 (Cal. Ct. App. 2013). As with the attorney-client privilege, the party asserting the work product privilege has the burden of proving "the essential elements of the privilege" are met, i.e., that the documents contain attorney impressions, conclusions, opinions, or legal research or theories. *BP Alaska*, 245 Cal. Rptr.

42

at 689; Cal. Civ. Proc. Code § 2018.030(a). If this burden is met and the claim of privilege is not waived, the opposing party cannot overcome the claim; the documents are absolutely protected from disclosure.

All other work product—"general" work product that does not contain the impressions, conclusions, opinions, or legal theories of the attorney—is afforded only qualified protection. *Wellpoint*, 68 Cal. Rptr. 2d at 850; *BP Alaska*, 245 Cal. Rptr. at 688. The protection of general work product is qualified because the Court may order its disclosure upon determining that "denial of discovery will unfairly prejudice the party seeking discovery . . . or . . . result in an injustice." Cal. Civ. Proc. Code § 2018.030(b).

Although not codified in the statute, a claim of work product protection can be waived under certain circumstances:

> Waiver of work product protection, though not expressly defined by statute, is generally found under the same set of circumstances as waiver of the attorney-client privilege—by failing to assert the protection, by tendering certain issues, and by conduct inconsistent with claiming the protection. Waiver also occurs by an attorney's voluntary disclosure or consent to disclosure of the writing to a person other than the client who has no interest in maintaining the confidentiality of the contents of the writing.

*McKesson HBOC, Inc. v. Superior Court*, 9 Cal. Rptr. 3d 812, 819 (Cal. Ct. App. 2004) (internal quotations and citation omitted). Therefore, "disclosure to a third party will waive the work product privilege unless the disclosure was coerced." *Regents of Univ. of California v. Superior Court*, 81 Cal. Rptr. 3d 186, 191 (Cal. Ct. App. 2008).

Here, Kroger claims the absolute work product protection applies to all 22 documents listed on the privilege log. *See* ECF No. 88-2 at 27-30. Once more, Kroger has failed to meet its burden of showing that the essential elements of the privilege are met. Kroger's only argument with respect to all of the documents on the privilege log is that they are all "demonstrably privileged." ECF No. 22 at 15. But Kroger offers no further facts to support this claim. Indeed, with respect to the redacted documents, Kroger acknowledges that "[t]he log includes those who authored the unredacted portion," *id.*, but neither the log nor the opposition brief on this issue explains who authored the redacted

portions claimed to constitute attorney work product. Without more, it is impossible to assess the claim that these portions reflect "attorney mental impressions and research." Further, since the attorney is the holder of the privilege, Kroger cannot assert the privilege on the attorney author's behalf. As discussed in more detail below, at minimum, a privilege log must provide the author(s) of the information claimed to constitute work product.

With respect to the two entries related to the Corporate Record Retention Policy, the Court finds that the information included on the privilege log is sufficient to meet Kroger's preliminary burden of showing that the documents contain or reflect an attorney's legal research. *See* ECF No. 88-2 at 27. Thus, these documents may qualify as absolutely protected work product under Cal. Civ. Proc. Code § 2018.030(a) even if they do not qualify as privileged attorney-client communications. However, since these documents were disseminated to all Kroger employees, Kroger must still supplement the log to give sufficient information to show the work product protection was not waived by "disclosure of the writing to a person other than the client who has no interest in maintaining the confidentiality of the contents of the writing." *McKesson*, 9 Cal. Rptr. 3d at 819.

Importantly, with respect to both attorney-client privilege and work product claims, pursuant to Cal. Evid. Code § 915(a), the Court "may not require disclosure of information claimed to be privileged [as an attorney-client communication] . . . or attorney work product in order to rule on the claim of privilege" in a civil proceeding. *See also DP Pham, LLC v. Cheadle*, 200 Cal. Rptr. 3d 937, 947 (Cal. Ct. App. 2016) (collecting cases and citing § 915(a) for the proposition that courts "must approach the issue [of whether documents are protected by the attorney-client privilege] without inspection of the documents themselves."). In limited circumstances, a court may conduct an *in camera* review ***after*** determining the privilege is waived or some other exception applies, for the purpose of "determin[ing] if some protection is warranted notwithstanding the waiver or exception." *Id.* However, no such review may be conducted "for any reason until the court determines the privilege does not apply or has been waived." *Id.* (quoting *Costco*, 219 P.3d at 746). Therefore, Plaintiff's request that the Court order *in camera* review of any of the

documents on the privilege log is **DENIED**. Plaintiff's motion to compel the documents on the basis of waiver is also **DENIED without prejudice**. If the supplement establishes waiver of the privileges claimed with respect to any of the documents or redacted portions thereof, Plaintiff may argue waiver again at that time. However, *in camera* review is not appropriate under California law unless waiver or inapplicability of the claimed privilege has been established.

