DAVIS WRIGHT TREMAINE LLP
Jacob M. Harper (SBN 259463)
  *jharper@dwt.com*
Nicole S. Phillis (SBN 291266)
  *nicolephillis@dwt.com*
Heather F. Canner (SBN 292837)
  *heathercanner@dwt.com*
865 South Figueroa Street, Suite 2400
Los Angeles, California 90017-2566
Telephone:  (213) 633-6800
Facsimile:  (213) 633-6899

*Attorneys for Defendant*
*The Kroger Company*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAVONDA HAWKINS, on behalf of herself and all others similarly situated,<br><br>                              Plaintiff,<br><br>     vs.<br><br>THE KROGER COMPANY,<br><br>                              Defendant. | Case No. 3:15-cv-2320-JM-AHG<br>Assigned to the Hon. Jeffrey T. Miller<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>[*DEF.'S MOTION 1 OF 3*]<br><br>[*Notice of Motion; Omnibus Declaration of Jacob M. Harper; and Proposed Order Filed Concurrently*]<br><br>Date:        June 15, 2020<br>Time:       No oral arg. unless<br>                 requested by Court<br>Courtroom:  5D<br>Action Filed:  October 15, 2015 |

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ..................................................................................... 1

II.   RELEVANT BACKGROUND ................................................................ 4

    A.    Hawkins Uses Kroger Breadcrumbs From 2000 to 2015. .................... 4

    B.    In 2005, Hawkins Ignores Doctor's PHO "Red Flags.".......................5

    C.    In 2008, "0g Trans Fat" First Appears on Kroger Label....................... 6

    D.    In 2011–2013, Hawkins Ignores Warnings From Counsel...................6

    E.    In 2012, Hawkins Sues in Other Mislabeling Actions..........................7

    F.    In 2015, Hawkins Stops Using Kroger Breadcrumbs. .........................7

    G.    In 2015, FDA and Congress Confirm Use of PHO Until 2018. ...........7

III.  PROCEDURAL HISTORY ...................................................................... 8

    A.    Hawkins Files This Action. ................................................................... 8

    B.    The Court Dismisses the Complaint Under Rule 12(b)(6).................... 8

    C.    The Ninth Circuit Reverses and Remands for Discovery. .................... 9

    D.    This Court Orders Discovery for an "Evidentiary Motion."................. 9

    E.    Depositions and Discovery Take Place.................................................9

    F.    Kroger Opposes a Motion for Class Certification.................................9

    G.    Kroger Files This Motion and Its *Daubert* Motions. .........................9

IV.   KROGER IS ENTITLED TO SUMMARY JUDGMENT. ...........................9

    A.    Hawkins's Testimony Conclusively Defeats Causation. ....................10

        1.    Causation Is an Affirmative Element of Each Claim. ...............10

        2.    The Purchase Timeline Fatally Undermines Causation.............11

    B.    All Hawkins's Claims Are Time Barred. .............................................14

    C.    The Follow-On Class Claims Must Also Be Dismissed. .....................16

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS (cont'd)

**Page**

V.    ALTERNATIVE PARTIAL SUMMARY JUDGMENT IS MERITED.......16

    A.    The Use Claims (COAs 1, 2) Fail As PHO Was Not Unlawful. .........17

        1.    Collateral Estoppel Bars Relitigating PHO Legality. ...............17

        2.    On the Merits, the Claims Still Fail the "Unlawful" Prong.......18

        3.    The "Unfair" Claim Also Fails. .................................................22

    B.    The Mislabeling Claims Fail (COAs 4–8). .........................................23

    C.    The Warranty Claims Fail (COAs 3, 9). ..............................................25

    D.    Injunctive Relief Is Also Not Available. ..............................................25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Backus v. Biscomerica Corp.*,
  378 F. Supp. (N.D. Cal. 2019) ...........................................................19, 20, 21, 22

*Backus v. Conagra Foods, Inc.*,
  2016 WL 3844331 (N.D. Cal. July 15, 2016)...............................................20, 21

*Backus v. Gen. Mills*,
  2018 WL 6460441 (N.D. Cal. Dec. 10, 2018)......................................................21

*Becerra v. Dr Pepper/Seven Up, Inc.*,
  945 F.3d 1225 (9th Cir. 2019) ......................................................................3, 23

*Cardinal Health 301 v. Tyco Elecs. Corp.*,
  169 Cal. App. 4th 116 (2008) ...............................................................................25

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ..............................................................................................10

*Chow v. Neutrogena Corp.*,
  2013 WL 5629777 (C.D. Cal. Jan. 22, 2013) .......................................................13

*Clark v. Hershey Co.*,
  2019 WL 6050763 (N.D. Cal. Nov. 15, 2019) ................................10, 11, 13, 14

*Clemens v. DaimlerChrysler Corp.*,
  534 F.3d 1017 (9th Cir. 2008) .......................................................................3, 23

*Fox v. Ethicon Endo-Surgery, Inc.*,
  35 Cal. 4th 797 (2005) ..........................................................................................16

*Gunawan v. Howroyd-Wright Emp't Agency*,
  997 F. Supp. 2d 1058 (C.D. Cal. 2014) ...............................................................18

*Harshbarger v. Philip Morris, Inc.*,
  2003 WL 23342396 (N.D. Cal. Apr. 1, 2003)......................................................15

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

**Cases**

*Hawkins v. AdvancePierre Foods, Inc.*,
2016 WL 6611099 (S.D. Cal Nov. 8, 2016) .................................................*passim*

*Hawkins v. AdvancePierre Foods, Inc.*,
733 F. App'x 906 (9th Cir. 2018) ...............................................................*passim*

*Hawkins v. Kellogg Co.*,
224 F. Supp. 3d 1002 (S.D. Cal. 2016).......................................................21, 22

*Hawkins v. Kroger Co.*,
906 F.3d 763 (9th Cir. 2018) ...............................................................1, 9, 25

*Hicks v. PGA Tour, Inc.*,
897 F.3d 1109 (9th Cir. 2018) ....................................................................22

*Hodsdon v. Mars, Inc.*,
891 F.3d 857 (9th Cir. 2018) .....................................................................18

*Johns v. Bayer Corp.*,
2013 WL 1498965 (S.D. Cal. Apr. 10, 2013).....................................................24

*Jolly v. Eli Lilly & Co.*,
44 Cal.3d 1103 (1988) ...........................................................................14

*Khasin v. Hershey Co.*,
2014 WL 1779805 (N.D. Cal. May 5, 2014)................................................10, 13

*Kwikset Corp. v. Superior Court*,
51 Cal. 4th 310 (2011) ..........................................................................10

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
350 F.3d 1018 (9th Cir. 2003) ...................................................................16

*Linde, LLC v. Valley Protein, LLC*,
2019 WL 3035551 (E.D. Cal. July 11, 2019).....................................................22

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)..............................................................................10

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

**Cases**

*McQuillion v. Schwarzenegger,*
  369 F.3d 1091 (9th Cir. 2004) ................................................................. 18

*NBCUniversal Media, LLC v. Super. Court,*
  225 Cal. App. 4th 1222 (2014) ............................................................... 15

*NorthBay Healthcare Grp.-Hosp. Div. v. Blue Shield of Cal. Life &*
  *Health Ins.,*
  342 F. Supp. 3d 980 (N.D. Cal. Oct. 26, 2018) ................................... 22

*Ries v. Arizona Beverages USA LLC,*
  287 F.R.D. 523 (N.D. Cal. 2012).................................................... 14, 16

*Sateriale v. R.J. Reynolds Tobacco Co.,*
  697 F.3d 777 (9th Cir. 2012) ............................................................ 11, 13

*Soliman v. Philip Morris, Inc.,*
  311 F.3d 966 (9th Cir. 2002) ................................................................. 15

*Spacone v. Sanford, L.P.,*
  2018 WL 4139057 (C.D. Cal. Aug. 9, 2018)....................................... 13

*Victor v. R.C. Bigelow, Inc.,*
  2016 WL 4502528 (N.D. Cal. Aug. 29, 2016) ..................................... 24

