1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

11
12
13
14
15
16

SHAVONDA HAWKINS, on behalf of
herself and all others similarly situated,

Plaintiff,

v.

THE KROGER COMPANY,

Defendant.

Case No.:  15cv2320 JM(AHG)

**ORDER ON OBJECTIONS TO
ORDER GRANTING SANCTIONS**

17
18
19
20
21
22
23

Presently before the court is The Kroger Company's ("Kroger") and Davis Wright Tremaine LLP's ("DWT") Objection to Order Granting Sanctions.  (Doc. Nos. 152, 153, 154.)  A hearing on the Objection was held on June 8, 2020.  Counsel for Defendant Mr. Jacob Harper, Mr. Steve Prough, Vice President of Legal Services for Kroger, along with Mr. Gregory Weston for Plaintiff, and Ms. Hawkins appeared. Ms. Heather Rosing also appeared, solely to represent Mr. Harper, Ms. Canner and their firm DWT, on the sanctions motion.

24

**1.  Background**

25
26

The record clearly reflects that the discovery phase in this case was particularly contentious and problematic.

27
28

On September 16, 2019, Magistrate Judge Major issued an order (the "September 16 Order") which explained how Defendant had "asserted lengthy objections to each" of

1

Plaintiff's first set of interrogatories and first set of requests for production of documents, failed to "provide a substantive response" to any of the requests, "did not produce any responsive documents or indicate a willingness to produce any documents," and labelled Defendant's discovery responses as "unacceptable" and "not in compliance with the spirit or requirements of the Federal Rules of Civil Procedure." (Doc. No. 72 at 4.[1]) Magistrate Judge Major also noted that the situation was made worse by the supplemental responses furnished by Defendant on July 11, 2019 which "provided minimal substance and Defendant did not produce any documents." (*Id*.) On July 26, 2019, Defendant produced a total of seventeen documents, consisting solely of product labels from 2011-2015. (*Id.* at 4-5.)

As a result, Magistrate Judge Major put in place certain requirements and deadlines that Defendant had to follow, including:

> the time period for Defendant's responses is January 1, 2010 through present day for all requests except those seeking responses from the CLASS PERIOD which is defined by Plaintiff as January 1, 2010 – May 31, 2018. If Defendant provides a declaration from a knowledgeable employee that Defendant stopped selling all relevant products, then the discovery end date for all discovery requests will be the date Defendant stopped selling the product. Defendant must serve its responses on or before **October 7, 2019**.

*Id.* at 34.   Additionally, Magistrate Judge Major awarded Plaintiff $9,837 in costs for bringing the motion to compel on the basis that Defendant had failed to provide substantive responses to almost all of Plaintiff's discovery arguments nor substantially justify its arguments.

Following this case's transfer to Magistrate Judge Goddard, discovery conferences were held on October 9, 2019, October 30, 2019, and November 13, 2019, where

---

[1] Document numbers and page references are to those assigned by CM/ECF for the docket entry.

Defendant was admonished for failing to produce additional documents to Plaintiff beyond the seventeen documents produced on July 26, 2019. (Doc. Nos. 76, 80, 82.)

After allowing Defendant to provide supplemental responses, the parties briefed Plaintiff's Motion to Compel Further Responses to Discovery Requests and for an Order for Sanctions and Contempt (Doc. No. 88, 99, 108, 119). A hearing on Plaintiff's motion was held on April 8, 2020, and, on April 23, 2020, Magistrate Judge Goddard issued an order granting-in-part and denying-in-part the Motion to Compel and Motion for Sanctions. (Doc. No. 140.)

On May 7, 2020, Kroger and attorneys Heather F. Canner and Jacob M. Harper (collectively "Counsel") through their law firm, DWT, filed Notices of Objection and Objection to Order Granting Sanctions and a Joint Memorandum of Points and Authorities in Support. (Doc. Nos. 152, 153, 154). Plaintiff filed a response, (Doc. No. 198) and Kroger and DWT filed a joint reply memorandum, (Doc No. 205).

### 2. The April 23, 2020 Order

The 61-page order issued by Magistrate Judge Goddard following the April 8, 2020 hearing is comprehensive and provides a detailed recitation of the parties' behavior. The court will not recount the discovery issues in detail here, however, a brief summary is provided below for purposes of context.

To justify its failure to answer Plaintiff's document production requests and to provide additional information, Defendant argued to Magistrate Judge Goddard that "despite its own product labels, it could not 'actually determine which private label bread crumbs contained partially hydrogenated oil during what time period without cooperation from third-party suppliers, who exclusively hold that information.' ECF No. 99-1 at 3." (Doc. No. 140 at 9.) Relying on this position, Defendant chose to withhold all documents from Plaintiff. Magistrate Judge Goddard found Defendant's reading of the September 16 Order, that conditioned relevance of documents on whether certain products actually contained PHO, to be "completely inexplicable." (*Id.* at 14.)

