**THE WESTON FIRM**
GREGORY S. WESTON (239944)
*greg@westonfirm.com*
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone:   (619) 798-2006
Facsimile:    (619) 343-2789

**Class Counsel**

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAVONDA HAWKINS, on behalf of herself and all others similarly situated,<br><br>        Plaintiff,<br><br>   v.<br><br>THE KROGER COMPANY,<br><br>        Defendant. | Case No: 3:15-cv-02320-JM-AHG<br><br>**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT [UNREDACTED VERSION FOR FILING UNDER SEAL]**<br><br>Judge:     The Honorable Jeffery T. Miller<br>Date:      January 4, 2021<br>Time:     10:00 a.m.<br>Location:  Courtroom 5D |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................. 1

II.   STANDARD FOR SUMMARY JUDGMENT ................................................. 2

III.  KROGER IS LIABLE UNDER THE UCL'S "UNLAWFUL" PRONG FOR
      VIOLATING FDA LABELING REGULATIONS .......................................... 2

      A. Kroger's Unauthorized "0g Trans Fat" Claim Violated 21 C.F.R. § 101.62(a) ....... 3

      B. Kroger Violated 21 C.F.R. § 101.13 by Falsely Claiming that KBC
         Contained "0g Trans Fat" ............................................................................... 4

IV.   KROGER IS LIABLE UNDER THE UCL'S UNLAWFUL PRONG
      BECAUSE ITS USE OF PARTIALLY HYDROGENATED OIL
      VIOLATED THE FDCA'S FOOD ADDITIVES AMENDMENT OF 1958. ......... 5

V.    KROGER IS LIABLE UNDER THE UCL'S UNLAWFUL PRONG
      BECAUSE ITS USE OF PHO VIOLATED CAL. HEALTH & SAFETY
      CODE § 110545, WHICH PROHIBITS THE SALE OF FOOD
      CONTAINING A "DELETERIOUS SUBSTANCE" ........................................ 8

VI.   THE FOOD ADDITIVE AND FOOD LABELING FDCA VIOLATIONS
      RESULTED IN VIOLATIONS OF THE UCL ................................................. 9

VII.  THE CLASS IS ENTITLED TO SUMMARY JUDGMENT ON MANY OF
      KROGER'S AFFIRMATIVE DEFENSES. ................................................... 11

      A. Kroger's First Affirmative Defense (Failure to State a Claim) ............................... 12

      B. Kroger's Second Affirmative Defense (Standing) ................................................. 12

      C. Kroger's Third Affirmative Defense (Preemption) ............................................... 13

      D. Kroger's Fourth Affirmative Defense (Primary Jurisdiction) ................................. 13

      E. Kroger's Sixth Affirmative Defense (Puffery) ..................................................... 14

      F. Kroger's Eighth Affirmative Defense (Economic Loss Doctrine) ........................... 15

      G. Kroger's Tenth Affirmative Defense (Third Parties) ............................................ 15

      H. Kroger's Eleventh Affirmative Defense (Laches) ................................................. 16

i

I.   Kroger's Twelfth Affirmative Defense (Unclean Hands).........................................19

J.   Kroger's Thirteenth Affirmative Defense (Waiver/Consent/Release)....................19

K.  Kroger's Fourteenth Affirmative Defense (Estoppel)...............................................21

VIII.  CONCLUSION........................................................................................................22

ii

# TABLE OF AUTHORITIES

## CASES

*Ames v. T-Mobile USA, Inc.*,
2019 U.S. Dist. LEXIS 14967 (S.D. Cal. Jan. 30, 2019) ........................................ 13

*Ansari v. Elec. Document Processing, Inc.*,
2012 U.S. Dist. LEXIS 128622 (N.D. Cal. Sep. 10, 2012) .................................... 13

*Beaver v. Tarsadia Hotels*,
29 F. Supp. 3d 1294 (S.D. Cal. 2014) ........................................................................ 2

*Beaver v. Tarsadia Hotels*,
816 F.3d 1170 (9th Cir. 2016) ..................................................................................... 2

*Bitton v. Gencor Nutrientes, Inc.*,
654 Fed. App'x 358 (9th Cir. 2016) .......................................................................... 15

*Bruton v. Gerber Prods. Co.*,
703 Fed. App'x 468 (9th Cir. 2017) .......................................................................... 10

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
20 Cal. 4th 163 (1999) ................................................................................................ 10

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv.*,
911 F.2d 242 (9th Cir. 1990) ...................................................................................... 14

*Couveau v. Am. Airlines*,
218 F.3d 1078 (9th Cir. 2000) .................................................................................... 16

*Demetriades v. Yelp, Inc.*,
228 Cal. App. 4th 294 (2014) ..................................................................................... 14

*DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Cafe & Takeout III, Ltd.*,
30 Cal. App. 4th 54 (1994) ......................................................................................... 20

*Eat Right Foods, Ltd. v. Whole Foods Market, Inc.*,
697 F.3d 1221 (9th Cir. 2012) .................................................................................... 16

*Hawkins v. The Kroger Company,* Case No. 3:15-cv-02320-JM-AHG
PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

*Elder v. Pac. Bell Tel. Co.*,
    205 Cal. App. 4th 841 (2012) ................................................................. 10

*Estate of Goldberg v. Goss-Jewett Co.*,
    736 F. App'x 897 (9th Cir. 2018) ..................................................... 17, 18

*Fishman v. Tiger Nat. Gas Inc.*,
    2018 U.S. Dist. LEXIS 159425 (N.D. Cal. Sep. 18, 2018) .................... 12

*Grasshopper House, LLC v. Clean & Sober Media LLC*,
    394 F. Supp. 3d 1073 (C.D. Cal. 2019) ................................................. 16

*Hadley v. Kellogg Sales Co.*,
    2019 U.S. Dist. LEXIS 136791 (N.D. Cal. Aug. 13, 2019) ............... 3, 10

*Hansen v. United States*,
    7 F.3d 137 (9th Cir. 1993) .................................................................... 12

*Hawkins v. Kroger Co.*,
    2019 U.S. Dist. LEXIS 205496 (S.D. Cal. Nov. 25, 2019) .................... 12

*Hawkins v. Kroger Co.*,
    2020 U.S. Dist. LEXIS 210102 (S.D. Cal. Nov. 9, 2020) ................... 1, 13

*Helstern v. City of San Diego*,
    2014 U.S. Dist. LEXIS 9137 (S.D. Cal. Jan. 22, 2014) ......................... 12

*Hill v. National Collegiate Athletic Assn.*,
    7 Cal. 4th 1 (1994) ............................................................................... 21

*Hinerfeld-Ward, Inc. v. Lipian*,
    188 Cal. App. 4th 86 (2010) ................................................................. 11

*Hokto Kinoko Co. v. Concord Farms, Inc.*,
    810 F. Supp. 2d 1013 (C.D. Cal. 2011) ..................................... 12, 17, 18

*Horton v. Cal. Credit Corp. Ret. Plan*,
    835 F. Supp. 2d 879 (S.D. Cal. 2011) ..................................................... 3

*In re Arizona Theranos, Inc., Litig.*,
    308 F. Supp. 3d 10260 (D. Ariz. 2018) ................................................. 20

iv

*In re Ferrero Litig.*,
    794 F. Supp. 2d 1107 (S.D. Cal. 2015) ...................................................................14

*In re Lumber Liquidators Litig.*,
    2017 U.S. Dist. LEXIS 95806 (E.D. Va. June 20, 2017) ........................................10

*ING Bank v. Ahn*,
    758 F. Supp. 2d 936 (N.D. Cal. 2010)......................................................................11

*J & J Sports Prods. v. Mendoza-Govan*,
    2011 U.S. Dist. LEXIS 47075 (N.D. Cal. Apr. 25, 2011).......................................12

*J'Aire Corp. v. Gregory*,
    24 Cal. 3d 799 (1979) ..............................................................................................15

*Jimenez v. Superior Court*,
    29 Cal. 4th 473 (2002) .............................................................................................15

