1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT
9             SOUTHERN DISTRICT OF CALIFORNIA
10

11   SHAVONDA HAWKINS, on behalf          Case No.: 15cv2320 JM (AHG)
     of herself and all others similarly
12   situated,
13                            Plaintiff,
14   v.                                    **ORDER ON CROSS MOTIONS FOR
                                           SUMMARY JUDGMENT**
15   THE KROGER COMPANY,
16                           Defendant.
17
18

19        Plaintiff Shavonda Hawkins and Defendant The Kroger Company ("Kroger") move

20   for summary judgment or partial summary judgment.  (Doc. Nos. 275, 286.)  The motions

21   have been fully briefed and the court finds them suitable for submission without oral

22   argument in accordance with Civil Local Rule 7.1(d)(1).  For the below reasons, the

23   motions are **DENIED IN PART** and **GRANTED IN PART**.

24        I.      **BACKGROUND**

25        The parties do not dispute that Plaintiff purchased Kroger breadcrumbs in San Diego

26   about six times per year from 2000 to July of 2015.  She purchased the breadcrumbs for

27   use in her weekly family meatloaf.  Beginning in 2008, the front label of the breadcrumbs

28   read "0g Trans Fat Per Serving."  (*See* Doc. No. 275-1 at 281-87.)  On the back of the

breadcrumbs, in the nutrition fact panel ("the nutrition label"), the label read "Trans Fat 0g" and included partially hydrogenated vegetable oil ("PHO") as an ingredient.  (*Id*.) Because the breadcrumbs contained PHO, they contained "trace amounts" of trans fat. (Doc. No. 104 at 9.)

On October 15, 2015, Plaintiff filed a class action alleging violation of California's False Advertising Law ("the FAL"), CAL. BUS. & PROF. CODE §§ 17500-501, Unfair Competition Law ("the UCL"), *id.* § 17200, and the Consumers Legal Remedies Act ("the CLRA"), CAL. CIV. CODE §§ 1750-1785.  She also brought claims for breach of the implied warranty of merchantability and breach of express warranty.  On March 17, 2016, the court granted Kroger's first motion to dismiss, with prejudice, under Rule 12(b)(6).  (Doc. No. 19.)  The court found Plaintiff lacked statutory standing to bring claims under the UCL, FAC, and CLRA, and alternatively, that her labeling claims were preempted by federal law.  (*Id.*)  On November 16, 2018, the Ninth Circuit reversed and remanded the case.  On November 8, 2019, Kroger filed a second motion to dismiss under Rule 12(b)(6), (Doc. No. 34), which the court denied on April 4, 2019, (Doc. No. 40).  On January 21, 2020, Plaintiff filed a motion for class certification.  (Doc. No. 89-1.)  On November 9, 2020, the court certified the following class:

> All citizens of California who purchased, between January 1, 2010 and December 31, 2015, Kroger Bread Crumb containing partially hydrogenated oil and the front label claim "0g Trans Fat."

(Doc. No. 263 at 38.)

## II.   LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has done so, the nonmoving party must "go beyond the

pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation and citation omitted). The court must examine the evidence in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The court may not weigh evidence or make credibility determinations. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). Any doubt as to the existence of any issue of material fact requires denial of the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *SEC v. Seaboard*, 677 F.2d 1301, 1306 (9th Cir. 1982). Summary judgment can only be entered "if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson*, 477 U.S. at 250. The trial court's inquiry is not whether a reasonable trier of fact is likely to find in favor of the opposing party, but whether it could do so. *McIndoe v. Huntington Ingals*, 817 F.3d 1170, 1176 (9th Cir. 2016).

## III.   DISCUSSION

Plaintiff's claims are based on the *use* of PHO (Plaintiff's "use claims"), as well as the front *label* reading "0g Trans Fat" (Plaintiff's "labeling claims"). Plaintiff claims the use of PHO in Kroger breadcrumbs during the class period violated the unlawful and unfair prongs of the UCL (Counts I and II). Plaintiff further claims the "0g Trans Fat" label on the front of the breadcrumbs violated the unlawful, unfair, and fraudulent prongs of the UCL (Counts IV-VI), as well as the FAL and CLRA (Counts VII and VIII). Plaintiff also brings claims for breach of implied and express warranties (Counts III and IX).

### A.   Use Claims Under the UCL

#### 1.   Unlawful Prong

Kroger argues that Plaintiff's claim that use of PHO violated the unlawful prong of the UCL (Count II) fails because the use of PHO in food products was legal during the class period, i.e. from 2010 through 2015. (Doc. No. 275 at 20-24.) Plaintiff claims that by using PHO in food products, Kroger violated the Federal Food, Drug, and Cosmetic Act

3

("the FDCA"), 21 U.S.C. §§ 348, 342, as well as the California Sherman Food, Drug, and Cosmetic Law ("the Sherman Law"), CAL. HEALTH & SAFETY CODE § 110100.  (Compl. ¶¶ 132-33.)

