UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAVONDA HAWKINS, on behalf of herself and all others similarly situated,<br><br>         Plaintiff,<br><br>v.<br><br>THE KROGER COMPANY,<br><br>         Defendant. | Case No.: 15cv2320 JM (AHG)<br><br>**ORDER ON PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

Presently before the court is Plaintiff Shavonda Hawkins' Unopposed Motion for Preliminary Approval of Class Action Settlement. ("Mot.," Doc. No. 343). A hearing on the motion was held on June 21, 2021. (Doc. No. 345). For the reasons set forth on the record and as explained in more detail below, Plaintiff's Motion is **GRANTED.**

**I. BACKGROUND**

Plaintiff purchased Kroger breadcrumbs in San Diego about six times per year from 2000 to July of 2015. (Compl. ¶¶ 16, 71-72). Beginning in 2008, the front label of the breadcrumbs read "0g Trans Fat." (Doc. No. 275-1 at 56-57). On the back of the

1

breadcrumbs, the nutrition fact label read "Trans Fat 0g" and included partially hydrogenated vegetable oil ("PHO") as an ingredient. (*See* Doc. No. 275-1 at 281-87).[1] Because the breadcrumbs contained PHO, they contained "trace amounts" of trans fat. (Doc. No. 275 at 12).

On October 15, 2015, Plaintiff filed a putative class action alleging violations of California's False Advertising Law ("the FAL"), CAL. BUS. & PROF. CODE §§ 17500 *et. seq.*, Unfair Competition Law ("the UCL"), *id.* § 17200 *et. seq.*, and Consumers Legal Remedies Act ("the CLRA"), Cal. Civ. Code. §§ 1750 *et seq.* Plaintiff also brought claims for breach of the implied warranty of merchantability and breach of express warranty. (Compl. ¶¶ 122-187).

On March 17, 2016, the court granted Kroger's first motion to dismiss. (Doc. No. 19). On November 16, 2018, the Ninth Circuit reversed and remanded the case. (Doc. No. 27). On February 8, 2019, Kroger filed a second motion to dismiss (Doc. No. 34) which the court denied (Doc. No. 40).

On January 21, 2020, Plaintiff filed a motion for class certification. (Doc. No. 89). On November 9, 2020, the court certified the following class:

> All citizens of California who purchased, between January 1, 2010 and December 31, 2015, Kroger Bread Crumb containing partially hydrogenated oil and the front label claim "0g Trans Fat."

(Doc. No. 263 at 38). On December 29, 2020, the court denied Kroger's motion to reconsider the court's class certification order. (Doc. No. 323). On January 13, 2021, Kroger filed a petition for permission to appeal the court's class certification order to the Ninth Circuit (Doc. No. 334) which was denied (Doc. No. 338).

---

[1] All citations to page numbers are to the page numbers assigned by the court's CM/ECF system.

On November 20, 2020, the Parties filed cross-motions for summary judgment. (Doc. Nos. 275, 277). On January 11, 2021, the court issued an order granting-in-part and denying-in-part the Parties' motions. (Doc. No. 332). Specifically, the court: (1) granted Kroger's motion as to Plaintiff's use claim under the unlawful prong of the UCL; (2) denied Kroger's motion as to Plaintiff's use claim under the unfair prong of the UCL; (3) denied Kroger's motions as to Plaintiff's labeling claims; and (4) denied Kroger's motion as to Plaintiff's express and implied warranty claims. (Doc. No. 332 at 22).

On February 12, 2021, the Parties attended a Mandatory Settlement Conference before Magistrate Judge Allison H. Goddard. (Doc. No. 336). Following the conference, Judge Goddard issued a Mediator's Proposal, which the Parties accepted on February 26, 2021. (Doc No. 337 at 1).

On April 20, 2021, Plaintiff filed the instant motion for preliminary approval of the class settlement. (Doc. No. 343).

