UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAVONDA HAWKINS, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE KROGER COMPANY,<br><br>Defendant. | Case No.:  15cv2320 JM (AHG)<br><br>**ORDER ON FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARD** |

Presently before the court is Plaintiff Shavonda Hawkins' Motion for Final Approval of Class Action Settlement (Doc. No. 350) and Motion for Attorneys' Fees, Costs, and Incentive Award (Doc. No. 349).  A hearing was held on January 31, 2022. (Doc. No. 355).  For the reasons set forth on the record and as explained in more detail below, Plaintiff's Motions are **GRANTED.**

## I.    BACKGROUND

This action arises from the labeling of Kroger breadcrumbs.  Plaintiff purchased Kroger breadcrumbs in San Diego about six times per year from 2000 to July of 2015. (Compl. ¶¶ 16, 71-72).  Beginning in 2008, the front label of the breadcrumbs read "0g Trans Fat."  (Doc. No. 275-1 at 56-57).  On the back of the breadcrumbs, the nutrition

1

fact label read "Trans Fat 0g" and included partially hydrogenated vegetable oil ("PHO") as an ingredient.  (*See* Doc. No. 275-1 at 281-87).  Because the breadcrumbs contained PHO, they contained "trace amounts" of trans fat.  (Doc. No. 275 at 12).

On October 15, 2015, Plaintiff filed a putative class action alleging violations of California's False Advertising Law ("the FAL"), Cal. Bus. & Prof. Code § 17500 *et. seq.*, Unfair Competition Law ("the UCL"), *id.* § 17200 *et. seq.*, and Consumers Legal Remedies Act ("the CLRA"), Cal. Civ. Code. §§ 1750 *et seq.*  Plaintiff also brought claims for breach of the implied warranty of merchantability and breach of express warranty.  (Compl. ¶¶ 122-187).

On March 17, 2016, the court granted Kroger's first motion to dismiss.  (Doc. No. 19).  On November 16, 2018, the Ninth Circuit reversed and remanded the case.  (Doc. No. 27).  On February 8, 2019, Kroger filed a second motion to dismiss (Doc. No. 34) which the court denied (Doc. No. 40).

On January 21, 2020, Plaintiff filed a motion for class certification.  (Doc. No. 89).  On November 9, 2020, the court certified the following class:

> All citizens of California who purchased, between January 1, 2010 and December 31, 2015, Kroger Bread Crumb[s] containing partially hydrogenated oil and the front label claim "0g Trans Fat."

(Doc. No. 263 at 38).  On December 29, 2020, the court denied Kroger's motion to reconsider the court's class certification order.  (Doc. No. 323).  On January 13, 2021, Kroger filed a petition for permission to appeal the court's class certification order to the Ninth Circuit (Doc. No. 334) which was denied (Doc. No. 338).

On November 20, 2020, the Parties filed cross-motions for summary judgment.  (Doc. Nos. 275, 277).  On January 11, 2021, the court issued an order granting-in-part and denying-in-part the Parties' motions.  (Doc. No. 332).  Specifically, the court: (1) granted Kroger's motion as to Plaintiff's use claim under the unlawful prong of the UCL; (2) denied Kroger's motion as to Plaintiff's use claim under the unfair prong of the

UCL; (3) denied Kroger's motions as to Plaintiff's labeling claims; and (4) denied Kroger's motion as to Plaintiff's express and implied warranty claims.  (Doc. No. 332 at 22).

On February 12, 2021, the Parties attended a Mandatory Settlement Conference before Magistrate Judge Allison H. Goddard.  (Doc. No. 336).  Following the conference, Judge Goddard issued a Mediator's Proposal, which the Parties accepted on February 26, 2021.  (Doc No. 337 at 1).

On April 20, 2021, Plaintiff filed a motion for preliminary approval of the class settlement.  (Doc. No. 343).  The court held a hearing on Plaintiff's preliminary approval motion on June 21, 2021.  (Doc. No. 345).  On July 2, 2021, the court granted Plaintiff's preliminary approval motion.  (Doc. No. 346).  The court conditioned its approval, however, on the Parties submitting a Revised Notice Plan to address concerns the court had with the Parties' plan of using Facebook advertisements targeting women over the age of 25 as the "primary method" of class notification.  *Id.* at 9-10.  In response, the Parties submitted a Revised Notice Plan on July 21, 2021 (Doc. No. 347) which the court approved with modifications on July 28, 2021 (Doc. No. 348).

On August 2, 2021, Plaintiff filed a Motion for Attorneys' Fees.  (Doc. No. 349). On October 4, 2021, Plaintiff filed a Motion for Final Approval.  (Doc. No. 350).  On October 20, 2021, the court issued an order resetting the final approval hearing, in light of 28 U.S.C. § 1715's notice requirement.  (Doc. No. 351 at 2).  The court also requested clarification from Plaintiff regarding: (1) whether an amendment was actually made to the Settlement Agreement; and (2) the exact *pro rata* distribution to each individual class member.  (Doc. No. 351 at 3).  Plaintiff submitted a supplemental brief addressing these issues on November 1, 2021.  (Doc. No. 352).