Based on the foregoing, Kroger is **ORDERED** to supplement its privilege log to provide sufficient factual information for Plaintiff to evaluate the merits of the claimed privileges. The information in the privilege log must be sufficiently specific to allow a determination of whether each withheld document is or is not fact privileged, by identifying each document for which a privilege is claimed, with its author (and in particular the author of any redacted portions to which the claim applies), date of preparation, all recipients and the specific privilege claimed. With respect to the first two entries on the privilege log concerning the Corporate Record Retention Policies, if Kroger claims the attorney-client privilege applies, it must provide facts showing that the disclosure of these documents to all Kroger employees was reasonably necessary to accomplish the purpose of the legal consultation between Kroger and its attorney(s). If Kroger asserts work product protection, Kroger must explain why the disclosure to all Kroger employees does not constitute waiver.

## F. SANCTIONS

Plaintiff seeks multiple types of sanctions—fee-shifting sanctions under Rule 37(b)(2)(C) for the reasonable expenses incurred by Plaintiff as a result of Defendant's disobedience of the September 16 Order, civil contempt sanctions in the form of $200 per diem payable to the Court, and exclusionary sanctions under Rule 37(b)(2)(A)(ii). Additionally, the Court may issue sanctions pursuant to its inherent authority.

### i. Legal Standard for Civil Contempt Sanctions

Under Rule 37(b)(2)(A)(vii), a party may be found in contempt for failure to obey a discovery order. In addition to this statutory source of authority, courts also "have inherent

power to enforce compliance with their lawful orders through civil contempt." *Spallone v. United States*, 493 U.S. 265, 276 (1990). While the purpose of criminal contempt sanctions is to punish the contemnor, civil contempt sanctions are instead "penalties designed to compel future compliance with a court order," and "are considered to be coercive and avoidable through obedience." *Int'l Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 827 (1995).

The party moving for a civil contempt order bears the burden of showing by clear and convincing evidence that the alleged contemnor violated the Court's order. *United States v. Ayres*, 166 F.3d 991, 994 (9th Cir. 1999) (quoting *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993)). A party may be held in civil contempt for disobeying "a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *Dual-Deck*, 10 F.3d at 695. Even if a party's disobedience is in good faith, the Court may find the party in contempt because contempt "need not be willful, and there is no good faith exception to the requirement of obedience to a court order." *Id.* (internal quotations and citation omitted). Nonetheless, "a person should not be held in contempt if his action appears to be based on a good faith and reasonable interpretation of the court's order." *Id.* (internal quotations, alteration, and citation omitted). Additionally, "'[s]ubstantial compliance' with the court order is a defense to civil contempt, and is not vitiated by 'a few technical violations' where every reasonable effort has been made to comply." *Id.* (quoting *Vertex Distrib., Inc. v. falcon Foam Plastics, Inc.*, 689 F.2d 885, 891 (9th Cir. 1982)).

However, even if the standards for finding contempt are met, Magistrate Judges "do[] not have authority to issue contempt sanctions. Only the District Judge has the authority to enter a finding of contempt when the parties have not consented to the magistrate judge presiding over all proceedings." *Nilon v. Nat.-Immunogenics Corp.*, No. 3:12-CV-00930-LAB, 2015 WL 224628, at *4 n.5 (S.D. Cal. Jan. 15, 2015) (citing 28 U.S.C. § 636(e)). *See also Langer v. McHale,* No. 13CV2721 CAB NLS, 2014 WL

4924331, at *5 (S.D. Cal. Sept. 2, 2014), *aff'd*, 2014 WL 5422973 (S.D. Cal. Oct. 20, 2014).

        iii.   <u>Legal Standard for Rule 37 Fee-Shifting and Exclusionary Sanctions</u>

Fed. R. Civ. P. 37(b)(2)(A) provides sanctions for failure to obey a discovery order, as follows:

> If a party or a party's officer, director, or managing agent--or a witness designated under Rule 30(b)(6) or 31(a)(4)--fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:
>> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>> (iii) striking pleadings in whole or in part;
>> (iv) staying further proceedings until the order is obeyed;
>> (v) dismissing the action or proceeding in whole or in part;
>> (vi) rendering a default judgment against the disobedient party; or
>> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37.