*Wilson v. Frito-Lay N. Am., Inc.,*
  260 F. Supp. 3d 1202 (N.D. Cal. 2017) ............................................... 10

**Statutes**

21 U.S.C.
  § 342.............................................................................................*passim*
  § 342(a)(1)..................................................................................... 7, 20
  § 348.............................................................................................*passim*
  § 348(a) ......................................................................................... 7, 20
  § 348(c)(1)(A) ...................................................................................... 19

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

**Statutes (cont'd)**

California Business & Professions Code
  § 17200 .................................................................................................... 17
  § 17208 ............................................................................................... *passim*

California Civil Code
  § 1783 ................................................................................................. *passim*

California Code of Civil Procedure
  § 338(a) ............................................................................................... *passim*

California Commercial Code
  § 2314(1) .................................................................................................. 25
  § 2316(3)(b) .............................................................................................. 25
  § 2725 ....................................................................................................... 14

California Health & Safety Code
  § 110100 ............................................................................................. 17, 22
  § 110398 .................................................................................................. 22

Consolidated Appropriations Act, 2016, Pub. L. No. 114-113, § 754,
  129 Stat. 2242, 2284 (2015) ............................................................... *passim*

**Rules**

Federal Rule of Civil Procedure
  12(b)(6) .................................................................................................. 1, 8
  30(b)(6) .................................................................................................. 6, 9
  56(a) ........................................................................................................... 9

**Regulations**

21 C.F.R.
  § 170.30 .................................................................................................... 19
  § 170.30(c)(1) ........................................................................................... 19
  § 171.100 .................................................................................................. 19

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

**Regulations (cont'd)**

FDA, Final Determination Regarding PHOs
    80 Fed. Reg. 34650 (June 17, 2015) ...................................................................... 19
    83 Fed. Reg. 23358 (May 21, 2018) ...................................................................... 19

**Other Authorities**

H.R. Rep. No. 114-205 (2015) ...................................................................................... 21

MEMORANDUM ISO MOTION FOR SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

In this action, the third lawsuit she has filed based on near-identical claims, plaintiff Shavonda Hawkins asserts that food she purchased for 15 years straight, two flavors of Kroger Breadcrumbs, improperly contained partially hydrogenated oil (PHO), a form of trans fat that, despite years of information from her doctors dating back to 2005, she didn't care about until her lawyers told her to 10 years later in 2015.  She filed this lawsuit, claimed she was induced into purchasing the product by the product label "0g trans fat," and sought millions of dollars in class relief on a class basis.  After the Ninth Circuit remanded from a dismissal on the pleadings because it found her allegations "could" state a theoretical basis for some claims, *Hawkins v. Kroger Co.*, 906 F.3d 763, 771 (9th Cir. 2018), it asked this Court to reassess Hawkins's claims following discovery.

What has discovery revealed?  As expected, Hawkins's deposition and other discovery has confirmed what was apparent from the start of this case and in every other case she has brought:  Hawkins is not a legitimate plaintiff, has suffered no injury caused by Kroger, has no evidentiary basis to support her claims, and no legal basis for others.  She has no case.  By this motion, Kroger seeks summary judgment of all claims or, in the alternative, partial summary judgement on particular theories she asserts.

***Summary Judgment of All Claims.***  The Court should grant summary judgment on two independent post-deposition grounds, which will also moot her pending class certification and exclusion motions.

***1. No Causation/Reliance.***  Discovery shows Hawkins did not actually rely on a label or suffer any real injury.  To establish reliance and causation, Hawkins claims the statement "0g trans fat," as used on the front of Kroger breadcrumb labels since 2008, duped her into purchasing the products when, in fact, they contained trace amounts of PHO.  In deposition, however, Hawkins repeatedly

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

revealed the "0g trans fat" label never impacted her buying habits (much less cause a purchase).  To the contrary, she admitted she purchased Kroger breadcrumbs, consistently and without interruption, for 15 years—since 2000—6 times per year. She did so out of long-standing habit and preference because they were the best ingredient for her family favorite, "meatloaf."  Indeed, she testified she religiously bought Kroger breadcrumbs without regard to the label, as evidenced by testimony that:  (a) her doctor annually warned her to look for "red flags" such as "partially hydrogenated oil" on ingredient labels, *yet continued her buying habit uninterrupted even though PHO was listed on Kroger breadcrumbs since at least 2005*; (b) her uninterrupted purchases continued without change through 2007, 2008, and 2009, even as the challenged label "0g trans fat" first appeared in 2008, *showing "0g trans fat" had no impact on her*; and (c) in 2011, after her lawyers invited her to become a plaintiff in several lawsuits—all involving trans fat—she continued purchasing at the same rate. ***Despite all that, she did not limit her purchases for another four years***.  She didn't care about the label or PHO; she cared about the breadcrumbs' taste, cost, and suitability for her meatloaf. That's it.

   **2.  *Statute of Limitations***.  Further, Hawkins's unexplainable delay in bringing suit requires dismissal on limitations grounds.  She was on inquiry notice of the very "injury" she claims here—the possibility that foods she purchased, including Kroger breadcrumbs, may contain PHO—in ***2005, a full decade before bringing suit***, which she admits her physicians (and others) advised her to read the ingredient labels for "red flags" of PHO and trans fats.  Her doctor made the same warning to read the ingredient declaration every year, including in 2008 when "0g trans fat" first appeared on the label.  With inquiry notice dating to the mid-2000s, she should have filed no later than 2012.

   ***Alternative Partial Summary Judgment***.  In the alternative, partial summary judgment as to each liability theory is appropriate.

   **1.  *Use Claims (COAs 1, 2)***.  The First and Second Causes of Action for

violation of the Unfair Competition Law (UCL) unlawful and unfair prongs allege the use of PHO in Kroger Breadcrumbs until 2015 violated the Food and Drug Act, 21 U.S.C. §§ 342, 348, as well as Sherman Act provisions that incorporate those sections.  But these claims fail because (a) the are barred by collateral estoppel, as Hawkins made and lost the exact same argument before Judge John Houston of this Court, which was affirmed by the Ninth Circuit in *Hawkins v. AdvancePierre Foods, Inc.*, No. 15-cv-2309-JAH (BLM), 2016 WL 6611099 (S.D. Cal.), *aff'd* 733 F. App'x 906, 906 (9th Cir. 2018); and (b) even reviewed independently, this Court will find PHO use was *not* unlawful through 2018, as a result of federal law and regulations, as many other cases in addition to *AdvancePierre* have ruled.

   ***2. Mislabeling Claims (COAs 4–8).***  The Fourth through Eight Causes of Action allege violations of the UCL, False Advertising Law (FAL), and Consumers Legal Remedies Act (CLRA) on the basis that, under the well-established "reasonable consumer test," the term "0g trans fat" is false or misleading.  Here, Hawkins alleges a reasonable consumer would equate "0g trans fat" with "no trans fat whatsoever," not even trace amounts.  But under the reasonable consumer test, plaintiffs "must produce" actual "***evidence***"—surveys and other documentation, not allegations or speculation—"showing 'a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care."  *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1026 (9th Cir. 2008); *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228-29 (9th Cir. 2019).  While settled law and industry practice require consumer surveys to test reasonable consumers' understanding of specific statements, Hawkins provides nothing.  Her sole "evidence" aside from her say-so is a stray half-sentence thought from an epidemiology expert, Nathan Wong, Ph.D—the subject of a concurrently filed *Daubert* motion—who admittedly has no marketing experience, no survey experience, and no reliable foundation for his testimony.  With no evidence, she does not meet her burden for any of her mislabeling claims.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST. SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

***3.  Warranty Claims (COAs 3, 9).***  The remaining warranty claims also fail.

## II.     RELEVANT BACKGROUND

The facts, most of which are familiar from Kroger's opposition to class certification (Dkt. 117, 102-1–102-3) and derive from Hawkins's deposition testimony taken January 3, 2020, are not in dispute.