Regarding the deadline to produce the documents at issue, Magistrate Judge Goddard held:

> read in context, it is quite clear that the deadline of October 7, 2019 (set forth in bold and underlined in the original September 16 Order) was one of many mandatory requirements the Court imposed on Defendant's compelled supplemental responses. And to the extent Kroger misunderstood the Order, the Court made it clear during both October discovery conferences that the production deadline was October 7, 2019.

*Id*. at 25.

On November 8, 2019, a month after the October 7, 2019 deadline set by Magistrate Judge Major, Defendant produced customer complaints/call center feedback concerning trans fat or PHO, and employee organization charts. Magistrate Judge Goddard found that it was not reasonable for Defendant to wait over six weeks after the September 16 Order was issued to produce this information, when "Kroger offers no explanation why it could not reasonably have produced these documents—which have been in its possession, custody, and control since the outset of the litigation in 2015—before November 8, 2019, especially when faced with a Court order compelling production and issuing sanctions for Kroger's previous discovery misconduct." (*Id.* at 27.)

Further, Magistrate Judge Goddard determined that it was not reasonable for Kroger to produce internal documents related to labels and pricing until November 8, 2019, more than six weeks after the September 16 Order issued. (*Id.* at 28.) In doing so, she found production of these documents did not depend on obtaining information from third-party suppliers, therefore, the untimely production violated the September 16 Order "even under Kroger's argument that the order was silent on a deadline and required production only within a reasonable amount of time." (*Id*.)

Regarding information pertaining to Plaintiff's Interrogatory No. 5, which asked Defendant to identify any outside manufacturers who made the product, Magistrate Judge Goddard found Defendant's unwillingness to comply with Magistrate Judge Major's order and supplement its responses, and its new position "constitutes mere gamesmanship and

does not reflect a good-faith effort to comply with Kroger's discovery obligations." (*Id.* at 31.)  In so finding, Magistrate Judge Goddard explained:

> Plaintiff is simply asking Kroger to provide the information it has about where the products at issue in this litigation—Kroger-branded and Kroger-distributed products—came from. Kroger cannot assert in good faith that it has no access to information regarding the source of its own products. Kroger's efforts have been focused nearly exclusively on finding ways to parse requests to justify total stonewalling, even in the face of a Court order compelling information, rather than responding to discovery in a reasonable, ethical, and professional manner.

*Id.* at 32.

After making these determinations, and following a lengthy analysis of Kroger's privilege log and its unexplained redactions, Magistrate Judge Goddard turned to Plaintiff's request for sanctions, writing:

> the Court finds that the record clearly establishes that Kroger's counsel has acted in bad faith to hamper the discovery process, by engaging in pedantic hair-splitting, gamesmanship, unreasonable parsing of language, and willful obliviousness to the plain meaning of the Court's order—even in the face of direct clarification by the Court during discovery conferences thereafter—to avoid full compliance with the September 16 Order.
>
> Kroger's counsel appears to have made every effort to strip its production of usefulness wherever possible.  By the Court's calculation, 5,186 pages (92.5%) of Kroger's total document production were printed and scanned spreadsheets rather than being produced in native format.  Many spreadsheets produced were blank. Several were redacted without corresponding entries on the privilege log.  Almost every document produced was internal to Kroger and has thus been in its possession, custody, or control since Plaintiff first served her discovery requests in June 2019.  However, only 17 pages of documents were produced between that initial service and November 8, 2019, notwithstanding a Court order requiring supplemental production no later than October 7, 2019.
>
> Kroger's paltry production even in the face of an order compelling production cannot be argued to have been in good faith. The Court has already stated on the record that Kroger's continued failure to produce documents notwithstanding the September 16 Order evidenced bad faith.  *See* ECF No.

81 at 2 ("Defendant's representation that it is making a good-faith effort to comply is starkly at odds with its failure to produce a single additional document in the 45 days since the Sanctions Order issued."). And as already explained, Kroger's position that it read the September 16 Order to permit rolling production "within a reasonable time" as it collected information from suppliers cannot be taken in good faith for several reasons. First, Kroger's late production of internal documents such as organizational charts and customer complaints (among other examples) can find no footing on the already extremely tenuous ground that Kroger required additional information from suppliers before being able to determine the relevance of certain documents. Many of the belatedly produced documents in no way rely on the PHO content of specific bread crumb products. Second, the Court told Kroger in no uncertain terms during both October discovery conferences that the September 16 Order set a production deadline of October 7, 2019 and instructed Kroger to immediately produce internal documents within its possession, custody, and control, even going so far as to refer to specific discovery requests that Kroger should have been able to answer without reference to the PHO content of its products (including employee organizational charts and customer complaints concerning trans fat or PHO). Yet Kroger did not produce these documents until November 8, 2019. And when it did produce documents, it produced them in a format that it knew would be utterly unusable.