*Keller Found./Case Found. v. Tracy*,
    696 F.3d 835 (9th Cir. 2012) ...................................................................................22

*Kendall-Jackson Winery, Ltd. v. Superior Court*,
    76 Cal. App. 4th 970 (1999) ....................................................................................19

*Keokuk Glycerin, LLC v. Midwest Labs, Inc.*,
    2015 U.S. Dist. LEXIS 184249 (S.D. Iowa May 22, 2015)....................................15

*Klamath Siskiyou Wildlands Ctr. v. Boody*,
    468 F.3d 549 (9th Cir. 2006) .............................................................................17, 18

*Krueger w. Wyeth, Inc.*,
    2019 U.S. Dist. LEXIS 170611 (S.D. Cal. Sep. 30, 2019) .....................................11

*L.A. Printex Indus., Inc. v. Aeropostale, Inc.*,
    676 F.3d 841 (9th Cir. 2012) .....................................................................................2

*L.A. Taxi Coop v. Uber Techs., Inc.*,
    114 F. Supp. 3d 852 (N.D. Cal. 2015)......................................................................14

*Leckler v. Cashcall, Inc.*,
    554 F. Supp. 2d 1025 (N.D. Cal. 2008)....................................................................21

v

*LL B Sheet 1, LLC v. Loskutoff*,
    362 F. Supp. 3d 804 (N.D. Cal. 2019) .................................................. 12, 17, 18, 19

*Marder v. Lopez*,
    450 F.3d 445 (9th Cir. 2006) ................................................................................ 21

*Marketquest Grp. Inc. v. BIC Corp.*,
    316 F. Supp. 3d 1234 (S.D. Cal. 2018) .......................................................... 12, 19

*Mercury Ins. Co. v. Viking Corp.*,
    2007 U.S. Dist. LEXIS 3142 (E.D. Wis. Jan. 12, 2007) ........................................ 15

*Mformation Techs., Inc. v. Research in Motion Ltd.*,
    830 F. Supp. 2d 815 (N.D. Cal. 2011) .................................................................. 12

*Operating Engineers' Pension Tr. Fund v. Clark's Welding & Mach.*,
    688 F. Supp. 2d 902 (N.D. Cal. 2010) .................................................................. 21

*Opperman v. Path, Inc.*,
    205 F. Supp. 3d 1064 (N.D. Cal. 2016) ................................................................ 20

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*,
    324 U.S. 806 (1945) .............................................................................................. 19

*Quick v. Pearson*,
    186 Cal. App. 4th 371 (2010) ............................................................................... 17

*Rains v. Superior Court*,
    150 Cal. App. 3d 933 (1984) ................................................................................ 20

*Reid v. Johnson & Johnson*,
    780 F.3d 952 (9th Cir. 2015) .................................................................................. 3

*Richter v. City of Des Moines*,
    2012 U.S. Dist. LEXIS 46494 (W.D. Wash. Apr. 2, 2012) .................................... 15

*Satterfield v. Simon & Schuster, Inc.*,
    569 F.3d (9th Cir. 2009) ....................................................................................... 21

*Save the Peaks Coal. v. U.S. Forest Serv.*,
    669 F.3d 1025 (9th Cir. 2012) ......................................................................... 17, 18

vi

*SEC v. Vassallo*,
   2010 U.S. Dist. LEXIS 73792 (E.D. Cal. July 20, 2010).........................................16

*Shade Foods, Inc. v. Innovative Prods. Sales & Mktg., Inc.*,
   78 Cal. App. 4th 847 (2000) ....................................................................................15

*Silver v. BA Sports Nutrition, LLC*,
   2020 U.S. Dist. LEXIS 99320 (N.D. Cal. June 4, 2020)...................................10, 11

*Southland Sod Farms v. Stover Seed Co.*,
   108 F.3d 1134 (9th Cir. 1997) .................................................................................14

*Stone Brewing Co., LLC v. MillerCoors LLC*,
   445 F. Supp. 3d 1113 (S.D. Cal. 2020) ...................................................................16

*Synopsys, Inc. v. Magma Design Automation, Inc.*,
   2005 U.S. Dist. LEXIS 46595 (N.D. Cal. May 18, 2005)........................................16

*Taylor v. Sturgell*,
   553 U.S. 880 (2008)..................................................................................................12

*Tresóna Multimedia, Ltd. Liab. Co. v. Burbank High Sch. Vocal Music Ass'n*,
   953 F.3d 638 (9th Cir. 2020) .....................................................................................2

*Tsao v. Desert Palace, Inc.*,
   698 F.3d 1128 (9th Cir. 2012) .................................................................................20

*Two Jinn, Inc. v. Gov't Payment Serv., Inc.*,
   233 Cal. App. 4th 1321 (2015) ................................................................................10

*United States v. Blue Ribbon Smoked Fish, Inc.*,
   179 F. Supp. 2d 30 (E.D.N.Y. 2001).........................................................................9

*United States v. Dotterweich*,
   320 U.S. 277 (1943)....................................................................................................3

*United States v. W. Pac. R.R. Co.*,
   352 U.S. 59 (1956).....................................................................................................13

*United States v. Watkins*,
   278 F.3d 961 (9th Cir. 2002) .....................................................................................3

vii

*Waller v. Truck Ins. Exch., Inc.*,
　　11 Cal. 4th 1 (1995) ................................................................................20

*Wang v. Massey Chevrolet*,
　　97 Cal. App. 4th 856 (2002) ...................................................................10

*Wimberly v. Derby Cycle Corp.*,
　　56 Cal. App. 4th 618 (1997) ...................................................................16

**STATUTES**

21 U.S.C. § 331(a) ...........................................................................................3

21 U.S.C. § 331(b) ...........................................................................................3

21 U.S.C. § 331(c) ...........................................................................................3

21 U.S.C. § 331(g) ...........................................................................................3

21 U.S.C. § 342 ................................................................................................3

21 U.S.C. § 348 ................................................................................................3

21 U.S.C. § 348(a) ...........................................................................................6

21 U.S.C. § 393(b)(2)(A) .................................................................................3

Cal. Health & Safety Code § 110545 ..............................................................2

Pub. L. 85-929 (Sept. 6, 1958) ....................................................................2, 5

**OTHER AUTHORITIES**

42 Fed. Reg. 14081 (Mar. 15, 1977) ...............................................................5

78 Fed. Reg. 61769 (Nov. 8, 2013) ..................................................................9

80 Fed. Reg. 34650 (June 17, 2015) ..........................................................5, 6, 7

85 Fed. Reg. 41916 (July 13, 2020) .................................................................5

BLACK'S LAW DICTIONARY ...............................................................................21

Julie Louise Gerberding, *Safer Fats for Healthier Hearts: The Case for Eliminating Dietary Artificial Trans Fat Intake*, 151 ANN. INTERN. MED. 137-138 (2009).........9

RESTATEMENT (SECOND) OF TORTS .....................................................................20

## I. **Introduction**

Kroger Bread Crumbs ("KBC") were sold with a false claim that they had "0g Trans Fat." They did have trans fat, however, because they were made with PHO, an unsafe and unlawful food additive. As the Ninth Circuit noted, "falsely advertising that a food product does not contain trans fat is a health hazard." *Hawkins v. Kroger Co.*, 906 F.3d 763, 772 (9th Cir. 2018).

Plaintiff Shavonda Hawkins purchased KBC "under the assumption that it has zero trans fat because" because she believed the "0g Trans Fat" claim. Weston Decl. Ex. 5 (Hawkins Dep. Tr. at 73:4-10; 93:6-9; 98:7-18); Dkt. 115-1, Hawkins Decl. ¶ 4 ("I read and believed the product's '0g trans fat' claim as one of the reasons for my purchases."); *see also Hawkins v. Kroger Co.*, 2020 U.S. Dist. LEXIS 210102, at *31 (S.D. Cal. Nov. 9, 2020) ("Plaintiff clearly and repeatedly states, under oath, that she relied on the '0g Trans Fat' label on Kroger's breadcrumbs in her decision to purchase them.").