Plaintiff does not claim Kroger used PHO in its breadcrumbs at any point after June 18, 2018.  Courts consistently agree that use of PHO prior to June 18, 2018 did not violate the FDCA.  For example, in *Hawkins v. Advancepierre Foods, Inc.*, Case No. 15-cv-2309-JAH (BLM), 2016 WL 6611099, at *4-5 (S.D. Cal. Nov. 8, 2016), *aff'd*, 733 F. App'x 906 (9th Cir. 2018), the district court found the defendant's use of PHO prior to June 18, 2018 did not plausibly violate the FDCA.  The court explained, as others have, that in 2015 the FDA determined there is no longer a consensus that PHOs are generally recognized as safe, and set June 18, 2018 as the date by which PHO must be removed from food products.[1]  *Id.* at *3.  The district court also dismissed Plaintiff's Sherman Law claim because it was preempted by federal law.  *Id.* at *6.  On appeal, the Ninth Circuit did not address the preemption issue, but held that "federal law did not prohibit PHOs prior to June 18, 2018" and that "use of PHOs did not violate this provision [of the Sherman Act adopting federal law] because it did not violate federal law."  733 F. App'x at 907.  Multiple other district courts have found it not plausible that use of PHO in foods prior to June 18, 2018 constitutes a violation of the FDCA or Sherman Law.  *See*, *e.g.*, *Backus v. Biscomerica Corp.*, Case No. 16-cv-03916-HSG, 2017 WL 1133406, at *3-4 (N.D. Cal. Mar. 27, 2017); *Hawkins v. Kellogg Co.*, 224 F. Supp. 3d 1002, 1012 (S.D. Cal. 2016); *Backus v. Conagra Foods, Inc.*, No. C 16-00454 WHA, 2016 WL 3844331, at *4 (N.D. Cal. July 15, 2016); *Backus v. Gen. Mills, Inc.*, 122 F. Supp. 3d 909, 927 (N.D. Cal. 2015) (federal law only).

Plaintiff makes no attempt to distinguish the claims or arguments made by her or her counsel in the above cases from those made here, except to claim, in passing, that this court previously "rejected Kroger's arguments for preemption of state law."  (Doc. No. 287 at

---

[1] The June 18, 2018 deadline was subsequently extended to June 18, 2020.  (Doc. No. 40 at 5 (citing 83 Fed. Reg. 23358, 23359 (May 21, 2018)).

15cv2320 JM (AHG)

26.)  Plaintiff is correct that this court, in denying a motion to dismiss, concluded "the statement '0g Trans Fat,' made outside the nutrition label, is not preempted because it does not impermissibly conflict with federal law." (Doc. No. 40 at 7.)  As the court made clear, however, this conclusion was made with respect to Plaintiff's claims regarding the "0 Trans Fat" *label*, not those related to the *use* of PHO.  *See id.* ("[P]ermitting the use of PHO in products until 2020 is separate and distinct from the alleged packaging misrepresentation of '0g Trans Fat.'").  Additionally, Plaintiff does not dispute Kroger's contention that her state law claims are premised on federal law because "the Sherman Law simply adopts the very FDA regulations that permit the use of PHO." (Doc. No. 275 at 24.)

The only other argument put forth by Plaintiff in defense of her use claim under the unlawful prong is that Kroger failed to raise collateral estoppel as an affirmative defense in its Answer.  (Doc. No. 287 at 20.)  Irrespective of whether Kroger waived a collateral estoppel defense, *Advancepierre* and multiple other cases involving use of PHO claims are on-point and persuasive.[2]  Accordingly, Kroger's motion for summary judgment as to Plaintiff's use claim under the unlawful prong of the UCL (Count II) is **GRANTED**.  In Plaintiff's motion for summary judgment as to the same claim, she merely repeats the same legal arguments she made in opposition to Kroger's motion.  (*See* Doc. No. 286 at 14-18.)  Accordingly, Plaintiff's motion for summary judgment as to her use claim under the unlawful prong is **DENIED**.

## 2.    Unfair Prong

Kroger argues that Plaintiff's use claim under the unfair prong of the UCL (Count I) fails because it overlaps entirely with her claim under the unlawful prong.  (Doc. No. 275 at 24-25.)  Plaintiff argues it is unfair that Kroger used PHO in its breadcrumbs because, as demonstrated by Dr. Wong's Report and peer-reviewed medical journal studies, PHO is

---

[2] The Ninth Circuit also recently found a plaintiff failed to show constitutional standing in a use claim under the UCL by alleging injuries based on the mere consumption of trans fat. *McGee v. S-L Snacks Nat'l*, No. 17-55577, 2020 WL 7087008, at *4 (9th Cir. Dec. 4, 2020). The plaintiff in *McGee* did not, however, bring claims related to labeling. *See id.* at n.5.

harmful to consumers.  (Doc. No. 287 at 26.)  Kroger responds that Plaintiff fails to explain how the use of PHO meets any of the tests under California law for unfair conduct under the UCL, and that Dr. Wong's report is unreliable and inadmissible.  (Doc. No. 309 at 10.)

As recognized by the Ninth Circuit, "'[t]he UCL does not define the term 'unfair.' In fact, the proper definition of 'unfair' conduct against consumers 'is currently in flux' among California courts.'"  *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 866 (9th Cir. 2018) (quoting *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012)).  Some California courts have found that unfair conduct occurs if it "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 886-87 (1999); *Hodsdon*, 891 F.3d at 866.  Other courts have found that unfair conduct must be "tethered to some legislatively declared policy or proof of some actual or threatened impact on competition."  *Davis*, 691 F.3d at 1169-70 (internal citations omitted).[3]

On the one hand, and as discussed above, during the class period there was no public policy against Kroger's use of PHO because it was lawful to do so.  Given that use of PHO was legal during the class period, and the FDA declined to prohibit its use during the class period, it is not clear how the use of PHO, without regard to the "0g Trans Fat" label, could be unfair if it was lawful.  *See AdvancePierre*, 733 F. App'x at 907 (finding, without discussion, that "Hawkins cannot satisfy the 'unfair' prong of the UCL under either of the two tests used by California courts.").  To find otherwise would create potential liability under the unfair prong of the UCL for defendants that truthfully disclose legal but

---

[3] At the pleading stage, this court found the "issue of whether a practice is deceptive or unfair is generally a question for the trier of fact."  (Doc. No. 40 at 9 (quoting *Puentes v. Wells Fargo Home Mort.*, 160 Cal. App. 4th 638, 645 n.5 (2008)).)  This court also found a business practice is unfair if it is substantially injurious to consumers and the harm to consumers outweighs the utility to the defendant.  (*Id.* (citing *Rubio v. Capital One Bank*, 613 F.3d 1195, 1205 (9th Cir. 2010)).)  Accordingly, the court declined to dismiss Plaintiff's use claim under the unfairness prong.  (*Id.*)

unhealthy ingredients, including those the FDA specifically declines to prohibit for a period of years.