## II. SETTLEMENT AGREEMENT TERMS

The Parties have submitted a proposed Class Action Settlement Agreement with approximately sixteen pages of substantive terms (Decl. of Gregory S. Weston, Ex. 1, hereinafter "Settlement Agreement" or "Agreement") and proposed short-form and long-form Class Notices (Decl. of Gregory S. Weston, Exs. 2 and 3).

The Settlement Agreement requires Kroger to fund a $780,000 cash settlement fund. (Agreement, § 4.) $79,635 of this fund will be allocated to notice and administrative expenses, consisting of: (1) $49,635 to be paid to the Class Action Administrator after preliminary approval to cover expenses associated with the class notice and claims processing and (2) $30,000 to be paid after final approval for costs associated with postage and check printing. *Id.*, § 7.A.

The Agreement estimates class members will be entitled to a recovery of: (1) $17.50 for undocumented claims; or (2) up to $100 for claims documented by receipts. *Id.*, § 4. Each class member's share shall be increased or reduced on a *pro rata*

3

basis based on whether the combined monetary value of valid claims exceeds the settlement fund after administrative expenses are deducted. *Id.* Although not made explicitly clear in the Agreement, based on the Parties' representations, none of the settlement fund will revert to Kroger; instead, any funds remaining after distribution are to be paid by the Class Action Administrator in a *cy pres* payment to the American Heart Association. *Id.* Within ninety days from final approval, Kroger is required to make a separate one-time *cy pres* payment to the American Heart Association in the amount of $21,000. *Id.*, § 5.

In exchange for their *pro rata* share, all class members are deemed to release Kroger from any claims relating to the "manufacturing, formulation, preparation, handling, distribution, advertising, marketing, packaging, sale, labeling, promotion, and ingredients of Kroger Bread Crumbs[.]" *Id.*, § 8. The release does not extend to personal injury claims "resulting from a defect in Kroger Bread Crumbs or packaging[.]" *Id.*, § 8.C.

Additionally, the Agreement permits the named Plaintiff to move the court for an incentive award of up to $7,000 and for Class Counsel to move for up to $400,000 in fees and costs. *Id.*, § 10. Kroger agrees not to oppose this application or take any steps to encourage objectors provided these limits are not exceeded. *Id.* The settlement is structured such that attorneys' fees and the class award will be paid separate from the common fund. *Id.*

### III. RULE 23 SETTLEMENT CLASS CERTIFICATION

Before granting preliminary approval of a class action settlement, the court must first determine whether the proposed class can be certified. *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997) (district court must apply "undiluted, even heightened, attention [to class certification] in the settlement context" to protect absentees). In the present case, the court has already certified a class under Rule 23(b)(3). (*See* Order on Motion for Class Certification, Doc. No. 263 at 38 (certifying class of "[a]ll citizens in California who purchased, between January 1, 2010 and December 31, 2015, Kroger

4

Bread Crumb containing partially hydrogenated oil and the front label claim '0g Trans Fat.'")).

The proposed settlement class differs slightly from the previously certified class in that the settlement class now excludes: "(a) persons or entities who purchased Kroger Bread Crumbs for the purpose of resale or distribution; (b) persons who timely and properly exclude themselves from the Class, as provided in the Settlement Agreement; (c) Kroger and any of its officers, directors, agents, representatives, employees, or other persons associated with Kroger, and (d) any judicial officer hearing this Litigation." (Mot. at 9.)

The Parties do not point to anything that would call the court's prior certification order into question and the court determines these changes do not alter the reasoning underlying its earlier decision. *See Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-CV-2335-GPC-MDD, 2020 WL 520616, at *8-9 (S.D. Cal. Jan. 31, 2020) (preliminarily certifying class with exclusions for residents purchasing products for the purpose of resale, judicial officers, defendant, and persons executing and timely filing a request for exclusion). The court, therefore, renews its class certification finding here.

## IV. RULE 23 PRELIMINARY FAIRNESS DETERMINATION

The court must next make a preliminary determination as to whether the proposed settlement is "fair, reasonable, and adequate" pursuant to Federal Rule of Civil Procedure 23(e)(2). "At the preliminary approval stage, the Court may grant preliminary approval of a settlement if the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval." *Sciortino v. PepsiCo, Inc.*, Case No. 14-cv-00478-EMC, 2016 WL 3519179, at *4 (N.D. Cal. June 38, 2016).