A final approval hearing was held on January 31, 2022.  (Doc. No. 355).

## II.    SETTLEMENT AGREEMENT TERMS

The Parties have submitted a Class Action Settlement Agreement with approximately sixteen pages of substantive terms.  (Doc. No. 350-2 at 1-4 ("Weston

3

Decl. I"), Ex. A ("Settlement Agreement")). The Settlement Agreement requires Kroger to fund a $780,000 cash settlement fund. (Agreement, § 4). $79,635 of this fund will be allocated to notice and administrative expenses, consisting of: (1) $49,635 to be paid to the Settlement Administrator after preliminary approval to cover expenses associated with the class notice and claims processing and (2) $30,000 to be paid after final approval for costs associated with postage and check printing. *Id.*, § 7.A.

The Agreement estimates class members will be entitled to a recovery of: (1) $17.50 for undocumented claims; or (2) up to $100 for claims documented by receipts. *Id.*, § 4.[1] Each class member's share shall be increased or reduced on a *pro rata* basis based on whether the combined monetary value of valid claims exceeds the settlement fund after administrative expenses are deducted. *Id.* None of the settlement fund will revert to Kroger; instead, any funds remaining after distribution are to be paid by the Settlement Administrator in a *cy pres* payment to the American Heart Association. *Id.* Within ninety days from final approval, Kroger is required to make a separate one-time *cy pres* payment of $21,000 to the American Heart Association. *Id., § 5.*

In exchange for their *pro rata* share, all class members are deemed to release Kroger from any claims relating to the "manufacturing, formulation, preparation, handling, distribution, advertising, marketing, packaging, sale, labeling, promotion, and ingredients of Kroger Bread Crumbs[.]" *Id.*, § 8. The release does not extend to personal injury claims "resulting from a defect in Kroger Bread Crumbs or packaging[.]" *Id.*, § 8.C.

Additionally, the Agreement permits the named Plaintiff to move the court for an incentive award of up to $7,000 and for Class Counsel to move for up to $400,000 in fees and costs. *Id.*, § 10. Kroger agrees not to oppose this application or take any steps to

---

[1] In its Supplemental Briefing, Class Counsel represents no class member submitted a claim documented by grocery store receipts, so this provision had no effect. (Doc. No. 352-1 at ¶ 6).

encourage objectors, provided these limits are not exceeded. *Id.* The settlement is structured such that attorneys' fees and the class award will be paid separate from the common fund. *Id.*

## III.   FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### A.   Class Certification

Before approving the settlement itself, the court's "threshold task is to ascertain whether the proposed settlement class satisfies the requirements of Rule 23(a) of the Federal Rules of Civil Procedure applicable to class actions, namely: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). In addition, the court must determine whether "the action is maintainable under Rule 23(b)(1), (2), or (3)." *Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*, 213 F.3d 454, 462 (9th Cir. 2000) (quoting *Amchem Prod., Inc., v. Windsor*, 521 U.S. 591, 614 (1997)).

In the present case, the court has already certified a class under Rule 23(b)(3). (*See* Order on Motion for Class Certification, Doc. No. 263 at 38 (certifying class of "[a]ll citizens in California who purchased, between January 1, 2010 and December 31, 2015, Kroger Bread Crumb[s] containing partially hydrogenated oil and the front label claim '0g Trans Fat.'")). The court subsequently approved an amended definition of the class that excludes: "(a) persons or entities who purchased Kroger Bread Crumbs for the purpose of resale or distribution; (b) persons who timely and properly exclude themselves from the Class, as provided in the Settlement Agreement; (c) Kroger and any of its officers, directors, agents, representatives, employees, or other persons associated with Kroger, and (d) any judicial officer hearing this Litigation." (Doc. No. 346 at 5).

The court is not aware of any new facts which would alter its conclusion. For these reasons, the court reaffirms its prior certification of the Settlement Class and its prior appointments of The Weston Firm as Class Counsel, and Plaintiff Shavonda Hawkins as the Class Representative.

1

**B.     Legal Standard for Final Approval**

2

Federal Rule of Civil Procedure 23(e) provides "[t]he claims, issues, or defenses of

3

a certified class . . . may be settled, voluntarily dismissed, or compromised only with the

4

court's approval." Fed. R. Civ. P. 23(e).   The Rule "requires the district court to

5

determine whether a proposed settlement is fundamentally fair, adequate and

6

reasonable." *Id.* at 1026.  In making this determination, the court is required to "evaluate

7

the fairness of a settlement as a whole, rather than assessing its individual components."

8

*Lane v. Facebook, Inc.*, 696 F.3d 811, 818-19 (9th Cir. 2012). Because a "settlement is

9

the offspring of compromise, the question we address is not whether the final product

10

could be prettier, smarter or snazzier, but whether it is fair, adequate and free from

11

collusion." *Hanlon*, 150 F.3d at 1027.