Additionally, Fed. R. Civ. P. 37(b)(2)(C) provides that "[i]nstead of or in addition to the orders above, the court ***must*** order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." (emphasis added).

> Disciplinary sanctions under Rule 37 are intended to serve three purposes. First, they ensure that a party will not benefit from its own failure to comply. Second, they are specific deterrents and seek to obtain compliance with the particular order issued. Third, they are intended to serve a general deterrent effect on the case at hand and on other litigation, provided that the party against whom they are imposed was in some sense at fault.

*Update Art, Inc. v. Modiin Pub., Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988) (citations omitted). The harshest sanctions available are preclusion of evidence and dismissal of the action. *Id.*

Exclusionary sanctions are considered particularly harsh where such sanctions would be tantamount to dismissal or default sanctions, because the evidence excluded is essential to the losing party's case. *See Klund v. High Tech. Sols., Inc.*, No. 05CV0565JAH, 2006 WL 549385, at *6 (S.D. Cal. Feb. 27, 2006) ("Of those sanctions that a court may select when applying Rule 37, preclusion of evidence is among the most severe. In fact, under certain circumstances, the imposition of preclusive sanctions is tantamount to dismissal or default judgment.") (citing *United States v. Sumitomo Marine & Fire Ins. Co.*, 617 F.2d 1365, 1369 (9th Cir. 1980)). Moreover, "[e]xclusion sanctions based on alleged discovery violations are generally improper absent undue prejudice to the opposing side." *Wendt v. Host International, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997). While "delay alone" is typically insufficient prejudice to justify exclusionary sanctions, "[f]ailure to produce documents as ordered, however, is considered sufficient prejudice." *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990) (citing *U.S. for Use & Ben. of Wiltec Guam, Inc. v. Kahaluu Const. Co.*, 857 F.2d 600, 604 (9th Cir. 1988) and *S.E.C. v. Seaboard Corp.*, 666 F.2d 414, 417 (9th Cir. 1982)).

      iv.   Legal Standard for Sanctions Pursuant to the Court's Inherent Authority

Under the Court's inherent power, the court may also levy sanctions, including attorney fees, for "'willful disobedience of a court order'" or when a party has "'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001) (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 776 (1980)); *see also* CivLR 83.1(a) ("Failure of counsel or of any party to comply with these rules, with the Federal Rules of Civil or Criminal Procedure, or with any order of the court may be grounds for imposition by the court of any and all sanctions authorized by statute or rule or within the inherent power of the court, including, without limitation, dismissal of any

1  actions, entry of default, finding of contempt, imposition of monetary sanctions or

2  attorneys' fees and costs, and other lesser sanctions").

3  The Court's "authority to impose sanctions under its inherent powers is broad, but

4  not limitless." *Mendez v. County of San Bernardino,* 540 F.3d 1109, 1132 (9th Cir. 2008).

5  The Court's inherent power "is 'both broader and narrower than other means of imposing

6  sanctions.' [] On the one hand, the inherent power 'extends to a full range of litigation

7  abuses.' On the other, the litigant must have 'engaged in bad faith or willful disobedience

8  of a court's order'" to levy sanctions including attorney fees. *Fink*, 239 F.3d at 992 (quoting

9  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46–47 (1991)). A "willful" violation of a court

10  order "does not require proof of mental intent such as bad faith or an improper motive, but

11  rather, it is enough that a party acted deliberately." *Evon v. Law Offices of Sidney Mickell*,

12  688 F.3d 1015, 1035 (9th Cir. 2012). "Before awarding [attorney fees] sanctions under its

13  inherent powers, however, the court must make an explicit finding that counsel's conduct

14  'constituted or was tantamount to bad faith.'" *Primus Auto. Fin. Servs. v. Batarse*, 115 F.3d

15  644, 648 (9th Cir. 1997) (quoting *Roadway Express*, 447 U.S. at 767). An explicit finding

16  of bad faith "is especially critical when the court uses its inherent powers to engage in fee-

17  shifting." *Primus Auto. Fin. Servs.*, 115 F.3d at 648 (noting that a "court's inherent power

18  to impose attorney[] fees as a sanction [is limited] to cases in which a litigant has engaged

19  in bad-faith conduct or willful disobedience of a court's orders."). Bad faith can be

20  established "by 'delaying or disrupting the litigation or hampering enforcement of a court

21  order.'" *Id*. (quoting *Hutto v. Finney*, 437 U.S. 678, 689 n.14 (1978)).