### A.     Hawkins Uses Kroger Breadcrumbs From 2000 to 2015.

Beginning approximately 2000 and continuing for 15 years until 2015, Hawkins purchased "Italian" and "Traditional" Kroger breadcrumbs consistently six times per year every year between 2000 and 2015.  Compl. ¶¶ 71, 72; Harper Decl., **Ex. 1**[1] (Hawkins Depo.) at 73:5–18, 74:3–5, 87:18–88:5.  Kroger breadcrumbs were "a regular staple on my grocery list" during this entire period because of her family favorite, meatloaf ("because it feeds a lot of people") and "I needed breadcrumbs." *Id.* at 75:10–21, 101:4-6.  Kroger breadcrumbs were her strong preference because she "like[d] the seasoning" (*id.* at 101:16-23) they were located at convenient stores (*id.* at 75:10-76:4), and they were "cheaper" than other breadcrumbs (*id.* at 77:10–78:3).  During that entire period, she never returned a single carton of Kroger breadcrumbs for a refund (*id.* at 101:6–6) and confirmed she "was satisfied with the bread crumbs" (*id.* at 101:14).

Hawkins purchased Kroger breadcrumbs out of habit.  Indeed, for the entire 15-year period, Hawkins testified repeatedly that she made no change in her purchasing habits, including when asked point-blank:  "Q: ***For both the Italian bread crumbs and the Traditional Bread Crumbs, your buying habits stayed the same, 2000 all the way up to 2015, correct***?  A: ***Pretty much, yes.*** Q: [***Y***]***ou didn't buy more one year or less one year?***  A:  ***No.***"  Ex. 1 at 99:19-100:2 (emphasis added); *accord id.* 76:17-21, 77:7-9; Compl. ¶¶ 71–72.

### B.     In 2005, Hawkins Ignores Doctor's PHO "Red Flags."

---

[1] Exhibits refer to the Declaration of Jacob M. Harper, unless stated otherwise.

MEMORANDUM ISO MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Hawkins was first made aware of possible issues regarding partially hydrogenated oils starting in 2005, when her doctor and television commercials identified "red flag[s]" about PHOs and trans fat.  Ex. 1 at 45:2–51:3, 93:6–94:24. As Hawkins acknowledges, starting 2005, she was specifically informed about the importance of reading ingredient labels by her physician, whom she was required to visit annually:

> [Counsel]:  Were the TV commercials the first warning or the first information you saw regarding the dangers of trans fat?
>
> [Hawkins]:  Well, *I would say the first red flag was  probably my own doctor just talking about it, like—as far as, like, dieting and stuff like that, "Stay away from this" and stuff like that.*  But then more and more the commercials started to come on and were basically scaring everybody.  [. . .]
>
> [Question]:  So just to be clear, it would have *been prior to 2013* that your doctor told you about the dangers of trans fat and the types of packaged foods to avoid, correct?
>
> [Hawkins]:  *Yes*.
>
> [Counsel]:  *Do you recall approximately how far prior to 2013 that would have been?*
>
> [Hawkins]:  I'd say maybe *2005*, '6, '7, '8, '9.

Ex. 1 at 45:23–46:7, 49:21–50:3 (emphasis added). [2]

"Partially hydrogenated oil" in was called out as an ingredient to search for:

> [Counsel]:  And partially hydrogenated oil is – that's the ingredient that your doctor told you contained trans fat?
>
> [Hawkins]: That trans fat can come from—come from that, yes. *So there is no way possible that—if  it contains the PHO, there is no way possible that, if it contains that, that it will have 0 trans  fat*.

Ex. 1 at 94:7–14 (emphasis added); *id.* at 94:15–24 (confirming the information about watching labels for PHO was from "different conversations over the years" beginning in 2005).  During these visits from 2005 on, she was advised "*to look at*

---

[2] As a bus driver, Hawkins was required to pay particular attention to her physician's warnings and have annual physicals. Ex. 1 at 19:2–6, 23:11–18.

MEMORANDUM ISO MOTION FOR SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*the nutritional-fact labeling and ingredients*" for partially hydrogenated oil.  *Id.* at 50:23–51:3 ("Yeah, to [] try to pay attention as much as I could.").

Despite these warnings, she admitted she **did not look at the ingredients**, including the "partially hydrogenated oil" of which her physician and television commercials made her specifically aware.  *See, e.g.*, *id.* at 97:19-21 ("Q:  You mentioned earlier that you didn't always read the ingredients; is that right? A:  Yes."); *id.* at 97:24–98:1 ("I may not have had time to sit and read every single label"); *id.* at 98:7–8 ("I didn't always have time to fully read the ingredient list.").

**C.      In 2008, "0g Trans Fat" First Appears on Kroger Label.**

Although Hawkins makes conclusory claims that the front label statement "0g Trans Fat" induced her to purchase breadcrumbs (*e.g.*, Compl. ¶ 76; *see also* Ex. 1 at 72:23–73:7), **the undisputed evidence shows, the statement "0g Trans Fat" did not appear on the front label until __2008__.**  Kroger's Package Design Team Manager, Kim Bower (who was also deposed as a Rule 30(b)(6) witness) explained Kroger breadcrumbs labels first contained the front label statement "0g Trans Fat" in  November 2008, some *eight years after* Hawkins began purchasing them regularly.  Ex. 3 (Bower Decl.) ¶¶ 8, 10 ("the statement '0g Trans Fat' did not appear on the front of the label for Kroger [Plain or Italian] Bread Crumbs in store shelves until November 2008") & Exs. A, B (Plain/Traditional Bread Crumbs and Italian Breadcrumb labels, dated 2005, showing no "0g Trans Fat" claim on front)[3]; *see* Ex. 2 (Bower Dep.) at 7:15–18.  **Hawkins did not buy more with the new "0g trans fat" label, but continued purchasing with the exact same six-time-per-year frequency as she had done for a decade before**.  Ex. 1 at 77:7–9, 99:19–100:2.

**D.      In 2011–2013, Hawkins Ignores Warnings From Counsel.**

Hawkins admits she did not bother to "look at the ingredient list" until sometime after "I had spoke [*sic*] to Mr. Weston," meaning around 2011 or 2012—

_____

[3] Kroger Plain Breadcrumbs were later renamed Traditional.  Ex. 3 (Bower Decl.) ¶ 8.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

at least six years after her doctor first issued "red flags" in 2005.  Ex. 1 at 93:10–94:3; *see also id.* at 40:16-22 (noting Hawkins first met counsel "in 2011 or '12, somewhere in there").  Yet, even after her *counsel's* warnings, she continued purchasing the products with the exact same six-time-per-year frequency as she had done for a decade before.  *Id*. at 77:7–9, 99:19–100:2.

### E.    In 2012, Hawkins Sues in Other Mislabeling Actions.

During this period, Hawkins also revealed she was a plaintiff in at least three other mislabeling lawsuits, each time also represented by The Weston Firm.[4]  First filed in 2012, these cases concerned ingredient- and labeling-related claims similar to those here.  *See* Harper Decl., Exs. 5–7 (complaints).  They demonstrated a particular and specialized concern for product ingredients, but Hawkins continued to purchase the Kroger breadcrumbs without regard to the ingredients

### F.    In 2015, Hawkins Stops Using Kroger Breadcrumbs.

Three months before filing this lawsuit, Hawkins abruptly stops purchasing Kroger breadcrumbs in 2015.  Compl. ¶¶ 71, 74; Ex. 1 at 100:3–12.  She admits that, despite 15 years of breadcrumbs consumption, she did not suffer any of the litany of ailments she alleged trans fat causes in her complaint, or any other injury. Compl. ¶¶ 21, 24–60; Ex. 1 at 30:11–31:8; *see id*. at 27:23–30:10, 84:3–85:16.

### G.    In 2015, FDA and Congress Confirm Use of PHO Until 2018.

In December 2015, President Barack Obama signed into law the Consolidated Appropriations Act, 2016, Pub. L. No. 114-113, § 754, 129 Stat. 2242, 2284 (2015) (CAA), which provided, among other things: "No partially hydrogenated oils as defined in the [Final Determination] shall be deemed unsafe within the meaning of [21 U.S.C. 348(a)] . . .  and no food that . . . bears or contains a partially hydrogenated oil shall be deemed adulterated under [21 U.S.C. 342(a)(1)

---

[4] *See Hawkins v. Gerber Co.*, No. 12-cv-465-MMA (filed Feb. 23, 2012); *Hawkins v. AdvancePierre Foods*, No. 15-cv-2309-JAH (filed Oct. 14, 2015); and *Hawkins v. Kellogg Co.*, No. 16-cv-0147-JAH; Ex. 1 at 10:22-11:14, 123:3–124:18.