*Id.* at 50-51. Magistrate Judge Goddard then provides six examples of what she deemed Mr. Harper and Ms. Canner's continued misapprehension of "both the spirit and the letter of the Federal Rules of Civil Procedure with respect to discovery practice." (*Id.* at 52.)

Citing Counsel's "persistent evasion of providing full discovery responses to Plaintiff, even in the face of an order compelling Defendant to do so" and the apparent inadequacy of simply issuing monetary sanctions under Rule 37(b)(2)(C) a second time, Magistrate Judge Goddard determined that monetary sanctions alone would be insufficient to address the discovery abuses. As explained in the order:

the Court is left with the impression that either Kroger's counsel earnestly - and mistakenly - believes their approach to discovery is consistent with the rules, or else they are operating under "a sporting chance theory encouraging parties to withhold vital information from the other side with the hope that the withholding may not be discovered and, if so, that it would only result in a fine." *G-K Props. v. Redevelopment Agency of San Jose*, 577 F.2d 645, 649 (9th Cir. 1978)

*Id.* at 57.  Thus, pursuant to the court's inherent authority, Mr. Harper and Ms. Canner were each ordered to attend 8 hours of CLE courses.

Finally, Magistrate Judge Goddard granted Plaintiff's motion for leave to file an application for fees and expenses, pursuant to Federal Rule of Civil Procedure 37(b)(2)(C), related to the reasonable expenses and attorney's fees that were incurred due to Kroger's failure to obey the September 16 Order.  (*Id.* at 61.)

### 3.  Legal Standards

District court review of magistrate judge orders on non-dispositive motions is limited.  A district court judge may reconsider a magistrate judge's ruling on a non-dispositive motion only "where it has been shown that the magistrate's order is clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Civ. P. 72(a).  "A magistrate judge's legal conclusions are reviewable *de novo* to determine whether they are "contrary to law" and findings of fact are subject to the "clearly erroneous" standard."  *Meeks v. Nunez*, Case No. 13cv973-GPC(BGS), 2016 WL 2586681, *2 (S.D. Cal. May 4, 2016) (citing *Perry v. Schwarzenegger*, 268 F.R.D. 344, 348 (N.D. Cal. Mar. 22, 2010)).

The "contrary to law" standard "allows independent, plenary review of purely legal determinations by the Magistrate Judge."  *Jadwin v. Cnty. of Kern*, 767 F. Supp. 2d 1069, 1110 (E.D. Cal. Jan. 24, 2011) (citing *FDIC v. Fid. & Deposit Co. of Md*, 196 F.R.D. 375, 378 (S.D. Cal. May 1, 2000)); *see also Computer Econ., Inc. v. Gartner Grp., Inc.,* 50 F. Supp. 2d 980, 983 n. 4 (S.D. Cal. May 25, 1999); *Green v. Baca*, 219 F.R.D. 485, 489 (C.D. Cal. Dec. 16, 2003).  A magistrate judge's order "is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure."  *Jadwin,* 767 F. Supp. 2d at 1110-11 (quoting *DeFazio v. Wallis*, 459 F. Supp. 2d 159, 163 (E.D.N.Y. Oct. 17, 2006)) (internal quotation marks omitted).[2]

---

[2] "The 'clearly erroneous' standard applies to the magistrate judge's factual determinations and discretionary decisions . . . ." *Computer Econ.,* 50 F. Supp. 2d at 983 (citations omitted). "Under this standard, 'the district court can overturn the magistrate judge's ruling

Imposition of sanctions under either Rule 37[3], as against Kroger, requires a showing of bad faith, whereas sanctions under the court's inherent authority, as against Counsel, requires a finding that counsel's conduct "constituted or was tantamount to bad faith." *Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980).  Pursuant to 28 U.S.C. § 1927, a court may also impose sanctions against counsel who act "recklessly or in bad faith."  *In re Keegan Mgmt. Co*., 78 F.3d 431 (9th Cir. 1996); *see also U.S. v. Blodgett*, 709 F.2d 608, 610 (9th Cir. 1983) (a court has statutory authority pursuant to 28 U.S.C. § 1927 to require

---

only if the district court is left with the definite and firm conviction that a mistake has been made.'" *Id.*  (quoting *Weeks v. Samsung Heavy Indus. Co., Ltd*., 126 F.3d 926, 943 (7th Cir. 1997)); *see also Green,* 219 F.R.D. at 489 (citations omitted).