When Hawkins learned that the claim was false, she "stopped buying them and switched to other brands." Dkt. 115-1, Hawkins Decl. ¶ 4. Had she "known the '0g Trans Fat' claim wasn't true," she "would have started buying those other brands instead of Kroger's [m]uch sooner." *Id.* Further, she "never would have purchased Kroger Bread Crumbs had [she] known that they were not safe to consume." *Id.*

The Class moves for partial summary judgment against Kroger on the issue of liability, because (1) Kroger used a false and misleading label claim; (2) the same claim, in addition to being false, is an unauthorized nutrient content claim; and (3) Kroger used the partially-hydrogenated oil, a food additive, without either an FDA or a self-determination that PHO is generally recommended as safe ("GRAS").

Additionally, the Class moves for summary judgment as to most of Kroger's affirmative defenses.

Summary judgment is appropriate on the Class's labeling claims because the Court need only consider the product label and ingredient list to determine that the label of KBC violates 21 C.F.R. §§ 101.13 and 101.62.

1

*Hawkins v. The Kroger Company,* Case No. 3:15-cv-02320-JM-AHG
PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

For the Class's trans fat "use" claim, the Court need only determine if the practice of using PHO in bread crumbs is unlawful. It is unlawful because PHO is unsafe "for any use in food," so it is not Generally Recognized as Safe ("GRAS"). Because the PHO is not GRAS, its use in food violates the Food Additives Amendment of 1958 to the FDCA, Pub. L. 85-929 (Sept. 6, 1958). While worded differently, California has a similar statute whose application here is the same as the federal statute. Specifically, California prohibits the sale of foods that contain a "deleterious" substance that is harmful to the "health of man." Cal. Health & Safety Code § 110545.

Kroger has no evidence that PHO is anything but harmful to the health of man—even if it were proper to gainsay the decision of the FDA on a topic of food safety made after formal notice-and-comment rulemaking.

## II.   <u>Standard for Summary Judgment</u>

"'Summary judgment is appropriate if, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Tresóna Multimedia, Ltd. Liab. Co. v. Burbank High Sch. Vocal Music Ass'n,* 953 F.3d 638, 644 (9th Cir. 2020) (quoting *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 846 (9th Cir. 2012)).

## III.   <u>Kroger is Liable Under the UCL's "Unlawful" Prong for Violating FDA Labeling Regulations</u>

To obtain summary judgment on their claims under the UCL's unlawful prong, Plaintiff must "demonstrate[] an absence of a genuine issue of material fact" as to the underlying violation. *Beaver v. Tarsadia Hotels*, 29 F. Supp. 3d 1294, 1313-14 (S.D. Cal. 2014), *aff'd Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1188 (9th Cir. 2016) (The "the district court properly granted summary judgment to Plaintiffs on their UCL claim."). In *Hadley v. Kellogg Sales Co.*, the district court granted the certified class's motion for summary judgment under the UCL's unlawful prong because it was clear that several of the labels at issue violated 21 C.F.R. §§ 101.14(e) and 101.71(a), different subsections of the same law at issue here. *Hadley v. Kellogg Sales Co.*, 2019 U.S. Dist. LEXIS 136791,

2

at *53-61 (N.D. Cal. Aug. 13, 2019). Likewise, in *Horton v. Cal. Credit Corp. Ret. Plan*, the district court held:

> Plaintiffs base their summary judgment motion on the "unlawful" prong of the UCL. An act is "unlawful" under § 17200 if it violates an underlying state or federal statute or common law. *See id.* As such, the success of Plaintiffs' UCL claim depends on the success of their other causes of action, especially the first cause of action for TILA violations.

835 F. Supp. 2d 879, 893-94 (S.D. Cal. 2011).

There is no genuine dispute the KBC label contained the statement "0g Trans Fat" when in fact the product did contain trans fat. Weston Decl. Ex. 1 (TKC2-3, 7-8). Kroger's conduct thus violated (1) 21 C.F.R. § 101.62(a), governing nutrient content claims relating to fat; (2) 21 C.F.R. § 101.13, which prohibits false nutrient content claims; and (3) 21 U.S.C. §§ 342 and 348, which prohibit the sale of adulterated food products. As a matter of law, each of these violations are independent grounds for which Kroger is liable under the UCL's unlawful prong.

## A. Kroger's Unauthorized "0g Trans Fat" Claim Violated 21 C.F.R. § 101.62(a)

The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 et seq. ("FDCA") empowers the Food and Drug Administration ("FDA") to protect public health by ensuring that "foods are safe, wholesome, sanitary, and properly labeled," *id.* § 393(b)(2)(A). The FDCA prohibits the distribution and sale of misbranded foods. *Id.* §§ 331(a)-(c) and (g). "An article may be misbranded . . . 'without any conscious fraud at all.'" *United States v. Watkins*, 278 F.3d 961, 964 (9th Cir. 2002) (quoting *United States v. Dotterweich*, 320 U.S. 277, 281 (1943)).

> Under the FDA regulations, the general rule is that "nutrient content claims" are not permitted on food labels. Nutrient content claims are statements that "expressly or implicitly characterize[] the level of a nutrient."

*Reid v. Johnson & Johnson*, 780 F.3d 952, 959 (9th Cir. 2015) (citing 21 C.F.R. § 101.13(b)).

FDA regulations specifically address nutrient content claims about the level of fat

3

in a food. *See* 21 C.F.R. § 101.62; 21 C.F.R. § 101.13(i)(4). "A claim about the level of fat, fatty acid, and cholesterol in a food may only be made on the label or in the labeling of foods if . . . [t]he claim uses one of the terms defined in this section in accordance with the definition for that term." 21 C.F.R. § 101.62(a)(1).

> Outside the nutrition label, claimants may make nutrient content claims such as "fat free," "no fat," "zero fat," or "negligible source of fat" on labels where the food contains less than 0.5 grams of fat per serving and certain other conditions are met. *Id.* § 101.62(b). There is a parallel regulation permitting similar claims about "saturated fat," *see id.* § 101.62(c), but not about "trans fat." The FDA considered authorizing a "trans fat free" claim but decided not to enact the regulation in light of "insufficient scientific information."

*Reid*, 780 F.3d at 960. "[J]ust as the regulations do not authorize a 'no trans fat' claim, they also do not authorize a 'zero trans fat' claim. And we see no rational difference between 'zero' and '0.'" and *Hawkins v. Kroger Co.*, 906 F.3d 763, 771 (9th Cir. 2018). Therefore, the use of "no trans fat" and "0g trans fat" claims is not authorized.

### B. Kroger Violated 21 C.F.R. § 101.13 by Falsely Claiming that KBC Contained "0g Trans Fat"

21 C.F.R. § 101.13(i)(3) prohibits nutrient content claims. Kroger admitted through its answers to interrogatories, declarations of its employees, and statements in depositions that the KBC containing the statement "0g Trans Fat" did in fact contain trans fat. Weston Decl. Ex. 1 (TKC2-3, 7-8); Johnson Decl. ¶¶ 5-10 (filed as Weston Decl. Ex. 2); Bower May 2020 Decl. ¶¶ 7-12 (filed as Weston Decl. Ex. 3); Weston Decl. Ex. 4 (Kroger's Fourth Supplemental Response to Interrogatory No. 5).

In *Reid*, the Ninth Circuit held the defendant's "'No Trans Fat' claim is misleading in at least one respect" because the product at issue contained "some trans fat (between 0 and 0.5 grams per serving)." *Reid*, 780 F.3d at 962. In this action, the Ninth Circuit reiterated this finding, holding:

> *Reid* squarely controls here. As in *Reid*, we have an expressed nutrient content claim that the product does not contain trans fat. Also as in *Reid*, the manufacturer was required to state that the product had "0g trans fat per serving" within the Nutrition Facts Panel. And, just as in *Reid*, because of § 101.13(c), this requirement did not give the manufacturer license to make the same claim

4

> elsewhere on the product, and the rest of the product labeling was subject to the rules governing nutrition content claims, including that the claim not be "false or misleading in any way." 21 C.F.R. § 101.13(i)(3). It makes no difference that here the label outside the Nutrition Fact Panel stated that the product had "0g Trans Fat," whereas in *Reid* it was "No Trans Fat."