On the other hand, the degree of harm presented by PHO is a material and genuinely disputed fact.[4]   Also, the FDA did not decide as a matter of law that use of PHO was "unfair" under the UCL, only that there was no longer a consensus that PHOs are generally recognized as safe.  Accordingly, despite the legality of the use of trans fat during the class period, reasonable jurors could disagree as to whether the danger of trans fat to human health was sufficient to render its use "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," *see S. Bay*, 72 Cal. App. 4th at 886-87, and Kroger cites no controlling authority suggesting otherwise.  Accordingly, Kroger's motion for summary judgment on Plaintiff's use claim under the unfairness prong of the UCL (Count I) is **DENIED**.

### B.    Labeling Claims Under the UCL, FAL, and CLRA

#### 1.    Kroger's Motion

As noted above, there is no genuine dispute the breadcrumbs were labeled "0g Trans Fat," but contained some trans fat.  Kroger nonetheless argues it is entitled to summary judgment on all of Plaintiff's "mislabeling" claims.  Kroger argues that a reasonable consumer would understand the breadcrumbs contained trans fat because the ingredient list included PHO.  (Doc. No. 275 at 25.)  Although there is no dispute the ingredient list included PHO, Kroger's argument has been rejected in multiple cases that Kroger fails to acknowledge in its motion.

In *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 939 (9th Cir. 2008), the Ninth Circuit held that reasonable consumers should not "be expected to look beyond misleading

---

[4] Kroger makes boilerplate objections to nearly all, if not all, of the scientific evidence upon which Plaintiff relies to show the dangers of trans fat to human health.  (Doc. Nos. 296, 310.)  Because no part of this court's order depends on the findings in those specific materials, the objections are OVERRULED AS MOOT.  The court will, of course, address Kroger's objections upon consideration of Kroger's motions in limine.

representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box."  The court stated, "[w]e do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception." *Id.*; *see also Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1129 (C.D. Cal. 2010) ("*Williams* stands for the proposition that where product packaging contains an affirmative misrepresentation, the manufacturer cannot rely on the small-print nutritional label to contradict and cure that misrepresentation.").  Additionally, in *Reid v. Johnson & Johnson*, 780 F.3d 952, 959 (9th Cir. 2015), the Ninth Circuit found that regardless of the holding in *Williams*, "it is far from clear that typical consumers understand that a product containing [PHO] necessarily has trans fat, so even if an ingredient list has a curative effect in some cases, it might not here."

Finally, in *Beasley v. Lucky Stores, Inc.*, Case No. 18-cv-07144-MMC, 2020 WL 3128873, at *3 (N.D. Cal. June 12, 2020), which involved a product labeled "0g Trans Fat" that listed PHO as an ingredient, the court declined to dismiss UCL claims on summary judgment, even where the plaintiff admitted he knew that PHO contained trans fat while he was buying the product.  The court stated, "even given [the plaintiff's] knowledge about the relationship between PHO and trans fat . . . . a triable issue of fact exists as to whether [the plaintiff], faced with multiple clear statements about the absence of trans fat [on the label], should have investigated the ingredient list [for PHO]." *Id.*

Kroger makes several other arguments against Plaintiff's labeling claims, none of which are availing.  First, Kroger argues Plaintiff admitted "she knew or should have known beginning in 2005 that, despite the breadcrumbs' '0g Trans Fat' label, the breadcrumbs contained trans fat because the ingredients listed PHO." (Doc. No. 275 at 25.)  Kroger already made this argument in opposition to class certification, and the court rejected it based on a detailed analysis of Plaintiff's testimony in the record.  (Doc. No. 263 at 26-31.)  The court also noted that Kroger appeared to have failed to develop Plaintiff's testimony on this issue.  (*Id*. at 26.)  Kroger does not argue the court overlooked

evidence or testimony, and makes no attempt to distinguish the argument it is making now from its previously rejected argument, or to explain why the outcome should be different on summary judgment.

Second, Kroger argues Plaintiff has "no evidence whatsoever" to support her "sweeping" interpretation of the "0g Trans Fat" label. (Doc. No. 275 at 25-26.) Of course, the label itself, combined with Kroger's admission that the breadcrumbs contained some trans fat, is "actual evidence" and not "no evidence whatsoever." *See Williams*, 552 F.3d at 938 ("It is true that 'the primary evidence in a false advertising case is the advertising itself.'") (citation omitted). And no reasonable juror could find that interpreting "0g Trans Fat" to mean "no" trans fat is unreasonably "sweeping."

Third, Kroger argues reasonable consumer expectations can only be determined by surveys or expert evidence. (Doc. No. 275 at 26-27.) The cases Kroger cites do not support this argument. In *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1026 (9th Cir. 2008), the Ninth Circuit held that "[s]urveys and expert testimony regarding consumer assumptions and expectations may be offered but are not required[.]" Also, in *Victor v. R.C. Bigelow, Inc.*, No. 13-CV-02976-WHO, 2016 WL 4502528, at *4 (N.D. Cal. Aug. 29, 2016), *aff'd*, 708 F. App'x 333 (9th Cir. 2017), the court faulted the plaintiff for not providing extrinsic evidence, such as consumer survey evidence, to support his claim that the words "delivers healthful antioxidants" would lead a reasonable consumer to believe the product contains a "healthy dose" of antioxidants. Here, it is not clear what else the claim "0g Trans Fat" would lead a reasonable consumer to believe other than the product contains no trans fat. It is certainly not so clear as to decide this issue in favor of Kroger as a matter of law. *See Hawkins v. Kroger Co.*, 906 F.3d 763, 771 (9th Cir. 2018) ("We held [in *Reid*] that 'No Trans Fat' was misleading because a reasonable consumer might infer that the product did not contain trans fat.").