In making this determination, the court is required to "evaluate the fairness of a settlement as a whole, rather than assessing its individual components." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818-19 (9th Cir. 2012). Because a "settlement is the

5

offspring of compromise, the question . . . is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). In assessing a settlement proposal, the district court is required to balance a number of factors, including:

> [T]he strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of governmental participant; and the reaction of the class members to the proposed settlement.

*Id.* at 1026.

"At the preliminary approval stage, a full fairness analysis is unnecessary[.]" *Zepeda v. Paypal, Inc.*, No. C 10-1668 SBA, 2014 WL 718509, at *4 (N.D. Cal. Feb. 24, 2014) (internal quotation marks and citation omitted). "Closer scrutiny is reserved for the final approval hearing." *Sicortino*, 2016 WL 3519179, at *4. The court's primary concern "is the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." *Officers for Justice v. Civil Serv. Com.*, 688 F.2d 615, 624 (9th Cir. 1982) (citations omitted). "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).

Class Counsel argues the proposed settlement provides a fair and substantial value to individual class members "without the risks, costs and delays inherent in continued litigation[.]" (Mot. at 16). Specifically, Class Counsel states the $17.50 estimated recovery for undocumented claims and $100 for documented claims "compares favorably" to the $2-$3 purchase price of Kroger Bread Crumbs. *Id.* at 15. Class

Counsel further contends the settlement's $780,000 aggregate value[2] "compares favorably" to the total California sales of Kroger Bread Crumbs during the class period, which were about $2 million. *Id.*

In this case, to succeed on the merits, Plaintiff must prove that: (1) Kroger's use of PHO in its breadcrumbs was unfair under the UCL; (2) Kroger's product labeling violates the UCL, FAL, and CLRA; and (3) Kroger breached implied and express warranties. (*See* Doc. No. 332 at 22). Kroger denies all of Plaintiff's allegations and asserts several defenses to liability, suggesting vigorous and costly litigation if the action proceeds to trial. (Agreement, § 2; Doc. No. 332 at 19-21). Class Counsel acknowledges numerous obstacles that could substantially reduce or bar recovery for class members, including the challenges of trial and the risks of further appeals. (Mot. at 16). The Parties elected to resolve this case only after multiple settlement conferences overseen by Magistrate Judge Goddard attended by experienced counsel, and the settlement resulted from the Parties' acceptance of Judge Goddard's Mediator's Proposal. (*See* Mot. at 14; Doc. Nos. 114, 336, 337).

Based on the above, and the court's experience with consumer class actions, the court preliminarily finds the settlement to be a fair outcome. Despite this, the court does have concerns regarding the lack of information provided to date on the method used to arrive at each class member's estimated recovery. In the court's view, a realistic possibility exists for a significant *pro rata* increase or decrease to each class member's payment if the total number of submitted claims greatly exceeds (or is far less) than the expected number of claims. The court will reserve judgment on this issue until the final approval hearing.

The court also preliminarily approves the attorneys' fee provision entitling Class Counsel to request fees and costs up to $400,000. Class Counsel has conducted extensive

---

[2] The court notes the amount to be distributed to class members after administrative fees are deducted is actually $700,365.

litigation for over five years in this matter, including numerous motions briefed, contentious discovery, multiple settlement conferences, and two trips to the Ninth Circuit. *See* Docket. Class Counsel states the $400,000 figure is 40% less than their actual lodestar to date and that the firm will incur additional costs to finalize the case. (Decl. of Gregory S. Weston, ¶ 10). Given the above, the court preliminarily approves the attorneys' fee provision as providing a reasonable upper limit on the amount Class Counsel may request in fees and costs.