12

A court considers several factors in determining whether a proposed settlement is

13

"fair, reasonable, and adequate" under Rule 23(e), including: "the strength of plaintiffs'

14

case; the risk, expense, complexity, and likely duration of further litigation; the risk of

15

maintaining class action status throughout the trial; the amount offered in settlement; the

16

extent of discovery completed, and the stage of the proceedings; the experience and

17

views of counsel; the presence of a governmental participant; and the reaction of the

18

class members to the proposed settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th

19

Cir. 2003) (quoting *Molski v. Gleic* , 318 F.3d 937, 953 (9th Cir. 2003)).  This is not  an

20

"exhaustive list of relevant considerations."  *Officers for Justice v. Civil Serv. Com.*,

21

688 F.2d 615, 625 (9th Cir. 1982).  "The relative degree of importance to be attached to

22

any particular factor will depend upon and be dictated by the nature of the claims

23

advanced, the types of relief sought, and the unique facts and circumstances presented by

24

each individual case." *Id.*

25

///

26

///

27

///

28

///

6

In addition to the *Hanlon* factors, the 2018 amendments to Rule 23 established a uniform set of factors courts consider when determining whether a settlement is "fair, reasonable, and adequate," including whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2); *see Perks v. Activehours, Inc.*, No. 5:19-CV-05543-BLF, 2021 WL 1146038, at *4 (N.D. Cal. Mar. 25, 2021).

"The notes of the Advisory Committee explain that the enumerated, specific factors added to Rule 23(e)(2) are not intended to 'displace' any factors currently used by the courts, but instead aim to focus the court and attorneys on 'the core concerns of procedure and substance that should guide the decision whether to approve the proposal.'" *In re Extreme Networks, Inc. Sec. Litig.*, No. 15-CV-04883-BLF, 2019 WL 3290770, at *6 (N.D. Cal. July 22, 2019). "Accordingly, the [c]ourt applies the framework set forth in Rule 23 with guidance from the Ninth Circuit's precedent[.]" *Id.*

When reviewing a proposed settlement, the court's primary concern remains "the protection of those class members, including the named plaintiffs, whose rights may not

7

have been given due regard by the negotiating parties." *Officers*, 688 F.2d at 624. Ultimately, "[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 526 (C.D. Cal. 2004).

### 1.    Adequacy of Notice

"Adequate notice is critical to court approval of a class settlement[.]" *Hanlon*, 150 F.3d at 1025.  In its prior Orders (Doc. Nos. 346 and 348), the court approved the Parties' proposed notification plan—subject to the court's modifications—and authorized Classaura LLC to act as the Settlement Administrator.

In support of the Final Approval Motion, Plaintiff submits the Declaration of Gajan Retnasaba, a partner at Classaura.  (Doc. No. 350-3 at 1-5 ("Retnasaba Decl.")).  Mr. Retnasaba informs the court that Classaura setup a dedicated toll-free number, e-mail address, and website on August 9 and August 13, 2021.  *Id.* at ¶¶ 11-13.  The website includes general information about the instant matter, key case filings, and other details, including the deadlines to file a claim, opt-out, submit an objection, and the date of the Fairness Hearing. *Id.* at ¶ 12.  The website was visited 39,738 times. *Id.*  The dedicated line received 126 calls and 37 voicemails were answered. *Id.* at ¶ 11.  71 e-mails were received and answered. *Id.* at ¶ 13.

In addition, Kroger provided Classaura with a list of Kroger's California-based Club Card members who had purchased Kroger Bread Crumbs within the last twelve months.  *Id.* at ¶ 8.  The list contained: (1) 91,495 unique e-mail addresses; and (2) 52,591 unique mailing addresses (for Club Card members for whom an e-mail address was not available). *Id.* at ¶¶ 8-9.  Appropriate e-mail and direct mail notices were sent to these addresses. *Id.*  The e-mails contained a link to the settlement website. *Id.* at ¶ 8. Of the e-mails sent, 34,412 recipients opened the e-mail and 10,753 recipients clicked the provided link and visited the settlement website. *Id.*

15cv2320 JM (AHG)

Classaura also published a class notice in the San Diego Uptown Examiner and USA Today's "San Francisco" and "Los Angeles" editions. *Id.* at ¶ 3. In addition, on August 15, 2021, Classaura began an online advertising campaign on Facebook targeting adults residing in California over the age of eighteen. *Id.* at ¶ 4. Mr. Retnasaba declares the campaign generated 8,713,061 impressions reaching 8,322,923 unique users. *Id.* at ¶¶ 5-6. Classaura further made submissions to ClassActionRebates.com and TopClassActions.com—two "leading website[s] that collect and publicize class notices[.]" *Id.* at ¶ 7.

Finally, on August 16, 2021, Classaura sent an informational press release using the PR Newswire's US1 National Newsline providing a summary of the settlement. *Id.* at ¶ 10. Mr. Retnasaba declares the press release was picked up by at least 103 media outlets. *Id.*

As of October 4, 2021, Classaura has received 16,769 valid claims, no objections, and 5 requests for exclusion. (Doc. No. 350-1 at 13; Retnasaba Decl. at ¶¶ 14-15). Given the above, the court finds the Class Notice provided in this case was the best practicable and adequate to satisfy the requirements of Rule 23 and due process.