22  Similarly, although not raised by Plaintiff, the Court has statutory authority pursuant

23  to 28 U.S.C. § 1927 to require an attorney "who so multiplies the proceedings in any case

24  unreasonably and vexatiously . . . to satisfy personally the excess costs, expenses, and

25  attorneys' fees reasonably incurred because of such conduct." The imposition of sanctions

26  under § 1927 also requires a finding that counsel acted "recklessly or in bad faith[.]" *United*

27  *States v. Blodgett*, 709 F.2d 608, 610 (9th Cir. 1983) (citation omitted).

28

1

###### v.     Discussion of Appropriate Sanctions

2 As an initial matter, the Court **GRANTS** Plaintiff's motion for leave to file an

3 application for attorney fees and costs pursuant to Fed. R. Civ. P. 37(b)(2)(C). Plaintiff's

4 counsel must file an affidavit demonstrating the "reasonable expenses, including attorney's

5 fees," that were incurred due to Kroger's failure to obey the September 16 Order within

6 **seven (7) days of the date of this Order.**

7 The Court also finds additional sanctions are warranted. As expressed during the

8 hearing on the present motion, the Court finds that the record clearly establishes that

9 Kroger's counsel has acted in bad faith to hamper the discovery process, by engaging in

10 pedantic hair-splitting, gamesmanship, unreasonable parsing of language, and willful

11 obliviousness to the plain meaning of the Court's order—even in the face of direct

12 clarification by the Court during discovery conferences thereafter—to avoid full

13 compliance with the September 16 Order.

14 Kroger's counsel appears to have made every effort to strip its production of

15 usefulness wherever possible. By the Court's calculation, 5,186 pages (92.5%) of Kroger's

16 total document production were printed and scanned spreadsheets rather than being

17 produced in native format. Many spreadsheets produced were blank. Several were redacted

18 without corresponding entries on the privilege log. Almost every document produced was

19 internal to Kroger and has thus been in its possession, custody, or control since Plaintiff

20 first served her discovery requests in June 2019. However, only 17 pages of documents

21 were produced between that initial service and November 8, 2019, notwithstanding a Court

22 order requiring supplemental production no later than October 7, 2019.

23 Kroger's paltry production even in the face of an order compelling production cannot

24 be argued to have been in good faith. The Court has already stated on the record that

25 Kroger's continued failure to produce documents notwithstanding the September 16 Order

26 evidenced bad faith. *See* ECF No. 81 at 2 ("Defendant's representation that it is making a

27 good-faith effort to comply is starkly at odds with its failure to produce a single additional

28 document in the 45 days since the Sanctions Order issued."). And as already explained,

Kroger's position that it read the September 16 Order to permit rolling production "within a reasonable time" as it collected information from suppliers cannot be taken in good faith for several reasons. First, Kroger's late production of internal documents such as organizational charts and customer complaints (among other examples) can find no footing on the already extremely tenuous ground that Kroger required additional information from suppliers before being able to determine the relevance of certain documents. Many of the belatedly produced documents in no way rely on the PHO content of specific bread crumb products. Second, the Court told Kroger in no uncertain terms during both October discovery conferences that the September 16 Order set a production deadline of October 7, 2019 and instructed Kroger to immediately produce internal documents within its possession, custody, and control, even going so far as to refer to specific discovery requests that Kroger should have been able to answer without reference to the PHO content of its products (including employee organizational charts and customer complaints concerning trans fat or PHO). Yet Kroger did not produce these documents until November 8, 2019. And when it did produce documents, it produced them in a format that it knew would be utterly unusable.

Although the Court must make an explicit finding of bad faith on the record to levy attorney fee sanctions under its inherent authority, even good-faith disobedience of a court order can justify a finding of civil contempt if the disobedience is not "based on a good faith and reasonable interpretation of the court's order." *Dual-Deck*, 10 F.3d at 695. *See also In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1365 (9th Cir. 1987) ("A person fails to act as ordered by the court when he fails to take all the reasonable steps within his power to insure compliance with the court's order. It does not matter what the intent of the appellants was when they disobeyed the court's order. Moreover, the contempt need not be willful.") (internal quotations, citations, and alterations omitted). That standard is met here.