MEMORANDUM ISO MOTION FOR SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

or (a)(2)(C)(i)] by virtue of bearing or containing a partially hydrogenated oil until the compliance date as specified in such order (June 18, 2018)."

### III.   PROCEDURAL HISTORY

#### A.   Hawkins Files This Action.

Two months before the CAA, Hawkins filed this lawsuit on October 15, 2015, invoking federal jurisdiction under CAFA and seeking nationwide class relief.  Compl. ¶¶ 1, 114.  Hawkins sued Kroger in October 15, 2015 based on Kroger's purported mislabeling of its Bread Crumbs as containing "0g Trans Fat." Compl. ¶ 9.  Hawkins alleged that, through 2015, this marketing of the Bread Crumbs was false or misleading because they contain PHO, which contain trace amounts of trans fat.  *Id.* ¶ 3.  Based on this allegation, Hawkins asserted claims for violation of UCL, FAL, CLRA, and express and implied warranties.  *Id.* ¶¶ 122-87. Hawkins's claims fall into two categories:  (1) Kroger misleadingly advertises the Bread Crumbs as containing "0g Trans Fat" on the front of the package when, in fact, the product contains between 0g and 0.5g trans fat (the "Mislabeling Claims"); and (2) there is no safe level of trans fat and that the product's inclusion of PHOs cause adverse health effects (the "Use Claims").  ECF No. 40 at 2.

As Hawkins admittedly did not suffer any injury from consuming Kroger Breadcrumbs, Ex. 1 at 27:23–31:8, her sole damages theory is that she paid more for the product than it is worth, and is therefore entitled to economic damages.

#### B.   The Court Dismisses the Complaint Under Rule 12(b)(6).

In November 2015, Kroger filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), citing a host of defects in Hawkins's complaint, including that her pleadings showed an apparent lack of reliance.  Dkt. 11.  This Court granted the motion to dismiss on March 17, 2016 with prejudice, finding Hawkins failed to plead sufficient facts for standing and finding some claims preempted.  Dkt. 19.

#### C.   The Ninth Circuit Reverses and Remands for Discovery.

Hawkins appealed the Court's order dismissing the action, and on October 4,

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

2018, the Ninth Circuit reversed and remanded.  906 F.3d 763 (9th Cir. 2018).  The Court applied then-new Ninth Circuit authority regarding pleading standards to find Hawkins's reliance allegations acceptable at the pleading stage, and remanded for discovery, repeatedly noting reliance and other issues were better resolved as fact questions with the benefit of discovery.  *Id.* at 768–69, 772.

### D.    This Court Orders Discovery for an "Evidentiary Motion."

On remand, this Court issued an order declining to dismiss on the pleadings, noting that some pleadings arguments were a "close call" and thus "defer[red] ruling on [them] until the presentation of an evidentiary motion."  Dkt. 40 at 10.

### E.    Depositions and Discovery Take Place.

Following remand, the parties engaged in discovery and Hawkins sat for deposition on January 3, 2020, testifying as described.  Harper Decl. ¶ 2, Ex. 1. Kroger also produced witnesses for a deposition pursuant to Federal Rule of Civil Procedure 30(b)(6), which took place February 26, 2020, outside Cincinnati, Ohio. Harper Decl. ¶ 3 & Ex. 2.  On April 27 and 29, Kroger took depositions of Hawkins's putative expert witnesses, Drs. Robert Bowen and Nathan Wong.  *Id*. ¶¶ 14, 18.  Hawkins waived the use of expert Beatrice Golomb for pre-trial filings.  *Id.*

### F.    Kroger Opposes a Motion for Class Certification.

Meanwhile, Hawkins filed her Motion for Class Certification on January 21, 2020.  Dkt. 89.  Kroger opposed.  Dkt. 117, 102-1–102-3.  The motion is pending.

### G.    Kroger Files This Motion and Its *Daubert* Motions.

Following completion of discovery, Kroger filed this motion for summary judgment and its *Daubert* motions to exclude the testimony of Hawkins's experts.

## IV.    KROGER IS ENTITLED TO SUMMARY JUDGMENT.

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Once the movant meets the initial burden, the nonmovant must "go beyond the pleadings and . . . designate specific facts showing there is a genuine

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1  issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  The

2  nonmovant's evidence must be sufficient such that the record, taken as a whole,

3  could support a rational trier of fact in finding for the nonmoving party on that

4  issue.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

5  **A.    Hawkins's Testimony Conclusively Defeats Causation.**

6  Lack of causation defeats all Hawkins's claims, including those under the

7  UCL (COAs 1, 2, 4, 5, 6); the FAL (COA 7); the CLRA (COA 8); and warranty

8  theories (COAs 3, 9).  For all these claims, Hawkins maintains Kroger's label

9  induced her to purchase the products—namely, but for Kroger's "0g trans fat"

10  statement, she would not have purchased the product, and therefore would not have

11  allegedly suffered under her two theories of liability: the mislabeling theory, that

12  she lost money because of the label, and the use theory, that she suffered

13  unspecified risk of injury because of her ingestion of trans fats.  Compl. ¶ 107;

14  *Hawkins*, 906 F.3d at 768–69.  Because the evidence shows, in fact, that Kroger did

15  not cause her supposed injuries, the claims fail.

16  **1.    Causation Is an Affirmative Element of Each Claim.**

17  California's consumer protection statutes impose an express requirement of

18  "actual reliance," *i.e.*, proof that the plaintiff "would not have bought the product

19  but for the misrepresentation."  *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310,

20  326-27, 330 (2011).  "To prevail on their causes of action under UCL, FAL, and the

21  CLRA, Plaintiffs must demonstrate that they actually relied on the challenged

22  misrepresentations and suffered economic injury as a result of that

23  reliance."  *Wilson v. Frito-Lay N. Am., Inc.*, 260 F. Supp. 3d 1202, 1208 (N.D. Cal.

24  2017); *Khasin v. Hershey Co.*, 2014 WL 1779805, at *4 (N.D. Cal. May 5, 2014)

25  ("actual reliance requirement applies to [] claims under all prongs of the UCL"); *see*

26  *Clark v. Hershey Co.*, 2019 WL 6050763, at *2 (N.D. Cal. Nov. 15, 2019)

27  (dismissing express and implied warranty claims for lack of reliance and causation).

28  Hawkins is "required to prove actual reliance on the allegedly deceptive or

misleading statements . . . and that the misrepresentation was an immediate cause of their injury-producing conduct." *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 793 (9th Cir. 2012); *Clark*, 2019 WL 6050763, at *2 ("[c]ausation is . . . a necessary element under California law"; "plaintiff must [show] she would not have bought the product but for the misrepresentation").

### 2.     The Purchase Timeline Fatally Undermines Causation.

Courts frequently scrutinize purchase histories to determine whether a plaintiff "actually relied" on the defendant's label. *E.g.*, *Sateriale*, 697 F.3d at 793 (no reliance where plaintiff did not purchase any additional products *after* the alleged misrepresentation was made); *Clark*, 2019 WL 6050763, at *2 (granting summary judgment; depositions showed buying timeline inconsistent with reliance).

Here, Hawkins's admissions in deposition revealed the label simply did not matter. Her purchases remained unchanged before, after, and regardless of the "0g trans fat" statement; she bought Kroger breadcrumbs with the exact same six-times-per-year frequency in 2015 as she did in 2008, 2005, and 2000.