[3] Specifically, Federal Rule of Civil Procedure 37(b)(2)(A) provides:

> If a party or a party's officer, director or managing agent—or witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders.  They may include the following:
>
> (i)  Directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii)  Prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii)  striking pleadings in whole or in part;
>
> (iv)  staying further proceedings until the order is obeyed;
>
> (v)  dismissing the action or proceeding in whole or in part;
>
> (vi)  rendering a default judgment against the disobedient party; or
>
> (vii)  treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37.  Further, the Rule also prescribes that "[i]nstead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified, or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C).

an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously . . . to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.")

The Ninth Circuit has held that "mere recklessness, without more, does not justify sanctions under a court's inherent power." *Fink v. Gomez*, 239 F.3d 989, 993-994 (9th Cir. 2001) (finding the court may levy sanctions, including attorney's fees for "willful disobedience of a court order" or when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons."). "A district court has the inherent power to sanction for (1) willful violation of a court order; or (2) bad faith." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1035 (9th Cir. 2012). A "willful" violation of a court order "does not require proof of mental intent such as bad faith or an improper motive, but rather, it is enough that a party acted deliberately." *Id.* "Before awarding [attorneys' fees] sanctions under its inherent powers, however, the court must make an explicit finding that counsel's conduct 'constituted or was tantamount to bad faith.'" *Primus Auto. Fin. Servs. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997). A party demonstrates bad faith by "delaying or disrupting the litigation or hampering enforcement of a court order." *Id.* (quoting *Hutto v. Finney*, 437 U.S. 678, 689 n. 14 (1978)).

"A person should not be held in contempt if his action appears to be based on a good faith and reasonable interpretation of the court's order." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). A party's "'[s]ubstantial compliance' with the court order is a defense to civil contempt, and is not vitiated by 'a few technical violations' where every reasonable effort has been made to comply." *Id.* (quoting *Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.,* 689 F.2d 885, 891 (9th Cir. 1982). "The principle announced in *Vertex* was based on the well-established rule that a 'vague' order may not be enforced." *Inst. of Cetacean Research v. Sea Shepard Conservation Soc'y,* 774 F.3d 935, 953 (9th Cir. 2014).

However, "[a] party may be held in civil contempt for disobeying "a specific and definite court order by failure to take all reasonable steps within the party's power to

comply." *In re Dual-Deck.*, 10 F.3d at 695.  Even if a party's disobedience is in good faith, the court may find the party in contempt because contempt "need not be willful, and there is no good faith exception to the requirement of obedience to a court order." *Id.* (internal quotations and citation omitted).

"[I]ndividuals subject to sanction are afforded procedural protections, the nature of which varies depending on the violation, and the type and magnitude of the sanction." *F. J. Hanshaw Enters. Inc., v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1137 (9th Cir. 2001). A contempt sanction is considered civil if it is remedial, and for the benefit of the complainant, and criminal if it is punitive, to vindicate the authority of the court." *Id.* at 1138.

### 4.  Discussion

Defendant and DWT object to the portion of Magistrate Judge Goddard's order which imposes sanctions against Kroger for attorney's fees and the personal sanctions levied against Counsel, Mr. Harper and Ms. Canner.  DWT objects to all language finding "bad faith" and imposing CLE sanctions on Canner & Harper, arguing Magistrate Judge Goddard's April 23 Order does not satisfy the legal standards for finding "bad faith" and was issued without affording Counsel due process commensurate with the sanctions issues. (Doc. No. 152 at 2.)  Mr. Harper and Ms. Canner submitted declarations attesting to the fact that they have acted diligently and reasonably, setting forth the efforts they made to work with third parties, and disputing the idea that they have acted in bad faith.  (Doc. Nos. 154-1, 154-2.)  Making similar arguments, Kroger objects to all language finding "bad faith" and the imposition of unspecified monetary sanctions, particularly to the extent the monetary sanctions exceed a reasonable amount necessary to compensate Plaintiff for bringing her motion.  (Doc. No. 153.)

First, Kroger and Counsel maintain that a plain reading of the record and the September 16 Order do not support the finding that Kroger has violated it.  They claim an ambiguity exists in the Order that provides Kroger a good faith defense that it was not obligated to complete its entire production by October 7, 2019.  (Doc. No. 154 at 20-21.)