*Hawkins*, 906 F.3d at 771. Further, as the Ninth Circuit noted, "falsely advertising that a food product does not contain trans fat is a health hazard." *Hawkins*, 906 F.3d at 772.

## IV. Kroger is Liable Under the UCL's Unlawful Prong Because Its Use of Partially Hydrogenated Oil Violated the FDCA's Food Additives Amendment of 1958.

In 1958, Congress passed the Food Additives Amendment to the Food, Drug, and Cosmetics Act ("FDCA"). Pub. Law 85-929 (Sept. 6, 1958). The statute prohibits the use of food additives unless they had been affirmatively determined to be "generally recognized as safe" or "GRAS." The law also established a procedure where a food manufacturer could petition the FDA to determine a food additive is GRAS. The FDA also reviews the safety of food additives *sua sponte*, and maintains a list of GRAS food additives online, with updates regularly published in the Federal Register. *See e.g.*, 42 Fed. Reg. 14081, 14640-51 (Mar. 15, 1977) (finding several dozen food additives to be GRAS); 85 Fed. Reg. 41916 (July 13, 2020) (approving a mushroom powder as an additive to certain foods to increase their vitamin D content).

For a limited group of older food additives that were already in wide use before 1958, a manufacturer can also review scientific evidence on its own in what the FDA calls a "GRAS self-determination."

> As noted in section III.A, under section 201(s) of the FD&C Act, a substance that is GRAS for a particular use in food is not a food additive, and may lawfully be utilized for that use without FDA review or approval. Currently, a GRAS determination may be made when the manufacturer or user of a food substance evaluates the safety of the substance and the views of qualified experts and determines that the use of the substance is GRAS. This approach is commonly referred to as "GRAS self-determination" or "independent GRAS determination."

80 Fed. Reg. 34650, 34653 (June 17, 2015).

What is important about this system is the FDA does not need to affirmatively

5

deem a substance unsafe for its use to be unlawful: food additives are prohibited by default, unless and until there is a GRAS determination. Indeed, the food additives regulation here is parallel to the label regulations and discussed in detail in *Reid* and *Hawkins*. For both food additives, and for nutrient content claims, there is a parallel presumption of illegality, with the FDA creating exceptions. Specifically, 21 U.S.C. § 348(a) states that food additives are all "*unsafe* for the purposes of the application of clause (2)(C) of section 342(a) of this title, *unless*" two broad exemptions apply: (1) determination by the FDA of safety; or (2) a GRAS self-determination. (emphasis added). Thus, just as "[u]nder the FDA regulations, the general rule is that 'nutrient content claims' are not permitted on food labels," so too with food additives, which are "unsafe" "unless" they are determined by FDA to be GRAS, or by a GRAS self-determination. *Reid*, 780 F.3d at 959; 21 U.S.C. § 348(a).

In 2015, the FDA formally declared PHOs "are not GRAS for any use in human food." 80 Fed. Reg. 34650, 34651 (June 17, 2015). Because the FDA definitively determined on June 17, 2015 that PHOs "are not GRAS for any use in human food," this means for the last few months of the class period (from 6/17/15 to 12/31/15), Kroger violated the FDCA by using a food additive that was "not GRAS *for any use* in human food." 80 Fed. Reg. at 34651 (emphasis added).

For the prior period, from 1/1/10 to 6/16/15, Kroger violated the same statute because there was no affirmative GRAS determination, and Kroger conceded it never performed a self-determination.

Kroger admits on the very label of KBC that it contained PHO, as well as in statements by its employees. Weston Decl. Ex. 1 (TKC2-3, 7-8); Weston Decl. Ex. 8 (Bower Dep. Tr. at 12:12-23) (stating ingredient lists on Kroger products are accurate).

There is also no dispute that (1) there was never a determination by the FDA that PHO is GRAS, and the first time the FDA examined the issue, it found it non-GRAS; and (2) that Kroger never performed a GRAS self-determination. Kroger's 30(b)(6) witness testified as follows:

6

*Hawkins v. The Kroger Company,* Case No. 3:15-cv-02320-JM-AHG
PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

Q. Were there any scientific articles that Kroger reviewed in the 2010 through 2015 time period relating to the safety of partially hydrogenated oil?

A. I am not aware if there were any articles reviewed. That's what you are asking me, between 2010 and 2015, if any articles were reviewed?

Q. Any scientific articles, yes.

A. I am not aware of any articles that were reviewed during that time frame and/or what they might have been.

Q. Who at Kroger determines if a food ingredient is GRAS?

A. Kroger doesn't make any self-determination of GRAS. So we would follow what is generally recognized as safe per regulations.

Q. Was there a scientific consensus that PHO was safe in use of Bread Crumbs in 2010?

MR. HARPER: Objection. Calls for expert opinion. And speculation.

THE WITNESS: I'm unaware if there was a scientific consensus.

Weston Decl. Ex. 6 (Carr Dep. Tr. at 104:4-24).  Ms. Carr further testified:

Q. In 2013, did scientific evidence identify significant health risks caused by the consumption of trans fat?

[ … ]

THE WITNESS: I'm not sure what scientific evidence showed in 2013.

*Id.* at 91:11-17.

Kroger stated it has "no knowledge or record of Kroger performing a self-determination of partially hydrogenated oil as GRAS." *Id.* at 87:11-13. Kroger's failure to evaluate the safety of PHO is particularly egregious because the products at issue here were merely "two of 318 Kroger labeled products that contained PHO." *Id.* at 75:3-17.

As the PHOs used in KBC "are not listed as GRAS or as approved food additives in FDA's regulations," 80 Fed. Reg. at 34651, in order to lawfully include them as an ingredient, Kroger was required to conduct a GRAS self-determination. Such a self-determination, to find PHO as GRAS, would need to demonstrate "a consensus among qualified experts that PHOs, the primary dietary source of IP-TFA, are safe for human consumption, either directly or as ingredients in other food products." 80 Fed. Reg. at 34651.

7

Kroger's 30(b)(6) witness explicitly admitted that "Kroger doesn't make any self-determination of GRAS." Weston Decl. Ex. 6 (Carr Dep. Tr. at 104:16-17). Besides this explicit admission, Kroger also admitted it took none of the steps that would be required to do a GRAS self-determination, like reviewing safety articles. *Id.* at 104:3-13.

## V.   **Kroger is Liable Under the UCL's Unlawful Prong Because Its Use of PHO Violated Cal. Health & Safety Code § 110545, which Prohibits the Sale of Food Containing a "Deleterious Substance"**

Kroger's addition of PHO to Kroger Bread Crumbs violated Cal. Health & Safety Code § 110545, which prohibits the sale of food that "bears or contains any poisonous or deleterious substance that may render it injurious to health of man." PHO is indisputably a "deleterious substance"—it causes cardiovascular disease, Type-2 diabetes, cancer, cognitive decline, and organ damage. Hawkins has submitted expert testimony on this point, as well as ample evidence in the form of scientific articles. Dkt. 241-1 and 241-2 (Wong Report and Exs. A-O thereto). Nathan Wong, a distinguished professor of medicine at UC Irvine whose specialty and life's work is studying the causes, treatment, and prevention of heart disease and diabetes, testifies:

- "It is well-established that artificial trans fat consumption is strongly linked to the risk of many chronic diseases, and heart disease in particular, as well as stroke and diabetes." Wong Report at 3.
- "The danger of consuming trans fat is direct, linear, and progressive with increased consumption. This means that each additional gram of trans fat consumption further damages the body and increases risk of disease." Wong Report at 3.
- "Trans fat consumption is also linked to an increased risk for developing diabetes, breast cancer, prostate cancer, and colon cancer." Wong Report at 5.
- "The increase in mortality and morbidity caused by consumption of trans fat is progressive and linear with the amount of trans fat consumed." Wong Report at 6.
- "Over the eight years at issue here, Kroger's practice of using PHO and therefore industrial trans fat in Kroger Bread Crumbs likely caused the preventable death of 3 or 4 Californians from heart disease, and to the extent sales in other states were proportional, the deaths of about 25-30 Americans in total." Wong Report at 8.