Fourth, Kroger argues, in passing, that the FDA "mandate[s] and allow[s] that products labeled '0g' trans fat may still contain trace levels of trans fat." (Doc. No. 275 at

25 (citing 21 C.F.R. § 101.9(c)(ii)).)[5]  As the Ninth Circuit and this court have repeatedly explained, although the FDA mandates the disclosure of "0g Trans Fat" *on the nutrition label* when the product contains less than 0.5 grams of trans fat, it does not mandate or allow for the product to be labeled "0g Trans Fat" elsewhere on the package.  (Doc. No. 40 at 6 (citing *Kroger*, 906 F.3d at 770-71; *Reid*, 780 F.3d at 960; 21 CFR §101.13(c)); *see also id.* at 7-8 ("Under the regulations, Kroger is free to continue to add PHO to its products until June 18, 2020.  What Kroger cannot do, outside the nutrition label, is to represent that the product contains '0g Trans Fat' when the product is alleged to contain PHO.").[6]  For the above reasons, Kroger's motion for summary judgment on Plaintiff's labeling claims under the UCL, FAL, and CLRA (Counts IV-VIII) is **DENIED**.

### 2. Plaintiff's Motion

### a. Predicate Violation

Plaintiff moves for summary judgment on her labeling claim under the unlawful prong of the UCL.  (Doc. No. 286 at 19.)  The unlawful prong of the UCL prohibits "anything that can properly be called a business practice and that at the same time is forbidden by law."  *Cel-Tech*, 20 Cal. 4th 163 at 180 (quotation marks and citations omitted).  "Violation of almost any federal, state, or local law may serve as the basis for a UCL claim."  *Plascencia v. Lending 1st Mortg.*, 259 F.R.D. 437, 448 (N.D. Cal. 2009) (citation omitted).  Plaintiff argues the "0g Trans Fat" label violated 21 C.F.R. §§ 101.13 and § 101.62.  (Doc. No. 286 at 10, 13, 20.)  Under 21 C.F.R. § 101.62(a)(1)-(2), "[a] claim about the level of fat . . . . in a food may only be made on the label . . . . if . . . (1) [t]he

---

[5] Kroger's citation to 21 C.F.R. § 101.9(c)(ii) appears to be in error.  The correct citation is likely 21 C.F.R. § 101.9(c)(2)(ii).

[6] Kroger argues the court should disregard Dr. Wong's opinion that the label was misleading in favor of its own expert.  (Doc. No. 275 at 27.)  As noted above, Dr. Wong's opinion is not determinative of any of part this court's order.  At this stage, therefore, the court declines to exclude Dr. Wong's testimony or weigh it against Kroger's expert's testimony.

10

15cv2320 JM (AHG)

1  claim uses one of the terms defined in this section [or] (2) [t]he claim is made in accordance

2  with the general requirements for nutrient content claims in § 101.13."  Section 101.13

3  provides "the label or labeling of a product may contain a statement about the amount or

4  percentage of a nutrient if . . . . [t]he statement does not in any way implicitly characterize

5  the level of the nutrient in the food and it is not false or misleading in any respect (e.g.,

6  '100 calories' or '5 grams of fat')[.]" [7]  21 C.F.R. § 101.13(i)(3).

7          In *Reid*, the Ninth Circuit held that § 101.13(i)(3) does not "authorize" a "No Trans

8  Fat" claim on the label of a food product, and therefore the plaintiff's UCL claims based

9  on the "No Trans Fat" label were not preempted by federal law.  780 F.3d at 963.  The

10  court reasoned (1) "[a] nutrient content claim *fails* [under §101.13(i)(3)] if it is "false or

11  misleading in any respect" and (2) "[b]ecause [the product] contain[ed] some trans fat

12  (between 0 and 0.5 grams per serving), its 'No Trans Fat' claim [was] misleading in at least

13  one respect."  *Id*. at 962 (emphasis added).  The Ninth Circuit rejected the district court's

14  finding that the "No Trans Fat" label was not misleading.  *Id*. at 963.

15          In this case, the Ninth Circuit interpreted *Reid* to hold (1) "the statement 'No Trans

16  Fat' was *not allowed* outside of the Nutrition Facts Panel since the product did contain

17  trans fat," and (2) "under the regulations, [the 'No Trans Fat' claim] could *only* be made if

18  it did 'not in any way implicitly characterize the level of the nutrient in the food and [was]

19  not false or misleading in any respect.'"  *Hawkins*, 906 F.3d at 770 (emphasis added).  Like

20  in *Reid*, the *Hawkins* court held that Plaintiff's labeling claims under the UCL were not

21  preempted because the "0g Trans Fat" label was not "authorized" by FDA regulations.  *Id*.

22  at 772.

23          Kroger argues *Reid* and *Kroger* did not hold the "No Trans Fat" and "0g Trans Fat"

24  labels were unlawful under FDA regulations.  (Doc. No. 295 at 27-28.)  Rather, Kroger

25  _____

26  [7] Plaintiff also claims the label violated 21 U.S.C. §§ 342 and 348 and CAL. HEALTH &

27  SAFETY CODE § 110545, but Plaintiff provides no argument with respect to those statues in

28  her request for summary judgment as to Plaintiff's labeling claims under the unlawful

prong of the UCL.

argues *Reid* and *Kroger* merely held the labels were not preempted by FDA regulations because the labels were not "expressly authorized." (*Id.*) Kroger does not dispute, however, that false and misleading labels concerning fats are prohibited under 21 C.F.R. §§ 101.62(a)(2) and 101.13(i)(3), and Kroger cites no case supporting its implied argument that it was lawful to falsely or misleadingly label its breadcrumbs as containing "0g Trans Fat."[8] Instead, Kroger argues that Plaintiff fails to meet her burden because she fails to provide any actual evidence that there is no genuine dispute the "0g Trans Fat" label was false or misleading.[9] (Doc. No. 295 at 29.)