The court does, however, express concerns the attorneys' fee provision reflects the exact scenario of which *Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935, 942 (9th Cir. 2011) warns: "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries 'the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class[.]'" In this case, the maximum attorneys' fee award far exceeds the typical 25-percent benchmark, Kroger has agreed not to object, and Kroger will retain the difference if the court ultimately declines to award Class Counsel the maximum amount of fees and costs requested. *Bluetooth*, 654 F.3d at 942, 947. The court therefore cautions Class Counsel to submit detailed information to support Plaintiff's anticipated Motion for Attorneys' Fees, including comprehensive billing records and an explanation of counsel's hourly rate.

## IV. PROPOSED SETTLEMENT NOTICE

Pursuant to Federal Rule of Civil Procedure 23(c)(2)(B), "[f]or any class certified under Rule 23(b)(3) . . . the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."

Where there is a class settlement, Federal Rule of Procedure 23(e)(1) requires the court to "direct notice in a reasonable manner to all class members who would be bound by the proposal[.]" "Notice is satisfactory if it 'generally describes the terms of the

8

settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009) (quoting *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004)); *see also Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 120 (8th Cir. 1975) ("[T]he mechanics of the notice process are left to the discretion of the court subject only to the broad 'reasonableness' standards imposed by due process.").

The court preliminarily approves the Parties' proposed short-form and long-form Notices. *See* Fed. R. Civ. P. 23(c)(1)(B). The court does, however, find fault with the Parties' proposed Notice Plan. Here, the Parties have agreed to notify potential class members through: (1) a class settlement website; (2) Facebook ads limited to adult California users, partially targeting women over the age of 25, that will be published 8,750,000 times; (3) a press release through PR Newswire; (4) settlement details forwarded to class action advocacy websites (e.g., TopClassActions.com and ClassActionRebates.com); and (5) publication in a newspaper of general circulation in San Diego County for four consecutive weeks. (Mot. at 10-11; Agreement, Ex. B at ¶¶ 3-11).

Class Counsel states the "primary method" of notification will be through Facebook. (Mot. at 11.) Despite the reliance on Facebook though, the Parties have not provided any evidence potential class members: (1) use Facebook; and (2) are likely to be women over the age of 25. *See Hilsley v. Ocean Spray Cranberries, Inc.*, No. 17CV2335-GPC(MDD), 2019 WL 718807, at *3 (S.D. Cal. Feb. 5, 2019) ("[p]roposing class notice via social media, by itself and without justification, does not satisfy Rule 23."); *Jermyn v. Best Buy Stores, L.P.*, No. 08 CIV. 00214 CM, 2010 WL 5187746, at *6 (S.D.N.Y. Dec. 6, 2010) (no way to ensure class notice via Twitter would "result in notice to even a single class member, let alone a substantial number of class members."). The court is not prepared to approve the Parties' Notice Plan at this time without an adequate explanation of the Parties' reasoning for using Facebook and targeting ads to women over the age of 25. *See Hilsley*, 2019 WL 718807, at *3 ("Class notice via social

media may satisfy Rule 23 as long as it is targeted and the proponent provides details on the 'proposed use and reasoning behind use of a particular social media method as part of a notice plan.'") (citing 1 McLaughlin on Class Actions § 5:81)). Likewise, the court is not convinced publication in a single local newspaper would be sufficient to reach a statewide class. *See Allen v. Similasan Corp.*, 318 F.R.D. 423, 428 (S.D. Cal. 2016) ("Obviously, notice in the *San Diego Union-Tribune* is unlikely to reach the vast majority of class members, since this newspaper is by and large a local newspaper only likely to reach residents of San Diego.").

For these reasons, the court **CONDITIONS** its approval of Plaintiff's Motion on the Parties submitting, and the court's approval, of a Revised Notice Plan addressing the above concerns. The Revised Notice Plan should be submitted on or before **July 21, 2021**. The Parties are additionally **ORDERED** to meet and confer and devise appropriate means of distributing class notice through the websites and customer contact information Kroger maintains in connection with its various applicable customer loyalty programs (*e.g.*, Kroger Plus, the Ralph's Club Card, and the Food 4 Less Rewards Program) to maximize outreach to potential class members. Details regarding this means of class notice must be included in the Revised Notice Plan for the court's approval.