### 2. Compliance with Class Action Fairness Act

Class Counsel's declaration, submitted in support of Plaintiff's Final Approval Motion, states Mr. Weston provided notice of the settlement pursuant to 28 U.S.C. § 1715, on October 1, 2021. (Weston Decl. I at ¶ 25). Although untimely under 28 U.S.C. § 1715(b), the Parties' late notice is not fatal to the final approval of their class action settlement. *See Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 973 (E.D. Cal. 2012) ("[N]umerous courts [have found] that late mailing of notices to state and federal officials under [the Class Action Fairness Act ("CAFA")] is not fatal to approval of settlements."). Instead, the court finds the *substance* of the requirements—to provide federal and state officials sufficient notice and opportunity to be heard—has been satisfied here.

///

### 3.     Strength of Plaintiff's Case; Risk of Further Litigation; and Risk of Maintaining Class Action Settlement

The preferable nature of settlement over the uncertainties, expense, and length of litigation, means that "[w]hen assessing the strength of plaintiff's case, the court does not reach any ultimate conclusions regarding the contested issues of fact and the law that underlie the merits of this litigation." *Four in One Co. v. S.K. Foods, L.P.*, No. 2:08-CV-3017 KJM EFB, 2014 WL 4078232, at *7 (E.D. Cal. Aug. 14, 2014) (quotations omitted). Similarly, "a proposed settlement is not to be judged against a speculative measure of what might have been awarded in a judgment in favor of the class." *Nat'l Rural Telecomms. Coop*, 221 F.R.D. at 526.

In this case, to succeed on the merits, Plaintiff must prove that: (1) Kroger's use of PHO in its breadcrumbs was unfair under the UCL; (2) Kroger's product labeling violates the UCL, FAL, and CLRA; and (3) Kroger breached implied and express warranties. (*See* Doc. No. 332 at 22).  Kroger denies all of Plaintiff's allegations and asserts several defenses to liability, suggesting vigorous and costly litigation if the action proceeds to trial.  (Agreement, § 2; Doc. No. 332 at 19-21).

Settlement in this case was reached only after over five years of protracted, heavily contested litigation, including an appeal to the Ninth Circuit.  *See* Docket.  The inherent risk of further litigation in this matter is well-known to all involved.  Proceeding to trial presents very real risks of an unfavorable decision on the merits and/or on resulting appeals.  Even if Plaintiff were to prevail at trial, Plaintiff would still be required to expend considerable additional time and resources that may potentially outweigh any additional recovery obtained through successful litigation.  Continued litigation would further delay payment to Class Members and increase the amount of attorneys' fees.  All in all, the court finds these risks weigh in favor of settlement.

### 4.     The Amount Offered in Settlement

"Basic to the process [of evaluating settlements] is the need to compare the terms of the compromise with the likely rewards of litigation." *Protective Comm. for Indep.*

*Stockholders of TMT Trailer Ferry v. Anderson*, 390 U.S. 414, 424-25 (1968).  Here, the Settlement Agreement authorizes a recovery of $780,000—minus $79,635 in costs associated with administering the settlement.  (Agreement, §§ 4, 7.A).  Class Counsel contends this relief compares favorably to total California sales of Kroger Bread Crumbs during the class period, which totaled about $ 2 million.  (Doc. No. 350-1 at 12).  The settlement is fully *pro rata*—each class member is expected to receive $41.77.  *Id.* at 18.[2]  In this case, the amount offered to each individual class member strikes the court as fair, reasonable and adequate, especially in light of the $2-$3 purchase price of Kroger Bread Crumbs.  (Doc. No. 343-1 at 15).  In light of the above, and the court's experience with consumer class actions, the court finds this factor weighs in favor of settlement.

### 5.    Extent of Discovery and State of Proceedings

A court should focus on whether the "parties have sufficient information to make an informed decision about settlement."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459 (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998); *see also Onitverso v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014) ("A settlement that occurs in an advanced stage of the proceedings indicates the parties carefully investigated the claims before reaching a resolution.").

Here, as already stated, the Parties have been litigating this case for over five years, including an appeal to the Ninth Circuit.  *See* Docket.  Both Parties have engaged in formal and informal discovery, including multiple depositions.  Weston Decl. I at ¶¶ 3-13.  In addition, the Parties have engaged in lengthy informal settlement negotiations and attended multiple settlement conferences at different stages of this litigation.  (Weston Decl. I at ¶¶ 14-15; Doc. Nos. 57, 114, 336).  In light of these facts, the court is comfortable finding the Parties possess "sufficient information to make an informed

---

[2] In its supplemental briefing, Mr. Weston informs the court the Settlement Administrator was instructed to round the settlement checks up—with any additional funds to be paid by the Mr. Weston's firm as a *de minimis* unreimbursed litigation cost.  (Doc. No. 352-1 at ¶ 5).

decision about settlement." *Linney*, 151 F.3d at 1239.  Accordingly, this factor weighs in favor of settlement.