Therefore, the Court finds that the facts before it would justify a recommendation to the District Judge to find Kroger in contempt pursuant to 28 U.S.C. § 636(e)(6). The

conduct by Kroger's counsel also rises to the level of bad faith justifying fee-shifting sanctions for "multipl[ying] the proceedings in any case unreasonably and vexatiously" under 28 U.S.C. § 1927, because Kroger has now forced the Court to intervene twice in the same discovery issues on two separate motions to compel due to its continuing disobedience. The pattern of behavior exhibits willfulness justifying serious sanctions. *See, e.g.*, *Volante v. Janopaul Block SD No. 1, LLC*, No. 03CV2519 JM (AJB), 2005 WL 8173127, at *3 (S.D. Cal. Nov. 8, 2005) (finding that numerous discovery abuses leading to multiple motions to compel "exhibit a pattern of behavior that could be construed as both willful and inexcusable.").

However, the Court finds alternative sanctions under the Court's inherent authority, rather than contempt sanctions, are better suited to the situation at hand. For one thing, certifying facts to the District Judge for his review would require yet another unnecessary multiplication of the proceedings. More importantly, for the reasons that follow, the Court finds alternative sanctions are simply better-suited to address the discovery abuses before it.

Counsel for Kroger, Jacob Harper, presented oral argument at the hearing on the present motion. His co-counsel Heather Canner also appeared and, although she did not argue on Kroger's behalf during the hearing, she has participated in the discovery process throughout this litigation, appending a declaration to Kroger's opposition brief and representing Kroger during discovery conferences before the Court. Mr. Harper's arguments during the hearing as well as Ms. Canner's representations to the Court have made apparent that both counsel continue to misapprehend both the spirit and the letter of the Federal Rules of Civil Procedure with respect to discovery practice.

For example, when asked whether counsel for Kroger ever provided Plaintiff a declaration from an employee documenting the steps that Kroger took to obtain information from third-party suppliers regarding the PHO content in the bread crumb products, Mr. Harper stated that Plaintiff's counsel did not ask for one. However, as set forth in the September 16 Order and in the Federal Rules, Kroger had an affirmative

obligation to provide a statement under oath to support a contention that compelled information—i.e., sales data related to the relevant products— is not within its possession, custody, or control. Even if Kroger's counsel believed in good faith that they were entitled to withhold discovery related to any products whose PHO content could not be verified by suppliers independently of the vendor specification forms, taking such a position necessarily relies on an argument that the PHO content information is therefore not within Kroger's "possession, custody, or control." Both the September 16 Order and the Federal Rules are explicit that a party making such an argument must explain under oath the steps taken to obtain the information. It makes no difference whether the requesting party asked for a declaration. The obligation exists independently of what opposing counsel requests.

Similarly, when the Court asked counsel for Kroger why they did not produce the spreadsheets in their native formats, instead providing thousands of pages of spreadsheet printouts constituting 92.5% of the total production, Mr. Harper responded that he offered to produce the spreadsheets in native format during the meet-and-confer process, but counsel did not have an agreement on that issue ahead of time. Again, Kroger has an independent obligation pursuant to Rule 34 to produce documents as they are normally kept in the course of business. Fed. R. Civ. P. 34(b)(2)(E). This requirement extends to electronically stored information, "to protect against deliberate or inadvertent production in ways that raise unnecessary obstacles for the requesting party." Rule 34, advisory committee's note to 2006 amendment. Taking the position that such an obligation only arises if opposing counsel asks for documents as they are ordinarily kept flies in the face of this Rule. Moreover, Kroger's production of internal spreadsheets in printed form created many such "unnecessary obstacles" warned against. The Court's review of the documents produced reveals obstacles to legibility including, but not limited to, (1) columns so narrow the text in them is converted to ####, (2) many unnatural page breaks throughout the production making it difficult to read, (3) spreadsheets formatted without wrapped text, causing the information in the cells to cut off in the printed versions; (4) spreadsheets with, respectively, 81 columns of data (labeled from A to DC), and 244

columns of data (labeled A to JJ), cut into multiple pages due to landscape printing and thereby rendered inscrutable; (5) full dates being cut off; and (6) no headers provided on the columns in many spreadsheets, or headers being cut off by the printouts. All of these unnecessary inconveniences would have been easily avoided by compliance with Rule 34(b)(2)(E).