To review:  Beginning in 2000 (and continuing uninterrupted until 2015), Hawkins consistently bought Kroger Breadcrumbs six times per year, confirmed her "buying habits stayed the same, 2000 all the way up to 2015," because the taste, convenience, price, and other qualities made them ideal for her "week[ly] . . . meatloaf,"  and thus were a "regular staple on my grocery list." Ex. 1 at 73:5–18, 74:3–5, 75:10–76:4 77:10–78:3, 99:19-100:2, 101:4-6.  Hawkins was "satisfied with the bread crumbs" and never returned a carton for a refund. *Id.* at 101:6–4.

Contrary to her allegations (Compl. ¶ 76), neither the "0g Trans Fat" nor anything else on the breadcrumb label statement caused her to purchase breadcrumbs.  For starters, "the statement '0g Trans Fat' did not appear on the front of the label for [either flavor of breadcrumbs Hawkins purchased] in store shelves until November 2008." Ex. 3 ¶¶ 8, 10 (describing "0g trans fat" first appearing in 2008, Exs. A, B [labels from 2005 showing no "0g trans fat" statement on front

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

label]); Ex. 2 (Bower Dep.) at 7:15–18.  Yet, Hawkins testified that she began her regular purchases of Kroger breadcrumbs eight years earlier in 2000 (Ex. 1 at 73:5–18, 74:3–5), and admitted repeatedly that she did not increase or otherwise change her purchases of Kroger breadcrumbs after the "0g trans fat" statement appeared in 2008 (*e.g.*, *id.* at 99:19-100:2, confirming "buying habits stayed the same, 2000 all the way up to 2015" and she "didn't buy more one year or less one year"; *accord id.* 76:17–21, 77:7–9).  Thus:

- For the period before 2008, Hawkins could not have relied on the statement "0 Trans Fat" on the front label because *it simply did not exist*.

- For the period after 2008, Hawkins demonstrably *did not rely* on the label because her buying habits admittedly remained precisely the same as before 2008.  Ex. 1 at 77:7–9, 99:19–100:2.

Hawkins's admissions regarding the lack of purchase changes resulting from the "0g trans fat" statement alone conclusively demonstrate no reliance.  Hawkins's myriad other admissions, however, confirm not only a lack of reliance, but that she affirmatively did not care about the content of PHO.

Hawkins admitted, for example, that beginning as far back as 2005, during annual mandatory physical exams, her doctor repeatedly advised her to watch her diet for trans fats, and particularly for "red flags" such as "partially hydrogenated oil" in the ingredient lists on food packaging.  Ex. 1 at 45:2–51:3, 93:6–94:24.  "Partially hydrogenated oil" was clearly listed in the ingredient panel at that time and going forward (Ex. 3 at Exs. A, B), but Hawkins simply failed to look at ingredient statements despite physician warnings to review for PHO (Ex. 1 at 45:23–46:7, 49:21–51:3, 94:7–24, 97:19–98:8.)  She admitted hearing similar information about "red flags" from TV commercials and elsewhere during that time, yet did not bother looking at the label itself.  Ex. 1 at 45:2–51:3, 93:6–94:24.

Hawkins's willful ignorance continued for many years, through 2011, at least six years after her doctor first issued "red flags" in 2005, when, after "I had spoke [*sic*] to Mr. Weston" about trans fats (Ex. 1 at 93:10-94:3; *see also id.* at 40:16-22—

MEMORANDUM ISO MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

and *after beginning to serve as a professional plaintiff in at least three mislabeling lawsuits beginning* in 2012 (*supra* at 7; Ex. 1. at 10:22–11:14; *id.* at 123:3–124:18; Exs. 5–7)—she *continued* purchasing the products with the exact same six-time-per-year frequency as she had done for a decade before. *Id.* at 77:7–9, 99:19–100:2.

Given the details of her 15-year purchase and use history, it is clear Kroger's labeling and use of PHO **simply did not matter** to Hawkins—and therefore her claimed injuries are not "a result of" Kroger's conduct. The *only* reason she purchased these products is that she wanted them, and her after-the-fact thoughts on why she may not have wanted them now do not establish reliance or causation.

Hawkins's testimony forecloses any genuine issue of fact as to whether Kroger's label caused any alleged injury. Under long settled law of California and Ninth Circuit, evidence that the plaintiff made the same purchasing decision irrespective of the challenged representation defeats a showing of injury. *See, e.g.*, *Clark*, 2019 WL 6050763, at *3 (granting summary judgment, where depositions revealed purchase timeline demonstrating plaintiffs bought product regardless of label); *see also Sateriale,* 697 F.3d at 793 (no reliance where plaintiff did not purchase any additional products after the alleged misrepresentation was made); *Khasin*, 2014 WL 1779805, at *4 (granting summary judgment).[5]

*Clark* is instructive. There, Judge William Alsup in the Northern District of California granted summary judgment after finding that the plaintiffs' deposition testimony fatally undermined their allegations of reliance. 2019 WL 6050763, at *2–4. One plaintiff, like Hawkins, claimed the challenged statement misled her before the statement even appeared, leading Judge Alsup to find the alleged injury

---

[5] *See also Spacone v. Sanford, L.P.*, 2018 WL 4139057, at *8 (C.D. Cal. Aug. 9, 2018) (denying class certification; "repeat purchasers" could not have suffered injury on the basis of the challenged misrepresentation); *Chow v. Neutrogena Corp.*, 2013 WL 5629777, at *1–2 (C.D. Cal. Jan. 22, 2013) (same; "repeat purchasers" of the challenged product who were motivated by "mere favorability toward products," as opposed to "reliance upon specific advertised benefits of the products in this case," suffered no injury).

MEMORANDUM ISO MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1 (purchase of the product) occurred "because of an initial misunderstanding when

2 the label was not even present," not because of the defendant's label. *Id.* at *3–4.

3 For another, the challenged label statement appeared, as with Hawkins, *after* the

4 plaintiff established her purchase habits, leading the court to conclude "there is no

5 indication from the facts that he looked at it or based any purchasing decisions off

6 of it." *Id.* at *9. Prior buying habits compelled the purchases, not labels.

7      So too here. Given the details about her uniquely consistent 15-year purchase

8 habits, the lack of effect of the 2008 label change, the ignorance of the 2005 "red

9 flags" from her doctor, the further lack of action after her 2011 encounters with

10 layers, the problems for Hawkins's causation theory are starkly more troubling that

11 even in *Clark*. Hawkins is the poster child for how *not* to demonstrate reliance. No

12 genuine dispute exists as to Hawkins's lack of causation, and Hawkins's claims

13 should be dismissed on this ground alone.

14      **B.    All Hawkins's Claims Are Time Barred.**

15      Even if she met her burden to show causation, Hawkins fails to overcome the

16 three- and four-year statute of limitations applicable to all her claims. Dkt. 59 at 35;

17 Dkt. 86 at 5; Cal. Civ. Code § 1783 (CLRA); Cal. Prof. & Bus. Code § 17208

18 (UCL); Cal. Comm. Code § 2725 (warranty); Cal. Civ. Proc. Code § 338(a) (FAL).

19      The applicable statutes of limitations begins from the moment the plaintiff is

20 aware of or should be aware of her purported injury. *See Jolly v. Eli Lilly & Co.,* 44

21 Cal.3d 1103, 1109 (1988) (the statute of limitations begins to run "when the

22 plaintiff suspects or should suspect that her injury was caused by wrongdoing").

23 Thus, if a plaintiff knows at the moment of purchase that her product contains an

24 ingredient that is the subject of her lawsuit, then she knows of her "injury" and the

25 statute of limitations begins to run at the time of purchase. *Ries v. Arizona*

26 *Beverages USA LLC*, 287 F.R.D. 523, 534 (N.D. Cal. 2012).

27      Under California's "single injury" rule, once the cause of action first accrues

28 for a purchaser, the limitations clock begins to run for all purchases made by her.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1    *See Harshbarger v. Philip Morris, Inc.*, 2003 WL 23342396, at \*6–7 (N.D. Cal.

2    Apr. 1, 2003).  If a plaintiff is aware of a harm but continues purchases, those

3    repeated purchases do not restart the applicable limitation period; rather, a

4    plaintiff's injury from ongoing use of a product "would constitute not a new breach,

5    but rather additional harm."  *NBCUniversal Media, LLC v. Super. Court*, 225 Cal.