Kroger and Counsel claim they read the September 16 Order as a whole and "interpreted the silence as to the production deadline as incorporating a reasonable time requirement, particularly given the requirement that Kroger work with 'third parties' to obtain the needed information." (*Id.* at 20.)  Kroger and Counsel also maintain that no bad faith exists for noncompliance with an ambiguous deadline.  (*Id*. at 21-23.)  They argue that a non-compliance sanction is not appropriate because the order is silent on setting a specific deadline for document production, in other words they assert the order is not clear and specific.  Relatedly, Kroger and Counsel claim that Magistrate Judge Goddard did not cite to any other written order or ruling that specifically states Kroger was obligated to complete its entire production by October 7, 2019.

Plaintiff counters that the September 16 Order was not ambiguous and clearly set forth a deadline to produce documents, and if the order was ambiguous, it only addresses one of seven different bases by which Kroger and its counsel were found to have acted in bad faith. (Doc. No. 198 at 14-17.)  Furthermore, Plaintiff claims that even if the deadline were somehow ambiguous, Kroger did not produce large numbers of internal responsive documents until May 2020, a full year after the requests were served, eight months after the September 16 Order, after Kroger was sanctioned a second time in Magistrate Judge Goddard's Order, and three months after the fact discovery cut-off, (*see id*)  Plaintiff also notes that Kroger's bad faith discovery tactics imposed extensive costs on both Plaintiff and the court, with Magistrate Judge Major having to write a 34-page order and Magistrate Judge Goddard writing a 61-page order.  (*Id*.).

The court does not find this first argument to be persuasive.  As it explained at the hearing, what Kroger did in this case was largely unresponsive and, through its counsel, it took positions that were taken without substantial justification.  The record clearly reflects the difficulties, tension and ill will between the attorneys, which in turn has led to discovery being handled in such a manner that it has hijacked a relatively straightforward case.

As Magistrate Judge Goddard accurately recounted:

1
2
3
4
5

> Based on an inability to rely on the ingredient listings on its own product labels, Kroger took the position that it was reasonable to assume that ***none*** of its products contained PHO unless that could be confirmed through an independent follow-up inquiry with each of its suppliers from throughout the class period. For that reason, Kroger asserts it was appropriate to withhold ***all*** documents from Plaintiff – including internally held documents – until it received this confirmation from third-party suppliers.

6  Doc. No. 140 at 10.

7    Finding, this reading of the September 16 Order "inexplicable," Magistrate Judge
8  Goddard determined that Defendant had not provided the relevant declaration from a
9  qualified employee in order to change the discovery end date and that "Kroger flagrantly
10  reads this burden out of the September 16 Order by continuing to insist that it was
11  acceptable to withhold information on any products Kroger could not affirmatively prove
12  contained PHO." (*Id.* at 14.) Magistrate Judge Goddard also noted that "as a major food
13  distributor, Kroger's representations to the Court that it has no information available to it
14  about the ingredients in the products it sells would be downright alarming if truly made in
15  good faith. Kroger's evasiveness is akin to claiming one would have to obtain an original
16  birth certificate before knowing one's name." (*Id.* at 16-17.) Taken together, Magistrate
17  Judge Goddard found that Defendant had not adequately explained why information
18  regarding the ingredients in its own products is not "reasonably available" to it, and that
19  the evidence before the court demonstrated that Kroger is responsible for knowing whether
20  there is PHO in its products. (*Id.* at 18.) She, therefore, concluded "the court cannot
21  countenance Kroger's refusal to produce responsive documents pertaining to all Kroger
22  Bread Crumb products whose ingredient lists contained PHO during the relevant time
23  period." (*Id.*) And, contrary to Counsel and Kroger's assertions, Magistrate Judge
24  Goddard explicitly referenced the October and November 2019 discovery conferences,
25  (Docket. Ent. 76, 80), wherein she "expressed in no uncertain terms that Kroger's failure
26  to produce any additional documents by the October 7 deadline in the September 16 Order

27
28

was unacceptable, a finding also memorialized in orders[4,5] issued after the conferences." (Doc. No. 140 at 5.)

Kroger's timeliness argument, that it only needed to produce documents within a "reasonable" amount of time is related to its third-party supplier argument because it, as Magistrate Judge Goddard wrote, "hinges on how much time it took to obtain PHO content information from third party suppliers." (*Id*. at 10.)  Regardless of whether there was a hard and fast deadline for complete production, this court agrees with Magistrate Judge Goddard's assessment that, "[w]ith respect to untimely production generally, Kroger's conduct shows a disregard for the importance of working cooperatively to avoid needlessly multiplying litigation." (*Id*. at 28.)  Nothing in Kroger's behavior can be viewed as constituting a good-faith effort to comply with its discovery obligations.