8

PHO is also dangerous as a matter of law, as the FDA has exhaustively researched the safety of PHO, and concluded it was "injurious to health of man." Indeed, more than just "*injurious* to the health of man" the FDA estimated PHO was causing the *death* of thousands of Americans each year.

Discovery is closed, and Kroger has presented nothing to rebut this evidence. While it hired several business school professors to rebut the two medical school professors who agreed to testify on behalf of Plaintiff and the Class, the business school professors do not actually dispute that PHO is "injurious to health." Nor could they.

> The scientific rationale for eliminating exposure to artificial trans fatty acids in foods is rock solid. There is no evidence that they provide any health benefit, and they are certainly harmful.

Weston Decl. Ex. 7 at 1 (Julie Louise Gerberding, *Safer Fats for Healthier Hearts: The Case for Eliminating Dietary Artificial Trans Fat Intake*, 151 ANN. INTERN. MED. 137-138 (2009)). Dr. Gerberding is yet another medical school professor, in this case UCSF Medical School, and also served as head of the CDC for eight years.

In *United States v. Blue Ribbon Smoked Fish, Inc.*, 179 F. Supp. 2d 30 (E.D.N.Y. 2001), the district court granted the FDA summary judgment and held listeria bacteria is a "deleterious substance" because it causes disease. This is no different than PHO, except that PHO is more dangerous than listeria, and was deliberately added to food rather than negligently because of inadequate food facility sanitation. Indeed, while the FDA noted that "according to the Centers for Disease Control and Prevention (CDC), elimination of PHOs from the food supply could prevent 10,000 to 20,000 coronary events and 3,000 to 7,000 coronary deaths annually," the federal government's estimate of annual deaths from listeria infection is 260. *See* 78 Fed. Reg. 61769, 61769 (Nov. 8, 2013); Centers for Disease Control and Prevention, *Listeria*, available at www.cdc.gov/listeria/.

## VI. The Food Additive and Food Labeling FDCA Violations Resulted in Violations of the UCL

Kroger's violations of the FDCA and accompanying regulations are in turn violations of "the UCL's unlawful prong, which borrows violations of other laws and

9

treats them as unlawful practices' that the unfair competition law makes independently actionable." *Two Jinn, Inc. v. Gov't Payment Serv., Inc.*, 233 Cal. App. 4th 1321, 1336-37 (2015) (quotations omitted); *see also Elder v. Pac. Bell Tel. Co.*, 205 Cal. App. 4th 841, 856 (2012) ("By proscribing any unlawful business practice the UCL borrows violations of other laws and treats them as unlawful practices that the [UCL] makes independently actionable.") (citing *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (quotations omitted)). Accordingly, violations of the FDCA and its implementing regulations are predicate acts under the UCL's unlawful prong. *See, e.g., Hadley*, 2019 U.S. Dist. LEXIS 136791 at *72 (finding defendant violated and is liable under the UCL's "unlawful" prong for violating FDCA and accompanying regulations).

A claim under the UCL's unlawful prong has just one element: the violation of any predicate law or regulation. *See Bruton v. Gerber Prods. Co.,* 703 Fed. App'x 468, 471 (9th Cir. 2017) ("The UCL's unlawful prong 'borrows' predicate legal violations and treats them as independently actionable under the UCL.") (citing *Wang v. Massey Chevrolet*, 97 Cal. App. 4th 856, 871 (2002)); *accord In re Lumber Liquidators Litig.*, 2017 U.S. Dist. LEXIS 95806, at *78 (E.D. Va. June 20, 2017) (California UCL's "'unlawful' prong is to be considered separate and apart from any alleged misrepresentations Defendant may have made . . . and no form of reliance is required to state a claim under the 'unlawful' prong of the UCL when the underlying violation on which the alleged UCL violation is predicated does not require reliance.") (internal quotation marks and record citation omitted)). In *Hadley*, Judge Koh noted that

> The predicate violation is Kellogg's violation of FDA regulations. The Ninth Circuit in *Bruton* addressed the violation of FDA regulations as a predicate violation for a UCL unlawful prong claim. The Ninth Circuit in *Bruton* held that the "FDA regulations include no requirement that the public be likely to experience deception," and thus, the "reasonable consumer test" is not an element of a violation of FDA regulations.

*Hadley*, 2019 U.S. Dist. LEXIS 136791 at *71. Likewise, in *Silver v. BA Sports Nutrition*, *LLC*, Judge Ilston held

10

with respect to the "fortification" allegations (plaintiff Silver's first cause of action under the UCL's unlawful prong), because the predicate violation is based on FDA regulations which include no requirement that the public be likely to experience deception, the reasonable consumer standard does not apply.

2020 U.S. Dist. LEXIS 99320, at *10 (N.D. Cal. June 4, 2020).

Here, too, because the "predicate violation is based on FDA regulations which include no requirement that the public be likely to experience deception, the reasonable consumer standard does not apply." *Silver*, 2020 U.S. Dist. LEXIS 99320, at *10.

Plaintiff has demonstrated Kroger's predicate violations of 21 C.F.R. § 101.13 and § 101.62, along with 21 U.S.C. §§ 342 and 348 and Cal. Health & Safety Code § 110545. Plaintiff lost money as a result of Defendant's conduct because Kroger's deceptive "0g Trans Fat" claim induced her to purchase products that she would not have otherwise purchased and which were detrimental to her health, worthless, and were unfairly offered for sale in violation of federal law. Dkt. 115-1, Hawkins Decl. ¶ 4. Ms. Hawkins purchased KBC in reliance on "0g Tran Fat" claim during the class period and would not have done so absent the misrepresentation. Weston Decl. Ex 5 (Hawkins Dep. Tr. at 73:4-10, 93:6-9, 98:7-18). As soon as Hawkins discovered that KBC contained PHO, she stopped purchasing them. *Id.* at 100:3-12. Had Defendant not violated the law, Plaintiff would not have been injured. Thus, Plaintiff has shown an undisputed "causal connection between the economic injury and the alleged unfair conduct to satisfy the causation prong." *Krueger w. Wyeth, Inc.*, 2019 U.S. Dist. LEXIS 170611, at *14 (S.D. Cal. Sep. 30, 2019).

Accordingly, the Class is entitled to summary judgment finding Kroger liable for violating the UCL's unlawful prong.

## VII. The Class Is Entitled to Summary Judgment on Many of Kroger's Affirmative Defenses.

"Under both state and federal law, the party pleading an affirmative defense has the burden of proving it." *ING Bank v. Ahn*, 758 F. Supp. 2d 936, 945 (N.D. Cal. 2010) (citing *Hinerfeld-Ward, Inc. v. Lipian*, 188 Cal. App. 4th 86, 94 (2010); *Taylor v.*

11

*Sturgell*, 553 U.S. 880, 907 (2008)). A plaintiff may "move for summary judgment on affirmative defenses." *Mformation Techs., Inc. v. Research in Motion Ltd.*, 830 F. Supp. 2d 815, 825 n.8 (N.D. Cal. 2011) (citation omitted). It should be granted when the defendant has "no evidence to support" the defenses. *Marketquest Grp. Inc. v. BIC Corp.*, 316 F. Supp. 3d 1234, 1293 (S.D. Cal. 2018). "Conclusory allegations" are "insufficient to create a triable issue of fact to preclude summary judgment." *Hokto Kinoko Co. v. Concord Farms, Inc*., 810 F. Supp. 2d 1013, 1045 (C.D. Cal. 2011) (citing *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993)).