As noted above, the nutrition label itself, which lists PHO as an ingredient, is actual evidence the "0g Trans Fat" label was false or misleading. Plus, Kroger does not dispute the breadcrumbs contain some trans fat. Furthermore, *Reid* and *Kroger* clearly hinge on the courts' findings that "No Trans Fat" or "0g Trans Fat" labels are false or misleading if the products contain "some" trans fat. *See Hawkins*, 906 F.3d at 771 (describing the "0g Trans Fat" label as "false[]"); *Reid*, 780 F.3d at 962 ("No Trans Fat" is "misleading in at least one respect"). Although *Reid* and *Hawkins* involve decisions made at the pleading stage regarding preemption, at this stage, the material facts are the same and are not genuinely disputed. Even if *Reid* and *Kroger* are not directly controlling on the issue, they are certainly persuasive towards finding as a matter of law that the "0g Trans Fat" label

---

[8] Kroger also does not dispute that its "0g Trans Fat" label was "[a] claim about the level of fat" under 21 C.F.R. §§ 101.62(a).

[9] Kroger also argues that Plaintiff cannot meet her burden of showing the "0g Trans Fat" label is false or misleading because: (1) the FDA requires that trace amounts of trans fat under 0.5 gram be listed as "0g" on the nutrition panel; (2) the ingredients included PHO; (3) Plaintiff admitted she knew that PHO contained trans fat; (4) FDA regulations allow claims such as "fat free" and "no fat" where trace amounts less than 0.5 grams are included in the food; (4) Plaintiff relies on the unreliable testimony of Dr. Wong regarding reasonable consumer perceptions; and (5) Plaintiff provides no survey of consumer perceptions to support her claim. (Doc. No. 295 at 29-30.) All these arguments have been previously made and rejected by this court and others, or are rejected elsewhere in this order.

violated 21 C.F.R. §§ 101.62(a)(2) and 101.13(i)(3).  *See Hawkins*, 906 F.3d at 770 (the "No Trans Fat" claim in *Reid* was "not allowed" and "could only be made" if it was not false or misleading); *Reid*, 780 F.3d at 963 (the label "fails" under the regulations). Additionally, as noted above, 21 C.F.R. § 101.62(a)(1)-(2) provides that claims about the level of fat may "only" be made on the label if (1) the claim uses one of the terms defined in the regulations, and (2) the claim is not false or misleading.  Here, the claim "0g Trans Fat" is not defined in the regulations, and there is no genuine dispute the breadcrumbs contain some trans fat.  Accordingly, Plaintiff's motion for summary judgment that the "0g Trans Fat" label violated 21 C.F.R. §§ 101.62(a)(1)-(2) and 101.13(i)(3) is **GRANTED** as to that particular issue.

### b.    Entire Claim

Plaintiff also argues she is entitled to summary judgment on her entire unlawful UCL labeling claim because "[a] claim under the UCL's unlawful prong has just one element: the violation of any predicate law or regulation."  (Doc. No. 286 at 19.)  In support of this argument, Plaintiff cites *Bruton v. Gerber Prods. Co.*, 703 Fed. App'x 468, 471-72 (9th Cir. 2017), in which the court held "[t]he best reading of California precedent is that the reasonable consumer test is a requirement under the UCL's unlawful prong only when it is an element of the predicate violation."  Plaintiff also cites two district court cases following *Bruton*.  *See Hadley v. Kellogg Sales Co.*, Case No. 16-CV-04955-LHK, 2019 WL 3804661, at *23 (N.D. Cal. Aug. 13, 2019); *Silver v. BA Sports Nutrition, LLC*, Case No. 20-cv-00633-SI, 2020 WL 2992873, at *4 (N.D. Cal. June 4, 2020).

Plaintiff may be correct that the reasonable consumer test does not apply to her claim under the unlawful prong of the UCL because the reasonable consumer test is not an element of a violation of 21 C.F.R. §§ 101.62(a)(2) or 101.13(i)(3).  The relevant element of a violation of 21 C.F.R. § 101.13(i)(3) is that the label is "false or misleading in any respect."  In contrast, the reasonable consumer test is whether members of the public are likely to be deceived.  *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (citations omitted).

13

The inapplicability of the reasonable consumer test does not, however, necessarily lead to the conclusion that no other elements currently exist for unlawful UCL claims. Courts have recognized other elements to an unlawful UCL claim, including a "business practice," *Cel-Tech*, 20 Cal. 4th 163 at 180, as well as economic injury and a causal connection or reliance, *see Beaver v. Tarsadia Hotels*, 29 F. Supp. 3d 1294, 1312 (S.D. Cal. 2014) (citations omitted), *aff'd*, 816 F.3d 1170 (9th Cir. 2016). In its opposition to Kroger's motion, Plaintiff provides some argument that reliance is not an element.[10] (Doc. No. 287 at 12-13.) Plaintiff does not, however, attempt to show that all these previously recognized elements are inapplicable by virtue of the inapplicability of the reasonable consumer test or for some other reason.[11] Moreover, as discussed below, a genuine dispute of material fact exists as to reliance/causation. Accordingly, Plaintiff's motion for summary judgment on her entire labeling claim under the unlawful prong of the UCL (Count IV) is **DENIED**.

## C.   Warranty Claims

Kroger argues it is entitled to summary judgment on Plaintiff's express and implied warranty claims (Counts III and IX). (Doc. No. 275 at 27-28.) There is an implied warranty that goods sold by a merchant are fit for the ordinary purposes for which those goods are sold. CAL. COM. CODE § 2314(2)(c). But "there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to [the buyer]." *Id.* § 2316(3)(b). Kroger argues that no implied warranty exists because the

---

[10] The cases cited by Plaintiff regarding the reliance element relate to statutory standing, and did not find the plaintiffs were entitled to summary judgment on an unlawful UCL claim simply by showing a predicate legal violation. *See, e.g.*, *Cappello v. Walmart Inc.*, 394 F. Supp. 3d 1015, 1020 (N.D. Cal. 2019).