## V. CONCLUSION AND ORDER

In light of the foregoing, the court **CONDITONALLY GRANTS** Plaintiff's Preliminary Approval Motion (ECF No. 343) and **HEREBY ORDERS:**

1. **PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT AGREEMENT:** The Settlement Agreement is **PRELIMINARILY APPROVED** as fair, reasonable, and adequate pursuant to Federal Rule of Civil Procedure 23(e), subject to the following revisions:

    a. Paragraph 2, Section 4 of the Agreement shall be amended as follows: "If valid claims exceed the total amount to be paid from the $780,000 settlement fund less the settlement administrative expenses, the payments will be reduced on a pro rata basis. If valid claims are below the total amount of the

fund, the payments will be increased pro-rata such that the fund is exhausted. Any funds remaining after the distribution, such as checks that are returned for incorrect addresses, or that are not cashed within 90 days, will not revert to Kroger, but shall be paid by the Class Administrator as a *cy pres* payment to the American Heart Association, 9404 Genesee Ave., #240, San Diego, CA 92037."

2. **CLASS CERTIFICATION:** The court preliminarily certifies the following Settlement Class: "[a]ll citizens of California who purchased, between January 1, 2010 and December 31, 2015, Kroger Bread Crumbs containing partially hydrogenated oil and the front label claim "0g Trans Fat." Excluded from this Settlement Class are: "(a) persons or entities who purchased Kroger Bread Crumbs for the purpose of resale or distribution; (b) persons who timely and properly exclude themselves from the class, as provided in the Settlement Agreement; (c) Kroger and any of its officers, directors, agents, representatives, employees, or other persons associated with Kroger, and (d) any judicial officer hearing this Litigation."

3. **CLASS REPRESENTATIVES APPOINTMENT:** The court preliminary confirms its appointment of Plaintiff Shavonda Hawkins as the class representative.

4. **CLASS COUNSEL APPOINTMENT:** The court preliminary confirms its appointment of The Weston Firm as Class Counsel.

5. **CLASS ADMINISTRATOR:** The court appoints Classaura LLC as the Settlement Administrator. The Settlement Administrator shall supervise and carry out the settlement administration procedures set forth in the Agreement, including but not limited to, distributing and providing the class notice, processing and approving claims, and preparing and issuing disbursements.

6. **CLASS ACTION FAIRNESS ACT:** In compliance with the Class Action Fairness Act, 28 U.S.C. § 1715, and as set forth in the Agreement, Defendant, itself or through its designee, is ordered to serve written notice of the proposed settlement on the

U.S. Attorney General and the appropriate California state official, unless such notice has already been served.

7. **CLASS NOTICE:** The proposed Class Notices filed with the court (Doc. No. 343-2 at 33, 38-46) is preliminarily approved. The Parties shall submit a Revised Notice Plan meeting the requirements of this Order on or before **July 21, 2021**. The court **CONDITIONS** the preliminary approval of the proposed settlement on its approval of the Parties' Revised Notice Plan.

8. **MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE SERVICE AWARD:** No later than **August 2, 2021**, Class Counsel shall file an application for attorneys' fees, costs, and the class representative service award. Class Counsel shall provide documentation detailing the number of hours incurred by attorneys in litigating this action, supported by detailed time records, as well as hourly compensation to which those attorneys are reasonably entitled.

9. **PROOF OF CLAIMS:** Members of the Settlement Claim who wish to participate in the settlement shall complete and submit a valid claim form by **September 20, 2021**.