### 6.      Experience of Counsel

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (citing *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979)).  Here, Class Counsel provided a declaration detailing their experience in prosecuting consumer class actions.  Weston Decl. I, Ex. B.  Mr. Weston attests the proposed resolution embodied in the Parties' settlement "was the product of heavily contested arms' length negotiation" and the Parties "invested substantial time and effort to work through initially incompatible settlement postures and overcome vigorous disagreements."  Weston Decl. I at ¶¶ 14-15.  It is Mr. Weston's belief the settlement is fair and reasonable.  *Id.* at ¶ 16.  In light of the foregoing, and according proper weight to the judgment of counsel, the court finds this factor weighs in favor of the settlement.

### 7.      Reaction of Class Members

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement are favorable to the class members." *Nat'l Rural Telecomm. Coop., Inc.*, 221 F.R.D. at 529 (citations omitted). Here, no objections to the settlement have been received—although five requests for exclusion were submitted.  (Doc. No. 350-1 at 13; Retnasaba Decl. at ¶ 15).  The absence of an objection "is compelling evidence that the Proposed Settlement is fair, just, reasonable, and adequate."  *Id.* at 529.  The court finds this factor weighs in favor of settlement.

### 8.      Signs of Collusion

In addition to evaluating the fairness of the settlement terms, the court must be watchful for "subtle signs" that "class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations."  *Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935, 947

(9th Cir. 2011).   In *Bluetooth*, the Ninth Circuit identified three possible signs of collusion: (1) "when counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded"; (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees"; and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund[.]"   654 F.3d at 947.   In *Briseño v. Henderson*, 998 F.3d 1014, 1024 (9th Cir. 2021), the Ninth Circuit made clear that courts should consider these factors even if settlement is proposed after class certification.

In this case, the first sign of collusion is arguably not present here.   The total amount Kroger has agreed to pay to settle this case is $1,208,500—the sum of the $780,000 settlement fund, $400,000 request for attorneys' fees and costs, $7,000 incentive payment, and $21,000 *cy pres* payment.   (Settlement Agreement, §§ 4, 10). The amount of attorneys' fees and costs Kroger agreed not to contest is $400,000. *Id.*, § 10.   If the court were to award the maximum requested attorneys' fees and costs— this would constitute 33% of the constructive common fund.   And while 33.3% is higher than the typical Ninth Circuit benchmark, it is considerably lower than the 83.2% that was at issue in *Bluetooth*.   *Bluetooth*, 654 F.3d at 945 ("[W]e are concerned that the amount awarded was 83.2% of the total amount defendants were willing to spend to settle the case.").

The second sign of collusion, however, is clearly present.   The Parties' Settlement Agreement contains a "clear sailing" provision whereby Kroger agrees not to contest the amount of fees and costs awarded, as long as the award falls below the $400,000 negotiated ceiling.   *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 529 (1st Cir. 1991) ("In general, a clear sailing agreement is one where the party paying the fee agrees not to contest the amount to be awarded by the fee-setting court so long as the award falls beneath a negotiated ceiling.").   "The very existence of a clear sailing provision increases the likelihood that class counsel will have bargained away something of value to the class."   *Bluetooth*, 654 F.3d at 948 (quoting *Weinberger*, 925 F.2d at 525).   "[W]hen

15cv2320 JM (AHG)

confronted with a clear sailing provision" the court has "a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the class, being careful to avoid awarding 'unreasonably high' fees simply because they are uncontested." *Id.* at 948.

The third sign of collusion is also present in this case. While there is no explicit reversionary provision in the Settlement Agreement, the Agreement is structured such that attorneys' fees are paid separate from the common fund. Agreement, § 10. Thus, the Agreement suggests Kroger will retain the difference between the negotiated fee cap and any award of fees the court makes below that amount. As the Ninth Circuit has stated, "a kicker arrangement reverting unpaid attorneys' fees to the defendant rather than to the class amplifies the danger of collusion already suggested by a clear sailing provision." *Bluetooth*, 654 F.3d at 949.

Despite the presence of both a clear sailing and kicker provision, the court is persuaded by the value that the Settlement Agreement provides to class members that these indications of collusion do not warrant invalidating the agreement as a whole. In addition, the court also credits the fact that the Parties resolved this case only after multiple settlement conferences overseen by Magistrate Judge Goddard attended by experienced counsel. (Doc. Nos. 114; 336). Settlement was only achieved upon the Parties' acceptance of Judge Goddard's Mediator's Proposal. (Doc. No. 337).

The court can, therefore, put "a good deal of stock" in the fact that the settlement was "the product of an arms-length, non-collusive negotiated resolution." *Rodriquez v. West Publishing Group*, 563 F.3d 948, 965 (9th Cir. 2009); *see G. F. v. Contra Costa Cty.*, No. 13-CV-03667-MEJ, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.") (quotation omitted).