Additionally, counsel for the parties exchanged six meet-and-confer letters in December 2019 on outstanding issues. These letters show that Plaintiff's counsel did make an effort to reach agreements on all outstanding issues. The fact that defense counsel sent the final meet-and-confer letter without a response before Plaintiff's counsel filed the present motion does not somehow make the issues in the motion unripe or improperly raised. Plaintiff's counsel does not have an obligation to go back and forth *ad infinitum* on the same discovery issues before turning to motion practice. And while the Court agrees that Kroger's continued willingness to engage in the meet-and-confer process is much better than if Kroger had responded with radio silence, the letters show that Kroger's counsel improperly and unnecessarily multiplied the discovery process by requiring extensive back-and-forths to reach "agreements" on basic discovery issues that were already covered by counsel's affirmative obligations under the Rules and the September 16 Order. For instance, Kroger's counsel forced Plaintiff's counsel to confer on such straightforward issues as whether document productions should be in a searchable format, and whether Kroger should provide a declaration from a knowledgeable employee to establish the date by which it stopped selling relevant products (as required by Judge Major) instead of relying solely on its verified interrogatory responses to that effect.

On the same subject of the declaration from a knowledgeable employee, Kroger's opposition brief and Ms. Canner's declaration attached in support both evince a total disregard for that Court-ordered requirement. When describing the meet-and-confer process, Kroger asserts that it:

> . . . endeavored to resolve all of Hawkins's claimed outstanding discovery disputes before the filing of a motion was necessary on November 22. After

the November 13 Order, however, [Plaintiff's counsel Gregory] Weston[] did not meet and confer ***until November 19 at 8:17 p.m., just 3 days before the initial filing deadline***. He sent a letter listing a number of purported discovery disputes, including that . . . Kroger did not provide a literal declaration establishing the end date for the sale of [Kroger Bread Crumbs] with partially-hydrogenated oil[.]

ECF No. 99 at 15 (emphasis in original). Ms. Canner repeats similar language in her declaration, referring to Mr. Weston's meet-and-confer letter as listing "purported" discovery disputes, "including that . . . Kroger did not provide a ***literal*** declaration with an end date[.]" ECF No. 99-1, Canner Decl. ¶ 19 (emphasis added).

Kroger's characterization of Plaintiff's counsel's demand that Kroger comply with a clear requirement of the September 16 Order as one of Plaintiff's "claimed" or "purported" discovery disputes, coupled with a tone suggesting Kroger's counsel found it almost insulting for Plaintiff to insist on "literal" compliance with the Order more than a month after the deadline for said compliance, show a clear disregard for Kroger's obligations pursuant to the September 16 Order. It is unclear why Kroger's counsel believes the declaration requirement was anything less than "literal." The requirement appears twice in the September 16 Order and is stated explicitly both times. ECF No. 72 at 12, 34.

Other examples abound. As a fourth example, Kroger's supplemental responses served on October 7, 2019 were not verified, in violation of Rule 33. Fifth, Rule 34 requires a responding party to state whether any responsive materials are being withheld on the basis of an objection, which Kroger failed to do even in its supplemental responses. Fed. R. Civ. P. 34(b)(2)(C).

As a sixth example, counsel for Kroger argued during the hearing that certain relevant and responsive documents that were eventually produced, including labels, documents related to marketing and sales data for the products, and vendor specification sheets, are maintained or held by third parties. This representation is consistent with, for example, Kroger's second supplemental response to ROG No. 1, served October 7, 2019 (and later supplemented a third time on November 12) that it "does not maintain quarterly

records for unit sales or revenue for Kroger Bread Crumbs." However, as the Court has already explained above, and as the Court also explained in detail in the September 16 Order, whether Kroger directly maintains information does not determine whether such information is within Kroger's "possession, custody, or control." Kroger absolutely has a legal right to obtain its quarterly records for unit sales and revenue, the labels of its products, and vendor specification sheets, whether or not it maintains them in-house, and Kroger has never made any representations to the contrary. They are therefore within Kroger's control and always have been.

The Court acknowledges Mr. Harper's insistence during the hearing that Kroger's counsel were making every attempt to act in good faith and were not engaging in gamesmanship. However, these examples of discovery misconduct show a pattern and practice suggesting that, if it is indeed true that counsel for Kroger believed they were acting in good faith and in compliance with Judge Major's Order and the Rules, they are in need of additional and neutral training in the Federal Rules of Civil Procedure.

In another case where a court found a party had engaged in a "pattern and practice" of flaunting discovery rules, "given the repeated instances involved, and the fact that Defendant resisted the Court's rulings" the court found further sanctions "appropriate under Rule 37(c)(1), which permits, in addition to exclusion of the evidence, 'other appropriate sanctions.'" *Fish v. Kobach*, 309 F. Supp. 3d 1048, 1118–19 (D. Kan. 2018). Because the Court found it unclear whether the discovery violations were intentional or "due to [counsel's] unfamiliarity with the federal rules[,]" the Court imposed on counsel a CLE requirement of 6 hours, in addition to any other CLE education required by his law license. *Id.* at 1119.