6    App. 4th 1222, 1237 (2014); *see Soliman v. Philip Morris, Inc.*, 311 F.3d 966 (9th

7    Cir. 2002) (claim accrued at time of plaintiff's initial notification of injury, not with

8    subsequent purchases).  Thus, the claim "accrues" at the earliest point at which the

9    plaintiff knew or should have known the claimed injury.

10        Here, the thrust of all Hawkins's causes of action is that was injured by

11    paying for the Kroger breadcrumbs that, in her view, were worthless because the

12    contained trans fat, and therefore she injuriously spent money on these products that

13    she claims she did not believe contained PHO.  Compl. ¶¶ 76, 106–07.  Thus, the

14    limitations periods accrued when she knew or should have known that Kroger

15    breadcrumbs contained PHO.  But the timeline constructed from her admissions

16    demonstrates her claims accrued as early as 2005—and no later than 2008.

17        First, Hawkins's deposition shows she should have known about the content

18    of partially hydrogenated oils since at least 2005.  As noted, Hawkins first learned

19    of what she deemed "red flag[s]" about PHO and trans fat from television

20    commercials and information warning about overuse of trans fats.  Ex. 1 at 45:2–

21    51:3, 93:6–94:24.  She was specifically informed to watch for "the PHO," *id.* at

22    94:7–24, and confirmed she was explicitly warned to "***to look at the nutritional-***

23    ***fact labeling and ingredients***" for those PHOs.  *Id.* at 50:23–51:3 (emphasis

24    added).  And it is beyond material dispute that Kroger breadcrumb labels, by that

25    time, already disclosed "partially hydrogenated oil" in the very ingredient panel

26    highlighted by her doctor.  Ex. 3 (Bower Decl.) ¶¶ 7, 9 & Exs. A, B.  Given

27    Hawkins was put on inquiry notice of PHO in Kroger breadcrumbs in 2005, her

28    claims accrued that year and she should have brought a lawsuit, at latest, by 2009.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Second, if Hawkins construes her "injury" as resulting from the "0g trans fat" label, then the limitations period began no later than 2008, when that statement first appeared (Ex. 3 ¶¶ 8, 10)—all while Hawkins was still receiving her annual physicals and warnings about PHO and trans fats (Ex. 1 at 45:23–46:7, 49:21–50:3). Hawkins's later purchases and consumption of the product after 2005, and any continued "harms," are merely a continuation of her earlier claim.

While her complaint makes two conclusory allegations of "delayed discovery" (Compl. ¶¶ 111–12), her testimony regarding the "red flags" about PHO fatally undermine this attempt to move out accrual. *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005) ("A plaintiff has reason to discover a cause of action when he or she has reason at least to suspect a factual basis for its elements."). Doctor's warnings, TV commercials, instructions to look for "red flags" in the ingredients—Hawkins had all she needed to suspect a factual basis for claiming PHO was wrongfully labeled or included in 2005, and at the latest when the "0g trans fat" statement appeared in 2008. "[T]he statute runs once she is put on inquiry notice: when the circumstances would lead a reasonable person to suspect wrongdoing." *Ries*, 287 F.R.D. at 534. "A plaintiff has reason to discover a cause of action when he or she has reason to at least suspect a factual basis for its elements." *Id.* All Hawkins's claims are time-barred.

### C.    The Follow-On Class Claims Must Also Be Dismissed.

Because all Hawkins's claims should be dismissed, the class claims must also be dismissed. *See Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003) (if named plaintiff cannot establish relief for herself, she may not "seek relief on behalf of himself or any other member of the class").

## V.    ALTERNATIVE PARTIAL SUMMARY JUDGMENT IS MERITED.

If, *arguendo*, the Court moved past the causation and limitations issues, Kroger would still be entitled to partial summary judgment on specific claims.

### A.    The Use Claims (COAs 1, 2) Fail As PHO Was Not Unlawful.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

First, Hawkins's First and Second Causes of Action allege Kroger violated the UCL's "unlawful" and "unfair" prongs by including PHOs in Kroger Breadcrumbs until 2015, thereby allegedly violating the federal FDA and California's Sherman Act as UCL predicates.  Not so.

### 1.    Collateral Estoppel Bars Relitigating PHO Legality.

For starters, Hawkins's use-based arguments under the UCL are barred by collateral estoppel because Judge Houston of this Court already rejected them against Hawkins and her counsel, as the Ninth Circuit affirmed.  *Hawkins v. AdvancePierre Foods, Inc.*, No. 15-cv-2309-JAH (BLM), 2016 WL 6611099, at *3–5 (S.D. Cal. Nov. 8, 2016), *aff'd* 733 F. App'x 906, 906 (9th Cir. 2018).

In *AdvancePierre*, Hawkins alleged the manufacturer of packaged sandwiches illegally used PHO in its sandwiches through 2016, and brought claims under the UCL unlawful and unfair prongs for allegedly illegal and unfair use of PHO.  2016 WL 6611099, at *1.  The defendant moved to dismiss the UCL claims on the ground that federal law, under the FDA's Final Determination and the CAA, deemed PHO use not unlawful, and thereby precluded the claims.  *Id.* at *3.  Agreeing, Judge Houston found "the current use of PHO in food products does not violate federal law," and therefore cannot serve as a basis for UCL claims.  *Id.* at *4–5.  The Ninth Circuit affirmed, holding:

> [H]er allegations do not establish the requisite "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. A claim under the "unlawful" prong requires a predicate violation of another law [citations], but federal law did not prohibit PHOs prior to June 18, 2018, see Consolidated Appropriations Act of 2016, Pub. L. No. 114-113, § 754, 129 Stat. 2242, 2284 (2015). Hawkins's complaint also cited a provision of California's Sherman Act that adopted federal law, Cal. Health & Safety Code § 110100, but AdvancePierre's use of PHOs did not violate this provision because it did not violate federal law.

*AdvancePierre*, 733 F. App'x at 906.

*AdvancePierre* is collateral estoppel over Hawkins's claims that the use of

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

PHO before 2018 created UCL violations, because:  "(1) the issue at stake [is] identical to the one alleged in the prior litigation; (2) the issue [was] actually litigated [by the party against whom preclusion is asserted] in the prior litigation; and (3) the determination of the issue in the prior litigation [was] a critical and necessary part of the judgment in the earlier action.'"  *McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1096 (9th Cir. 2004) (affirming dismissal based on collateral estoppel).  ***First***, the issue is identical:  here and in *AdvancePierre*, Hawkins asserts the mere "use" of PHO in packaged foods before 2018 constitutes illegal conduct under the unlawful and unfair UCL prongs, but in both cases the FDA and CAA preclude that finding.  ***Second***, the issue was actually litigated— twice.  The defendant food manufacturer clearly raised the issue, and Hawkins fought it hard.  2016 WL 6611099, at *2 (acknowledging court considered Hawkins's additional "surreply" brief over the issue); and Hawkins lost the appeal, too.  733 F. App'x at 906.  ***Third***, the determination of the issue was critical and necessary to the judgment:  it was a basis for dismissing the use-based UCL claims, and it was the primary basis for affirmance.

### 2.    On the Merits, the Claims Still Fail the "Unlawful" Prong.

Even if the Court considers the argument (again), it still fails.  As to Plaintiff's unlawful UCL claims, where, as here, plaintiff fails to identify any predicate violation of law, summary judgment must be granted.  *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 865 (9th Cir. 2018) (affirming dismissal of UCL claim because no predicate legal violation); *Gunawan v. Howroyd-Wright Emp't Agency*, 997 F. Supp. 2d 1058, 1070 (C.D. Cal. 2014) (granting summary judgment; "UCL claim [] stands or falls depending on the fate of the antecedent" statutory violations).

Hawkins predicates her use-based UCL claims on perceived violations of the Food and Drug Act, 21 U.S.C §§ 342, 348, as well as Sherman Act provisions that incorporate § 348.  Compl. ¶ 132 ("Kroger's conduct is 'unlawful' because it violates the [FDCA]," citing 21 U.S.C. §§ 348, 342).  Hawkins bears the burden to

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1    show the use of PHO was illegal under §§ 342 and 348 until 2015.