Second, Kroger and Counsel contend that the six other examples used by Magistrate Judge Goddard are not demonstrative of bad faith.  (Doc. No. 154 at 23-27.)  They maintain: (1) Kroger was under no obligation to supply a declaration documenting the steps it had taken to obtain information from third party suppliers; (2) Kroger was not

---

[4] "Defendant has still not produced additional documents to Plaintiff beyond the seventeen documents produced on July 26, 2019, in direct contravention of the previously assigned Magistrate Judge's Order granting Plaintiff's Motion to Compel Defendant to respond to Plaintiff's Requests for Production Nos. 1, 2, 4, 5, 6, 7, 8, 10, 11, 14, 15, 18, 20, 24 and 25 in whole and Request for Production No. 3 in part, issuing sanctions for non-compliance, and setting a deadline to serve its compelled responsive documents.  Judge Major's Order clearly required responses to document requests by October 7, 2019."  Doc. No. 77 at 2.

[5] "Defendant has still failed to produce any documents beyond the seventeen documents it had produced at the time Judge Major issued the Sanctions Order on September 16, 2019.  As discussed during the conference, the Court understands to an extent why Defendant needs more information from third-party suppliers before it can comply fully with the Sanctions Order.  Nonetheless, Defendant's representation that it is making a good-faith effort to comply is starkly at odds with its failure to produce a single additional document in the 45 days since the Sanctions Order issued."  Doc. No. 81 at 2.

automatically obligated to produce documents in native format, therefore, production of spreadsheets as pdfs was not in bad faith; (3) the Court misunderstood the parties' extensive meet and confer efforts, and if properly understood, these efforts do not illustrate "bad faith;" (4) Kroger stated plainly in its supplemental responses that it was producing all non-privileged responsive documents from 2010-2016 that were within its possession, custody, or control and was, therefore, in compliance with the September 16 Order in its October 7, 2019 Second Supplemental Responses to Plaintiff's Request for Production; (5) the Court did not believe Counsel that Kroger relies on third party vendors to maintain and create labels, marketing data, and vendor specification sheets, and does not hold this information internally.  Plaintiff responds that Magistrate Judge Goddard's sanctions order is carefully supported on every point by extensive citation to the federal rules, cases interpreting them, and the lengthy record created by Kroger's extended disregard of its discovery obligations. (Doc. No. 198 at 9-14.)

While the examples listed by Magistrate Judge Goddard could conceivably be viewed as constituting something other than bad faith, they demonstrate a level of sophistry in Kroger's and Counsel's behavior that is concerning to this court.  As Magistrate Judge Goddard explained, (*see* Doc. No. 140 at 52-53), the September 16 Order and the Federal Rules[6] are explicit that, where as here, a party relies on the contention that the compelled information is not within its possession or control, that party, i.e. Kroger, must explain under oath the steps taken to obtain the information.  The obligation exists regardless of whether the requesting party asks for a declaration.  *See, e.g., McClure v. Chen*, Case No. 1:14-cv-00932-DAD-GSA-PC, 2019 WL1243714, *3 (E.D. Cal. Mar. 18, 2019) ("If a party cannot furnish details, he should say so, under oath, and say why and set forth the

---

[6] Federal Rule of Civil Procedure 34(a)(1) allows a party to serve on any other party "a request within the scope of Rule 26(b) . . . to produce and permit the requesting party or its representative to inspect, copy, test, or sample . . . items in the responding party's possession, custody, or control[.]"

14

efforts used to obtain the information and cannot plead ignorance to information that is from sources within his control.") (citation omitted).  Similarly, choosing not to produce spreadsheets in their native format simply because opposing counsel did not ask for documents as they are originally kept in the course of business, flies in the face of the spirit of Federal Rule of Civil Procedure 34(b)(2)(E)[7] and created the very "unnecessary obstacles" the Rule warns against.  Further, Magistrate Judge Goddard's referencing of the exchanging of six meet and confer letters spotlight the parties' inability to communicate on what should be run of the mill matters.  Magistrate Judge Goddard, taking issue with Kroger and Counsel's "total disregard" for the court-ordered declaration from a knowledgeable employee that Magistrate Judge Major had required be produced, determining that the declaration submitted was neither timely nor established that the person submitting it was knowledgeable regarding when Kroger stopped selling bread crumbs containing PHO, provides yet another example of a failure to comply with the spirit of what was being asked.  (*See* Doc. No. 140 at 54-55, 18-20; Doc. No. 72 at 12, 34[8].)