Hawkins previously moved to strike many of Kroger's affirmative defenses for failing as a matter of law. The motion was granted in part, but mostly denied because, "[i]n sum, a majority of the defenses challenged by Plaintiff depend on the development of facts through discovery and summary judgment." *Hawkins v. Kroger Co*., 2019 U.S. Dist. LEXIS 205496, at *8 (S.D. Cal. Nov. 25, 2019). However, discovery has not developed facts supporting these affirmative defenses.

**A.  Kroger's First Affirmative Defense (Failure to State a Claim)**

"Failure to state a claim is not a proper affirmative defense but, rather, asserts a defect in the plaintiff's prima facie case." *J & J Sports Prods. v. Mendoza-Govan*, 2011 U.S. Dist. LEXIS 47075, at *14-15 (N.D. Cal. Apr. 25, 2011) (quotations and brackets omitted); *Helstern v. City of San Diego*, 2014 U.S. Dist. LEXIS 9137, at *4-5 (S.D. Cal. Jan. 22, 2014) ("The failure to state a claim isn't an affirmative defense."). "A defense which demonstrates that plaintiff has not met its burden of proof as to an element plaintiff is required to prove is not an affirmative defense." *LL B Sheet 1, LLC v. Loskutoff*, 362 F. Supp. 3d 804, 818 (N.D. Cal. 2019) (granting summary judgment against defendant and finding failure to state claim not an affirmative defense).

**B.  Kroger's Second Affirmative Defense (Standing)**

"Because a plaintiff must plead and ultimately prove standing, lack of standing is not an affirmative defense under federal law." *Fishman v. Tiger Nat. Gas Inc.*, 2018 U.S. Dist. LEXIS 159425, at *15-16 (N.D. Cal. Sep. 18, 2018) (citations omitted); *Ansari v.*

12

*Hawkins v. The Kroger Company,* Case No. 3:15-cv-02320-JM-AHG
PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

*Elec. Document Processing, Inc.*, 2012 U.S. Dist. LEXIS 128622, at *15 (N.D. Cal. Sep. 10, 2012) (same).

Further, this Court and the Ninth Circuit have both rejected Kroger' standing arguments. *Hawkins v. Kroger Co.*, 906 F.3d 763, 768-69 (9th Cir. 2018); *Hawkins v. Kroger Co.*, 2020 U.S. Dist. LEXIS 210102, at *35 n.16 (S.D. Cal. Nov. 9, 2020) ("Kroger makes a cursory argument that Plaintiff lacks standing . . . Based on *ConAgr*a, and the court's prior rulings on Kroger's motions to dismiss, Kroger's argument is not persuasive.").

## C. Kroger's Third Affirmative Defense (Preemption)

The preemption defense fails as a matter of law, and has likewise been rejected by this Court and the Ninth Circuit. *Hawkins v. Kroger Co.*, 2019 U.S. Dist. LEXIS 59249, at *6-10 (S.D. Cal. Apr. 4, 2019); *Hawkins,* 906 F.3d at 769-73.

These issues cannot be relitigated because "[u]nder the law of the case doctrine, a court is generally precluded from reconsidering an issue that has already been decided by the same court . . . in the identical case." *Ames v. T-Mobile USA, Inc.*, 2019 U.S. Dist. LEXIS 14967, at *6 (S.D. Cal. Jan. 30, 2019).

## D. Kroger's Fourth Affirmative Defense (Primary Jurisdiction)

The Court has rejected primary jurisdiction doctrine twice already.  *See* Dkt. 86, Order Granting Motion to Strike Affirmative Defenses, at 4; *Hawkins*, 2019 U.S. Dist. LEXIS 59249, at *11-12. In its Order Denying Motion to Dismiss, the Court wrote:

> Kroger also contends that Plaintiff's claims are barred by the primary jurisdiction doctrine. Primary jurisdiction "applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views." *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956) (citation omitted). Kroger contends that the sale of PHO is lawful until June 18, 2020, and that if Plaintiff "has issues involving trans fat, she must pursue the appropriate administrative remedy." (p.16:3-4). Kroger's argument simply fails to articulate how the FDA's expertise is, or would be, required to assess Plaintiff's claims.

*Hawkins,* 2019 U.S. Dist. LEXIS 59249, at *11-12.

13

1   Despite this ruling, Defendant pleaded the defense again in its amended answer,

2   Dkt. 59 at 31, and again the Court held, in its Order Granting the Motion to Strike

3   Affirmative Defenses, that "primary jurisdiction is, however, stricken as the court sees no

4   circumstance where it need apply in this case." Dkt. 86 at 4. These issues cannot be

5   relitigated. *Ames*, 2019 U.S. Dist. LEXIS 14967, at *6.

6   **E. <u>Kroger's Sixth Affirmative Defense (Puffery)</u>**

7   Kroger's "puffery" defense fails as a matter of law. "Puffery involves 'outrageous

8   generalized statements, not making specific claims, that are so exaggerated as to preclude

9   reliance by consumers.'" *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1115 (S.D. Cal.

10  2015) (quoting *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv.*, 911 F.2d 242, 246

11  (9th Cir. 1990)); *see also Demetriades v. Yelp, Inc.*, 228 Cal. App. 4th 294, 311 (2014).

12  "While product superiority claims that are vague or highly subjective often amount to

13  nonactionable puffery, misdescriptions of specific or absolute characteristics of a product

14  are actionable." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir.

15  1997). "'Ultimately, the difference between a statement of fact and mere puffery rests in

16  the specificity or generality of the claim.'" *L.A. Taxi Coop v. Uber Techs., Inc.*, 114 F.

17  Supp. 3d 852, 860 (N.D. Cal. 2015) (quoting *Newcal Indus., Inc. v. Ikon Office Solution*,

18  513 F.3d 1038, 1053 (9th Cir. 2008)).

19  As a matter of law, that "0g Trans Fat" is a "specific claim" and not an "outrageous

20  generalized statement . . . so exaggerated as to preclude reliance by consumers." *In re*

21  *Ferrero Litig.*, 794 F. Supp. 2d at 1115. Further, the Ninth Circuit has already determined

22  that "a consumer reading the label could be misled into believing that the product was

23  free of trans fat." *Hawkins*, 906 F.3d at 771. Thus, the law of the case and binding

24  authority say "0g trans fat" is not the type of exaggerated claim that "precludes reliance"

25  by consumers. *See also Reid*, 780 F.3d at 963. Because the "0g Trans Fat" statement at

26  issue here is misdescription of specific or absolute characteristics, it misleads consumers,

27  and cannot be puffery.

28

14

*Hawkins v. The Kroger Company,* Case No. 3:15-cv-02320-JM-AHG
PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

1    **F.** <u>**Kroger's Eighth Affirmative Defense (Economic Loss Doctrine)**</u>

2         Kroger's Eighth Affirmative Defense ("Economic Loss Doctrine") "is not an

3    affirmative defense." *Keokuk Glycerin, LLC v. Midwest Labs, Inc.*, 2015 U.S. Dist.

4    LEXIS 184249, at *7-8 (S.D. Iowa May 22, 2015). *See also Mercury Ins. Co. v. Viking*

5    *Corp.,* 2007 U.S. Dist. LEXIS 3142, at *62 (E.D. Wis. Jan. 12, 2007) (same). In addition

6    to not being an actual affirmative defense, also fails as a matter of law because (1) the

7    doctrine does not apply outside of the business context to consumer fraud claims; (2) the

8    rule serves to bar *consequential* damages from defective products when there is a lack of

9    physical injury; and (3) the rule does not apply to causes of action grounded in strict

10   liability.

11        The classic example of the economic loss doctrine is the maker of a defective work

12   truck is liable for repairing the truck's defect, but not the consequential lost wages of its

13   owner while the truck is being repaired in the shop, unless the owner is himself injured

14   by the defect. *See*, *e.g.*, *Jimenez v. Superior Court*, 29 Cal. 4th 473, 481-82 (2002). Here,

15   the Class seeks only restitution and damages of the purchase price of KBC, not

16   consequential damages, and the UCL are strict liability statutes.