[11] In *In re Lumber Liquidators*, MDL No. 1:15-md-2627 (AJT/TRJ), 2017 WL 2646286, at *15 (E.D. Va. June 20, 2017), which Plaintiff cites, the court did not find the plaintiff was entitled to summary judgment based solely on a predicate violation. Rather, the court denied summary judgment to the defendant because the evidence was sufficient to reasonably show a predicate violation. *Id.*

ingredient label disclosed PHO, which is the same basis on which other courts have dismissed similar claims. (Doc. No. 275 at 28.) In opposition, Plaintiff argues the presence of PHO rendered the breadcrumbs unfit for consumption. (Doc. No. 287 at 28.) In support of this argument, Plaintiff cites (1) a 2005 study by the U.S. Institute of Medicine, (2) Dr. Wong's testimony, and (3) the FDA's June 17, 2015 determination regarding PHOs. (*Id.*)

Here, Kroger is correct that at least two district courts have dismissed implied warranty claims under similar circumstances. *See Walker v. B&G Foods, Inc.*, No. 15-CV-03772-JST, 2019 WL 3934941, at *3 (N.D. Cal. Aug. 20, 2019); *Biscomerica*, 2017 WL 1133406, at *5. The courts found that the products at issue were not unfit for human consumption given that the FDA's June 17, 2015 determination that PHO would *not* be considered unsafe or adulterated under federal law until June 18, 2018. *Id.* However, as noted above with respect to Plaintiff's unfair use claim under the UCL, the degree of harm presented by PHO is a material and genuinely disputed fact. Also, the FDA did not decide as a matter of law that the presence of PHO in breadcrumbs renders them unfit for their ordinary purpose, or does so as it relates to the implied warranty of merchantability. Reasonable jurors could disagree about the ordinary purpose of Kroger breadcrumbs, or even the purpose of the consumption of food in general. Accordingly, despite the FDA's regulations, a trier of fact could find the presence of PHO rendered the breadcrumbs unfit for human consumption. Kroger cites no controlling authority suggesting otherwise.

Kroger's other arguments are unavailing. As discussed above, listing PHO as an ingredient does not necessarily prove that Plaintiff, or any buyer, ought to have known that PHO contains trans fat, or the degree to which the amount of PHO in the breadcrumbs was unhealthy. Also, Kroger does not dispute that Plaintiff provided notice of the alleged defect in the breadcrumbs within a reasonable time after discovering it, and Kroger cites no authority supporting its suggestion that Plaintiff was required to specifically mention a breach of warranty in order to give sufficient notice. Finally, although Kroger moves for summary judgment on both Plaintiff's implied and express warranty claims, Kroger provides no argument as to why Plaintiff's express warranty claim fails. Accordingly,

Kroger's motion for summary judgment on Plaintiff's implied and express warranty claims (Counts III and IV) is **DENIED**.

### D.    Reliance/Causation

Kroger argues it is entitled to summary judgment because Plaintiff admits she did not rely on the "0g Trans Fat" label, and therefore, the label did not cause her to buy the breadcrumbs or otherwise factor into her decision to purchase them.  (Doc. No. 275 at 29-31.)  Specifically, Kroger argues that Plaintiff admits (1) she did not "behave differently" after the "0 Trans Fat" label appeared, and (2) the label "simply did not matter."  (Doc. No. 275 at 29-30.)  Kroger argues a lack of reliance demonstrates a lack of statutory standing to bring any of her claims.[12]  (*Id.* at 28.)

This is virtually the same argument Kroger made in opposition to class certification.  (*See* Doc. No. 227 at 8.)  In previously rejecting it, the court agreed that Plaintiff is susceptible to the defense that she did not rely on the "0g Trans Fat" label in her decision to purchase, or to continue purchasing, Kroger breadcrumbs after 2008 when the "0g Trans Fat" label first appeared.  (Doc. No. 263 at 21.)  The court disagreed, however, with Kroger's contention that Plaintiff admitted she did not rely on the "0g Trans Fat" label.  (*Id.*)  The court stated, "[t]o the contrary, Plaintiff clearly and repeatedly states, under oath, that she relied on the '0g Trans Fat' label on Kroger's breadcrumbs in her decision to purchase them."  (*Id.*)

Kroger makes no attempt to distinguish the argument it is making now from the argument it previously made, and Kroger does not address the court's rejection of that argument.  Accordingly, as the court previously found, "[a]lthough Plaintiff's testimony regarding her reliance on the '0g Trans Fat' label may not be entirely consistent, she did *not* admit that she did *not* rely on the '0g Trans Fat' label."  (*Id.* at 22.)  For example,

---

[12] *See Guttmann v. La Tapatia Tortilleria, Inc.*, Case No. 15-cv-02042-SI, 2015 WL 7283024, at *4 n.2 (N.D. Cal. Nov. 18, 2015) ("Causes of action for breach of express warranty and breach of implied warranty of merchantability do not appear to require proof of reliance as a separate element.")

16

1    Plaintiff testified during her deposition that she stopped purchasing Kroger breadcrumbs
2    "as soon as [she] found that the zero trans fat statement wasn't accurate." (Doc. No. 104-
3    1 at 41:3-6.) To the extent Plaintiff made admissions and gave inconsistent testimony,
4    these weaknesses are not so great as to justify finding that no genuine dispute of material
5    fact exists as to reliance or causation, which Kroger claims are essential elements to all of
6    Plaintiff's claims.[13] Whether Plaintiff admitted she did not rely on the "0g Trans Fat" label,
7    and the impact of such a finding on her credibility and the elements of her claims, are issues
8    more appropriately resolved at trial.