10. **REQUEST FOR EXCLUSION:** Members of the Settlement Class who elect not to participate in the settlement (i.e., "opt-out") must submit a written Request for Exclusion to the Class Administrator that is postmarked no later than **September 20, 2021.**

11. **OBJECTIONS:** Each Settlement Class Member who wishes to object to the settlement shall comply with the following procedures:

a. To object, a member of the Settlement Class, individually or through counsel, must file a written objection with the Court, with a copy delivered to Class Counsel and Defendant's Counsel at the addresses set forth below:

> Gregory S. Weston
> **THE WESTON FIRM**
> 1405 Morena Blvd., Suite 201
> San Diego, CA 92110

Email: *greg@westonfirm.com*

**Class Counsel**

Jacob M. Harper
**DAVIS WRIGHT TREMAINE, LLP**
865 South Figueroa St., Suite 2400
Los Angeles, CA 90017
Email: *jharper@dwt.com*

**Counsel for Defendant**

    b.    The written objection must state: (a) the name and number of the lawsuit (*Hawkins v. Kroger Co.*, No. 3:15-cv-2320-JM-AHG); (b) the objector's legal name, address, telephone number, and email address (and the objector's lawyer's name, business address, telephone number and email address if objecting through counsel); (c) a statement describing the objector's membership in the settlement class, including a verification under oath as to the time and place of the objector's purchase, and name of the retailer from whom he or she purchased Kroger Bread Crumbs; (d) a written statement of all grounds for the objection, accompanied by any legal support for such objection; (e) copies of any papers, briefs, or other documents upon which the objection is based; (f) a statement indicating whether the objector intends to appear at the fairness hearing, and if objecting through counsel, a statement providing the identity of all attorneys who will appear at the hearing on the objector's behalf; (g) a list of any other objections the objector and the objector's counsel have made in the prior two years; and (h) the objector's signature.

    c.    Any member of the class who files and serves a timely written objection in accordance with this order may also appear at the fairness hearing, either *pro se* or through an attorney hired at the objector's expense, to object to the fairness, reasonableness, or adequacy of the proposed settlement.

13

d.  Any such objections will be timely only if postmarked no later than **September 20, 2021**.

12. **MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT:** No later than **October 4, 2021**, the Parties shall file a Motion for Final Approval of Class Action Settlement, including any responses to any filed objections.

13. **FINAL APPROVAL HEARING:** The court will hold a Final Approval Hearing on **November 15, 2021** at **10:00 a.m.** in the Courtroom of Honorable Jeffrey T. Miller, United States District Court for the Southern District of California, Courtroom 5D (5th Floor — Schwartz), 221 West Broadway, San Diego, CA 92101, for the following purposes:

   a.  Finally determining the fairness, reasonableness, and adequacy of the proposed settlement;
   b.  Considering Class Counsel's application for an award of attorneys' fees and costs, as provided in the Agreement;
   c.  Considering the application of the named Plaintiff for a class representative incentive award as provided in the Agreement;
   d.  Considering whether the order granting final approval of the class action settlement and judgment, as provided under the Agreement, should be entered;
   e.  Ruling upon such other matters as the court may deem just and appropriate.

The Final Approval Hearing may be rescheduled or continued by the court without further notice to the settlement class members. Attendance at the Final Approval Hearing is not necessary. Settlement Class Members need not appear at the hearing or take any action to indicate their approval of the proposed class action Settlement.

14. **MODIFICATIONS:** The Parties may further modify the Agreement prior to the Final Approval Hearing so long as such modifications do not materially change the terms of the Settlement provided thereunder. The court may approve the Settlement

Agreement with such modifications as may be agreed to by the parties, if appropriate, without further notice to the Settlement Class.

15. **OTHER PROCEEDINGS AND CONTINUING JURISDICTION:** Pending the final determination of the fairness, reasonableness, and adequacy of the proposed settlement, no class representative shall prosecute, institute, commence, or continue any lawsuit (individual action or class action) with respect to any claims released against the Defendant.

If the Agreement is not finally approved for any reason, then this order shall be vacated, the Agreement shall have no force and effect, and the Parties' rights and defenses shall be restored, without prejudice, to their respective positions as if the Agreement had never been executed and this order never entered, subject to the court's discretion.

The court retains continuing and exclusive jurisdiction over the action to consider all further matters arising out of or connected with the settlement, including the administration and implementation of the Agreement.

**IT IS SO ORDERED.**

DATED: July 2, 2021

JEFFREY T. MILLER
United States District Judge