Ultimately, although there are signs of possible collusion, the court finds the other factors favoring approval and the process by which this settlement was reached is

adequate to allow the court to conclude there is insufficient evidence of collusion to warrant denying the Final Approval Motion in its entirety.

### 9.    Balancing of Factors

"Ultimately, the district court's determination is nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'" *Officers for Justice*, 688 F.2d at 625 (quoting *Detroit v. Grinnell Corp.*, 495 F.2d 448, 468 (2d Cir. 1974)). "[I]t must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution.  This is especially true in complex class action litigation[.]" *Id.*  Having considered the relevant factors, the court finds the settlement fundamentally fair, adequate, and reasonable.

## IV.    MOTION FOR ATTORNEY'S FEES, COSTS, AND INCENTIVE AWARD

The court turns next to Plaintiff's Motion for Attorneys' Fees, Costs, and Incentive Award.  (Doc. No. 349).  Pursuant to the terms of the Parties' Settlement Agreement, Class Counsel requests $400,000 in attorneys' fees and costs.  (Doc. No. 349 at 2; Settlement Agreement, § 10).  Class Counsel further requests a $7,000 incentive payment be awarded to named Plaintiff Shavonda Hawkins.  *Id.*  As agreed, Kroger does not object to or oppose Plaintiff's Motion.  *See* Docket; Settlement Agreement, § 10.  The court addresses each of Class Counsel's requests below.

### A.    Attorneys' Fees and Costs

#### 1.    Legal Standard

Federal Rule of Civil Procedure 23(h) permits a court to award reasonable attorneys' fees "authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  However, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth,* 654 F.3d at 941.

In a diversity action under CAFA, federal courts apply state law when determining both the right to fees and the method of calculating them.  *See Mangold v. Cal. Pub. Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) ("Existing Ninth Circuit precedent

has applied state law in determining not only the right to fees, but also in the method of calculating fees."); *see also Figueroa v. Cap. One, N.A.*, No. 18CV692 JM(BGS), 2021 WL 211551, at *9 (S.D. Cal. Jan. 21, 2021).

California courts "recognize two methods for calculating attorney fees in civil class actions: the lodestar/multiplier method and the percentage of recovery method." *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 254 (2001). "The percentage method calculates the fee as a percentage share of a recovered common fund or the monetary value of plaintiffs' recovery." *Laffitte v. Robert Half Internat. Inc.*, 1 Cal. 5th 480, 489 (2016). "The lodestar method, or more accurately the lodestar-multiplier method, calculates the fee 'by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate.'" *Id.*

### 2. Lodestar Calculation

"The fee setting inquiry in California ordinarily begins with the 'lodestar.'" *PLCM Grp., Inc. v. Drexler*, 22 Cal. 4th 1084, 1095 (2000) ("California courts have consistently held that a computation of time spent on a case and the reasonable value of that time is fundamental to a determination of an appropriate attorneys' fee award.").

In support of their fee request, Class Counsel submitted a lodestar calculation of $1,061,821 based on 2,905.4 hours of work. (Doc. No. 349-1 at 15). This lodestar figure is based on the below table provided by Class Counsel, supported by billing records:

| Timekeeper | Rate Requested | Total Hours | Lodestar |
|---|---|---|---|
| Gregory S. Weston | $650 | 886.8 | $576,420.00 |
| Andrew C. Hamilton | $305 | 32.1 | $9,790.50 |
| Conor Trombetta | $305 | 198.8 | $60,634.00 |
| Senior Paralegals | $235 | 1,616.6 | $379,901.00 |
| Junior Paralegals | $205 | 171.1 | $35,075.50 |
| Totals | | 2,905.4 | $1,061,821.00 |

(Doc. Nos. 349-1 at 26; 349-2, Ex. 3).

16

The court first considers whether the requested hourly rates are reasonable.  "In determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation."  *Chalmers v. Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986).  The party requesting fees bears the burden "to produce satisfactory evidence" the requested rates are reasonable.  *Blum v. Stenson*, 465 U.S. 886, 904 (1984).

In this case, Class Counsel submits evidence of: (1) decisions issued by other courts in this circuit in which Class Counsel was awarded fees based on similar rates; (2) survey data; and (3) the blended rates other courts in this circuit have approved as compared to the blended rate in this action.  (Doc. Nos. 349-1 at 15-18; 349-2 at 1-8 ("Weston Decl. II") at ¶¶ 12-27).  Mr. Weston also outlined his experience and qualifications, as well as those of his associates, Mr. Hamilton and Mr. Trombetta.  Weston Decl. II at ¶¶ 3-5.  Based on this evidence, and the court's knowledge of prevailing rates in the San Diego legal market, the court finds the billing rates requested by Class Counsel are reasonable.

The court next turns to whether the number of hours expended by Mr. Weston, his associates, and his paralegals, were reasonable.  *See Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) ("The district court also should exclude from this initial fee calculation hours that were not 'reasonably expended.'").  "The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked."  *Gates v. Rowland*, 39 F.3d 1439, 1449 (9th Cir. 1994).