The Court finds such an additional sanction appropriate here. Although the *Kobach* court relied on Rule 37(c)(1), other courts have issued similar sanctions pursuant to their inherent authority. *See, e.g.*, *Moss v. Mackey*, No. 1:07CV135, 2009 WL 322046, at *10 (W.D.N.C. Feb. 10, 2009); *In re Aleman*, No. 14-00606-TLM, 2015 WL 1956271, at *2 (Bankr. D. Idaho Apr. 29, 2015).

> When there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power. But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power.

*Chambers*, 501 U.S. at 50.

Here, it is apparent to the Court from defense counsel's persistent evasion of providing full discovery responses to Plaintiff, even in the face of an order compelling Defendant to do so and issuing monetary sanctions, that simply issuing monetary sanctions under Rule 37(b)(2)(C) a second time is not "up to the task" of adequately addressing the discovery abuses before the Court. Rather, given that defense counsel did not waver from its obstructionist approach to discovery practice even after being ordered to pay Plaintiff $9,837 pursuant to the previous motion to compel, the Court is left with the impression that either Kroger's counsel earnestly—and mistakenly—believes their approach to discovery is consistent with the rules, or else they are operating under "a sporting chance theory encouraging parties to withhold vital information from the other side with the hope that the withholding may not be discovered and, if so, that it would only result in a fine." *G-K Props. v. Redevelopment Agency of San Jose*, 577 F.2d 645, 649 (9th Cir. 1978). Either problem would be insufficiently remedied by monetary sanctions alone.[5]

_____

[5] Nor does the Court find Plaintiff's requested exclusionary sanctions well-suited to the issue. First, Plaintiff's request pertains only to the exclusion from evidence "any documents that should have been produced following the motion to compel order" but that were not produced by December 31, 2019. ECF No. 88-1 at 21-22. However, all of Kroger's document production to this point, other than the belated Evans Declaration, was made prior to December 31, 2019. Therefore, any documents excluded pursuant to such a sanction are presently unknown and may not exist at all. The Court is not inclined to recommend the District Judge exclude from evidence a speculative category of documents that may or may not exist. Second, even if the Court were inclined to recommend that the District Judge preclude Kroger from using any of its belatedly produced documents, the Court's review of the document production indicates that such a ruling would not operate as an especially effective sanction. The evidence in the belated production does not tend to favor Kroger, and, as Plaintiff thoroughly details in her briefing, the vast majority of the

Therefore, pursuant to its inherent authority, the Court **ORDERS** both Jacob Harper and Heather Canner each to attend eight (8) hours of Continuing Legal Education ("CLE") courses related to ethics and discovery practice no later than the California State Bar CLE deadline for 2021, *in addition to* the CLE hours required by the State Bar. Four of these hours must be in ethics and four must be related to federal discovery practice. Counsel must file certifications in this case establishing that they have both completed these additional CLE hours no later than **March 1, 2021**.

## V.    CONCLUSION

For ease of reference, the Court will summarize its rulings throughout the Order. For the reasons explained in this Order, **IT IS ORDERED AS FOLLOWS**:

### A. Compelled Supplemental Responses and Production

With respect to **all discovery requests at issue** (RFP No. 2, RFPs Nos. 5-8, RFPs Nos. 11 and 20, RFP No. 18, ROG No. 1, and ROG No. 5), Plaintiff's motion to compel further responses is **GRANTED**.

In supplementing its responses to RFP No. 2, RFPs Nos. 5-8, RFPs Nos. 11 and 20, RFP No. 18, ROG No. 1, and ROG No. 5, the definition of "PRODUCT" in those requests must be reasonably construed to include **Kroger Bread Crumbs listing partially hydrogenated oil(s) as an ingredient,** and the relevant time period is January 1, 2010 – **the date that Kroger stopped selling bread crumb products listing PHO as an ingredient**.

If Kroger contends that information regarding when it stopped selling bread crumb products listing PHO as an ingredient is not within its possession, custody, or control, it must treat the relevant time period as either January 1, 2010 – present, or as January 1,

---

production concerns products not at issue in this litigation at all. Nonetheless, if Kroger later attempts to use evidence in support of its case that was not properly disclosed or produced in discovery, Plaintiff is not foreclosed from seeking exclusionary sanctions at that time pursuant to Rule 37(c)(1).