2         The Federal Food, Drug, and Cosmetic Act empowered the FDA to regulate
3    the conditions under which "food additives" may be used in food products. *See* 21
4    U.S.C. § 348(c)(1)(A); 21 C.F.R. § 171.100.  Under this authority, the FDA
5    established an approval process by which food producers could scientifically
6    demonstrate their food additives are safe.  21 C.F.R. § 170.30.  The FDA exempted
7    from this requirement certain substances that experience revealed were safe "based
8    on common use in food prior to January 1, 1958."  21 C.F.R. § 170.30(c)(1).  Food
9    additives satisfying either criterion are "generally recognized as safe," or "GRAS,"
10   and may be used in food products.  80 Fed. Reg. 34650, 34652.

11        As of 2015, PHOs had long been deemed GRAS based on a history of use
12   before 1958.  *Backus v. Biscomerica Corp.*, 378 F. Supp. 3d 849, 854–55 (N.D. Cal.
13   2019) (in 2015, "the FDA noted . . . [PHOs] had been generally regarded as safe
14   and used in food products for decades") (citing FDA, Final Determination
15   Regarding PHOs, 80 Fed. Reg. 34650 at 34651 (June 17, 2015)).  In June 2015, the
16   FDA issued a Final Determination Order acknowledging that although PHOs had
17   long been considered GRAS, "there is no longer a consensus among qualified
18   experts that partially hydrogenated oils … are generally recognized as safe (GRAS)
19   for any use in human food."  Ex. 8 at 34651.  The Final Determination did not
20   conclude that PHOs are unsafe or immediately ban their use.  *Id.* at 34654.  Rather,
21   it announced that those in the food industry would have until June 18, 2018 (the
22   "compliance date") to cease using PHO.  *Id.* at 34653.[6]  "The compliance date will
23   have the additional benefit of minimizing market disruptions by providing industry
24   sufficient time to identify suitable replacement ingredients for PHOs, to exhaust
25   existing product inventories, and to reformulate and modify labeling."  *Id.* at 34669.
26   The Determination "has the force and effect of law."  *Id.* at 34657.

27

28        [6] The FDA extended compliance dates to 2021 to allow existing products "to
     work their way through distribution."  83 Fed. Reg. 23358, 23359 (May 21, 2018).

MEMORANDUM ISO MOTION FOR SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

In setting the three-year compliance date, the FDA expressly permitted food companies to continue using PHOs, as they had done before, through June 2018. *See id.*; *Backus v. Conagra Foods, Inc.*, 2016 WL 3844331, at *3 (N.D. Cal. July 15, 2016) ("[PHOs] were widely treated as GRAS . . . until very recently, and the FDA has permitted their continued use until 2018"; "[T]he FDA's final decision not to prohibit the sale of products containing [PHOs] until 2018 indicates that it was not and is not unlawful under federal law to sell them before the compliance date.").

Following the FDA's Final Determination, Congress enacted law likewise deeming the use of PHO lawful through June 2018.  In December 2015, President Obama signed into law the CAA, which confirmed the use of PHO in food products was lawful and could not render foods "adulterated" or "unsafe" until 2018:

> *No partially hydrogenated oils as defined in the [Final Determination] shall be deemed unsafe within the meaning of* [*21 U.S.C. 348(a)*] and no food that is introduced or delivered for introduction into interstate commerce that bears or contains a partially hydrogenated oil shall be deemed adulterated under [21 U.S.C. 342(a)(1) or (a)(2)(C)(i)] *by virtue of bearing or containing a partially hydrogenated oil until the compliance date as specified in such order (June 18, 2018)*.

Pub. L. No. 114-113, § 754, 129 Stat. 2242, 2284 (2015) (emphasis added)[7]; *see Biscomerica.*, 378 F. Supp. 3d at 852 ("[The CAA]—consistent with the FDA's Final Determination—stated that PHO would not be considered unsafe or unadulterated under federal law until the June 18, 2018 compliance date."). Notably, these are the very statutes upon which Hawkins relies to support her use claims.  *E.g.*, Compl. ¶ 132 ("Kroger's conduct is 'unlawful' because it violates the [FDCA]," citing 21 U.S.C. §§ 348, 342).

While the statute alone establishes the use of PHO is lawful, the CAA's legislative history further clarifies that it enumerated the compliance period to prevent "unnecessary litigation" surrounding the use of PHO.  H.R. Rep. No. 114-

---

[7] The CAA passed *after* briefing on the Motion to Dismiss. *See* Dkt. 11, 14, 15.

20
MEMORANDUM ISO MOTION FOR SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

205, at 71 (2015); *see Hawkins v. Kellogg Co.*, 224 F. Supp. 3d 1002, 1012 (S.D. Cal. 2016) ("[The CAA] is a clear step by Congress to preclude parties [] from bringing suit against food manufacturers based on the use of PHO before the compliance date."); *AdvancePierre*, 2016 WL 6611099, at *4 (same); *Backus v. Gen. Mills*, 2018 WL 6460441, at *4 (N.D. Cal. Dec. 10, 2018) ("Congress has been clear that no liability can arise for use of PHOs before [] June 18, 2018[.]").

Together, the FDA's Final Determination and the CAA stand as decisive federal authority permitting food distributors to continue using PHO and trans fat until at least 2018, and rendering that conduct lawful until that time. *Biscomerica*, 378 F. Supp. 3d at 856 ("The FDA and Congress [] declared in a rulemaking and in legislation that foods containing PHO would not be deemed unsafe or adulterated until June 2018."); *see id.* at 854–55 ("Congress was clear [in the CAA] that the use of PHO was not prohibited until 2018[.]"); *Gen. Mills*, 2018 WL 6460441, at *6 ("[The CAA] is clear and the use of PHOs in food before June 2018, the entirety of the time period covered by the complaint, is not unlawful.").

In the wake of this unequivocal authority deeming the use of PHO lawful through 2018, the Ninth Circuit and various district courts in this circuit have dismissed both unlawful and unfair UCL claims—identical to those here—premised on the use of PHO in food. *E.g.*, *AdvancePierre*, 733 F. App'x at 906 (dismissing UCL claims premised on use of PHO); *Kellogg Co.*, 224 F. Supp. 3d at 1012 (same); *Conagra*, 2016 WL 3844331, at *3 (same); *Biscomerica*, 378 F. Supp. 3d at 854 (same). Indeed, "[t]he UCL cannot [] be used to proscribe otherwise permitted conduct." *Id.* The Court should grant summary judgment as to the claims here, too.

As noted, Hawkins premises her claims on both federal and state law. Compl. ¶¶ 132-33. As to federal law, both Congress and the FDA have made clear that Kroger's use of PHO from 2010 through 2015 was lawful under the very federal statutes Hawkins cites—21 U.S.C. §§ 348, 342—and therefore cannot serve as the predicate for an unlawful UCL claim. *AdvancePierre*, 733 F. App'x at 906

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST. SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1   (no UCL claim because no predicate violation of federal law); *Kellogg*, 224 F.

2   Supp. 3d at 1012 (same); *Biscomerica*, 378 F. Supp. 3d at 855 (same).

3        The UCL claims premised on violations of the California Sherman Law

4   likewise fail. *See* Compl. ¶ 133 (citing the Sherman Law, Cal. Health & Safety

5   Code §§ 110100, 110398). In fact, the Sherman Law simply adopts the very FDA

6   regulations that permit the use of PHO, as Hawkins admits. Compl. ¶ 133 ("[Cal.

7   Health & Safety Code] § 110100 [] adopts all FDA regulations a state regulations").

8   Because the use of PHO is lawful under the FDA regulations, it is equally lawful

9   under California's Sherman Law. *AdvancePierre*, 733 F. App'x at 906 ("Hawkins's

10   complaint also cited a provision of California's Sherman Act that adopted federal

11   law, Cal. Health & Safety Code § 110100, but [Defendant's] use of PHOs did not

12   violate this provision because it did not violate federal law."); *Biscomerica Corp.*,

13   378 F. Supp. 3d at 855–56 (same, as to Cal. Health & Safety Code §§ 110100,

14   110398). The unlawful UCL claims therefore fail as a matter of law.