---

[7] Federal Rule of Civil Procedure 34(b)(2)(E) provides that for electronically stored information, unless otherwise stipulated or ordered by the court:

> (i)   A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;
>
> (ii)  If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

Fed. R. Civ. P.34(b)(2)(E)(i)(ii).  The accompanying Advisory Committee Notes to the 2006 Amendment provide that electronically stored information is subject to the kept in the usual course of business production standard "to protect against deliberate or inadvertent production in ways that raise unnecessary obstacles for the requesting party."

[8] Specifically, the September 16 Order provides: "[i]f Defendant provides a declaration from a knowledgeable employee that Defendant stopped selling all relevant products, then the discovery end date will be the date the sales ended.  (Doc. No. 72 at 12, 34.)

Furthermore, the second set of interrogatories were not originally answered under oath as required by the Rules. *See* Fed. R. Civ. P. 33(b)(3). *See also* Doc. No. 154 ("Kroger provided a verification of those responses on November 12, 2019, days after Hawkins's counsel noted they had not received the verification…")  In sum, there is no way to view the examples provided by Magistrate Judge Goddard as reasonable efforts to respond to discovery requests as ordered by the Court or required by the Rules.  Rather, it is far easier for this court to conclude, as did Magistrate Judges Major and Goddard, that gamesmanship, illustrative of bad faith, was afoot.  Accordingly, the court declines to second guess Magistrate Judge Goddard's express findings of bad faith with respect to Kroger.

Third, Counsel argues that Magistrate Judge Goddard did not follow the Supreme Court's and Ninth Circuit's procedural prerequisites for imposing serious sanctions against Counsel. (Doc. No. 154 at 27-31.)  Regarding the required due process, Counsel argues that because of the sanctions imposed, the Court was required to afford minimum due process commensurate with the imposition of sanctions i.e. notice of the reasons for the sanctions, the form of the sanctions, the legal rule authorizing the sanctions, and hold a hearing.  Further, Counsel contends that Plaintiff's motion did not request sanctions against them personally, so subsequent briefing did not address this issue and, regardless of the label, the requirement to attend CLE classes calls into question their integrity and competence.  Further, they assert that the sanctions are in no way compensatory to Plaintiff and are simply designed to vindicate the Court's authority and to give weight to the Court's displeasure with Counsel's efforts to represent their client to the best of their ability.  Counsel also claim that the Court's order was designed to embarrass them, and that Plaintiff has neither been prejudiced nor harmed by any purported prior discovery misconduct.  Plaintiff counters that the imposition of CLE training on Counsel is remedial and prophylactic, not punitive and that the legal authorities cited by Kroger and Counsel are of little help to the court. (Doc. No. 198.)

It is this third argument from Counsel that the court finds persuasive. While Plaintiff is correct that the cases relied on by Counsel[9] involved the imposition of hefty monetary sanctions, imposing CLE training on any attorney should not be viewed as a triviality, notwithstanding the Second Circuit's viewing them as a remedial, prophylactic and non-punitive measure. *See, e.g., In re Hsu*, 451 Fed. Appx. 37, 39 (2nd Cir. 2011); *Torres v. City of Houston*, 2013 WL 2408056, at * 10 (S.D. Tex. May 21, 2013) (the court "as a remedial and prophylactic measure more than a sanction" imposed 7 hours of CLE classes for counsel's repeated failure to comply with the court's orders and for inclusions of false statements in pleadings, although these actions were done without malice.)

As the Ninth Circuit has explained:

[t]o protect against abuse and to ensure parties receive due process, individuals subject to sanction are afforded procedural protections, the nature of which varies depending upon the violation, and the type and magnitude of the sanction. The more punitive the nature of the sanction, the greater the protection to which an individual is entitled.

*F.J. Hanshaw,* 244 F.3d at 1137. The "character and purpose" of the sanction dictates whether a contempt is civil or criminal. (*Id.* citing *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827-28 (1994)). "A contempt sanction is considered civil if it 'is remedial, and for the benefit of the complainant'" and criminal if it is "'punitive, to vindicate the authority of the court.'" *Id*. (citations omitted).

Under the unique factual backdrop of this case, the imposition of the CLE sanction, required procedural protections beyond those afforded to Counsel. The CLE sanction was intended to vindicate the court's authority and the integrity of the judicial process, was not made to compensate Plaintiff, and could not be avoided by future compliance. *See Int'l*

---

[9] *See, e.g., Int'l Union,* 512 U.S. 821, 826, 832-34, 838-39 (1994) (court imposed a $52 million contempt fine imposed over many months for out-of-court violations of a complex injunction, noting that its holding "leaves unaltered the longstanding authority of judges to adjudicate direct contempts summarily, and to enter broad compensatory awards for all contempts through civil proceedings.")