17        The rule fails as a matter of law for yet another reason. Even if the Class were

18   seeking consequential damages, the rule does not apply when there is a special

19   relationship between the parties, such as the sale of food and drugs. *See Shade Foods,*

20   *Inc. v. Innovative Prods. Sales & Mktg., Inc.*, 78 Cal. App. 4th 847, 871 (2000); *J'Aire*

21   *Corp. v. Gregory*, 24 Cal. 3d 799, 804 (1979); *Bitton v. Gencor Nutrientes, Inc.*, 654 Fed.

22   App'x 358, 363 (9th Cir. 2016).

23    **G.** <u>**Kroger's Tenth Affirmative Defense (Third Parties)**</u>

24        "Third Parties" is not an affirmative defense. *See Richter v. City of Des Moines*,

25   2012 U.S. Dist. LEXIS 46494, at *6-7 (W.D. Wash. Apr. 2, 2012). Rather, "there is no

26   formal affirmative defense of 'third-party liability'" and at best this "goes to the question

27   of damages."

28        Furthermore, the defense reads, in its entirety, "On information and belief,

15

Plaintiff's purported harm was caused by third parties and factors outside the control of Defendant for which Defendant is not responsible." Dkt. 59 at 32. Kroger's failure to identify who such "third parties" may be and how their unspecified actions and "factors" caused Plaintiff harm renders the affirmative defense insufficiently pled.

Furthermore, Kroger simply cannot shift liability relating to a Kroger-branded product sold at Kroger-owned stores. The claims here, moreover, are all in strict liability, and "a strictly liable defendant may not reduce or eliminate its responsibility to plaintiff for damages caused by a defective product by shifting blame to others in the product's chain of distribution." *Wimberly v. Derby Cycle Corp.*, 56 Cal. App. 4th 618, 623 (1997). Even if "multiple tortfeasors are responsible for an indivisible injury suffered by the plaintiff, each tortfeasor is jointly and severally liable to the plaintiff for those damages and thus may be held individually liable to the injured plaintiff for the entirety of such damages." *SEC v. Vassallo*, 2010 U.S. Dist. LEXIS 73792, at *35 (E.D. Cal. July 20, 2010) (citations omitted). Therefore, the Court should grant summary judgment on this defense.

**H. <u>Kroger's Eleventh Affirmative Defense (Laches)</u>**

To establish laches a defendant must prove both (1) an unreasonable delay by the plaintiff and (2) demonstrate specific facts of prejudice such as critical "witnesses are unavailable or that critical files have been lost." *Couveau v. Am. Airlines*, 218 F.3d 1078, 1083 (9th Cir. 2000). "The court measures delay from the time the plaintiff knew or should have known of the allegedly infringing conduct." *Stone Brewing Co., LLC v. MillerCoors LLC*, 445 F. Supp. 3d 1113, 1140 (S.D. Cal. 2020) (citing *Eat Right Foods, Ltd. v. Whole Foods Market, Inc.*, 697 F.3d 1221, 1226 (9th Cir. 2012)). "[C]onstructive notice is not an appropriate substitute for the determination of reasonableness or excuse for delay." *Synopsys, Inc. v. Magma Design Automation, Inc.*, 2005 U.S. Dist. LEXIS 46595, at *18 (N.D. Cal. May 18, 2005) (citation omitted).

A party with unclean hands may not assert laches. *See Grasshopper House, LLC v. Clean & Sober Media LLC*, 394 F. Supp. 3d 1073, 1093 (C.D. Cal. 2019); *Quick v.*

16

*Hawkins v. The Kroger Company,* Case No. 3:15-cv-02320-JM-AHG
PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

1   *Pearson*, 186 Cal. App. 4th 371, 380 (2010).

2        Because laches is an equitable remedy, laches will not apply if the public has a

3   strong interest in having the suit proceed. *See Estate of Goldberg v. Goss-Jewett Co.*, 736

4   F. App'x 897, 901-02 (9th Cir. 2018). This is because suits aimed at dangerous business

5   practices address harms that "threaten[] the public at-large, and not just the plaintiffs." *Id.*

6   (citing *Klamath Siskiyou Wildlands Ctr. v. Boody*, 468 F.3d 549, 555 (9th Cir. 2006)). It

7   would be unfair to the public and disregard its interests to dismiss a suit of a potentially

8   dilatory plaintiff when there exists presently injured plaintiff, and maintaining an action

9   "would advance the congressional policy of abating threats to human health…" *Id.* (citing

10  *Save the Peaks Coal. v. U.S. Forest Serv.*, 669 F.3d 1025, 1031 (9th Cir. 2012)).

11       First, this Court should begin with the strong presumption against laches because

12  the complaint was timely filed. Kroger fails to present any evidence that the delay from

13  the time Ms. Hawkins knew or should have known of the cause of action nor does Kroger

14  present evidence that the purported "delay" the was anything less than reasonable. Kroger

15  incorrectly implies that Hawkins can be charged with constructive knowledge, *see* Dkt.

16  59 at 32, but case law rejects this logic, and the only evidence left in the record is her

17  testimony regarding when she became aware of her right, and the fact that the lawsuit

18  was filed just shortly after that discovery. *See* Weston Decl. Ex. 5 (Hawkins Dep. at

19  100:3-12); Dkt. 1, Compl. ¶¶ 100-112. "Put simply, Defendant has not submitted any

20  evidence demonstrating that Plaintiff unreasonably delayed in bringing this suit." *LL B*

21  *Sheet 1, LLC v. Loskutoff*, 362 F. Supp. 3d 804, 824 (N.D. Cal. 2019).

22       Additionally, the record is void of any specific facts establishing prejudice. Kroger

23  does not point to any specific witnesses or files that have been lost. The extent of

24  Kroger's pleadings simply state that it was prejudiced by "the potential loss of evidence,"

25  Dkt. 59 at 32, with no specific mention of a particular file or person. This constitutes a

26  failure "to point to specific facts to show that it has suffered prejudice as a result of the

27  alleged unreasonable delay." *Hokto Kinoko Co. v. Concord Farms, Inc.*, 810 F. Supp. 2d

28  1013, 1036 (C.D. Cal. 2011).

In *Hokto Kinoko*, the plaintiff moved for summary judgment on the defendant's affirmative defense of laches. 810 F. Supp. 2d at 1036. In granting the motion, the district court specifically noted that "[p]roof of prejudice is an element of" laches, and the defendant was required to provide "specific facts to show that it has suffered prejudice" and that a failure to do so was "equally fatal" as failing to show a justified delay. *Id.* Similarly in *LL B Sheet 1, LLC v. Loskutoff,* the district court noted that the defendants' failure to submit evidence demonstrating how it was "prejudiced by any such delay" rendered the laches defense subject to summary judgment. 362 F. Supp. 3d 804, 824 (N.D. Cal. 2019).

Kroger's unclean hands also permit this Court to grant Plaintiff summary judgment on laches. Because the record is not contested regarding Kroger making false statements and unauthorized nutrient content claims, laches cannot not apply.

Finally, the strong public interest in pure, safe, and honestly-labeled food supports finding in favor of summary judgment for Plaintiff on this affirmative defense.

The Ninth Circuit's opinion in *Estate of Goldberg v. Goss-Jewett Co.*, 736 F. App'x 897 (9th Cir. 2018) is instructive. In that action, which related to toxic waste, "the district court dismissed the RCRA citizen suit claim as barred by laches." *Id.* at 901. The Ninth Circuit reversed, finding "[t]hree factors support this presumption against the equitable defense of laches." *Id.* at 902. The Ninth Circuit noted that (1) "it makes little sense to say that a private attorney general 'sleeps on his rights' when those rights belong to the public"; (2) "it would be unfair to the public and disregard its interests to dismiss the citizen suit simply because it was filed by the dilatory" plaintiff rather than another plaintiff with a fresh claim; and (3) that allowing the suit "would advance the congressional policy of abating threats to human health and the environment." *Estate of Goldberg v. Goss-Jewett Co.*, 736 F. App'x at 901-02 (quoting and relying on *Klamath Siskiyou Wildlands Ctr. v. Boody*, 468 F.3d 549, 555 (9th Cir. 2006); *Save the Peaks Coal. v. U.S. Forest Serv.*, 669 F.3d 1025, 1031 (9th Cir. 2012)).