9         Kroger further argues that under "long settled" law, "evidence that the plaintiff made
10   the same purchasing decision irrespective of the challenged representation defeats a
11   showing of injury." (Doc. No. 275 at 31.) The cases cited by Kroger to support this
12   argument, however, are not controlling or persuasive. In *Clark v. Hershey Co.*, No. 18-cv-
13   06113 WHA, 2019 WL 6050763, at *2 (N.D. Cal. Nov. 15, 2019), the court granted
14   summary judgment for Hershey in a case alleging that chocolate candies were misleadingly
15   labeled as containing "no artificial flavors" when in fact they contained artificial malic
16   acid. The court found the named plaintiffs' injuries were not caused by the "no artificial
17   flavors" label because (1) the plaintiffs admitted they interpreted the label to mean no
18   artificial *ingredients*, and (2) the plaintiffs claimed to have relied on the label before it even
19   appeared on the packaging. *Id.* at *2. Here, Plaintiff does not admit she misunderstood
20   the meaning of "0g Trans Fat," and Plaintiff does not claim to have relied on the label
21   before it appeared.

22        Additionally, in *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 793 (9th Cir.
23   2012), the court upheld the dismissal of the plaintiffs' UCL claims because the plaintiffs
24   did not allege they purchased cigarettes based on the fraudulent statement they could still
25   redeem their rewards points. Here, Plaintiff testified, though perhaps inconsistently, that

26
27
28   [13] As noted above, Plaintiff argues that reliance is not an element of Plaintiff's claims under
     the UCL's unlawful prong. (Doc. No. 287 at 13.)

1    she relied on the "0g Trans Fat" label in her decision to purchase the breadcrumbs.

2    Therefore, neither *Clark* nor *Sateriale* suggests, as Kroger does, that Plaintiff's admitted

3    decision to purchase the breadcrumbs before and after the "0g Trans Fat" label appeared

4    warrants a finding, as a matter of law, that the label played no part in her decision to

5    purchase the breadcrumbs.[14]   For the above reasons, Kroger's motion for summary

6    judgment based on lack of reliance or causation is **DENIED**.

7                        **E.    Statutes of Limitations**

8            Plaintiff claims to have first discovered that the breadcrumbs contained trans fat in

9    August 2015.  (Compl. ¶¶ 74, 111; *see also* Doc. No. 263 at 26 (discussing the discovery).)

10   She filed the instant suit in October of 2015.  Kroger nonetheless argues the three and four

11   year statute of limitations periods[15] expired because Plaintiff admits that in or around 2005,

12   and not later than 2009, she: (1) learned from her doctor and television commercials about

13   "red flags" from PHO and trans fat; (2) was specifically informed that PHO contained trans

14   fat; and (3) was warned to look at the nutrition label and ingredients.  (Doc. No. 275 at 32.)

15           Again, this argument is virtually identical to the previously rejected argument

16   Kroger made in opposition to class certification.  (Doc. No. 263 at 26-31.)  This court

17   agreed that "Plaintiff made some statements regarding the degree to which she knew or

18   should have known that, if she wanted to avoid trans fat, she should have read the

19   ingredients of processed foods to see if they contained PHO."  (*Id.* at 31.)  The court

20   disagreed, however, that Plaintiff admitted "she knew or should have known beginning in

---

23   [14] In *Clark*, the district court noted the plaintiffs cited multiple decisions in which courts

24   found that reliance could have still occurred even though the plaintiff purchased the product

     before and after the alleged mislabeling occurred.  *See* 2019 WL 6050763, at *3 (citing

25   *Lanovaz v. Twinings N. Am., Inc.*, No. C-12-02646-RMW, 2014 WL 46822 (N.D. Cal. Jan.

26   6, 2014)).

27   [15] The parties do not dispute, and this court previously found, the statute of limitations

28   period is three years for Plaintiff's FAL and CLRA claims, and four years for her UCL and

     breach of warranty claims.  (*See* Doc. No. 263 at 26 n.17.)

15cv2320 JM (AHG)

2005 that, despite the breadcrumbs' '0g Trans Fat' label, the breadcrumbs contained trans fat because the ingredients listed PHO."[16]   (*Id.*)   Again, Kroger makes no attempt to distinguish the argument it is making now from the argument it previously made, and Kroger does not address the court's reasons for rejecting that argument.[17]

Moreover, as discussed above, courts have repeatedly found that reasonable consumers do not have a duty to look beyond the front of the box.  *See Williams*, 552 F.3d at 939; *Andriesian v. Cosmetic Derm., Inc.*, No. 3:14-cv-01600-ST, 2015 WL 1638729, at *5 (D. Or. Mar. 3, 2015) ("Following *Williams*, numerous district courts in the Ninth Circuit have rejected similar arguments that a consumer who cares about the ingredients must read the ingredient list.").  Courts have also repeatedly found that reasonable consumers do not necessarily understand that PHO contains trans fat.  *See Reid*, 780 F.3d at 959; *Beasley*, 2020 WL 3128873, at *3.  Accordingly, courts have repeatedly rejected the same argument Kroger makes here.  *See*, *e.g.*, *Silva*, 2020 WL 6051605, at *1 (claims not time-barred because "[i]t is not dispositive that PHO was listed as an ingredient on the product packaging").  For the above reasons, Kroger's motion for summary judgment based on a statute of limitations defense is **DENIED**.

### F.   Affirmative Defenses

Plaintiff also moves for summary judgment on some of Kroger's affirmative defenses.  (Doc. No. 286 at 20-31.)

#### 1.   Statutory Standing

Plaintiff argues that lack of standing is not an affirmative defense and that Plaintiff bears the burden of proving standing.  (*Id*. at 21-22.)   Kroger, however, describes its

---

[16] The court also noted that Kroger appeared to have failed to develop Plaintiff's testimony on this issue.  (Doc. No. 263 at 26.)

[17] Kroger also does not meaningfully address Plaintiff's argument that Kroger's statute of limitations argument has no bearing on her unlawful UCL claims because Plaintiff's knowledge that PHO contains trans fat would not put her on inquiry notice that Kroger violated FDA regulations concerning adulterated foods and trans fat.  (Doc. No. 287 at 17.)

reliance argument as one of statutory standing. (Doc. No. 295 at 31.) As discussed above, at least one genuine dispute of material fact exists as to reliance and causation, which Kroger claims are essential elements to all of Plaintiff's claims. Accordingly, Plaintiff's motion for summary judgment as to Kroger's statutory standing defense is **DENIED**.

### 2. Failure to State a Claim, Primary Jurisdiction, Economic Loss Doctrine, and Third Party Liability

Kroger does not dispute that failure to state a claim, the economic loss doctrine, and third party liability are not affirmative defenses. Kroger also does not dispute that its primary jurisdiction defense has already been struck. Accordingly, Plaintiff's motion for summary judgment as to these defenses is **GRANTED**.

### 3. Preemption

Plaintiff argues that Kroger's preemption defense fails as a matter of law because it has already been rejected by this court and the Ninth Circuit. (Doc. No. 286 at 22.) Kroger does not dispute that preemption fails as an affirmative defense as to Plaintiff's labeling claims, but argues it survives as to Plaintiff's use claims. (Doc. No. 295 at 31.) Accordingly, Plaintiff's motion for summary judgment on Kroger's preemption defense is **GRANTED** as to Plaintiff's labeling claims, and is **DENIED AS MOOT** as to Plaintiff's use claim under the unlawful prong of the UCL because, as discussed above, that claim is dismissed. To the extent that a preemption defense is still available to Kroger with respect to Plaintiff's use claim under the unfair prong of the UCL, Plaintiff's motion for summary judgment is **DENIED**.

### 4. Puffery

Plaintiff argues that Kroger's puffery defense fails because (1) "0g Trans Fat" is a specific statement of fact, not a generalized statement, and (2) the Ninth Circuit has already held that "0g Trans Fat" is false and misleading. (Doc. No. 286 at 23.) Kroger does not dispute that puffery must be generalized or vague. (Doc. No. 295 at 32.) The court agrees the "0g Trans Fat" label is too specific to be puffery. *See Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997) ("50% Less Mowing" is not puffery).

Accordingly, Plaintiff's motion for summary judgment as to Kroger's puffery defense is **GRANTED**.

### 5.    Latches

Plaintiff argues that latches fails as an affirmative defense because Kroger presents no evidence that Plaintiff unreasonably delayed bringing suit, and there is no evidence Kroger was prejudiced by the loss of evidence. (Doc. No. 286 at 26.)  As discussed above, a genuine dispute of fact exists as to when Plaintiff knew or should have known of the basis for her claim.   Kroger also cites Plaintiff's lack of memory as lost evidence that prejudiced Kroger. (Doc. No. 295 at 33.)  Accordingly, Plaintiff's motion for summary judgment as to the affirmative defense of latches is **DENIED**.

### 6.    Unclean Hands, Waiver, Consent, Release, and Estoppel

Finally, Plaintiff argues that Kroger fails to show: (1) unclean hands, because there is no evidence Plaintiff engaged in misconduct; (2) waiver, because there is no evidence she intentionally relinquished her right; (3) consent, because there is no evidence she agreed to Kroger's conduct; (4) release, because there is no evidence of mutual intent; and (5) estoppel, because there is no evidence of Kroger's detrimental reliance. (Doc. No. 286 at 28-31.)  Kroger argues each of these defenses survives because it offered evidence that Plaintiff knew or should have known the breadcrumbs contained trans fat while she was buying them, and that Plaintiff has brought other similar lawsuits. (Doc. No. 295 at 33.)  Although some, if not all, of these defenses may be thin, there is a genuine dispute of fact as to when Plaintiff knew or should have known of the basis for her claims.  Additionally, notwithstanding the benefit of fact development though discovery, Kroger should not be denied the opportunity to assert these defenses before being given the opportunity to develop the trial record.  Accordingly, Plaintiff's motion for summary judgment as to the defenses of unclean hands, waiver, consent, release, and estoppel is **DENIED**.  Plaintiff is invited, however, to move for judgment as a matter of law at the close of evidence as to these and any other remaining defenses.

15cv2320 JM (AHG)

## IV.  CONCLUSION

For the forgoing reasons, the parties' cross motions for summary judgment (Doc. Nos. 275, 277, 286) are **DENIED IN PART** and **GRANTED IN PART**.  Kroger's motion as to Plaintiff's use claim under the unfair prong of the UCL (Count I) is **DENIED**.  Kroger's motion as to Plaintiff's use claim under the unlawful prong of the UCL (Count II) is **GRANTED**.  Plaintiff's motion as to her use claim under the unlawful prong of the UCL (Count II) is **DENIED**.  Kroger's motion as to Plaintiff's labeling claims under the UCL, FAL, and CLRA (Counts IV-VIII) is **DENIED**.  Kroger's motion as to Plaintiff's implied and express warranty claims (Counts III and IX) is **DENIED**.  Kroger's motion as to reliance/causation and the statute of limitation is also **DENIED**.  Plaintiff's motion for summary judgement as to Kroger's affirmative defenses is **DENIED IN PART** and **GRANTED IN PART** as consistent with the above discussion.[18]

IT IS SO ORDERED.

DATED: January 11, 2021

JEFFREY T. MILLER
United States District Judge

---

[18] Kroger's previously filed motion for summary judgment (Doc. Nos. 183-84) is DENIED AS MOOT.

15cv2320 JM (AHG)