In this case, Class Counsel claims the number of hours expended totals 2,905.4 comprising: (1) 1,117.7 hours of attorney time (the majority of which was expended by Mr. Weston); and (2) 1,787.7 hours of paralegal time.  Weston Decl. II at ¶ 8, Table 1.  In support, Class Counsel submits billing records documenting the amount of time spent by each timekeeper on individual tasks.  (Doc. No. 349-3, Ex. 3).  Mr. Weston further represents prior to the submission of these numbers to the court, he performed a detailed

review of all of the raw timesheets in this case to identify errors, duplicates, and other instances where the hours billed should have been either reduced or struck. Weston Decl. II at ¶ 9. As a result of this review, Mr. Weston states he struck 129 time entries and reduced time in another 80 entries. *Id.*

The court is all too familiar with the contentious nature of this litigation and is confident a more cooperative and civil discourse between the Parties could have avoided unnecessary filings and numerous discovery disputes. Nonetheless, the court has conducted a thorough review of the timesheets submitted and determines that although there are some areas of concern—including a number of vague and block-billed entries— in general, the hours billed "appropriately reflects the degree of time and effort expended" by Class Counsel. *Laffitte*, 1 Cal. 5th at 505.

Multiplying the time expended by the rates approved, Plaintiff's lodestar is $1,061,821. Weston Decl. II at ¶ 8. When determining a reasonable fee in a class action, the lodestar figure is "presumptively reasonable." *Bluetooth*, 654 F.3d at 941. Because Class Counsel is requesting attorneys' fees lower than the base lodestar, Class Counsel's request translates essentially to a negative multiplier. "[A] multiplier below 1.0 is below the range typically awarded by courts and is presumptively reasonable." *Wong v. Arlo Techs., Inc.*, No. 5:19-CV-00372-BLF, 2021 WL 1531171, at *11 (N.D. Cal. Apr. 19, 2021); *see also Covillo v. Specialtys Cafe*, No. C-11-00594 DMR, 2014 WL 954516, at *7 (N.D. Cal. Mar. 6, 2014) ("Plaintiffs' requested fee award is approximately 65% of the lodestar, which means that the requested fee award results in a so-called negative multiplier, suggesting that the percentage of the fund is reasonable and fair.").

### 3.   Percentage Cross-Check

Although the lodestar "may be a perfectly appropriate method of fee calculation," the Ninth Circuit has "encouraged courts to guard against an unreasonable result by cross-checking their calculations against a second method." *Bluetooth*, 654 F.3d at 944. "Just as the lodestar method can confirm that a percentage of recovery amount does not award counsel an exorbitant hourly rate, the percentage-of-recovery method can likewise

18

be used to assure that counsel's fee does not dwarf class recovery." *Id.* at 945 (quotation omitted).

Here, the constructive common fund in this case totals $1,208,500, comprising the: (1) $780,000 settlement fund; (2) $400,000 request for attorneys' fees and costs; (3) $7,000 request for an incentive payment; and (4) $21,000 *cy pres* payment. (Doc. No. 349 at 2; Settlement Agreement, §§ 4-5). This amount constitutes the "total amount defendants were willing to spend to settle the case." *Bluetooth*, 654 F.3d at 945 (including allotment for attorneys' fees, incentive awards, *cy pres* award, and other fees in calculation of constructive common fund). The request for $400,000 in fees, therefore, represents 33% of the constructive common fund, which is higher than the 25% benchmark typically used by the Ninth Circuit. *Id.* at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee.").

Although a 33% award is on the higher end of the range of approved awards in this circuit, "other courts have approved comparable awards in the appropriate circumstances." *Rabin v. PricewaterhouseCoopers LLP*, No. 16-CV-02276-JST, 2021 WL 837626, at *8 (N.D. Cal. Feb. 4, 2021) (collecting cases). The court takes into consideration, for example, that the constructive common fund in this case is relatively small. Cases with a relatively small fund, *i.e.* under $10 million, will "often result in fees above 25%." *Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008); *Alvarez v. Farmers Ins. Exch.*, No. 3:14-CV-00574-WHO, 2017 WL 2214585, at *3 (N.D. Cal. Jan. 18, 2017) ("Fee award percentages generally are higher in cases where the common fund is below $10 million."). In addition, neither Kroger (as expected) nor any class member filed an objection.

The court does not find this to be a case where Class Counsel's requested award would "yield windfall profits for class counsel in light of the hours spent on the case[.]" *Bluetooth*, 654 F.3d at 942. Instead, the court finds the amount of fees requested is reasonable.

///

19

### 4.    Costs

Attorneys are entitled to recover "those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quotation omitted).  Class Counsel asserts they have incurred $6,942.57 in costs over the course of the litigation, broken down into: (1) $905 in filing fees; (2) $1,348.25 for court reporters and deposition transcripts; (3) $2,450 in expert witness fees; (4) $40.55 in postage; (5) $645.05 in printing services; (6) $45 in process server fees; and (7) $1,508.72 in travel expenses.  (Doc. No. 349-1 at 23, 26).  No objections have been made to these costs.[3]  In this case, the court finds Class Counsel's litigation expenses are reasonable and approves the request for costs.

### B.    Incentive Award

Although "incentive awards are fairly typical in class action cases," they are discretionary.  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). "Generally, when a person joins in bringing an action as a class action he has disclaimed any right to a preferred position in the settlement."  *Staton*, 327 F.3d at 967 (quotation omitted).    The purpose of incentive awards, therefore, is "to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."  *Rodriguez*, 563 F.3d at 958-59. However, "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives."  *Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013).

Class Counsel requests that $7,000 be awarded to Plaintiff Hawkins in this case. In support, Class Counsel contends Plaintiff "persevered for over five years," expending

---

[3] As a point of clarification, Class Counsel is not requesting an *additional* $6,942.57 in costs on top of attorneys' fees.  Instead, Class Counsel's request for costs is incorporated into the $400,000 fee request.  (Doc. No. 349 at 2).

time: (1) sitting for a deposition covering personal topics; (2) assisting in written discovery; and (3) attending multiple court conferences.   (Doc. No. 349-1 at 24). Plaintiff did not submit a declaration in support of the request.

Given Plaintiff's level of involvement, the number of years this case has been pending, and the fact that the amount requested is consistent with those typically awarded as incentive payments, the court finds Plaintiff's request to be reasonable.   *See Khoja v. Orexigen Therapeutics, Inc.*, No. 15-CV-00540-JLS-AGS, 2021 WL 5632673, at *12 (S.D. Cal. Nov. 30, 2021) (approving incentive award of $9,230); *In re Regulus Therapeutics Inc. Sec. Litig.*, No. 3:17-CV-182-BTM-RBB, 2020 WL 6381898, at *8 (S.D. Cal. Oct. 30, 2020) ("Incentive awards typically range from $2,000 to $10,000.") (quotation omitted); *Mauss v. NuVasive, Inc.*, No. 13CV2005 JM (JLB), 2018 WL 6421623, at *10 (S.D. Cal. Dec. 6, 2018) (finding reimbursement award of $7,500 to be reasonable).   For these reasons, the court approves Plaintiff's requested incentive award of $7,000.

## C.     Settlement Administration Costs

Finally, the Settlement Agreement authorizes the deduction of up to $79,635 in notice and administration costs incurred by the Settlement Administrator.   (Doc. No. 350-1 at 12; Settlement Agreement, § 4).   No objections have been made to these expenses. Although the court determines these administration costs may have been excessive in view of the Parties' *original* notice plan, the court must also take into account the additional notice measures ordered by the court and subsequently implemented by the Settlement Administrator—including at least one additional newspaper publication and the mailing or e-mailing of Kroger Club Card Members.   (Doc. Nos. 348 at 2-4; Retnasaba Decl. at ¶¶ 3, 8-9).   In light of the added expense of these additional procedures, the court finds the Settlement Administrator's expenses reasonable.   The

court, therefore, approves the requested administration expenses in the amount of $79,635.[4]

For the foregoing reasons, the court **GRANTS** Plaintiff's fee motion.

## V.    CONCLUSION

In accordance with the foregoing, the court **ORDERS** as follows:

1.    The court **GRANTS** Plaintiff's Final Approval Motion (Doc. No. 350) and Motion for Attorneys' Fees, Costs, and Incentive Award (Doc. No. 349).

2.    The Parties are **DIRECTED** to implement the Settlement according to its terms and conditions.

3.    The court **APPROVES** the Settlement Administration costs in the amount of **$79,635**, to be paid from the common fund, to Classaura LLC, deducted by an appropriate amount in order to satisfy the two late-mailed claims.

4.    The court **APPROVES** Class Counsel's request for an award of attorneys' fees and costs in the amount of **$400,000.**

5.    The court **APPROVES** an incentive award to Plaintiff Shavonda Hawkins in the amount of **$7,000**.

6.    This Order applies to all claims or causes of action settled under the Settlement Agreement and binds all Class Members who did not affirmatively opt-out of the Settlement Agreement by submitting a timely and valid request for exclusion.

7.    The Class Members who timely filed a request to opt out of the settlement are excluded from the class.

8.    The court retains continuing jurisdiction over this settlement solely for the purposes of enforcing the agreement, addressing settlement administration matters, and

---

[4] At the hearing, Plaintiff's counsel represented that they had received two late-mailed claims, and that these claims would be paid through appropriate deductions to the final amount paid to the Settlement Administrator.

addressing such post-judgment matters as may be appropriate under Court rules and applicable law.

9.     Judgment is entered on the terms set forth above.  The Clerk of Court shall close the case.

**IT IS SO ORDERED.**

DATED: February 4, 2022

JEFFREY T. MILLER
United States District Judge

15cv2320 JM (AHG)