2010 – May 31, 2018, if the requests pertain to the CLASS PERIOD, as originally ordered by Judge Major.

With respect to ROG No. 5 in particular, Kroger is **ORDERED** to conduct a reasonable inquiry to obtain all information reasonably available to it regarding when it contracted with its third-party suppliers who supplied the bread crumbs throughout the entire relevant time period beginning January 1, 2010, and is **ORDERED** to supplement its response to ROG No. 5 with all such available information. Kroger's supplementation must also take into account the reasonable construction of "PRODUCT" set forth above. If Plaintiff already obtained this information from the 30(b)(6) deposition, Kroger is excused from further supplementation if counsel for both parties file a joint declaration to this effect **within 14 days of the date of this Order.**

To the extent Plaintiff's motion seeks to compel a further response to RFP No. 24, it is **DENIED**.

### B. Rulings Related to Redactions and Privilege Claims

Kroger is **ORDERED** to review its **entire production** and produce the unredacted versions of all redacted versions within its production that are not included on the privilege log. If Kroger makes any objection to production of documents or redacted portions of such documents on the basis that such information is confidential, propriety, or trade secret information, Kroger must be support such objection(s) with evidence establishing that the information is actually confidential or proprietary, explain why the Protective Order is insufficient to protect the information, and/or file a motion for protective order to protect the disclosure of the allegedly confidential information.

Any newly raised objection on the basis of privilege to justify withholding redacted information that was not previously included on the privilege log must be included on the supplemental privilege log. Kroger must also supplement its RFP responses to assert the privilege.

Kroger is **ORDERED** to supplement its privilege log to provide sufficient factual information for Plaintiff to evaluate the merits of the claimed privileges. The information

in the privilege log must identify each document for which a privilege is claimed, with its author (including the author of any redacted portions withheld on the basis of the claimed privilege), date of preparation, all recipients and the specific privilege claimed. Additionally, if Kroger claims the attorney-client privilege applies to prevent disclosure of the Corporate Record Retention Policies on the current privilege log, Kroger is **ORDERED** to show that the attorney-client privilege applies by providing facts to show that the disclosure of these documents to all Kroger employees was reasonably necessary to accomplish the purpose of the legal consultation between Kroger and its attorney(s). If Kroger claims work product protection applies to these documents, Kroger must explain why dissemination of the documents to all Kroger employees does not constitute waiver. The attorney asserting work product privilege must also be identified with respect to any work product claim.

Plaintiff's motion to find waiver of privilege based on untimely production of the privilege log is **DENIED**. Plaintiff's request that the Court order *in camera* review of any of the documents on the privilege log is **DENIED**. Plaintiff's motion to compel the documents on the basis of waiver is also **DENIED without prejudice**. If Kroger's supplement establishes waiver of the privileges claimed with respect to any of the documents or redacted portions thereof, Plaintiff may argue waiver again at that time.

## C. Additional Rulings to Remedy Improper Productions under the Rules

Pursuant to Fed. R. Civ. P. 37(c)(1), Kroger is **ORDERED** to produce supplemental spreadsheets in their original ESI format, e.g., on a thumb drive, to comply with Rule 34(b)(2)(E). Kroger is further **ORDERED** to review all of its RFP responses containing objections (or incorporating by reference Kroger's general objections) and to supplement any responses that do not comply with the requirement under Fed. R. Civ. P. 34(b)(2)(C) to "state whether any responsive materials are being withheld on the basis of that objection."

### D. Sanctions

The Court **GRANTS** Plaintiff's motion for leave to file an application for fees and expenses pursuant to Fed. R. Civ. P. 37(b)(2)(C). Plaintiff's counsel must file an affidavit demonstrating the "reasonable expenses, including attorney's fees," that were incurred due to Kroger's failure to obey the September 16 Order within **seven (7) days of the date of this Order.**

Pursuant to its inherent authority, the Court **ORDERS** both Jacob Harper and Heather Canner each to attend eight (8) hours of Continuing Legal Education ("CLE") courses related to ethics and discovery practice no later than the California State Bar CLE deadline for 2021, ***in addition to*** the CLE hours required by the State Bar. Four of these hours must be in ethics and four must be related to federal discovery practice. Counsel must file certifications in this case establishing that they have both completed these additional CLE hours no later than **March 1, 2021**.

**IT IS SO ORDERED.**

Dated:  April 23, 2020

_Allison H. Goddard_

Honorable Allison H. Goddard
United States Magistrate Judge