15              **3.     The "Unfair" Claim Also Fails.**

16        As to Hawkins's unfair claim, where, as here, the unfair UCL claim "overlaps

17   entirely with the business practices addressed" in the plaintiff's unlawful UCL

18   claim, and the latter fails, the unfair UCL claim "cannot survive." *NorthBay*

19   *Healthcare Grp.-Hosp. Div. v. Blue Shield of Cal. Life & Health Ins.*, 342 F. Supp.

20   3d 980, 989 (N.D. Cal. Oct. 26, 2018) (granting summary judgment; "[plaintiff]'s

21   claim under the 'unfair' prong overlaps entirely with the 'unlawful' prong and

22   therefore cannot survive if . . . the unlawful prong does not survive"); *accord Hicks*

23   *v. PGA Tour, Inc.*, 897 F.3d 1109, 1123–24 (9th Cir. 2018) (court's "determination

24   that the conduct" does not violate antitrust law "necessarily implies that the conduct

25   is not 'unfair' toward consumers"); *Linde, LLC v. Valley Protein, LLC*, 2019 WL

26   3035551, at *21 (E.D. Cal. July 11, 2019) (granting summary judgment as to unfair

27   UCL claim that overlapped with failed unlawful UCL claim); *see also*

28   *AdvancePierre*, 733 F. App'x at 906 (affirming dismissal of unfair UCL claim

22
MEMORANDUM ISO MOTION FOR SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

based on the use of PHO, because Hawkins "cannot satisfy" the tests).

## B.    The Mislabeling Claims Fail (COAs 4–8).

For her four mislabeling causes of action—the Fourth, Fifth and Sixth Causes of Action under the UCL; the Seventh Cause of Action under the FAL, and the Eighth Cause of Action under the CLRA—Hawkins alleges the phrase "0g trans fat" was misleading to a reasonable consumer because Kroger breadcrumbs contained trace levels of PHO, as disclosed on the ingredient panel.  But Hawkins does not meet her evidentiary burden under the reasonable consumer test.

"[C]laims under California's consumer-protection statutes are governed by the 'reasonable consumer' test." *Becerra*, 945 F.3d at 1228-29 (applying standard to UCL, FAL, and CLRA claims).  "Under this standard, [the plaintiff] must 'show that members of the public are likely to be deceived.'"  *Id.*  "This requires more than a mere possibility that [the product's] label 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'"  *Id.*  "Rather, the reasonable consumer standard requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'"  *Id.*

To meet this burden at the post-pleading, pre-trial stage summary judgment stage, plaintiffs "must produce" actual "***evidence*** showing 'a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care.'"  *Clemens*, 534 F.3d at 1026 (emphasis added).  Thus, plaintiffs must offer "[s]urveys and expert testimony regarding consumer assumptions and expectations" to show a significant portion of the general consuming public or of targeted customers could have been misled by the statement.  *Id.*

Unlike at the pleading stage, allegations, anecdotal statements, or speculation do not suffice.  *E.g.*, *Victor v. R.C. Bigelow, Inc.*, 2016 WL 4502528, at *4 (N.D. Cal. Aug. 29, 2016) (granting summary judgment; even if named plaintiff's "testimony suggests that he was misled, individual testimony is insufficient to

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

establish that a reasonable consumer is likely to be misled, as required under the reasonable consumer test"); *Johns v. Bayer Corp.*, 2013 WL 1498965, at \*27–28 (S.D. Cal. Apr. 10, 2013) (granting summary judgment; "Plaintiffs must prove that the representations at issue were 'material' to a reasonable consumer" but expert testimony not competent to do so).

Besides bare allegations, Hawkins has no evidence regarding the impact of Kroger's label on a reasonable consumer at all, much less whether a reasonable consumer would interpret "0g trans fat" in the sweeping manner Hawkins claims.

As to Hawkins's "experts," they have nothing to add to the analysis relating to consumer deception. **Robert Bowen, Ph.D**, an accounting professor with no opinions or expertise regarding consumer behavior, offers calculations for restitution (and are subject to a separate *Daubert* motion). His opinions admittedly have nothing to do with the "0g trans fat" statement, he offers no consumer survey, and he has nothing to do with the reasonable consumer test. Ex. 12; Ex. 13 (Bowen Dep.) at 30:4-20, 45:10-18, 54:1-56:20, 57:13-25. **Nathan Wong, Ph.D.**, an epidemiologist, includes one statement that: "I . . . believe, as a matter of accurate labeling, that the '0g Trans Fat' claim in large type on the front of Kroger Bread Crumbs was misleading." Ex. 15 (Wong Report) ¶ 29. But as detailed in the accompanying motion to exclude Dr. Wong's testimony, (a) he is not qualified to opine on consumer behavior; (b) his statement is not evidence of an ultimate issue of law (whether a statement is "misleading"; and (c) his opinion is unsupported and unreliable. Mot. to Exclude at 5–23.

As explained in Kroger's rebuttal expert report submitted by Dr. Bruce Isaacson—a qualified marketing expert—there is no "evidence" suggested or referenced anywhere by Hawkins to support the assertion that Kroger's Bread Crumbs were "misleading[ly]" labeled. *See* Ex. 9 (Isaacson Rpt.) ¶¶ 4, 23, 38–39. The support typically required to prove consumer deception are controlled and well-designed "consumer surveys" that empirically test the effect of labels on consumers

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

and whether a statement is material reasonable consumers' purchase decision. *Id.* ¶¶ 24–38. Without testing, "we cannot know what messages the '0g Trans Fat' claim communicated to consumers, or whether consumers would have changed their purchase behavior if this claim had not appeared on packages[]." *Id.* ¶ 39. Without a qualified expert or competent survey, Hawkins has no evidence showing that, as she must, a reasonable consumer would interpret "0g trans fat" on the front label to mean no trans fat whatsoever.

On summary judgment, the question is whether the plaintiff has ***evidence*** to back up those allegations; Hawkins may not rely on the pleading standards that "a consumer reading the label ***could be misled*** into believing that the product was free of trans fat." 906 F.3d at 771. Because Hawkins fails provide reasonable consumer evidence, summary judgment is appropriate.

## C.     The Warranty Claims Fail (COAs 3, 9).

Last, the remaining claims—the Third and Ninth Causes of Action for breach of express and implied warranties—fail. *First*, Hawkins has also failed to state a claim breach of the implied warranty of merchantability. *See* Cal. Com. Code § 2314(1). Her allegation that she is too "busy" to read ingredients in the food she purchases does not excuse her failure to examine the labels. *See id.* § 2316(3)(b). *Second*, in her 15 year purchase history, Hawkins failed to provide reasonable notice, or any notice, of the alleged defects before filing suit. *E.g.*, *Cardinal Health 301 v. Tyco Elecs. Corp.*, 169 Cal. App. 4th 116, 136 (2008) (failure to provide notice two years after it acquired warranted action insufficient); Ex. 1 at 101:3–6.

## D.     Injunctive Relief Is Also Not Available.

Hawkins abandoned injunctive relief. Dkt. 36 at 25.

DATED:  May 18, 2020          DAVIS  WRIGHT  TREMAINE LLP
                              By: /s/ Jacob M. Harper
                              Jacob M. Harper
                              *Attorneys for Defendant*
                              *The Kroger Company*

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# CERTIFICATE OF SERVICE

*Shavonda Hawkins v. The Kroger Company*
U.S.D.C. Southern District of California Case No. 3:15-cv-2320-JM-BLM

I the undersigned, declare:

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California.  My business address is 865 S. Figueroa Street, Suite 2400, Los Angeles, CA 90017.

On May 18, 2020, I served true copies of the following documents described as**:**

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT

on the interested parties in this action as follows:

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the documents with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on May 18, 2020, at Los Angeles, California.

/s/ Jacob M. Harper
Jacob M. Harper

MEMORANDUM ISO MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899