*Union* 512 U.S. at 829.  (a fine is civil and remedial if it "either 'coerce[s] the defendant into compliance with a court's order, [or] ... compensate[s] the complainant for losses sustained'… Where a fine is not compensatory, it is civil only if the contemnor is afforded an opportunity to purge.  Thus, a 'flat, unconditional fine' totaling even as little as $50 announced after a finding of contempt is criminal if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance.") (citation omitted).

"When a court uses its inherent powers to impose sanctions that are criminal in nature, it must provide the same due process protections that would be available in a criminal contempt proceeding."  *F.J. Hanshaw,* 244 F.3d at 1139.  *See also Miranda v. S. Pac. Transp. Co*., 710 F.2d 516, 522 (9th Cir. 1983) (sanctions against attorneys should not be imposed without the procedural protections of notice, an opportunity to respond, and a hearing.)

Arguably, the transcript of the hearing held before Magistrate Judge Goddard could undercut Counsel's due process argument as it illustrates that Mr. Harper was given ample opportunity to respond to her questions, (*see* Doc. No. 154-2), and Kroger filed a sur-reply following it.  However, when Magistrate Judge Goddard pondered at the hearing whether she could "impose sanctions only against Kroger or also against Kroger's attorneys," (Doc. No. 154-2 at 152), Plaintiff's counsel responded:

> the only question is, did they have adequate notice of that?  And the way to fix that would be to do an OSC, but it certainly is within the Court's power to do those, and I'm just mentioning that to let the Court know why we didn't really mention any further sanction beyond evidentiary exclusion, which doesn't go very much, very far.

*Id*. at 157.

Because of the nature of the sanctions imposed, the court was required to afford Counsel the commensurate due process considerations.  *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017).  Although the court made a  serious, good faith effort to pursue its inquiry and reach its conclusions after considering the record as a whole, this court cannot ignore that Counsel was not given notice of Magistrate Judge Goddard's

intent to impose the additional sanctions under the court's inherent authority against Counsel, or that Plaintiff was seeking, or the Court was considering, a direct sanction against Counsel.  This resulted in Counsel being given neither adequate notice, an opportunity to prepare a defense, nor the meaningful opportunity to be heard.  *See F.J. Hanshaw,* 244 F.3d at 1139 (listing due process protections that must be made available in a criminal contempt proceeding).  *See also Pac. Harbor Capital, Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1118 (9th Cir. 2000) (an attorney subject to discipline is entitled to procedural due process, including notice and an opportunity to be heard.  This does not always require an oral or evidentiary hearing on the issue, because "the opportunity to brief the issue fully satisfies due process requirements.") (citations omitted).  While this court is highly critical of the gamesmanship and stonewalling tactics employed by Counsel, resulting in the derailing of the orderly discovery process, for the due process reasons discussed above, the sanctions imposed upon Counsel under the court's inherent authority cannot stand.

As to Rule 37 sanctions waged against Kroger, Plaintiff originally moved for Rule 37 sanctions in the motion she filed on January 10, 2020 (*see* Doc. No. 88-1 at 18) and, after briefing was complete, (*see* Doc. Nos. 99, 107, 108, 111, 121, 125, 126), a hearing was held on April 8, 2020.   Kroger, unlike Counsel, was, therefore, given notice of the potential sanctions motion, had the opportunity to prepare a defense and was given an opportunity to be heard.  For Kroger to now claim it was not afforded due process commensurate with the sanctions issued is disingenuous at best.  Thus, the Rule 37 sanctions waged against it, for failure to comply with the court's orders will stand.

### 5.  Conclusion

For the reasons set forth above, the court **SUSTAINS-IN-PART and OVERRULES-IN-PART** DWT's Objection to Order Granting Sanctions.  (Doc. No. 152.)   The portion of the April 23, 2020 Order imposing sanctions under the court's inherent authority against Counsel is hereby **VACATED**.  Mr. Harper and Ms. Canner are

no longer required to submit to 8 hours of mandatory CLE training.[10]  However, the portion of the April 23, 2020 Order, allowing Plaintiff to bring an application for fees and expenses pursuant to Federal Rule of Civil Procedure 37 **REMAINS IN EFFECT**.  Accordingly, Kroger's Objection to Order Granting Sanctions is **OVERRULED**.  (Doc. No. 153.) Consequently, Kroger and DWT's request to strike all language finding "bad faith" from the April 23, 2020 Order is **DENIED**.  (Doc. No. 152, 153.)

IT IS SO ORDERED.

Dated:  October 20, 2020

Hon. Jeffrey T. Miller
United States District Judge

---

[10] As a result, the court declines to address any other alternate grounds Counsel has raised as grounds to object to the sanction.