Here, similar public health concerns and deceptive mislabeling of dangerous

18

ingredients, along with the congressional and FDA policy goals of disseminating safe and accurately labeled food to the public, provides an additional layer of support to grant summary judgment against this defense.

### I. Kroger's Twelfth Affirmative Defense (Unclean Hands)

Kroger has no facts supporting an unclean hands defense. "Whether the particular misconduct is a bar to the alleged claim for relief depends on (1) analogous case law, (2) the nature of the misconduct, and (3) the relationship of the misconduct to the claimed injuries." *Kendall-Jackson Winery, Ltd. v. Superior Court*, 76 Cal. App. 4th 970, 979 (1999). Though the party against whom unclean hands is enforced need not have acted unlawfully, the court may only apply the doctrine where the party committed a "willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct." *LL B Sheet 1, LLC*, 362 F. Supp. 3d 804 at 821 (citing *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945)). "Any conduct that violates conscience, or good faith, or other equitable standards of conduct is sufficient cause to invoke the doctrine." *Id.* (citing *Kendall-Jackson Winery*, 76 Cal. App. 4th 970 at 979). "[C]ourts require clear, convincing evidence of 'egregious' misconduct before invoking the doctrine of unclean hands." *Marketquest Grp. Inc. v. BIC Corp.*, 316 F. Supp. 3d 1234, 1295 (S.D. Cal. 2018).

First, this affirmative defense lacks evidentiary support in the record of any "misconduct" by Plaintiff. Kroger alleges that because Ms. Hawkins purchased KBC from 2000 to 2015, when she discovered Kroger's mislabeling, she has "unclean hands." Specifically, Kroger argues that because the Complaint contains references to articles discussing the dangers of trans fat which were written during this period. Dkt. 59 at 32. This simply fails as a matter of law, as buying food at a grocery store for personal and household consumption cannot be "misconduct."

### J. Kroger's Thirteenth Affirmative Defense (Waiver/Consent/Release)

All three of Defendant's affirmative defenses listed as the Thirteenth Affirmative Defenses remain bare allegations void of supporting theory or evidentiary support.

19

*Hawkins v. The Kroger Company,* Case No. 3:15-cv-02320-JM-AHG
PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

### Waiver

Waiver exists "when a party intentionally relinquishes a right or when that party's acts are so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 33-34 (1995). "Waiver always rests upon intent. Waiver is the intentional relinquishment of a known right after knowledge of the facts." *DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Cafe & Takeout III, Ltd.*, 30 Cal. App. 4th 54, 60 (1994) (citations omitted).

Kroger's allegations here are substantively identical to those in support of its laches and unclean hands defenses. Kroger is unable to cite to any evidence from which a jury could find that Ms. Hawkins ever intentionally relinquished her right or acted in a way as to induce a reasonable belief in relinquishment. Kroger, again, can only point to the existence of the product on the market, but is unable to point to any evidence from which a reasonable trier of fact could make the connection between that existence and Ms. Hawkins's knowledge that she had a right, let alone intentionally relinquished that right.

### Consent

Kroger's "Consent" defense also fails. Consent is only effective if the person alleging harm consented "to the particular conduct, or to substantially the same conduct" and if the alleged tortfeasor did not exceed the scope of that consent. *Tsao v. Desert Palace, Inc.,* 698 F.3d 1128, 1149 (9th Cir. 2012) (citing RESTATEMENT (SECOND) OF TORTS § 892A (1979) §§ 2(b)); *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1072–73 (N.D. Cal. 2016) (same). Even if an individual can be said to have consented

> [i]f the person consenting to the conduct of another is induced to consent by a substantial mistake concerning the nature of the invasion of his interests or the extent of the harm to be expected from it and the mistake is known to the other or is induced by the other's misrepresentation, the consent is not effective for the unexpected invasion or harm.

*In re Arizona Theranos, Inc., Litig.*, 308 F. Supp. 3d 1026, 1050 (D. Ariz. 2018) (recognizing California law follows the RESTATEMENT SECOND); *see also Rains v. Superior Court,* 150 Cal. App. 3d 933, 939 (1984). When express, consent must be

20

"clearly and unmistakably state[d]." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009). When implied, courts still require some conduct or method of demonstrating consent. *Leckler v. Cashcall, Inc.*, 554 F. Supp. 2d 1025, 1030 (N.D. Cal. 2008) (citing BLACK'S LAW DICTIONARY); *Hill v. National Collegiate Athletic Assn.*, 7 Cal. 4th 1, 25 (1994).

Kroger fails to present a credible theory through its pleadings and can point to no evidence from which a jury could conclude that Ms. Hawkins consented to violations of the UCL and other consumer protection laws. First, with explicit consent, the record is void of any conduct or statement by Ms. Hawkins clearly and unmistakably stating a willingness to consent. Nor can Kroger establish from the record any kind of words or acts that are intended to indicate consent. Kroger can only point to the length of time Ms. Hawkins purchased KBC and the existence of articles establishing the danger of trans fat, but the conduct of simply purchasing KBC alone does not demonstrate consent.

**Release**

Kroger's Thirteenth Affirmative Defense (Release) fails like the others. "Under California law, a release is the abandonment, relinquishment or giving up of a right or claim to the person against whom it might have been demanded or enforced, and its effect is to extinguish the cause of action." *Operating Engineers' Pension Tr. Fund v. Clark's Welding & Mach.*, 688 F. Supp. 2d 902, 910 (N.D. Cal. 2010) (citing *Marder v. Lopez*, 450 F.3d 445, 449 (9th Cir. 2006)). Courts interpret release to give effect to the parties' mutual intent as it existed when they contracted. *Id.* (citations omitted).

Because Kroger fails to provide a theory of how Ms. Hawkins's claims are allegedly subject to the affirmative defense of release, Ms. Hawkins cannot properly respond to this claim aside from noting that none of Defendant's pleadings nor any evidence in the records contain any reference to an alleged release let alone any incident of mutual intent.

**K. <u>Kroger's Fourteenth Affirmative Defense (Estoppel)</u>**

For estoppel to apply:

21

*Hawkins v. The Kroger Company,* Case No. 3:15-cv-02320-JM-AHG
PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

 (1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the facts; and (4) he must rely on the former's conduct to his injury.

*Keller Found./Case Found. v. Tracy,* 696 F.3d 835, 847–48 (9th Cir. 2012) (applying California law).

Again, Kroger's sole allegations amount to the existence of scientific studies, and that Plaintiff purchased KBC. There is also nothing in the record from which a jury could find that Ms. Hawkins knew of her claims or acted, let alone with intent, in a way that Kroger would rely. Kroger also never claims its own lack of ignorance regarding the facts of this dispute. Finally, Kroger makes no attempt to plead its own "detrimental" reliance, nor could it find support in the record. Nothing in the record provides facts which would allow a reasonable jury to conclude that Kroger, a large corporation selling food in a grocery store could ever, in good faith, plead reliance on an individual consumer, or specifically Ms. Hawkins. There is not even evidence that Kroger knew who Ms. Hawkins was until this lawsuit was filed.

## VIII. <u>Conclusion</u>

For the reasons stated above, Plaintiff, on behalf the Class, respectfully requests that that Court enter partial summary judgment against Kroger.

DATED: November 20, 2020                    Respectfully Submitted,

                                            <u>/s/ Gregory S. Weston</u>

                                            **THE WESTON FIRM**
                                            GREGORY S. WESTON
                                            1405 Morena Blvd., Suite 201
                                            San Diego, CA 92110
                                            Telephone:   (619) 798-2006
                                            Facsimile:   (619) 343-2789

                                            **<u>Class Counsel</u>**

22

*Hawkins v. The Kroger Company,* Case No. 3:15-cv-02320-JM-AHG
PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT